JASON M. FRANK (190957)
ANDREW D. STOLPER (205462)
SCOTT H. SIMS (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone:      (949) 201-2400
Facsimile:      (949) 201-2405

IVY T. NGO (249860)
FRANKLIN D. AZAR (*pro hac vice*)
BRIAN HANLIN (*pro hac vice*)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:      (303) 757-3300
Facsimile:      (303) 759-5203

CHARLES E. SHAFFER (*pro hoc vice*)
DANIEL C. LEVIN (*pro hoc vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:      (215) 592-1500
Facsimile:      (215) 592-4663

*Attorneys for Plaintiffs, the Proposed Class and Sub-Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO HERRERA, MONICA HERRERA, DEANA LUCERO, MELISSA LUCAS, VANITY ARRINGTON, NICHOLE DARTIS, FREDERICK BROWN, ANTHONY DILLARD, JANET CORPES, TERRI JONES, RIA MARTEINS, CHAKA SMITH, SHANNON GENTRY, GRETA CARTER, and JANET ATKINS, each individually and on behalf of all others similarly situated, | Case No.:  8:18-cv-00332 |
| | **CLASS ACTION** |
| | COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, CONVERSION, VIOLATION OF VARIOUS STATE CONSUMER PROTECTION ACTS, AND INJUNCTIVE RELIEF |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| WELLS FARGO BANK, N.A. D/B/A WELLS FARGO DEALER SERVICES, INC., WELLS FARGO & COMPANY and MARGUERITE DREW, an individual, | |
| Defendants. | |

Plaintiffs Armando Herrera (California), Monica Herrera (California), Deana Lucero (Colorado), Melissa Lucas (Florida), Vanity Arrington (Illinois), Nichole Dartis (Indiana), Frederick Brown (Maryland), Anthony Dillard (New Jersey), Janet Corpes (New York), Terri Jones (Ohio), Ria Marteins (Pennsylvania), Chaka Smith (South Carolina), Shannon Gentry (Tennessee), Gretta Carter (Wisconsin), and James Atkins (West Virginia) (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action to recover monetary damages, injunctive relief, and other remedies for breach of contract, unjust enrichment, conversion and violations of certain state consumer protection acts. The following allegations are based upon Plaintiffs' personal knowledge with respect to their own acts and based upon information and belief and the investigation of counsel as to all other matters.

## INTRODUCTION AND FACTUAL ALLEGATIONS

1. This action concerns the failure of Wells Fargo Bank, N.A. and its related entities (hereinafter "Wells Fargo" or "Defendants") to refund unearned fees that customers prepaid for Wells Fargo's Guaranteed Asset Protection service, also referred to as Guaranteed Automobile Protection ("GAP").

2. GAP is a debt cancellation service that Wells Fargo provides to customers who finance automobile loans through Wells Fargo. Under this service, Wells Fargo agrees to cancel the remaining loan balance when the customer's automobile is totaled (damaged beyond repair or stolen and never recovered) and the insurance payout does not cover the outstanding balance on the loan. In other words, Wells Fargo agrees to forgive any "gap" between the amount the insurance company pays out and the amount outstanding on the loan (a "GAP situation"). The benefit to the customer is that if the vehicle is totaled, the customer may walk away without any further liability even if insurance on the vehicle is insufficient to cover the amount outstanding on the loan.

3. GAP is a service that is routinely and systematically offered by automobile dealers nationwide who provide financing through Wells Fargo. Customers are presented with a standardized form contract for GAP on a non-negotiable "take it or leave it" basis (the "GAP Agreement") rendering the GAP Agreement an adhesion contract.

4.      The GAP Agreement is executed between the customer and the dealer's representative or another third party.  The Gap Agreement is then assigned to Wells Fargo who, as the assignee, now has the obligation to forgive the outstanding balance on the loan in the event of a GAP situation (i.e., where the insurance payout on the totaled vehicle is less than the outstanding balance on the loan).

5.      If a customer signs up for GAP, the customer is required prepay upfront the fees for the entire term of the underlying automobile loan in one lump sum payment (the "GAP Fees"). The GAP Fees are typically included as a separate charge in the amount financed for the vehicle, so the total cost for GAP will be higher due to the interest accruing on the prepaid GAP Fees.   On information and belief, Wells Fargo ultimately receives a portion of the GAP Fees paid by the customer with the dealer and/or other third parties collecting a portion of the GAP Fees.  Wells Fargo also receives the interest accruing on the prepaid GAP Fees.

6.      Because the GAP Fees are prepaid upfront for the entire term of the underlying loan, if the customer cancels GAP before the end of the loan term, then Wells Fargo is contractually and legally required to refund the unused and unearned portion of the GAP Fees on a pro-rata basis.  For this reason, the standard form GAP Agreement will contain a provision providing that the customer may cancel GAP "at any time" prior to the vehicle being totaled, in which case the customer will be entitled to a refund of the "unused portion of the [GAP Fees] by the pro rata method, or by the refund method as may be required by state or federal law."  [*See, e.g.*, GAP Agreement with Armando Herrera attached as Exhibit A ("YOUR RIGHT TO CANCEL").]  For example, if a customer prepays $800 for GAP to cover a 5-year loan and the customer later cancels GAP half-way through the loan, then Wells Fargo is required to refund 50% of the unearned GAP Fees (i.e., $400) under the "pro-rata" method.

7.      If the underlying loan is paid off or otherwise terminated early, there is no longer any need for GAP protection because there is no longer any possibility of a "gap" between an insurance payout and the outstanding balance on the loan, and therefore nothing to protect against.  In other words, without an underlying loan, there can be no GAP situation and the GAP Agreement is effectively cancelled.  Consequently, in the event of an early termination of a loan, Wells Fargo is likewise required to refund the unearned portion of the GAP Fees on a pro-rata basis.

8.      Similarly, if the customer's vehicle is repossessed and disposed by the lender, then GAP is likewise nullified because there is no possibility of a "gap" between the insurance payout on the totaled vehicle and the outstanding balance on the loan, because the customer no longer possesses the vehicle.  Thus, the customer is likewise entitled to a refund of the unearned portion of the GAP Fees on a pro-rata basis.

9.      This refund requirement is not only provided for in the GAP Agreement, but numerous federal and state statutes and regulations across the country have codified this requirement to refund unearned fees in debt cancellation agreements like GAP.  *See, e.g.*, 12 C.F.R. § 37.4 (federal regulation requiring refunds of any unearned fees paid for a debt cancellation contract when the underlying loan is terminated); 4 Colo. Code Regs § 902-1 (Colorado regulation requiring refund of unearned fees or premiums paid for GAP if the consumer loan is prepaid prior to maturity or the vehicle is no longer in the consumer's possession due to the creditor's lawful repossession and disposition of the collateral);  O.R.S.T. 50, Ch. 646A, Refs. & Annos., § 5 (Oregon statute requiring refund of unearned GAP fees due to early termination of finance agreement); Ala. Code § 8-37-6 (Alabama statute requiring refund of unearned GAP fees due to early termination of finance agreement); Indiana Department of Financial Institution GAP Program Approval Application, § 15 (requiring unearned GAP Fees to be refunded to consumer upon prepayment in full of underlying credit agreement).

