1  JASON M. FRANK (190957)
   ANDREW D. STOLPER (205462)
2  SCOTT H. SIMS (234148)
   FRANK SIMS & STOLPER LLP
3  19800 MacArthur Blvd., Suite 855
   Irvine, CA 92612
4  Telephone:   (949) 201-2400
   Facsimile:   (949) 201-2405
5
   FRANKLIN D. AZAR (*pro hac vice*)
6  FRANKLIN D. AZAR & ASSOCIATES, P.C.   CHARLES E. SHAFFER (*pro hoc vice*)
   14426 East Evans Avenue                LEVIN SEDRAN & BERMAN
7  Aurora, CO 80014                       510 Walnut Street, Suite 500
   Telephone:   (303) 757-3300             Philadelphia, PA 19106
8  Facsimile:   (303) 759-5203             Telephone:   (215) 592-1500
                                           Facsimile:   (215) 592-4663
9

10 *Attorneys for Plaintiffs, the Proposed Class and Subclasses*

11                **UNITED STATES DISTRICT COURT**

12                **CENTRAL DISTRICT OF CALIFORNIA**

13

14 ARMANDO HERRERA, EDUARDO      | Case No.:  8:18-cv-00332-JVS-MRW
   SALCEDO, DENA LUCERO,         |
15 FREDERICK BROWN, VANITY       | **CLASS ACTION**
   ARRINGTON, KASHIF Z. AWAN,    |
16 GRETTA CARTER, JAMES          | FIRST AMENDED COMPLAINT FOR:
   ATKINS, ILKA ROBINSON-        |
17 EATON, JANET CORPES, TERRI    |   (1) BREACH OF CONTRACT;
   JONES, HEIDI HUMPHREYS, RIA   |
18 MARTEINS, BRIAN T. SWEENEY,   |   (2) VIOLATIONS OF THE TRUTH-IN-
   NAKECIA M.  DEAN, and VON     |       LENDING ACT;
19 GRIFFIN each individually and on |
   behalf of all others similarly situated, |
20                                |   (3) MONEY HAD AND RECEIVED;
                 Plaintiffs,      |
21                                |   (4) VIOLATIONS OF THE
   vs.                            |       CALIFORNIA UNFAIR BUSINESS
22                                |       PRACTICES ACT;
   WELLS FARGO BANK, N.A. D/B/A   |
23 WELLS FARGO DEALER            |
   SERVICES, INC., a national     |   (5) VIOLATIONS OF THE
24 association, and WELLS FARGO & |       CALIFORNIA CONSUMER
   COMPANY, a corporation         |       LEGAL REMEDIES ACT; and
25                                |
                 Defendants.      |   (6) DECLARATORY RELIEF
26                                |
27                                | **JURY TRIAL DEMANDED**
28

Plaintiffs Armando Herrera (California), Eduardo Salcedo (California), Dena Lucero (Colorado), Frederick Brown (Delaware), Vanity Arrington (Illinois), Kashif Z. Awan (Illinois), Gretta Carter (Illinois), James Atkins (Kentucky), Ilka Robinson-Eaton (Maryland), Janet Corpes (New Jersey), Terri Jones (Ohio), Heidi Humphreys (Pennsylvania), Ria Marteins (Pennsylvania), Brian T. Sweeney (Texas), NaKecia M. Dean (Wisconsin), and Von Griffin (Wisconsin) (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendants Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services, Inc. and Wells Fargo & Company (collectively, "Wells Fargo") to recover monetary damages, injunctive relief, and other remedies for breach of contract, violations of the Truth-in-Lending Act, money had and received, violations of the California Unfair Business Practices Act, violations of the California Consumer Legal Remedies Act and declaratory relief.   The following allegations are based upon Plaintiffs' personal knowledge with respect to their own acts and based upon information and belief as to all other matters.

## INTRODUCTION

1.     This action concerns Wells Fargo's practice of knowingly collecting unearned fees for Guaranteed Automobile Protection Waivers ("GAP Waiver").  GAP Waivers are included in automobile finance agreements as an addendum to the agreement.  Wells Fargo collects the unearned fees when customers pay off their finance agreements early (i.e., before the end of the original loan term).  Wells Fargo knows these fees have not and will never be earned but collects them anyway.  Wells Fargo then refuses to refund this unearned money, even though Wells Fargo is contractually obligated to do so as the creditor and assignee of the finance agreement and GAP Waiver. As a result of this practice, Wells Fargo knowingly collects and keeps approximately $100 million *per year* in unearned fees from its customers.  It has been engaging in this practice for more than a decade.

2.     At a Congressional Hearing on March 10, 2020, Wells Fargo's new C.E.O., Charles Scharf, was asked questions about this lawsuit and Wells Fargo's practice of

1  collecting and failing to refund unearned GAP fees.  Specifically, Mr. Scharf was asked
2  by Representative Katie Porter whether Wells Fargo would "commit to giving customers
3  this money back."  Mr. Scharf testified in response: "There's no question if we've harmed
4  customers, that we should in fact do that, and we'll go back and take look at the specific
5  example and understand why it hasn't been done and how we can move quickly to rectify
6  it."  Wells Fargo has not yet lived up to this promise.

## FACTUAL BACKGROUND

8      3.    **What is a Finance Agreement?**  Customers often finance the purchase of
9  their car by entering into a finance agreement with the automobile dealership (the
10 "dealer").  Under the finance agreement, the customer agrees to pay for the car in monthly
11 installments, with interest, over a multi-year term.   These finance agreements are
12 commonly referred to as "retail installment sales contracts" ("RISC"), because the car is
13 being purchased over time in "installments."

14     4.    **What is a GAP Waiver?**  A GAP Waiver is an addendum to the finance
15 agreement.  It provides that if a customer suffers a "total loss"[1] and the insurance payout
16 for the car is insufficient to pay off the remaining loan balance, then the creditor on the
17 finance agreement will agree to waive the
18 difference.   This difference is known as the
19 "GAP."  For example, assume a customer's car
20 is stolen and they still owe $10,000 on their
21 finance agreement.  Also, assume the customer's
22 liability insurer only agrees to pay $8,000 for the
23 "total loss," because that is the car's "actual cash
24 value."  Without a GAP Waiver addendum, the
25 customer would still owe the $2,000 difference
26 to the creditor on the finance agreement, even
27 though the customer no longer possesses the vehicle.  However, if the finance agreement



**Gap Definition Example 1**

The image above shows how gap is sold.  Many customer's will tell you verbatim the salesman at the dealership said: "after the insurance pays the gap will cover the rest of the balance"

---

[1] A "total loss" means the customer's car is stolen or damaged beyond repair.

3

has a GAP Waiver, then the creditor is required to "waive" the $2,000 difference.

5.  **How does a Customer obtain a GAP Waiver?**  To obtain a GAP Waiver, the customer and the dealer execute a GAP Waiver form which amends the terms of the finance agreement and becomes a part of the contract.  The GAP Waiver addendums are standard form contracts that are offered to the customer on a "take-it-or-leave it" basis (i.e., they are contracts of adhesion.)

6.  **How does a Customer Pay for a GAP Waiver?**  The customer finances the cost of the GAP coverage for the full term of the loan – for example, $800 for a four-year loan ("GAP fees").  The GAP fees are included as a separate line item in the finance agreement.  They are incrementally paid in monthly installments by the customer over the life of the loan, with interest, along with the rest of the purchase price of the car.  In other words, while the customer is told up-front what the total cost of the GAP coverage would be for the full term of the loan, the customer actually pays this amount incrementally over time to the creditor on a month-to-month basis as part of their "car payments."  These GAP fees are often referred to as "GAP premiums," because they are similar to insurance premiums.

7.  **What are "Unearned GAP Fees"?**  Every GAP Waiver provides that if the finance agreement is paid off early, or if the GAP coverage is otherwise cancelled before the end of the loan term, then the customer is entitled to a refund of the unused portion of the GAP fees.  For example, if the total GAP fees for four years of GAP coverage are $800, but the customer pays off their finance agreement in two years, then the customer would be entitled to a refund of half of the GAP fees ($400) for the unused half of the loan.[2]  Wells Fargo and the rest of the financial industry refer to the unused portion of the fees as "unearned" GAP fees.  They are "unearned" because once the finance agreement is paid-off early, there is no possibility of a GAP and the customer is no longer receiving anything of value by paying for GAP protection.  Thus, the customer is entitled

---

[2] Some GAP Waiver addendums also include an early cancellation fee provision which may reduce the refund if applicable.

to their money back for the unused term of the loan.  The unearned GAP fees are analogous to unearned insurance premiums which are refunded to a customer when they cancel their homeowners or automobile liability insurance before the end of the policy period.

8.     **How Does Wells Fargo Become the "Creditor" on the Finance Agreement and GAP Waiver?**  As noted above, the customer initially enters the finance agreement and GAP Waiver with the dealer -- who is the initial "creditor" on the loan. However, the dealer then sells and assigns the finance agreement with the GAP Waiver to a financial institution, like Wells Fargo.  This sale and assignment often occurs simultaneously with the sale of the car, or within the next 72 hours.  Thereafter, all of the customer's payments and interactions concerning the finance agreement are with Wells Fargo.  Once Wells Fargo purchases the finance agreement and GAP Waiver, Wells Fargo, as the assignee, "steps into the shoes" of the dealer and becomes the "creditor" on the loan, legally assuming all of the benefits and contractual obligations under the finance agreement and GAP Waiver.  This includes the obligation to refund any unearned GAP fees it collects as a result of the early termination of the finance agreement.

