Exhibit 1

RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
(WITH ARBITRATION PROVISION)

| DEAL 10632 | | Stock Number 51R3B |
| --- | --- | --- |

**Buyer Name and Address**
(Including County and Zip Code)
ARMANDO HERRERA
1350 1/2 ALLESANDRO ST
LOS ANGELES CA 90026
LOS ANGELES COUNTY

**Seller-Creditor (Name and Address)**
PUENTE HILLS MITSUBISHI
17665 CASTLETON STREET
CITY OF INDUSTRY, CA 91748

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller – Creditor (sometimes "we" or "us") in this contract the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
| --- | --- | --- | --- | --- | --- |
| USED | 2005 | INFINITE G35 | 99187 | JNKCV51E85M426860 | Personal, family or household unless otherwise indicated below ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2000.00 |
| --- | --- | --- | --- | --- |
| 8.99 % | $ 4660.65 | $ 16076.95 | $ 20937.60 | $ 22937.60 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
| --- | --- | --- |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| One Payment of | N/A | Monthly beginning |
| 71 | 290.80 | 09/02/2014 |
| N/A | N/A | 08/02/2020 |
| | 290.80 | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late or $5, whichever is less.

**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| | | |
| --- | --- | --- |
| 1. Total Cash Price | | |
| A. Cash Price of Motor Vehicle and Accessories | $ 13500.00 (A) | |
|    1. Cash Price Vehicle | $ 13500.00 | |
|    2. Cash Price Accessories | N/A | |
|    Other N/A | N/A | |
|    Describe N/A | N/A | |
| B. Document Preparation Charge (not a governmental fee) | $ 50.00 (B) | |
| C. Emissions Testing Charge (not a governmental fee) | $ 50.00 (C) | |
| D. Optional Theft Deterrent Device (not part of pkg) N/A | $ N/A (D) | |
| E. Optional Theft Deterrent Device (not part of pkg) N/A | $ N/A (E) | |
| F. Optional Theft Deterrent Device (not part of pkg) N/A | $ N/A (F) | |
| G. Optional Surface Protection Product (not part of pkg) N/A | $ N/A (G) | |
| H. Optional Surface Protection Product (not part of pkg) N/A | $ N/A (H) | |
| I. EV Charging Station (not part of pkg) N/A | $ N/A (I) | |
| J. Sales Tax (on taxable items in A through I) | $ 1226.70 (J) | |
| K. Electronic Vehicle Registration or Transfer Charge | | |
|   (not a governmental fee) (Seller may retain a portion) | $ 26.00 (K) | |
| L. Optional Service Contract (to whom paid) N/A | $ 2000.00 (L) | |
| M. Optional Service Contract (to whom paid) N/A | $ N/A (M) | |
| N. Optional Service Contract (to whom paid) N/A | $ N/A (N) | |
| O. Optional Service Contract (to whom paid) N/A | $ N/A (O) | |
| P. Prior Credit or Lease Balance paid by Seller to | $ N/A (P) | |
| (see downpayment and trade-in calculation) | | |
| Q. (Optional) Gap Contract (name and amount paid) EXPRESS AUTO GAP | $ 800.00 (Q) | |
| R. N/A | $ N/A (R) | |
| S. Other (to whom paid) N/A | $ N/A (S) | |
| Total Cash Price (A through S) | $ 17882.70 (1) | |
| 2. Amounts Paid to Public Officials | | |
| A. Vehicle License Fees ESTIMATE | $ 88.00 (A) | |
| B. Registration/Transfer/Titling Fees | $ 92.00 (B) | |
| C. California Tire Fees | $ 6.00 (C) | |
| D. Other N/A | $ N/A (D) | |
| Total Official Fees (A through D) | $ 186.00 (2) | |
| 3. Amount Paid to Insurance Companies | | |
| (Total premiums from Statement of Insurance is on line 4.1D) | $ N/A (3) | |
| 4.1 State Emissions Certification Fee or C.I. State Exhaustions Exemption Fee | $ 8.25% | |
| 5. Subtotal (1 through 4) | $ 16076.95 (5) | |
| 6. Total Downpayment = | | |
| A. Agreed Trade-In Value 2006 MITSUBISHI | $ 2000.00 (A) | |
|    Make ECLI | | |
|    Vin 4A3AK34T06E000682 | | |
| B. Less Prior Credit or Lease Balance (d) | $ N/A (B) | |
| C. Net Trade In (Indicate if a negative number) | $ 2000.00 (C) | |
| D. Deferred Downpayment | $ N/A (D) | |
| E. Manufacturer's Rebate | $ N/A (E) | |
| F. Cash N/A | $ N/A (F) | |
| Total Downpayment (A through E) | $ 2000.00 (6) | |
| (if negative, enter zero on line 6 and see line 4 on the trade-in portion on line 10 above) | | |
| 7. Amount Financed (5 less 6) | $ 16076.95 (7) | |

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent, or broker. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is checked below.

**Vehicle Insurance**

| | Term | Premium |
| --- | --- | --- |
| $ N/A Ded. Loss Fire & Theft | N/A Mo. $ N/A |
| $ N/A Ded. Collision | N/A Mo. $ N/A |
| Bodily Injury | N/A Mo. $ N/A |
| Property Damage | N/A Mo. $ N/A |
| Medical | N/A Mo. $ N/A |
| Total Vehicle Insurance Premiums | $ N/A |

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following is checked: ☐
Name of autobroker receiving fee, if applicable: N/A

**NOTICE TO THE BUYER.** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) If you elect to pay in accordance with the terms of this contract, you are entitled to a completely filled in copy of this agreement. (3) You are entitled to a copy when you sign. (3) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

| Buyer Signature X | Date 07/19/14 | Co-Buyer Signature X | Date |
| --- | --- | --- | --- |

| Seller Signs PUENTE HILLS MITSUBISHI | By X | Date 07/19/14 | Title MGR |

ORIGINAL LIENHOLDER

**1. FINANCE CHARGE AND PAYMENTS**

**2. YOUR OTHER PROMISES TO US**

**GAP LIABILITY NOTICE**

**a.** Using the vehicle.

**b.** Security Interest.

**c.** Insurance you must have on the vehicle.

**d.** What happens to returned insurance, maintenance, service, or other contract charges.

**3. IF YOU FAIL OR BREAK YOUR OTHER PROMISES**

**ARBITRATION PROVISION**
PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**4. WARRANTIES SELLER DISCLAIMS**

**5. Used Car Buyers Guide.**

**6. Servicing and Collection Contacts.**

**7. Applicable Law**

**8. Warranties of Buyer.**

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**

**Seller's Right to Cancel**

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

PUENTE HILLS MITSUBISHI
13558 CASTLETON STREET
CITY OF INDUSTRY, CA 91748

# Express Autogap

**13G 1564803**

This Guaranteed Asset Protection (GAP) Addendum amends the **Retail Installment Sales/Loan/Lease Contract** (referred to as **Contract**) dated below as **DEAL#40633**. This GAP STK# 51831 is between the Customer/Borrower (I, You or Your) and the Dealer/Financial Institution (We, Us or Our).

| | |
|---|---|
| Customer/Borrower **ARMANDO HERRERA** | Dealer **PUENTE HILLS MITSUBISHI** |
| Address **1353 1/2 ALLESANDRO ST** | Address **17665 CASTLETON STREET** |
| City **LOS ANGELES** State **CA** Zip **90026** | City **CITY OF INDUSTRY** State **CA** Zip **91748** |
| Daytime Phone **(213)281-1870** Evening Phone **(800)469-4445** Email: | Phone **6266264800** Fax **6269645111** |

| Year | Make | Model | VIN | Current Mileage |
|---|---|---|---|---|
| **2005** | **INFINITI** | **G35** | **JNKCV54E85M426860** | **99187** |

| | | |
|---|---|---|
| Contract Date **07/19/2014** Total Down Payment $ **2000.00** Mo. Payment $ **290.80** | Financial Institution/Lienholder Name *WELLS FARGO Dealer Service* | |
| Retail Installment Sales Contract/Loan ☐ Lease/Balloon Note Contract/GAP Term (Months) **72** | Address | |
| MSRP/New/NADA or Kelley Blue Book(CA only) Retail(Used) Value Amount Financed **16076.95** | City | State Zip |
| Purchase/GAP Cost **13500.00** GAP Purchase Price $ **800.00** | Telephone | Contact |

## PLAN GUIDELINES

Maximum Retail Installment Sales Contract/Loan Term: 84 Months; Maximum Lease Term: 60 Months; Maximum MSRP/NADA/Kelley Blue Book (CA Only) Retail: $100,000; Maximum Amount Financed/ Capitalized Cost: Lesser of $100,000 or 150% MSRP (New)/ 150% NADA/ Kelley Blue Book (CA Only) Retail (Used); Maximum Deductible Coverage (if permitted under state law): $1,000; Maximum **Payable Loss**: $50,000.

**AGREEMENT** - Although not required to do so, You have elected to participate in Our GAP Program. GAP does not take the place of insurance on the Covered Vehicle. You are responsible for maintaining collision and comprehensive insurance for the full value of the Vehicle and any other insurance as required by the Contract or applicable law. You are responsible for all notifications or claims that are required to be filed with Your Primary Carrier. We will not process or handle Your insurance claims for You.
In the event of a **Total Loss** to the Covered Vehicle, We agree to waive Our rights against You for the amount due under a **Payable Loss**. You will remain responsible for payment of: (1) Any deductible amount under Your Primary Carrier insurance that is greater than the Maximum Deductible Coverage; and (2) Any portion of the Amount Financed or Capitalized Cost exceeding the lesser of $100,000 or 150% MSRP (New)/NADA/ Kelley Blue Book (CA Only) Retail (Used) of the Covered Vehicle at the inception date of the Contract.

**ASSIGNMENT:** This GAP Addendum is between the Customer/Borrower (I, You or Your) and the Dealer/Financial Institution (We, Us or Our), or if assigned, with the assignee.

**YOUR RIGHT TO CANCEL:** To cancel GAP at any time, or in the event of the early termination of Your Contract with the Lienholder, You must provide written notice of this cancellation or early termination of Your Contract to the GAP Administrator, Us or the Lienholder within 90 days of Your decision to cancel or the occurrence of the event causing the early termination of Contract. If You notify the GAP Administrator, Us or the Lienholder within 30 days of the Contract, You will receive a full refund/credit of the GAP Purchase Price. If You cancel after 30 days, You will receive a refund/credit of the unused portion of the GAP Purchase Price calculated by the Pro Rata method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee (state restrictions apply). We will refund all charges to the Lienholder listed above unless proof of payoff is submitted; any refund of the purchase price for a waiver that was included in the financing of the motor vehicle may be applied by the creditor as a reduction to reduce the overall amount owed under the finance agreement, rather than applying the refund strictly to the purchase price of the waiver. GAP was included in the financing of the motor vehicle loan. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the Administrator at (800) 705-4001. This GAP Addendum will not be reinstated after a cancellation has been processed. In the event of a Total Loss, the GAP Purchase Price will be considered fully earned and no refund will be available (state exceptions apply).

**ENROLLMENT** - You may purchase GAP only at the time You sign Your Contract to purchase or lease the Vehicle from the dealer. Neither the extension of credit, the terms of credit, nor the terms of the related motor vehicle sale or lease, may be conditioned upon the purchase of GAP. GAP coverage may decrease over the term of Your Contract and may not extend for the full term of Your Contract. Gap coverage may not cancel or waive the entire amount owed at the time of loss per the terms of this Gap Addendum. If the Amount Financed exceeds 150% of MSRP (New)/NADA/Kelley Blue Book (CA only) Retail (Used), at the inception date of the contract, this GAP Addendum may not cover the entire Unpaid Net Balance, see exclusion #7 for details. The GAP Purchase Price is not regulated by any governmental entity. It is Your responsibility to determine whether the cost for GAP is reasonable. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. Notice: You may be able to obtain GAP coverage from your primary carrier.

**TERMINATION OF GAP ADDENDUM:** This GAP Addendum will terminate on the date that any of the following events occur: 1. The date Your Contract is scheduled to terminate 2. Upon payment in full of the Contract 3. Expiration of any redemption period following the repossession or surrender of the Covered Vehicle. In the event of repossession, the Lienholder must be the sole payee for all refunds. 4. In the event of a Total Loss or theft of the Covered Vehicle. 5. The date the Contract is prepaid or the Contract is refinanced. BY YOUR SIGNATURE(S) BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS WAIVER AND ITS PROVISIONS. NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU THAT DIFFER FROM THESE PROVISIONS. YOU UNDERSTAND AND AGREE THAT YOUR ACCEPTANCE OR REJECTION OF THIS GAP ADDENDUM IS VOLUNTARY YOU ARE NOT REQUIRED TO PURCHASE GAP TO OBTAIN CREDIT OR FINANCING.

Acceptance of Express AutoGAP ☒ X

I have reviewed the benefits with my dealer representative. I elect to purchase Express AutoGAP coverage.

_____ 07/19/2014          _____ 07/19/2014
Customer's Signature        Date          Dealer's Signature        Date

Declination of Express AutoGAP ☐

I have reviewed the benefits with my dealer representative. I decline to purchase Express AutoGAP coverage.

_____ _____          _____ _____
Customer's Signature        Date          Dealer's Signature        Date

*GAP Administrator: Express Systems, Inc. Executive Offices, 11 Vanderbilt, Irvine, CA 92618 Telephone (800) 705-4001; Fax (949) 727-0393*

| Original – Consumer | Yellow - GAP Administrator | Pink - Lender Lessor | Gold - Dealer |
|---|---|---|---|

GAP-VS (1/13)          *Create a claim and check claim status at claims.portfolioco.com*          LZX 94260

**DEFINITIONS: Actual Cash Value** (hereafter referred to as ACV) means the value of the Covered Vehicle on the **Date of Loss**, as determined by the **Primary Carrier** settlement, in the event of a **Total Loss**, and does not include towing charges, rental fees, storage charges, administrative fees, salvage value, any prior damage deductions or any unpaid debt resulting from exclusions in the **Primary Carrier** insurance not included in this agreement. In the event of no **Primary Carrier** on the **Date of Loss**, or the **Primary Carrier** is declared insolvent, ACV means the value as determined using the National Automobile Dealers Association (NADA) or Kelley Blue Book (CA only) Official Used Car Guide at the time of loss.

**Amount Financed** means the total "amount financed" in the original Contract.

**Capitalized Cost** means the total "adjusted capitalized cost" in the original Contract.

**Commercial Purposes** means carrying goods, business related materials, or passengers for compensation. This includes, but is not limited to, using a vehicle as a taxi, or for delivery or delivery services where compensation is provided for those services.

**Contract** means the Retail Installment Sales/Loan/Lease Contract which represents the financing agreement between **You** and **Us** for the purchase or lease of a **Covered Vehicle** and which sets forth the terms, conditions, inception date and expiration date of the financing agreement

**Covered Vehicle, Vehicle** means any four-wheel private passenger automobile, van, or light truck of less than 12,500 lbs. Gross Vehicle Weight Rating as described in the Contract and listed on page 1 of this GAP Addendum, utilized for personal purposes. This definition is subject to the Exclusions provisions.

**Customer/Borrower (I, You or Your)** means the natural person(s) named in the Contract and as listed on page 1 of this GAP Addendum.

**Date of Contract** means the date You sign the Contract to purchase/lease Your Vehicle and the effective date of coverage as indicated on page 1 of this GAP Addendum.

**Date of Loss** means the date on which **Your Vehicle** is reported stolen or incurs physical damage that is severe enough to constitute a **Total Loss**.

**Unpaid Net Balance** means **Your** outstanding balance as of the **Date of Loss**. This does not include unearned finance charges, unpaid insurance premiums, late or deferred payments and charges, delinquent payments, past due amounts, refundable portions of any cancelable add-ons such as service contracts, credit life insurance or pre-paid maintenance agreements. If your Finance Agreement includes unequal payments, the unpaid balance will be determined by calculating an amortization/schedule based on the following: increasing the term by the number of months deferred, applying the highest interest rate charged for Your **Finance Agreement** to the adjusted term, and considering the first payment due date as a month after the inception date. If Your Contract has unequal payments, the unpaid balance as of the **Date of Loss** will be determined by creating an amortization schedule, using the Amount Financed/Capitalized Cost at the applicable term and annual percentage rate present in the original Contract, to obtain equal monthly payments. In the event a Contract contains unequal payments the **Payable Loss** will still be subject to all deductions, exclusions, conditions, and terms outlined in this GAP Addendum.

**Payable Loss** means the difference between the **Unpaid Net Balance** and the ACV of the Covered Vehicle on the **Date of Loss**. The **Payable Loss** will not exceed $50,000. **Payable Loss** includes the amount of Your **Primary Carrier** deductible up to $1,000 (if applicable). **Your Primary Carrier** deductible is not provided separately and is only applicable in the event of a **Payable Loss**.

**Primary Carrier** means the insurance company(ies) who provides physical damage coverage for the entire ACV of a **Covered Vehicle** or provides liability coverage for the entire ACV of Your Vehicle to any person who has caused the **Covered Vehicle** to incur a **Total Loss**, and for which that person is legally liable.

**Retail Value** means Manufacturer's Suggested Retail Price (MSRP) for new **Vehicles** and the NADA/ Kelley Blue Book (CA Only) Retail Value for pre-owned **Vehicles** as of the **Date of Contract**.

**Total Loss** means because of theft or accidental damage to **Your Vehicle**, one of the following occurs: 1) **Your Covered Vehicle** is declared a **Total Loss**, or is declared stolen and not recovered within 30 days of the date of the theft, by **Your Primary Carrier**, or 2) no **Primary Carrier** insurance is in force and **Your Covered Vehicle** is stolen and not recovered within thirty (30) days of the date of the theft, or 3) no **Primary Carrier** insurance is in force and the total cost to repair **Your Covered Vehicle** as a result of an accident is greater than or equal to its ACV immediately before the accident as listed on NADA or Kelley Blue Book (CA Only) Official Used Car Guide as of the **Date of Loss**.

**We, Us, Our** means the Dealer/Financial institution or any entity who subsequently purchases or accepts assignment of the **Contract**.

**EXCLUSIONS:** This GAP Addendum does not apply: 1. If the **Vehicle** to which this GAP Addendum refers is refinanced. 2. When the **Date of Contract** occurs prior to the **Date of Contract** or after the original Contract term. 3. To any loss arising out of any dishonest, fraudulent, criminal, illegal or intentional act and any act of gross negligence committed by **You** or permitted by **You**. 4. To any loss arising from fraud, material misrepresentation of fact or falsification of documents, conversion, embezzlement, or concealment by **You** or permitted by **You**. 5. To theft or damage to **Your Vehicle** that does not constitute a **Total Loss**. 6. To any losses that occur outside the continental United States of America, Alaska, Hawaii and Canada. 7. To any portion of the **Amount Financed** at the inception date of the **Contract** exceeding the lesser of $100,000 or 150% MSRP (New)/ 150% NADA/ Kelley Blue Book (CA Only) Retail (Used). 8. To any Retail Installment Sales Contract/ Loan Term that exceeds 84 Months or a Lease Term that exceeds 60 months. 9. To any losses arising out of lawful confiscation by civil authorities or the government, or repossession, of the **Covered Vehicle**. 10. To any loss resulting from any repairing, restoration, or remodeling process, structural, normal wear and tear, freezing, mechanical or electrical breakdown or failure unless fire or other accident ensues, and then only for the loss or damage caused by such fire or accident. 11. To any vehicle with a **Retail Value** of $100,000 or more at the origination of Your Contract, any vehicle which has a salvage title, any motorcycle, recreational vehicle, watercraft vehicles, to vehicles used for **Commercial Purposes** or vehicles weighing over 12,500 lbs. G.V.W.R. (Gross Vehicle Weight Restriction) 12. To losses resulting from a **Covered Vehicle** being operated, used, or maintained in any manner, good contest or competition. 13. To Your personal property that is attached to or within a **Covered Vehicle**. 14. If You voluntarily discard, leave behind, or otherwise relinquish possession, to the extent that it shows intent to forsake and desert the **Covered Vehicle** so that it may be appropriated by any other person. 15. Losses due to war, whether or not declared, invasion, insurrection, rebellion, revolution, or an act of terrorism 16.To any **Total Loss** to **Your Vehicle** resulting from **You** or the driver of the vehicle being convicted of driving under the influence of alcohol or illegal drugs as established by a police report, breathalyzer or blood test.

**TOTAL LOSS BENEFIT REQUEST PROCEDURES** In the event of a **Total Loss**, **You** may initiate a claim by visiting our website at claims.portfolioco.com or by calling our claims department at (877) 705-4001. The following documents must be provided to the Express Systems, Inc Program Claims Administrator at P.O. Box 14300, Mesa, AZ, 85216, Phone (877) 705-4001, Fax (480) 897-7507: 1. A copy of **Your Primary Carrier's** settlement showing all additions and deductions for the settlement amount and a copy of **Your Primary Carrier's** check. 2. A copy of the police theft or accident report that identifies **Your Vehicle** by its vehicle identification number (VIN) must be submitted; 3. A copy of this GAP Addendum; 4. An entire copy, front and back, of the original **Contract**; 5. A copy of **Your Primary Carrier's Declaration** Page, listing the coverage, deductible and agent's phone number; 6. The name and address of the Lienholder and Your account number with the Lienholder; 7. The pay-off balance of Your Contract as calculated by the Lienholder at the Date of Loss; 8. A loan payment history of Your Contract that shows all payments made, including late charges and fees that were applied to your account; 9. A copy of refund checks and/or authorized cancellation forms confirming the refund amount for any credit insurance, mechanical repair coverage or other similar products that were purchased and included in the financing or lease of the **Vehicle**. (Contact the Dealer that sold You the coverage.); 10. For new **Vehicles** only, if available, a copy of the window sticker or **Vehicle** invoice showing the Manufacturer's Suggested Retail Price. (Contact the Dealer that sold or leased You the **Vehicle**); 11. Any reasonable documentation requested by the Program Claims Administrator. Proof of loss must be submitted within ninety (90) days of the date of settlement by your **Primary Carrier** or **Date of Loss**, if you do not have **Primary Carrier** Insurance, but in no event later than one year from the date proof was due as indicated above.

**STATE PROVISIONS:** All terms of this waiver are subject to state law. **Colorado:** The maximum fee that may be charged for this GAP Addendum cannot exceed $300 or 2% of the amount financed, whichever is higher. No cancellation fee may be charged. **Indiana:** This GAP Addendum cannot be sold in instances where the Amount Financed, less the cost of GAP, the cost of credit insurance, and the cost of warranties is less than 80% of MSRP or NADA/Kelley Blue Book (CA only). Please consult with the Department of Financial Institutions at 30 South Meridian St, Suite 300, Indianapolis IN 46204 for additional information or complaints. 1-800-382-4880. GAP cancellation fees are NOT authorized. **Kansas:** ASSIGNMENT: This GAP Addendum remains a part of the finance agreement upon assignment, sale, or transfer of such finance agreement by the Dealer/Financial institution. GAP cancellation fees are NOT authorized. You may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603 (785) 296-2266, toll free (877) 387-8523, with any questions or complaints. **Louisiana:** If a benefit request is not paid within 60 days after complete proof of loss has been filed with the program administrator listed on this GAP Addendum or the Dealer where GAP was purchased, You may file Your benefit request with Virginia Surety directly at 175 West Jackson Blvd., Chicago, IL 60604 800-209-6206. No cancellation fee may be charged. **Maine:** This GAP Addendum is not available for leased vehicles. **Missouri and New Mexico:** No cancellation fee may be charged. **Nebraska:** This guaranteed asset protection addendum is not insurance and is not regulated by the Nebraska Department of Insurance. This guaranteed asset protection addendum remains part of the finance agreement upon assignment, sale, or transfer of such finance agreement by the creditor or the creditor's designee. **New Hampshire:** Our obligations under this GAP Addendum are insured by Virginia Surety Co. Inc., 175 West Jackson Blvd.,Chicago, IL 60604; Toll-free; 800-209-6206 In the event We cease to operate, are bankrupt or Your request for the waiver benefit provided by this GAP Addendum is not resolved within sixty (60) days after You have provided all required documentation for complete proof of loss, You may file a direct request for the waiver benefit with Virginia Surety Company, Inc. In the event You do not receive satisfaction under this GAP Addendum You may contact the New Hampshire Department of Insurance 21 South Fruit St. Concord, NH 03301 (800) 352-3416. **South Dakota:** This GAP Addendum is Optional **Tennessee:** The cost of this GAP Addendum is not regulated and You have the responsibility to determine whether the cost is reasonable in relation to the protection afforded. **Utah:** A guaranteed asset protection waiver is subject to limited regulation by the Utah Insurance Department, and a complaint regarding a guaranteed asset protection waiver must be submitted to the Utah Insurance Department. **Vermont:** No cancellation fee may be charged. This GAP Addendum will be assigned, sold or transferred within 15 days of loan agreement date. **Washington:** Guaranteed asset protection waiver is not credit insurance nor does this waiver eliminate the borrower's obligation to insure the motor vehicle as is required by the laws of Washington. Further, the purchase of GAP does not eliminate the borrower's rights and obligations under the vendor single-interest and/or collateral protection coverage laws of Washington. **Wisconsin:** The Cancellation provision is deleted and replaced by: **YOUR RIGHT TO CANCEL:** To cancel GAP at any time, You must provide written notice of this cancellation to the GAP Administrator, Us or the Lienholder. If You cancel the GAP Addendum or it is terminated within 30 days of the Date of Contract, You will receive a full refund/credit of the GAP Purchase Price plus the amount of any applicable finance charges. If the GAP Addendum is cancelled or terminated after 30 days, You will receive a refund/credit of the GAP Purchase Price calculated by the Pro Rata method. We will refund all charges to the Lienholder listed above. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the Administrator at (800) 705-4001. This GAP Addendum may not be reinstated after a cancellation has been processed. If a gap benefit has been

Exhibit 2

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

Dealer Number 37325 Contract Number ESQ R.O.S. Number 36364714 Stock Number 1922

**Contract Subject to Credit Approval.**

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| EDUARDO L SALCEDO<br>1328 N. PARKSIDE AVE C<br>ONTARIO, CA. 91764 SAN BERNARDINO<br>(909) 717-3083 | | Infiniti Auto Sales<br>925 Harbor Blvd<br>Santa Ana CA 92703<br>(714)-265-2792 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| Used | 2004 | Nissan Maxima | 102,530 | 1N4BA41E04C809001 | XX personal, family or household<br>☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 2,500.00 is |
|---|---|---|---|---|
| 13.99 % | $ 2,354.39 (e) | $ 10,226.89 | $ 12,581.28 (e) | $ 15,081.28 (e) |