10.      In sum, the GAP Agreement, as well as federal, state and common law, recognize that the unearned portion of prepaid GAP Fees are rightfully the property of the consumer and therefore must be refunded to the consumer when GAP coverage is cancelled or rendered a nullity due to an early termination of the underlying loan or repossession of the vehicle.

11.      The issue in this lawsuit is that Wells Fargo systematically fails to refund unearned GAP Fees when there is an early termination of the underlying loan or repossession of the vehicle. Specifically, Wells Fargo does not refund these unearned GAP Fees unless the customer first sends a written notice of cancellation to Wells Fargo or its agents, even though Wells Fargo, as the lender, knows the loan has been paid off or the vehicle has been repossessed, thus rendering GAP a nullity. Instead of refunding the unearned GAP Fees or at least notifying consumers they are entitled to a

refund, Wells Fargo sits back and keeps the funds for itself knowing full well that consumers are usually unaware or forget they are entitled to refund of the unused portion of their prepaid GAP Fees when they have paid off their loan early or had their vehicle repossessed. As a result, Wells Fargo is unjustly enriched because it keeps these unearned GAP Fees for itself at the expense of the consumer.

12.     In support of this unfair and unlawful business practice, Wells Fargo relies on provisions in the GAP Agreement which require the customer to send a written notice of cancellation to Wells Fargo or its agents prior to receiving a refund of unused GAP Fees.  However, this cancellation requirement makes no sense when the underlying loan has been terminated early because Wells Fargo, as the lender, already knows full well that GAP has been nullified by the loan termination and a refund is due to the customer.  Similarly, if the vehicle is repossessed, there is no need to affirmatively cancel GAP, because Wells Fargo, as the lender, is the party that repossessed the vehicle and is, thus, aware that a GAP situation is no longer possible.  Consequently, any contractual provision that purports to require a customer to affirmatively send a written notice of cancellation to receive a refund when there is an early termination of the loan or repossession of the vehicle is unnecessary, overly harsh, unreasonably favors Wells Fargo and is unenforceable as a matter of fact and law.

13.     Wells Fargo has offered tacit and partial admissions of this misconduct.  In its Form 10-Q filings with the United States Securities and Exchange Commission ("SEC") on August 4, 2017 and November 3, 2017, Wells Fargo acknowledged as follows:

> The Company has identified certain issues related to the unused portion of guaranteed automobile protection waiver or insurance agreements between the dealer and, by assignment, the lender, which may result in refunds to customers in certain states.

14.     On August 7, 2017, days after Wells Fargo first disclosed the GAP refund problems, the *New York Times* reported that the Federal Reserve Bank of San Francisco had launched an investigation into Wells Fargo's failure to refund unearned GAP Fees in an article titled "Wells Fargo, Awash in Scandal, Faces Violations Over Car Insurance Refunds" ("*New York Times* Article").

15.     In response to the *New York Times* Article, a Wells Fargo spokeswoman, Jennifer A. Temple, confirmed the deficiencies in Wells Fargo's GAP refund process:

> During an internal review, we discovered issues related to a lack of oversight and controls surrounding the administration of Guaranteed Asset Protection products. We are reviewing our practices and actively working with our dealers and have already begun making improvements to the GAP refund process.

Ms. Temple further noted that Wells Fargo was in the process of "trying to assess how many customers had been affected," but the *New York Times* Article estimated that "tens of thousands of customers may have been affected."

16.     Despite the aforementioned statements by Wells Fargo, the company still has not repaid the unearned GAP Fees to Plaintiffs and the Class. Wells Fargo's failure to refund unearned GAP Fees constitutes a breach of its agreements with Plaintiffs and the Class, a violation of various states' consumer protection laws, and a taking and conversion of funds that rightfully belong to Plaintiffs and the Class. Because Wells Fargo unlawfully and improperly retained unearned GAP Fees for its own use, it must pay back all funds it has wrongfully taken. In addition, Plaintiffs and the Class request that Wells Fargo be enjoined from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

18.     Venue is proper in this Central District of California under 28 U.S.C. § 1391. Defendants regularly conduct business in the Central District and a substantial part of the events giving rise to the claims occurred in the Central District in Orange County, California. For example, Wells Fargo provides its automobile lending through Wells Fargo Dealer Services, Inc. ("WFDS"), whose corporate headquarters is in Irvine, California, in the County of Orange. Further, venue is appropriate in the Southern Division of the Central District because 50% or more of the Defendants residing in the Central District reside in Orange County, California.

19.     In further support of this venue designation, Plaintiffs note that multiple actions pending against Wells Fargo across the country have been consolidated into a multi-district litigation proceeding in this venue in the United States District Court for the Central District of California (Santa Ana Division) before the Honorable Andrew J. Guildford.  One of the primary justifications for choosing this venue in those cases was the proximity of key witnesses and personnel employed by Wells Fargo.

## THE PLAINTIFFS

20.     Plaintiffs are individuals who purchased GAP on an automobile loan financed through Wells Fargo and who did not receive a refund of their unearned GAP Fees after the underlying loan was paid off prior to end of the loan term, or, in the case of Plaintiff Monica Herrera, after repossession of her vehicle.  Below is a list of Plaintiffs, their states of residence, the total cost they prepaid for GAP Fees, the dates of their GAP purchase, the end dates for their prepaid GAP coverage, the dates their underlying loans were terminated or their vehicles were repossessed, and an estimate of the unused portion of their prepaid GAP Fees at the time of the early loan termination or repossession of their vehicle.

| PLAINTIFF | STATE | PREPAID GAP FEES | DATE OF GAP PURCHASE | END DATE FOR PREPAID GAP COVERAGE | EARLY LOAN PAYOFF / REPO. DATE | UNUSED GAP FEES |
|---|---|---|---|---|---|---|
| Armando Herrera | CA | $800 | 7/19/2014 | 7/19/2020 | 2/3/2017 | $460.58 |
| Monica Herrera | CA | $895 | 2/11/2014 | 2/11/2019 | 2/2017 | $359.77 |
| Dena Lucero | CO | $300 | 12/31/2014 | 12/31/2019 | 8/11/2017 | $143.26 |
| Melissa Lucas | FL | $750 | 1/19/2014 | 1/19/2020 | 10/18/2016 | $406.66 |
| Vanity Arrington | IL | $760 | 6/1/2013 | 12/1/2017 | 3/13/2017 | $121.58 |
| Nichole Dartis | IN | $506 | 11/14/2015 | 2/14/2022 | 8/8/2016 | $446.63 |

| Fredrick Brown | MD | $895 | 9/13/2011 | 9/13/2016 | 7/25/2016 | $24.49 |
|---|---|---|---|---|---|---|
| Anthony Dillard | NJ | $800 | 10/4/2011 | 10/4/2016 | 5/6/2014 | $386.21 |
| Janet Corpes | NY | $650 | 4/21/2012 | 4/21/2018 | 2/28/2017 | $123.71 |
| Terri Jones | OH | $895 | 11/27/2013 | 11/27/2017 | 7/13/2016 | $307.52 |
| Ria Marteins | PA | $635 | 5/12/2016 | 5/12/2022 | 1/23/2018 | $455.02 |
| Chaka Smith | SC | $499 | 8/29/2014 | 8/29/2020 | 1/11/2017 | $301.86 |
| Shannon Gentry | TN | $795 | 3/8/2012 | 3/8/2017 | 3/12/2013 | $634.35 |
| Gretta Carter | WI | $895 | 5/13/2015 | 5/13/2018 | 1/4/2017 | $403.40 |
| James Atkins | WV | $895 | 5/1/2015 | 11/1/2017 | 2/28/2016 | $598.62 |

21.     Plaintiffs each prepaid the GAP Fees listed above which were added to the principal amount of their automobile loans financed through Wells Fargo.