9.     **Wells Fargo Pre-Approves All GAP Waiver Addendums Before Purchasing Loans from Dealers.**  Before Wells Fargo purchases a finance agreement, it knows if the finance agreement contains a GAP Waiver addendum.  The front page of the finance agreement indicates if it includes a GAP Waiver, and it will also separately list the amount of the GAP fees.  Wells Fargo also receives a copy of the customer's finance agreement and GAP Waiver addendum from the dealer.  In addition, Wells Fargo pre-approves all GAP Waiver forms used by the dealers it does business with, so Wells Fargo is well aware of the GAP Waiver's refund obligations.

10.     **Does the Dealer Continue to Owe GAP Waiver Obligations to the Customer after the Assignment to Wells Fargo?**  No.  As one of the widely used GAP Waiver forms explains, once the contract is assigned to a financial institution like Wells Fargo, the dealer will "no longer be a party to the GAP Addendum and the agreement

will be between the customer and the assigned financial institution." This, of course, makes sense because, after the assignment, the customer owes all of the installment payments and interest to Wells Fargo, not the dealer. Consequently, if the customer suffers a "total loss," Wells Fargo is the only party capable of waiving the "GAP" because Wells Fargo is the creditor that is owed the payments. In fact, it would be impossible for anyone other than the current creditor (Wells Fargo) to waive the customer's remaining loan balance. Likewise, if there was an overpayment of GAP fees as a result of the early termination of the finance agreement, it is Wells Fargo's obligation to refund the overpayment to the customer.

11.     **How is Wells Fargo Collecting Unearned GAP Fees?** When a customer wants to pay off their finance agreement early (i.e., before the end of the loan term), Wells Fargo informs the customer of the total payoff amount. But when it does so, Wells Fargo includes the *full remaining cost* of the GAP Waiver in the total payoff amount and does not provide any credit reduction for the unearned GAP fees. In other words, at the time of payoff, Wells Fargo collects the unearned GAP fees for the remaining term of the loan, even though Wells Fargo knows these fees are not earned, and can never be earned, because the finance agreement is terminating early. Wells Fargo will then keep those unearned fees unless the customer takes further action to obtain a refund.

12.     **Wells Fargo has Collected and Failed to Refund Over $100 Million Per Year in Unearned GAP Fees.** Wells Fargo knows customers are entitled to a refund of unearned GAP fees when they pay off their finance agreement early, but it collects the unearned GAP fees anyway. Wells Fargo's management admitted in a deposition the company is aware most customers will not know or remember they are entitled to this money back. This has enabled Wells Fargo to collect and keep over $100 million per year in unearned GAP fees that rightfully belong to their customers. For example, in this lawsuit, Wells Fargo produced financial records for an approximate six-year period from August 31, 2012 to September 15, 2018. The records indicate out of 1,817,554 loans with GAP Waivers that were paid off early, only 94,079 customers (approximately 5%)

received a refund.  During this same six-year period, Wells Fargo collected and failed to refund an average of approximately $357.65 per customer in unearned GAP fees from 1,723,475 customers.  As a result, during this six-year period, Wells Fargo pocketed over $616.3 million dollars of money that rightfully belongs to its customers.   And this practice continues to this day.

| Summary of Unearned GAP Fees Collected and Unrefunded By Wells Fargo for Customers Who Paid Off Their Loans Early (August 31, 2012 – September 15, 2018) | |
|---|---|
| **Number of Loans with GAP Waivers Paid Off Early** | 1,817,522 |
| **Number of Customers Who DID NOT Receive Refunds** | 1,723,475 |
| **Number of Customers Who DID Receive Refunds** | 94,079 |
| **Percentage of Customers Who DID NOT Receive Refunds** | 94.8% |
| **Average Amount of Unearned Fees Per Customer Collected and Unrefunded By Well Fargo (Using Pro Rata Method)** | $357.65 |
| **TOTAL UNEARNED FEES COLLECTED & UNREFUNDED BY WELLS FARGO** | **$616,396,342** |

13.     **Wells Fargo Actively Conceals its Obligation to Issue the Refund.**  After customers' loans are paid off early, Wells Fargo sends them an "early payoff" form letter. In this letter, Wells Fargo uniformly and misleadingly informs customers that they "may" be entitled to a refund of a portion of their GAP fees and they should contact the dealer

if they have questions about the "possible refund."[3]  These statements are misleading for two reasons.  First, Wells Fargo knows GAP Waivers provide for a refund when customers pay off their finance agreement early, and Wells Fargo can calculate the amount of the refund owed to each of its customers from its own records.[4]  So, using the words "may" and "possible refund" is deceptive and false.  Second, Wells Fargo is the party that owes the contractual obligation to the customers to issue the refund.  Consequently, misdirecting customers to contact the dealer -- with whom the customer may not have had any interaction since the vehicle was purchased -- is another way to deter customers from obtaining their money back from Wells Fargo.  As indicated above, Wells Fargo knows most customers will not go back to the auto dealership where they originally purchased their vehicle to find out if they "may" be entitled to a refund of some undisclosed amount.

14.  **Wells Fargo Wrongfully Denies it has as a Contractual Obligation to its Customers to Issue the Refund of Unearned GAP Fees.**  In an attempt to excuse its wrongful conduct, Wells Fargo contends the dealer is the party contractually obligated to issue the refund to the customer under the GAP Waiver, not Wells Fargo.  In other words, even though the customer pays the unearned fees to Wells Fargo, Wells Fargo contends the customer has to go back to the original auto dealership that sold them the vehicle to obtain the refund.  This is wrong as a matter of law and fact for the following reasons, among others:

a.  *First,* when Wells Fargo accepts the assignment of the finance agreement and GAP Waiver from the dealer, it "steps into the shoes" of the dealer and

---

[3] A later version of the "early payoff" form letter adopted in 2018 indicates that the customer may also contact the "GAP Insurance Administrator" to inquire about the "possible refund amount."

[4] If the GAP Waiver has an applicable early "cancellation fee" provision, it is theoretically possible the cancellation fee will be greater than the unearned GAP fees depending on how late in the term the contract is paid off.  But Wells Fargo is fully able to calculate these amounts, and therefore knows when a customer is entitled to a refund.

becomes the sole "creditor" on the agreement.  As the assignee and creditor, Wells Fargo assumes all the benefits and obligations of the finance agreement, including, but not limited to, the GAP Waiver's contractual obligation to the customer to refund the unearned GAP fees after the early payoff of the finance agreement.  In other words, just like Wells Fargo assumes the obligation as the creditor to waive the GAP in the event of a "total loss" of the vehicle, it also assumes the GAP Waiver's contractual obligation to issue the refund of the unearned GAP fees.  Simply put, after the assignment, there are only two parties to the contract: Wells Fargo and the customer.  Therefore, Wells Fargo is the only remaining party to the contract that the customer may "look to" to enforce the GAP Waiver's contractual refund obligations.

b.   *Second,* every finance agreement in this case, as a matter of federal law, is required to include a provision disclosing that: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof" up to the amount paid by the debtor under the agreement.  (16 C.F.R. § 433.2.)  This regulation, known as the "holder rule," codifies the principle that the assignee of the finance agreement (Wells Fargo, the "holder" of the consumer credit contract) steps into the shoes of the original seller (the dealer), and is responsible for all claims the debtor (the customer) could have originally asserted against the seller (the dealer).  Consequently, whereas the dealer initially owed the GAP Waiver's refund obligations to the customer as the original seller of the service, Wells Fargo took over those obligations once it became the "holder" of the contract as the assignee.

c.   *Third,* a number of States have enacted specific statutes or regulations concerning GAP Waivers, which likewise codify the principle that the assignee of the finance agreement is the party required to refund the unearned GAP fees to the customer.[5]

[5] Wells Fargo has admitted these states include, at a minimum, Alabama, Colorado, Indiana, Iowa, Massachusetts, Oregon, Texas, Vermont and Wisconsin.

d.      *Fourth*, the GAP Waivers contain language evidencing this legal principle.  For example, the GAP Waiver forms typically contain assignment provisions stating that the addendum is between the customer and the dealer, or if assigned, with the assignee.  The forms also typically define the term "We" as including the assigned financial institution (Wells Fargo) and provide that "We will issue the refund" or "We will waive" the GAP.  In sum, the common law and evidence establishes that Wells Fargo is the party contractually obligated under the GAP Waiver to refund the unearned GAP fees to the customer.