(e) means an estimate

YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | $0.00 | |
| One Payment of | $0.00 | |
| Payments | | Monthly, Beginning |
| 35 Payments | $349.48 ESQ | Monthly, Beginning 03/14/2011 |
| One Final Payment | $349.48 | 02/14/2014 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   - A. Cash Price of Motor Vehicle and Accessories $ 10,988.00 (A) ESQ
     1. Cash Price Vehicle $ 10,988.00
     2. Cash Price Accessories $ 0.00
     3. Other (Nontaxable)
        - Describe ______ $ 0.00
        - Describe ______ $ 0.00
   - B. Document Preparation Fee (not a governmental fee) $ 55.00 (B)
   - C. Smog Fee Paid to Seller $ 50.00 (C)
   - D. (Optional) Theft Deterrent Device (to whom paid) ______ $ 0.00 (D)
   - E. (Optional) Theft Deterrent Device (to whom paid) ______ $ 0.00 (E)
   - F. (Optional) Theft Deterrent Device (to whom paid) ______ $ 0.00 (F)
   - G. (Optional) Surface Protection Product (to whom paid) $ 0.00 (G)
   - H. (Optional) Surface Protection Product (to whom paid) ______ $ 0.00 (H)
   - I. Sales Tax (on taxable items in A through H) $ 970.64 (I)
   - J. Optional DMV Electronic Filing Fee $ 0.00 (J)
   - K. (Optional) Service Contract (to whom paid) $ 0.00 (K)
   - L. (Optional) Service Contract (to whom paid) ______ $ 0.00 (L)
   - M. (Optional) Service Contract (to whom paid) ______ $ 0.00 (M)
   - N. (Optional) Service Contract (to whom paid) ______ $ 0.00 (N)
   - O. (Optional) Service Contract (to whom paid) $ 0.00 (O)
   - P. Prior Credit or Lease Balance paid by Seller to ______ $ 0.00 (P) (see downpayment and trade-in calculation)
   - Q. (Optional) Gap Contract (to whom paid) SPECTRUM PLANS $ 595.00 (Q)
   - R. (Optional) Used Vehicle Contract Cancellation Option Agreement $ 0.00 (R)
   - S. Other (to whom paid) ______ $ 0.00 (S) For ______
   - Total Cash Price (A through S) $ 12,658.64 (1)
2. **Amounts Paid to Public Officials**
   - A. License Fees $ 30.00 (A)
   - B. Registration/Transfer/Titling Fees $ 30.00 (B)
   - C. California Tire Fees $ 0.00 (C)
   - D. Other ______ $ 0.00 (D)
   - Total Official Fees (A through D) $ 60.00 (2)
3. **Amount Paid to Insurance Companies** (Total premiums from Statement of Insurance column a + b) $ 0.00 (3)
4. ☒ **Smog Certification or ☐ Exemption Fee Paid to State** $ 8.25 (4)
5. **Subtotal** (1 through 4) $ 12,726.89 (5)
6. **Total Downpayment**
   - A. Agreed Trade-In Value Yr ______ Make ______ $ 0.00 (A) Model ______ Odom 0 VIN ______
   - B. Less Prior Credit or Lease Balance $ 0.00 (B)
   - C. Net Trade-In (A less B) (indicate if a negative number) $ ______ (C)
   - D. Deferred Downpayment $ 0.00 (D)
   - E. Manufacturer's Rebate $ 0.00 (E)
   - F. Other ______ $ 0.00 (F)
   - G. Cash $ 2,500.00 (G)
   - Total Downpayment (C through G) $ 2,500.00 (6)
   - (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above)
7. **Amount Financed** (5 less 6) $ 10,226.89 (7)

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.
Proceeds of Loan From: N/A
Amount $ N/A Finance Charge $ N/A
Total $ N/A Payable in N/A
installments of $ N/A . $ ______
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: ______

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.
X [signature] Buyer X ______ Co-Buyer

## STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | | Term | Premium |
|---|---|---|---|
| $ N/A | Ded. Comp., Fire & Theft | ___ Mos. | $ N/A |
| $ N/A | Ded. Collision | ___ Mos. | $ N/A |
| Bodily Injury $N/A | Limits | Mos. | $ N/A |
| Property Damage $N/A | Limits | ___ Mos. | $ N/A |
| Medical N/A | | ___ Mos. | $ N/A |
| N/A | | ___ Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A (a) |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X [signature]
Co-Buyer X ______
Seller X INFINITI A/S, LLC

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Application for Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | ___ Mos. | ___ | $ ______ |
| Credit Disability | ___ Mos. | ___ | $ ______ |
| Total Credit Insurance Premiums | | | $ N/A (b) |

Insurance Company Name ______
Home Office Address ______

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

You want to buy the credit insurance.
02/12/11 X [signature] 37
Date Buyer Signature Age
02/12/11 X 0
Date Co-Buyer Signature Age

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1Q of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term 36 Mos. SPECTRUM PLANS
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X [signature]

**OPTIONAL SERVICE CONTRACT(S).** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1K, 1L, 1M, 1N, and/or 1O.
1K Company ______
Term ______ Mos. or 0 Miles
1L Company ______
Term ______ Mos. or ______ Miles
1M Company ______
Term ______ Mos. or ______ Miles
1N Company ______
Term ______ Mos. or ______ Miles
1O Company ______
Term ______ Mos. or ______ Miles
Buyer X [signature]

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.
Buyer Signs X [signature]
Co-Buyer Signs X ______

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before ______, Year ______. SELLER'S INITIALS ______

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
S/S X [signature] X ______

Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund the difference to you. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund due from the Seller.
Buyer Signature X [signature] Co-Buyer Signature X ______

**Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.
Buyer Signature X [signature] Co-Buyer Signature X ______

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

**YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.**

Buyer Signature X [signature] Date 02/12/11 Co-Buyer Signature X ______ Date 02/12/11

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X ______ Address ______

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.
Guarantor X ______ Date 02/12/11 Guarantor X ______ Date 02/12/11
Address ______ Address ______

Seller Signs Infiniti Auto Sales Date 02/12/11 By X [signature] Title [signature]

LAW FORM NO. 553-CA (REV. 1/10) US PATENT NO. D506,795
©2010 The Reynolds and Reynolds Company TO ORDER: www.reyproducts.com 1-800-344-0996
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

ORIGINAL LIENHOLDER

**SPECTRUM PLANS**
GUARANTEED ASSET PROTECTION

# GUARANTEED ASSET PROTECTION (GAP) WAIVER

Entered into by and between the purchaser/borrower (consumer, *You*, or *Your*) and the dealer/creditor or its assignee.   **OSB**

| CONSUMER (Name) | | | DEALER/CREDITOR (Name) | | ACCOUNT NUMBER |
|---|---|---|---|---|---|
| ADDRESS | | | ADDRESS | | |
| CITY | STATE | ZIP | CITY | STATE | ZIP |
| HOME PHONE | BUSINESS PHONE | | PHONE | CONTACT | |

| YEAR | MAKE | MODEL | VIN | CURRENT MILEAGE | MSRP/NADA VALUE | LTV Ratio (LTV%) |
|---|---|---|---|---|---|---|

| FINANCIAL AGREEMENT DATE | MOTOR VEHICLE PURCHASE PRICE $ | LIENHOLDER/ASSIGNEE (Name) | | |
|---|---|---|---|---|
| ☐ LOAN – INSTALLMENT SALES CONTRACT   ☐ LEASE | TERM OF THE FINANCIAL AGREEMENT IN MONTHS | ADDRESS | | |
| ☐ NEW   ☐ USED | AMOUNT FINANCED / LEASE CAP COST $ | CITY | STATE | ZIP |
| WAIVER COST $ | ANNUAL PERCENTAGE RATE   % | PHONE | CONTACT | |

## MOTOR VEHICLE TYPE (SELECT ONE)

**MOTOR VEHICLE:**   ☐ AUTO      ☐ VAN      ☐ LIGHT TRUCK / SUV      ☐ ONE TON TRUCK / VAN

## OPTIONS

**COMMERCIAL:**   ☐ COMMERCIAL USE

Specimen

## MANDATORY DISCLOSURES, ACKNOWLEDGEMENT, AND ACCEPTANCE

**PURCHASE OF THIS *WAIVER* IS OPTIONAL. THIS *WAIVER* IS NOT NECESSARY FOR THE EXTENSION OF CREDIT, TERMS OF CREDIT, OR TERMS OF THE *FINANCIAL AGREEMENT* AND THE TERMS OF THE RELATED MOTOR VEHICLE SALE OR LEASE. *YOU* MAY OBTAIN GAP FROM AN ALTERNATIVE SOURCE, FROM *YOUR PRIMARY INSURANCE* CARRIER, OR CONSULT AN INSURANCE AGENT TO SEE IF SIMILAR COVERAGE MAY BE OBTAINED AND AT WHAT COST. THE DEALER/*LIENHOLDER* MAY RETAIN A PORTION OF THIS *WAIVER* COST.**

*YOU* MAY CANCEL THIS *WAIVER* AT ANY TIME PRIOR TO A *TOTAL LOSS* AND RECEIVE A REFUND. ELIGIBILITY REQUIREMENTS, CONDITIONS, AND EXCLUSIONS COULD PREVENT *YOU* FROM RECEIVING BENEFITS. *YOU* SHOULD CAREFULLY READ THIS *WAIVER* FOR A FULL EXPLANATION OF THE PROTECTION PROVIDED.

**THIS *WAIVER* IS NOT INSURANCE AND IS NOT A SUBSTITUTE FOR AND DOES NOT PROVIDE BODILY INJURY, PROPERTY DAMAGE, LIABILITY, OR COLLISION INSURANCE AND DOES NOT COMPLY WITH ANY FINANCIAL RESPONSIBILITY LAW OR ANY OTHER LAW MANDATING MOTOR VEHICLE INSURANCE COVERAGE.**

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND ALL OF THE PROVISIONS OF THIS *WAIVER* AND THAT THE INFORMATION SHOWN ABOVE IS, TO THE BEST OF MY KNOWLEDGE, TRUE AND IDENTICAL TO THE *FINANCIAL AGREEMENT*. COVERAGE IS AVAILABLE ONLY AT THE TIME THE *FINANCIAL AGREEMENT* IS ORIGINALLY EXECUTED. NO STATEMENTS HAVE BEEN MADE TO ME THAT DIFFER FROM THIS *WAIVER*. I ACCEPT ALL OF THE DISCLOSURES.

| TOTAL COST $ | TERM OF THIS WAIVER (IN MONTHS) | I ACCEPT THIS GUARANTEED ASSET PROTECTION WAIVER |
|---|---|---|
| | | X _____ |
| | | Consumer Signature(s)          Date |

X _____      **OSB**
Dealer/Lienholder Signature          Title          Date

**AGREEMENT** – This *Waiver* is a part of, and is incorporated into, *Your Financial Agreement*. In the event of a *Total Loss* of the *Motor Vehicle*, the amount of debt waived shall be the *Deficiency* between the *Outstanding Balance* as of the *Date of Loss* and the *Actual Cash Value*, subject to the terms, conditions, limitations and exclusions in this *Waiver*. The *Deficiency* shall not exceed **$50,000** in total. *You* will remain responsible for the payment of all *Primary Insurance* deductibles over **$1,000** (unless limited by State law) and any Amounts Not Covered under this *Waiver*.

Program Administrator – 1785 Hancock Street, Suite 100 • San Diego, CA 92110-2051 • Telephone (619) 228-0100 • Fax (619) 228-0129 • (Utah: (800) 822-8587)

## MOTOR VEHICLE TYPE

**AUTO, VAN, LIGHT TRUCK/SUV** – Includes four-wheeled private passenger automobiles, vans, light trucks, or SUVs that are described in the *Financial Agreement* and the first page of this *Waiver*.

**ONE TON TRUCK/VAN** – Includes one ton trucks/vans that are described in the *Financial Agreement* and the first page of this *Waiver*. Coverage is not available on leases and is limited to the following: Chevrolet 3500 Series and Chevrolet Express, Ford E350, F350 and F450, Dodge 3500 Series, Dodge 3500 Ram Vans and Dodge 3500 Sprinter, GMC 3500 Series and GMC Savana.

All *Motor Vehicles* must be utilized for personal purposes and be less than 15,000 pounds (10,000 pounds in Texas) gross vehicle weight rating (GVWR) and have a *Retail Value* and/or amount financed less than $100,000 at the date of this *Waiver*.

### OPTIONS

**COMMERCIAL USE** – A *Deficiency* is not covered for a *Total Loss* unless the *Commercial Use* Option is disclosed/purchased. *Commercial Use* means a *Motor Vehicle* that is utilized for commercial/business purposes including but not limited to: (1) business name is displayed on the *Motor Vehicle*; (2) the *Motor Vehicle* is used in furtherance of business or commercial purpose; (3) the purchase, license, or registration or primary insurance is in a business or commercial name or policy. The following Exclusions apply to this Optional coverage: Exclusions paragraph, number (13) and (15). In Texas, *Commercial Use* means a vehicle that is not used primarily for personal, family or household use; is not owned by a corporation, limited liability company, limited partnership, or other business entity; and is not part of a fleet of 5 or more vehicles owned by *You*.

### LIMITATIONS AND TERMS

**Standard loans/*Financial Agreements*** do not have *Retail Value* percent or *LTV Ratio* limitations.

**Leases and *Deferred Payment Financing*** are limited to 125% *LTV Ratio* and a *Deficiency* that exceeds 125% *LTV Ratio* is not covered.

**TERM** – The term of the *Financial Agreement* must be identical to the term of this *Waiver*. This *Waiver* expires upon the earliest of: (1) the original termination date of the *Financial Agreement;* (2) the early termination (including refinance) of the *Financial Agreement;* (3) 84 months from the *Financial Agreement* date; (4) the term disclosed on the first page of this *Waiver*.

**AMOUNTS NOT COVERED** – The *Deficiency* shall not include any of the following: (1) any proceeds that could be recovered from canceling items such as, but not limited to, a service contract, credit insurance, unpaid insurance premiums and similar items in the *Financial Agreement;* (2) amounts added to the loan/*Financial Agreement* or lease amount financed after the purchase of the *Motor Vehicle* such as, prepaid finance charges, acquisition fees, unearned or future finance charges, rental charges, taxes, *Delinquent Payments,* past due amounts, late charges and extension of maturity; (3) prior unrepaired damage, salvage, rental, deducible recoverable from the at fault insurance carrier, towing, storage, mileage, usage, applicable taxes and fees; (4) any unpaid parking tickets, tolls or other violations for which the *Lienholder* is charged; (5) trailers, specialized optional equipment, accessories or body components; (6) accident tax, crash tax or any other fine or fee imposed by any governmental or quasi-governmental authority for responding to an accident.

**EXCESS** – This *Waiver* is excess over any valid and collectible insurance. This means all insurance, which covers the *Motor Vehicle* or *You*. Only when all such insurance is exhausted shall this *Waiver* apply. To the extent a *Deficiency* exists, *You* agree to reimburse any amount provided by this *Waiver* to the Program Administrator if *You* recover *Your* damages from a third party.

**ASSIGNMENT** – The *Lienholder* shall have the right to assign this *Waiver* at any time. Assignment of the *Financial Agreement* by the *Lienholder* shall not affect the terms and conditions of this *Waiver*. In the event of a substitution of collateral and the *Financial Agreement* remains in effect, this *Waiver* coverage will also transfer. This *Waiver* remains a part of the *Financial Agreement* upon the assignment, sale or transfer of the *Financial Agreement*.

**CANCELLATION** – ***You*** may cancel this *Waiver* any time prior to a *Total Loss* by mailing or delivering a written cancellation request to the Dealer, *Lienholder* or Program Administrator within 30 days of the requested cancellation date. The Program Administrator must receive *Your* written cancellation request within 30 days of the requested cancellation date, otherwise the date the Program Administrator receives the request will be the cancellation date. If this *Waiver* is cancelled within 30 days of purchase, and no *Total Loss* has occurred, a full refund will be issued. If this *Waiver* is cancelled after 30 days from purchase, the refund shall be calculated using the Rule of 78 refund method [Pro Rata for Chase and Ally or as may be required by state law] less a $50 cancellation fee. The *Lienholder* will be the payee on any refund. This *Waiver* will not be reinstated after a cancellation is requested. No refunds will be issued if a request for benefits has been filed. No cancellation fee in CO, KS, LA, NH, NM, VT, WI.

### REQUESTING BENEFITS

***TOTAL LOSS*** – In the event of a *Total Loss*, <u>*You* must keep *Your* account current until the *Deficiency* is settled</u>. Request for a *Deficiency* determination must be submitted within 90 days from *Primary Insurance* settlement check date or if there is no *Primary Insurance* 90 days from the *Date of Loss*. Any request for a *Deficiency* submitted after the 90 day period is void.

*You* shall provide the following documentation and any other reasonable documentation requested, to the Program Administrator. All copies must be complete and legible: (1) a copy of the *Primary Insurance* settlement check(s) and settlement valuation and worksheet; (2) a copy of the police report made for the incident; (3) a copy of the original *Financial Agreement* and all addenda, including the *Motor Vehicle* valuation documentation identifying model type and options at the time of purchase, bill of sale, and proof of proceeds recovered from cancellation of refundable items, such as a service contract, credit insurance, or other similar items; (4) a complete payment history; (5) a copy of this *Waiver*.

*You* agree to cooperate with the Program Administrator in the verification of any information submitted.

### EXCLUSIONS

No waiver of debt will occur for a *Total Loss:* (1) if any material facts are withheld, concealed or misrepresented; (2) in the event of fraud; (3) prior to the date of this *Waiver;* (4) that results from forgery, use of an alias or any criminal or illegal act committed by *You*, at *Your* direction or by any person in lawful possession of the *Motor Vehicle;* (5) on any *Motor Vehicle* that has been salvaged or branded in whole or

AFA.SB.LZX80868.0811

in part, used for emergency services, rare, exotic, unusual, limited-production, one-of a kind, kit or customized; (6) due to confiscation, forfeiture, seizure, destruction or risks of contraband by any governmental or public authority; (7) if the *Actual Cash Value* exceeds the *Outstanding Balance;* (8) resulting from civil commotion, disturbance, riot or action taken by any governmental authority in dealing with such; (9) resulting from any race, speed or other contest; (10) if the *Motor Vehicle* is garaged or used outside the *Territory;* (11) resulting from nuclear reaction or radiation or radioactive contamination; or terrorism, hostile or warlike action or any weapon of war; (12) if the *Motor Vehicle* is repossessed or if *You* transfer the *Motor Vehicle* to a third party; (13) if *Commercial Use* exists and the *Commercial Use* Option was not disclosed as of the date of this *Waiver;* (14) if the *Motor Vehicle* does not meet the *Motor Vehicle* Type requirements; (15) if the *Motor Vehicle* is used for livery, used for hire, rental or as a taxi.

### DEFINITIONS

**Actual Cash Value** means the gross settlement calculated by *Your Primary Insurance* company less any physical damage deductible up to $1,000. If there is no *Primary Insurance* on the *Date of Loss,* then *Actual Cash Value* shall mean the *Retail Value.* (CO – limit deductible to $500, IL – no deductible coverage for leases, LA – no deductible coverage.)

**Date of Loss** means the date on which the actual physical loss or damage occurred on the *Motor Vehicle.*

**Deferred Payment Financing** means the first scheduled payment is due 90 days or more after the date of the *Financial Agreement.*

**Deficiency** means the amount of debt waived, which shall be the difference between the *Outstanding Balance* as of the *Date of Loss* and the *Actual Cash Value* subject to the limitations, exclusions, terms and conditions in this *Waiver.*

**Delinquent Payment** means any amount owed under the original terms of the *Financial Agreement* that as of the *Date of Loss* remained unpaid for more than 30 days after the original due date.

**Financial Agreement** means the document(s) which this *Waiver* amends and becomes a part of, evidencing *Your* purchase, lease, or refinancing of the *Motor Vehicle.*

**Lienholder** means the creditor of the *Financial Agreement.*

**LTV Ratio** means the loan/*Financial Agreement* or lease amount financed as a percentage of the *Retail Value* of the *Motor Vehicle.*

**Motor Vehicle** means the *Motor Vehicle* listed on the first page of this *Waiver* and meets the *Motor Vehicle* Type requirements and used within the *Territory.*

**Outstanding Balance** means the amount in U.S. currency as of the *Date of Loss* required to pay the *Financial Agreement* balance per the terms of the *Financial Agreement* as it existed on the *Financial Agreement* date listed on the first page of this *Waiver.* If the first payment is not scheduled and made within the first 45 days, or *Deferred Payment Financing* exists, then the *Outstanding Balance* means the calculated balance as of the *Date of Loss* based upon the presumption of equal monthly payments beginning 45 days after the date of the *Financial Agreement* amortized over no more than 84 months.

**Primary Insurance** means comprehensive and collision insurance coverage as required by the *Financial Agreement.*

**Retail Value** means the Manufacturer's Suggested Retail Price (MSRP) per National Automobile Dealer Association (NADA) regional guide, for new *Motor Vehicles* or NADA retail value for used *Motor Vehicles,* or equivalent market valuation method, including available standard or optional equipment, factory approved conversion packages and dealer installed options.

**Territory** means the United States, its territories or possessions; and Canada.

**Total Loss** means the *Motor Vehicle* is deemed a *Total Loss* by the *Primary Insurance* company due to an insured peril where the damages to the *Motor Vehicle* are greater than or equal to the *Retail Value* of the *Motor Vehicle* immediately prior to the *Date of Loss.* If there is no *Primary Insurance,* then *Total Loss* means the damages to the *Motor Vehicle* are greater than or equal to the *Retail Value* of the *Motor Vehicle* immediately prior to the *Date of Loss* or the *Motor Vehicle* is stolen and not recovered within 30 days after the *Date of Loss.*

**Waiver** means this Guaranteed Asset Protection *Waiver,* which amends *Your Financial Agreement.*

**You, Your** means the consumer(s) listed on the first page of this *Waiver.*

### State Provisions

(1) The Cancellation provision is amended in the following states:

(a) Georgia, Michigan, Nebraska, Tennessee, Utah – *You* must provide written notice of cancellation to the Dealer, *Lienholder* or Program Administrator within 90 days after *Your* decision to cancel this *Waiver* or the occurrence of the event terminating the *Financial Agreement.*

(b) Michigan, Nebraska, Tennessee, Utah – If cancellation occurs because of a default under a *Financial Agreement,* repossession or any other termination of the *Financial Agreement,* any refund due may be paid directly to the *Lienholder,* who may apply the refund as a reduction of the amount owed under the *Financial Agreement,* unless *You* can show that the *Financial Agreement* has been paid in full.

(c) Colorado – After 30 days from the date of purchase, the refund is Pro Rata. The following does not apply: "The Program Administrator must receive *Your* written cancellation request within 30 days of the requested cancellation date, otherwise the date the Program Administrator receives the request will be the cancellation date."

(d) Missouri – If this *Waiver* is cancelled within 15 days of purchase, then a full refund will be issued. If this *Waiver* is canceled after 15 days from the date of purchase, then the refund will use the Pro Rata method. A refund is not required if the amount of the refund is less than $1.

(e) Nebraska – If this *Waiver* is cancelled within 30 days of purchase and benefits were provided, then a full refund will be issued, less any benefits provided. If this *Waiver* is canceled after 30 days from the date of purchase, then the refund will use the actuarial method.

(f) Texas – The refund shall be based upon the earliest of: (1) the prepayment of the financial agreement in full before the original maturity date; (2) a demand by the *Lienholder* or Assignee for payment in full of the unpaid balance or acceleration; (3) *Your* request for cancellation of this *Waiver;* or (4) the total denial of a request for benefits based upon an exclusion. A refund is not required if the amount of the refund is less than $5.

(g) Washington – Any refund may be applied by the *Lienholder* as a reduction of the overall amount owed under the *Financial Agreement,* rather than to the purchase price of this *Waiver.*

(h) Wisconsin – Upon any termination, the Creditor or *Lienholder* is responsible to initiate a refund.

(2) This *Waiver* is amended specific to the following:

Colorado – *Deficiency* means the amount of debt waived, which is the difference between the balance owed by *You* at the time of the *Total Loss,* except amounts previously owed for unpaid installments, legally permitted delinquency fees, insufficient funds check fees for the return or dishonor of checks or other instruments tendered as payment, premiums for creditor-imposed property damage insurance, and deferral fees and the *Actual Cash Value,* subject to the benefits, terms, conditions and exclusions in this *Waiver.* Request for a *Deficiency* must be submitted 90 days from *Primary Insurance* settlement check(s) or from the date the *Lienholder* notifies *You* of any *Deficiency* balance owed, whichever is later. *WAIVER* **BENEFITS MAY DECREASE OVER THE TERM OF THE CONSUMER CREDIT SALE, CONSUMER LEASE OR CONSUMER LOAN.** The purchase of GAP is not required in order to obtain the credit or any particular or favorable credit terms.

Georgia, Tennessee, Washington – Neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease may be conditioned upon the purchase of the GAP waiver.

Kansas – Exclusions 1, 2, 3, 4, 5, 6, 8, 9, 10, 11 and 15 are deleted. Assignment of the *Financial Agreement* by the *Lienholder* shall not affect the terms and conditions of this *Waiver.* All subsequent Assignees agree, by acceptance of the Addendum to the *Financial Agreement* by assignment, to waive *Your* liability covered by this *Waiver.*

Louisiana – The extender of credit hereby agrees by acceptance of this *Waiver* as an amendment to the *Financial Agreement* upon assignment, to waive *Your* liability for the difference between the *Outstanding Balance* (excluding past due amounts, payment extensions, insurance or other charges, as described in this *Waiver)* under *Your Financial Agreement* and the *Actual Cash Value.*

Michigan – A creditor may not condition an extension of credit, the terms of that credit, or the terms of the related *Financial Agreement* on the purchase of a GAP *Waiver.*

Nebraska – This *Waiver* is not regulated by the Nebraska Department of Insurance. If there is no *Primary Insurance,* then *Total Loss* means a qualified inspector declares the *Motor Vehicle* a *Total Loss* pursuant to insurance industry standards in a prepared report or a law enforcement report declares the *Motor Vehicle* an unrecovered theft. Neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease shall be conditioned upon the purchase of the GAP *Waiver.*

New Hampshire – If *You* have questions or complaints, contact the Program Administrator by phone, fax or mail. In the event *You* do not receive satisfaction under this *Waiver, You* may contact the New Hampshire Insurance Department at 21 South Fruit Street, Suite 14, Concord, NH 03301 or 603-271-2261. This Waiver is guaranteed by Wesco Insurance Company, 59 Maiden Lane, 6th Floor, New York, NY 10038 866-505-4048.