22.     Each of Plaintiffs' loans were paid off prior to the expiration of their loan term, with the exception of Monica Herrera, who had her vehicle repossessed and disposed by Wells Fargo.

23.     Plaintiffs did not receive a refund of the unearned GAP Fees after the early termination of their underlying loan or repossession of their vehicle.

## THE DEFENDANTS

24.     Defendant Wells Fargo is a national association bank chartered in South Dakota and the division through which it provides automobile lending is Wells Fargo Dealer Services, Inc. ("WFDS"), whose corporate headquarters is in Irvine, California.  Wells Fargo directly owned the loans which were secured by Plaintiffs and the Class members' automobiles located throughout the United States. Upon information and belief, executives and/or employees within Wells Fargo implemented, oversaw and/or approved the strategy and operations relating to Wells Fargo's failure to refund unearned GAP Fees.

COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF

25.     Defendant Wells Fargo & Company ("WF Company") is, and at all relevant times was, a corporation organized and existing under the laws of the State of Delaware and a bank holding company with its principal place of business in San Francisco, California.  WF Company is a financial services company with $1.9 trillion in assets, and provides banking, insurance, investments, mortgage and consumer and commercial finance through more than 8,300 locations, 13,000 ATMs, and the internet.  It has over 263,000 full-time employees and is ranked No. 25 on Fortune Magazine's 2017 rankings of America's 500 largest corporations.  Upon information and belief, WF Company participated in the strategy and operations relating to Wells Fargo's failure to refund unearned GAP Fees to tens of thousands of its customers throughout the United States.

26.     Defendant Marguerite Drew, an individual, is a resident of Orange County, California. Defendant Drew is, and was an executive for Wells Fargo Dealer Services, Inc. during the time period alleged herein.  Upon information and belief, Defendant Drew participated in the strategy and operations relating to Wells Fargo's failure to refund unused GAP premiums to tens of thousands of its customers throughout the United States.

27.     The above-listed Defendants, and each of them, are referred to collectively herein as the "Defendants."

28.     Plaintiffs will seek to amend this Complaint to reflect Defendants' true names and capacities when they have been ascertained if not correctly named or yet named.  Plaintiffs are informed and believe, and thus allege, that each Defendant is responsible, jointly and severally, for the events and injuries described herein that caused damage to Plaintiffs and the Class.

29.     On information and belief, Plaintiffs allege that Defendants were, at all relevant times, the alter egos of each other such that to affirm the legal separateness of the Defendants for the purposes of the claims presented here would lead to an injustice and/or inequitable result.  There is a unity of interest and ownership between the defendant companies and their equitable owner(s) that the separate personalities of the companies and their shareholders do not in reality exist.

30.     On information and belief, Plaintiffs allege that at all relevant times, each Defendant was acting as a partner, agent, servant and/or employee of the remaining Defendants, within the course and scope of such agency and with the knowledge and/or understanding of the remaining Defendants.

1

**CLASS ACTION ALLEGATIONS**

2          31.        Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of

3    the following Class and Sub-Classes:

4                    **A. Nationwide Class**: All persons who purchased GAP and did not receive a refund of

5                          their unused GAP Fees after the early termination of their underlying finance

6                          agreement with Wells Fargo or the repossession of their vehicle during the

7                          applicable period of the statute of limitations.

8                    **B. California Sub-Class**: All residents of California who purchased GAP and did not

9                          receive a refund of the unused GAP Fees after the early termination of their

10                        underlying finance agreement with Wells Fargo or the repossession of their vehicle

11                        during the applicable period of the statute of limitations.

12                  **C. Colorado Sub-Class**: All residents of Colorado who purchased GAP and did not

13                        receive a refund of the unused GAP Fees after the early termination of their

14                        underlying finance agreement with Wells Fargo or the repossession of their vehicle

15                        during the applicable period of the statute of limitations.

16                  **D. Illinois Sub-Class**: All residents of Illinois who purchased GAP and did not

17                        receive a refund of the unused GAP Fees after the early termination of their

18                        underlying finance agreement with Wells Fargo or the repossession of their vehicle

19                        during the applicable period of the statute of limitations.

20                  **E. Indiana Sub-Class**: All residents of Indiana who purchased GAP and did not

21                        receive a refund of the unused GAP Fees after the early termination of their

22                        underlying finance agreement with Wells Fargo or the repossession of their vehicle

23                        during the applicable period of the statute of limitations.

24                  **F. Maryland Sub-Class**: All residents of Maryland who purchased GAP and did not

25                        receive a refund of the unused GAP Fees after the early termination of their

26                        underlying finance agreement with Wells Fargo or the repossession of their vehicle

27                        during the applicable period of the statute of limitations.

28

**G. New Jersey Sub-Class**: All residents of New Jersey who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

**H. New York Sub-Class**: All residents of New York who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

**I. Ohio Sub-Class**: All residents of Ohio who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

**J. Pennsylvania Sub-Class**: All residents of Pennsylvania who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

**K. South Carolina Sub-Class**: All residents of South Carolina who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

**L. Tennessee Sub-Class**: All residents of Tennessee who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

**M. Wisconsin Sub-Class**: All residents of Wisconsin who purchased GAP and did not receive a refund of the unused GAP Fees after the early termination of their underlying finance agreement with Wells Fargo or the repossession of their vehicle during the applicable period of the statute of limitations.

32.     Excluded from the proposed Class and Sub-Classes are Defendants, as well as their agents, officers, and directors, and their families, as well as their parent companies, subsidiaries, and affiliates.  Also excluded from the proposed Class and Sub-Classes are counsel representing Plaintiffs as well as any person employed by counsel.  Also excluded from the proposed Class and Sub-Classes are any judicial officers assigned to this case, as well as their staff.

33.     Plaintiffs reserves the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information.

34.     **Numerosity:**  While the exact numbers of the members of the Class and Sub-Classes are unknown to Plaintiffs at this time, and can only be determined by appropriate discovery, membership in the Class and Sub-Classes is ascertainable based upon the records maintained by Defendants. At this time, Plaintiffs are informed and believe that the Class includes tens of thousands of members and each of the Sub-Classes includes thousands of members.  Therefore, the Class and Sub-Classes are sufficiently numerous that joinder of all members of the Class and Sub-Classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through a class action will be of benefit to the parties and the Court.

35.     **Ascertainability:** Names and addresses of members of the Class and Sub-Classes are available from Defendants' records.  Notice can be provided to the members of the Class and Sub-Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under state law and federal law.