15.      **Wells Fargo Always Receives Written Notice of an Early-Payoff.**  As a fallback position, Wells Fargo contends customers forfeited the right to their money back by failing to comply with notice provisions in the GAP Waiver addendums.  Specifically, Wells Fargo argues these provisions require written notice of the early payoff be sent to Wells Fargo, the dealer, or their agents, as a precondition to the refund.  This is wrong as a matter of law and fact for the following reasons, among others:

a.      *First,* Wells Fargo, as the creditor and recipient of the final payoff of the finance agreement, always receives written notice that the loan has been paid off early thereby entitling customers to a refund of the unearned GAP fees.  Specifically, customers make their final payments to Wells Fargo in the form of written checks, wires or electronic payments, and Wells Fargo notes the final payments, in writing, in their records and confirms the same, in writing, to the customer.  As such, customers have always complied with any purported "written notice" requirements to Wells Fargo because Wells Fargo actually received written notice of the early payoff.

b.      *Second*, as established above, after the assignment, Wells Fargo is the party with the refund obligation.  Consequently, Wells Fargo is the only party that needs to be placed on notice of the early payoff (i.e., the event triggering the refund), not the dealer or an agent.

c.      *Third,* under the "substantial compliance" doctrine, customers do not forfeit their rights to refunds by failing to strictly comply with notice provisions, so long

as the deficiency in performance is not "so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract." In other words, "technical deviations" from a contract provision will not result in a forfeiture when one party to the contract "substantially obtained the benefit it expected" and "it would amount to an injustice to deny relief" to the other party. In the context of the present case, any "technical deviations" from the GAP Waiver's notice provisions did not "frustrate the purpose" of such provisions, because the party with the refund obligation (Wells Fargo) did, in fact, receive actual notice that it was obligated to make the refund as a result of the early termination of the finance agreement. Wells Fargo does not need any additional information from its customers to determine the customers' entitlement to a refund in these circumstances. This is starkly demonstrated by the fact that, after the filling of this lawsuit, Wells Fargo began automatically and directly refunding unearned GAP fees to its "early payoff" customers in certain limited States (as discussed in Paragraph 16 below). It would be an injustice to find that customers forfeited their rights to a refund by failing to provide some form of further notice to Wells Fargo, the dealer or their agents, when Wells Fargo already knows it is required to issue the refund. To hold otherwise would allow Wells Fargo to inequitably profit at the expense of its customers by keeping hundreds of millions of dollars of fees that have not been earned and will never be earned, simply because the customer did not perform some act that Wells Fargo does not need to determine its refund obligations.

16.    **Wells Fargo Has Been Aware Since at least 2014 It was Violating Certain State Laws and Regulations by Failing to Directly Refund Unearned GAP Fees.** No later than 2014, Wells Fargo's compliance department determined Wells Fargo was violating certain state laws and regulations by failing to directly refund unearned GAP Fees to customers after the early payoff of their loans. Nevertheless, Well Fargo did not begin refunding customers in those states until December 2018, more than 10 months *after* the filing of this lawsuit in February 2018. At that time, Wells Fargo publicly stated it would pay past refunds to customers in those states -- Alabama,

Colorado, Indiana, Iowa, Massachusetts, Nevada, Oregon, Texas, Vermont and Wisconsin -- going back as far as 2008. However, Wells Fargo refuses to pay the substantial interest that has accrued on those unpaid amounts to each of the affected customers in those states. Further, there is evidence Wells Fargo is not *actually* refunding customers in those states, even though it publicly represented it would do so. This is why an adjudication of Wells Fargo's refund obligations in the aforementioned states remains necessary.

17. **Wells Fargo Continues to Collect and Fail to Refund Unearned GAP Fees for the Majority of the States.** For the rest of the country, including California, Wells Fargo is continuing its unlawful practice of collecting unearned GAP fees upon an early payoff of the loan, and refusing to automatically refund those fees to its customers. Accordingly, Plaintiffs on behalf of themselves and a Class of similarly situated consumers are seeking:

a. An order requiring Wells Fargo to refund all unearned GAP fees it collected after the early payoff of the finance agreement to every customer in the United States;

b. An order requiring Wells Fargo to pay the interest that accrued on the delinquent refunds;

c. An order requiring Wells Fargo, on a go forward basis, to either: (i) refrain from collecting unearned GAP fees upon an early payoff of the finance agreement; or (ii) directly refund those unearned fees back to the customer promptly after the termination of the finance agreement; and

d. Damages, restitution and all other relief as may be just and proper.

## THE HISTORY AND STRUCTURE BEHIND GAP WAIVERS

18. For background purposes, it is helpful to understand the history of why GAP Waivers were created and the structure behind them.

19. **GAP Waivers were Created as an Alternative to GAP Insurance.** GAP Waivers were created as an alternative to GAP Insurance. GAP Insurance is a contract

between an insurance company and a customer, in which the insurer agrees to cover the customer's GAP in the event of a total loss of the vehicle.  For example, with GAP Insurance, if a total loss occurs and the current value of the vehicle is worth less than the amount owed to the creditor, then the insurance company will pay the creditor the difference.  In other words, the insurance company is paying off the loan balance on the customer's behalf.  The customer pays insurance premiums directly to the insurance company for this coverage.

20.   **What are the Key Differences Between GAP Waivers and GAP Insurance?**   From the customer's perspective, GAP Insurance provides the same protection as a GAP Waiver, because under both products, the customer will no longer owe any further payment obligations to the creditor in the event of a total loss of the vehicle.  However, there are a number of key differences:

a.   *First*, with a GAP Waiver, the customer is directly contracting with the creditor, whereas with GAP Insurance, the customer is directly contracting with a third-party insurance company;

b.   *Second*, with a GAP Waiver, the creditor is agreeing to waive the GAP, whereas with GAP Insurance, the insurer is agreeing pay the creditor the amount of the GAP on the customer's behalf;

c.   *Third*, with a GAP Waiver, the customer is directly paying the creditor for the GAP protection, whereas with GAP Insurance, the customer is paying premiums to a third-party insurance company; and

d.   *Fourth*, GAP Insurance is subject to state insurance regulations, whereas GAP Waivers typically are not.

21.   **GAP Waivers were Created by the Auto Lending Industry as a means to Avoid Insurance Regulations.**   The fact that GAP Insurance is subject to state insurance regulations posed a particular problem for the auto lending industry.  This is because auto dealers may need an insurance license to offer GAP Insurance to their customers.   To circumvent this regulation, the auto lending industry created GAP

Waivers, whereby the creditor on the finance agreement agrees to waive the GAP in the event of a total loss of the vehicle.  This way, a GAP Waiver is considered to be a "debt cancellation agreement," rather than insurance, because the creditor is writing-off the remaining balance.  And, because "debt cancellation agreements" are generally not subject to insurance regulations, the dealers can offer GAP Waivers without an insurance license.  While this may be a creative solution to avoid insurance regulations, it comes with the consequence that the creditor (rather than the insurance company) is now directly assuming contractual obligations under the GAP Waiver to the customer, including the obligation to refund the unearned GAP Fees when there has been an early termination of the finance agreement.

22.  **What is a GAP Administrator?**  A GAP Administrator is a company that provides administrative services to the creditor on the GAP Waiver.  In other words, the GAP Administrator serves as the agent of the creditor (which is initially the dealer, but then becomes Wells Fargo after the assignment.)  The GAP Administrator agrees to provide its services for each GAP Waiver addendum sold by the dealer to its customers, and to provide those services to the new creditor (Wells Fargo) after the assignment of the finance agreement and GAP Waiver.  In exchange, the dealer is required to pay a fee to the GAP Administrator for each GAP Waiver addendum it sells.  The GAP Administrator provides the dealer with its own GAP Waiver forms.[6]  The GAP Administrator also obtains insurance on the creditor's behalf, so that if the ultimate creditor on the GAP Waiver addendum (Wells Fargo) has to waive a GAP, it will be reimbursed by the GAP Administrator's insurer.

23.  **Are GAP Administrators Parties to the GAP Waiver?**  No.  GAP Administrators do not execute the GAP Waiver and are not parties to the contract with

---

[6] As noted above, unless Wells Fargo has pre-approved the GAP Waiver form, Wells Fargo will not acquire a loan from the dealer that includes a GAP Waiver addendum. The reason for this is obvious: When Wells Fargo acquires the loan, it is doing so subject to the terms of the GAP Waiver addendum – so Wells Fargo naturally wants to ensure the terms meet with its approval.

the customer.  Instead, GAP Administrators owe their obligations to the creditor pursuant to a separate agreement between the administrator and the dealer.

24.     **How Does Wells Fargo Benefit from the Sale of GAP Waivers?**  As a result of this structure, Wells Fargo receives two primary benefits from the sale of GAP Waivers.  *First*, because the cost of a GAP Waiver is financed, Wells Fargo receives interest on the GAP fees, which amounts to tens of millions of dollars of additional revenue each year to Wells Fargo.  *Second*, Wells Fargo receives insurance protection from the GAP Administrator's insurer because Wells Fargo will be made whole in the event of a "total loss" of the car.  Without a GAP Waiver, if there is a "total loss," Wells Fargo's loan becomes uncollateralized, meaning if the customer cannot or will not pay the remaining loan balance, there is no car (i.e., collateral) to repossess and Wells Fargo will have to write-off the balance as "bad debt."  And even if Wells Fargo could collect the deficiency, it would need to incur the time, effort and cost of collection.  So, the GAP Waiver actually protects the creditor as much as it does the customer.

25.     **What Happens if the Dealer Does Not Pay the GAP Administrator?**  Sometimes a customer enters a GAP Waiver addendum, but the dealer fails to pay the GAP Administrator the fee related to the GAP Waiver.  As a result, the GAP Administrator will rightly refuse to provide any services to the creditor (Wells Fargo) for that customer's GAP Waiver.  Further, the GAP Administrator's insurer will refuse to reimburse the creditor (Wells Fargo) if the creditor has to waive a loan balance under that GAP Waiver addendum.  In these circumstances, Wells Fargo will still waive the loan balance (i.e., the "GAP") if the customer suffers a "total loss" because Wells Fargo is still contractually obligated to do so under the finance agreement and GAP Waiver with its customer.  This underscores the key difference between GAP Insurance and a GAP Waiver: under a GAP Waiver, the obligations to the customer are owed directly by the creditor on the finance agreement (Wells Fargo), not an insurer.