Tennessee – The cost of this *Waiver* is not regulated and *You* have the responsibility to determine whether the cost is reasonable in relation to the protection afforded by this *Waiver.*

Texas – *WE* WILL CANCEL CERTAIN AMOUNTS *YOU* OWE UNDER THIS *WAIVER* IN THE CASE OF A TOTAL LOSS OF THE COVERED *VEHICLE* AS STATED IN THIS *WAIVER.* A complaint regarding this *Waiver* may be submitted to the Office of Consumer Credit Commissioner, 2601 N. Lamar Blvd. #201, Austin, TX 78705-4207 (800) 538-1579 http://www.occc.state.tx.us.

The exclusions provision is replaced by the following: No waiver of debt will occur for a *Total Loss* due to: (1) any dishonest, fraudulent, illegal, or intentional act of any authorized driver that directly results in the *Total Loss* of the *Motor Vehicle;* (2) any act of gross negligence by an authorized driver that directly results in the *Total Loss* of the *Motor Vehicle;* (3) conversion, embezzlement, or concealment by any person in lawful possession of the *Motor Vehicle;* (4) lawful confiscation by an authorized public official; (5) operation, use, or maintenance of the *Motor Vehicle* in any race or speed contest; (6) war, whether or not declared, invasion, insurrection, rebellion, revolution, or an act of terrorism; (7) use of the *Motor Vehicle* for primarily commercial purposes if the *Commercial Use* Option is not disclosed as of the date of this *Waiver;* (8) damage that occurs after the *Motor Vehicle* has been repossessed; (9) damage to the *Motor Vehicle* before the purchase of this *Waiver;* (10) any loss occurring outside the *Territory;* (11) an act occurring after the original maturity date or date of the holder 's acceleration of the *Financial Agreement;* (12) normal wear and tear, freezing, or mechanical or electrical breakdown or failure; (13) damage related to any personal property attached to or within the *Motor Vehicle;* (14) damages associated with falsification of documents by any person not associated with the dealer/creditor or other person canceling *Your* deficiency; (15) any unpaid debt resulting from exclusions in *Your Primary Insurance* policy not included in this *Waiver;* (16) abandonment of the *Motor Vehicle* by *You,* only if *You* voluntarily discard, leave behind, or otherwise relinquish possession of the *Motor Vehicle* to the extent the relinquishment shows intent to forsake and desert the *Motor Vehicle* so that the *Motor Vehicle* may be appropriated by any other person; (17) any *Motor Vehicle* that has been salvaged or branded in whole or in part, used for emergency services, rare, exotic, unusual, limited-production, one-of-a kind, kit or customized; (18) if the *Actual Cash Value* exceeds the *Outstanding Balance;* (19) if the *Motor Vehicle* does not meet the *Motor Vehicle Type* requirements; (20) if the *Motor Vehicle* is used for livery, used for hire, rental or as a taxi.

Utah – A creditor may not condition an extension of credit or the terms of the related vehicle sale or lease on the purchase of this *Waiver.* This *Waiver* is subject to limited regulation by the Utah Insurance Commissioner. A complaint regarding this *Waiver* may be submitted to the Utah Insurance Commissioner. If a creditor assigns,

sells or transfers a *Financial Agreement,* a guaranteed asset protection waiver remains a part of the *Financial Agreement.*

Vermont – The Dealer/Creditor must assign, sell or transfer, within 15 business days, the *Finance Agreement* to a *Lienholder/*Assignee as defined in subdivision 1110(32) of Title 8 or to an entity licensed under subdivision 2201(a)(1) or (3) of Title 8 or this *Waiver* is void and *You* will receive a full refund of the charges of this *Waiver.* Neither the extension of credit, the terms of the credit nor the terms of the related sale in the case of a motor vehicle or other goods or services are to be conditioned upon the purchase of a debt protection agreement.

Washington – This *Waiver* is not credit insurance, nor does it eliminate *Your* obligation to insure the *Motor Vehicle* as provided. This *Waiver* does not eliminate *Your* rights and obligations under the vendor's single interest and collateral protection coverage laws. If this *Waiver* is cancelled and the *Lienholder* sells, assigns, or transfers *Your* initial *Financial Agreement,* contact the current *Lienholder* to request a refund.

West Virginia – *Deficiency* means the difference between the balance owed by *You* at the time of the *Total Loss* and the *Actual Cash Value,* but does not include any amount owed by failure to maintain required insurance, late fees accrued and unpaid charges, or any refunds for other goods or services rendered.

Wisconsin – No refund will be provided upon cancellation if a GAP benefit has been paid or will be paid. A cancellation refund within the first 30 days will also include the amount of the applicable finance charge. This *Waiver* expires upon the earliest of: (1) cancellation by *You;* (2) payment in full of the *Financial Agreement;* (3) expiration of any redemption period after a repossession or surrender of the *Motor Vehicle.* This *Waiver* may also be terminated by the *Lienholder* prior to expiration upon occurrence of other events.

If any provision of this *Waiver* conflicts with the laws of the State where it is issued, then the provision(s) is severable and hereby amended to conform to state law. The remaining provisions of this *Waiver* remain in full force.



*You* may direct all inquiries regarding this *Waiver* to:
**Program Administrator**
**1785 Hancock Street, Suite 100 • San Diego, CA 92110-2051 • Telephone (619) 228-0100 • Fax (619) 228-0129**     AFA.SB.LZX80868.0811

# GUARANTEED ASSET PROTECTION WAIVER

## IMPORTANT

### KEEP THIS WITH YOUR FINANCIAL AGREEMENT

### DIRECT ALL INQUIRIES TO:

**SPECTRUM** PLANS
GUARANTEED ASSET PROTECTION

Program Administrator
1785 Hancock Street, Suite 100
San Diego, CA 92110-2051
Telephone: (619) 228-0100
Fax: (619) 228-0129

---

## BENEFIT INFORMATION
### — BENEFIT SUMMARY —

This Waiver waives debt if your Motor Vehicle is damaged beyond repair or is stolen and can not be recovered, and the proceeds of your insurance or amounts you received from third persons is not sufficient to satisfy what you owe under your Motor Vehicle financing agreement.

### — IMPORTANT DISCLOSURES —

#### *WAIVER IS OPTIONAL*

YOU ARE NOT REQUIRED TO PURCHASE THIS WAIVER AS A CONDITION OF OBTAINING CREDIT. Whether or not you purchase this Waiver will not affect your application for credit or the terms of any existing credit agreement you have. If you wish to purchase this Waiver on a purely voluntary basis, you may do so by reviewing this Waiver and then signing the Mandatory Disclosures, Acknowledgement, and Acceptance section of this Waiver.

#### *REFUND OF FEE PAID IN LUMP SUM*

You may cancel this Waiver at any time prior to a total loss and receive a refund.

#### *REQUIREMENTS, CONDITIONS AND EXCLUSIONS*

There are requirements, conditions, and exclusions that could prevent you from receiving benefits. You should carefully read this Waiver for a full explanation of the terms.

---

### REQUESTING BENEFITS FOR A TOTAL LOSS

*You* shall provide the following documentation and any other reasonable documentation requested, to the Program Administrator. All copies must be complete and legible.

(1) A copy of the *Primary Insurance* settlement check(s) and settlement valuation and worksheet.
(2) A copy of the police report made for the incident.
(3) A copy of the original *Financial Agreement* and all addenda, including the *Motor Vehicle* valuation documentation identifying model type and options at the time of purchase, bill of sale, and proof of proceeds recovered from cancellation of refundable items, such as a service contract, credit insurance, or other similar items.
(4) A complete payment history.
(5) A copy of this *Waiver*.

Exhibit 3

This contract contains important information regarding your rights and obligations, including limitations that apply to your purchase. Please read carefully the front and back of this contract before signing.

## RETAIL INSTALLMENT SALE CONTRACT (DEALER — SIMPLE INTEREST)

| Customer Number | Contract Number | Contract Date (Mo., Da., Yr.) | Buyer's Personal Phone | Buyer's Business Phone |
|---|---|---|---|---|
| | A9451 | 12/31/14 | (719)544-5435 | (719)544-2000 |

**Buyer/Co-Buyer** (also referred to as "you, your, yours"): Name, Address, Zip Code of each

DENA P LUCERO
2580 LYNWOOD LANE
PUEBLO, CO 81005

**Seller/Creditor** (also referred to as "we, us, our"): Name, Address, Zip Code of each

SOUTHWEST MOTORS INC
2600 W Us Hwy 50
Pueblo, CO 81008

| | Year | Make and Model | Vehicle Identification Number | Primary Use: Personal, unless otherwise indicated below. |
|---|---|---|---|---|
| ☐ New ☒ Used | 2007 | GMC SIERRA 1500 CLASSIC | 2GTEC13V971130870 | ☐ Business ☐ Agricultural |

Your trade-in is a: Year _____ Make _____ Model _____

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 800.00 |
|---|---|---|---|---|
| 17.990 % | $ 6,576.91 | $ 12,300.29 | $ 18,877.20 | $ 19,677.20 |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 314.62 | 02/14/15 and on the same date each month thereafter until paid in full |

**Security:** You are giving us a security interest in the vehicle being purchased.
**Late Charge:** If payment is not received in full within 10 days after it is due, you will pay a late charge of $15.
**Prepayment:** If you pay off early, you will have to pay a minimum finance charge.
**Additional Information:** See this contract for more information about a prepayment penalty, nonpayment, default, any required repayment in full before the scheduled date, and security interests.

This contract will be assigned to: WELLS FARGO DEALER SERVICES
(Name and address) PO BOX 997517 SACRAMENTO, CA 95899-7517

### ITEMIZATION OF AMOUNT FINANCED

1. Cash price (including accessories, services, $ 499.00 delivery and handling charge," and $ 800.00 sales tax) ......... $ 12,773.09 (1)
2. Total down payment (if negative enter "0" and see line 4d below):
   Gross trade-in $ _____ — payoff by Seller $ _____ N/A
   = net trade-in $ N/A + cash $ 800.00
   + other _____ N/A _____ $ N/A
   + other _____ N/A _____ $ N/A
   + other _____ N/A _____ $ N/A   $ 800.00 (2)
3. Unpaid balance of cash price (1 minus 2) ......... $ 11,973.09 (3)
4. Other charges including amounts paid to others on your behalf (We may retain portion of these amounts):
   a. Fees to public officials (includes security interest)
      Government certificate of title fees (includes security interest)
      recording fee of $ _____ N/A _____ $ 27.20
      _____ N/A _____ $ N/A
      _____ N/A _____ $ N/A
   b. To insurance companies (describe)
      _____ N/A _____ $ N/A
   c. Other (describe who is paid and purpose)
      to _____ N/A _____ for _____ $ N/A
      to Guaranteed Asset for GAP _____ $ 300.00
      to _____ N/A _____ for _____ $ N/A
      to _____ N/A _____ for _____ $ N/A
   d. Net trade-in payoff to _____ $ N/A
      Total other charges and amounts paid to others on your behalf ......... $ 327.20 (4)
5. Amount Financed (3 + 4) ......... $ 12,300.29 (5)
* The delivery and handling charge represents costs and additional profit to the Seller/Dealer.

**Insurance:** You may obtain the physical damage insurance required by this contract (see back) from anyone you want that is acceptable to the Seller. You obtain insurance from the Seller, you will pay

$ N/A for the first N/A

Credit life insurance and credit disability insurance are not required to obtain credit, will not be a factor in the credit approval process, and will not be provided unless you sign below and agree to pay the additional cost. Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below. I want:

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer

Buyer Signature _____

Co-Buyer Signature _____

Premium: $ N/A Term: _____
Credit Life $ N/A
Credit Disability $ N/A

THIS CONTRACT DOES NOT PROVIDE FOR AUTOMOBILE LIABILITY INSURANCE, AND SAID BUYER ALSO STATES THAT HE OR SHE HAS DOES NOT HAVE (strike one) EXISTING AUTOMOBILE LIABILITY INSURANCE IN EFFECT AS APPLICABLE IN EFFECT AN AUTOMOBILE LIABILITY POLICY AS DEFINED IN SECTION 42-7-103(2), COLORADO REVISED STATUTES, ON THE MOTOR VEHICLE SOLD BY THIS CONTRACT.

### GAP/DEBT CANCELLATION

Debt cancellation or guaranteed automobile protection ("GAP") agreements, which pay or satisfy the remaining debt after property insurance benefits are exhausted, are not required to obtain credit or any particular or favorable credit terms and will not be provided unless you sign below and agree to pay the additional cost. You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost. GAP benefits may decrease over the term of this contract. You may cancel GAP for any or no reason within 30 days after GAP was purchased and receive a full refund of the GAP fee or premium so long as no loss or event covered by GAP has occurred. GAP is not a substitute for collision or property damage insurance.

I want: Guaranteed Asset
(Name of debt cancellation/GAP agreement)

Buyer Signature _____

Co-Buyer Signature _____

Fee/Premium: $ 300.00 Term: 60

### CONTRACT AND AGREEMENT TO PAY

You, the Buyer and any Co-Buyer, agree to purchase the vehicle described above on the terms in this contract.

You agree to pay us (or our assignee named in this contract) the amount financed, the finance charge, and all other amounts owed to us under this contract, according to the payment schedule above and the terms of this contract. We calculate the finance charge, total of payments, and total sale price on the assumption that you will make every payment on the day it is due. Because the finance charge is calculated on a daily basis on the unpaid part of the amount financed, your finance charge, total of payments, and total sale price will be more if you pay late and less if you pay early. These changes may take the form of a larger or smaller final payment, or, at our option, more or fewer payments of the same amount as your scheduled payment, with a smaller final payment.

If payment is not received in full within 10 days after it is due, you agree to pay a late charge of $15.

If you pay off early, you are entitled to a minimum finance charge of $ N/A .

If you pay with a check or other instrument that is dishonored or returned, you will pay us a fee of $25 (if the amount financed is $75,000 or less) or $20 (if the amount financed exceeds $75,000 or is not for personal use).

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a portion of the Finance Charge.**

**SECURITY AGREEMENT.** You give us a security interest in the vehicle described in this contract and all parts or goods installed in it, all money or goods received (proceeds) for the vehicle; all insurance, maintenance, service, or other contracts we are financing for you as part of this purchase; and all proceeds from insurance, maintenance, service, or other contracts we are financing for you as part of this purchase. This includes any refunds of premiums or charges from the contracts. This interest secures payment of all you owe on this contract. It also secures your other agreements in this contract. You agree to make sure that the title shows our security interest (lien) in the vehicle.

This transaction is subject to Arbitration and Sellers Right to Cancel as described on the reverse side of this contract. By signing this contract, you agree to all of the terms on each page of this contract, and you agree that you have been given a completed copy. If you sign as Co-Buyer, you are responsible for paying the entire debt. If you sign as a Co-Owner, your name will be on the title to the vehicle, but you will not be responsible for paying the debt. If you sign here as a Co-Owner or Co-Buyer, you agree to the security interest in the vehicle.

Signature of _[signature]_ Dena P Lucero 12/31/14   Seller/Secured Party By: _[signature]_ SOUTHWEST MOTORS INC 12/31/14
Buyer Date                                                                                                                    Date

Signature of _____
☐ Co-Buyer ☐ Co-Owner Date

You agree that this contract contains your entire agreement regarding the financing of the vehicle, and that the terms of this contract cannot be modified except in a writing signed by all the parties.

Buyer Signature X _[signature]_ Dena P Lucero   Co-Buyer Signature X _____

No. 645-ARB. Rev. 5-14. RETAIL INSTALLMENT SALE CONTRACT © Bradford Publishing — 303-292-2500 — www.bradfordpublishing.com — 10/14

### SEE THE BACK OF THIS FORM FOR IMPORTANT TERMS AND CONDITIONS

ORIGINAL

## ADDITIONAL PROVISIONS

**Your Other Promises to Us**

You promise that you will not sell, lease, or otherwise transfer this vehicle or any interest in it to anyone else without getting written permission from us first.

You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer.

You promise that you will not allow anyone else to obtain a lien or security interest on this vehicle or levy against it to pay a debt or judgment.

You agree to give us written notice within 10 days if your address changes from the one shown on the front of this form.

You agree to give us any information that we might reasonably request and sign any papers we may need to establish and maintain our security interest in this vehicle.

You agree not to remove this vehicle from the United States for more than 30 days before getting written permission from us.

You promise to keep this vehicle in good repair and not destroy it or use it in a way that breaks any law or violates the insurance policy on the vehicle. You agree that we may inspect this vehicle at any reasonable time.

You promise to pay any taxes, assessments, registration fees, repair bills, or other expenses in connection with this vehicle when they are due.

If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe us.

You agree that, if the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under any insurance, maintenance, service, or other contracts for which charges are included in this contract and we may cancel these contracts to obtain refunds of unearned charges to reduce what you owe.

**Insurance**

You promise to have physical damage insurance (also known as "extended coverage" insurance) covering loss or damage to the vehicle as long as this contract is in effect, and you agree to give us a certificate of insurance or other proof that you have fulfilled this promise. The insurance must cover our interest in the vehicle and benefits under the insurance must be payable to us. The policy must provide for at least 10 days' written notice to us before it can be cancelled. The terms, amounts, effective dates and insurance company must meet our approval.

If, at any time, you do not have the physical damage insurance on the vehicle required by this contract, we may, if we decide, purchase insurance that covers both your interest and our interest in the vehicle or purchase insurance that only covers our interest in the vehicle and charge you the premium for the insurance plus a finance charge computed at the Annual Percentage Rate stated on this contract. We will notify you if we purchase this insurance and we will tell you what type it is and how much you will have to pay.

You agree that we may use any insurance settlement to reduce what you owe or repair the vehicle if it is lost or damaged.

If you have elected on the front of this contract to obtain any insurance, see the policies or certificates from the insurers for coverage limits and other terms and conditions.

**If You Break a Promise to Us (Default)**

You will be in default if:
- you do not pay the payments as agreed;
- any important information you provide in connection with this contract is not true when you provide it;
- you die or any guarantor or surety for you dies;
- you start a proceeding in bankruptcy or one is started against you or your property;
- if you are a business, you are dissolved, terminated, or cease doing business; OR
- you break any of the other promises you made in this contract.

If you default, we may demand that you pay all you owe us at once after we give you any notice that the law requires, and we may sue to collect.

If we hire an attorney to collect what you owe under this contract, you will pay the attorney fees and court costs, as the law permits. The maximum attorney fee you will pay will be 15% of the amount you owe, unless a court awards an additional amount.

If you default, we may take (repossess) the vehicle from you after we give you any notice the law requires. We may take the vehicle only if we do so peacefully and the

law allows it. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle.

If the vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If any personal items are in the vehicle when we repossess it, we may store them for you at your expense. If you do not ask for these items, we may dispose of them as the law allows.

If we repossess the vehicle, you may redeem it (pay to get it back). Upon your request, we will tell you how much you must pay to redeem the vehicle. Your right to redeem ends when we sell the vehicle.

If we repossess the vehicle, we may claim benefits under any insurance, maintenance, service, or other contracts for which charges are included in this contract. We also may cancel these contracts to obtain refunds of unearned charges to reduce what you owe or to repair the vehicle.

If we repossess the vehicle and sell it, we will apply the money from the sale to the amount you owe after subtracting allowed expenses. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, including attorney fees and court costs the law permits. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at the highest lawful rate until you do.

If you default, the finance charge will continue in effect until all amounts owed under this contract are paid in full.

**If We Make Payments or Incur Expenses for You**

You agree that we may pay taxes, registration, title, or license fees, assessments, repair bills, registration fees, insurance this contract requires, or other items related to the vehicle if these expenses are reasonable to protect the risk of loss or damage to the vehicle and if we notify you of these expenditures. You also agree that, if we do pay any of these expenses for you, the amount of the payment will accrue a finance charge at the annual percentage rate stated in this contract, and you agree to reimburse us on demand for any such payments or expenses.

**Warranties**

Unless the Seller makes a written warranty or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Applicable Law and Severability**

Federal law and Colorado law apply to this contract.

If any provision of this contract or part thereof violates any federal, state or local law or ordinance, that provision or part thereof shall be deemed amended to so comply with the law or ordinance, and shall be construed in a manner so as to comply.

If any provision of this contract (other than the first sentence of the fourth paragraph under "Arbitration Provisions") is determined to be unenforceable by an arbitrator or a court, the remaining provisions shall be severable and enforceable according to their terms. If such first sentence is determined to be unenforceable, then all of the Arbitration Provisions will be severed from this contract and the remaining provisions shall be severable and enforceable according to their terms.

---

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation:**

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

---

### SELLER'S RIGHT TO CANCEL

Seller agrees to deliver the vehicle to you on the date this contract is signed. Seller intends to assign this contract to a financial institution. If Seller does not assign this contract to a financial institution, Seller may cancel this contract upon written notice. In that event, you may enter into a new contract with different financing terms or you may pay with alternate funds arranged by you. Upon receipt of our notice, you must immediately return the vehicle to Seller. If you do not immediately return the vehicle, Seller may use any legal means to recover it (including repossession) and you will be liable for all expenses incurred in recovering the vehicle, including reasonable attorneys' fees. All terms of this contract are in full force and you are responsible for any loss or damage to the vehicle and the costs of repair of any damage while the vehicle was in your possession.

---

### ARBITRATION PROVISIONS

Any claim, dispute or controversy ("claim") arising under or relating to this contract or the vehicle purchase agreement (except where the purchase agreement includes its own dispute resolution provisions, in which case such provisions shall control any claim arising under or relating to the purchase agreement), whether in contract or tort, including without limitation constitutional, statutory, common law, regulatory and equitable claims and claims regarding the validity, enforceability or scope of this contract, shall, at your or our election, be resolved by binding arbitration. Such binding arbitration shall be conducted before a single arbitrator appointed in accordance with its applicable rules by the organization you select among the following: the Better Business Bureau, American Arbitration Association, Legal Resolution Center, Judicial Arbiter Group or Judicial Arbitration and Mediation Services.

The arbitration hearing shall be conducted in the applicable arbitration organization's office that is nearest to the Seller's location. The arbitrator shall apply governing substantive law in making an award and, if the applicable arbitration rules conflict with this arbitration provision, then this arbitration provision shall control. If the rules of the chosen arbitration organization do not specify how fees must be allocated, we will pay the filing, arbitrator, and other administration fees up to $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. You and we will each be responsible for our own attorney, expert and other fees, unless such fees are awarded by the arbitrator under applicable law. Except as prohibited by law, if a party unsuccessfully challenges the arbitrator's award or fails to comply with it, the other party is entitled to recover the costs, including reasonable attorneys' fees, of defending or enforcing the award.

The parties expressly agree that this arbitration provision involves and concerns interstate commerce and is governed by the Federal Arbitration Act, (9 U.S.C. § 1, et seq.), to the exclusion of any different or inconsistent state or local law or judicial rule.

YOU AND WE UNCONDITIONALLY WAIVE THE RIGHT TO LITIGATE ALL CLAIMS IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL, TO PARTICIPATE AS A MEMBER OF ANY CLASS IN ANY CLASS ACTION, INCLUDING CLASS ARBITRATION, AND TO CONSOLIDATE ANY ARBITRATION WITH OTHERS. You and we retain any rights to self-help remedies, such as repossession, and to file a replevin action or a small claims action. Neither you nor we waive the right to arbitrate by using self-help remedies or by filing a replevin action or a small claims action. This arbitration provision shall survive any termination, payoff or transfer of this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal use. In all other cases, the buyer will not assert against any subsequent holder or assignee of this contract any claims or defense the buyer may have against the seller, or against the manufacturer of the vehicle obtained under this contract.

If this transaction contains a fee or premium for guaranteed automobile protection, all holders and assignees of this consumer credit transaction are subject to all claims and defenses which the debtor could assert against the original creditor resulting from the debtor's purchase of guaranteed automobile protection.

☑ This contract is assigned subject to the terms of a separate agreement.

---

### ASSIGNMENT

For value received, Seller assigns all of its right, title and interest in this Contract to *Wells Fargo Dealer Services*

Seller expressly warrants that: (a) this Contract arose from the bona fide, ordinary course of business, sale to Buyer of the described property, (b) title to the property at the time of sale was vested in Seller, (c) Seller had the legal right to and did properly assign and deliver such title and property to Buyer, (d) such property was not misrepresented in any way to Buyer, (e) the statements of Buyer in his credit statement are true to Seller's knowledge, (f) the Collateral is free of all security interests and liens, except the within security interest, (g) Seller is the sole owner of this Contract and has the right to sell and assign same, (h) the down payment was paid in full by Buyer in cash and/or trade-in as stated herein, (i) Buyer is of lawful age and competent, (j) the signature(s) of Buyer(s) is (are) genuine, (k) the Collateral is correctly described herein, (l) Seller has made all disclosures and given all notices required by the Federal Consumer Credit Protection Act and Colorado Uniform Consumer Credit Code, and (m) Buyer's obligation did not arise from a referral sale or a home solicitation sale. If any of the above warranties are false, Seller agrees to save assignee harmless and to pay all attorney fees and other costs incurred by assignee in enforcing such warranties against Seller.