36.     **Commonality:** Common questions of law and fact exist as to all members of the Class and Sub-Classes and predominate over any issues solely affecting individual members of the Classes. The common questions of law and fact include but are not limited to:

    a.   Whether Wells Fargo is required to refund the unused and unearned GAP Fees in the event of an early termination of the loan agreement with Wells Fargo;

    b.   Whether Wells Fargo is required to refund the unused and unearned GAP Fees in the event of a repossession of the vehicle by Wells Fargo;

c. Whether Wells Fargo failed to refund unearned GAP Fees to Plaintiffs and the members of the Class and Sub-Classes after the early termination of their loan agreement with Wells Fargo or repossession of their vehicle;

d. Whether the unused portion of prepaid GAP Fees are the rightfully the property of Plaintiffs and the members of the Class and Sub-Classes in those circumstances where there has been an early termination of the loan agreement with Wells Fargo and/or repossession of the vehicle;

e. Whether the GAP Agreement requires customers to affirmatively send a written notice of cancellation to Wells Fargo or its agents notifying them that the underlying loan with Wells Fargo has been paid off early or the vehicle has been repossessed as a prerequisite to receiving a refund of unused GAP Fees;

f. Whether a contractual provision purporting to require customers to affirmatively notify Wells Fargo or its agents in writing that the loan with Wells Fargo has been paid off early or the vehicle has been repossessed as a prerequisite to receiving a refund of unearned GAP Fees is procedurally and substantively unconscionable given that Wells Fargo is already aware that the loan has been terminated or the vehicle has been repossessed;

g. Whether a contractual provision purporting to require customers to affirmatively notify Wells Fargo or its agents in writing that the loan with Wells Fargo has been paid off early or the vehicle repossessed as a prerequisite to receiving a refund of unearned GAP Fees is enforceable given that Wells Fargo is already aware that the loan has been terminated or the vehicle has been repossessed;

h. Whether Wells Fargo's practice of requiring customers to first send a written notice of cancellation to Wells Fargo or its agents prior to receiving a refund of unused GAP Fees in the event of an early termination of the loan or repossession of the vehicle constitutes an unfair or unlawful business practice;

      i.   Whether Wells Fargo's conduct violates consumer protection statutes and other laws asserted as to the claims alleged herein;

      j.   Whether Plaintiffs and the members of the Class and Sub-Classes are entitled to equitable relief, including but not limited to restitution and injunctive relief;

      k.   Whether Plaintiffs and the members of the Class and Sub-Classes are entitled to damages, including double or treble damages, punitive damages, exemplary damages and statutory damages (where allowed by state law) and other monetary relief and, if so, in what amount;

      l.   Whether Wells Fargo continues to unlawfully retain unearned GAP Fees which should be remitted to Plaintiffs and the members of the Class and Sub-Classes; and

      m.   Whether Plaintiffs and the members of the Class and Sub-Classes are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of this suit.

37.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class and Sub-Classes. As alleged herein, Plaintiffs and the members of the Class and Sub-Classes have been subjected to the same unlawful, deceptive and unfair practices and have been damaged in the same manner arising out of Wells Fargo's failure to refund unearned GAP Fees after the early termination of their loan agreement with Wells Fargo or the repossession of their vehicles.

38.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Sub-Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Class and Sub-Classes, because they have no interests which are adverse to the interests of the members of the Class and their respective Sub-Classes.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

39.    Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Sub-Classes.  Plaintiffs will undertake to represent and protect the interests of the absent members of the Class and Sub-Classes.

40.      Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Class and Sub-Classes.

41.      **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because: (a) the expense and burden of individual litigation make it economically unfeasible for members of the Class to seek redress of their claims other than through the procedure of a class action; (b) if separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would risk inconsistent results; and (c) absent a class action, Defendants likely will retain the benefits of their wrongdoing, and there will be a failure of justice.

42.      **Predominance:** Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class and Sub-Classes predominate over any questions affecting only individual members. The interest of the members of the Class and Sub-Classes in individually controlling the prosecution of separate actions is theoretical and not practical. Prosecution of the action through multiple Class representatives would be superior to individual lawsuits and Plaintiffs anticipate no difficulty in the management of this matter as a class action. Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## **FIRST CLAIM**

### **BREACH OF CONTRACT**

43.      Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

44.      Plaintiffs bring this claim on behalf of themselves and the members of the Class and Sub-Classes.

45.      Plaintiffs and the members of the Class and Sub-Classes entered into GAP Agreements that were assigned to Defendants that required Wells Fargo to refund the unused portion of any prepaid GAP Fees in the event the customer affirmatively cancelled GAP or if GAP was nullified due to the early termination of the underlying loan agreement or repossession of their vehicles.

46.     Attached as Exhibits A through J are copies of the GAP Agreements for Plaintiffs Armando Herrera (California), Monica Herrera (California), Vanity Arrington (Illinois), Frederick Brown (Maryland), Janet Corpes (New York), Ria Marteins (Pennsylvania), Terri Jones (Ohio), Chaka Smith (South Carolina), Shannon Gentry (Tennessee) and Gretta Carter (Wisconsin).  On information and belief, attached as Exhibits K, L and M are exemplar copies of the terms of the GAP Agreements for Mellissa Lucas (Florida), Anthony Dillard (New Jersey) and James Atkins (West Virginia).[1] While Deana Lucero (Colorado) and Nichole Dartis (Indiana) are presently unable to locate their GAP Agreements, these Plaintiffs reside in states with regulations and rules requiring GAP Agreements to includes provisions requiring lenders to refund the unused portion of GAP Fees after the early termination of the underlying loan or repossession of the vehicle.  [*See, e.g.*, 4 Colo. Code Regs § 902-1 Rule 8 (Colorado regulation requiring refund of unearned fees or premiums paid for GAP if the "consumer loan is prepaid prior to maturity or the vehicle is no longer in the consumer's possession due to the creditor's lawful repossession and disposition of the collateral"); Indiana Department of Financial Institution GAP Program Approval Application, § 15 (requiring unearned GAP Fees to be refunded to consumer upon prepayment in full of underlying credit agreement).]

47.     The GAP Agreements are standardized form contracts that were presented to Plaintiffs and the members of the Class and Sub-Classes on a non-negotiable "take-it or leave-it" basis and are therefore adhesion contracts.

48.     All of the GAP Agreements between Plaintiffs and the members of the Class and Sub-Classes, on the one hand, and Defendants, on the other hand, recognize that customers are entitled to a refund of the unused portion of their pre-paid GAP Fees.

49.     Any provision in the GAP Agreements that purports to require Plaintiffs to affirmatively notify Wells Fargo or its agents that the loan with Wells Fargo has been paid off early or the vehicle has been repossessed as a prerequisite to receiving a refund is unfair, unconscionable and unenforceable, because Wells Fargo as the lender is already aware that the loan has been terminated

---

[1] Mellissa Lucas (Florida) received GAP through a Western Diversified GAP Agreement and Exhibit K reflects the standard terms for such agreements.  Anthony Dillard (New Jersey) and James Atkins (West Virginia) received GAP through an Advanced Protection Plan GAP agreement and Exhibits L and M reflect the standard terms for such agreements.

early or the vehicle has been repossessed.  As such, Wells Fargo is aware that GAP coverage has been nullified and effectively cancelled because there can be no future GAP situation to protect against. Thus, requiring customers to affirmatively cancel GAP in these circumstances as a prerequisite to receiving a refund of unearned GAP Fees is unnecessary, overly harsh, unreasonably favors Wells Fargo and is unenforceable as a matter of fact and law.