**JURISDICTION AND VENUE**

26.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one of the defendants, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

27.    Venue is proper in the Central District of California under 28 U.S.C. § 1391. Wells Fargo regularly conducts business in the Central District and a substantial part of the events giving rise to the claims asserted herein occurred in this district in Orange County, California.  Wells Fargo conducts its automobile lending business through its division, Wells Fargo Dealer Services, Inc., whose corporate headquarters is in Irvine, California.  On information and belief, the executives and managers who oversaw Wells Fargo's GAP Waiver refund policies and procedures were primarily based in this venue. Further, venue is appropriate in the Southern Division of the Central District because 50% or more of the defendants residing in the Central District reside in Orange County, California.

**THE PLAINTIFFS**

28.    Plaintiffs are individuals (a) who entered into finance agreements with GAP Waiver addendums that were assigned to Wells Fargo, (b) who paid off their finance agreements to Wells Fargo before the end of the loan term, and (c) who did not receive a refund of the unearned GAP fees collected by Wells Fargo and/or the accrued interest on those unpaid amounts.

29.    Below is a chart setting forth: (a) the name of each named plaintiff ("Plaintiff"); (b) their current state of residence ("Residence State"); (c) the state where they purchased their car and entered the finance agreement and GAP Waiver addendum ("Transaction State"); (d) the date they entered the finance agreement and GAP Waiver addendum ("Contract Start Date"); (e) the length of the loan term in years ("Loan Term (Years)"), (f) the date their finance agreement was paid off ("Early Payoff Date"), (g) the total GAP fees collected by Wells Fargo ("Total GAP Fees Collected") and the estimated

amount of unearned GAP fees that Wells Fargo failed to refund based on the pro rata method ("Unearned GAP Fees Collected").

| Plaintiff | Residence State | Transaction State | Contract Start Date | Loan Term (Years) | Early Payoff Date | Total GAP Fees Collected | Unearned GAP Fees Collected (Estimated) |
|---|---|---|---|---|---|---|---|
| Armando Herrera | CA | CA | 7/19/14 | 5 years | 2/2/17 | $800.00 | $460.95 |
| Eduardo Salcedo | CA | CA | 2/12/11 | 3 years | 5/13/13 | $595.00 | $149.29 |
| Dena Lucero | CO | CO | 12/31/14 | 5 years | 8/11/17 | $300.00 | $147.03 |
| Frederick Brown | MD | DE | 9/13/11 | 5 years | 7/22/16 | $895.00 | $33.04 |
| Vanity Arrington | IL | IL | 6/1/13 | 4.5 years | 3/13/17 | $760.00 | $127.35 |
| Kashif Awan | IL | IL | 3/24/16 | 6 years | 10/4/18 | $649.00 | $375.30 |
| Gretta Carter | WI | IL | 5/13/15 | 3 years | 1/4/17 | $895.00 | $412.65 |
| James Atkins | WV | KY | 5/1/15 | 2.5 years | 2/28/17 | $895.00 | $239.91 |
| Ilka Robinson-Eaton | MD | MD | 1/27/15 | 6 years | 5/5/17 | $895.00 | $556.52 |
| Janet Corpes | NJ | NJ | 4/21/12 | 6 years | 2/28/17 | $650.00 | $134.30 |
| Terri Jones | OH | OH | 11/27/13 | 4 years | 7/13/16 | $895.00 | $307.52 |
| Heidi Humphreys | PA | PA | 3/19/16 | 6.25 years | 8/1/18 | $449.00 | $278.88 |
| Ria Marteins | PA | PA | 5/12/16 | 4 years | 1/23/18 | $635.00 | $458.64 |
| Brian T. Sweeney | TX | TX | 4/19/16 | 6 years | 5/6/17 | $595.00 | $491.26 |
| NaKecia Dean | WI | WI | 11/10/12 | 6 years | 1/13/17 | $795.00 | $241.66 |
| Von Griffin | TN | WI | 9/7/15 | 5 years | 10/10/16 | $895.00 | $732.09 |

## **THE DEFENDANTS**

30.     Defendant Wells Fargo Bank, N.A. is a national association bank chartered in South Dakota.  It conducts its automobile lending business under the name "Wells

Fargo Dealer Services, Inc." ("WFDS"), whose corporate headquarters is in Irvine, California.  It directly acquired and owned the finance agreements belonging to Plaintiffs and the Class, which such loans were secured by Plaintiffs' and the Class's automobiles located throughout the United States.  Upon information and belief, executives and/or employees within WFDS implemented, oversaw and/or approved the strategy and operations relating to the company's GAP policies and procedures, including its refund policies.

31.     Defendant Wells Fargo & Company ("WF") is, and at all relevant times was, a corporation organized and existing under the laws of the State of Delaware and a bank holding company with its principal place of business in San Francisco, California.  WF is a financial services company with $1.9 trillion in assets, and provides banking, insurance, investments, mortgage and consumer and commercial financing through more than 8,300 locations, 13,000 ATMs, and the internet.  It has over 263,000 full-time employees and is ranked No. 25 on Fortune Magazine's 2017 rankings of America's 500 largest corporations.  Upon information and belief, WF participated in the strategy and operations relating to Wells Fargo's failure to refund unearned GAP Fees.

32.     The above-listed defendants, and each of them, are referred to collectively herein as "Wells Fargo" or the "Defendants."

33.     If necessary, Plaintiffs will seek to amend this Complaint to reflect Defendants' true names and capacities when they have been ascertained if not correctly named or yet named.  Plaintiffs are informed and believe, and thus allege, that each defendant is responsible, jointly and severally, for the events and injuries described herein that caused damage to Plaintiffs and the Class.

34.     On information and belief, Plaintiffs allege that Defendants were, at all relevant times, the alter egos of each other such that to affirm the legal separateness of the Defendants for the purposes of the claims presented here would lead to an injustice and/or inequitable result.  There is a unity of interest and ownership between the defendant companies and their equitable owner(s) such that the separate personalities of

the companies and their shareholders do not in reality exist.

35.     On information and belief, Plaintiffs allege that, at all relevant times, each Defendant was acting as a partner, agent, servant and/or employee of the remaining Defendants, within the course and scope of such agency and with the knowledge and/or understanding of the remaining Defendants.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class and Subclasses:

**a.     Nationwide Class**: Plaintiffs seek to represent a nationwide class including all persons: (1) who entered into finance agreements with GAP Waivers that were assigned to Wells Fargo, (2) who paid off their finance agreements before the end of the loan term,[7] and (3) who did not receive a refund of the unearned GAP fees collected by Wells Fargo and/or the accrued interest on those unpaid amounts (the "Nationwide Class").  On behalf of the Nationwide Class, Plaintiffs are asserting claims against Wells Fargo for breach of contract, violations of the Truth-In-Lending Act ("TILA"), money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

**b.     State Subclasses for the States of California, Colorado, Delaware, Illinois, Kentucky, Maryland, New Jersey, Ohio, Pennsylvania, Texas and Wisconsin:** Plaintiffs also seek to represent state subclasses of consumers who fit the definition of the Nationwide Class, but which are limited to the states where each named Plaintiff and subclass member entered their applicable GAP Waiver addendum (the "State Subclasses").  The following is a list of each named Plaintiff with the specific State Subclass they seek to represent:  Armando Herrera (California), Eduardo Salcedo (California), Dena Lucero (Colorado), Frederick Brown (Delaware), Vanity Arrington

---

[7] As used herein, the terms "early payoff" or "paid off early," or any derivative thereof, include a customer paying off their loan balance or refinancing the loan before the end of the loan term.

(Illinois), Kashif Z. Awan (Illinois), Gretta Carter (Illinois), James Atkins (Kentucky), Ilka Robinson-Eaton (Maryland), Janet Corpes (New Jersey), Terri Jones (Ohio), Heidi Humphreys (Pennsylvania), Ria Marteins (Pennsylvania), Brian T. Sweeney (Texas), NaKecia M. Dean (Wisconsin), and Von Griffin (Wisconsin).  To fall under a specific State Subclass definition, a class member must have entered a GAP Waiver addendum in the same state as the representative Plaintiff.  On behalf of the State Subclasses, Plaintiffs are asserting claims against Wells Fargo for breach of contract, violations of TILA, money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

        **c.**     **Statutory Refund Subclass.**  Plaintiffs Dena Lucero (Colorado), Brian T. Sweeney (Texas), NaKecia M. Dean (Wisconsin) and Von Griffin (Wisconsin) are seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to those customers who entered GAP Waiver addendums in states which have specific statutes or regulations requiring the assignee and holder of the finance agreement (Wells Fargo) to directly refund the unearned GAP fees upon the early payoff of the finance agreement (the "Statutory Refund Subclass").  This subclass includes consumers who entered into GAP Waivers in the states of Alabama, Colorado, Indiana, Iowa, Massachusetts, Oregon, Texas, Vermont and Wisconsin.  On behalf of the Statutory Refund Subclass, Plaintiffs are asserting claims against Wells Fargo for breach of contract, violations of TILA, money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

        **d.**     **The California Unfair Business Practices Subclass:**  Plaintiffs Armando Herrera and Eduardo Salcedo are seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to consumers who entered GAP Waiver addendums in the state of California (the "California Unfair Business Practices Subclass").  On behalf of the California Unfair Business Practices Subclass, Plaintiffs Armando Herrera and Eduardo Salcedo are seeking damages, restitution and injunctive relief under the California Business & Professions Code section

17200 *et seq.* (the "UCL") and the Consumer Legal Remedies Act (the "CLRA").  The class period is based on the applicable statutes of limitations.