**SOUTHWEST MOTORS INC.**

| Seller | By | Title | Date |
|---|---|---|---|
| | *Sally Koura* | F&I | 12-31-2014 |

**GUARANTEED ASSET** SOLUTIONS·   **GAP ADDENDUM**   UGACO˙ 001215

This Guaranteed Automobile Protection (GAP) Contract Addendum (Addendum) amends the Financing Contract. This GAP Addendum is between the Customer/Borrower (I, You or Your) and the Dealer/Creditor (We, Us, or Our), or when assigned with the Assignee.

| CUSTOMER/BORROWER | | | | DEALER/CREDITOR | | | ACCOUNT NUMBER |
|---|---|---|---|---|---|---|---|
| DENA P LUCERO | | | | SOUTHWEST MOTORS INC | | | |
| ADDRESS | | | | ADDRESS | | | |
| 2580 LYNWOOD LANE | | | | 2600 W US HWY 50 | | | |
| CITY | | STATE | ZIP | CITY | | STATE | ZIP |
| PUEBLO, CO 81005 | | | | Pueblo, CO 81008 | | | |
| HOME PHONE | | BUSINESS PHONE | | PHONE | | CONTACT | |
| (719)544-5435 | | (719)544-2000 | | (719)545-5700 | | | |

| YEAR | MAKE | MODEL | VIN | | CURRENT MILEAGE | | LTV Ratio (LTV%) |
|---|---|---|---|---|---|---|---|
| 2007 | GMC | SIERRA 1500 CLASSIC | 2GTEC13V971130870 | | 117,963 | | |

| FINANCING CONTRACT | | | | ASSIGNEE/LIENHOLDER | | | |
|---|---|---|---|---|---|---|---|
| DATE 12/31/14 | | $ 11,394.00 | | WELLS FARGO DEALER SERVICES | | | |
| ☐LOAN XX | ☐LEASE | TERM OF THE FINANCING CONTRACT IN MONTHS 60 | | ADDRESS PO BOX 997517 | | | |
| ☐NEW | ☐USED XX | AMOUNT FINANCED / LEASE CAP COST 12,300.29 | | CITY SACRAMENTO | | STATE CA | ZIP 95899-7517 |
| ADDENDUM COST $ 300.00 | | INTEREST RATE 17.990 % | | PHONE N/A | | CONTACT | |

| MOTOR VEHICLE TYPE: (SELECT ONE) | ☐AUTO, VAN, LIGHT TRUCK, SUV XX | ☐HEAVY TRUCK/VAN | COMMERCIAL VEHICLE: | ☐COMMERCIAL USE |
|---|---|---|---|---|

**Maximum Term of GAP: 84 months.** Although not required to do so, You have elected to participate in our GAP Program. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the Financing Contract or applicable law. You are responsible for all notifications or claims that are required to be filed with Your automobile insurance company. We will not process or handle Your automobile insurance claims for You. **GAP does not take the place of insurance on the vehicle. GAP is not a substitute for collision or property damage insurance.**

In the event of a Constructive Total Loss to the Covered Vehicle, We agree to waive our rights against You for the amount due under a Payable Loss. In addition to the provisions of Payable Loss, You will remain responsible for payment of any items stated under Exclusions. All Payable Loss claims must be reported to and documentation received by the GAP Administrator listed below within 180 days of actual Date of Loss; or if no Primary Carrier coverage is in effect on the Date of Loss within 180 days of the accident or theft, whichever applies. No Payable Loss will be waived by Us if the claim is not reported within these stated time periods.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE FINANCING CONTRACT IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE. This coverage may decrease over the term of Your Financing Contract and may not extend for the full term of Your Financing Contract. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. You also acknowledge that You have read and understand this Addendum and its provisions. No other verbal representations have been made to You that differ from these written provisions. If You purchase GAP from Us, You understand that We may retain all or a portion of the charge paid by You. You should carefully read all pages of this Addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent You from receiving benefits under this Addendum.

**YOUR RIGHT TO CANCEL:** You have the unconditional right to cancel and terminate this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any termination occurs within 30 days of the Addendum purchase You will receive a full refund/credit of the Addendum cost, provided no loss has occurred. After 30 days, provided no loss has occurred, You will receive a refund/credit of the Addendum Cost calculated by the Pro Rata method, or by the refund method as may be required by state or federal law. We will refund all charges to the Assignee/Lienholder. To cancel the Addendum and request a refund/credit, You must contact the Dealer/Creditor, in writing, at the address shown above. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator stated below.

**ASSIGNMENT:** The GAP Addendum will follow the Financing Contract with no subrogation rights against the Customer/Borrower if the Financing Contract is sold or assigned by the Dealer/Creditor.

☐ Yes, I elect to purchase this GAP Addendum and accept its terms, **Limitations,** and **Conditions.**
XX

| CUSTOMER/BORROWER(S) | | DEALER/CREDITOR | |
|---|---|---|---|
| X _[signature]_ 12/31/14 | | X _[signature]_ 12/31/14 | |
| Customer/Borrower Signature | Date | By Dealer/Creditor _FSI_ | Date |
| Co-Customer/Borrower Signature | Date | Title | |

GAP Administrator: **Financial Gap Administrator LLC** • 1670 Fenpark Drive • Fenton, MO 63026 • Phone: (800) 861-0460

Administrator - White        Lender/Lessor - Yellow        Dealer - Pink        Consumer - White

**Page 1 of 3**

FC422                                                                                                    03/14

**LIMITATIONS:**

A. No Addendum will be issued for the Covered Vehicle with a Manufacturer's Suggested Retail Price (MSRP) or NADA retail value of more than $100,000.

B. The Payable Loss for Financing Contracts with terms greater than the Maximum Term Of GAP stated on page 1 will be based on a Outstanding Balance calculated using the Maximum Term of GAP stated on page 1.

C. Any Addendum issued for a term in excess of B or C above will be deemed eligible for enrollment as limited by this section.

D. No coverage is provided for a Financing Contract that does not have uniform monthly repayment terms for the full period of the financing agreement, including a Financing Contract that includes a one-time balloon payment, and/or a Financing Contract that is Self-financed.

**TERMINATION OF ADDENDUM:** This Addendum will terminate on the date that any of the following events occur: 1. the date Your Financing Contract is scheduled to terminate; 2. upon payment in full of the Financing Contract; 3. expiration of any redemption period following the repossession or surrender of the Covered Vehicle; 4. the date the Financing Contract is prepaid or the Financing Contract is refinanced. It is Your responsibility to notify the Dealer/Creditor, in writing, of Your request to cancel this coverage and to request a refund/credit of the GAP charges.

**LOSS DOCUMENT PROCEDURES:** In the event of a Constructive Total Loss, You must notify and provide all of the following to Our GAP Administrator, **Financial Gap Administrator** (at the address shown below): 1. a complete copy of the Primary Carrier insurance settlement, including the valuation report; 2. a copy of the original Financing Contract and this Addendum; 3. a copy of the accident/police report; 4. a copy of Your automobile insurance policy; 5. a copy of the complete payment history including payoff as of Date of Loss; 6. a copy of the insurance settlement check; and; 7. any additional reasonable documentation requested by Our GAP Administrator or Us including but not limited to a complete detailed listing of all options installed on the automobile at or before the time of purchase. The GAP Administrator will not obtain this information for You. The GAP Administrator must receive this documentation within 180 days of the Date of Loss. No Payable Loss will be waived if this documentation is not provided to the GAP Administrator within this stated time period.

**REPORT YOUR TOTAL LOSS TO OUR GAP ADMINISTRATOR:**

**FINANCIAL GAP ADMINISTRATOR LLC**
**1670 Fenpark Drive • Fenton, MO 63026**
**Phone: (800) 861-0460 • Fax: (636) 680-0486 • Email: LossReport@GapAdmin.com**

## DEFINITIONS

**Actual Cash Value (ACV)** – Retail value of the Covered Vehicle on the Date of Loss, prior to its physical damage or theft, as determined by the Primary Carrier, including tax and title fees owed as part of the total loss settlement. If no Primary Carrier exists or the Primary Carrier has been declared insolvent, the retail value as determined by the GAP Administrator using the National Automobile Dealer's Association Official Used Car Guide for the region where the Covered Vehicle is principally garaged, based on the best information available on the Covered Vehicle's options and condition.

**Customer/Borrower (I, You or Your)** – The person to whom the Dealer/Creditor has extended financing for the purpose of purchasing or leasing a Covered Vehicle.

**Constructive Total Loss** – A direct and accidental loss of or damage to a Covered Vehicle which meets one of these criteria: 1) the Covered Vehicle is declared a total loss by the Primary Carrier due to structural or safety concerns, 2) the total cost to repair the Covered Vehicle is greater than or equal to the Actual Cash Value of the Covered Vehicle immediately prior to the Date of Loss, or 3) the Covered Vehicle is stolen and not recovered within thirty (30) days after the Date of Loss. A Customer requested total loss declared by the Primary Carrier does not constitute a Constructive Total Loss.

**Commercial Vehicle** – A motor vehicle principally garaged and used in the Territory, that is used for commercial purposes including but not limited to the following: a) a business name is permanently displayed on the vehicle; b) the vehicle is used for a business purpose more than 50% of the week; c) the primary insurance for the vehicle is a business auto policy or commercial vehicle policy. Trailers, special commercial usage optional equipment, accessories, and body components are excluded from coverage. Share-the-expense car pools are not considered a commercial purpose. This definition is subject to the Exclusions provisions.

**Covered Vehicle** – A motor vehicle principally garaged and used in the Territory, utilized only for personal purposes and that meets one of these criteria as described in the first page of this Addendum: 1) a four-wheeled private passenger automobile, van, light truck or SUV of less than 12,500 pounds gross vehicle weight; or 2) a Heavy Truck/Van. This definition is subject to the Exclusions provisions.

**Date of Loss** – The date on which Covered Vehicle is reported stolen or incurs physical damage that is severe enough to constitute a Constructive Total Loss.

**Delinquent Payment** – Any payment, as described in the Financing Contract, which remains unpaid for a period of more than 30 days after the due date stated in the Financing Contract. The Delinquent Payment amount will include any late charges or interest that has accrued due to Financing Contract payments being past due. The Delinquent Payment amount will be determined as of the Date of Loss.

**Financing Contract** – The contract which represents the financing agreement between the Dealer/Creditor, or when assigned the Assignee, and the Customer/Borrower for the purchase or lease of the Covered Vehicle, and which explains the terms, conditions, inception date, and expiration date of the financing agreement.

**Heavy Truck/Van** – A one ton truck or van, including dual-wheeled pickup trucks, of less than 15,000 pounds gross vehicle weight and limited to the following: Chevrolet 3500 Series and Chevrolet Express, Ford E350, F350, and F450, Dodge 3500 Series, Dodge 3500 Ram Vans and Dodge 3500 Sprinter, GMC 3500 Series and GMC Savana and like kind vehicle makes.

**Outstanding Balance** – The amount of the Assignee/Lienholder's interest as of the Date of Loss, as represented by the portion of the Customer/Borrower's unpaid balance according to an amortization of the original payment schedule of the Financing Contract that is secured by collateral subject to the Limitations. The amount does not include: amounts added after the inception date of the Financing Contract, any unearned interest, interest accrued after the Date of Loss, lease or loan charges, late charges, Delinquent Payments, deferred payments, uncollected service charges, refundable prepaid taxes and fees, disposition fees, termination fees, penalty fees, the recoverable portion of financed insurance charges, (including but not limited to: credit life coverage, auto physical damage, collateral protection), or the recoverable portion of financed amounts for service contracts and/or warranties. Financing Contracts with initial payments due beyond forty five (45) days from the loan/lease transaction date will be re-amortized by the GAP Administrator as of the Financing Contract inception date in the event of a claim.

**Payable Loss** – The amount (with respect to a Covered Vehicle) equal to the difference between the Outstanding Balance and the Actual Cash Value of the Covered Vehicle on the Date of Loss. The Payable Loss will not exceed $50,000. Payable Loss includes the amount of Your physical damage deductible on the Primary Carrier's policy up to $1,000. In the event that there is no Primary Carrier coverage in effect on the Date of Loss, or if the Primary Carrier is declared insolvent, We will only waive the difference between the Outstanding Balance as of the Date of Loss and the ACV. If the Actual Cash Value of the Covered Vehicle on the Date of Loss less the applicable physical damage deductible, subject to the maximum physical damage deductible on the Primary Carrier's policy of up to $1,000, is greater than or equal to the Outstanding Balance, no coverage will be provided.

**Primary Carrier** – The insurance company that is selected by the Customer/Borrower to provide physical damage coverage on the vehicle; or provides liability coverage to any person who has caused Your vehicle to incur a Constructive Total Loss.

**Self-financed** – A Financing Contract that is funded and retained by the selling Dealer/Creditor or an affiliate.

**Territory** - This coverage applies only to a Payable Loss sustained while the Covered Vehicle is: 1. within the United States of America (U.S.), its territories or possessions; 2. in Canada; or 3. being transported between any of the previously stated.

## CONDITIONS

**Exclusions** – This Addendum will not provide coverage for loss:
1. Resulting from losses occurring prior to the effective date of this Addendum.
2. Resulting from confiscation of Covered Vehicle by a government body or public official.
3. Caused by theft, unless Customer/Borrower files a police report.
4. Resulting from being operated, used, or maintained in any race, speed contest, or other contest.
5. To a Covered Vehicle held as security under any wholesale, floor plan, field warehouse, or any type of financing to a dealership.
6. To a Covered Vehicle with a Financing Contract in which the capitalized cost or total amount financed is more than the amount shown in Limitations item A at the inception date of the Financing Contract.
7. Attributable to other than the standard or optional equipment available from the manufacturer of the Covered Vehicle, including but not limited to: special carpeting, furniture, bars, audio, video, or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap. Factory approved conversion packages and dealer installed options usually included in used car value guidebooks are not excluded.
8. Occurring after Covered Vehicle has been repossessed by an Assignee/Lienholder or placed in a Assignee/Lienholder's possession or in possession of a Assignee/Lienholder's employees or agents.
9. For any amounts deducted from the Primary Carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.
10. To a Covered Vehicle with a salvage or rebuilt title at the time of sale or for which title has been changed or re-issued as salvage or rebuilt prior to the Date of Loss.
11. Resulting directly or indirectly from any fraudulent, deceptive, illegal, or criminal act by You, whether acting alone or in collusion with others.
12. Resulting from any deduction applied to the ACV for diminished value.
13. To a Covered Vehicle utilized as a Commercial Vehicle where the Commercial Use option was not disclosed as of the date of this Addendum.


**Fraud and Misrepresentation** – This Addendum is issued in reliance upon the truth of all representations made by You. We will not waive a Payable Loss claim as to any Financing Contract where You: 1. Intentionally concealed or misrepresented any material fact; 2. Engaged in fraudulent conduct; or 3. Made a false statement relating to submitting a claim. If You have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after a Constructive Total Loss, this Addendum may be voided and all charges will be returned.


## STATE PROVISIONS

**Colorado -** If this transaction contains a fee or premium for Guaranteed Automobile Protection (GAP), all holders and assignees of this consumer credit transaction are subject to all claims and defenses which the consumer could assert against the original creditor resulting from the consumer's purchase of Guaranteed Automobile Protection (GAP).  If the Financing Contract is prepaid prior to maturity or the vehicle is no longer in the consumer's possession due to the Creditor's lawful repossession and disposition of the collateral, and if no GAP claim has been made, the Creditor must refund to the consumer the unearned fee or premium paid for the GAP; such refund shall be made using the pro-rata method.

**STATE LAW -** If any provision of this Addendum conflicts with the laws of the state in which it was issued, the provision(s) is severable and hereby amended to conform to state law.  The remaining provisions of this Addendum remain in full force.

Exhibit 4

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

Dealer Number 1485         Contract Number

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| FREDERICK WILLIAM BROWN JR 3115 DUBLIN RD STREET, MD 21154 | N/A N/A N/A | FREDERICK FORD 26905 Sussex Highway Seaford, DE 19973 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2008 | FORD TRUCK F250 | 1FDSX21518E968993 | ☒ personal, family or household ☐ business ☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3,233.00. |
|---|---|---|---|---|
| 4.490 % | $ 2,089.76 | $17,354.44 | $ 19,444.20 | $ 22,677.20 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 324.07 | Monthly beginning   10/28/11 |

Or As Follows:

Late Charge. If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ ____15____ or ____5____% of the part of the payment that is late, whichever is __less__.
Prepayment. If you pay off early your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| 1 Cash Price (including $ 1,064.94 sales tax) | | $ 19,199.98 (1) |
| 2 Total Downpayment = | | |
|   Trade-in  2001  FORD SUPER DUTY F-250 (Year) (Make) (Model) | | |
|   Gross Trade-in Allowance | $ 1,500.00 | |
|   Less Pay Off Made By Seller | $ N/A | |
|   Equals Net Trade In | $ 1,500.00 | |
|   + Cash | $ 1,733.00 | |
|   + Other | $ N/A | |
|   (If total downpayment is negative, enter "0" and see 4H below) | $ 3,233.00 (2) | |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 15,966.98 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
|   A Cost of Optional Credit Insurance Paid to Insurance Company or Companies | | |
|     Life | $ N/A | |
|     Disability | $ N/A | N/A |
|   B Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A |
|   C Optional Gap Contract | | $ N/A |
|   D Official Fees Paid to Government Agencies | | $ 966.00 |
|     to | for | $ N/A |
|     to | for | $ N/A |
|     to | for | $ N/A |
|   E Government Taxes Not Included in Cash Price | | $ N/A |
|   F Government License and/or Registration Fees | | $ N/A |
|   G Government Certificate of Title Fees | | $ 133.50 |
|   H Other Charges (Seller must identify who is paid and describe purpose) | | $ 110.00 |
|     to  Prior Credit or Lease Balance | | $ N/A |
|     to  FREDERICK FORD  ADMIN FEE | for | $ 249.00 |
|     to | for | $ N/A |
|     to | for | $ N/A |
|     to | for | $ N/A |
|   Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 1,387.50 (4) |
| 5 Amount Financed (3 + 4) | | $ 17,354.44 |

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the Insurance you want and sign below:**

**Optional Credit Insurance**
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

| Premium: | |
|---|---|
| Credit Life $ | N/A |
| Credit Disability $ | N/A |

Insurance Company Name _____

Home Office Address _____

**Other Optional Insurance**

| Type of Insurance | Term |
|---|---|
| Premium $ | N/A |

Insurance Company Name  N/A

Home Office Address  N/A

| Type of Insurance | Term |
|---|---|
| Premium $ | N/A |

Insurance Company Name _____

Home Office Address _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X _____  09/13/11
   Buyer Signature                 Date

X _____
   Co-Buyer Signature              Date

**THIS CONTRACT DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**Returned Check Charge:** If any check you give us is dishonored, you agree to pay a charge of $40.

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before _____, _____ Year _____ SELLER'S INITIALS _____

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details or the terms and conditions it provides. It is a part of this contract.
Term ____60____ Mos. _____  AMERICAN HERITAGE
                                          Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X _Frederick W. Brown Jr_

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X _____  Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

NOTICE TO THE BUYER: 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _Frederick W. Brown Jr_  Date 09/13/11   Co-Buyer Signs X _____  Date _____

Co-Buyer and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Address _____

Seller signs  FREDERICK FORD   Date 09/13/11   By X _____

Seller assigns its interest in this contract to  WELLS FARGO DEALER SERVICES  (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☐ Assigned without recourse   ☑ Assigned with limited recourse
FREDERICK FORD (Seller)   By X _____   Title _____

FORM NO. 553-DE-ECB   U.S. PATENT NO. D468,753
©2004 The Reynolds and Reynolds Company

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of, or damage to, the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the cost of the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What "happens" to "returned" insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. You may have to pay collection costs. If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. The maximum attorney's fee you will pay will be 15% of the amount you owe.

d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may have to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorneys' fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay off the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under the contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. Applicable Law.** Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against the Seller, or against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-DE 8-08

**5 Star Preferred**                    **GAP Addendum**        FP47                    808298

This Guaranteed Automobile Protection (GAP) Contract Addendum (addendum) dated _____ 09/13/11 _____ amends the financing contract. This GAP addendum is between the customer/borrower and the dealer/creditor (we, us, or our), or if assigned with the assignee.

| | |
|---|---|
| Customer/Borrower FREDERICK WILLIAM BROWN JR | Dealer/Creditor   FREDERICK FORD |
| Address      3115 DUBLIN RD | Address     26905 Sussex Highway |
| City, State, Zip   STREET, MD 21154 | City, State, Zip   Seaford, DE 19973 |
| Vehicle Make/Model/Year    2020   FORD TRUCK F250 | VIN    1FDSX21518EB68993 |
| Date of Financing Contract/Loan          09/13/11 | Term of GAP   60     Monthly Pmt $ 71.07 |

| | |
|---|---|
| | Term of Financing Contract/Loan 60   Maximum Term of GAP: 84 Mos |
| Financial Institution/Lender     WELLS FARGO DEALER SERVICES | MSRP/NADA $ 1,871.00      Maximum. Eligibility Limit % 150% |
| Address        PO BOX 997517 | Amount Financed 7,354.44 |
| City            SACRAMENTO | State       CA      Zip 95899-7517 |
| ☐ Balloon ☐ Lease ☐ Installment Sales Contract | Mileage      66,904      For Administrative Purposes CLASS: |

Although not required to do so, you have elected to participate in our GAP Program. GAP does not take the place of insurance on the vehicle. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the financing contract or applicable law.  You are responsible for all notifications or claims that are required to be filed with your automobile insurance company. We will not process or handle your insurance claims for you.

### The Charge to You for GAP is $ _____ 895.00

In the event of a constructive total loss to the covered vehicle, we agree to waive our rights against you for the amount due under a payable loss. In addition to the provisions of payable loss, you will remain responsible for payment of any items stated under Exclusions.

**TERMINATION OF ADDENDUM:** This addendum will terminate on the date that either of the following events occur: 1. the date your financing contract is scheduled to terminate; 2. upon payment in full of the financing contract; 3. expiration of any redemption period following the repossession or surrender of the covered vehicle; 4. in the event of a constructive total loss or theft of the covered vehicle; or 5. the date the financing contract/loan is prepaid or the financing contract is refinanced.  It is your responsibility to notify the dealer/creditor, in writing, of your request to cancel this coverage and to request a refund/credit of the GAP charges.

---
**REPORT YOUR TOTAL LOSS TO OUR GAP ADMINISTRATOR:**

**AMERICAN HERITAGE INSURANCE SERVICES**
PO BOX 260098, MIAMI, FL 33126-0098 • Phone (305) 267-4344 • Toll Free (800) 741-4216 • Fax (305) 267-4349
All payable loss claims must be reported to us within 90 days of receiving settlement from the primary carrier; or if no primary carrier coverage is in effect on the date of loss within 90 days of the accident or theft.  No payment for payable loss will be made by us if the claim is not reported within these stated time periods.

---

**YOUR RIGHT TO CANCEL:** You have the unconditional right to cancel and terminate this optional addendum for a refund/credit of the unearned portion of the charge for this addendum at any time. If any termination occurs within 30 days of the addendum purchase you will receive a full refund/credit of the addendum cost, provided no loss has occurred. After 30 days, you will receive a refund/credit of the addendum cost calculated by the Pro Rata method, or by the refund method as may be required by state or federal law, less a $35.00 cancellation fee. We will refund all charges to the financial institution/lender. To cancel the addendum and request a refund/credit, you must contact the dealer/creditor, in writing, at the address shown above. If you do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator stated above.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE FINANCING CONTRACT IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE VEHICLE. This coverage may decrease over the term of your financing contract and may not extend for the full term of your financing contract/loan. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. You also acknowledge that you have read and understand this addendum and its provisions.  No other verbal representations have been made to you that differ from these written provisions.  If you purchase GAP from this dealer/creditor, you understand that the financial institution/lender may retain all or a portion of the charge paid by you.  This addendum includes a binding arbitration clause.  You should carefully read the back of this addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent you from receiving benefits under this addendum.

☑ Yes, I accept this GAP addendum and its terms and Conditions.

| | | | |
|---|---|---|---|
| Customer/Borrower _(signature)_ | | Dealer/Creditor _(signature)_ | |
| FREDERICK WILLIAM BROWN JR            09/13/11 | | FREDERICK FORD                    09/13/11 | |
| PRINT NAME                          DATE | | BY                                DATE | |

**ASSIGNMENT:** The GAP addendum will follow the financing contract/loan or lease with no subrogation rights against the customer/borrower, if the financing contract/loan or lease is sold or assigned by the dealer/creditor.

**LIMITATIONS:**

A. No addendum will be issued for the covered vehicle with a Manufacturer's Suggested Retail Price (MSRP) or NADA retail value of more than $100,000, or if the amount financed exceeds $100,000.

B. No coverage is provided for that portion of the net payoff that results from the amount financed/lease cap cost exceeding the Maximum Eligibility Limit stated above at the inception date of this addendum and will be deducted from the payable loss due.

C. The payable loss for financing contracts/loans or leases with terms greater than the Maximum Term of GAP stated above will be based on a net payoff calculated using the Maximum Term of GAP stated above.

D. Any addendum issued for an amount financed or term in excess of B or C above will be deemed eligible for enrollment as limited by this section.

E. No coverage is provided for a financing contract/loan or lease that does not have uniform monthly repayment terms for the full period of the financing agreement (except for balloon loans with uniform payments) and/or for a financing contract/loan or lease that is self- financed.

**LOSS DOCUMENT PROCEDURES:** In the event of a constructive total loss, you must notify and provide all of the following to our GAP Administrator, American Heritage Insurance Services (at the address shown above): 1. a complete copy of the primary insurance settlement, including the valuation report; 2. a copy of the original financing contract and this addendum; 3. a copy of the accident/police report; 4. a copy of your automobile insurance policy; 5. a copy of the payoff from the financial institution/lender as of the date of loss; 6. a copy of the insurance settlement check; and 7. any additional reasonable documentation requested by our GAP administrator or us. The GAP Administrator will not obtain this information for you. The GAP Administrator must receive this documentation within 90 days of settlement by your primary carrier.  No payment will be made if this documentation is not provided to the GAP Administrator within this stated time period.

FP47        ● YELLOW: AHIS   ● WHITE: DEALER/CREDITOR   ● PINK: CUSTOMER/BORROWER   ● GOLD: FINANCIAL INSTITUTION/LENDER        06/08
LZX 22086

## DEFINITIONS

**Actual Cash Value (ACV)** – The retail value of the covered vehicle, on the date of loss, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or, at the administrator's discretion, the GAP administrator may use an equivalent national or regional guide for the territory in which the covered vehicle is principally garaged. For a covered vehicle which has no retail value available, or is located in territories where NADA or an equivalent national or regional guide is not customarily used, ACV will be determined using the best information available to our GAP administrator, or which GAP administrator reasonably believes accurately reflects the retail value of the covered vehicle and is customarily used as the basis for establishing ACV for covered vehicle in the territory of the covered vehicle location.

**Customer/Borrower (I, you or your)** – The national person(s) named in the financing contract receiving a financing contract/loan or lease from the financial institution/lender.

**Constructive Total Loss** – A direct and accidental loss or damage of covered vehicle, which meets one of these criteria: 1. the total cost to repair the covered vehicle is greater than the ACV of the covered vehicle immediately prior to the date of loss; or 2. the covered vehicle is stolen and is not recovered within 30 days from the date a police report was filed, and your primary carrier declares the covered vehicle a total loss. In the case there is no primary insurance coverage, the covered vehicle must be available for the GAP Administrator's inspection or appraisal to determine if the covered vehicle is a constructive total loss. If the covered vehicle is not available for inspection or appraisal the claim will not be paid.

**Commercial Vehicle** – Any vehicle in excess of 10,000 lbs, and/or used for commercial purposes including but not limited to: transportation of persons or property for hire, compensation, profit, or in the furtherance of a commercial enterprise, including but not limited to the following: a) a business name is permanently displayed on the vehicle; b) the vehicle is used for a business purpose more than 50% of the week; c) the primary insurance for the vehicle is a Business Auto Policy or Commercial Vehicle Policy. Trailers, special commercial usage optional equipment, accessories, and body components are excluded from coverage. Share-the-expense car pools are not considered a commercial purpose.