50.     Plaintiffs and each of the members of the Class and Subclasses fully performed all enforceable conditions, covenants, and acts required by the GAP Agreements.

51.     Defendants breached their obligations under the GAP Agreements by failing to refund the unearned portion of the prepaid GAP Fees after the early termination of the loan with Wells Fargo or repossession of their vehicle.

52.     Plaintiffs and the members of the Class and Sub-Classes were harmed and did not receive the benefit of their bargain under their GAP Agreement because Defendants failed to refund the unearned portion of their prepaid GAP Fees after the early termination of their loan with Wells Fargo or repossession of their vehicle.

53.     Defendants are liable to Plaintiffs and the Class and Sub-Classes for the damages they suffered as a direct result of Defendants' failure to refund the unused and unearned portion of their prepaid GAP Fees after the early termination of their loan with Wells Fargo or repossession of their vehicle.

## SECOND CLAIM

### UNJUST ENRICHMENT

54.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

55.     Plaintiffs bring this claim for unjust enrichment on behalf of themselves and the members of the Class and Sub-Classes, and in the alternative to any contract-based claims pursuant to Federal Rule of Civil Procedure (8)(d)(2).

56.     By failing to refund the unearned portion of the prepaid GAP Fees after the early termination of the loan or repossession of the vehicle, Defendants were unjustly enriched at the expense of Plaintiffs and the members of the Class and Sub-Classes.  It would be inequitable and

1  unconscionable for Defendants to retain the profit, benefit and other compensation they obtained from

2  keeping these unearned GAP Fees.

3      57.     Plaintiffs and the members of the Class and Sub-Classes seek restitution from

4  Defendants and seek an order from this Court requiring Defendants to disgorge all proceeds, profits,

5  benefits, and other compensation obtained by Defendants from their improper and unlawful retention

6  of unearned GAP Fees after the early termination of the underlying loan agreement with Wells Fargo

7  or repossession of the vehicle.

8                              **THIRD CLAIM**

9                               **CONVERSION**

10     58.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation

11 contained above as though the same were fully set forth herein.

12     59.     Plaintiffs bring this claim for conversion on behalf of themselves and the members of

13 the Class and Sub-Classes.

14     60.     By keeping and utilizing the unearned GAP Fees that were prepaid by Plaintiffs and the

15 members of the Class and Subclasses after the early termination of the underlying loan agreement with

16 Wells Fargo or repossession of their vehicle, Defendants knowingly, intentionally, and wrongfully

17 converted property, i.e. funds, belonging to Plaintiffs and the members of the Class and Sub-Classes.

18     61.     As a direct and proximate result of Defendants' wrongful taking, Plaintiffs and the

19 members of the Class and Sub-Classes have sustained damages and losses equal to the specific and

20 identifiable amount of funds converted by Defendants.

21     62.     At no point did Plaintiffs and the members of the Class and Sub-Classes consent to

22 Defendants using the unearned portion of the prepaid GAP Fees for their own use or to retain or keep

23 those GAP Fees after the early termination of their loan or repossession of their vehicle.

24     63.     Defendants' conduct was knowingly, intentional, willful and wanton, and at the least

25 was undertaken with reckless disregard of the rights of Plaintiffs and the members of the Class and

26 Sub-Classes, and therefore warrants the imposition of punitive damages.

27     64.     Plaintiffs and the members of the Class and Sub-Classes seek restitution from

28 Defendants and seek an order from this Court requiring Defendants to disgorge all proceeds, profits,

benefits, and other compensation obtained by Defendants from their improper and unlawful

conversion and retention of unearned GAP Fees after the early termination of the underlying loan

agreement with Wells Fargo or repossession of their vehicle.

**FOURTH CLAIM**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200 et seq.)**
**(On Behalf of the California Subclass Only)**

65.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation

contained above as though the same were fully set forth herein.

66.     Plaintiffs Armando Herrera and Monica Herrera (no relation) bring this claim for

violation of *California Business and Professions Code* section 17200 et seq. (the "UCL") on behalf of

themselves and the members of the California Sub-Class.

67.     The UCL prohibits acts of "unfair competition" including any unfair or unlawful

business practices.

68.     Defendants' practice of requiring customers to first send a written notice of

cancellation to receive a refund of unearned GAP Fees after an early termination of the underlying

loan with Wells Fargo or a repossession of the vehicle is an "unfair" business practice proscribed by

the UCL.  There is no reasonable basis to require customers to affirmatively cancel GAP coverage

when the underlying loan has been terminated early or the vehicle has been repossessed, because

Wells Fargo, as the lender, already knows that the underlying loan has been terminated or the vehicle

has been repossessed.  As such, Wells Fargo is aware that GAP coverage has been nullified and

effectively cancelled because there can be no future GAP situation to protect against.  Defendants'

practice of requiring a written notice of cancellation in these circumstances is substantially injurious to

consumers who typically will not be aware and/or remember they are entitled to a refund of their

prepaid GAP Fees, thereby allowing Defendants to keep the unearned fees and be unjustly enriched at

the consumers' expense.  This substantial injury is not outweighed by any countervailing benefits to

customers or competition.

69.     Defendants acts described above are unlawful and, at a minimum, violate California's Consumer Legal Remedies Act (the "CLRA") which prohibits the inclusion of unconscionable terms in a consumer contract.

70.     As a direct and proximate result of Defendants' unfair and unlawful business practices, Plaintiffs Armando Herrera and Monica Herrera and each of the members of the California Sub-Class have been injured in fact and suffered lost money or property in that they failed to receive a refund of the unused portion of their prepaid GAP Fees after the early termination of their loan with Wells Fargo or repossession of their vehicle.

71.     Pursuant to *California Business and Professions Code* section 17203, Plaintiffs Armando Herrera and Monica Herrera, on behalf of themselves and the members of California Sub-Class, are seeking restitution of all unearned GAP Fees that Defendants failed to refund after the early termination of their underlying loan with Wells Fargo or repossession of the vehicle.

72.     Plaintiffs Armando Herrera and Monica Herrera, on behalf of themselves and the members of California Sub-Class, are further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.  Without such an order, there is a continuing threat to Plaintiffs and the members of the California Sub-Class, as well as to members of the general public, that Defendants will continue to improperly keep possession of unearned GAP Fees and fail to refund such fees to consumers after the early termination of their loan with Wells Fargo or repossession of their vehicle.

**FIFTH CLAIM**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**(CALIFORNIA CIVIL CODE SECTION 1750 et seq.)**
**(On Behalf of the California Subclass Only)**

73.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

74.      Plaintiffs Armando Herrera and Monica Herrera bring this claim for violation of *California's Consumer Legal Remedies Act, California Civil Code* section 1750 et seq. (the "CLRA") on behalf of themselves and the members of the California Sub-Class.