     **e.**    **Alternative Nationwide Subclasses Limited to Specific GAP Waiver forms.**  As an alternative to the Nationwide Class, each named Plaintiff seeks to represent a subclass of consumers who fit the definition of the Nationwide Class, but each subclass will be limited to only those individuals who entered the identical GAP Waiver forms as the representative Plaintiff (the "Alternative Nationwide Subclasses"). Each representative Plaintiff will represent a separate "Alternative Nationwide Subclass" limited to consumers who entered their identical GAP Waiver form.  The applicable GAP Waiver forms are attached hereto as Exhibits 1 through 16.  The Parties will be able to identify which customers entered the same GAP Waiver forms as each representative Plaintiff by referencing the "form identification numbers" located on the first page of the GAP Waiver addendums.  On behalf of the Alternative Nationwide Subclasses, Plaintiffs are asserting claims against Wells Fargo for breach of contract, violations of TILA, money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

     **f.**    **Alternative State Subclasses Limited to Specific GAP Waiver forms.**  As an alternative to the State Subclasses, each named Plaintiff seeks to represent a subclass of consumers who fit the definition of the Nationwide Class, but the subclass will be limited to only those individuals who entered the same GAP Waiver form as the representative Plaintiff in the same state as the Representative Plaintiff (the "Alternative State Subclasses").  Each representative Plaintiff will represent a separate "Alternative State Subclass" limited to consumers who entered the same GAP Waiver form in the same state as the representative Plaintiff.  The applicable GAP Waiver forms are attached hereto as Exhibits 1 through 16.  The Parties will be able to identify which customers entered the same GAP Waiver forms as each representative Plaintiff by referencing the "form identification numbers" located on the first page of the GAP Waiver addendums. On behalf of the Alternative State Subclasses, Plaintiffs are asserting claims against

Wells Fargo for breach of contract, violations of TILA, money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

        **g.**    **Bellwether Subclasses.**  Pursuant to the process approved by this Court on February 24, 2020,  Plaintiffs Armando Herrera (California), Frederick Brown (Delaware), Gretta Carter (Illinois), James Atkins (Kentucky), and Janet Corpes (New Jersey) seek to represent bellwether subclasses consisting of consumers who meet the same definition as the Nationwide Class, but the bellwether subclasses will be limited to only those consumers who entered the identical GAP Waiver form as the bellwether Plaintiff in the same state as the bellwether Plaintiff (the "Bellwether Subclasses").  The applicable GAP Waiver forms are attached hereto as Exhibits 1, 4, 7, 8 and 10.  The Parties will be able to identify which customers entered the same GAP Waiver forms as the bellwether Plaintiffs by referencing the "form identification numbers" located on the first page of the GAP Waiver addendums.  On behalf of the Bellwether Subclasses, Plaintiffs are asserting claims against Wells Fargo for breach of contract, violations of TILA, money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.  Plaintiffs reserve the right to select different bellwether Plaintiffs in conformance with the process approved by the Court.

37.     The aforementioned Classes and Subclasses are referred to collectively as the "Class."

38.     Excluded from the proposed Class and Subclasses are: (a) Defendants and their agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiffs and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

39.     Plaintiffs reserve the right to revise the definition of the Class and Subclasses based upon subsequently discovered information.

40.     **Numerosity:**  While the exact numbers of the members of the Class and Subclasses are unknown to Plaintiffs at this time, membership in the Class and Subclasses may be ascertained from the records maintained by Wells Fargo.  At this time, Plaintiffs

are informed and believe that the Nationwide Class includes over two million members and each of the Subclasses includes tens of thousands, if not hundreds of thousands, of members.  Therefore, the Class and Subclasses are sufficiently numerous that joinder of all members of the Class and Subclasses in a single action is impracticable under Rule 23(a)(1) of the Federal Rules of Civil Procedure, and the resolution of their claims through a class action will be of benefit to the parties and the Court.

41.    **Ascertainability:** The names and addresses of the members of the Class and Subclasses are contained in Wells Fargo's records.  The members of the Alternative Nationwide Subclasses, the Alternative State Subclasses, and the Bellwether Subclasses -- which are limited to specific GAP Waiver forms -- can be identified from the "form identification numbers" located on the first page of the GAP Waiver addendums.  Wells Fargo maintains a copy of each customer's GAP Waiver addendum in its loan files.  Notice can be provided to the members of the Class and Subclasses through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under state and federal law.

42.    **Common Facts:** Common facts exists as to all members of the Class and Subclasses and predominate over any issues affecting individual members of the Class and Subclasses.  The common facts include the following:

a.    Plaintiffs and the members of the Class and Subclasses entered into finance agreements with GAP Waivers to finance the purchase of their cars.

b.    The finance agreements and GAP Waivers were initially executed by Plaintiffs and the members of the Class and Subclasses, on the one hand, and representatives from the dealers, on the other hand.

c.    The finance agreements and GAP Waivers were form contracts.

d.    The GAP Administrators did not execute the GAP Waivers, and are not parties to the contracts with the customers.

e.    The dealers sold and assigned the finance agreements and GAP Waivers to Wells Fargo.

f.      Wells Fargo is the assignee and "holder" of every finance agreement and GAP Waiver entered by Plaintiffs and the members of the Class and Subclasses.

g.      Every finance agreement entered by Plaintiffs and the members of the Class and Subclasses contains a provision stating that: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."

h.      The finance agreements and GAP Waivers are "consumer credit contracts."

i.      Every GAP Waiver was "obtained pursuant" to and "with the proceeds" of the finance agreement.

j.      The full cost of every GAP Waiver was listed as a separate line item on the first page of the finance agreement and included in the "total amount financed."

k.      After the assignment to Wells Fargo, Plaintiffs and the members of the Class and Subclasses were required to make all payments under the finance agreements to Wells Fargo with interest, including, but not limited to, the amount financed for the cost of the GAP Waivers (the "GAP fees").

l.      Wells Fargo's common business practice is to preapprove the language in every finance agreement and GAP Waiver form before agreeing to accept the assignment of such agreements.

m.      Wells Fargo's common business practice is to maintain a copy of every finance agreement and GAP Waiver addendum it acquires in its loan files.

n.      Every GAP Waiver acquired by Wells Fargo provides that the creditor on the finance agreement is required to waive the GAP in the event of a "total loss" of the vehicle.

o.      Every GAP Waiver acquired by Wells Fargo provides that customers are eligible for a refund of a portion of the total GAP fees if the GAP Waiver is cancelled before the end of the loan term.

p.      Every GAP Waiver is automatically cancelled and terminated when the finance agreement is paid off before the end of the loan term.

q.      When a GAP Waiver is cancelled before the end of the loan term, Wells Fargo refers to the unused portion of the GAP fees as "unearned fees" or "unearned GAP fees."

r.      Plaintiffs and the members of the Class and Subclasses paid off the balances on their finance agreements before the end of the loan term.

s.      Wells Fargo received written notice that Plaintiffs and the members of the Class and Subclasses paid off their finance agreements before the end of the loan term, because (1) these customers paid off their balances through checks, wires or electronic payments, (2) Wells Fargo recorded the pay-off date, in writing, in Wells Fargo's computer records and (3) Wells Fargo issued written confirmation letters confirming the finance agreements were paid off before the end of the loan term.

t.      Every GAP Waiver acquired by Wells Fargo sets forth the method for calculating the "unearned GAP fees" that need to be refunded when the finance agreement is paid off early (e.g., the pro rata method, Rule of 78, etc.).

u.      Wells Fargo possesses all of the information necessary to calculate the unearned GAP fees when a customer pays off their finance agreement early, including (1) the method for calculating the refund (e.g., the pro rata method, Rule of 78, etc.), (2) the total GAP fees financed, (3) the date of the early payoff, (4) the amount of time remaining under the original loan term, and (5) any applicable cancellation fees.

v.      Rather than deduct the unearned GAP fees from the total payoff amount, Wells Fargo's common policy and practice throughout the United States is to include the unearned GAP fees in the total payoff amount when customers seek to pay off their finance agreements early.

w.      In conformance with its common policy and practice, Wells Fargo collected unearned GAP fees from Plaintiffs and the members of the Class and Subclasses when they paid off their finance agreements early.

x.     Prior to the filing of this lawsuit, Wells Fargo's common policy and practice throughout the United States was to refuse to refund the unearned GAP fees it collected when customers paid off their finance agreements early, and to instead direct customers to contact the dealer or GAP Administrator to inquire about a "possible refund."

y.     In conformance with its common policy and practice, Wells Fargo did not refund the unearned GAP fees it collected from Plaintiffs and the members of the Class and Subclasses when they paid off their finance agreements early.

z.     After the filing of this lawsuit, starting in approximately December 2018, Wells Fargo publicly announced it would begin refunding unearned GAP fees to customers who pay off their finance agreements early in Alabama, Colorado, Indiana, Iowa, Massachusetts, Nevada, Oregon, Texas, Vermont and Wisconsin.  Wells Fargo also represented it would pay back the unearned GAP fees it collected from customers in those states going back to 2008.  However, Wells Fargo is not paying the accrued interest on those amounts to every affected customer in those states.  Further, there is evidence Wells Fargo is not refunding past customers in those states, despite its public promises to do so.

aa.    For the rest of the country, Wells Fargo's common policy and practice continues to be that it will collect unearned GAP fees from customers when they pay off their finance agreements early and refuse to directly refund such amounts to its customers.

bb.    Wells Fargo's common policies and practices with respect to GAP Waivers are the same regardless of the language in the GAP Waiver forms.  In other words, Wells Fargo treats all GAP Waiver forms as uniform in its business operations.

cc.    Wells Fargo does not require customers to strictly comply with any notice provisions in the GAP Waivers as a precondition to a waive a GAP in the event of a "total loss" of the vehicle.

dd.    Wells Fargo does not require customers to strictly comply with any notice provisions in the GAP Waivers as a precondition to a refund when Wells Fargo repossess its customers' vehicles.

ee.    Wells Fargo does not require customers to strictly comply with any notice provisions in the GAP Waivers as a precondition to a refund when Wells Fargo agrees to a "hardship refinance" of the loan.

ff.    The only time Wells Fargo has suggested strict compliance with a notice provision in a GAP Waiver is required is when Wells Fargo would be obligated to pay money back to its customers.