**Covered Vehicle** – Any four-wheel private passenger automobile, van, or light truck, as described in the financing contract, utilized for personal purposes. This definition is subject to the Exclusions provisions.

**Date of Loss** – The date on which covered vehicle is reported stolen or incurs physical damage that is severe enough to constitute a total loss.

**Delinquent Payment** – Any payment, as described in the financing contract, which remains unpaid for a period of more than 30 days after the due date stated in the financing contract. The delinquent payment will be determined as of and limited to amounts past due on the date of loss.

**Financing Contract** –The contract which represents the financing agreement between the financial institution/lender and customer/borrower for the purchase or lease of the covered vehicle, and which explains the terms, conditions, inception date, and expiration date of the financing agreement.

**Maximum Eligibility Limit** – The Manufacturer's Suggested Retail Price (MSRP) for new vehicles or the NADA retail value for used vehicles multiplied by the Maximum Eligibility Limit percentage as stated in the Schedule.

**Net Payoff** – The amount of the financial institution/lender's interest as of the date of loss, as represented by the portion of the customer/borrower's unpaid balance according to the original payment schedule of the financing contract that is secured by collateral subject to the Limitations. The amount does not include any unearned finance charges; lease or financing contract/loan charges; late charges; any delinquent payments; uncollected service charges; refundable prepaid taxes and fees; disposition fees; termination fees; penalty fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by you on the date of loss; and amounts that are added to the financing contract/loan or lease balance after the inception date of the financing contract.

**Payable Loss** – The difference between the net payoff and the greater of: 1) the primary carrier settlement; or 2) 90% of ACV of the covered vehicle on the date of loss. The payable loss will not exceed $50,000. Payable loss includes the amount of your physical damage deductible on the primary carrier's policy up to $1,000. In the event that there is no primary carrier coverage in effect on the date of loss, or if the primary carrier is declared insolvent, we will only pay the difference between the net payoff as of the date of loss and the ACV.

**Primary Carrier** – The insurance company that: is selected by the customer/borrower to provide physical damage coverage on the vehicle; or provides liability coverage to any person who has caused your vehicle to incur a constructive total loss.

**Self-financed** – A financing contract/loan/lease that is funded and retained by the selling dealer or an affiliate.

**Territory** – This coverage applies only to payable losses sustained while the covered vehicle is: 1. within the United States of America (U.S.), its territories or possessions; 2. in Canada; or 3. being transported between any of the previously stated.

## CONDITIONS

**Exclusions** – This addendum will not provide coverage for loss:

1. Resulting from losses occurring prior to the effective date of this addendum.
2. Resulting from confiscation of covered vehicle by a government body or public official.
3. Caused by theft, unless customer/borrower or financial institution/lender files a police report.
4. Resulting from being operated, used, or maintained in any race, speed contest, or other contest.
5. To a covered vehicle held as security under any wholesale, floor plan, field warehouse, or any type of financing to a dealership.
6. To the following vehicles which are excluded from coverage: Daewoo, Bentley, Lamborghini, Lotus, Maserati, Ferrari, Rolls Royce, Yugo, Aston Martin, RV's, boats, ATV's, snowmobiles, motorcycles, trailers and commercial vehicles.
7. To a covered vehicle with a financing contract in which the capitalized cost or total amount financed is more than the amount shown in Limitations item A at the inception date of the financing contract.
8. Attributable to other than the standard or optional equipment available from the manufacturer of the covered vehicle, including but not limited to: special carpeting, furniture, bars, audio, video, or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap. Factory approved conversion packages and dealer installed options usually included in used car value guidebooks are not excluded.
9. Occurring after covered vehicle has been repossessed by a financial institution/lender or placed in a financial institution/lender's possession or in possession of a financial institution/lender's employees or agents.
10. For any amounts deducted from the primary carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.
11. To a covered vehicle with a salvage or rebuilt title at the time of sale or for which title has been changed or re-issued as salvage or rebuilt prior to the date of loss.
12. Resulting directly or indirectly from any fraudulent, deceptive, illegal, or criminal act by You, whether acting alone or in collusion with others.

**Arbitration** - It is understood and agreed that the transaction evidenced by this addendum takes place in and substantially affects interstate commerce. Any controversy or dispute arising out of or relating in any way to this addendum or the sale of this addendum, including for recovery of any claim under this addendum including the applicability of this arbitration clause and the validity of this addendum shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding by the American Arbitration Association (AAA), under the Commercial Arbitration Rules in effect at the time the claim is filed. All preliminary issues of arbitration will be decided by the arbitrator.

1. The arbitration shall take place in the county of residence of the customer/borrower unless another location is mutually agreed upon by the parties. The arbitration shall take place before a single arbitrator selected in accordance with the AAA Commercial Arbitration Rules. AAA rules and forms may be obtained and all claims shall be filed at www.adr.org or at any AAA office.
2. The cost of the arbitration shall be borne by us except that each party must bear the cost of filing and the cost of its own attorneys, experts and witness fees and expenses. You may seek a waiver of the filing fee under the applicable AAA rules. If the arbitrator holds that a party has raised a dispute without substantial justification, the arbitrator shall have the authority to order that the cost of the arbitration proceedings be borne by the other party.
3. It is understood and agreed that the arbitration shall be binding upon the parties, that the parties are waiving their right to seek remedies in court, including the right to a jury trial. You will not be able to participate as a representative or member of any class of claimants. An arbitration award may not be set aside in later litigation except upon the limited circumstances set forth in the Federal Arbitration Act. An award in arbitration will be enforceable under the Federal Arbitration Act by any court having jurisdiction.
4. All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceedings.

If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions of this arbitration provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this arbitration provision and the other provisions of this agreement or any prior agreement, this arbitration provision shall govern.

**Fraud and Misrepresentation** - This addendum is issued in reliance upon the truth of all representations made by you. We will not pay a claim as to any financing contract/loan or lease where you: 1. Intentionally concealed or misrepresented any material fact; 2. Engaged in fraudulent conduct; or 3. Made a false statement relating to submitting a claim. If you have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after payable loss, this addendum may be voided and all charges will be returned, less a $35.00 processing fee.

## STATE PROVISIONS

**Kansas, Louisiana, Missouri, New Mexico, Vermont and Wisconsin:** The cancellation fee and processing fee is not applicable.

**Tennessee:** The cost of this addendum is not regulated and you have the responsibility to determine whether the cost of this addendum is reasonable in relation to the protection afforded by this addendum.

**Texas:** Cancellation provision is amended as follows: If any termination occurs within sixty (60) days of the addendum purchase you will receive a full refund/credit of the addendum cost, provided no loss has occurred.

**Vermont:** We must assign, sell or transfer, within 15 business days, the financing contract to a financial institution/lender as defined in subdivision 11101(32) of Title 8 or a credit union or entity licensed under subdivision 2201(a)(1) or (3) of Title 8 or this addendum is void and you will receive a full refund of the charges of this addendum.

**Wisconsin:** Arbitration provision is amended as follows: In the second sentence, the language "including the applicability of this arbitration clause and the validity of this addendum" is deleted. The sentence: 'All preliminary issues of arbitration will be decided by the arbitrator.' is deleted. Class Action or any other collective or representative claims are not prohibited under this provision. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions of this arbitration provision will remain valid to the extent not prohibited by the Wisconsin Consumer Act. A cancellation refund within the first 30 days will also include the amount of the applicable finance charge.

**GAP CANCELLATION REQUEST FORM:** If You choose to cancel this Addendum, You must request a refund/credit from the Dealer/Creditor, in writing.

**Dealer/Creditor, return document to:** American Heritage Insurance Services, 1776 American Heritage Life Dr., Jacksonville, FL 32224.  Attn: Cancellation Dept. Phone: 800.621.4871 Fax: 866.398.9021 email: cancellations@allstatedealerservices.com.  *Please complete ALL sections of this form and submit along with a copy of the Guaranteed Asset Protection (GAP) Addendum.*

**CANCELLATION: YOU HAVE THE UNCONDITIONAL RIGHT TO CANCEL GAP FOR A FULL REFUND/CREDIT WITHIN THIRTY (30) DAYS AFTER IT IS PURCHASED PROVIDED YOUR COLLATERAL HAS NOT SUFFERED A TOTAL LOSS, AND YOU COMPLETED AND RETURNED THIS FORM OR OTHER WRITTEN NOTICE OF CANCELLATION TO THE ABOVE ADDRESS POSTMARKED NO LATER THAN THIRTY (30) DAYS AFTER THE GAP WAS PURCHASED. IF YOU DO NOT RECEIVE THE REFUND/CREDIT WITHIN SIXTY (60) DAYS OF NOTICE OF CANCELLATION/TERMINATION, CONTACT THE GAP ADMINISTRATOR. REFER TO THE YOUR RIGHT TO CANCEL SECTION IF THE ADDENDUM IS CANCELLED AFTER THIRTY (30) DAYS.**

**SECTION A - DEALER INFORMATION** *(Please PRINT)*

Account Name _____    Today's Date (mm/dd/yyyy) _____

Address _____

City _____    State _____    Zip Code _____

Phone _____    Fax _____

**SECTION B - CUSTOMER INFORMATION** *(Please PRINT)*

Last Name _____    First Name _____

Customer Contact Number _____    GAP Addendum Number _____    VIN Number(Last 6 Digits) _____

**SECTION C - REASON FOR CANCELLATION** *(Please check one)*

To process this cancellation request, the following supporting documentation is required:

☐ Customer Request - Attach correspondence or customer signature below     Date Received by Dealer ___/___/___

☐ Repossession - Attach proof of repossession from lienholder     Repossession Date ___/___/___

☐ Other, please explain _____     Other Date ___/___/___

(Please include any supporting documentation)

**SECTION D - SIGNATURES**

*Dealership Personnel Signature* _____     *Print Name* _____

*Customer Signature (If required, see Section C above)* _____     *Date* _____

Exhibit 5

RETAIL INSTALLMENT CONTRACT – MOTOR VEHICLE – SIMPLE FINANCE

No. 359026 8 2727407

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 1000.00 |
|---|---|---|---|---|
| 9.99 % | $ 2342.98 | $ 9341.00 | $ 11683.98 | $ 12683.98 |

The Itemization of Amount Financed

| | |
|---|---|
| Cash Price | $ 8493.57 |
| Less Cash Downpayment | $ 1000.00 |
| Value of Trade-In | |
| Trade-In $ | N/A |
| Less Payoff $ | N/A |
| to $ N/A | N/A |
| Amount Paid on Your Account | N/A |
| Unpaid Balance of Cash Price | $ 7493.57 |
| Amount Paid to Others for You | |
| Unpaid Balance | |
| Due on Trade-In $ | N/A |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 54 | $ 216.37 | monthly beginning 07/16/2013 |
| N/A | $ N/A | N/A |

Year, Make, Model of Buyer's Trade-In
(Paid to) N/A

*Insurance Company:

| | |
|---|---|
| N/A | $ N/A |
| N/A | $ N/A |
| N/A | $ N/A |

Public Officials
(Licenses, Title & Taxes) $ 898.13
*Paid to ERT Service Provider for *Optional ERT Fee* $ 25.00
- To N/A

TO WEST.DIV. & DLR FOR GAP COVERAGE $ 760.00
- To DOCFEE PDTDBLR $ 164.30

Security: You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

Late Charge: If any payment is ten (10) days late, you will be charged: 5% of the installment if the installment is in excess of $200.00; or (b) $10.00 if the installment is less than $200.00 or less.

Prepayment: You have the right to prepay the unpaid balance in full or in part at anytime without penalty.
See your contract terms below and on the reverse side for any additional information about prepayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

| Buyer(s) | VANITY ARRINGTON (Name) | 22727 BROOKWOOD DR (Residence Address) | SAUK VILLAGE (City) | COOK (State) | IL (Zip) | 60411 |
|---|---|---|---|---|---|---|
| Buyer(s) | MICHAEL MCALISTER (Name) | 22727 BROOKWOOD DR (Residence Address) | SAUK VILLAGE (City) | COOK (State) | IL (Zip) | 60411 |
| Seller | BILL JACOBS JOLIET, LLC (Corporate Firm or Trade Name) | 2001 W. JEFFERSON ST. (Business Address) | JOLIET, IL (City) | (State) | 60435 (Zip) | |

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | Eco. Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2008 | DODGE | AVENGER SD | | 13443 | 1B3LC46K28N115803 | BLACK | BLACK | N/A |
| N/A | | | | | | | | | |

Buyer Promises to pay to the order of Seller at the offices of WELLS FOR 60 DEALER SERVICES (Assignee) located in SACRAMENTO CA

the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 9.99 %

per annum from date until maturity in 53 installments of $ 216.37 each and a final installment of $ 216.37, beginning on 16 JUL 2013

PREPAYMENT: THE BUYER MAY PREPAY IN FULL OR IN PART THE UNPAID BALANCE OF THE CONTRACT AT ANY TIME WITHOUT PENALTY.

Credit Life Insurance $ N/A    Credit Disability Insurance $ N/A

| I desire Credit Life Insurance. | I desire Credit Disability Insurance. | I DO NOT want Credit Life or Disability Insurance. |
|---|---|---|
| N/A | N/A | 06/01/13 |
| (Age of Insured) (Signature) (Date) | (Age of Insured) (Signature) (Date) | (Signature) (Date) |
| N/A | N/A | Michael McAllister 06/01/13 |

SEE REVERSE SIDE FOR INFORMATION ON POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.

**NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE**

Other insurance: N/A (Type of Insurance) , the cost for a term of N/A months will be $ N/A

BUYER AGREES THAT THE PROVISIONS ON THE REVERSE SIDE HEREOF SHALL CONSTITUTE A PART OF THIS INSTALLMENT CONTRACT AND IS INCORPORATED HEREIN.

Dated: BILL JACOBS JOLIET, LLC    Buyer(s) acknowledges receipt of a fully completed and executed copy of this Contract.

RETAIL INSTALLMENT CONTRACT

Seller:
By:
Guarantor

Buyer Michael McAllister

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.

Copyright 2011   ILLANA FINANCIAL, INC., Elmhurst, IL (All Rights Reserved)   ORIGINAL   Form IF-I26 (Rev. 7/11)

## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer or holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.

2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to Holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and evidence of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring insurer to give the holder ten days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium, with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and accept for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premiums received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interest of Buyer and the holder, or either of them.

3. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code (including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorneys' fees and legal expenses incurred by holder, and second, to satisfaction of any indebtedness herein, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds, and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. If the Buyer has paid an amount equal to 30% or more of the deferred payment price at the time of default, then the Buyer may, within 21 days, redeem the collateral from the holder by tendering (a) the total of all unpaid installments, including any unpaid delinquency or default charges due at the time of default, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due; and (c) any reasonable costs of fees incurred by the holder in retaking the goods. Tender of payment and performance in this manner restores to the Buyer his rights under the contract as though no default had occurred. The Buyer has a right to redeem the collateral from the holder until the holder has, either (i) disposed of the motor vehicle as provided herein, Buyer may then redeem it, by paying holder all indebtedness incurred by holder in retaking, holding, preparing the motor vehicle for sale, arranging for the sale and reasonable attorneys' fees and legal expenses. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, or, whether provided for in this contract or conferred by law, are cumulative.

6. Holder is authorized to apply any payment made by Buyer hereon to any other indebtedness of Buyer to holder, whether arising under this contract or otherwise.
7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for Buyer or delivery to Buyer.
8. Buyer agrees that if delivery of the motor vehicle is not made at the time of execution of this contract, the identifying number or marks and the due date of the first installment may be inserted by Seller in Seller's counterpart of the contract after it has been signed by Buyer.
9. The terms of this contract are governed by the laws of the State of Illinois. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions thereof.

### "NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM."

(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

### ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to ___WELLS FARGO DEALER SERVICES SACRAMENTO___

_____   _____
(Name of Assignee)                                 (Address of Assignee)

ASSIGNEE, its successors and assigns, all of Seller's right, title and interest in and to the within contract and the motor vehicle described therein. To induce Assignee to purchase said contract, Seller represents and warrants to Assignee (1) that the within contract is genuine and correctly states the terms of the retail installment transaction between Seller and Buyer; (2) that the motor vehicle described has been delivered to and accepted by the Buyer; (3) that the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) that Seller had good title to and the right to sell said motor vehicle free of all liens, claims and encumbrances; (5) that no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) that Seller has the right to sell and assign this contract to Assignee; (7) that all Buyers have legal capacity to contract; (8) that on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract and to the Guarantor a completed copy of the contract and Explanation of Guarantor's Obligation; (9) Seller has complied with all requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (10) that on the date of the contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the existing Certificate of Title, as the case may be, issued covering said motor vehicle, procured from Buyer a signed application for a new certificate of title to be issued to Buyer and mailed to Assignee showing correctly the date of the within contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State of Illinois all of the documents described with the prescribed fee; (11) that the motor vehicle has not been used as a tool or for hire or for commercial transportation or by law enforcement agencies; (12) that the sale was made at Seller's place of business and was not a door-to-door sale within the definition of the Federal Trade Commission Trade Regulation Rule or the Illinois Consumer Fraud Act; and (13) that the Seller believes the Buyer to be of good moral character and that Buyer will not use or permit said vehicle to be used for unlawful purposes. If any of the foregoing representations and warranties is breached, Seller agrees to repurchase the within contract for the unpaid balance and all other indebtedness then due from Buyer thereon, together with reasonable attorney's fees, costs and expenses incurred by Assignee.

Dated: __6 - 1 - 13__

By: _____   _____
    Authorized Signature                  Title

### REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event default or dishonor is asserted against Assignee by the Buyer at any time, Seller shall, on demand, repurchase the within contract for cash at a price equal to the net amount remaining unpaid on said contract; and Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the Manufacturer to Buyer.

Dated: _____

                                                   _____
                                                   Seller
By: _____   _____
    Authorized Signature                  Title

### FULL RECOURSE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees prompt and full payment by the Total of Payments and all other amounts due from Buyer under the within contract. If Buyer shall fail to pay any installment when due, Seller agrees to pay to Assignee, on demand, the full amount remaining unpaid on said contract. Seller agrees that it shall not be necessary for Assignee to proceed first against Buyer or to have recourse to the motor vehicle before proceeding to enforce this agreement. Extension at the time of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____

                                                   _____
                                                   Seller
By: _____   _____
    Authorized Signature                  Title

### LIMITED REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event that Assignee repossesses the motor vehicle described in the within contract on account of default by Buyer and delivers it same to Seller, Seller shall, on demand, repurchase said motor vehicle for cash at a price equal to the amount remaining unpaid on said contract plus all costs and expenses, including attorneys' fees, incurred by Assignee by reason of Buyer's default or in connection with repossession and delivery of the motor vehicle. This repurchase agreement shall remain in effect until Buyer has paid _____ full installments of the Total of Payments. Extension of the time of payment or variation of terms effected with the Buyer shall not release Seller from his obligation hereunder.

Dated: _____

                                                   _____
                                                   Seller
By: _____   _____
    Authorized Signature                  Title

### LIMITED GUARANTEE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees that, in the event of default by the Buyer in the full payment of any installment of the within contract when due, Seller will pay to Assignee, on demand, the unpaid balance then due on the contract up to the limit of $_____. This guarantee shall terminate after Buyer has paid _____ full scheduled installments on the Total of Payments. Extension of the times of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____

                                                   _____
                                                   Seller
By: _____   _____
    Authorized Signature                  Title

# GUARANTEED ASSET PROTECTION (GAP) ADDENDUM

DEAL NO 359026
620325 CTL 32

**ADDENDUM NO.**

**INFORMATION PAGE**

| 22-44 701793 |
|---|

| DEALER/CREDITOR NAME | ADDRESS | CITY, STATE | ZIP |
|---|---|---|---|
| BILL JACOBS JOLIET, LLC | 2001 W. JEFFERSON ST. | JOLIET, IL | 60435 |

| DEALER/CREDITOR NO. | FINANCING AGREEMENT DATE | DATE VEHICLE PURCHASED/LEASED | CUSTOMER/BORROWER PHONE NUMBER |
|---|---|---|---|
| 40225 | JUN 01 2013 (GAP EFFECTIVE DATE) | 06/01/2013 | ( 815)260-7088 |

| LAST NAME OF CUSTOMER/BORROWER | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| ARRINGTON | VANITY | |

| STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 22727 BROOKWOOD DR | SAUK VILLAGE | IL | 60411 |

| VEHICLE IDENTIFICATION NUMBER (17 CHARACTERS) | YEAR | MAKE | MODEL |
|---|---|---|---|
| 1B3LC46K28N115803 | 2008 | DODGE | AVENGER |

| FINANCIAL INSTITUTION/LENDER | ADDRESS | CITY, STATE | ZIP |
|---|---|---|---|
| WELLS FARGO DEALER SERVICES INC | PO BOX 997517 | SACRAMENTO CA | 95899-7517 |

| PHONE NUMBER | TERM (MONTHS)* | AMOUNT FINANCED OR LEASED* | ☑ LOAN / RETAIL INSTALLMENT ☐ LEASE ☐ BALLOON | APR |
|---|---|---|---|---|
| ( ) | 54 (CANNOT EXCEED 84 MONTHS) | 9341.00 (CANNOT EXCEED $100,000) | | 9.99 |

| PRIMARY INSURANCE DEDUCTIBLE | DOWN PAYMENT | MSRP/NADA * | GAP ADDENDUM PURCHASE PRICE |
|---|---|---|---|
| (MAXIMUM BENEFIT $1,000) | 1000.00 | (MAXIMUM LOAN TO VALUE 150%) | 760.00 |

| TYPE OF VEHICLE ASSET: ☐ AUTO - PP ☐ MOTORCYCLE | ☐ NEW ☐ PREOWNED | ODOMETER READING |
|---|---|---|
| | | 90278 |

*This Addendum amends the FINANCING AGREEMENT and is available only at the time the FINANCING AGREEMENT is executed and ONLY if monthly payments are required, the Amount Financed or Leased does not exceed $100,000, the Term does not exceed 84 months, and the maximum LOAN TO VALUE does not exceed 150% of MSRP if new and NADA if pre-owned. Amount for lease is the total monthly payments plus residual value. Any VEHICLE with a BRANDED TITLE is not eligible.

This Addendum is not a contract of insurance, does not provide general liability coverage and does not fulfill the requirements of any financial responsibility law. GAP is not a substitute for collision or property damage insurance.

You might not need GAP depending on how much of a down payment (including trade-in value) You made on Your VEHICLE, the terms of Your FINANCING AGREEMENT, the make of VEHICLE and other considerations. The GAP BENEFIT may decrease over the term of Your FINANCING AGREEMENT.

No GAP BENEFIT is provided for that portion of the net payoff that results from the amount financed/leased cap cost exceeding the maximum LOAN TO VALUE stated above at the inception date of this Addendum and will be deducted from the payable GAP BENEFIT due. If there is any other coverage for the VEHICLE, this Addendum shall be considered excess and will not apply or contribute to the payment of any loss until the benefits under these other plans have been exhausted.

IF A REQUEST FOR GAP BENEFIT UNDER THIS ADDENDUM HAS NOT BEEN MADE, YOU MAY CANCEL THIS ADDENDUM AND RECEIVE A FULL REFUND WITHIN THE FIRST 30 DAYS AND A PARTIAL REFUND AS DETERMINED BY THE PRO-RATA METHOD LESS A $35 CANCELLATION FEE THEREAFTER. THIS REFUND WILL BE APPLIED TO THE FINANCING AGREEMENT.

This Addendum shall be cancelled if any of the original FINANCING AGREEMENT terms are changed, altered or refinanced. The Addendum will be cancelled as of the date of any change and a refund as determined by the Pro-Rata method less a $35 cancellation fee will be applied to the original FINANCING AGREEMENT.

There is no responsibility to process a refund until written notice is sent by You as provided in Section #5. If you do not receive Your refund, please call 1-800-323-5771 ext. 6181.

Enrollment in this program is VOLUNTARY and is NOT REQUIRED to obtain credit. This GAP Addendum will cost You the amount shown as the GAP Addendum Purchase Price above for the Term shown above. If You choose, You may obtain GAP from alternate sources.

Your signature acknowledges that You request the GUARANTEED ASSET PROTECTION (GAP) ADDENDUM and have read and understand the foregoing and the terms of this Addendum. BILL JACOBS JOLIET, LLC

| DEALER/CREDITOR: | CUSTOMER/BORROWER: |
|---|---|
| Dealership Name | 06/01/2013 VANITY ARRINGTON MICHAEL McALLISTER Print Name |
| Signature                Date | Signature                Date 06/01/2013 |

Program Administrator:
**Western Diversified Services, Inc.**
1-800-323-5771 ext. 6181
P.O. Box 770, Deerfield, IL 60015

CO CUSTOMER/BORROWER:

Signature          Print Name  6-1-13

GAP-ADDM2411-CF (4/08)

ORIGINAL/BLUE - ADMINISTRATOR          GREEN - LENDER/DEALER          YELLOW - LENDING INSTITUTION          WHITE - CUSTOMER

For GMAC use LZX 16561

1. **DEFINITIONS**
   For the purpose of this Guaranteed Asset Protection Addendum, the following terms shall mean:

   **ACTUAL CASH VALUE** means the retail value of the VEHICLE on the DATE OF LOSS, prior to its physical damage or theft, as determined by the PRIMARY CARRIER. If no PRIMARY CARRIER exists or the PRIMARY CARRIER has been declared insolvent or for any instance where the PRIMARY CARRIER's total loss calculation is reduced due to limited liability coverage, the retail value will be determined utilizing the National Automobile Dealer's Association (NADA) Official Used Car Guide, adjusted for applicable mileage and equipment. If no NADA retail value is available, the value will be determined using the best information available.

   **ACTUAL PAYOFF BALANCE** means the payoff balance provided by the assigned Financial Institution/Lender as of the DATE OF LOSS minus any and all unearned finance or lease charges, late charges, DELINQUENT PAYMENTS and any amount added to the balance after the inception date of the FINANCING AGREEMENT.

   **BRANDED TITLE** means any certificate of ownership that currently is or has previously been declared as defective. This may include but is not limited to notations of Salvage, Rebuilt, Flood, or Lemon.

   **COMMERCIAL USE** means the use of the VEHICLE for transportation of persons or property for hire, compensation, profit or in the furtherance of a commercial enterprise.