75.      The GAP Agreement is a consumer service contract covered by the CLRA.

76.      *California Civil Code* section 1770(a), subdivision (19) prohibits a seller of consumer goods or services from inserting an unconscionable provision in a contract.

77.      The GAP Agreements are adhesion contracts.

78.      Any provision in the GAP Agreements that purport to require Plaintiffs to affirmatively notify Wells Fargo or its agents that the loan with Wells Fargo has been paid off early or the vehicles has been repossessed as a prerequisite to receiving a refund is unfair, unconscionable and unenforceable, because Wells Fargo, as the lender, is already aware that the loan has been terminated early or the vehicle has been repossessed.   As such, Wells Fargo is aware that GAP coverage has been effectively cancelled because there can be no future GAP situation to protect against.   Thus, requiring customers to affirmatively cancel GAP coverage in these circumstances as a prerequisite to receiving a refund of unearned GAP Fees is unnecessary, overly harsh, unreasonably favors Wells Fargo and is unconscionable as a matter of fact and law.

79.      In light of this violation of the CLRA, Plaintiffs Armando Herrera and Monica Herrera, on behalf of themselves and the members of California Sub-Class, hereby seek an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite to a refund in these circumstances. Without such an order, there is a continuing threat to Plaintiffs and the members of the California Sub-Class, as well as to members of the general public, that Defendants will continue to improperly keep possession of unearned GAP Fees and fail to refund such fees to consumers after the early termination of the loan with Wells Fargo.

80.      Pursuant to *California Civil Code* section 1782, Plaintiffs have sent a CLRA Demand Letter via certified registered mail to Defendants demanding, *inter alia*, that Defendants refund all unearned GAP Fees and no longer require consumers to send a written notice of cancellation as a

1    prerequisite for a refund when there is an early termination of the underlying loan or a repossession of

2    the vehicle.  If Defendants fail to implement the requested corrective measures within thirty days of

3    receipt of the CLRA Demand Letter, or within a reasonable time thereafter, Plaintiff will amend this

4    claim to seek damages and punitive damages under the CLRA.

**SIXTH CLAIM**
**VIOLATIONS OF COLORADO'S CONSUMER PROTECTION ACT**
**(On Behalf of the Colorado Subclass Only)**

7        81.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation

8    contained above as though the same were fully set forth herein.

9        82.     Plaintiff Dena Lucero brings this claim for violation of the Colorado Consumer

10   Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, et seq. (the "CCPA") on behalf of herself and the

11   Colorado Sub-Class.

12       83.     The CCPA prohibits commercial activities and practices which, because of their nature,

13   may prove injurious, offensive or dangerous to the public.

14       84.     Defendants' practice of requiring customers to send a written notice of cancellation to

15   receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or

16   repossession of the vehicle is a deceptive and unfair trade practice proscribed by the CCPA.  There is

17   no reasonable basis to require customers to affirmatively cancel GAP coverage when the underlying

18   loan has been terminated early or the vehicle has been repossessed, because Wells Fargo, as the

19   lender, already knows that the underlying loan has been terminated or the vehicle has been

20   repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively cancelled

21   because there can be no future GAP situation to protect against.  Defendants' practice of requiring a

22   written notice of cancellation in these circumstances is substantially injurious to consumers who

23   typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees,

24   thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the consumers'

25   expense.  This substantial injury is not outweighed by any countervailing benefits to customers or

26   competition.

27       85.     Colorado regulations expressly provide that if the "consumer loan is prepaid prior to

28   maturity or the vehicle is no longer in the consumer's possession due to the creditor's lawful

repossession and disposition of the collateral, and if no GAP claim has been made, the creditor must refund to the consumer the unearned fee or premium paid for GAP" and "[i]f GAP was provided as a contractual term, the refund shall be made using a pro-rata method." 4 Colo. Code Regs. § 902-1 Rule 8 (h). Accordingly, Defendants' failure to provide a refund in these circumstances is an express violation of Colorado law.

86.    As a direct and proximate result of Defendants' violation of the CCPA, Plaintiff Dena Lucero and each of the members of the Colorado Sub-Class have been injured in fact and suffered lost money or property in that they failed to receive a refund of the unused portion of their prepaid GAP Fees after the early termination of their loan with Wells Fargo or repossession of their vehicle.

87.    Plaintiff Dena Lucero, on behalf of herself and the members of the Colorado Sub-Class, seeks the greater of the unearned GAP Fees that Wells Fargo failed to refund or $100 for each member, and/or three time each member's actual damages as provided for under the CCPA.

88.    Plaintiff Dena Lucero, on behalf of herself and the members of the Colorado Sub-Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.

### SEVENTH CLAIM
### VIOLATIONS OF ILLINOIS'S CONSUMER PROTECTION ACT
### (On Behalf of the Illinois Subclass Only)

89.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

90.    Plaintiff Vanity Arrington brings this claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (the "Illinois Consumer Act") on behalf of herself and the Illinois Sub-Class.

91.    The Illinois Consumer Act protects consumers against unfair or deceptive acts or practices in the conduct of any form of trade or commerce.

92.    Defendants' practice of requiring customers to send a written notice of cancellation to receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or

1  repossession of the vehicle is a deceptive and unfair trade practice proscribed by the Illinois Consumer

2  Act.  There is no reasonable basis to require customers to affirmatively cancel GAP coverage when

3  the underlying loan has been terminated early or the vehicle has been repossessed, because Wells

4  Fargo, as the lender, already knows that the underlying loan has been terminated or the vehicle has

5  been repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively cancelled

6  because there can be no future GAP situation to protect against.  Defendants' practice of requiring a

7  written notice of cancellation in these circumstances is substantially injurious to consumers who

8  typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees,

9  thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the consumers'

10  expense.  This substantial injury is not outweighed by any countervailing benefits to customers or

11  competition.

12      93.      As a direct and proximate result of Defendants' unfair or deceptive business practices,

13  Plaintiff Vanity Arrington and each of the members of the Illinois Sub-Class have been injured in fact

14  and suffered lost money or property in that they failed to receive a refund of the unused portion of

15  their prepaid GAP Fees after the early termination of their loan agreement with Wells Fargo or

16  repossession of their vehicle.

17      94.      Plaintiff Vanity Arrington, on behalf of herself and the members of the Illinois Sub-

18  Class, is seeking damages and restitution of the unearned GAP Fees that Wells Fargo failed to refund

19  in violation of the Illinois Consumer Act.  Further, Defendants acted with malice, fraud or gross

20  negligence, indicating a wanton disregard for the rights of others, therefore justifying the imposition of

21  punitive damages under the Illinois Consumer Act.

22      95.      Plaintiff Vanity Arrington, on behalf of herself and the members of the Illinois Sub-

23  Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees

24  after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing

25  any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for

26  a refund in these circumstances.