43.    **Common Questions of Law:** Common questions of law exist as to all members of the Class and Subclasses and predominate over any issues solely affecting individual members of the Class and Subclasses.  The common questions of law include but are not limited to:

a.  Whether Wells Fargo, as the assignee, "steps into the shoes" of the dealer and assumes all contractual obligations under the GAP Waiver as a matter of law.

b.  Whether Wells Fargo, as the assignee, owes a contractual obligation to the customer to issue the refund of unearned GAP fees when required under the GAP Waiver.

c.  Whether Wells Fargo, as the "holder" of the consumer credit contract, is responsible for issuing the refund of the unearned GAP fees to the customer pursuant to the "holder rule" mandated by 16 C.F.R. § 433.2.

d.  Whether the early payoff of the finance agreement terminates the GAP Waiver addendum to the agreement.

e.  Whether Wells Fargo was required to directly refund the unearned GAP fees after the early payoff of the finance agreement pursuant to the following state statutes and regulations:  Alabama (Ala. Admin. Code r. 155-2-2-.13), Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

FIRST AMENDED COMPLAINT

f.   Whether Wells Fargo owes the interest that accrued on the unpaid refund amounts.

g.   Whether providing written notice to Wells Fargo of the early payoff of the finance agreement is a condition precedent to the refund.

h.   Whether providing written notice to the dealer or GAP Administrator of the early payoff of the finance agreement is a condition precedent to the refund.

i.   Whether Wells Fargo's actual notice that the finance agreements have been paid off early is sufficient to trigger Wells Fargo's refund obligations under the GAP Waivers.

j.   Whether the payment of the final payoff amount constitutes written notice to Wells Fargo that the finance agreement has been paid off early thereby entitling Plaintiffs and the members of the Class and Subclasses to a refund of their unearned GAP fees.

k.   Whether Wells Fargo's written records of the final payoff date and Wells Fargo's payoff confirmation letters constitute sufficient written notice to Wells Fargo that the finance agreements have been paid off early thereby entitling Plaintiffs and the members of the Class and Subclasses to a refund of their unearned GAP fees.

l.   Whether Plaintiffs and the members of the Class and Subclasses "substantially complied" with any purported notice requirements in the GAP Waivers by providing notice to the party with the refund obligation (Wells Fargo) that the finance agreements have been paid off early.

m. Whether it would be unjust to conclude that Plaintiffs and the members of the Class and Subclasses forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from the GAP Waivers' notice provisions, especially where, as here, the party with the refund obligation (Wells Fargo) received actual notice.

n. Whether the GAP Administrator is a party to the GAP Waiver addendums.

o.  Whether the dealer remains a party to GAP Waiver addendums after the assignment to Wells Fargo.

p.  Whether the GAP Administrator is the agent of Wells Fargo after the assignment of the GAP Waivers.

q.  Whether the dealer is the agent of Wells Fargo after the assignment of the GAP Waivers to the extent Wells Fargo claims the dealer still owes obligations to Wells Fargo after the assignment.

r.  Whether the knowledge of Wells Fargo's agents is imputed to Wells Fargo, and vice-versa.

s.  Whether the collection of the unearned GAP fees created a "credit balance" that Wells Fargo was required to refund after 6 months pursuant to 15 U.S.C. § 1666d and 12 C.F.R. § 226.21.

t.  Whether Wells Fargo has received money which belongs to Plaintiffs and the members of the Class and Subclasses and which in equity and good conscience should be paid over to Plaintiffs and the members of the Class and Subclasses.

u.  Whether a contractual provision requiring Plaintiffs and the members of the Class and Subclasses to send a subsequent written notice that the finance agreement has been paid off early as a condition precedent to the refund is enforceable, when the party with the refund obligation (Wells Fargo) already knows the finance agreement has been paid off early.

v.  Whether Wells Fargo's practice of collecting unearned GAP fees after the early payoff of the finance agreement is an unfair, fraudulent or unlawful business practice under the UCL.

w.  Whether Wells Fargo's practice of denying its refund obligations is an unfair, fraudulent or unlawful business practice under the UCL.

x.  Whether a contractual provision providing that Plaintiffs and the members of the Class and Subclasses forfeited their rights to a refund by failing to send a subsequent written notice that the finance agreement has been paid off early is

unconscionable, when the party with the refund obligation (Wells Fargo) already knows the finance agreement has been paid off early.

y.   Whether Plaintiffs and the members of the Class and Subclasses are entitled to damages and restitution in the amount of the unearned GAP fees, as well as the accrued interest on those unpaid amounts.

z.   Whether Plaintiffs and the members of the Class and Subclasses are entitled to an award of reasonable attorneys' fees and costs.

aa. Whether the Court should issue an injunction requiring Wells Fargo to either: (1) refrain from collecting unearned GAP fees upon an early payoff of the finance agreement; or (2) automatically refund those unearned fees back to the customer promptly after the termination of the finance agreement.

44.   **The GAP Waiver Addendums Are Sufficiently Uniform.**   As noted above, the GAP Waiver addendums are form contracts that are preapproved by Wells Fargo.  While the GAP Waiver forms may vary in their formatting and language, Wells Fargo treats the GAP Waiver forms as being uniform in practice.  This is because the GAP Waiver forms are substantively and materially the same with respect to the refund issues in this case.  For example, all GAP Waiver forms provide they may be assigned to a financial institution and that if the GAP Waiver is cancelled before the end of loan term, the customer may receive a refund of the unearned GAP fees.  With respect to notice, the GAP Waiver forms fall into four buckets:

a. **No Notice:**  The first bucket includes GAP Waiver forms that do not require the customer to send written notice that finance agreement has been terminated early.

b. **Notice to Wells Fargo.**  The second bucket includes GAP Waiver forms that direct the customer to send written notice that the finance agreement has been paid off early but indicate this notice may be sent to the assigned financial institution or lienholder (i.e., Wells Fargo).

c. **Notice to the Dealer.**  The third bucket includes GAP Waiver forms that direct the customer to send written notice that the finance agreement has been paid off early to the dealer.

d. **Notice to the GAP Administrator.**  The fourth bucket includes GAP Waiver forms that direct the customer to send written notice that the finance agreement has been paid off early to the GAP Administrator.

45.  **The Arguments are the Same for each Bucket.**  Plaintiffs contend that regardless of which bucket the GAP Waivers fall into, Wells Fargo's refund obligation is triggered by its "actual notice" of the early termination of the finance agreement.  This is because Plaintiffs and the members of the Class and Subclasses have either actually and/or "substantially complied" with any notice provisions since the party with the refund obligation (Wells Fargo) always receives written notice that the finance agreement has been paid off early.  There is no reason Plaintiffs and the members of the Class and Subclasses should be found to have forfeited their refunds by failing to provide further notice to Wells Fargo, the dealer or the GAP Administrator that the finance agreement has been paid off early, when the party with the refund obligation (Wells Fargo) actually received notice of the early termination.  Otherwise, requiring strict compliance with such provisions as a mandatory condition precedent for the refund would simply serve as a trap for unwary consumers and allow Wells Fargo to keep hundreds of millions of fees it did not earn and will never earn at the expense of its customers.

46.  **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses.  Plaintiffs have been subjected to the same wrongful business practices and have been damaged in the same manner.  Specifically, Wells Fargo collected unearned GAP fees upon the early payoff of their finance agreements and then failed to promptly refund such amounts to the Plaintiffs and the members of the Class and Subclasses.

47.  **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by Federal Rule of Civil Procedure Rule

23(a)(4) of the Federal Rules of Civil Procedure. Plaintiffs are adequate representatives of the Class and Subclasses, because they do not have any interests which are adverse to the interests of the members of the Class or Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

48.     Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Subclasses. Plaintiffs will undertake to represent and protect the interests of the absent members of the Class and Subclasses.

49.     Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex consumer class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Class and Subclasses.