   **CUSTOMER/BORROWER** means the purchaser or lessee of the VEHICLE, as listed in the Information Page of this Addendum and is referred to as You or Your throughout the Addendum.

   **DATE OF LOSS** means the exact day on which the VEHICLE is reported stolen or incurs physical damage that is severe enough to be deemed a TOTAL LOSS.

   **DELINQUENT PAYMENTS** means any payment as described in the FINANCING AGREEMENT, which remains unpaid for a period of more than fifteen (15) days after the due date stated in the FINANCING AGREEMENT.

   **FAMILY MEMBERS** means a person related to You by blood, marriage or adoption including a step, ward or foster child.

   **FINANCING AGREEMENT** means the contract that represents the written understanding between the Dealer/Creditor and You for the purchase or lease of the VEHICLE and which sets forth the terms, conditions, inception date, and expiration date of the contract.

   **GAP BENEFIT** means under the terms of the FINANCING AGREEMENT, as amended by this Addendum, if the VEHICLE is deemed a TOTAL LOSS or is an UNRECOVERED THEFT, You are entitled to a benefit under this Addendum.

   **LOAN TO VALUE** means if the VEHICLE is purchased new, the percentage amount is determined by dividing the total amount financed according to the FINANCING AGREEMENT by the Manufacturer's Suggested Retail Price (MSRP). If the VEHICLE is purchased pre-owned, the percentage amount is determined by dividing the total amount financed according to the FINANCING AGREEMENT by the National Automobile Dealers Association (NADA) Official Used Car Guide average retail value as of the origination of the FINANCING AGREEMENT.

   **PRIMARY CARRIER** means the insurance company selected by You to provide the physical damage coverage on the VEHICLE or the insurance carrier liable for the TOTAL LOSS of Your VEHICLE.

   **SCHEDULED PAYOFF BALANCE** means the total amount outstanding and is determined by an amortization schedule as of the DATE OF LOSS. The amortization schedule is based on the original terms of the FINANCING AGREEMENT and will assume all payments were made on the due date. For a lease, the SCHEDULED PAYOFF BALANCE is the remaining payments owed, less applicable taxes and rental fees, plus the residual value as of the DATE OF LOSS. The total amount outstanding is based on the original terms of the FINANCING AGREEMENT and assumes all payments were made on the due date.

   **TOTAL LOSS** means the direct and accidental loss of the VEHICLE resulting in the inability to repair a VEHICLE due to severe damage or a theft as determined by the PRIMARY CARRIER. If no PRIMARY CARRIER exists, then TOTAL LOSS shall mean the cost to repair the VEHICLE exceeds its ACTUAL CASH VALUE or shall mean an UNRECOVERED THEFT.

   **UNRECOVERED THEFT** means the covered VEHICLE is stolen and not recovered within thirty (30) days after the DATE OF LOSS.

   **VEHICLE** means the four-wheeled private passenger car, van, pickup or light truck as listed in the Information Page of this Addendum, not to exceed a gross vehicle weight rating (GVWR) of 12,500 lbs.

2. **GAP BENEFIT CALCULATION**
   The GAP BENEFIT cancels debt and is the lesser of the SCHEDULED PAYOFF BALANCE or the ACTUAL PAYOFF BALANCE on the DATE OF LOSS minus:
   A. Any refunds available on the other items financed in the FINANCING AGREEMENT;
   B. The amount of Your PRIMARY CARRIER insurance deductible that exceeds $1000 if applicable;
   C. The TOTAL LOSS settlement made by the PRIMARY CARRIER or the ACTUAL CASH VALUE if no PRIMARY CARRIER coverage is in force on the DATE OF LOSS;
   D. Any amount deducted from the PRIMARY CARRIER's TOTAL LOSS settlement for prior damage remaining unrepaired at the time of TOTAL LOSS, value of owner retained salvage, towing fees, inspection fees, storage charges or any other unrelated deductions;
   E. The amount in excess of 150 percent of the LOAN TO VALUE.

   The maximum GAP BENEFIT shall be no more than $50,000. The GAP BENEFIT will only apply one time for each VEHICLE.

GAP-ADDM2411-CF (4/08)

Assignment of the FINANCING AGREEMENT by the Dealer/Creditor shall not in any way affect the amendment of such FINANCING AGREEMENT provided for in the Addendum. This Addendum is transferable if there is a transfer of equity. If the VEHICLE is repossessed, the assigned Financial Institution/Lender on the Information Page is authorized to initiate cancellation and receive the refund, as the sole payee.

**3. GAP BENEFIT PROCEDURE**

At the time of early termination of such FINANCING AGREEMENT due to TOTAL LOSS or UNRECOVERED THEFT of such VEHICLE, You shall provide to the Dealer/Creditor's Program Administrator, at the address shown below, within ninety (90) days, the following:

A. Your copy of this Addendum.

B. Copy of any settlement statement of the PRIMARY CARRIER for the loss, including a copy of the settlement check, worksheet explaining how the settlement amount was calculated, the DATE OF LOSS and Your deductible.

C. Copy of police report. If no police report is available, a sworn statement indicating: no police report was filed, the DATE OF LOSS, detailed description of the loss, and VEHICLE information including the vehicle identification number.

D. Copy of the FINANCING AGREEMENT.

E. A complete loan/retail installment payment history and statement from the assigned Financial Institution/Lender showing the net payoff as of the DATE OF LOSS. If no payoff is provided from the assigned Financial Institution/Lender or the payment history is incomplete, the loan/retail installment sales contract will be amortized based on the original terms or if leased, a complete lease payment history from the assigned Financial Institution.

F. Copy of the documents indicating the refund amounts for any items financed in the FINANCING AGREEMENT.

G. A completed GAP Benefit Form, obtained from the Program Administrator.

H. Any other reasonable documentation requested by the Program Administrator in order to determine the GAP BENEFIT amount.

I. This information should be sent to:
GAP BENEFITS
P.O. BOX 770
DEERFIELD, IL 60015-0770

If You include proof that the FINANCING AGREEMENT has been satisfied, the GAP BENEFIT will be accorded to You. If this proof is not provided, the assigned Financial Institution/Lender will be named payee of the GAP BENEFIT.

Any questions can be directed to the Program Administrator at 1-800-323-5771 ext. 6170.

A REQUEST FOR A GAP BENEFIT MUST BE SUBMITTED WITHIN NINETY (90) DAYS FROM THE DATE THE PRIMARY CARRIER'S LOSS SETTLEMENT IS RECEIVED, THE DATE THE FINANCIAL INSTITUTION/LENDER DETERMINED THE CLOSE-OUT BALANCE OR NET PAYOFF OR THE DATE OF LOSS, WHICHEVER OCCURS LATER.

ALL DOCUMENTS LISTED ABOVE IN SECTION 3 MUST BE RECEIVED WITHIN 180 DAYS FROM THE DATE THE REQUEST FOR THE GAP BENEFIT WAS INITIATED. THE PROGRAM ADMINISTRATOR WILL NOT OBTAIN THIS DOCUMENTATION FOR YOU. FAILURE TO SUBMIT ALL DOCUMENTS IN A TIMELY MANNER WILL RESULT IN DENIAL OF THE GAP BENEFIT.

**4. OTHER EXCLUSIONS AND RESTRICTIONS**

This Addendum will not provide benefits for:

a. Losses occurring prior to the GAP Effective Date (shown in the GAP Information Page), including prior losses resulting in a BRANDED TITLE.

b. Losses caused by an act where You, Your FAMILY MEMBERS, employees or agents damage the VEHICLE intentionally causing a TOTAL LOSS.

c. A request for GAP BENEFIT arising from misrepresentation of facts, falsification of documents, fraudulent or dishonest act(s), repossession, or due to legal confiscation of the VEHICLE by a public official.

d. Losses resulting directly or indirectly from any criminal or illegal act committed by You, Your FAMILY MEMBERS, employees or agents.

e. Losses resulting to a VEHICLE that is part of a fleet that is intended for use as a public livery conveyance, or any VEHICLE for COMMERCIAL USE.

f. A request for GAP BENEFIT that does not constitute a TOTAL LOSS.

g. Losses caused by or resulting from any repairing, restoration, alterations, modification, or remodeling process.

h. Losses occurring outside of the United States, its territories, possessions, or Canada.

i. Losses resulting from the VEHICLE being operated, used, or maintained in any race, speed contest, or other contest.

j. Losses to Your personal property.

k. Losses resulting from wear and tear, freezing, mechanical or electrical breakdown or failure.

**5. EARLY TERMINATION AND REFUND**

If a request for GAP BENEFIT under this Addendum has not been made, You may voluntarily terminate this Addendum early by notifying the Program Administrator in writing of Your intent to terminate early. The termination date will be the date the Program Administrator receives Your written notice.

GAP-ADDM2411-CF (4/08)

This Addendum will be deemed terminated early if any of the original **FINANCING AGREEMENT** terms are changed or altered, if the original **FINANCING AGREEMENT** is refinanced, or if the **FINANCING AGREEMENT** is paid off early. The deemed termination date will be the date of the event that caused the deemed early termination.

If You voluntarily terminate this Addendum in accordance with the provisions herein within the first 30 days, You will be entitled to a full refund of the GAP Addendum Purchase Price. In all other situations where there is a voluntary or deemed early termination, You will be entitled to a partial refund determined by the pro-rata method less a $35 cancellation fee. Any refund that is processed will be applied to the **FINANCING AGREEMENT**, if it is still outstanding, or, if not, then paid to You.

The Dealer/Creditor has no responsibility to process a refund until written notice sent by You is received by the Program Administrator, in the case of a voluntary termination, or received by the Dealer/Creditor, in the case of a deemed termination. Your written notice should include: Your name and address, the **FINANCING AGREEMENT** number, the reason for the early termination, and the date of the event (if not a voluntary termination). If You have any questions about how to notify the Dealer/Creditor in writing, call the Program Administrator at 1-800-323-5771 ext. 6181. You may not start a legal action or other proceeding for a refund until 60 days after the Program Administrator or Dealer/Creditor has received Your written notice in accordance with this paragraph.

6. **ARBITRATION**

<u>READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY</u>

We (collectively, the "Parties") agree that the transactions between us substantially affect interstate commerce, and that disputes between us to which an amicable understanding cannot be reached are to be decided in arbitration. Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either You or we (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this Addendum decided by arbitration. Such Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims for equitable; injunctive or declaratory relief; 3) Constitutional Claims; 4) Claims between You and us, Your/our employees, agents, successors, assigns, subsidiaries, or affiliates; 5) Claims arising out of or relating to this Addendum, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this Addendum.

<u>RIGHTS YOU AND WE AGREE TO GIVE UP</u>
If either You or we choose to arbitrate a Claim, then You and we agree to waive the following rights:
  * RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY
  * RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION. ONLY A COURT, AND NOT ARBITRATOR(S), CAN DETERMINE THE VALIDITY OF THIS CLASS ACTION WAIVER.
  * BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT
  * RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR
  * OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT

<u>Rights You And We Do Not Give Up</u>: If a Claim is arbitrated, you and we will continue to have the following rights, without waiving this arbitration provision as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the security interest in the VEHICLE, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision; and 4) Right to request that a court of law review whether the arbitrator exceeded its authority.)

Either Party must contact the association listed below and the other Party to start arbitration. The applicable rules (the "Rules") may be obtained from the association.
  * American Arbitration Association ("AAA"), at 1-800-778-7879, or www.adr.org
If there is a conflict between the Rules and this Addendum, this Addendum shall govern. This Addendum is subject to the <u>Federal Arbitration Act (9 U.S.C.</u> § 1 et seq.) and the Federal Rules of Evidence. The arbitration decision shall be in writing with a supporting opinion. We will pay your total reasonable arbitration fees and expenses (not including attorney fees, except where applicable law otherwise provides).

<u>No Severability</u>: If any portion of this arbitration provision is found unenforceable, including but not limited to the class action waiver, all other portions and requirements of this provision will remain in full force and effect.

STATE AMENDMENTS
The following State Amendments apply if this Addendum was purchased in one of the following states:

**ALABAMA AND KANSAS:** The $35 cancellation fee on cancellations is deleted. A cancellation fee will not be charged.

**ILLINOIS:** Number 2. GAP BENEFIT CALCULATION, item B., is deleted and replaced with the following: If a loan/retail installment sales contract, the amount of Your PRIMARY CARRIER insurance deductible that exceeds $1000 if applicable. If a lease, the amount of Your PRIMARY CARRIER insurance deductible, if applicable.

Exhibit 6

DEAL#: 501005                    STK#: PPE9242                    CUST#: 56397

Motor Vehicle Retail Installment Contract - Illinois with T-I-L Disclosure
Simple Interest - Fixed Rate

**RETAIL INSTALLMENT CONTRACT - MOTOR VEHICLE - SIMPLE INTEREST**

No. **14326**

### Itemization of Amount Financed

| | | |
|---|---|---|
| Cash Price | $ | 80898.00 |
| Less Cash Downpayment | $ | 10000.00 |

**Trade-In**

| | | | | |
|---|---|---|---|---|
| Value of Trade $ | 23000.00 | | | |
| Lien Payoff | $30328.00 | | | |
| To: N/A | Net Trade $ | | -7328.00 | |
| Total Downpayment | | $ | 2672.00 | |

(if negative enter "0" and see "Unpaid Balance Due on Trade-In" below)

**Amounts Paid on Your Account**

| | | |
|---|---|---|
| Unpaid Balance of Cash Price | $ | 78226.00 |

*Amount Paid to Others for You
*WE MAY BE RETAINING A PORTION OF THIS AMOUNT

| | | |
|---|---|---|
| Unpaid Balance Due on Trade-In | $ | N/A |

2015  VOLVO  S60
Year, Make, Model of Buyer's Trade-In

(Paid to)     N/A

*Insurance Companies:

| | | |
|---|---|---|
| * N/A | $ | N/A |
| * N/A | $ | N/A |

| | | |
|---|---|---|
| Public Officials (Licenses, Title & Taxes) | $ | 5880.01 |

*Paid to ERT Service Provider For Optional ERT Fee $ 25.00

---

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2672.00 $ 100362.32 |
|---|---|---|---|---|
| 3.49 % | $ 9791.04 | $ 87899.28 | $ 97690.32 | |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1356.81 | monthly beginning   05/08/2016 |
| N/A | $ N/A | N/A |

**Security:** You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

**Late Charge:** If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less.

**Prepayment:** You have the right to prepay the unpaid balance in full or in part at anytime without penalty. See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

---

**Other Charges / Amts Paid**

| | | | | | | |
|---|---|---|---|---|---|---|
| * To PSMP | $ 2950.00 | * To N/A | $ | N/A | * To DOCUMENTATION FEE | $ 169.27 |
| * To MERCEDES BENZ | $ 649.00 | * To N/A | $ | N/A | * To N/A | $ N/A |
| * To N/A | $ N/A | * To N/A | $ | N/A | Total Other Charges and Amount Paid to Others for You | $ 9673.28 |

| Buyer(s) | KASHIF Z AWAN | | 4852 SNAPJACK CIRCLE | | NAPERVILLE | IL | 60564 |
|---|---|---|---|---|---|---|---|
| | Name(s) | | (Residence Address) | | (City) | (State) | (Zip) |

| Buyer(s) | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Name(s) | | (Residence Address) | | (City) | (State) | (Zip) |

| Seller | MOTOR WERKS OF BARRINGTON | 1475 S BARRINGTON RD | | BARRINGTON | IL | 60010 |
|---|---|---|---|---|---|---|
| | (Corporate Firm or Trade Name) | (Business Address) | | (City) | (State) | (Zip) |

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | No. Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2015 | PORSCHE | PANAMERA | SD | N/A | WP0AA2A73FL005130 | BLUE | | |

**Buyer Promises to pay to the order of Seller at the offices of:**

WELLS FARGO DEALER SERVICES                    (Assignee) located in  SACRAMENTO CA, 95899

the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of

____3.49____ % per annum from date until maturity in ____71____ installments of $ ____1356.81____ each and a final installment of $ ____1356.81____,

beginning on **8th May** ____, **2016**____ and continuing on the same day of each successive month thereafter until fully paid. All payments shall be applied first to accrued Finance Charge and the balance to principal. The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due. Guarantor, if any, guarantees collection of all amounts due under this contract upon failure of the Seller to collect from the Buyer named herein.

SECURITY INTERESTS: Seller is granted a purchase-money security interest in the motor vehicle described above and all accessions under the Illinois Uniform Commercial Code until the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full. Buyer grants assignee the right of set-off or lien on any moneys, credits or other property of Buyer in possession of the Assignee, on deposit or otherwise, excepting IRA or similar deposits. Seller is also granted a security interest in any premium rebates for insurance or service contracts, if financed hereunder, in the proceeds of any insurance or service contract on the motor vehicle, and in the proceeds of any credit life and/or accident and health insurance financed hereunder, until all amounts due under this contract are paid in full.

ACCELERATION: Buyer agrees that (1) if Buyer shall default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon; or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal; or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business or property, or Buyer shall make an assignment for benefit of creditors, or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract, the holder may declare all unpaid installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand, subject to right of reinstatement, if applicable.

Buyer Signature: _____        Co-Buyer Signature: _____

Copyright 2014   ILLIANA FINANCIAL INC., Elmhurst, IL (All Rights Reserved)        ORIGINAL        Form IFI-26L (Rev. 7/14)   Page 1 of 4
03/24/2016   07:01 pm

PREPAYMENT: THE BUYER MAY PREPAY IN FULL OR IN PART THE UNPAID BALANCE OF THE CONTRACT AT ANY TIME WITHOUT PENALTY.

DELINQUENCY CHARGE: If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less. In addition, Buyer agrees to pay reasonable attorneys' fees, costs and expenses incurred in the collection or enforcement of the debt or in realizing on the collateral. Buyer agrees to pay Finance Charges after maturity of the final installment or after acceleration upon default, at the Annual Percentage Rate stated herein so long as there exists any uncured default hereunder, all without relief from valuation or appraisement laws.

INSURANCE AGREEMENT: Motor Vehicle Damage or Loss insurance is required by Seller. (Buyer may choose the person through whom the insurance

is to be obtained. If such insurance is to be obtained through Seller, the cost for a term of ___N/A___ months will be $___N/A___.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT

Credit Insurance is not required by Seller nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Buyer signs the appropriate authorization below. Group Credit Insurance is available for the term of the credit upon acceptance by insurer at the following costs:

Credit Life Insurance $ ___N/A___     Credit Disability Insurance $ ___N/A___

| I desire Credit Life Insurance. | | | I desire Credit Disability Insurance. | | | I DO NOT want Credit Life or Disability Insurance. | |
|---|---|---|---|---|---|---|---|
| N/A | | | N/A | | | | 03/24/2016 |
| (Age of Insured) | (Signature) | (Date) | (Age of Insured) | (Signature) | (Date) | (Signature) | (Date) |
| N/A | | | N/A | | | | 03/24/2016 |
| (Age of Insured) | (Signature) | (Date) | (Age of Insured) | (Signature) | (Date) | (Signature) | (Date) |

SEE *NOTE 1* FOR INFORMATION ON POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.

### NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE

If a charge is made above for credit life insurance and if such insurance is to be procured by assignee, the undersigned takes notice that the decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer or Buyers who signed above requesting it, subject to acceptance by the insurer and issuance of a certificate by

| (Insurer) | (Home Office Address) |
|---|---|
| N/A | N/A |

The amount of premium is shown above. The term of insurance will commence on the date of this contract and expire on the originally scheduled maturity date of the indebtedness. The initial amount of insurance will be equal to the initial indebtedness and will decrease as any payment is made on the indebtedness in an amount computed by multiplying the amount of the payment by the ratio of initial insurance over the initial indebtedness. The proceeds of any insurance paid will be applied to reduce or extinguish the indebtedness. If insurance is terminated prior to the scheduled maturity date of the indebtedness, any premium refund will be paid or credited promptly to the person entitled thereto. Refund formula is on file with the Director of Insurance and with creditor. All of the foregoing is subject to the provisions of the certificate of insurance to be issued.

Other insurance: ___N/A___, the cost for a term of ___N/A___ months will be $ ___N/A___
          (Type of Insurance)

BUYER AGREES THAT THE PROVISIONS ON PAGES 3 & 4 HEREOF SHALL CONSTITUTE A PART OF THIS RETAIL INSTALLMENT CONTRACT AND BE INCORPORATED HEREIN. If this contract evidences the sale of a used motor vehicle (1) Buyer acknowledges receipt of the original or a true copy of the "Buyer's Guide" form displayed by Seller on the side window of the used vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS USED VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
DOCUMENTARY FEE: A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

The Annual Percentage Rate may be negotiable with the Seller. If this Contract is assigned, Seller may retain or receive a portion of the Finance Charge.

NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge. Buyer confirms receiving a copy of this contract and had a chance to read and review it before Buyer signed it. By signing below Buyer agrees to the terms of this contract. Guarantor, if any, acknowledges receipt of completed copies of this contract and of Explanation of Guarantor's Obligation.

CO-BUYER: A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the vehicle's title. By signing below, (1) I confirm that I will actually receive possession of the vehicle or will use it, or that I am a parent or spouse of the Buyer, or that I will be listed as an owner on the vehicle's title; (2) I agree to be primarily obligated under this contract; and (3) I consent to the Creditor having a security interest in the vehicle.

Buyer Signature: _____     Co-Buyer Signature: _____

Copyright 2014   ILLIANA FINANCIAL INC., Elmhurst, IL (All Rights Reserved)

ORIGINAL

Dated: 03/24/2016

Seller: MOTOR WERKS OF BARRINGTON

By: _____ **AGENT**
                                    Title

Guarantor _____

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.

**Buyer(s) acknowledges receipt of a fully completed and executed copy of this Contract.**
**RETAIL INSTALLMENT CONTRACT**

Buyer: _____

Buyer: _____ N/A

INSTRUCTIONS: If parent, spouse, or other person who is or will be listed as an owner on the vehicle's title is a co-buyer, sign above. Other co-signers, sign on the Guarantor line.

## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer or holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successor and assigns.

2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interest of Buyer and the holder, or either of them.

3. COLLATERAL PROTECTION INSURANCE. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the U.S. without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorneys' fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative.

6. Holder is authorized to apply any payment made by Buyer hereon to any other indebtedness of Buyer to holder, whether arising under the contract or otherwise.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. Buyer agrees that holder may try to contact Buyer in writing, by email, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. Buyer also agrees that holder may try to contact Buyer in these and other ways at any address or telephone number Buyer provides, even if the telephone number is a mobile phone number or the contact results in a charge to the Buyer.

9. The terms of this contract are governed by the laws of the State of Illinois. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions thereof.

**\*NOTE 1\***   **"NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM."**

**(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.**

Buyer Signature: _____

Co-Buyer Signature: _____ N/A

Copyright 2014   ILLIANA FINANCIAL INC. Elmhurst, IL (All Rights Reserved)

ORIGINAL

Form IFI-26L (Rev. 7/14)   Page 3 of 4
03/24/2016  07:01 pm

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to
**WELLS FARGO DEALER SERVICES**                               **PO BOX 997517 SACRAMENTO, CA 95899**

(Name of Assignee)                                                    (Address of Assignee)

ASSIGNEE, its successors and assigns, all of Seller's right, title and interest in and to the within contract and the motor vehicle described therein. To induce Assignee to purchase said contract, Seller represents and warrants to Assignee (1) that the within contract is valid and genuine and correctly states the terms of the retail installment transaction between Seller and Buyer; (2) that the motor vehicle described has been delivered to and accepted by the Buyer; (3) that the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) that Seller had good title to and the right to sell said motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) that no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) that Seller has the right to sell and assign this contract to Assignee; (7) that all buyers have legal capacity to contract; (8) that on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract and to the Guarantor a completed copy of the contract and Explanation of Guarantor's Obligation; (9) Seller has complied with all requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (10) that on the date of the contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the existing Certificate of Title, as the case may be issued covering said motor vehicle, procured from Buyer a signed application for a new certificate of title to be issued to Buyer and mailed to Assignee showing correctly the date of the within contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State of Illinois all of the documents described with the prescribed fee; (11) that the motor vehicle has not been used as a taxi or for hire or for commercial transportation or by law enforcement agencies; (12) that the sale was made at Seller's place of business and was not a door-to-door sale within the definition of the Federal Trade Commission Trade Regulation Rule or the Illinois Consumer Fraud Act; and (13) that the Seller believes the Buyer to be of good moral character and that Buyer will not use or permit said vehicle to be used for unlawful purposes. If any of the foregoing representations and warranties is breached, Seller agrees to repurchase the within contract for the unpaid balance and all other indebtedness then due from Buyer thereon, together with reasonable attorneys' fees, costs and expenses incurred by Assignee.

Dated: __03/24/2016__

**MOTOR WERKS OF BARRINGTON**

Seller

By: _____     **AGENT**

Authorized Signature                          Title

### REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event a claim or defense is asserted against Assignee by the Buyer at any time, Seller shall, on demand, repurchase the within contract for cash at a price equal to the net amount remaining unpaid on said contract; and Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the Manufacturer to Buyer.

Dated: __N/A__                                    **N/A**

Seller

By: __N/A__                                   **N/A**

Authorized Signature                          Title

### FULL RECOURSE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations to set forth in the above assignment, Seller acknowledges guarantees prompt and full payment by Buyer of the Total of Payments and all other amounts due from Buyer under the within contract. If Buyer shall fail to pay any installment when due, Seller agrees to pay to Assignee, on demand, the full amount remaining unpaid on said contract. Seller agrees that it shall not be necessary for Assignee to proceed first against Buyer or to have recourse to the motor vehicle before proceeding to enforce this agreement. Extension of the time of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: __N/A__                                    **N/A**

Seller

By: __N/A__                                   **N/A**

Authorized Signature                          Title

### LIMITED REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event that Assignee repossesses the motor vehicle described in the within contract on account of default by Buyer and delivers the same to Seller, Seller shall, on demand, repurchase said motor vehicle for cash at a price equal to the amount remaining unpaid on said contract plus all costs and expenses, including attorneys' fees, incurred by Assignee by reason of Buyer's default or in connection with repossession and delivery of the motor vehicle. This repurchase agreement shall remain in effect until Buyer has paid __N/A__ full installments of the Total of Payments. Extension of the time of payment or variation of terms effected with the Buyer shall not release Seller from his obligation hereunder.