27

28

**EIGHTH CLAIM**
**VIOLATIONS OF MARYLAND'S CONSUMER PROTECTION ACT**
**(On Behalf of the Maryland Subclass Only)**

96.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

97.     Plaintiff Frederick Brown brings this claim for violation of the Maryland Consumer Protection Act, Md. Code Com. Law §§13-301, et seq. (the "MCPA") on behalf of himself and the Maryland Sub-Class.

98.     The MCPA prohibits unfair or deceptive trade practices. Md. Code. Com. Law §§13-301(1).

99.     Defendants' practice of requiring customers to send a written notice of cancellation to receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or repossession of the vehicle is a deceptive and unfair trade practice proscribed by the MCPA. There is no reasonable basis to require customers to affirmatively cancel GAP coverage when the underlying loan has been terminated early or the vehicle has been repossessed, because Wells Fargo, as the lender, already knows that the underlying loan has been terminated or the vehicle has been repossessed. As such, Wells Fargo is aware that GAP coverage has been effectively cancelled because there can be no future GAP situation to protect against. Defendants' practice of requiring a written notice of cancellation in these circumstances is substantially injurious to consumers who typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees, thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the consumers' expense. This substantial injury is not outweighed by any countervailing benefits to customers or competition.

100.     As a direct and proximate result of Defendants' unfair or deceptive business practices, Plaintiff Frederick Brown and each of the members of the Maryland Sub-Class have been injured in fact and suffered lost money or property in that they failed to receive a refund of the unused portion of their prepaid GAP Fees after the early termination of the loan agreement with Wells Fargo or repossession of their vehicle.

101.     Plaintiff Frederick Brown, on behalf of himself and the members of the Maryland Sub-Class, is seeking damages and restitution of the unearned GAP Fees that Wells Fargo failed to refund in violation of the MCPA.

102.     Plaintiff Frederick Brown, on behalf of himself and the members of the Maryland Sub-Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.

**NINTH CLAIM**
**VIOLATIONS OF NEW JERSEY'S CONSUMER PROTECTION ACT**
**(On Behalf of the New Jersey Subclass Only)**

103.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

104.     Plaintiff Anthony Dillard brings this claim for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq. (the "NJ Consumer Fraud Act") on behalf of himself and the New Jersey Sub-Class.

105.     The NJ Consumer Fraud Act prohibits any unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation.

106.     Defendants' practice of requiring customers to send a written notice of cancellation to receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or repossession of the vehicle is a deceptive and unfair trade practice proscribed by the NJ Consumer Fraud Act.  There is no reasonable basis to require customers to affirmatively cancel GAP coverage when the underlying loan has been terminated early or the vehicle has been repossessed, because Wells Fargo, as the lender, already knows that the underlying loan has been terminated or the vehicle has been repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively cancelled because there can be no future GAP situation to protect against.  Defendants' practice of requiring a written notice of cancellation in these circumstances is substantially injurious to consumers who typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees, thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the

consumers' expense.  Any contractual provision purporting to require customers to affirmatively cancel GAP coverage in these circumstances as a prerequisite to receiving a refund of unearned GAP Fees is unnecessary, overly harsh, unreasonably favors Wells Fargo and is unconscionable as a matter of fact and law.

107.    As a direct and proximate result of Defendants' unconscionable commercial practice, Plaintiff Anthony Dillard and each of the members of the New Jersey Sub-Class have been injured in fact and suffered lost money or property in that they failed to receive a refund of the unused portion of their prepaid GAP Fees after the early termination of the loan agreement with Wells Fargo or repossession of their vehicle.

108.    Plaintiff Anthony Dillard, on behalf of himself and the members of the New Jersey Sub-Class, is seeking damages and treble damages as provide for under the New Jersey Fraud Act.

109.    Plaintiff Anthony Dillard, on behalf of himself and the members of the New Jersey Sub-Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.

**TENTH CLAIM**
**VIOLATIONS OF NEW YORK'S CONSUMER PROTECTION STATUTE**
**(On Behalf of the New York Subclass Only)**

110.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

111.    Plaintiff Janet Corpes brings this claim for violation of the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq. (the "NY Consumer Protection Statute") on behalf of herself and the New York Sub-Class.

112.    The NY Consumer Protection Statute prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. Gen. Bus. Law § 349(a).

113.    Defendants' practice of requiring customers to send a written notice of cancellation to receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or

1    repossession of the vehicle is a deceptive and unfair trade practice proscribed by the NY Consumer

2    Protection Statute.  There is no reasonable basis to require customers to affirmatively cancel GAP

3    coverage when the underlying loan has been terminated early or the vehicle has been repossessed,

4    because Wells Fargo, as the lender, already knows that the underlying loan has been terminated or the

5    vehicle has been repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively

6    cancelled because there can be no future GAP situation to protect against.  Defendants' practice of

7    requiring a written notice of cancellation in these circumstances is substantially injurious to consumers

8    who typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP

9    Fees, thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the

10   consumers' expense.  This substantial injury is not outweighed by any countervailing benefits to

11   customers or competition.

12       114.    As a direct and proximate result of Defendants' deceptive practice, Plaintiff Janet

13   Corpes and each of the members of the New York Sub-Class have been injured in fact and suffered

14   lost money or property in that they failed to receive a refund of the unused portion of their prepaid

15   GAP Fees after the early termination of the loan agreement with Wells Fargo or repossession of their

16   vehicle.

17       115.    Plaintiff Janet Corpes, on behalf of herself and the members of the New York Sub-

18   Class, is seeking the greater of the unearned GAP Fees that Wells Fargo failed to refund or $50 for

19   each member, and/or treble damages for Defendants' willful violation of the NY Consumer Protection

20   Statute.

21       116.    Plaintiff Janet Corpes, on behalf of herself and the members of the New York Sub-

22   Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees

23   after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing

24   any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for

25   a refund in these circumstances.

26

27

28

1

### ELEVENTH CLAIM
### VIOLATIONS OF OHIO'S CONSUMER PROTECTION ACT
#### (On Behalf of the Ohio Subclass Only)

2

3    117.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation

4    contained above as though the same were fully set forth herein.

5    118.    Plaintiff Terri Jones brings this claim for violation of the Ohio Consumer Sales

6    Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq. ("OCSPA") on behalf of herself and the Ohio

7    Sub-Class.

8    119.    The OCSPA prohibits "unfair or deceptive" acts or practices in connection with

9    consumer transactions." Ohio Rev. Code Ann. § 1345.02(A).

10   120.    Defendants' practice of requiring customers to send a written notice of cancellation to

11   receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or

12   repossession of the vehicle is a deceptive and unfair trade practice proscribed by the OCSPA.  There is

13   no reasonable basis to require customers to affirmatively cancel GAP coverage when the underlying

14   loan has been terminated early or the vehicle has been repossessed, because Wells Fargo, as the

15   lender, already knows that the underlying loan has been terminated or the vehicle has been

16   repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively cancelled

17   because there can be no future GAP situation to protect against.  Defendants' practice of requiring a

18   written notice of cancellation in these circumstances is substantially injurious to consumers who

19   typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees,

20   thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the consumers'

21   expense.  This substantial injury is not outweighed by any countervailing benefits to customers or

22   competition.