50.     **Superiority**: Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because: (a) the expense and burden of individual litigation make it economically unfeasible for members of the Class and Subclasses to seek redress of their claims other than through the procedure of a class action; (b) if separate actions were brought by individual members of the Class and Subclasses, the resulting duplicity of lawsuits would risk inconsistent results; and (c) absent a class action, Wells Fargo will likely retain the benefits of its wrongdoing, resulting in a failure of justice.

51.     **Predominance:** Class action status is warranted under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law or fact common to the members of the Class and Subclasses predominate over any questions affecting only individual members. The interests of the members of the Class and Subclasses in individually controlling the prosecution of separate actions are theoretical and not practical. Prosecution of this action through multiple Class Representatives would be superior to individual lawsuits. Plaintiffs are not aware of any difficulty which will be

encountered in the management of this litigation which should preclude its maintenance as a class action.

## FIRST CLAIM
### BREACH OF CONTRACT
### (On Behalf of All Plaintiffs and the Class and Subclasses)

52.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

53.     Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses.

54.     Plaintiffs and the members of the Class and Subclasses entered into finance agreements with GAP Waiver addendums that were assigned to Wells Fargo.

55.     A true and correct copy of each Plaintiff's finance agreement and GAP Waiver addendum is attached as Exhibits 1 through 16, as set forth in the chart below (which also lists the states where the contracts were entered):

| 1. | Armando Herrera | CA | Exhibit 1 |
|----|-----------------|----|-----------| 
| 2. | Eduardo Salcedo[8] | CA | Exhibit 2 |
| 3. | Dena Lucero | CO | Exhibit 3 |
| 4. | Frederick Brown | DE | Exhibit 4 |
| 5. | Vanity Arrington | IL | Exhibit 5 |
| 6. | Kashif Awan | IL | Exhibit 6 |
| 7. | Gretta Carter | IL | Exhibit 7 |
| 8. | James Atkins | KY | Exhibit 8 |
| 9. | Ilka Robinson-Eaton | MD | Exhibit 9 |
| 10. | Janet Corpes | NJ | Exhibit 10 |
| 11. | Terri Jones | OH | Exhibit 11 |

[8] Plaintiff Eduardo Salcedo was unable to locate a complete copy of his finance agreement and GAP Waiver addendum.  However, the front page of his finance agreement indicates he had a "Spectrum Plans" GAP Waiver form.  Accordingly, Plaintiffs are attaching the standard "Spectrum Plans" GAP Waiver form with Exhibit 2.

| 12. | Heidi Humphreys | PA | Exhibit 12 |
| 13. | Ria Marteins | PA | Exhibit 13 |
| 14. | Brian T. Sweeney | TX | Exhibit 14 |
| 15. | NaKecia Dean | WI | Exhibit 15 |
| 16. | Von Griffin | WI | Exhibit 16 |

56.     The terms of the finance agreements and GAP Waiver addendums were presented to Plaintiffs and the members of the Class and Subclasses on a non-negotiable "take-it or leave-it" basis and are therefore contracts of adhesion.

57.     Plaintiffs and the members of the Class and Subclasses financed the cost of the GAP Waivers as part of their finance agreements and were charged for GAP protection for the full term of the loan.  These amounts were paid directly to Wells Fargo.

58.     All of the GAP Waivers provide that if the GAP Waiver is cancelled before the end of the loan term, then the customer is eligible for a refund of the unused portion of the GAP fees (the "unearned GAP fees").

59.     Wells Fargo, as the assignee and holder of the finance agreements and GAP Waiver addendums, legally owed this contractual refund obligation to Plaintiffs and the members of the Class and Subclasses.

60.     Plaintiffs and the members of the Class and Subclasses paid off the balance on their finance agreements to Wells Fargo prior to end of the loan term.  As a result, the GAP Waivers were automatically cancelled with the termination of the finance agreements, thereby triggering Wells Fargo's refund obligations.

61.     In breach of the finance agreements and GAP Waivers, Wells Fargo wrongfully collected the unearned GAP fees upon the early payoff of the finance agreements and failed to refund those amounts to Plaintiffs and the members of the Class and Subclasses as required under the GAP Waivers.

62.     Plaintiffs and the members of the Class and Subclasses actually and/or substantially complied with all of their obligations under the finance agreements and GAP Waivers.

63.     Wells Fargo received written notice that Plaintiffs and the members of the Class and Subclasses paid off their finance agreements early, thereby entitling them to a refund of any unearned GAP fees.

64.     Plaintiffs and the members of the Class and Subclasses actually and/or substantially complied with any notice provisions in the GAP Waivers, because the party with the refund obligation (Wells Fargo) always received written notice that the loans had been paid off early.  It would be unjust to find that Plaintiffs and the members of the Classes and Subclasses forfeited the right to their money back by failing to strictly comply with any other notice conditions.

65.     In the alternative, assuming arguendo Plaintiffs and the members of the Class and Subclasses did not actually and/or substantially comply with the notice provisions, then such provisions are procedurally and substantively unconscionable and unenforceable given that the party with the refund obligation (Wells Fargo) already knows all the information it needs to determine the customers' right to the refund.  As such, requiring Plaintiffs and the members of the Class and Subclasses to provide further notice to Wells Fargo, the dealer or the GAP Administrator of the early termination of the finance agreement as a condition precedent to the refund is unnecessary, overly harsh and unreasonably favors Wells Fargo in that it allows Wells Fargo to keep hundreds of millions of dollars of fees that were not earned and will never be earned at the expense of its customers.

66.     Wells Fargo breached its contractual obligations under the GAP Waivers by failing to promptly refund the unearned GAP fees to Plaintiffs and the members of the Class and Subclasses after the early payoff of the finance agreement.

67.     Wells Fargo further breached its legal obligations to refund the unearned GAP fees pursuant to the laws and regulations of the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, Oregon, Texas, Vermont and Wisconsin, among other laws.

68.     Plaintiffs and the members of the Class and Subclasses were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because Wells Fargo failed to refund the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

69.     Wells Fargo is liable to Plaintiffs and the members of the Class and Subclasses for the damages they suffered as a direct result of Wells Fargo's collection and failure to promptly refund the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

**SECOND CLAIM**
**VIOLATION OF THE TRUTH IN LENDING ACT ("TILA")**
**(On Behalf of all Plaintiffs and the Class and Subclasses)**

70.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein

71.     15 U.S.C. § 1666d of TILA provides, in relevant part, as follows: "Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall . . . (c) make a good faith effort to refund to the consumer by cash, check or money order, any part of the amount of the credit balance remaining in the account for more than six months."

72.     12 C.F.R. § 226.21 similarly provides, in relevant part, as follows: "When a credit balance in excess of $1 is created on a credit account (through transmittal of funds to a creditor in excess of the total balance due on an account, through rebates of unearned finance charges or insurance premiums, or through amounts otherwise owed to or held for the benefit of the consumer), the creditor shall . . . (c) make a good faith effort to refund to the consumer by cash, check or money order, or credit to a deposit account of the consumer, any part of the credit balance remaining in the account for more than six

months."

73.     Wells Fargo's collection of unearned GAP fees from Plaintiffs and the members of the Class and Subclasses upon the early payoff of their finance agreements created a credit balance in excess of $1 that Wells Fargo was required refund to Plaintiffs and the members of the Class and Subclasses after six months.

74.     Wells Fargo has not refunded such amounts to Plaintiffs and the members of the Class and Subclasses even though their current locations are known to Wells Fargo and can be traced through these consumers' last known addresses or telephone numbers.

75.     Wells Fargo's actions constitute a violation of 15 U.S.C. § 1666d and 12 C.F.R. § 226.21.

76.     Wells Fargo recognizes these TILA provisions require the refund of unearned GAP fees, but it is nevertheless failing to comply with these provisions.

77.     Specifically, the state of Massachusetts has an identical statute (M.G.L.A. 140D § 22) which provides, in relevant part, as follows: "Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall . . . (c) make a good faith effort to refund to the consumer by cash, check or money order, any part of the amount of the credit balance remaining in the account for more than six months, within thirty days after the expiration of the six month period."

78.     Based on M.G.L.A. 140D § 22, Wells Fargo's compliance department determined Wells Fargo was required to directly refund the unearned GAP fees it collects from consumers who entered GAP Waivers in the state of Massachusetts.  In December 2018, after the filing of this lawsuit, Wells Fargo publicly announced it would issue refunds to customers in the state of Massachusetts.  However, Wells Fargo is continuing to refuse to issue refunds to customers in the majority of the States in this country, even though the identical TILA regulations apply on a nationwide basis.

79.     On behalf of themselves and the members of the Class and Subclass, Plaintiffs seek damages in the amount of the unearned GAP fees and accrued interest on those unpaid amounts.

### THIRD CLAIM
### MONEY HAD AND RECEIVED
### (On Behalf of all Plaintiffs and the Class and Subclasses)

80.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

81.     A claim for "money had and received" may be asserted any time a defendant holds money in its possession which in equity and good conscience belongs to the plaintiff.

82.     After the early termination of the finance agreement, Plaintiffs and the members of the Class and Subclasses did not receive any consideration for the unearned GAP fees collected by Wells Fargo.

83.     Wells Fargo maintains possession of the unearned GAP fees belonging to Plaintiffs and the members of the Class and Subclasses. This money in equity and good conscience rightfully belongs to Plaintiffs and the members of the Class and Subclasses.

84.     Plaintiffs and the members of the Class and Subclasses seek restitution of the unearned GAP fees collected and retained by Wells Fargo, as well as the interest that accrued on those unpaid amounts.