Dated: __N/A__                                    **N/A**

Seller

By: __N/A__                                   **N/A**

Authorized Signature                          Title

### LIMITED GUARANTEE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees that, in the event of default by the Buyer in the full payment of any installment of the within contract when due, Seller will pay to Assignee, on demand, the unpaid balance then due on the contract up to the limit of $ __N/A__. This guarantee shall terminate after Buyer has paid __N/A__ full scheduled installments on the Total of Payments. Extension of the times of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: __N/A__                                    **N/A**

Seller

By: __N/A__                                   **N/A**

Authorized Signature                          Title

### SEPARATE ASSIGNMENT AGREEMENT (Do Not Execute Above Assignment)

Instead of the Seller's obligations set forth in the above assignment and other listed agreements (Repurchase, Full Recourse, Limited Repurchase, and Limited Guarantee), this assignment is made under the terms of a separate agreement made between Seller and Assignee.

Dated: __N/A__                                    **N/A**

Seller

By: __N/A__                                   **N/A**

Authorized Signature                          Title

## NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION

Buyer Signature: _____          Co-Buyer Signature: __N/A__

Copyright 2014   ILLIANA FINANCIAL INC., Elmhurst, IL (All Rights Reserved)                    Form IFI-26L (Rev. 7/14)   Page 4 of 4
                                                                                                03/24/2016  07:01 pm

ORIGINAL

# First Class Guaranteed Auto Protection

**WAIVER ADDENDUM**

Mercedes-Benz Financial Services

This Agreement is entered into by You ("**You, Your** or **Consumer(s)**") and the Dealer, Lender ("**We, Us** or **Our**"), named below. This Agreement is an amendment to **Your Finance Agreement** and is a part thereof.

| Consumer Name(s) KASHIF AWAN | | Agreement # A002283015 | | |
|---|---|---|---|---|
| Address 4852 SNAPJACK CI | | City NAPERVILLE | State IL | Zip 60564 |
| Vehicle Identification Number (VIN) WP0AA2A73FL005130 | Year 2015 | Make PORSCHE | Model PANAMERA/4 | Mileage 1765 |
| Finance Company Name Wells Fargo Dealer Services | Finance Company Address 23 PASTEUR , Irvine, CA 92618 | | Finance Company Telephone Number 847-273-7495 | |
| Date of Finance Agreement 03/24/2016 | Term (Months) Not to Exceed 84  72 | [X] **Finance Agreement** | | |
| Amount Financed $ 79,719.00 | First Payment Due Date 05/08/2016 | Monthly Payment Amount 0.00 | Final Payment Due Date 05/08/2022 | Final Payment Amount 1,356.81 |
| Dealer Name Motor Werks Of Barrington Inc. | | | Dealer Telephone Number 847-304-3131 | |
| Dealer Address 1475 S Barrington Rd | | City Barrington | State IL | Zip 60010 |

## GAP AGREEMENT INFORMATION

The maximum amount financed in the **Finance Agreement** must not exceed 150% of the MSRP/NADA (or equivalent guide) retail value of the vehicle at the time of purchase.  The maximum term of the **Finance Agreement** is 84 months.  This Agreement must be purchased at time of execution of the **Finance Agreement**.

## ACKNOWLEDGEMENT OF GAP AGREEMENT PURCHASE

This Agreement is entered into by and between the vehicle purchaser ("**You**") and the Dealer/Finance Company ("**We, Us** or **Our**"), named above.  This Agreement is an amendment to **Your Finance Agreement** and is a part thereof.  In the event that the vehicle is declared a **Total Loss**, subject to the terms and conditions set forth herein, **We** agree to waive the **GAP Amount**.  The **GAP Amount** is the difference between the **Actual Cash Value** of the vehicle and the **Outstanding Balance** due pursuant to **Your Finance Agreement** at the time of a **Total Loss** of the vehicle. In the event of a **Total Loss**, the amount **We** will waive includes the deductible amount up to $1,000 that **Your** primary insurance carrier deducts from their settlement amount (if permitted by state law).  The maximum **GAP Amount We** will waive is $100,000.

By **Your** signature below, **You** acknowledge and understand that:

1. This Agreement does not eliminate the need for an automobile liability and/or physical damage insurance policy and does not amend any clause of the Finance Agreement which requires You to maintain such insurance coverage;
2. The purchase of this Agreement is optional and has no bearing on the extension of credit, the terms of the credit, nor the terms of the sale of the vehicle;
3. You may obtain GAP protection from an alternate source and You may consult with an insurance agent to obtain any required insurance coverage(s) including GAP protection;
4. This coverage may not completely cancel Your debt. You are liable for any difference between the amount canceled and the unpaid balance of Your Finance Agreement;
5. The GAP Amount will be paid solely to the Finance Company as its interests may appear;
6. There were no oral representations made to You by Us other than what is stated in this Agreement;
7. This Agreement will follow the Finance Agreement if the Dealer/Finance Company sells, assigns, or transfers the Finance Agreement;
8. The GAP Amount may decrease over time;
9. We are entitled to retain a portion of the purchase price of this Agreement;
10. You have read this entire Agreement and You understand the terms, conditions, limitations and exclusions explained herein; and
11. You elect to purchase this Agreement and amend Your Finance Agreement as detailed herein.

| [X] I elect to purchase this GAP Agreement | | Agreement Price $ 649.00 | |
|---|---|---|---|
| Consumer Signature | Date 3/24/16 | Dealer Representative Signature | Date 3/24/16 |

| WHITE -- CONSUMER | YELLOW -- ADMINISTRATOR | PINK -- LENDER/LESSOR | GOLD -- DEALER |
|---|---|---|---|

**FIRST CLASS GUARANTEED AUTO PROTECTION PROGRAM ADMINISTRATOR**
7045 College Boulevard, Overland Park, KS 66211 - (800) 494-3415

LZX 98942                    Page 1 of 3                    GDML0815 (08/15)

## SPECIAL STATE DISCLOSURES

**Massachusetts -** This Agreement is not available for leased vehicles.

**Minnesota - GAP WAIVER IS OPTIONAL. YOU DO NOT HAVE TO PURCHASE THIS PRODUCT IN ORDER TO BUY [OR LEASE] THIS MOTOR VEHICLE.  YOU ALSO HAVE THE LIMITED RIGHT TO CANCEL.** GAP Waiver cannot be sold in conjunction with the sale or lease of any used motor vehicle that is an automobile or truck valued at less than $5,000.

**Nebraska -** This Agreement is not insurance and is not regulated by the Nebraska Department of Insurance.

**New Hampshire - Our** performance under this Agreement is insured by an insurance policy issued to Us by **Universal Underwriters Insurance Company,** 7045 College Boulevard, Overland Park, Kansas 66211, (800) 821-7803. In the event You do not receive satisfaction under this Agreement, You may contact the New Hampshire Insurance Department by telephone at (800) 852-3416 or by mail at 21 South Fruit Street, Suite 14, Concord, NH 03301.

**South Carolina - THIS GAP WAIVER IS NOT REQUIRED TO OBTAIN CREDIT, NOR TO OBTAIN CERTAIN TERMS OF CREDIT OR TO PURCHASE THE RELATED MOTOR VEHICLE. THIS GAP WAIVER WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.** This GAP Waiver is not insurance and does not take the place of collision, comprehensive, or any other form of insurance on the motor vehicle. The sale of this Agreement is not permitted if the amount financed, less the cost of this Agreement, the cost of credit insurance, and the cost of service warranties is less than 80% of the MSRP for a new vehicle or 80% of the NADA average retail value for a used vehicle. A bona fide error resulting in the sale of this coverage will result in this Agreement being void and You will receive a full refund of the purchase price of this Agreement.

**Tennessee -** In order to receive a refund, You must provide a written request to the Dealer within 90 days of Your decision to cancel this Agreement. The cost of this Agreement is not regulated. You must determine if the Agreement Price for GAP coverage is reasonable.

## DEFINITIONS

| | |
|---|---|
| **Actual Cash Value** | The retail value of the vehicle on the **Date of Loss** as determined by Your primary automobile physical damage carrier, including any tax and fee refunds applied, less any insurance carrier deductible amount, if any, not to exceed $1,000, or the amount paid by a third party insurer. In the event of no primary carrier or third party insurer, Actual Cash Value shall mean the retail value of the vehicle as defined in the region specific National Automobile Dealers Association (N.A.D.A.) Official Used Car Guide or an equivalent guide customarily used for the region in which the **vehicle** is principally garaged. |
| **Date of Loss** | The date on which the **Total Loss** occurred. If such date is indeterminable, the Date of Loss shall be the Date of Loss established by the primary automobile physical damage insurer. |
| **Effective Date** | The **Effective Date** of this Agreement is the date **You** entered into **Your Finance Agreement.** |
| **Finance Agreement** | The retail sales installment contract, loan agreement evidencing the sale of the vehicle described on the front page of this Agreement. |
| **GAP Amount** | The dollar amount which represents the difference between the **Actual Cash Value** of the vehicle and the **Outstanding Balance** due pursuant to **Your Finance Agreement** on the **Date of Loss.** |
| **Outstanding Balance** | The amount owed by **You** to pay off the current balance due under the provisions of the **Finance Agreement** as of the **Date of Loss** not including: any amount added to the Outstanding Balance after the **Finance Agreement** origination date; unearned interest or finance charges, any deferred payments and associated charges, delinquent payments or taxes and associated charges, past due amounts, late charges, refundable charges, including, but not limited to service contracts, insurance policies or other refundable items included in **Your Finance Agreement.** |
| **Total Loss** | The determination by Your primary insurance carrier or a third party's insurance carrier that Your vehicle is a Total Loss arising from an insured risk. In the event that Total Loss does not involve a settlement payment by a primary insurance carrier, the vehicle shall be considered a Total Loss if: a) it has been involved in a collision whereby the cost to repair the vehicle exceeds the **Actual Cash Value** on the **Date of Loss;** b) if the vehicle has been stolen and has not been recovered within thirty (30) days from the date of the original police report evidencing theft of the vehicle; or c) if the vehicle sustains major damage and the cost to repair the vehicle exceeds the **Actual Cash Value** on the **Date of Loss.** |

## TERMS AND CONDITIONS

This Agreement begins on the **Finance Agreement** origination date. This Agreement ends at the earliest of the following:

1) The **Finance Agreement** is scheduled to be paid off; 2) The **Finance Agreement** is paid off prior to scheduled expiration; 3) This Agreement is canceled by **You;** 4) A claim has been paid under this Agreement; or 5) The vehicle is refinanced.

This Agreement may be canceled at any time while the **Finance Agreement** is in effect if **You** have not incurred a **Total Loss** that resulted in any portion of **Your Outstanding Balance** being waived under this Agreement.

To cancel this Agreement, a written request must be sent to **Us** or the Administrator listed on the front side of this document. A cancellation requested within 60 days of purchase is eligible for a full refund. A cancellation request received after 60 days of purchase will be refunded according to the pro-rata method less a $25.00 service fee. (Service fee is not applicable in Massachusetts, South Carolina, or Vermont)

When this Agreement ends because **Your Finance Agreement** is paid off early or is terminated for any reason, **You** must send a written request for a prorata refund of any unearned portion of the GAP Agreement Price within 90 days of the day on which the event occurred that terminated the **Finance Agreement** if a refund is sought on the basis of the termination. Proof of payoff or termination from **Your** Finance Company must be included in the request. The proof can be sent to the Dealer where **You** purchased this Agreement or to the Administrator. Cancellation refunds due to repossession, default or termination of **Your Finance Agreement** for any other reason may be paid directly to the Assignee Finance Company to reduce the amount owed under **Your Finance Agreement,** unless **You** can provide proof the **Finance Agreement** has been paid in full. If the Dealer assigns this Agreement, the Assignee Finance Company shall be listed as payee on all refunds and sole payee on all repossession refunds.

Once all or any part of **Your** debt has been canceled under this Agreement, it will automatically terminate and no refund of any portion of **Your** charge paid for this Agreement is due. This Agreement is not transferable to any other vehicle or **Finance Agreement,** nor shall it be extended beyond the **Finance Agreement** original expiration date.

GDML0815 (08/15)

## LIMITATIONS AND EXCLUSIONS

This Agreement does not apply to:

1. **Total Loss** which occurs prior to the **Effective Date** of this Agreement or after the scheduled termination date of the **Finance Agreement**.
2. An ineligible **Finance Agreement**. The **Finance Agreement** is ineligible if: a) **Your** name does not appear on the **Finance Agreement**; b) the **Finance Agreement** has: 1) other than uniform monthly repayment terms for the full period of the Agreement with the exception of incidental differences in the first and last payments; 2) a first installment payment due more than 90 days after the **Finance Agreement** origination date; or 3) a term longer than 84 months.
3. An ineligible vehicle. The vehicle is ineligible if it: a) is not licensed for highway use; b) is not principally garaged and used in the United States or Canada; c) is used to carry goods or passengers for compensation; d) is used to transport or tow for hire; e) has a branded title, which includes salvage titles, (or should have been issued a salvage or branded title); f) is used as an emergency, police or commercial purposes vehicle; g) has less than four wheels, motorcycles, recreational vehicles, watercraft, vehicles which exceed 12,500 G.V.W.R. or vehicles used for competitive or off-road racing; h) is a conversion van unless converted by the manufacturer or a company approved by the manufacturer; or i) is a motor home.
4. Loss or damage: a) resulting from direct or indirect dishonest, fraudulent, criminal or illegal acts by **You** or any party acting on **Your** behalf; b) due to legal confiscation of the vehicle by public official; c) during or after repossession; d) caused by an act where **You** or any party acting on **Your** behalf, intentionally damages the vehicle causing a **Total Loss**; e) **You** have concealed or misrepresented any material fact(s), or in the case of fraud; or f) occurring outside of the United States or Canada.
5. Delinquent payments; past due amounts; deferred payments; late charges; legally permitted delinquency fees; fees for the return or dishonor of checks or other instruments tendered as payment; premiums for creditor-imposed property damage insurance; loan charges; uncollected service charges; disposition fees; termination fees; penalty fees; or other proceeds due to cancellation of service contracts, insurance policies or other items included in **Your** initial **Finance Agreement**.

## CLAIM PROCEDURE

In the event of a **Total Loss**, **You** must submit the following documents to the Administrator within ninety (90) days of **Date of Loss** or not later than 90 days from the date of receipt of the primary insurance carrier's settlement check.

1. A complete copy of the **Finance Agreement** and complete copy of this Agreement;
2. A copy of **Your Finance Agreement's** complete payment history detailing the date each payment was made and the amount of each payment;
3. A copy of any documents from the primary insurance carrier evidencing the **Actual Cash Value** of the vehicle on the **Date of Loss** (if applicable). These documents should show any taxes, fees, or deductibles used in calculation of the settlement as well as an evaluation report of the vehicle;
4. A copy of any refund checks for the cancellation of credit life insurance, credit disability insurance, a vehicle service contract, an extended warranty or a car care agreement that was financed on the **Finance Agreement**;
5. A copy of the insurance company's settlement statement and check (if applicable);
6. A police report if the vehicle was stolen or involved in a collision; and
7. A vehicle evaluation report from the primary insurance carrier if the vehicle sustained major damage. If **You** do not have primary insurance, provide an itemized estimate of damages from a state licensed automotive body shop or repair facility.

**You** must promptly, diligently and in good faith pursue the settlement by the primary carrier, and cooperate with Administrator.

The Assignee Finance Company shall be listed as loss payee on all claim checks to reduce or extinguish the unpaid debt.

**You** may contact the Administrator by: Phone–(800) 494-3415; Fax–(888) 875-7533; Mail–PO Box 7986, Shawnee Mission, KS 66207; or E-mail–FirstClassGAPClaims@zurichna.com.

## CONFORMITY TO STATUTE

Terms of this Agreement which are in conflict with the statutes of the State where this Agreement is issued are hereby amended to conform to such statutes.

GDML0815 (08/15)

Exhibit 7

RETAIL INSTALLMENT CONTRACT – MOTOR VEHICLE – SIMPLE INTEREST

No. 599594

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $2500.00 |
|---|---|---|---|---|
| 19.99 % | $ 2031.59 | $ 5826.85 | $ 7858.44 | $ 10358.44 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 36 | $ 218.29 | monthly beginning  06/27/2015 |
| N/A | $ N/A | N/A |

**Security:** You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

**Late Charge:** If any payment is ten (10) days late, you will be charged: i) 5% of that installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less.

**Prepayment:** You have the right to prepay the unpaid balance in full or in part at anytime without penalty.

See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

### Itemization of Amount Financed

| | | |
|---|---|---|
| Cash Price | | $ 6900.00 |
| Less Cash Downpayment | | $ 2500.00 |
| Value of Trade-in $ N/A | | |
| Less Payoff $ N/A | | |
| Trade $ N/A | | $ N/A |
| Total Downpayment | | $ 2500.00 |
| Unpaid Balance of Cash Price | | $ 4400.00 |

**Amount Paid to Others for You**

| | | |
|---|---|---|
| Public Officials (Licenses, Title & Taxes) | $ | 363.42 |
| Paid to ERT Service Provider for Optional ERT Fee $ | | N/A |
| GAP / DLR | $ | 895.00 |
| To DOCFEEPDTOOL | $ 168.43 | N/A |
| Total Other Charges & Amount Paid to Others for You | | $ 1426.85 |

| Buyer | GRETTA CARTER | 3119 N 53RD ST | MILWAUKEE | WI | 53208-3537 |
|---|---|---|---|---|---|
| Buyer(s) | RONNIE TRAMMEL | 3119 N 53RD ST | MILWAUKEE | WI | 53208-3537 |
| Seller | PATRICK CADILLAC VOLVO | 526 MALL DRIVE | SCHAUMBURG, IL 60195 | | |

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | No. Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2003 | CADILLAC | CTS | SD | | 1G6DM57N930170319 | WHITE | | |

Buyer Promises to pay to the order of Seller at the office at: _____ (Assignee) located in _____

The Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 19.99 % per annum from date until maturity in 35 installments of $ 218.29 each and a final installment of $ 218.29, beginning on 27 JUN 2015.

**SEE REVERSE HEREOF FOR INFORMATION ON POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.**

Dated: 05/13/2015

RETAIL INSTALLMENT CONTRACT

PATRICK CADILLAC VOLVO

Copyright 2014   ILLIANA FINANCIAL, INC., Elmhurst, IL (All Rights Reserved)   ORIGINAL   Form IFI-26  (Rev. 7/14)



## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer or holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successor and assigns.

2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interest of Buyer and the holder, or either of them.

3. COLLATERAL PROTECTION INSURANCE. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the U.S. without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorneys' fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds, and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative.

6. Holder is authorized to apply any payment made by Buyer hereon to any other indebtedness of Buyer to holder, whether arising under the contract or otherwise.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. Buyer agrees that holder may try to contact Buyer in writing, by email, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. Buyer also agrees that holder may try to contact Buyer in these and other ways at any address or telephone number Buyer provides, even if the telephone number is a mobile phone number or the contact results in a charge to the Buyer.

9. The terms of this contract are governed by the laws of the State of Illinois. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions thereof.

**"NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM."**

**(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.**

### ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to **Wells Fargo Dealer Services** **Po Box 997517 Sacramento, CA 95899**

(Name of Assignee) (Address of Assignee)

ASSIGNEE, its successors and assigns, all of Seller's right, title and interest in and to the within contract and the motor vehicle described therein. To induce Assignee to purchase said contract, Seller represents and warrants to Assignee (1) that the within contract is valid and genuine and correctly states the terms of the retail installment transaction between Seller and Buyer; (2) that the motor vehicle described has been delivered to and accepted by the Buyer; (3) that the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) that Seller had good title to and the right to sell said motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) that no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) that Seller has the right to sell and assign this contract to Assignee; (7) that all buyers have legal capacity to contract; (8) that on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract and to the Guarantor a completed copy of the contract and Explanation of Guarantor's Obligation; (9) Seller has complied with all requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (10) that on the date of the contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the existing Certificate of Title, as the case may be, issued covering said motor vehicle, procured from Buyer a signed application for a new certificate of title to be issued to Buyer and mailed to Assignee showing correctly the date of the within contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State of Illinois all of the documents described with the prescribed fee; (11) that the motor vehicle has not been used as a taxi or for hire or for commercial transportation or by law enforcement agencies; (12) that the sale was made at Seller's place of business and was not a door-to-door sale within the definition of the Federal Trade Commission Trade Regulation Rule or the Illinois Consumer Fraud Act; and (13) that the Seller believes the Buyer to be of good moral character and that Buyer will not use or permit said vehicle to be used for unlawful purposes. If any of the foregoing representations and warranties is breached, Seller agrees to repurchase the within contract for the unpaid balance and all other indebtedness then due from Buyer thereon, together with reasonable attorneys' fees, costs and expenses incurred by Assignee.

Dated: 5-13-15 **PATRICK CADILLAC-SAAB-VOLVO**

Seller

By: [signature] [signature]

Authorized Signature Title

### REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event a claim or defense is asserted against Assignee by the Buyer at any time, Seller shall, on demand, repurchase the within contract for cash at a price equal to the net amount remaining unpaid on said contract; and Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the Manufacturer to Buyer.

Dated: ______________________ ______________________

Seller

By: ______________________

Authorized Signature Title

### FULL RECOURSE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations to set forth in the above assignment, Seller unconditionally guarantees prompt and full payment by Buyer of the Total of Payments and all other amounts due from Buyer under the within contract. If Buyer shall fail to pay any installment when due, Seller agrees to pay to Assignee, on demand, the full amount remaining unpaid on said contract. Seller agrees that it shall not be necessary for Assignee to proceed first against Buyer or to have recourse to the motor vehicle before proceeding to enforce this agreement. Extension of the time of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: ______________________ ______________________

Seller

By: ______________________

Authorized Signature Title

### LIMITED REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event that Assignee repossesses the motor vehicle described in the within contract on account of default by Buyer and delivers the same to Seller, Seller shall, on demand, repurchase said motor vehicle for cash at a price equal to the amount remaining unpaid on said contract plus all costs and expenses, including attorneys' fees, incurred by Assignee by reason of Buyer's default or in connection with repossession and delivery of the motor vehicle. This repurchase agreement shall remain in effect until Buyer has paid ______________ full installments of the Total of Payments. Extension of the time of payment or variation of terms effected with the Buyer shall not release Seller from his obligation hereunder.

Dated: ______________________ ______________________

Seller

By: ______________________

Authorized Signature Title

### LIMITED GUARANTEE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees that, in the event of default by the Buyer in the full payment of any installment of the within contract when due, Seller will pay to Assignee, on demand, the unpaid balance then due on the contract up to the limit of $ ______________. This guarantee shall terminate after Buyer has paid ______________ full scheduled installments on the Total of Payments. Extension of the times of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: ______________________ ______________________

Seller

By: ______________________

Authorized Signature Title

### SEPARATE ASSIGNMENT AGREEMENT (Do Not Execute Above Assignment).

Instead of the Seller's obligations set forth in the above assignment and other listed agreements (Repurchase, Full Recourse, Limited Repurchase, and Limited Guarantee), this assignment is made under the terms of a separate agreement made between Seller and Assignee.

Dated: ______________________ ______________________

Seller

By: ______________________

Authorized Signature Title

**NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION**

# Gap Waiver Addendum

This GAP Waiver Addendum dated below amends Your Financing Contract: The Borrower/Lessee ("You" or "Your") elects to purchase the GAP Waiver Addendum from the Issuing Dealer/Creditor or its Assignee ("We", "Us", and "Our").

**F&I Code No.**

### CUSTOMER (BORROWER/LESSEE) INFORMATION

| Last Name | First Name – Initial |
|---|---|
| 1G6DA57N930170319 | |
| Street Address | Apt. # |
| CADILLAC         CTS | 03      123649 |
| City | State | Zip Code |
| Home Phone # | Business Phone # |

### COVERED COLLATERAL INFORMATION
GREVETTA CARTER TRAMMEL      3119 N 53RD ST

| Manufacturer | Model | Year |
|---|---|---|
| MILWAUKEE  WI  53208-3537 | | (414)865-7347 |
| Vehicle Identification # | Mileage | |
| GAP Waiver Addendum Fee $ | | |
| Amount Financed $ | Monthly Payment $ | Term in Months |
| PATRICK CADILLAC VOLVO | 526 MALL DRIVE | |
| Financing Contract | Loan ☐ | Lease ☐ |
| SCHAUMBURG, IL | | 847-605-4000 |
| New Vehicle | Used Vehicle  60173 | 895   0 0 |
| 05/13/15 | | |

### DEALER INFORMATION

| Dealer # | Dealership | | |
|---|---|---|---|
| 7858.44 | | | 36 |
| Street Address | City | State | Zip Code |

### ASSIGNEE INFORMATION

| Assignee | | | |
|---|---|---|---|
| Installment Sales Contract/Loan Acct. # | | | |
| Street Address | City | State | Zip Code |

## COVERAGE
In the event of a Total Loss of the Covered Collateral described above and subject to all of the terms and conditions of this Addendum, Dealer/Assignee agrees to waive all sums which represent the difference between the Actual Cash Value of the Covered Collateral and the Financing Contract Balance under the provisions of the Financial Agreement. The amount waived shall not exceed $50,000.00 in total. You always remain responsible for payment of all Primary Insurance deductibles over $1,000.00.

## ACCEPTANCE OF GAP WAIVER ADDENDUM
I HEREBY ACKNOWLEDGE THAT I HAVE READ, UNDERSTAND, AND ACCEPT ALL OF THE PROVISIONS OF THIS GAP WAIVER ADDENDUM. NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO ME THAT DIFFER FROM THESE PROVISIONS. I ACKNOWLEDGE THAT THE INFORMATION ABOVE IS, TO THE BEST OF MY KNOWLEDGE, TRUE AND CORRECT.

WARNING: THIS CONTRACT DOES NOT PROVIDE PROPERTY DAMAGE, LIABILITY OR COLLISION INSURANCE AND DOES NOT COMPLY WITH ANY FINANCIAL RESPONSIBILITY LAW OR ANY OTHER LAW MANDATING MOTOR VEHICLE INSURANCE COVERAGE.

Neither the extension of credit, the terms of credit nor the terms of the sale of the Covered Collateral are to be conditioned the purchase of this GAP Waiver Addendum, and will not be provided unless I sign and agree to pay the additional cost as shown above. I understand that if I desire a GAP Waiver Addendum, I may obtain such addendum from anyone I choose that is acceptable to the Dealer. GAP Waiver Addendum may only be purchased at the time Borrower signs the contract to purchase or lease the vehicle from the Dealer.

DATE 05/15/15   Borrower's Signature _____   Dealer's Signature _____

## DECLINATION OF GAP WAIVER ADDENDUM
I DO NOT CHOOSE TO PURCHASE THE GAP WAIVER ADDENDUM. I UNDERSTAND THAT BY NOT ACCEPTING THE GAP WAIVER ADDENDUM, I AM NOT ENTITLED TO ANY OF THE BENEFITS IN THE EVENT OF A TOTAL LOSS OF THE VEHICLE.

DATE:_____ Borrower's Signature _____   Dealer's Signature _____

Contract #
G1CHP – Plus last 8 digits of VIN - SEE ABOVE

G1CHP 072208        White - Purchaser/Lessee   •   Yellow - Administrator   •   Pink - Dealer   •   Goldenrod - FINANCIAL INSTITUTION/LENDER

## DEFINITIONS

FOR THE PURPOSES OF THIS GAP WAIVER ADDENDUM THE FOLLOWING TERMS SHALL MEAN:

**Actual Cash Value** means the retail value of the Covered Collateral on the Date of Loss, prior to its physical damage or theft, as determined by the Primary Insurance carrier (including tax, title and license), less the Primary Insurance deductible amount. (NOTE: This GAP Waiver Addendum does not provide coverage for any amounts deducted from the insurer's settlement due to wear and tear, prior damage, excess mileage, salvage, towing or storage.) If no Primary Insurance carrier exists or the Primary Insurance carrier has been declared insolvent, the retail value will be determined using an Established Retail Guide as of the date immediately prior to the date of the Total Loss, based on the best information available on the Covered Collateral's options and condition. If at the time of loss there is no listing for the Covered Collateral, retail value shall be the amount our GAP Administrator has determined, based on the best available information substantiating the retail value of the Covered Collateral as of the date of Total Loss less the Primary Insurance deductible amount.

**Commercial Purposes** means usage of a vehicle in a furtherance of a business purpose, including carrying goods or passengers as a taxi for livery, or for delivery services, where compensation is provided for these services. Share the expense car pools are not considered a Commercial Purpose.

**Covered Collateral** means the vehicle of less than 10,000 pounds gross weight, as listed on page one (1) of this GAP Waiver Addendum, which is not used for racing or Commercial Purposes.

**Customer/Borrower** means the purchaser or lessee of the Covered Collateral, as on page one (1) of this GAP Waiver Addendum.

**Date of Loss** means the date on which the Covered Collateral is reported stolen or incurs physical damage that is severe enough to constitute a Total Loss.

**Delinquent Payments** means any payment, as described in the Financial Agreement, which remains unpaid for a period of more than 30 days after the due date stated in the Financial Agreement.

**Established Retail Guide** means the National Automobile Dealer's Association (NADA) Official Used Car Guide, Kelley Blue Book or their equivalent.

**Financial Agreement** means the document(s) that states the terms, conditions, inception date and expiration date evidencing the retail sale, loan or lease relating to the Covered Collateral.

**Financing Contract Balance** means the amount owed by You to pay off the outstanding Financial Agreement account as of Date of Loss. This amount shall not include any and all unearned and/or future interest or rental charges, finance or lease charges, late charges, Delinquent Payments, deferred payments, uncollected service charges, refundable prepaid taxes and fees, disposition fees, termination fees, penalty fees or any proceeds which may be recovered by canceling any insurance coverages, service contracts and/or warranties, credit life, accidental and health insurance or other cancelable items.

**Primary Insurance** means in force comprehensive and collision insurance coverage under the terms and conditions of the Financial Agreement.

**Total Loss** means a total or constructive loss of the Covered Collateral, which meets one of these criteria: (1) the total cost of repair of the Covered Collateral is greater than or equal to the Actual Cash Value of the Covered Collateral; (2) the Covered Collateral is stolen and is not recovered within 30 days of the date of the loss; (3) Primary Insurance is settled on a Total Loss basis; or (4) if the Covered Collateral is damaged and there is no Primary Insurance coverage, You must have the Covered Collateral appraised and submit the appraisal to the GAP Administrator for determination that the Covered Collateral is a Total Loss.

## TERMS AND CONDITIONS

a.  No waiver applies to any Financial Agreement when the original term exceeds 84 months, exceeds a M.S.R.P. or an Established Retail Guide's retail value of more than $100,000 or has an amount financed over $100,000.

b.  No waiver applies for that portion of the Financing Contract Balance that results from the amount financed/lease cap cost exceeding 150% of the Manufacturer's Suggested Retail Price (M.S.R.P.) for New Vehicles or 150% of an Established Retail Guide's "Retail" value for Used Vehicles, at the inception date of the Financial Agreement.

c.  This GAP Waiver Addendum shall be void if any material fact(s) have been concealed or misrepresented, or in the case of fraud.

d.  The GAP amount to be waived under this GAP Waiver Addendum may decrease over the term of the Financial Agreement.

e.  This GAP Waiver Addendum expires upon the earliest of: (1) the original termination of the Financial Agreement; (2) the early termination or refinancing of the Financial Agreement; (3) 84 months after the date of this Addendum; (4) waiver of a loss under this GAP Waiver Addendum; (5) sale or transfer of the Covered Collateral; (6) date of repossession of the Covered Collateral or expiration of any redemption period following the repossession or surrender of the Covered Collateral.

f.  In cases of theft of the Covered Collateral, You must report the loss to law enforcement authorities within 24 hours of knowledge of the theft.

## EXCLUSIONS

This GAP Waiver Addendum does not apply to loss or damage: (1) occurring prior to the date this GAP Waiver Addendum is executed; (2) resulting directly or indirectly from a fraudulent act or due to the legal confiscation of the Covered Collateral by a public official; (3) caused by an act where You are intending to damage the Covered Collateral causing Total Loss; (4) to Your personal property; (5) caused by theft, unless You file a police report; or (6) occurring outside of the United States or Canada.

## CANCELLATION PROVISIONS

You may cancel and terminate this optional GAP Waiver Addendum at any point during the original time of the Financial Agreement upon written notice to the Dealer/Assignee and provided You have not entered a Waiver request. If a cancellation is requested within 30 days of the date of this GAP Waiver Addendum, You will receive a full refund of the GAP Waiver Addendum fee, or a credit equal to the full cost of the GAP Waiver Addendum fee plus, if required by law, the amount of the applicable finance charge. If a cancellation is requested after 30 days You will receive a refund/credit of the GAP Waiver Addendum fee calculated in accordance with the Pro-rata refund (or by the refund method as required in Your state) less a $25 cancellation fee (except where not allowed by state law). However, in the event of a Total Loss to the Covered Collateral, this GAP Waiver Addendum will be deemed as fully earned and no refund will be due or paid to You. NOTE: It is Your responsibility to notify the Dealer/Assignee in writing of Your request to cancel this GAP Waiver Addendum and to request a refund.

## WAIVER REQUIREMENTS

In the event of a request for waiver, You must provide, within 60 days of the Date of Loss, at the address below, the following documentation before any waiver under this Addendum can be processed: (1) A copy of this GAP Waiver Addendum; (2) Complete documentation from Your Primary Insurance company substantiating the date of and cause of loss of the Covered Collateral, gross settlement amount, deductible, the net settlement amount and proof of payment; (3) Copy of police report (theft losses only); (4) Complete documentation from the Dealer/Assignee showing the exact Financing Contract Balance as defined herein; (5) Copy of the Bill of Sale (Invoice) for the purchase of the Covered Collateral substantiating vehicle make, model, year, options and accessories, any cancelable items purchased, total purchase price and amount financed; (6) Other documents that may be reasonably required by the GAP Administrator.

## STATE PROVISIONS

**Kansas, Louisiana, Missouri, New Hampshire, New Mexico, Vermont and Wisconsin:** The cancellation fee and processing fee is not applicable.

**Indiana:** Financial Agreements where the amount financed is less than 80% of M.S.R.P. are not eligible for the GAP Waiver Addendum.

**Vermont:** Dealer must assign, sell or transfer, within 15 business days, the Financial Agreement to a financial institution/lender as defined in subdivision 1 1 101(32) of Title 8 or a credit union or entity licensed under subdivision 2201 (a)(1) or (3) of Title 8 or this Addendum is void and You will receive a full refund of the GAP Waiver Addendum fee.

**Tennessee:** The cost of the GAP waiver is not regulated and the consumer (borrower/customer) has the responsibility to determine whether the cost of the GAP waiver is reasonable in relation to the protection afforded by the GAP waiver.

**GAP ADMINISTRATOR:** Innovative Aftermarket Systems L.P.
12800 Angel Side Drive / Leander, Texas 78641 / 1-800-346-6469

Exhibit 8

KY-102 6/29/2012

## Retail Installment Contract and Security Agreement

Seller Name and Address
MIDWEST AUTO STORE LLC
144 Weaver Rd
Florence, KY 41042

Buyer(s) Name(s) and Address(es)
JAMES ATKINS
OKSANA ATKINS
154 PINE GROVE CIRCLE
DANVILLE, KY 28437

Summary
No
Date   05/01/15

☐ Business, commercial or agricultural purpose Contract

### Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate | Finance Charge The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all scheduled payments | Total Sale Price The total cost of your purchase on credit, including your down payment |
|---|---|---|---|---|
| 18.00% % | $ 1,746.67 | $ 7,276.24 | $ 9,563.468 | $ 13,868.488 $ 351,8DC3,468 |

**Payment Schedule.** Your payment schedule is.

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 36 | $ 265.46 | MONTHLY, BEGINNING  05/31/15 |
| | $ N/A | |
| | $ N/A | |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due or $10, whichever is greater.

**Prepayment.** If you pay off this Contract early, you ☐ will ☐ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2004 | FORD | EXPLORER SPORT | 4DR 4X4 | 1FMZU73K44UA6Z001 | 174,000 |

☐ New  ☐ Used  ☐ Demo

### Description of Trade-In

### Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following is present regarding securing financing ("Agreement") applies _____ N/A _____

### Itemization of Amount Financed

| | |
|---|---|
| a. Cash Price of Vehicle, incl. sales tax of | |
| b. Trade-in allowance | $ 2,411.23 |
| c. Less: Amount owing, paid to (provide 5) | $ |
| d. Net trade-in (box d negative, enter $0 here and enter the amount on line k) | $.00 |
| e. Cash payment | $ 1,000.00 |
| f. Manufacturers rebate | $ N/A |
| g. Deferred down payment | $ N/A |
| h. Other down payment (describe) | $ N/A |
| Down Payment (d+e+f+g+h) | $ 1,000.00 |
| j. Unpaid balance of Cash Price (a-i) | $ 6,911.23 |
| k. Financed return balance (see line d) | $ N/A |
| l. Paid to public officials, including filing fees | $ 173.484 |
| m. Insurance premiums paid to insurance company(ies) | $ N/A |
| n. Service Contract, paid to | $ N/A |
| DOC. FEE | $ 199.948 |
| ADVANCED PROTECTION PLAN | $ 595.580 |
| | $ N/A |
| | $ N/A |
| LOAN ORIGINATION FEE | $ N/A |
| v. Total Other Charges (Amts Paid) (k thru u) | $ 1,367.548 |
| w. Prepaid Finance Charge | $ N/A |
| x. Amount Financed (j+v) | $ 7,276.24 |

### Insurance Disclosures

Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you, if you qualify for coverage(s). We are quoting below only the coverage you have chosen to purchase.

Credit Life ☐ Single ☐ Joint ☐ None
Credit Disability ☐ Single ☐ Joint ☐ None

**Property Insurance.** You must insure the Property. You may freely choose the insurer and agent through which you insure. If you want such insurance, we will obtain it for you (if you qualify from or through us as you agree) for _____ N/A _____

### Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 7,276.24 plus finance charges accruing on the unpaid balance at the rate of 18.00% per year from the date of this Contract until maturity, at the rate in this Contract.

---

Your unpaid balance of $ 7,276.24 per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-In-Lending Disclosure. You also agree to pay any additional amounts according to the terms and provisions of this Contract.

**Down Payment.** You must agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the Itemization of Amount Financed.

☐ You agree to make a deferred down payment as set forth in your Payment Schedule.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of $ _____ N/A _____ if you pay this Contract in full before we have earned that much in finance charges.

☐ **Processing Fee.** You agree to pay a processing fee of $ _____ N/A _____ that will be ☐ financed ☐ paid in cash.

☐ financed under the terms of this Contract

### Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

☐ **Service Contract**
Term _____ N/A _____
Price _____ N/A _____
Coverage _____ N/A _____

☑ **Gap Waiver or Gap Coverage**
Term  36 MOS
Price  595.580
Coverage  ADVANCED PROTECTION PLAN

### Signature Notices

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

### Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

This Contract requires that a copy of it be furnished to you at the time it is executed.

**NOTICE TO BUYER: DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. BY SIGNING BELOW, YOU AGREE TO ALL THE TERMS OF THIS CONTRACT INCLUDING THE TERMS ON THE PAGES OF THIS CONTRACT THAT FOLLOW THE PAGE WITH YOUR SIGNATURE. BY SIGNING BELOW, YOU ALSO ACKNOWLEDGE THAT YOU RECEIVED A COPY OF THIS CONTRACT AND HAD A CHANCE TO READ AND REVIEW IT BEFORE YOU SIGNED IT.**

Buyer _____ 05/01/15
JAMES ATKINS

Buyer _____ 05/01/15
OKSANA ATKINS

Seller _____ 05/01/15
MIDWEST AUTO STORE LLC

**Assignment.** This Contract and Security Agreement is assigned to

P.O. BOX 997647 SACRAMENTO, CA 94899

☐ with recourse ☐ without recourse ☐ under the terms of a separate agreement between the Seller and Assignee. ☐ under the terms of the Assignment by Seller section on page 2. This Assignment is made with recourse.

BY MIDWEST AUTO STORE LLC _____ 05/01/15

Original

Page 1 of 2

## Additional Terms of the Sales Agreement

**Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the Description of Property section. "Property" means the Vehicle and all other property described in the Description of Property and Additional Protections sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the Description of Property section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the Truth-in-Lending Disclosure assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See Minimum Finance Charge section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If any scheduled payment is more than twice as large as the average of your earlier scheduled payments, you may refinance that payment when due without penalty. The terms of the refinancing will be no less favorable to you than the original terms of this Contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**Bad Check Handling Fee.** For purposes of Kentucky Revised Statutes § 514.040, you agree to pay a bad check handling fee of $50.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Kentucky and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to perform any obligation that you have undertaken in this Contract.
- We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay our reasonable attorneys' fees after default and referral to an attorney who is not our salaried employee.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the Payment section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract to the extent permitted by law.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the Insurance Disclosures section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the Payment section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the Description of Property section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

**By:** ______________________ **Date**

## Assignment by Seller

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract.

(Separate Agreement. If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

- This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
- The statements contained in this Contract are true and correct.
- The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
- This sale was completed in accordance with all applicable federal and state laws and regulations.
- This Contract is valid and enforceable in accordance with its terms.
- The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
- This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
- A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
- The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
- Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of nonpayment or nonperformance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compromise or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

**Unless otherwise indicated on page 1, this Assignment is without recourse.**

**With recourse.** If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.





Signature GAP 125% AIC (6/12)

**GAP ADDENDUM**

*Protecting Your Investment*

## CUSTOMER (BORROWER) INFORMATION

LAST NAME ATKINS   FIRST NAME JAMES   MIDDLE INITIAL N/A

STREET ADDRESS 159 PINE GROVE CIRCLE   APT #

CITY DANIELS   STATE WV   ZIP CODE 25832

HOME PHONE # (030)490-6609   BUS. PHONE # N/A   EMAIL N/A

## COVERED VEHICLE INFORMATION

MANUFACTURER FORD   MODEL EXPLORER SPORT TRAC 43.000   YEAR 2004

VEHICLE ID NUMBER 1FMZU77K44UA82885

ONE TIME CHARGE TO CUSTOMER FOR DEFICIENCY WAIVER ADDENDUM $ 895.00   ORIGINAL DATE OF CONTRACT 05/01/15

INSTALLMENT SALES   BALLOON   AMOUNT   **MSRP/NADA $ 6,845.00   Mileage: 179,086

CONTRACT/LOAN/LEASE ☐ LOAN ☒X FINANCED $ 7,278.23 **TERM (IN MONTHS) 30   NEW ☐ USED ☒X

**DEALER (CREDITOR) INFORMATION** *Maximum Eligibility Limit 125% MSRP/NADA **Maximum Term of GAP 84 Months   Maximum GAP Benefit $50,000

DEALER # 124515008   DEALERSHIP MIDWEST AUTO STORE LLC

STREET ADDRESS 166 Weaver Rd

CITY Florence   STATE KY   ZIP CODE 41042

## ASSIGNEE INFORMATION

ASSIGNEE WELLS FARGO DEALER SERVICES*INSTALLMENT SALES CONTRACT / LOAN / ACCT. # N/A

STREET ADDRESS P.O. BOX 997517

CITY SACRAMENTO   STATE CA   ZIP CODE 95899

| | |
|---|---|
| **Max. Limit of Liability: $50,000** | **Max. Financing Contract Term: 84 Mos.** |
| **Max. Financing Contract Amount: $125,000** | **Max. Deductible Buyback: $1,000** |
| **Max. % of Vehicle Value At Loan/Lease: 125%** | |

This GAP protection contract addendum, which is effective as of the inception date above, amends the FINANCING CONTRACT. This addendum is between the **CUSTOMER** shown above (**YOU** or **YOUR**) and the **DEALER** shown above (**WE, US,** or **OUR**) or if the FINANCING CONTRACT is assigned to another party, the **ASSIGNEE**.

In the event of a **CONSTRUCTIVE TOTAL LOSS** or **UNRECOVERED THEFT** to the **PROTECTED VEHICLE**, we agree to waive our rights against you for an amount subject to the **LIMITS OF LIABILITY** on the reverse side and the terms, conditions and exclusions hereof. You will remain responsible for payment of any items stated under Exclusions and that remain unpaid in the FINANCING CONTRACT.

**GAP** does not take the place of insurance on the **PROTECTED VEHICLE**. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the FINANCING CONTRACT or applicable law. You are responsible for all notifications or claims that are required to be filed with your automotive insurance company. We will not process or handle your insurance claims for you. If you move during the term of this contract, it is your responsibility to notify US or our Administrator of your change of address.

You may wish to consult an alternative source to determine whether similar protection may be obtained and at what cost. If you purchase GAP from this source, you understand that the Dealer may retain all or a portion of the charge for this GAP addendum. You should carefully read the back of this addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent you from receiving benefits under this addendum.

**LIMITATIONS–THIS IS ONLY A PARTIAL LIST. YOU MUST READ THIS ENTIRE GAP ADDENDUM FOR ALL LIMITATIONS:**
A. We will not waive that portion of the **UNPAID NET BALANCE** that results from the original FINANCING CONTRACT amount exceeding the Max. % of Vehicle Value at Loan/Lease stated above at the inception date of this addendum.
B. The amount waived for FINANCING CONTRACTS with terms greater than the Maximum Financing Contract Term stated above will be based on a net payoff calculated using the Maximum Financing Contract Term stated above.
C. Any addendum issued for a term or an amount financed in excess of A or B above will be deemed eligible for enrollment as limited by this section.
D. FINANCING CONTRACTS that do not have uniform monthly repayment terms for the full period of the FINANCING CONTRACT are subject to the provisions of Condition B on the reverse side of this form.

**TERMINATION OF ADDENDUM:** This addendum will terminate on the date that any of the following events occur: 1. the date your FINANCING CONTRACT is scheduled to terminate; 2. in the event that the FINANCING CONTRACT is terminated prior to its maturity date; 3. in the event that a PROTECTED VEHICLE is sold, assigned or transferred by You before the expiration date of the FINANCING CONTRACT; 4. expiration of any redemption period following the repossession or surrender of the PROTECTED VEHICLE; or 5. the date the FINANCING CONTRACT is prepaid of the FINANCING CONTRACT is refinanced.

**YOUR RIGHT TO CANCEL:** You may cancel this addendum before midnight of the 30th day after the inception date shown above and receive a full refund/credit. In the event of early termination of the addendum after the 30th day, provided no loss under this addendum has occurred, any refund will be calculated on the basis of a Pro Rata refund method, less a $50.00 cancellation fee (the cancellation fee is waived on all Ford Motor Credit (FMC) installment loans), unless other state regulatory methods apply. We will apply all refund proceeds to any remaining balance. It is your responsibility to notify the Dealer, in writing, of your request to cancel this addendum and request a refund/credit of the GAP charges. If you do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator shown below.

**BY YOUR SIGNATURE BELOW YOU ACKNOWLEDGE AND AGREE TO THE FOLLOWING:**
• THAT THIS GAP ADDENDUM IS NOT AN INSURANCE POLICY OR PART OF AN INSURANCE POLICY.
• THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS AND HAS NO EFFECT ON THE

ONE TIME CHARGE TO CUSTOMER FOR DEFICIENCY WAIVER ADDENDUM $ _____ 895.00 _____   ORIGINAL DATE OF CONTRACT 05/01/15
INSTALLMENT SALES ☐ BALLOON ☐ AMOUNT   *MSRP/NADA $ __6,845.00__   Mileage: 179,086
CONTRACT/LOAN/LEASE ☐ LOAN X☒   FINANCED $ 7,278.23 **TERM (IN MONTHS) __30__ NEW ☐   USED ☒ .

**DEALER (CREDITOR) INFORMATION** *Maximum Eligibility Limit **125%** MSRP/NADA **Maximum Term of GAP **84** Months   Maximum GAP Benefit **$50,000**

DEALER # 124515008 _____ DEALERSHIP MIDWEST AUTO STORE LLC
STREET ADDRESS 166 Weaver Rd
CITY Florence _____ STATE KY _____ ZIP CODE 41042

**ASSIGNEE INFORMATION**

ASSIGNEE WELLS FARGO DEALER SERVICES *INSTALLMENT SALES CONTRACT / LOAN / ACCT. # N/A
STREET ADDRESS P.O. BOX 997517
CITY SACRAMENTO _____ STATE CA _____ ZIP CODE 95899

**Max. Limit of Liability: $50,000**     **Max. Financing Contract Term: 84 Mos.**
**Max. Financing Contract Amount: $125,000**   **Max. Deductible Buyback: $1,000**
**Max. % of Vehicle Value At Loan/Lease: 125%**

This GAP protection contract addendum, which is effective as of the inception date above, amends the FINANCING CONTRACT. This addendum is between the CUSTOMER shown above (YOU or YOUR) and the DEALER shown above (WE, US, or OUR) or if the FINANCING CONTRACT is assigned to another party, the ASSIGNEE.

In the event of a CONSTRUCTIVE TOTAL LOSS or UNRECOVERED THEFT to the PROTECTED VEHICLE, we agree to waive our rights against you for an amount subject to the LIMITS OF LIABILITY on the reverse side and the terms, conditions and exclusions hereof. You will remain responsible for payment of any items stated under Exclusions and that remain unpaid in the FINANCING CONTRACT.

GAP does not take the place of insurance on the PROTECTED VEHICLE. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the FINANCING CONTRACT or applicable law. You are responsible for all notifications or claims that are required to be filed with your automotive insurance company. We will not process or handle your insurance claims for you. If you move during the term of this contract, it is your responsibility to notify US or our Administrator of your change of address.

You may wish to consult an alternative source to determine whether similar protection may be obtained and at what cost. If you purchase GAP from this source, you understand that the Dealer may retain all or a portion of the charge for this GAP addendum. You should carefully read the back of this addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent you from receiving benefits under this addendum.

LIMITATIONS–THIS IS ONLY A PARTIAL LIST. YOU MUST READ THIS ENTIRE GAP ADDENDUM FOR ALL LIMITATIONS:
A.  We will not waive that portion of the UNPAID NET BALANCE that results from the original FINANCING CONTRACT amount exceeding the Max. % of Vehicle Value at Loan/Lease stated above at the inception date of this addendum.
B.  The amount waived for FINANCING CONTRACTS with terms greater than the Maximum Financing Contract Term stated above will be based on a net payoff calculated using the Maximum Financing Contract Term stated above.
C.  Any addendum issued for a term or an amount financed in excess of A or B above will be deemed eligible for enrollment as limited by this section.
D.  FINANCING CONTRACTS that do not have uniform monthly repayment terms for the full period of the FINANCING CONTRACT are subject to the provisions of Condition B on the reverse side of this form.

TERMINATION OF ADDENDUM: This addendum will terminate on the date that any of the following events occur: 1. the date your FINANCING CONTRACT is scheduled to terminate; 2. in the event that the FINANCING CONTRACT is terminated prior to its maturity date; 3. in the event that a PROTECTED VEHICLE is sold, assigned or transferred by You before the expiration date of the FINANCING CONTRACT; 4. expiration of any redemption period following the repossession or surrender of the PROTECTED VEHICLE; or 5. the date the FINANCING CONTRACT is prepaid or the FINANCING CONTRACT is refinanced.

YOUR RIGHT TO CANCEL: You may cancel this addendum before midnight of the 30th day after the inception date shown above and receive a full refund/credit. In the event of early termination of the addendum after the 30th day, provided no loss under this addendum has occurred, any refund will be calculated on the basis of a Pro Rata refund method, less a $50.00 cancellation fee (the cancellation fee is waived on all Ford Motor Credit (FMC) installment loans), unless other state regulatory methods apply. We will apply all refund proceeds to any remaining balance. It is your responsibility to notify the Dealer, in writing, of your request to cancel this addendum and request a refund/credit of the GAP charges. If you do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator shown below.

BY YOUR SIGNATURE BELOW YOU ACKNOWLEDGE AND AGREE TO THE FOLLOWING:
- THAT THIS GAP ADDENDUM IS NOT AN INSURANCE POLICY OR PART OF AN INSURANCE POLICY.
- THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE.
- THAT YOU HAVE READ AND UNDERSTAND THIS ADDENDUM AND ITS PROVISIONS AND AGREE THAT NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU THAT DIFFER FROM THESE WRITTEN PROVISIONS.
- YOU AUTHORIZE RELEASE OF FINANCING CONTRACT INFORMATION REQUIRED FOR PROCESSING OF A LOSS.
- LOSSES MUST BE REPORTED TO THE BELOW ADMINISTRATOR WITHIN NINETY (90) DAYS OF THE PRIMARY CARRIER'S SETTLEMENT OR, IF THERE IS NO PRIMARY CARRIER, WITHIN NINETY (90) DAYS OF THE DATE OF LOSS.

**Yes, I elect the GAP Protection and acknowledge understanding of all provisions above and on succeeding pages.**

Customer Signature: _____   Date: 05/01/15
Customer Signature: _____   Date: 05/01/15

Dealer Signature: _____   Date: 05/01/15

WHITE - CUSTOMER   YELLOW - CLASSIC   PINK - DEALER   GOLDENROD - ASSIGNEE
Administered by Norman and Company, Inc.  106 State Street East, Oldsmar, FL 34677  800-930-4633
Signature GAP 125% AIC (6/12)