23   121.    As a direct and proximate result of Defendants' unfair or deceptive practice, Plaintiff

24   Terri Jones and each of the members of the Ohio Sub-Class have been injured in fact and suffered lost

25   money or property in that they failed to receive a refund of the unused portion of their prepaid GAP

26   Fees after the early termination of their loan with Wells Fargo or repossession of their vehicle.

27

28

122.     Plaintiff Terri Jones, on behalf of herself and the members of the Ohio Sub-Class, is seeking damages and restitution of the unearned GAP Fees that Wells Fargo failed to refund in violation of the OCSPA.

123.     Plaintiff Terri Jones, on behalf of herself and the members of the Ohio Sub-Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.

**TWELFTH CLAIM**
**VIOLATIONS OF PENNSYLVANIA'S CONSUMER PROTECTION LAW**
**(On Behalf of the Pennsylvania Subclass Only)**

124.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

125.     Plaintiff Ria Marteins brings this claim for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. (the "UTPCPL") on behalf of herself and the Pennsylvania Sub-Class.

126.     The UTPCPL prohibits "unfair or deceptive acts or practices," including failing to comply with the terms of any written guarantee or warranty given to a consumer at, prior to or after a contract for the purchase of goods is made.  73 P.S. § 201-3.

127.     Defendants' practice of requiring customers to send a written notice of cancellation to receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or repossession of the vehicle is a deceptive and unfair trade practice proscribed by the UTPCPL.  There is no reasonable basis to require customers to affirmatively cancel GAP coverage when the underlying loan has been terminated early or the vehicle has been repossessed, because Wells Fargo, as the lender, already knows that the underlying loan has been terminated or the vehicle has been repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively cancelled because there can be no future GAP situation to protect against.  Defendants' practice of requiring a written notice of cancellation in these circumstances is substantially injurious to consumers who typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees,

1   thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the consumers'

2   expense.  This substantial injury is not outweighed by any countervailing benefits to customers or

3   competition.

4        128.     As a direct and proximate result of Defendants' unfair or deceptive practice, Plaintiff

5   Ria Marteins and each of the members of the Pennsylvania Sub-Class have been injured in fact and

6   suffered lost money or property in that they failed to receive a refund of the unused portion of their

7   prepaid GAP Fees after the early termination of their loan with Wells Fargo or repossession of their

8   vehicle.

9        129.     Plaintiff Ria Marteins, on behalf of herself and the members of the Pennsylvania Sub-

10   Class, is seeking the greater of the unearned GAP Fees that Wells Fargo failed to refund or $100 for

11   each member, and/or treble damages for Defendants' willful violation of the UTPCPL.

12        130.     Plaintiff Ria Marteins, on behalf of herself and the members of the Pennsylvania Sub-

13   Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees

14   after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing

15   any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for

16   a refund in these circumstances.

**THIRTEENTH CLAIM**
**VIOLATIONS OF WISCONSIN'S CONSUMER PROTECTION ACT**
**(On Behalf of the Wisconsin Subclass Only)**

19        131.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation

20   contained above as though the same were fully set forth herein.

21        132.     Plaintiff Gretta Carter brings this claim for violation of the Wisconsin Deceptive Trade

22   Practices Act, Wis. Stat. § 100.18, et seq. (the "DTPA") on behalf of himself and the Wisconsin Sub-

23   Class.

24        133.     The DTPA prohibits unfair trade practices in business as well as making untrue,

25   deceptive or misleading representations or statements in the sale, use, distribution or intent to induce

26   the public in any manner to enter into any contract or obligation relating to the purchase or sale of a

27   service.  Wis. Stat. § 100.18(1); 100.20(1).

28

134.     Defendants' practice of requiring customers to send a written notice of cancellation to receive a refund of unearned GAP Fees after an early termination of the loan with Wells Fargo or repossession of the vehicle is a deceptive and unfair trade practice proscribed by the DTPA.  There is no reasonable basis to require customers to affirmatively cancel GAP coverage when the underlying loan has been terminated early or the vehicle has been repossessed, because Wells Fargo, as the lender, already knows that the underlying loan has been terminated or the vehicle has been repossessed.  As such, Wells Fargo is aware that GAP coverage has been effectively cancelled because there can be no future GAP situation to protect against.  Defendants' practice of requiring a written notice of cancellation in these circumstances is substantially injurious to consumers who typically will not be aware and/or remember they are entitled to a refund of their prepaid GAP Fees, thereby allowing Defendants to keep the unearned fees and be unjustly enriched at the consumers' expense.  This substantial injury is not outweighed by any countervailing benefits to customers or competition.

135.     As a direct and proximate result of Defendants' unfair trade practice, Plaintiff Gretta Carter and each of the members of the Wisconsin Sub-Class have been injured in fact and suffered lost money or property in that they failed to receive a refund of the unused portion of their prepaid GAP Fees after the early termination of their loan with Wells Fargo or repossession of their vehicle.

136.     Plaintiff Gretta Carter on behalf of himself and the members of the Wisconsin Sub-Class, is seeking damages and/or double damages for Defendants' willful violation of the DTPA.

137.     Plaintiff Greta Carter on behalf of himself and the members of the Wisconsin Sub-Class, is further seeking an order enjoining Defendants from improperly retaining unearned GAP Fees after the underlying loan has been terminated or the vehicle has been repossessed and from enforcing any policy that purports to require customers to proactively cancel GAP coverage as a prerequisite for a refund in these circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants and in favor of Plaintiffs, the Nationwide Class, and Sub-Classes, and award the following relief:

1.   An order certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Nationwide Class and Sub-Classes, and Plaintiffs' counsel as Class Counsel for the National Class and Sub-Classes;

2.   An order finding that the conduct herein be declared, adjudged and decreed to be unlawful;

3.   An award to Plaintiffs and the members of the Classes all appropriate relief, including actual damages, statutory damages, double damages, treble damages, punitive damages, consequential damages, restitution, disgorgement, and any other appropriate compensatory, equitable, or exemplary relief;

4.   An award of all costs of prosecuting the litigation, including expert fees;

5.   An award of pre- and post-judgment interest;

6.   An award of attorneys' fees; and

7.   An order granting any such additional relief as this Court may deem just and proper.

8.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all claims in this action.

Dated:  February 27, 2018        FRANK SIMS & STOLPER LLP

_____
*/s/s Jason M. Frank*
JASON M. FRANK, ESQ.
ANDREW STOLPER, ESQ
SCOTT H. SIMS, ESQ.

*Attorneys for Plaintiffs*

Dated:  February 27, 2018        FRANKLIN D. AZAR & ASSOCIATES, P.C.

_____
*/s/ Ivy T. Ngo*
IVY T. NGO (249860)
FRANKLIN D. AZAR (*pro hac vice*)
BRIAN HANLIN (*pro hac vice*)

*Attorneys for Plaintiffs*

1    Dated:  February 27, 2018                    LEVIN SEDRAN & BERMAN

2
                                                      _____*/s/ Charles E. Schaffer*_____
3                                                    CHARLES E. SCHAFFER (*pro hac vice*)
                                                      DANIEL C. LEVIN (*pro hac vice*)
4
                                                      *Attorneys for Plaintiffs*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28