### FOURTH CLAIM
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (On Behalf of Plaintiffs Armando Herrera and Eduardo Salcedo and the
### California Unfair Business Practices Subclass Only)

85.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

86.     Plaintiffs Armando Herrera and Eduardo Salcedo bring this claim for violation of California Business and Professions Code section 17200 *et seq.* (the "UCL") on behalf of themselves and the members of the California Unfair Business Practices

Subclass.

87.     The UCL prohibits acts of "unfair competition" including any unfair, fraudulent or unlawful business practice.

88.     Wells Fargo's practice of collecting and failing to refund unearned GAP fees after the early payoff of the finance agreement is an "unfair" business practice proscribed by the UCL.  There is no reasonable basis for Wells Fargo to collect and fail to refund fees that Wells Fargo knows are not earned and will never be earned.  Further, there is no legitimate basis to require customers to send a subsequent written notice to Wells Fargo or its agents that the finance agreement has been paid off early as a condition precedent for the refund, when the party with the refund obligation (Wells Fargo) already knows the finance agreement has been paid off early.  This practice is substantially injurious to consumers and has allowed Wells Fargo to be unjustly enriched at the consumers' expense.  This substantial injury is not outweighed by any countervailing benefits to consumers or competition.

89.     Wells Fargo's refusal to acknowledge its obligation to refund the unearned GAP fees in its payoff letters, and its liability under the "holder rule" for such amounts, is a "fraudulent" business practice under the UCL in that it is tantamount to an incorrect and misleading assertion that no claims for refunds may be brought against Wells Fargo. Likewise, Wells Fargo's practice of misdirecting customers to contact the dealer about a "possible refund," when Wells Fargo knows customers are, in fact, entitled to a refund of the unearned GAP fees from Wells Fargo when the finance agreement has been paid off early, is a "fraudulent" business practice under the UCL, because it is likely to deceive and deter a reasonable consumer from seeking such refunds from Wells Fargo.

90.     Wells Fargo's practices described above are unlawful and, at a minimum, violate the California Consumer Legal Remedies Act (the "CLRA") which prohibits the inclusion of unconscionable terms in a consumer contract.

91.     As a direct and proximate result of Wells Fargo's violations of the UCL, Plaintiffs Armando Herrera and Eduardo Salcedo and each of the members of the

California Unfair Business Practices Subclass have been injured in fact and suffered lost money or property in that Wells Fargo collected and failed to refund unearned GAP fees after the early payoff of their finance agreements.

92.     Pursuant to section 17203 of the UCL, Plaintiffs Armando Herrera and Eduardo Salcedo, on behalf of themselves and the members of California Unfair Business Practices Subclass, are seeking restitution of all unearned GAP fees that Wells Fargo collected and failed to refund after the early payoff of customers' finance agreements, with the accrued interest on those unpaid amounts.

93.     Plaintiffs Armando Herrera and Eduardo Salcedo, on behalf of themselves and the members of California Unfair Business Practices Subclass, are further seeking an order enjoining Wells Fargo from collecting and failing to promptly refund unearned GAP fees after the early payoff of the finance agreement.  Without such an order, there is a continuing threat to Plaintiffs and the members of the California Unfair Business Practices Subclass, as well as to members of the general public, that Wells Fargo will continue to improperly keep possession of unearned GAP fees and fail to refund such fees to California consumers.

## FIFTH CLAIM
### VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
**(On Behalf of Plaintiffs Armando Herrera and Eduardo Salcedo and the California Unfair Business Practices Subclass Only)**

94.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

95.     Plaintiffs Armando Herrera and Eduardo Salcedo bring this claim for violations of California's Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.* (the "CLRA").  This claim is brought on behalf of themselves and the members of the California Unfair Business Practices Subclass.

96.     The finance agreements and GAP Waivers are consumer service contracts covered by the CLRA.

97.     California Civil Code section 1770(a), subdivision (19), prohibits a seller of consumer goods or services from inserting an unconscionable provision in a contract.

98.     The finance agreements and GAP Waiver addendums are adhesion contracts.

99.     Any provision in the GAP Waivers that purports to require customers to send a subsequent written notice to Wells Fargo, the dealer or the GAP Administrator that the finance agreement has been paid off early as a condition precedent to the refund is unfair, unconscionable and unenforceable, because the party with the refund obligation (Wells Fargo) already knows the finance agreement has been paid off early. Consequently, any provision that would result in a customer forfeiting the refund of unearned GAP fees in these circumstances, would be overly harsh, would unreasonably favor Wells Fargo and is unconscionable as a matter of fact and law.

100.    In light of this violation of the CLRA, Plaintiffs Armando Herrera and Eduardo Salcedo, on behalf of themselves and the members of California Unfair Business Practices Subclass, hereby seek an order enjoining Wells Fargo from collecting and failing to promptly refund unearned GAP fees after the early payoff of the finance agreement.  Without such an order, there is a continuing threat to Plaintiffs and the members of the California Unfair Business Practices Subclass, as well as to members of the general public, that Wells Fargo will continue to improperly keep possession of unearned GAP Fees and fail to refund such fees to California consumers.

101.    Pursuant to California Civil Code section 1782, in or around February 2018, Plaintiff Armando Herrera sent a CLRA Demand Letter via certified registered mail to Wells Fargo demanding, *inter alia*, that Wells Fargo refund all unearned GAP Fees and no longer require consumers to send a written notice of cancellation as a prerequisite for a refund when there is an early payoff of the finance agreement.  Wells Fargo failed to implement the corrective measures in the CLRA Demand Letter, within 30 days or a reasonable time thereafter.  Accordingly, Plaintiffs Armando Herrera and Eduardo Salcedo, on behalf of themselves and the members of California Unfair Business

Practices Subclass, are seeking damages in the amount of the unearned GAP fees and the accrued interest on those unpaid amounts.

## SIXTH CLAIM
## DELCARATORY RELIEF
### (On Behalf of all Plaintiffs and the Class and Subclasses)

102.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

103.    There exists a present controversy between the parties as to the following issues:

a.    Whether Wells Fargo, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

b.    Whether Wells Fargo is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

c.    Whether Wells Fargo is legally required to refund the unearned GAP fees it collects from customers who pay of their finance agreements early under the following State statutes and regulations: Alabama (Ala. Admin. Code r. 155-2-2-.13), Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

d.    Whether Wells Fargo is legally required to pay interest on the unpaid refund amounts under the following State statutes and regulations: Alabama (Ala. Admin. Code r. 155-2-2-.13), Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

104.     Plaintiffs and the members of the Class and Subclasses contend Wells Fargo owes these obligations.  Wells Fargo denies it owes these obligations.

105.     Accordingly, Plaintiffs and the members of the Class and Subclasses hereby request the Court issue an order declaring that:

a.     Wells Fargo, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

b.     Wells Fargo is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

c.     Wells Fargo is legally required to refund the unearned GAP fees it collects from customers who pay of their finance agreements early under the following State statutes and regulations: Alabama (Ala. Admin. Code r. 155-2-2-.13), Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

d.     Wells Fargo is legally required to pay interest on the unpaid refund amounts under the following State statutes and regulations: Alabama (Ala. Admin. Code r. 155-2-2-.13), Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter a judgment against Wells Fargo in favor of Plaintiffs and the members of the Class and Subclasses and award the following relief:

1. An order certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representatives of the Class and their respective Subclasses, and appointing Plaintiffs' counsel as Class Counsel for the Class and Subclasses;

2. An order declaring the following:

   a. Wells Fargo, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

   b. Wells Fargo is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

   c. Wells Fargo is legally required to refund the unearned GAP fees it collects from customers who pay of their finance agreements early under the following State statutes and regulations:  labama (Ala. Admin. Code r. 155-2-2-.13), Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

   d. Wells Fargo is legally required to pay interest on the unpaid refund amounts under the following State statutes and regulations: Alabama (Ala. Admin. Code r. 155-2-2-.13, Colorado (4 CCR 902-1), Indiana (Ind. D.F.I., GAP Program Approval, Standardized GAP Agmts., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22), Oregon (Or. St. T. 50, Ch. 646A), Texas (Tex. Admin. Cod § 83.812), Vermont (Vt. St., T. 8 § 10405) and Wisconsin (WSA § 218.0148).

3.  An award to Plaintiffs and the members of the Class and Subclasses of all appropriate relief, including actual damages, restitution and disgorgement of the unearned GAP fees;

4.  An award of all costs for prosecuting the litigation, including expert fees;

5.  An award of pre- and post-judgment interest;

6.  An award of attorneys' fees; and

7.  An order granting any such additional relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all claims in this action.

Dated:  April 1, 2020                    FRANK SIMS & STOLPER LLP

                                         */s/ Jason M. Frank*
                                         JASON M. FRANK, ESQ.
                                         ANDREW STOLPER, ESQ
                                         SCOTT H. SIMS, ESQ.

                                         *Attorneys for Plaintiffs*

Dated:  April 1, 2020                    FRANKLIN D. AZAR & ASSOCIATES, P.C.

                                         */s/ Franklin D. Azar*
                                         FRANKLIN D. AZAR (*pro hac vice*)

                                         *Attorneys for Plaintiffs*

Dated:  April 1, 2020                    LEVIN SEDRAN & BERMAN

                                         */s/ Charles E. Schaffer*
                                         CHARLES E. SCHAFFER (*pro hac vice*)
                                         *Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT