Exhibit 9

**DEALER 208024**

Buyer Name and Address
ILKA THUMARENTA ROBINSON-EATON
1327 LINCOLN WOODS DR
CATONSVILLE MD 21228

Co-Buyer Name and Address
N/A

Seller-Creditor (Name and Address)
JERRY'S TOYOTA, INC
8001 BELAIR ROAD
BALTIMORE MD 21236

| Condition | Year | Make and Model | Vehicle Identification Number |
|---|---|---|---|
| USED | 2011 | TOYOTA HIGHLAND | STDDK3EH8BS062208 |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 4.79 % | $4402.00 | $29286.99 | $33688.50 | $34066.00 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 470.67 | Monthly beginning 03/13/2015 |

### ITEMIZATION OF AMOUNT FINANCED
1 Cash Price ... $25452.00 (A)
E Dealer Processing Charge (not required by law) $300.00 (B)
C Freight Charge N/A (C)
D Other 0.00 (D)

2 Total Downpayment TOYOTA PREVIA $25712.00

OTHER TERMS NOT READABLE...

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may not cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with your Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

ORIGINAL LIENHOLDER

1. FINANCE CHARGE AND PAYMENTS
   a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We noted this Finance Charge, Total of Payments, and total dollar Finance Charge shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. YOUR OTHER PROMISES TO US
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security interest.
      You give us a security interest in:
      • The vehicle and all parts or goods installed in it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. Insurance you must have on the vehicle.
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe.

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES
   a. You may owe late charges. If a payment is not received in full within 15 days after it is due, you will pay a late charge of 10% of the part of the payment that is late, with a minimum charge of $5. Acceptance of a late payment or late charge does not excuse your late payment or mean that you must keep making late payments.
      If you pay late, we may also take the steps described below.
   b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
      Default means:
      • You do not pay any payment on time;
      • You give false, incomplete, or misleading information on a credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee, as the law allows. You will also pay any court and collection costs we incur as the law allows.
   d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. We may repossess the vehicle with or without resort to judicial process. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. How you can get the vehicle back if we take it. If we repossess the vehicle, in many situations the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.
   f. We will sell the vehicle if you do not get it back. If you do not do what is required to get the vehicle back, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, to the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. WARRANTIES SELLER DISCLAIMS
   The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does not apply at all if you bought the vehicle primarily for personal, family, or household use.

   **Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. SERVICING AND COLLECTION CONTACTS
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

   APPLICABLE LAW Federal law and Maryland law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code.

NOTICE TO BUYERS: OF NEW VEHICLES: IF YOU ARE PURCHASING A NEW VEHICLE WHICH IS SUBJECT TO A MANUFACTURER'S EXPRESS WARRANTY AND THE VEHICLE DOES NOT CONFORM TO THAT WARRANTY DURING THE WARRANTY PERIOD, YOU MUST GIVE WRITTEN NOTICE OF THE NONCONFORMITY, DEFECT OR CONDITION TO THE MANUFACTURER OR FACTORY BRANCH DURING THE WARRANTY PERIOD BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, IN ORDER TO PRESERVE YOUR RIGHTS UNDER THE MARYLAND AUTOMOTIVE WARRANTY ENFORCEMENT ACT.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

 **VEHICLEONE** powered by ally     GAP Addendum - Maryland     2612 -MDV

| CUSTOMER/BORROWER/LESSEE | | | | FINANCIAL INSTITUTION | | |
|---|---|---|---|---|---|---|
| NAME ILKA ROBINSON-EATON | | | | NAME WELLS FARGO DEALER SERVICES, INC. | | |
| ADDRESS 1327 LINCOLNWOODS DR | | | | ADDRESS PO BOX 997517 | | |
| CITY CATONSVILLE | STATE MD | ZIP 21228 | | CITY SACRAMENTO | STATE CA | ZIP 95899-75 |
| PHONE (410)868-9463 | | | | PHONE | | |

| ISSUING DEALER | | | | VEHICLE INFORMATION | | |
|---|---|---|---|---|---|---|
| DEALERSHIP NAME JERRY'S TOYOTA, INC | | | | ☐ NEW    ☒ USED | | |
| ADDRESS 8001 BELAIR ROAD | | | | VIN 5TDDK3EHXBS069208 | | |
| CITY BALTIMORE | STATE MD | ZIP 21236 | | MODEL YEAR 2011 | MAKE TOYOTA | MODEL HIGHLANDER |
| PHONE 4106615700 | | | | PURCHASE PRICE 25452.00 | | MSRP (NEW) / NADA (USED) |
| DEALER NUMBER 9009 | SALES IDENTIFICATION NUMBER | | | ODOMETER READING 81209 | | |

| FINANCIAL AGREEMENT | | | |
|---|---|---|---|
| ☒ INSTALLMENT SALES   ☐ LEASE   ☐ BALLOON | | EFFECTIVE DATE 27 JAN 2015 | TERM 72 MONTHS |
| AMOUNT FINANCED/LEASE CAP COST 29386.92 | FINANCE RATE/LEASE CHARGE 4.74 | FINANCE/LEASE AGREEMENT NUMBER | |

| GUARANTEED AUTO PROTECTION (GAP) | | | |
|---|---|---|---|
| CHARGE TO YOU FOR THIS GAP ADDENDUM 895.00 | MAXIMUM AMOUNT FINANCED/LEASE CAP COST $100,000 | | |
| MAXIMUM GAP AND FINANCIAL AGREEMENT TERM 84 MONTHS FOR NEW VEHICLES AND 84 MONTHS FOR USED VEHICLES | | MAXIMUM DEDUCTIBLE AMOUNT $1,000 | PLAN CODE |

PROGRAM ADMINISTRATOR: Customer Service Center, Inc.
P.O. Box 19340
Kalamazoo, MI 49019
Toll Free: 888-640-0387

## I. Agreement

The Customer/Borrower/Lessee ("You", "Your") and the Issuing Dealer ("Dealer") named above agree to amend the provisions of the Financial Agreement described above as follows:

  A. In the event Your Vehicle is declared a total loss by Your insurance company providing automobile physical damage coverage ("Insurer") as a result of theft or damage, the Dealer agrees to waive the difference between the Outstanding Balance (as defined in I.A.1. below) and the Insurer's Payment (as defined in I.A.2. below):

    1. The Outstanding Balance shall mean the amount owed under Your Financial Agreement on the date of loss, LESS any:

      a. late fees, unearned finance, or prepaid taxes and fees actually refunded to You or credited to Your outstanding balance;

      b. past due payments exceeding fifteen (15) days past payment due date or unpaid balances due to extensions of maturity;

      c. unearned amounts from optional insurance or service contracts actually refunded to You or credited to Your outstanding balance.

    2. The Insurer's Payment shall mean the settlement You receive from Your Insurer based on the actual cash value of Your Vehicle, PLUS any:

      a. deductible amount under Your automobile physical damage coverage in excess of the maximum deductible amount.

  B. If Your Vehicle did not have applicable automobile physical damage insurance coverage in effect at the time of loss and there is no Insurer's Payment, the Program Administrator will (i) determine whether Your Vehicle is a total loss based on NADA and (ii) if Your Vehicle is a total loss, determine the amount to be waived under I.A. as if there were an Insurer's Payment for the loss equal to the actual cash value of Your Vehicle at the time of loss based on NADA.

## II. Term of Agreement

This GAP Addendum is effective on the Financial Agreement effective date and expires on the earliest of:

  A. the date the Financial Agreement is originally scheduled to terminate;

  B. the date of early termination of the Financial Agreement including the refinancing of Your Vehicle;

  C. the date of repossession or surrender of Your Vehicle once any redemption period has ended;

  D. the date corresponding to the maximum term stated above; or

  E. the date of the total loss of Your Vehicle.

You have read the disclosures and the terms on both the front and the back of this GAP Addendum, and You agree to all of the terms of this GAP Addendum. You understand that neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease may be conditioned upon the purchase of this GAP Addendum. This GAP Addendum will not be provided unless You sign below and pay the charges as shown above. THIS GAP ADDENDUM IS NOT A CREDIT INSURANCE POLICY AND NEITHER DOES IT PROVIDE PHYSICAL DAMAGE COVERAGE NOR ELIMINATE YOUR OBLIGATION TO INSURE YOUR VEHICLE UNDER APPLICABLE STATE LAW. YOU MAY WISH TO CONSULT AN INSURANCE AGENT TO DETERMINE WHETHER SIMILAR COVERAGE MAY BE OBTAINED AND AT WHAT COST. Unless You provide proof that the Financial Agreement has been terminated, all refunds will be made payable to the Financial Institution and may be applied to reduce the total amount owed under the Financial Agreement.

☐ You want to purchase this GAP Addendum

| CUSTOMER/BORROWER/LESSEE SIGNATURE | DATE 27 JAN 2015 | ISSUING DEALER REPRESENTATIVE NAME DADPAY, HAMID |
|---|---|---|
| ISSUING DEALER REPRESENTATIVE SIGNATURE | DATE 27 JAN 2015 | TITLE BUSINESS MANAGER |

LZX06425
71-660-81

DEALER        V1 - 150 PRO CSCI FT MD (03-14)

## III. Cancellation

You may cancel this GAP Addendum at any time during its term for any or no reason. If You cancel this GAP Addendum within sixty (60) days of purchase, You will receive a full refund. If You cancel this GAP Addendum after sixty (60) days of purchase, any cancellation refund will be calculated pro rata by time, unless otherwise required by state law.

Your request for cancellation and refund must be made in writing to the Dealer within ninety (90) days of the event that terminated the Financial Agreement. If You do not receive notice that Your refund has been processed within sixty (60) days of the date the request for cancellation was made or need assistance requesting cancellation, contact the Program Administrator identified in this GAP Addendum.

## IV. Exclusions and Limitations

A. This GAP Addendum is void if:
1. purchased after the effective date of the Financial Agreement;
2. Your Vehicle exceeds 12,500 pounds gross vehicle weight rating;
3. the Financial Agreement does not have equal scheduled monthly payments for the full term of the Financial Agreement, except for a Financial Agreement having equal scheduled monthly payments for the full term with the exception of a single balloon payment at maturity or the 1st payment is deferred for up to 90 days;
4. the amount financed/lease cap exceeds the stated maximum; or
5. the Financial Agreement term exceeds the stated maximum term.

B. This GAP Addendum does not apply:
1. to losses arising out of events:
   a. occurring prior to the effective date of this GAP Addendum or after You return Your Vehicle to the Dealer;
   b. arising directly or indirectly out of any dishonest, fraudulent, criminal or illegal act by You or Your agents including, but not limited to the commission of a felony;
   c. arising out of any racing, speed contest or other competitive driving;
   d. occurring outside of the United States or Canada.
2. to COMMERCIAL USE/REGISTRATION;
3. if You fail to comply with any term or condition of this GAP Addendum; or
4. to any amounts owed other than those owed pursuant to Your Financial Agreement.

## V. Duties After a Total Loss

In the event of a total loss of Your Vehicle, You must:

A. notify the Program Administrator within ninety (90) days of receipt of Your Insurer's Payment or within ninety (90) days of the date Your Financial Institution notifies You of any deficiency balance owed, whichever is later. If You did not have automobile physical damage insurance for Your Vehicle You must notify the Program Administrator within ninety (90) days of the date of accident, damage or theft;
B. cooperate with Program Administrator and the Dealer; and
C. send the Program Administrator a copy of:
1. Your Insurer's Payment, vehicle valuation and Your automobile physical damage insurance policy;
2. documentation showing the amount owed to the Financial Institution on the date of accident, damage or theft including a complete payment history;
3. this GAP Addendum;
4. the original Financial Agreement; and
5. the police report (if filed).

## VI. Other Terms

A. You grant the Program Administrator the right to recover any amounts payable under Your automobile physical damage coverage that was not paid by Your Insurer after a total loss. You shall cooperate with the Program Administrator to do whatever is necessary to enable the Program Administrator to exercise its rights and do nothing to prejudice the Program Administrator. This may include, but is not limited to, demanding full payment under Your automobile insurance policy from Your Insurer. If You recover amounts over the Insurer's Payment, or any payment from any insurer, warrantor, or obligor on any coverage paying benefits as a result of a total loss of Your Vehicle, You shall reimburse the Program Administrator to the extent of such amounts, up to the amount waived for You under this GAP Addendum.
B. This GAP Addendum is non-transferable.
C. **YOUR BENEFITS MAY DECREASE OVER THE TERM OF YOUR FINANCE CONTRACT/LEASE.**
D. COMMERCIAL USE/REGISTRATION means utilization of the vehicle for any commercial purpose. *A vehicle registered as commercial or to a business shall be deemed commercial.* Vehicles used for competitive driving, racing, off-road use, pool cars, vehicles equipped with or identified as snowplows, emergency vehicles, vehicles over 12,500 pounds GVW, livery, delivery services, hire and rental, or as taxicabs are not eligible for coverage hereunder. Trailers, special commercial optional equipment, accessories and body components are not covered.
E. The charge for this GAP Addendum will be deemed fully earned and no refund will apply when Your Vehicle is declared a Total Loss.

## VII. Fraud and Misrepresentation

This GAP Addendum is issued in reliance upon the truth of all representations made by You.
If You have concealed or misrepresented any material fact(s) concerning this GAP Addendum, or in case of fraud, attempted fraud or the false swearing by You affecting any matter relating to this GAP Addendum, whether before or after the total loss of Your Vehicle, this GAP Addendum may be voided and all charges will be returned.

Exhibit 10

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

6250195b

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| JANET A. CORPES 259 NICHOLAS AVE STATEN ISLAND NY 10302 | | SANSOME NISSAN SO US ROUTE 1 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2012 | NISSAN SENTRA | 3N1AB6APXCL682388 | personal, family or household / business / agricultural   N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1500.00 |
|---|---|---|---|---|
| 10.90 % | $ 8727.64 | $ 23400.92 | $ 32128.56 | $ 33628.56 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 446.23 | Monthly beginning 06/05/2012 |
| Or As Follows: | | |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late, if the vehicle is primarily for personal, family, or household use and the cash price is $ 10,000 or less, the charge for each late payment will be $ 10

Prepayment. If you pay off your cost early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED**
1 Cash Price (including $ 1923.92 sales tax) ........ $ 22251.92
2 Total Downpayment = Trade-In N/A

[itemization lines with N/A and values]
+ MFG REBATES ........ $ 1500.00
(Total downpayment is negative, enter "0" and see 4J below) $ (1500.00)
3 Unpaid Balance of Cash Price (1 minus 2) ........ $ 20751.92
4 Other Charges Including Amounts Paid to Others on Your Behalf
A Cost of Optional Credit Insurance Paid to Insurance Company or Companies
  Life $ N/A
  Disability $ N/A
B Other Optional Insurance Paid to Insurance Company or Companies $ N/A
C Official Fees Paid to Government Agencies
  to N/A  for N/A  $ N/A
D Optional Gas Contract $ 650.00
E Supplemental Title Fee $ N/A
F Vehicle Title Fee $ N/A
G Government Taxes Not Included in Cash Price $ N/A
H Government License and/or Registration Fees REG $ 225.00
I Government Certificate of Title Fees $ 75.00
J Other Charges (Seller must identify who is paid and describe purpose)
  to SANSOME NISSAN for Doc Fee $ 349.00
  to PHOENIX for PHOENIX $ 1350.00
  to N/A for N/A $ N/A
Total Other Charges and Amounts Paid to Others on Your Behalf $ 2649.00
5 Amount Financed (3 + 4) $ 23400.92

## NOTICE TO RETAIL BUYER
Do not sign this contract in blank.
You are entitled to a copy of the contract at the time you sign.
Keep it to protect your legal rights.

Buyer Signs Janet A. Corpes Date 04/21/12   Co-Buyer Signs N/A

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security interest.**
   You give us a security interest in:
   • The vehicle and all parts or goods put on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund on insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   • You do not pay any payment on time;
   • You give false, incomplete, or misleading information on a credit application;
   • You start a proceeding in bankruptcy or one is started against you or your property; or
   • You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. If the vehicle is primarily for personal, family, or household use and the cash price is $10,000 or less, the maximum attorney's fee you will pay will be $100 plus 10% of the excess over $500 of the amount due when we hire the attorney.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5. Used Car Buyers Guide.

The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. Servicing and Collection Contacts.

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. Applicable Law

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-NJ 5/10

| | |
|---|---|
| Debt Cancellation Agreement # | **565FKZ** |
| Plan Code | |
| Agreement Effective Date | 04/21/2012 |
| Agreement Purchase Price | 650.00 |

## GUARANTEED AUTO PROTECTION PROGRAM
### Debt Cancellation Agreement/Addendum

(PLEASE PRINT OR TYPE)

**Selling Dealer Information**

| Name | Dealer Code |
|---|---|
| SANSONE NISSAN | |

| Address | | | |
|---|---|---|---|
| 90 US ROUTE 1 | | | |

| City | State | Zip | Telephone |
|---|---|---|---|
| AVENEL  NJ 07001 | | | (732)815-2500 |

**Customer Information**

| Customer Name |
|---|
| JANET A CORPES |

| Co-Buyer/Co-Lessee Name |
|---|
| |

| Address |
|---|
| 259 NICHOLAS AVE |

| City | State | Zip | Telephone |
|---|---|---|---|
| STATEN ISLAND NY 10302 | | | (718)448-0329 |

**Vehicle Information**

| Make | Model | Model Year | Mileage |
|---|---|---|---|
| NISSAN | SENTRA | 2012 | 9 |

| Vehicle Identification Number |
|---|
| 3N1AB6APXCL682389 |

**Financial Institution Information**

| Name |
|---|
| WELLS FARGO DEALER SERVICES INC |

| Address |
|---|
| PO BOX 168048 |

| City | State | Zip | Telephone |
|---|---|---|---|
| IRVING TX 75038 | | | |

| Retail/Finance (R) or Lease (L) | Finance or Lease Contract Term (months) | Finance or Lease Contract Start Date |
|---|---|---|
| RETAIL | 72 | 04/21/2012 |

The purchase of this Debt Cancellation Agreement/Addendum is strictly voluntary. You agree to purchase the protection ("GAP Protection") described in this Agreement for the additional charge set forth above as the "Agreement Purchase Price." GAP Protection is not required in order for You to obtain credit, or to obtain any particular or more favorable terms for credit, vehicle purchase or lease.

**Benefit Provided**

In return for the payment of the Agreement Purchase Price, and subject to the terms, limitations, exclusions and conditions of this Agreement, We agree to waive the difference between the Vehicle's Cash Value and Net Payoff in the event of a Total Loss within the United States or Canada, as such terms are defined on the back of this Agreement. GAP Protection is not a substitute for collision or property damage insurance.

The term of this Agreement must equal the original term of Your finance or lease contract. GAP Protection under this Agreement terminates upon payoff or refinancing of Your original finance or lease contract. This Agreement is not transferable unless the original finance or lease contract is assigned. Please retain Your copy of this Agreement. Program details are outlined on the back of this Agreement.

By Your signature below, You acknowledge that You have read and understand both sides of this Agreement, that You have received a completed copy of this Agreement, and that You accept this Agreement.

| _Janet A. Corpes_ | 04/21/2012 |
|---|---|
| Signature of Customer | Date |

| | |
|---|---|
| Signature of Co-Buyer/Co-Lessee | Date |
| | 04/21/2012 |

| | |
|---|---|
| Signature of Selling Dealer | Date |
| | 04/21/2012 |

# Guaranteed Auto Protection Program
## Debt Cancellation Agreement/Addendum

This Debt Cancellation Agreement/Addendum ("Agreement") is between the Customer and any Co-Buyer or Co-Lessee ("You" or "Your") identified on the front of this Agreement and the Creditor/Lessor ("We", "Us", or "Our") and only provides benefit to the original finance or lease contract.

**SECTION 1 - DEFINED TERMS**
Wherever used in this Agreement:
**Agreement Effective Date** is the date indicated as the Agreement Effective Date on the front of this Agreement.

**Cash Value** means the value of the Vehicle on the Date of Total Loss, prior to its physical damage or theft, as determined by Your Physical Damage Insurer, plus any amount subtracted from that value due to pre-existing damage to Your Vehicle, less Your Physical Damage Insurance deductible up to $1,000, if applicable.

If You do not have Physical Damage Insurance or Your Physical Damage Insurance has either a stated value or a limit of liability that is less than the value of Your Vehicle on the Date of Total Loss, or does not cover the Total Loss, the Cash Value is determined by the Program Administrator using the average retail value for a used vehicle in the National Automobile Dealers Association ("NADA") Official Used Car Guide, or its equivalent, based on the best information available on Your Vehicle's options, mileage and condition as of the Date of Total Loss, less Your Physical Damage Insurance deductible up to $1,000, if applicable.

**Creditor/Lessor** means the dealer or financial institution identified on the front of this Agreement that provides the original purchase or lease financing for Your Vehicle, or any person or entity who purchases or accepts assignment of the original finance or lease contract.

**Date of Total Loss** means the date Your Vehicle is initially damaged or stolen which ultimately results in a Total Loss.

**Net Payoff** means, subject to the limitations set forth below, the amount due Us as of the Date of Total Loss. Notwithstanding any provision of Your finance or lease contract, Net Payoff shall not include any currently due and unpaid monthly payments, unearned finance charges/interest or lease charges, charges arising from Your failure to perform any term or condition of the finance or lease contract, or any fees or amounts charged in connection with the early termination of the finance or lease contract. Net Payoff shall also be reduced by any other amounts We receive and apply against Your finance or lease contract balance after the Date of Total Loss, such as a refund of unearned credit insurance premiums or refunds on vehicle service or maintenance agreements.

**Physical Damage Insurance** means a policy of automobile insurance covering Your Vehicle against damage or loss due to any cause including collision and theft.

**Physical Damage Insurer** means a property and casualty insurer properly licensed to sell and issue Physical Damage Insurance policies.

**Program Administrator** means Toyota Motor Insurance Services, Inc. Toyota Financial Services is a service mark of Toyota Motor Insurance Services, Inc.

**Total Loss** means the theft of or accidental damage to Your Vehicle which meets one of the following criteria: 1) Your Vehicle is declared a Total Loss by Your Physical Damage Insurer, 2) no Physical Damage Insurance exists and Your Vehicle is stolen and not recovered within thirty (30) days after the date of theft and remains unrecovered at the time of notification of Total Loss to the Program Administrator, or 3) no Physical Damage Insurance exists and the total cost to repair Your Vehicle is greater than or equal to its Cash Value as determined by the Program Administrator using the average retail value for a used vehicle in the NADA Official Used Car Guide, or its equivalent, based on the best information available on Your Vehicle's options, mileage and condition as of the date Your Vehicle is initially damaged.

**Vehicle or Your Vehicle** means the Vehicle indicated on the front of this Agreement.

**SECTION 2 - ASSIGNMENT**
The Creditor/Lessor assigns any and all rights under this Agreement to any subsequent assignee of the original finance or lease contract benefited by this Agreement.

**SECTION 3 - EXCLUSIONS**
This Agreement and GAP Protection do not apply:
1. When the Date of Total Loss occurs prior to the Agreement Effective Date or after the maturity date of the initial term of the original finance or lease contract.
2. When the Date of Total Loss occurs during or after repossession or confiscation of Your Vehicle.
3. To any Total Loss arising from any material misrepresentation of fact, falsification of document(s), or any dishonest, fraudulent, criminal or illegal acts. In addition, You agree that We may rely upon a determination by Your Physical Damage Insurer that any Total Loss arises from such a circumstance.
4. To theft of or damage to Your Vehicle that does not constitute a Total Loss.
5. To any farmer's loan, single-pay loan, or other finance or lease contract for which the scheduled payments are made less frequently than bi-monthly.
6. To any finance or lease contract with a term exceeding eighty-four (84) months.
7. To any vehicle over 10,000 pounds Gross Vehicle Weight Rating ("GVWR").
8. To any Total Loss for which the Cash Value exceeds the Net Payoff.

**SECTION 4 - LIMITS OF LIABILITY**
Our liability under this Agreement shall be as stated under Benefit Provided on the front of this Agreement but in any event shall never exceed 150% of the Manufacturer's Suggested Retail Price or 150% of the average retail value for a used vehicle in the NADA Official Used Car Guide, or its equivalent) of Your Vehicle at the date of Your original purchase or lease, less the Cash Value.

**SECTION 5 - NOTIFICATION OF TOTAL LOSS**
If Your Vehicle is damaged or stolen and You potentially have suffered a Total Loss, You have at least 90 days from the Date of Total Loss to contact the Program Administrator at (800) 255-8713.

You must provide the Program Administrator with the following information:
1. Your Agreement Number.
2. The vehicle identification number of Your Vehicle.
3. The name of the selling dealer.
4. The date Your Vehicle was damaged or stolen.
5. The name of Your Physical Damage Insurer, Your Physical Damage Insurance policy number, and the name and telephone number of Your insurance agent. If You do not have Physical Damage Insurance, please provide a copy of the police report which includes the vehicle identification number of Your Vehicle.

Your debt cancellation request will be processed upon receipt by the Program Administrator of all of the above required information and documentation. All required information and documentation must be submitted to:

Program Administrator
P.O. Box 9550
Cedar Rapids, IA 52409-9550

*Note: The Program Administrator may independently verify any or all of the information provided by You or Your Physical Damage Insurer. You agree to cooperate with the Program Administrator in the verification of any information.*

**SECTION 6 - CANCELLATION**
**A. Our Rights to Cancel This Agreement**
We have the right to cancel this Agreement for any act of fraud or material breach of the terms and/or conditions of this Agreement by giving You ten (10) days written notice and specifying the reason for cancellation. If You default under Your finance or lease contract, We may cancel this Agreement, and any cancellation refund will be retained by Us and will reduce the balance due on Your finance or lease contract.

**B. Your Rights to Cancel This Agreement (if no benefit has been provided under this Agreement)**
You have the right to cancel this Agreement at any time and to request a refund, if no benefit has been provided under this Agreement. To cancel this Agreement, You must submit a written request to the Program Administrator at the address shown above. The cancellation will be effective when the Program Administrator receives Your written request.

If this Agreement is cancelled within thirty (30) days of the Agreement Effective Date, We will refund the entire Agreement Purchase Price, if no benefit has been provided under this Agreement. If cancelled thirty-one (31) days or more from the Agreement Effective Date, We will refund the purchase price pro-rata based on the elapsed time from the Agreement Effective Date to the cancellation date. Any cancellation refund will be retained by Us and will reduce the balance due on Your finance or lease contract, unless Your finance or lease contract balance has been paid in full, and We have released Our lien on the Vehicle, if any.

**C. No Reinstatement**
You do not have the right to reinstate this Agreement after cancellation. If a Total Loss occurs after cancellation, You will be responsible for the difference, if any, between the Vehicle's Cash Value and Net Payoff.

If You have any questions regarding Your Agreement, please contact the Program Administrator at (800) 255-8713.

081300N
L2X 25063

3550 (01/09)

Exhibit 11

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

Dealer Number _____ Contract Number _____ 86000416

| Buyer Name and Address (Including County and Zip Code) CUYAHOGA TERRY E JONES 848 E 236TH ST EUCLID, OH 44123 | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) DEACON'S CHRYSLER JEEP 835 SOM CENTER ROAD CLEVELAND, OH 44142 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Mileage | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2003 | JEEP LIBERTY SPOR | 1J4GL48K63W524478 | 15935 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ estimate ☐ actual |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1000.00 |
|---|---|---|---|---|
| 10.00 % | $ 1976.28 | $ 9090.60 | $ 11066.88 | $ 11566.88 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | 230.56 | Monthly beginning 12/27/2013 |

Or As Follows:

Late Charge. If payment is not received in full within ___ 10 ___ days after it is due, you will pay a late charge of $ ___ 20 ___ or __ 5 __ % of each instalment, whichever is ___ greater.

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash price of vehicle, accessories, and taxes ................................. $ 8407.60 (1)
2 Other charges including amounts paid to others on your behalf (Seller may keep part of these amounts):
  A Cost of Optional Credit Insurance paid to insurance company or companies
  B Government taxes not included in Cash Price ..... $ NA
  C Government license and/or registration fees REG/FILING/TEMP TAG FEES ..... $ 23.00
  C Government certificate of title fees ..... $ 15.00
  D Net trade-in payoff to ..... $ NA
  E Optional Gap Insurance ..... $ 895.00
  F Documentary Fee ..... $ 250.00
  G Other charges (Seller must identify who is paid and describe purpose.)
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
    to ___ for ___ $ NA
  Total other charges and amounts paid to others on your behalf ..... $ 1183.00 (2)
3 Total cash price (1 + 2) ..... $ 9590.60 (3)
4 Downpayment
  Gross trade-in $ ___ payoff by seller $ NA
  = net trade-in $ NA ___ = cash $ 500.00
  + other (describe) ___ $ NA
  Total downpayment = (if negative enter "0" and see line 20 above) ..... $ 500.00 (4)
5 Unpaid balance of cash price (3 minus 4) ..... $ 9090.60 (5)
6 Insurance
  A Cost of optional credit insurance paid to the insurance company or companies
    Life ..... $ NA
    Disability ..... $ NA
  B Other optional insurance paid to Insurance Company or Companies ..... $ NA
  Total insurance charges ..... $ NA
7 Amount financed (principal balance) (5 + 6) ..... $ 9090.60
8 Finance charge ..... $ 1976.28
9 Total of payments (line balance) (7 + 8) ..... $ 11066.88

Amount of Security Interest Recording Fee Paid in Cash $ ___

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 2E of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term ___ 48 ___ mos. ___ $ NA ___ Name of Gap Contract ___ Mopa GAP
I want to buy a gap contract.
Buyer X _____

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before ___ , ___ Year ___ SELLER'S INITIALS ___

### Limited Right to Cancel

☐ If checked, a limited right to cancel applies:
You agree that we have ___ 14 ___ days from the date you sign this contract to assign this contract. If we are unable to assign this contract within this time period, you or we may cancel this contract. This limited right to cancel will end at the earlier of the date we assign this contract or the end of the stated time period. Please see the back of this contract for important terms of this limited right to cancel.

_____ _____
Buyer Initials      Co-Buyer Initials

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees. If this contract is subject to the limited right to cancel described above, or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 11/27/13 Co-Buyer Signs X _____ Date _____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs X _____ Address _____

Seller DEACON'S CHRYSLER-JEEP Date 11/27/13
Seller signs X _____ By X _____ Title _____

Seller assigns its interest in this contract to WELLS FARGO DEALER SERVICES (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse ☐ Assigned without recourse
DEACON'S CHRYSLER-JEEP
Seller _____ By _____ Title _____ Seller _____ By _____ Title _____

LAW Form No. 553-OH

ORIGINAL LIENHOLDER

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below.
**Optional Credit Insurance**
☐ Credit Life ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
Credit Life $ NA
Credit Disability $ NA
Insurance Company Name _____
Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date of the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
Type of Insurance NA Term ___
Premium $ NA
Insurance Company Name _____
Home Office Address _____
Type of Insurance ___ Term ___
Premium $ ___
Insurance Company Name _____
Home Office Address _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.
X _____ _____
Buyer Signature      Date
X _____ _____
Co-Buyer Signature   Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.

Returned Check Charge: You agree to pay a charge not to exceed $20 if any check you give us is dishonored.

OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payment or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. **Your right to refinance an irregular payment schedule.** An irregular payment schedule is one with payments not scheduled to be paid in substantially equal consecutive payments. If you have an irregular payment schedule and if you are buying the vehicle primarily for personal, family, or household use, you may refinance this contract without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
   You give us a security interest in:
   • The vehicle and all parts or goods installed in it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may exercise our rights under this contract, or if we choose, buy physical damage insurance covering our interest in the vehicle. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once (accelerate). Default means:
   1. You do not pay any payment on time;
   2. You give false, incomplete, or misleading information on a credit application;
   3. You start a proceeding in bankruptcy or one is started against you or your property; or
   4. You break any agreements in this contract.
   If your only default is that you did not pay a payment on time, we may accelerate this contract only if your default continues for at least 30 days. Otherwise, we may accelerate any time after you default. Our right to accelerate is subject to any right the law gives you to reinstate this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

d. **How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.

e. **We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

f. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deje sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6. Servicing and Collection Contacts.** You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. Applicable Law**

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**Limited Right to Cancel**

a. We agree to deliver the vehicle to you on the date this contract is signed by us and you. You understand that it may take a few days for us to verify your credit and assign this contract. You agree that we have the number of days stated on the front of this contract to assign this contract. If we are unable to assign this contract within this period of time to any one of the financial institutions with whom we regularly do business, you or we may cancel this contract. This limited right to cancel will end at the earlier of the date we assign the contract or the end of the stated time period.

b. We will notify you if we cannot assign this contract and if we elect to cancel this contract. Upon receipt of such notice, you must comply with "Buyer's Obligations" described below and we must give back to you all consideration we have received in accordance with the terms of the Buyers Order.

c. **Buyer's Obligations:** If we do not assign the contract within the time described above, and you or we cancel this contract as provided above, you must return the vehicle to us immediately in the same condition as when sold, reasonable wear and tear excepted. You agree to pay us the cost of repairing any damage occurring to the vehicle while it is in your possession and to hold us harmless from any expenses, costs and fees arising out of any act pertaining to the operation of the vehicle while it is in your possession. If the vehicle is immobilized or impounded while in your possession, you agree to do whatever is necessary to ensure the vehicle's return to us. If you do not return the vehicle immediately, you will be liable for all expenses incurred by us in taking the vehicle from you. If you fail to return the vehicle, we may use any legal means to take it back.

d. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle.

e. Nothing in this section gives you the right to cancel this contract for reasons unrelated to our assignment of this contract.

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-CA 5/12



VEHICLE PROTECTION
A PRODUCT OF CHRYSLER GROUP LLC
MOPAR.

GAP ADDENDUM # 3W624478
(last 8 characters of VIN #)

## GUARANTEED AUTOMOBILE PROTECTION ADDENDUM

☐ New Vehicle ☒ Used Vehicle | ☒ Installment Sales | ☐ Lease | ☐ Balloon

### Covered Vehicle Information

| MSRP (New)/NADA (Used): 7995.00 | Inception Date: 11/27/2013 | Term of Loan/Financing Contract (months): 48 | Term of GAP Addendum (months): 48 |
|---|---|---|---|
| Year: 2003 | Make: JEEP | Model: LIBERTY SPORT/F | Mileage: 79325 |
| VIN #: 1J4GL48K63W624478 | Amt Financed/Capitalized: 9090.60 | APR: 10.00 | For Administrative Purpose: CLASS | Maximum Eligibility Limit: $100,000 |

Maximum Payable Loss: $50,000 (includes Primary Carrier's deductible up to $1,000) | Maximum Term of GAP: 84 months

### Dealer/Creditor Information

| Name: DEACON'S CHRYSLER JEEP | Dealer/Creditor Policy #: | Phone #: 440-442-0424 |
|---|---|---|

Address: 835 SOM CENTER ROAD
City: CLEVELAND | State: OH | Zip: 44143 | Dealer Code:
GAP CHARGE $ 895.00

### Financial Institution/Lender Information

Name: WELLS FARGO DEALER SERVICES | Financial Institution/Lender Policy #: | Phone #:
Address: PO BOX 997517
City: SACRAMENTO | State: CA | Zip: 95899

### Customer/Borrower Information

Name: TERRI E JONES | Phone #: 216-272-0268
Address: 848 E 236TH ST
City: EUCLID | State: OH | Zip: 44123

PROGRAM ADMINISTRATOR: Warrantech Automotive, Inc.
P.O. Box 1009
Bedford, TX 76095
1-866-327-6042

☐ Commercial Use
(Available only for vehicles up to 14,000 pounds GVW)

This guaranteed automobile protection ("GAP") contract ("GAP Addendum") amends the Financing Contract. This GAP Addendum is between the Customer/Borrower and the dealer/lender/lessor ("We", "Us", or "Our") (or if assigned, with the assignee). Although not required to do so, the Customer/Borrower has elected to participate in Our GAP program.

GAP does not take the place of insurance on the vehicle. The Customer/Borrower is responsible for maintaining collision and comprehensive insurance on and for the full value of the Covered Vehicle and any other insurance required by the Financing Contract or applicable law. The Customer/Borrower is responsible for any and all notifications and claims that are required to be filed with their automobile insurance company with respect to the Covered Vehicle. We will not process or handle any insurance claims for the Customer/Borrower.

TERMINATION OF THIS GAP ADDENDUM
This GAP Addendum will terminate on the date that any of the following events occur: 1. the date the Customer/Borrower's Financing Contract is scheduled to terminate; 2. upon payment in full of the Financing Contract; 3. expiration of any redemption period following the repossession or surrender of the Covered Vehicle; 4. in the event of a Constructive Total Loss or theft of the Covered Vehicle; 5. the date the Financing Contract is prepaid or the Financing Contract is refinanced; 6. the Covered Vehicle is sold, assigned, or transferred before the expiration date of the Customer/Borrower's Financing Contract (except in the case of a transfer of equity); or 7. Eighty-four (84) months after the inception date of this GAP Addendum. If the Financing Contract terminates early due to prepayment, refinancing, or other reasons, the Customer/Borrower may be entitled to a refund or a credit of any unearned GAP charge. Notice of early termination of the Financing Contract may be made at the location this GAP Addendum was purchased or contact the Administrator.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE FINANCING CONTRACT IS ORIGINALLY EXECUTED. THROUGH THE CUSTOMER/BORROWER'S SIGNATURE BELOW, ACKNOWLEDGEMENT AND AGREEMENT THAT ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED TO OBTAIN CREDIT; DOES NOT IMPACT THE CUSTOMER/BORROWER'S ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS; AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE COVERED VEHICLE.

Coverage under this GAP Addendum may decrease over the term of the Covered Vehicle's Financing Contract, and may not extend for the full term of the Covered Vehicle's Financing Contract. The Customer/Borrower may wish to consult with an alternative source to determine whether similar coverage may be obtained and at what cost. The Customer/Borrower acknowledges that they have read and understand this GAP Addendum contract and all of its provisions. No other verbal representation(s) has been made to the Customer/Borrower which differ from the written provisions herein. If the Customer/Borrower purchased this GAP Addendum from Us, they also understand that the financial institution/lender may retain all or a portion of the charge paid by them. This GAP Addendum includes a binding arbitration clause. The Customer/Borrower should carefully read this entire GAP Addendum contract for additional information on eligibility, requirements, conditions and exclusions that could prevent them from receiving waiver of debt hereunder.

In the event of a Constructive Total Loss to the Covered Vehicle, We agree to waive Our rights against the Customer/Borrower which differ from the amount due under a Payable Loss. In addition to the provisions of a Payable Loss, the Customer/Borrower will remain responsible for payment of any items stated under the EXCLUSIONS section below.



2

REV0313 150 11CGAP0313

11/27/13

GAP ADDENDUM #_____
(last 8 characters of VIN #)

All **Payable Loss** claims must be reported to **Our GAP Administrator** within ninety (90) days of receiving settlement from the **Primary Carrier**; or if no **Primary Carrier** coverage is in effect on the **Date of Loss**, within ninety (90) days of the accident or theft. **Payable Loss** will not be considered if the claim is not reported within these stated time periods.

**RIGHT TO CANCEL**
The **Customer/Borrower** has the unconditional right to cancel this **GAP Addendum** for a refund/credit of any unearned portion of the purchase price at any time. For cancellations within sixty (60) days of the **GAP Addendum** purchase, a full refund/credit of the **GAP Addendum** purchase price will be given; provided no losses have occurred hereunder. For cancellations after sixty (60) days of the **GAP Addendum** purchase, a pro-rata refund/credit of the **GAP Addendum** purchase price, less a fifty-dollar ($50.00) cancellation fee (unless otherwise required by law), will be given. NOTE: All charges will be refunded to the financial institution/lender, and cancellation requests cannot be processed while a claim is under consideration. To initiate cancellation, the **Customer/Borrower** must submit their request to the **GAP Administrator**, in writing, at the address shown above. If the **Customer/Borrower** does not receive the refund/credit within sixty (60) days of notice of cancellation/termination, they will need to contact the **GAP Administrator**.

**LIMITATIONS**
A.  No **GAP Addendum** will be issued and/or be valid with respect to a **Covered Vehicle** if any of the following values exceeds $100,000:
    1.  MSRP of such **Covered Vehicle**;
    2.  NADA retail value of such **Covered Vehicle**; or
    3.  Amount of financing on such **Covered Vehicle**.

B.  Not withstanding the **Payable Loss** and the **Maximum Payable Loss**, no coverage is provided for that portion of the **Net Payoff** resulting from any amount financed in excess of the **Maximum Vehicle Financing Percentage**. Therefore, if the original amount financed exceeds the **Maximum Vehicle Financing Percentage**, the **Net Payoff** will be recalculated as if the original amount financed were equal to the **Maximum Vehicle Financing Percentage**.

C.  The **Payable Loss** for a **Financing Contract** with terms greater than the **Maximum Term** will be based on a **Net Payoff** calculated using the **Maximum Term**.

D.  No coverage is provided for a **Financing Contract** that does not have uniform monthly repayment terms for the full period of the financing agreement (except for balloon loans with uniform payments) and/or for a **Financing Contract** that is **Self-Financed**.

E.  The charge for this **GAP Addendum** will be deemed fully earned and no refund will apply when the **Covered Vehicle** is declared a **Total Loss** (state exceptions apply).

**LOSS DOCUMENT PROCEDURES**
In the event of a **Constructive Total Loss**, the **Customer/Borrower** must notify and provide all of the following to the **GAP Administrator** (at the address shown above): 1. a complete copy of the **Primary Carrier** settlement, including the valuation report; 2. a copy of the original **Financing Contract** and this **GAP Addendum** contract; 3. a copy of the accident/police report; 4. a copy of the **Covered Vehicle's** automobile insurance policy; 5. a copy of the complete payment history, including payoff from the financial institution as of the **Date of Loss**; 6. a copy of the **Primary Carrier** settlement check; 7. a copy of the **Covered Vehicle's** original bill of sale; and 8. any additional reasonable documentation requested by either the **GAP Administrator** or **Us**. Neither the **GAP Administrator** nor **We** will obtain this information for the **Customer/Borrower**. The **GAP Administrator** must receive this documentation within ninety (90) days of settlement by the **Customer/Borrower's Primary Carrier**, or if no **Primary Carrier** coverage is in effect on the **Date of Loss**, within ninety (90) days of the accident or theft. **Constructive Loss** will not be considered if this documentation is not provided to the **GAP Administrator** within this stated time period.

**ASSIGNMENT**
This **GAP Addendum** will follow the **Financing Contract** with no subrogation rights against the **Customer/Borrower**, if the loan or lease is sold or assigned by the dealer/creditor.

**DEFINITIONS**
**Actual Cash Value (ACV)** – The retail value of the **Covered Vehicle** on the **Date of Loss**, as listed in a national or regional guide (i.e. NADA), or at the **GAP Administrator's** sole discretion, the **GAP Administrator** may use an equivalent national or regional guide for the **Territory** in which the **Covered Vehicle** is principally garaged. For a **Covered Vehicle** that has no retail value available, or is located in a **Territory** where the NADA or an equivalent national or regional guide is not customarily used, **ACV** will be determined using the best information available to the **GAP Administrator**, or which the **GAP Administrator** reasonably believes accurately reflects the retail value of the **Covered Vehicle** and is customarily used as the basis for establishing **ACV** in the retail value in the **Territory** of the **Covered Vehicle's** location.

**Constructive Total Loss** – A direct and accidental **Payable Loss** of or damage to a **Covered Vehicle** for which the following criteria apply: 1. the total cost to repair the **Covered Vehicle** is greater than the **ACV** of the **Covered Vehicle** immediately prior to the **Date of Loss**; or 2. the **Covered Vehicle** is stolen and is not recovered within thirty (30) days from the date a police report was filed and the **Customer/Borrower's Primary Carrier** declares the **Covered Vehicle** a total loss. In such case where there is no primary insurance coverage, the **Covered Vehicle** must be available for the **GAP Administrator's** inspection or appraisal to determine if the **Covered Vehicle** is a **Constructive Total Loss** at the **Administrator's** expense. If the **Covered Vehicle** is not available for inspection or appraisal the claim will not be processed.

**Covered Vehicle** – Any four-wheel private passenger automobile, van, or light truck, as described in the **Financing Contract** that is utilized for personal purposes. This definition is subject to the EXCLUSIONS section below.

**Customer/Borrower** – The person to whom **We** have extended financing for the purpose of purchasing or leasing the **Covered Vehicle**.

**Date of Loss** – The date on which the **Covered Vehicle** is reported stolen or incurs physical damage that is severe enough to constitute a **Constructive Total Loss**.

**Delinquent Payment** – Any payment, as described in the **Financing Contract**, that remains unpaid for a period of more than thirty (30) days after the due date stated in the **Financing Contract**. The **Delinquent Payment** will be determined as of and limited to amounts past due on the **Date of Loss**.

**Financing Contract** – The contract that represents the financing agreement between the **Customer/Borrower** and the financial institution/lender for the purchase or lease of the **Covered Vehicle** and that explains the terms, conditions, inception date, and expiration date of such contract.

**Franchised Dealer** – A dealer that is part of a franchise organization.

**GAP Addendum** – this Guaranteed Automobile Protection contract.

**Maximum Eligibility Limit** – With regard to new vehicles, the MSRP of $100,000, and with regard to used vehicles, the NADA retail value of $100,000 or a maximum financing amount of $100,000.

**Maximum Payable Loss** – The maximum possible amount that **We** will waive under the terms and conditions of this **GAP Addendum**, as shown on the first page of this **GAP Addendum** contract.

**Maximum Term** – the duration in months shown on the first page of this **GAP Addendum** contract, under the box labeled "**Maximum Term of GAP**".

**Maximum Vehicle Financing Percentage** – the portion of the financing on the **Covered Vehicle** (if any) up to 150% of the MSRP (for new vehicles) / NADA (for used vehicles) of the **Covered Vehicle**.

**MSRP** – Manufacturer's Suggested Retail Price.

**NADA** – National Automobile Dealers Association.

**Net Payoff** – The amount of the financial institution/lender's interest as of the **Date of Loss**, as represented by the portion of the **Customer/Borrower's** unpaid balance according to the original payment schedule of the **Financing Contract** that is secured by collateral subject to the Limitations of this **GAP Addendum**. The amount does not include any unearned finance charges; lease or loan charges; late charges; any **Delinquent Payments**; uncollected service charges; refundable prepaid taxes and fees; disposition fees; termination fees; penalty fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by the **Customer/Borrower** on the **Date of Loss**; and amounts that are added to the loan or lease balance after the inception date of the **Financing Contract**. The **Net Payoff** calculation also excludes loans or special finance offers that may waive or delay payment of principal and or finance charges.

**Payable Loss** - The difference between the **Net Payoff** and the **Primary Carrier** settlement on the **Covered Vehicle** on the **Date of Loss**. The **Payable Loss** is subject to the **Maximum Vehicle Financing Percentage** and will not exceed the **Maximum Payable Loss**, as listed on the first page of this **GAP Addendum** contract. Payable loss includes the amount of the **Customer/Borrower's** physical damage deductible on the **Primary Carrier's** policy up to $1,000. In the event that there is no **Primary Carrier** coverage in effect on the **Date of Loss**, or if the **Primary Carrier** is declared insolvent, **We** will only waive the difference between the **Net Payoff** and the **ACV** of the **Covered Vehicle** as of the **Date of Loss**.

**Primary Carrier** – The insurance company that is selected by the **Customer/Borrower** to provide physical damage coverage on the **Covered Vehicle** or that provides liability coverage to any person who has caused the **Covered Vehicle** to incur a **Constructive Total Loss**.

**Self-Financed** – A loan/lease that is funded and retained by the selling dealer or an affiliate.

**Successor in Interest** – The party to whom the creditor has assigned his rights and interest in the **Covered Vehicle's Financing Contract**.

**Territory** – coverage under this **GAP Addendum** applies only to **Payable Losses** sustained while the **Covered Vehicle** is within: 1. the United States of America (U.S.A.), its territories or possessions; 2. Canada; or 3. being transported between any of the previously stated.

# Exhibit 12

Rick 717-235-8313 p.2

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _86-5956_  Contract Number _____

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| HEIDI MARIE HUMPHREYS 3696 STELTZ RD NEW FREEDOM, PA 17349 | RICHARD THOMAS HUMPHREYS JR 3696 STELTZ ROAD NEW FREEDOM, PA 17349-0000 | APPLE NISSAN INC. 1510 Whiteford Road York, PA 17402 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2016 | NISSAN SENTRA | | 3N1AB7AP9FY366334 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $0.00 |
|---|---|---|---|---|
| 6.499 % | $ 4,759.28 | $ 21,394.72 | $ 26,154.00 | $ 26,154.00 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | 348.72 | Monthly beginning 06/03/16 |

Or As Follows:

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, this charge will be 2% of the part of the payment that is late.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information.** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

## ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1 Cash Price
 Vehicle ... $ 17,550.00
 Accessories and Installation ... $ N/A
 Government Taxes ... $ 453.00
 Vehicle Delivery ... $ N/A

**This is a True and Certified Copy**

2 Total Downpayment
 Trade-in 2014 NISSAN VERSA (VIN)3N1CN7AP9EL837005 ... $ 8,000.00
 Gross Trade-in Allowance ... $ 13,829.00
 Less Pay Off Made By Seller ... $ 15,829.00
 Equals Net Trade In ... $ 1,129.43
 + Cash ... $ 2,000.00
 + Other REBATE ... $ 0.00

3 Unpaid Balance of Cash Price (1 minus 2) ... $ 18,003.00
...

4 Amount Financed (3 + 4) ... $ 21,394.72
5 Finance Charge ... $ 4,759.28
6 Total of Payments-Time Balance (5 + 6) ... $ 26,154.00

## If you do not meet your contract obligations, you may lose the vehicle.

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind.

**NOTICE TO BUYER.** DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

Buyer Signs X ___ Date 03/19/16 Co-Buyer Signs X ___ Date 03/19/16

**You agree to the terms of this contract.** You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X ___ Date 03/19/16 Co-Buyer Signs X ___ Date 03/19/16

Seller APPLE NISSAN INC.

Seller assigns its interest in this contract to WELLS FARGO DEALER SERVICES (Assignee) under the terms of Seller's agreement(s) with Assignee.

Seller APPLE NISSAN INC.

ORIGINAL LIENHOLDER

## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

c. **Security interest.**
You give us a security interest in:
• The vehicle and all parts or goods put on it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicle weight of sixteen thousand (16,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
• You do not pay any payment on time;
• You give false or misleading information on a credit application;
• You start or proceeding in bankruptcy or one is started against you or your property; or
• You break any agreements in this contract.
The amount you owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs in a court awards us.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

**We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

f. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once, or repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

g. **Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement:** You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you are only required to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there may never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).

**4. WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. SERVICING AND COLLECTION CONTACTS.** You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. RIGHT TO RECEIVE STATEMENT OF ACCOUNT.** Upon your request, we will provide you a statement of account that shows information about your payment history, including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

**8. ADDITIONAL RIGHTS.** If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

**9. APPLICABLE LAW.** Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Rick                                                         717-235-8313                    p.1

Attn: Miranda Petrillo  **Ⓩ ZURICH**®

## Guaranteed Auto Protection

Debt Cancellation Agreement/Addendum to the Financing Agreement

Agreement # RG63537411

| Buyer | | | Seller | | |
|---|---|---|---|---|---|
| Name | | | Name | | |
| HEIDI MARIE | HUMPHREYS | | APPLE NISSAN INC. | | |
| Address | | | Address | | |
| 3696 STELTZ RD | | | 1510 WHITEFORD RD. | | |
| City | State | Zip Code | City | State | Zip Code |
| NEW FREEDOM | PA | 17349 | YORK | PA | 17402 |

| Assignee Financial Institution |
|---|
| Name |
| Wells Fargo Dealer Servic |

| Financing Agreement | | | |
|---|---|---|---|
| Amount Financed | Term of Financing Agreement | Financing Agreement A.P.R. | Buyer Charge for GAP Coverage |
| $21,394.72 | 75   Months | 6.49   %<br>(Not Applicable for Lease) | $449.00 |

| Vehicle Information | | | | |
|---|---|---|---|---|
| Year | Make | Model | Vehicle Identification Number | Mileage |
| 2015 | NISSAN | SENTRA S/SV/SR/SL | 3N1AB7AP9FY366334 | 7 |

**Acknowledgement**

You understand that:

- This GAP Debt Cancellation Agreement (Agreement) must be purchased on the Financing Agreement origination date and that coverage will not be provided unless you sign this Agreement and agree to pay the buyer charge for GAP Coverage.

- This Agreement is a part of your Financing Agreement. It is not insurance and does not provide general liability coverage, nor does it fulfill the requirements of financial responsibility laws.

- This coverage may not completely cancel your debt. You are liable for any difference between the amount cancelled and the unpaid balance of your Financing Agreement.

- The purchase of this coverage is optional and is not required to obtain credit, or to obtain particular or more favorable credit terms. You may obtain GAP protection from an alternative source.

- You may cancel this Agreement at any time during the original term of the Financing Agreement. A cancellation requested within 30 days of purchase is eligible for a full refund if you have not incurred a total loss. A cancellation request received after 30 days of purchase will be refunded according to the pro-rata method less a $25.00 service fee. (Service fee is not applicable in Massachusetts, South Carolina, Vermont and Wisconsin.)

I want to purchase this GAP Coverage. My signature below means that I understand and agree to the coverage, terms and charge and have verified that the information contained above is accurate.

Buyer's Signature  ☒ _(signature)_                        _(signature)_ Date 03/19/2016

Seller's Representative Signature _(signature)_                              Date 03/19/2016

**Administrator**

Universal Underwriters Service Corporation has been appointed as the administrator of this GAP Program and is authorized to assist you. You may contact the Customer Service Department at: PO Box 7922, Shawnee Mission, KS 66207, or toll free at (888) 835-5063 with questions or to receive help in filing a GAP claim.

V35140JG (9/07)                                                                                    LZX 6850

Rick                                    717-235-8313                    p.2

## Eligibility Limitations

This **Agreement** shall be void and a refund shall be payable if:

1.  The Financing Agreement is ineligible. A Financing Agreement is ineligible if: A) **Your** name does not appear on the Financing Agreement; B) the Financing Agreement has: 1) other than uniform monthly repayment terms for the full period of the **Agreement** with the exception of incidental differences in the first and last payments; 2) a first installment payment due more than 90 days after the Financing Agreement origination date; 3) a term longer than 84 months; or 4) an original Amount Financed greater than $100,000.

2.  The **vehicle** is ineligible. A **vehicle** is ineligible if the **vehicle**: A) is not licensed for highway use; B) is not principally garaged and used in the United States; C) has a branded title, which includes salvage titles; D) has less than four wheels; E) is a conversion van unless converted by the manufacturer or a company approved by the manufacturer; or F) is a motor home.

3.  **You** have concealed or misrepresented any material fact(s), or in the case of fraud.

## Coverage

Coverage applies to the terms of the Financing Agreement on the Financing Agreement origination date. In the event of **total loss** of the **vehicle**, Seller/Assignee Financial Institution agrees to cancel the difference between the **net payoff balance** on the **date of loss** and 1) the **primary carrier** settlement prior to application of a deductible that does not exceed $1,000; or 2) if there is no **primary carrier**, the **actual cash value**. The maximum amount cancelled under this **Agreement** is $50,000.

## Definitions

**Actual Cash Value:** The retail value of the **vehicle** on the **date of loss** as determined by the **primary carrier**. If no **primary carrier** exists, **actual cash value** shall mean the average retail value of the **vehicle** as of the **date of loss** using the region specific edition of the National Automotive Dealer's Association Official Used Car Guide (NADA guide), based upon information available on the options and condition of the **vehicle**.

**Buyer, You, Your, I:** The purchaser of this **Agreement**.

**Date of Loss:** The date the **vehicle** sustains a **total loss**. If such date is indeterminable, the **date of loss** shall be the date established by the **primary carrier** or the date the occurrence was reported to the police, whichever is earlier.

**Net Payoff Balance:** The amount owed by **you** to pay off the outstanding balance under the terms of the Financing Agreement as of the **date of total loss** less the following: 1) finance charges, rental or other charges that accrue after the **date of loss**; 2) delinquent payments or taxes, late charges or finance charges associated with the delinquent payments or taxes; 3) deferred payments; and 4) refundable charges, including, but not limited to service contracts, credit life or accident and health insurance.

**Primary Carrier:** The insurance company that: 1) is used by **you** to provide physical damage insurance on the **vehicle**; or 2) provides liability coverage to any person who has caused the **vehicle** to incur a **total loss**.

**Total Loss:** A direct and accidental loss of or damage to the **vehicle** during the term of this **Agreement** and: 1) the total cost to repair the **vehicle** including related charges is greater than or equal to the **actual cash value**; or 2) the **vehicle** has been reported as stolen to **your** automobile physical damage insurance company and the police and has not been recovered for a minimum of 30 days after the **date of loss**; or 3) the **primary carrier** has settled on a **total loss** basis.

**Vehicle:** The **vehicle** which is identified on the front page of this document and which is not an ineligible vehicle as defined in the Eligibility Limitations section of this **Agreement**.

## Limitations and Exclusions

The maximum amount cancelled under this **Agreement** shall be as stated above under Coverage but in any event: 1) shall never exceed 150% of the Manufacturer's Suggested Retail Price (or 150% of the NADA guide for used vehicles) of **your vehicle**, less the **actual cash value**; or 2) $50,000, whichever is less.

Coverage does not apply and no part of the **net payoff balance** will be cancelled due to loss or damage:

1)  resulting from direct or indirect dishonest, fraudulent, criminal or illegal acts by **you** or any party acting on **your** behalf;

2)  due to legal confiscation of the **vehicle** by public official;

3)  in the event of repossession; or

4)  caused by an act where **you** or any party acting on **your** behalf, intentionally damages the **vehicle** causing a **total loss**.

## Assignment of GAP Coverage

This **Agreement** will follow the Financing Agreement if Seller sells or assigns the Financing Agreement.

Term of GAP Coverage

This **Agreement** begins on the Financing Agreement origination date. This **Agreement** ends at the earliest of the following:

1)   when the Financing Agreement is scheduled to be paid off;

2)   when the Financing Agreement is paid off prior to scheduled expiration;

3)   when this **Agreement** is cancelled by **you**.

Once all or any part of **your** debt has been cancelled under this **Agreement**, this **Agreement** automatically terminates and no refund of any portion of the **buyer** charge paid for this **Agreement** is due. This **Agreement** is not transferable to any other vehicle or financing agreement. This **Agreement** shall not be extended beyond the Financing Agreement original expiration date.

Cancellation of GAP Coverage

This **Agreement** may be cancelled at any time while the Financing Agreement is in effect if **you** have not incurred a claim. To cancel this **Agreement**, please contact the Seller as indicated on the front side of this document. A cancellation requested within 30 days of purchase is eligible for a full refund.

A cancellation request received after 30 days of purchase will be refunded according to the pro-rata method less a $25.00 service fee. (Service fee is not applicable in Massachusetts, South Carolina, Vermont and Wisconsin.) When this **Agreement** ends because **your** Financing Agreement is paid off early, **you** must send proof of payoff from **your** financial institution. The proof can be sent to the Seller where **you** purchased this **Agreement** or to the **administrator**. Include **your Agreement** number on all correspondence. A refund will be paid or credited promptly to whom it is entitled. If the Seller assigns this **Agreement**, the Assignee Financial Institution shall be listed as payee on all refunds and sole payee on all repossession refunds. The minimum refund shall be $1.00.

Claim Requirements

1.   **You** must notify **administrator** of a **total loss** within 90 days of the **date of loss**, or not later than 90 days from the date of receipt of the **primary carrier's** settlement check. **Administrator** will provide **you** with a GAP claim form. **You** must complete this form and return to **administrator** with all requested information as soon as practicable.

2.   **You** must promptly, diligently and in good faith pursue the settlement by the **primary carrier**, and cooperate with **administrator**.

3.   The Seller/Assignee Financial Institution shall be listed as loss payee on all claim checks.

Exhibit 13

RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE
(WITH ARBITRATION PROVISION)

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Ria Martains<br>6300 Chew Ave Apt 206<br>Philadelphia, PA 19149 | | Dan's Auto Sales Inc.<br>8450 Harbison Ave.<br>Philadelphia, PA 19149 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Veh/GVWR or Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| Used | 2013 | NISSAN Sentra SL | | 3N1AB7AP6DL851932 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 2000.00 |
|---|---|---|---|---|
| 15.99 % | $ 8002.40 | $ 13997.92 | $ 22000.32 | $ 24000.32 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 305.56 | Monthly beginning |
| | | 6/26/2018 |

Or As Follows:

Late Charge. If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

| | | |
|---|---|---|
| 1 Cash Price | | |
| Vehicle | $ | 15,000.00 |
| Accessories and Installation | $ | |
| Government Taxes | $ | 1,119.92 |
| Vehicle Delivery | $ | 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| to Prior Credit or Lease Balance | $ | 0.00 |
| to | $ | 0.00 |
| (A) | $ | 15,118.92 (1) |
| 2 Total Downpayment = | N/A  N/A  N/A | |
| Trade-in (Year) (Make) (Model) | | |
| Gross Trade-in Allowance | $ | 0.00 |
| Less Pay Off Made By Seller | $ | 0.00 |
| Equals Net Trade In | $ | 2,000.00 |
| + Cash | $ | 2,000.00 |
| + Other | $ | |
| (If total downpayment is negative, enter "0" and see 4i below) | (2) | $ 2,000.00 (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | $ | 13,118.92 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | |
| A Cost of Optional Credit Insurance Paid to Insurance | | |
| Company or Companies | | |
| Life | Term  N/A | $ 0.00 |
| Disability | Term  N/A | $ 0.00 |
| B Other Optional Insurance Paid to Insurance Company or Companies | | $ 0.00 |
| (Read for) | Term | |
| (Describe) | Term | $ 0.00 |
| C Official Fees Paid to Government Agencies | $ | 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| D Optional Gap Contract | AMERIPLUS GAP | $ 650.00 |
| E Government Taxes Not Included in Cash Price | $ | 0.00 |
| F Government License and/or Registration Fees | $ | 0.00 |
| to | $ | 36.00 |
| G Government Certificate of Title Fees | $ | 75.00 |
| (Incl $ 24.00 _____ security interest recording fee) | | |
| H Other Charges (Seller must identify who is paid and describe purpose) | | |
| to | for Prior Credit or Lease Balance | $ 0.00 |
| to  Dan's Auto Sales Inc. | Doc Fee | $ 105.00 |
| to | $ | 0.00 |
| to  Dan's Auto Sales Inc. | Tag Fee | $ 28.00 |
| to  Dan's Auto Sales Inc. | Messenger Fee | $ 0.00 |
| to  Dan's Auto Sales Inc. | Notary Fee | $ 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| to | $ | 0.00 |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 879.00 (4) |
| 5 Amount Financed (3 + 4) | $ | 13,997.92 (5) |
| 6 Finance Charge | $ | 8,002.40 (6) |
| 7 Total of Payments-Time Balance (5 + 6) | $ | 22,000.32 (7) |

**If you do not meet your contract obligations, you may lose the vehicle.**

OPTION: ☐ You may pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____ , Year _____ . SELLER'S INITIALS _____

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract and no change to this contract will be valid unless it is in writing, signed by you and us. Any change to this contract must be in writing and we both sign it. No oral changes are binding.  Buyer Signs X _____  If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.  You authorize us to obtain information about you or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See back for other important agreements.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

NOTICE TO BUYER: (1) DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.

Buyer Signs X _____  Date _____  Co-Buyer Signs X _____  Date _____

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____  Date _____  Co-Buyer Signs X _____  Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the terms of the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Address _____
Seller Signs  Dan's Auto Sales  By X _____  Title _____

Seller assigns its interest in this contract to  Weltz Fargo Dealer  (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☐ Assigned without recourse   ☐ Assigned with limited recourse

Dan's Auto Sales  By X _____  Title  Dealer

LAW  FORM NO. 553-PA-ARB

ORIGINAL LIENHOLDER

CONTINUATION OF AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

**a.** How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b.** How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c.** How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.** You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a.** If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b.** Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

**c.** Security Interest.
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.** Insurance you must have on the vehicle. You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.** What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments; If you pay late, we may also take the steps described below.

**b.** You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.** You may have to pay collection costs. If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs if we choose to do so.

**d.** We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

How you can get the vehicle back if we take it. If we repossess the vehicle, we may sell it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

**f.** We will sell the vehicle if you do not get it back. If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**h.** Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement: You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).

## 4. WARRANTIES SELLER DISCLAIMS

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

## 5. Used Car Buyers Guide. The Information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. RIGHT TO RECEIVE STATEMENT OF ACCOUNT

Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

## 8. ADDITIONAL RIGHTS

If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

## 9. APPLICABLE LAW

Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

---

### ARBITRATION PROVISION

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Form No. 553-PA-ARB 12/14



# GUARANTEED ASSET PROTECTION (GAP) WAIVER

Entered into by and between the purchaser/borrower (consumer, *You*, or *Your*) and the dealer/creditor or its assignee.   **8APB 388535W**   Addendum G

| CONSUMER (Name) | | | DEALER/CREDITOR (Name) | | ACCOUNT NUMBER |
|---|---|---|---|---|---|
| RIA MARTEINS | | | DANI'S AUTO SALES INC | | D0144-A6711 |

| ADDRESS | | | ADDRESS | | |
|---|---|---|---|---|---|
| 6300 CHEW AVE APT 206 | | | 6450 HARBISON AVE | | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| PHILADELPHIA | PA | 19138 | PHILADELPHIA | PA | 19149 |

| HOME PHONE | BUSINESS PHONE | | PHONE | | CONTACT |
|---|---|---|---|---|---|
| (267) 320-6258 | | | (215) 333-5520 | | |

| YEAR | MAKE | MODEL | VIN | | CURRENT MILEAGE | MSRP/NADA VALUE | LTV Ratio (LTV%) |
|---|---|---|---|---|---|---|---|
| 2013 | Nissan | Sentra | 3N1AB7AP5DL651932 | | 35,566 | | |

| FINANCIAL AGREEMENT | | MOTOR VEHICLE PURCHASE PRICE | LIENHOLDER/ASSIGNEE (Name) |
|---|---|---|---|
| DATE 5/12/2016 | | $ 13,999.00 | WELLS FARGO DEALER SERVICES |

| ☒ LOAN – INSTALLMENT  ☐ LEASE SALES CONTRACT | TERM OF THE FINANCIAL AGREEMENT IN MONTHS 72 | ADDRESS PO BOX 997517 |
|---|---|---|

| ☐ NEW  ☒ USED | AMOUNT FINANCED / LEASE CAP COST $ 13,997.92 | CITY SACRAMENTO | STATE CA | ZIP 95899 |
|---|---|---|---|---|

| WAIVER COST $ 635.00 | ANNUAL PERCENTAGE RATE 15.99 % | PHONE (800) 492-9372 | CONTACT WELLS FARGO |
|---|---|---|---|

## MOTOR VEHICLE TYPE (SELECT ONE)

**MOTOR VEHICLE:**   ☒ AUTO      ☐ VAN      ☐ LIGHT TRUCK / SUV      ☐ ONE TON TRUCK / VAN

## OPTIONS

**COMMERCIAL:**   ☐ COMMERCIAL USE (Not available on FMCC Contracts.)

## MANDATORY DISCLOSURES, ACKNOWLEDGEMENT, AND ACCEPTANCE

PURCHASE OF THIS *WAIVER* IS OPTIONAL. THIS *WAIVER* IS NOT NECESSARY FOR THE EXTENSION OF CREDIT, TERMS OF CREDIT, OR TERMS OF THE *FINANCIAL AGREEMENT* AND THE TERMS OF THE RELATED MOTOR VEHICLE SALE OR LEASE. *YOU* MAY OBTAIN GAP FROM AN ALTERNATIVE SOURCE, FROM *YOUR PRIMARY INSURANCE* CARRIER, OR CONSULT AN INSURANCE AGENT TO SEE IF SIMILAR COVERAGE MAY BE OBTAINED AND AT WHAT COST. THE DEALER/LIENHOLDER MAY RETAIN A PORTION OF THIS *WAIVER* COST (BUT NOT IF CHASE IS THE *LIENHOLDER*).

*YOU* MAY CANCEL THIS *WAIVER* AT ANY TIME PRIOR TO A *TOTAL LOSS* AND RECEIVE A REFUND. ELIGIBILITY REQUIREMENTS, CONDITIONS, AND EXCLUSIONS COULD PREVENT *YOU* FROM RECEIVING BENEFITS. *YOU* SHOULD CAREFULLY READ THIS *WAIVER* FOR A FULL EXPLANATION OF THE PROTECTION PROVIDED.

THIS *WAIVER* IS NOT INSURANCE AND IS NOT A SUBSTITUTE FOR AND DOES NOT PROVIDE BODILY INJURY, PROPERTY DAMAGE, LIABILITY, OR COLLISION INSURANCE AND DOES NOT COMPLY WITH ANY FINANCIAL RESPONSIBILITY LAW OR ANY OTHER LAW MANDATING MOTOR VEHICLE INSURANCE COVERAGE.

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND ALL OF THE PROVISIONS OF THIS *WAIVER* AND THAT THE INFORMATION SHOWN ABOVE IS, TO THE BEST OF MY KNOWLEDGE, TRUE AND IDENTICAL TO THE *FINANCIAL AGREEMENT*. THIS *WAIVER* IS AVAILABLE ONLY AT THE TIME THE *FINANCIAL AGREEMENT* IS ORIGINALLY EXECUTED. NO STATEMENTS HAVE BEEN MADE TO ME THAT DIFFER FROM THIS *WAIVER*. I ACCEPT ALL OF THE DISCLOSURES.

| TOTAL COST | TERM OF THIS WAIVER (IN MONTHS) | I ACCEPT THIS GUARANTEED ASSET PROTECTION WAIVER | |
|---|---|---|---|
| $ 635.00 | 72 | X _____ Consumer Signature(s) | 5/12/16 Date |
| X _____ Dealer/Lienholder Signature | | President _____ Title    5/12/16 Date | 8APB 388535W |

AGREEMENT – This *Waiver* is a part of, and is incorporated into, *Your Financial Agreement*. In the event of a *Total Loss* of the *Motor Vehicle*, the amount of debt waived shall be the *Deficiency* between the *Outstanding Balance* as of the *Date of Loss* and the *Actual Cash Value*, subject to the terms, conditions, limitations and exclusions in this *Waiver*. The *Deficiency* shall not exceed $50,000 in total. *You* will remain responsible for the payment of all *Primary Insurance* deductibles over $1,000 (unless limited by State law) and any *Amounts Not Covered* under this *Waiver*.

Program Administrator – 1785 Hancock Street, Suite 100 • San Diego, CA 92110-2051 • Telephone (619) 228-0100 • Fax (619) 228-0129 • (Indiana and Utah: (800) 822-8587)

## MOTOR VEHICLE TYPE

**AUTO, VAN, LIGHT TRUCK/SUV** – Includes four-wheeled private passenger automobiles, vans, light trucks, or SUVs that are described in the *Financial Agreement* and the first page of this *Waiver*.

**ONE TON TRUCK/VAN** – Includes one ton trucks/vans that are described in the *Financial Agreement* and the first page of this *Waiver*. Coverage is not available on leases and is limited to the following: Chevrolet 3500 Series and Chevrolet Express, Ford E350, F350, F450 and T350, Dodge 3500 Series, Dodge 3500 Ram Vans and Dodge 3500 Sprinter, GMC 3500 Series and GMC Savana.

All *Motor Vehicles* must be utilized for personal purposes and be less than 15,000 (12,500 for FMCC) pounds gross vehicle weight rating (GVWR) and cannot have a *Retail Value* and/or amount financed greater than $100,000 at the date of this *Waiver*.

## OPTIONS

**COMMERCIAL USE** – A *Deficiency* is not covered for a *Total Loss* unless the *Commercial Use* Option is disclosed/purchased. *Commercial Use* means a *Motor Vehicle* utilized for commercial/business purposes including but not limited to: (1) business name is displayed on the *Motor Vehicle*; (2) the *Motor Vehicle* is used in furtherance of business or commercial purpose; (3) the purchase, license, registration or primary insurance is in a business or commercial name or policy. The following Exclusions apply to this Optional coverage: Exclusions paragraph, number (13) and (15). *Commercial Use* is not available for FMCC.

## LIMITATIONS AND TERMS

**Standard loans/*Financial Agreements*** do not have *Retail Value* percent or *LTV Ratio* limitations.

**Leases and *Deferred Payment Financing*** are limited to 125% *LTV Ratio* and a *Deficiency* that exceeds 125% *LTV Ratio* is not covered. Leases and *Deferred Payment Financing* is not available for FMCC.

**TERM** – The term of the *Financial Agreement* must be identical to the term of this *Waiver*. This *Waiver* expires upon the earliest of: (1) the original termination date of the *Financial Agreement*; (2) the early termination (including refinance) of the *Financial Agreement*; (3) 84 months from the *Financial Agreement* date; (4) the term disclosed on the first page of this *Waiver*.

**AMOUNTS NOT COVERED** – The *Deficiency* shall not include any of the following: (1) any proceeds that could be recovered from canceling items such as, but not limited to, a service contract, credit insurance, unpaid insurance premiums and similar items in the *Financial Agreement*; (2) amounts added to the loan/*Financial Agreement* or lease amount financed after the purchase of the *Motor Vehicle* such as, prepaid finance charges, acquisition fees, unearned or future finance charges, rental charges, taxes, *Delinquent Payments*, past due amounts, late charges and extension of maturity; (3) prior unrepaired damage, salvage, rental, deductible recoverable from the at fault insurance carrier, towing, storage, usage, applicable taxes and fees; (4) any unpaid parking tickets, tolls or other violations for which the *Lienholder* is charged; (5) trailers, specialized optional equipment, accessories or body components; (6) accident tax, crash tax or any other fine or fee imposed by any governmental or quasi-governmental authority for responding to an accident.

**EXCESS** – This *Waiver* is excess over any valid and collectible insurance. This means all insurance, which covers the *Motor Vehicle* or *You*. Only when all such insurance is exhausted shall this *Waiver* apply. To the extent a *Deficiency* exists, *You* agree to reimburse any amount provided by this *Waiver* to the Program Administrator if *You* recover *Your* damages from a third party.

**ASSIGNMENT** – The *Lienholder* shall have the right to assign this *Waiver* at any time. Assignment of the *Financial Agreement* by the *Lienholder* shall not affect the terms and conditions of this *Waiver*. In the event of a substitution of collateral and the *Financial Agreement* remains in effect, this *Waiver* coverage will also transfer. This *Waiver* remains a part of the *Financial Agreement* upon the assignment, sale or transfer of the *Financial Agreement*.

**CANCELLATION** – **You** may cancel this **Waiver** any time by **mailing or delivering a written cancellation request to the Dealer/Creditor or Program Administrator within 30 days of the requested cancellation date. If this Waiver is cancelled within 30 days of purchase, and no Total Loss has occurred, a full refund will be issued.** If this *Waiver* is cancelled after 30 days from purchase, or if a *Total Loss* has occurred, the refund shall be calculated using the Rule of 78 refund method [Pro Rata for Ally Financial, Chase and FMCC or as may be required by state law] less a $50 cancellation fee. The *Lienholder* will be the payee on any refund. This *Waiver* will not be reinstated after a cancellation is requested. No refunds will be issued if a request for benefits has been filed. No cancellation fee for FMCC or in CO, IN, KS, LA, NH, NM, OR, SC, VT, WI.

## REQUESTING BENEFITS

*TOTAL LOSS* – In the event of a *Total Loss*, <u>*You* must keep *Your* account current until the *Deficiency* is settled</u>. Request for a *Deficiency* determination must be submitted within 90 days from *Primary Insurance* settlement check date or if there is no *Primary Insurance* 90 days from the *Date of Loss*. Any request for a *Deficiency* submitted after the 90 day period is void.

*You* shall provide the following documentation to the Program Administrator. All copies must be complete and legible: (1) a copy of the *Primary Insurance* settlement check(s) and settlement valuation and worksheet; (2) a copy of the police report made for the incident (FMCC – if *Motor Vehicle* was stolen); (3) a copy of the original *Financial Agreement* and all addenda, including the *Motor Vehicle* valuation documentation identifying model type and options at the time of purchase, bill of sale, and proof of proceeds recovered from cancellation of refundable items, such as a service contract, credit insurance, or other similar items; (4) a complete payment history; (5) a copy of this *Waiver*.

## EXCLUSIONS

No waiver of debt will occur for a *Total Loss*: (1) if any material facts are withheld, concealed or misrepresented; (2) in the event of fraud; (3) prior to the date of this *Waiver*; (4) that results from forgery, use of an alias or any criminal or illegal act committed by *You*, at *Your* direction or by any person in lawful possession of the

*Motor Vehicle;* (5) on any *Motor Vehicle* that has been salvaged or branded in whole or in part, used for emergency services, rare, exotic, unusual, limited-production, one-of-a kind, kit or customized; (6) due to confiscation, forfeiture, seizure, destruction or risks of contraband by any governmental or public authority; (7) if the *Actual Cash Value* exceeds the *Outstanding Balance;* (8) resulting from civil commotion, disturbance, riot or action taken by any governmental authority in dealing with such; (9) resulting from any race, speed or other contest; (10) if the *Motor Vehicle* is garaged or used outside the *Territory;* (11) resulting from nuclear reaction or radiation or radioactive contamination; or terrorism, hostile or warlike action or any weapon of war (except FMCC); (12) if the *Motor Vehicle* is repossessed or if *You* transfer the *Motor Vehicle* to a third party; (13) if *Commercial Use* exists and the *Commercial Use* Option was not disclosed as of the date of this *Waiver;* (14) if the *Motor Vehicle* does not meet the *Motor Vehicle* Type requirements; (15) if the *Motor Vehicle* is used for livery or a transportation network company, used for hire, rental or as a taxi.

## DEFINITIONS

*Assignee/Lienholder* means the creditor of the *Financial Agreement.*

*Actual Cash Value* means the gross settlement calculated by *Your Primary Insurance* company less any deductible up to $1,000. If there is no *Primary Insurance* on the *Date of Loss,* then *Actual Cash Value* shall mean the *Retail Value.* (AK – no deductible coverage; IL – no deductible coverage for leases.)

*Date of Loss* means the date on which the actual physical loss or damage occurred on the *Motor Vehicle.*

*Deferred Payment Financing* means the first scheduled payment is due 90 days or more after the date of the *Financial Agreement.*

*Deficiency* means the amount of debt waived, which shall be the difference between the *Outstanding Balance* as of the *Date of Loss* and the *Actual Cash Value* subject to the limitations, exclusions, terms and conditions in this *Waiver.*

*Delinquent Payment* means any amount owed under the original terms of the *Financial Agreement* that as of the *Date of Loss* remained unpaid for more than 30 days after the original due date.

*Financial Agreement* means the document(s) which this *Waiver* amends and becomes a part of, evidencing *Your* purchase, lease, or refinancing of the *Motor Vehicle.*

*LTV Ratio* means the loan/*Financial Agreement* or lease amount financed as a percentage of the *Retail Value* of the *Motor Vehicle.*

*Motor Vehicle* means the *Motor Vehicle* listed on the first page of this *Waiver* and meets the *Motor Vehicle* Type requirements and used within the *Territory.*

*Outstanding Balance* means the amount in U.S. currency as of the *Date of Loss* required to pay the *Financial Agreement* balance per the terms of the *Financial Agreement* as it existed on the *Financial Agreement* date listed on the first page of this *Waiver.* If the first payment is not scheduled and made within the first 45 days, or *Deferred Payment Financing* exists, then the *Outstanding Balance* means the calculated balance as of the *Date of Loss* based upon the presumption of equal monthly payments beginning 45 days

after the date of the *Financial Agreement* amortized over no more than 84 months.

*Primary Insurance* means comprehensive and collision insurance coverage as required by the *Financial Agreement.*

*Retail Value* means the Manufacturer's Suggested Retail Price (MSRP) per National Automobile Dealer Association (NADA) regional guide, for new *Motor Vehicles* or NADA retail value for used *Motor Vehicles,* or equivalent market valuation method, including available standard or optional equipment, factory approved conversion packages and dealer installed options.

*Territory* means the United States, its territories or possessions; and Canada.

*Total Loss* means the *Motor Vehicle* is deemed a *Total Loss* by the *Primary Insurance* company due to an insured peril where the damages to the *Motor Vehicle* are greater than or equal to the *Retail Value* of the *Motor Vehicle* immediately prior to the *Date of Loss* unless limited by State law. If there is no *Primary Insurance,* then *Total Loss* means the damages to the *Motor Vehicle* are greater than or equal to the *Retail Value* of the *Motor Vehicle* immediately prior to the *Date of Loss* unless limited by State law or the *Motor Vehicle* is stolen and not recovered within 30 days after the *Date of Loss.*

*Waiver* means this Guaranteed Asset Protection *Waiver,* which amends *Your Financial Agreement.*

*You, Your* means the consumer(s) listed on the first page of this *Waiver.*

## State Provisions

(1)  The Cancellation provision is amended in the following states:

   (a)  Georgia, Michigan, Nebraska, Tennessee, Utah – *You* must provide written notice of cancellation to the Dealer, Lienholder or Program Administrator within 90 days after *Your* decision to cancel this *Waiver* or the occurrence of the event terminating the *Financial Agreement.*

   (b)  Michigan, Minnesota, Nebraska, Nevada, New Hampshire, North Carolina, Oregon, Tennessee, Utah – If cancellation occurs because of a default under a *Financial Agreement,* repossession or any other termination of the *Financial Agreement,* any refund due may be paid directly to the Lienholder, who may apply the refund as a reduction of the amount owed under the *Financial Agreement,* unless *You* can show that the *Financial Agreement* has been paid in full.

   (c)  Colorado – After 30 days from the date of purchase, the refund is Pro Rata. The following does not apply: "The Program Administrator must receive *Your* written cancellation request within 30 days of the requested cancellation date, otherwise the date the Program Administrator receives the request will be the cancellation date."

   (d)  Indiana – If this *Waiver* is cancelled after 30 days from purchase, the refund shall be calculated using the Pro Rata refund method. Upon prepayment in full of the *Financial Agreement, You* are entitled to a refund.

   (e)  Missouri – If this *Waiver* is cancelled within 15 days of purchase, then a full refund will be issued. If this *Waiver* is

cancelled after 15 days from the date of purchase, then the refund will use the Pro Rata method. A refund is not required if the amount of the refund is less than $1.

(f) Nebraska – If this *Waiver* is cancelled within 30 days of purchase and benefits were provided, then a full refund will be issued, less any benefits provided. If this *Waiver* is cancelled after 30 days from the date of purchase, then the refund will use the actuarial method.

(g) North Carolina, South Carolina – If *You* cancel this GAP *Waiver* or there is an early termination of the *Financial Agreement, You* may be entitled to a refund of any unearned portion of the GAP *Waiver* cost.

(h) Washington – Any refund may be applied by the *Lienholder* as a reduction of the overall amount owed under the *Financial Agreement,* rather than to the purchase price of this *Waiver.*

(i) Wisconsin – Upon any termination, the Creditor or *Lienholder* is responsible to initiate a refund.

(j) Minnesota, Montana, Nevada, North Carolina, South Carolina – If *You* are canceling the GAP *Waiver* due to early termination of the *Financial Agreement, You* shall provide a written request for cancellation to the Dealer, *Lienholder* or Program Administrator within 90 days of the occurrence of the event terminating the *Financial Agreement.*

(k) South Carolina – A cancellation refund may be applied by the *Lienholder* as a reduction of the amount owed under the *Financial Agreement,* unless *You* can show that the *Financial Agreement* has been paid in full. If the *Waiver* Cost was not financed, the dealer/creditor shall either provide a refund directly to *You* or provide *You* the option to either receive a refund of the unearned purchase price directly to You or to have the refund applied to reduce the amount owed under *Your Financial Agreement.*

(l) New Hampshire – *You* must provide written notice of cancellation to the Dealer, *Lienholder* or Program Administrator within 90 days after the occurrence of the event terminating the *Financial Agreement.*

(m) Oregon – *You* must provide written notice of cancellation to the Dealer, *Lienholder* or Program Administrator within 90 days after *Your* decision to cancel this *Waiver.* If this *Waiver* is canceled due to termination of the *Financial Agreement,* any refund shall be provided without *You* having to apply or submit a claim for the refund; the Creditor or *Lienholder* is responsible to initiate a refund. All refunds shall be calculated using the pro rata method.

(2) This *Waiver* is amended specific to the following:

Colorado – *Deficiency* means the amount of debt waived, which is the difference between the balance owed by *You* at the time of the *Total Loss,* except amounts previously owed for unpaid installments, legally permitted delinquency fees, insufficient funds check fees for the return or dishonor of checks or other instruments tendered as payment, premiums for creditor-imposed property damage insurance, and deferral fees and the *Actual Cash Value,* subject to the benefits, terms, conditions and exclusions in this *Waiver.* Request for a *Deficiency* must be submitted 90 days from *Primary Insurance* settlement check(s) or from the date the *Lienholder* notifies *You* of any *Deficiency* balance owed, whichever is later. **WAIVER**

**BENEFITS MAY DECREASE OVER THE TERM OF THE CONSUMER CREDIT SALE, CONSUMER LEASE OR CONSUMER LOAN/***Financial Agreement.*** The purchase of GAP is not required in order to obtain the credit or any particular or favorable credit terms.

Georgia, North Carolina, Tennessee, Washington – Neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease may be conditioned upon the purchase of the GAP waiver.

Indiana – The sale of this *Waiver* is not permitted if the amount financed, less the cost of this *Waiver,* less the cost of any credit insurance, and less the cost of any warranties, is less than 80% of the MSRP (new) or NADA (used). If the amount financed exceeds the MSRP or NADA *Retail Value* limits stated in this *Waiver,* this *Waiver* may not cover the entire amount owing at the time of loss. *You* may be responsible for the amount not covered by this *Waiver.* There are requirements, conditions, and exclusions that could prevent *You* from receiving benefits. *You* should carefully read this *Waiver* for a full explanation of the terms.

Kansas – GAP coverage is subject to the conditions and exclusions identified in this GAP *Waiver.* **The GAP coverage may not cancel or waive the entire amount owing at time of loss.** *You* may contact the Office of the State Bank Commissioner, 700 S.W. Jackson, #300, Topeka, KS 66603, (785) 296-2266 or toll free 1-877-387-8523 with questions or complaints. Assignment of the *Financial Agreement* by the *Lienholder* shall not affect the terms and conditions of this *Waiver.* All subsequent Assignees agree, by acceptance of the Addendum to the *Financial Agreement* by assignment, to waive *Your* liability covered by this *Waiver.*

Louisiana – The extender of credit hereby agrees by acceptance of this *Waiver* as an amendment to the *Financial Agreement* upon assignment, to waive *Your* liability for the difference between the *Outstanding Balance* (excluding past due amounts, payment extensions, insurance or other charges, as described in this *Waiver)* under *Your Financial Agreement* and the *Actual Cash Value.*

Maryland – The following provisions are substituted for provisions addressing the same subject in this *Waiver.* If there is inconsistency between the following provisions and any provision in this *Waiver,* the following provisions control. In the event of theft or total destruction of the *Motor Vehicle,* the credit grantor agrees to cancel the remaining loan/*Financial Agreement* balance, minus the proceeds of any insurance maintained on the *Motor Vehicle,* or if *You* do not have insurance, minus the *Retail Value* of the *Motor Vehicle* as of the *Date of Loss.* The remaining loan/*Financial Agreement* balance does not include: any *Delinquent* or *Deferred Payments;* past due charges; late payment charges; unearned interest; unearned rental payments; or the portion of any financed taxes or charges, including charges for credit insurance and service contracts, actually refunded to *You* or credited as a reduction to the loan/*Financial Agreement* balance. There is no maximum on the *Deficiency.*

Michigan – A creditor may not condition an extension of credit, the terms of that credit, or the terms of the related *Financial Agreement* on the purchase of a GAP *Waiver.*

Minnesota – A dealer/creditor is prohibited from selling a GAP waiver in conjunction with the sale or lease of any used motor vehicle that is an automobile or truck that is valued at less than $5,000. The extension of credit, the terms of the credit or the terms and conditions of the related motor vehicle sale or lease are not conditions upon the purchase of the GAP waiver. **THE GAP *WAIVER* IS OPTIONAL. *YOU* DO NOT HAVE TO PURCHASE THIS PRODUCT IN ORDER TO BUY OR LEASE THIS *MOTOR VEHICLE. YOU* ALSO HAVE A LIMITED RIGHT TO CANCEL.**

Nebraska – This *Waiver* is not regulated by the Nebraska Department of Insurance. If there is no *Primary Insurance*, then *Total Loss* means a qualified inspector declares the *Motor Vehicle* a *Total Loss* pursuant to insurance industry standards in a prepared report or a law enforcement report declares the *Motor Vehicle* an unrecovered theft. Neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease shall be conditioned upon the purchase of the GAP *Waiver*.

NEVADA NOTICE

A GAP *Waiver* is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185. Failure to make a timely payment under the terms of the *Financial Agreement* may void the GAP *Waiver*.

New Hampshire – If *You* have questions or complaints, contact the Program Administrator by phone, fax or mail. In the event *You* do not receive satisfaction under this *Waiver*, *You* may contact the New Hampshire Insurance Department at 21 South Fruit Street, Suite 14, Concord, NH 03301 or 603-271-2261. This Waiver is guaranteed by Wesco Insurance Company, 59 Maiden Lane, 43rd Floor, New York, NY 10038 866-505-4048. The Dealer/Creditor may assign the GAP *Waiver* with the *Financial Agreement* to a sales finance company or other assignee.

Oregon – If *Primary Insurance* or third party liability insurance covers the amount of a *Total Loss*, the *Deficiency* is the difference between the *Primary Insurer* or third party liability insurer's Actual Cash Value as of the *Date of Loss* and the amount *You* owe under the *Financial Agreement*, subject to the benefits, terms, conditions and exclusions in this *Waiver*. If Primary Insurance or third party liability insurance does not cover a *Total Loss* or has stated values or limits that are less than the Actual Cash Value or if the *Primary Insurer* or third party liability insurer is insolvent, then the *Deficiency* is the difference between the *Retail Value* immediately prior to the *Total Loss*, and the amount *You* owe under the *Financial Agreement*, subject to the benefits, terms, conditions and exclusions in this *Waiver*. The *Waiver* Cost may not exceed five percent of the amount financed listed in the *Financial Agreement*.

South Carolina – The sale of this *Waiver* is not permitted if the amount financed, less the cost of this *Waiver*, less the cost of any credit insurance, and less the cost of any warranties, is less than 80% of the MSRP (new) or NADA (used). The sale of

this *Waiver* is not permitted if *You*, the credit terms, including but not limited to, cash price, *Motor Vehicle* value or amount financed or the *Motor Vehicle* used as collateral for the credit transaction do not qualify for or conflict with any restrictions or limitations in the *Waiver* conditions. THIS GAP *WAIVER* IS NOT REQUIRED TO OBTAIN CREDIT, NOR TO OBTAIN CERTAIN TERMS OF CREDIT OR TO PURCHASE THE RELATED *MOTOR VEHICLE*. THIS GAP *WAIVER* WILL NOT BE PROVIDED UNLESS *YOU* SIGN AND AGREE TO PAY THE ADDITIONAL COST. This *Waiver* is not insurance and does not take the place of collision, comprehensive, or any other form of insurance on the *Motor Vehicle*.

Tennessee – The cost of this *Waiver* is not regulated and *You* have the responsibility to determine whether the cost is reasonable in relation to the protection afforded by this *Waiver*.

Utah – A creditor may not condition an extension of credit or the terms of the related vehicle sale or lease on the purchase of this *Waiver*. This *Waiver* is subject to limited regulation by the Utah Insurance Commissioner. A complaint regarding this *Waiver* may be submitted to the Utah Insurance Commissioner. If a creditor assigns, sells or transfers a *Financial Agreement*, a guaranteed asset protection waiver remains a part of the *Financial Agreement*.

Vermont – The Dealer/Creditor must assign, sell or transfer, within 15 business days, the *Finance Agreement* to a *Lienholder/Assignee* as defined in subdivision 1110(32) of Title 8 or to an entity licensed under subdivision 2201(a)(1) or (3) of Title 8 or this *Waiver* is void and *You* will receive a full refund of the charges of this *Waiver*. Neither the extension of credit, the terms of the credit nor the terms of the related sale in the case of a motor vehicle or other goods or services are to be conditioned upon the purchase of a debt protection agreement.

Washington – This *Waiver* is not credit insurance, nor does it eliminate *Your* obligation to insure the *Motor Vehicle* as provided. This *Waiver* does not eliminate *Your* rights and obligations under the vendor's single interest and collateral protection coverage laws. If this *Waiver* is cancelled and the *Lienholder* sells, assigns, or transfers *Your* initial *Financial Agreement*, contact the current *Lienholder* to request a refund.

West Virginia – *Deficiency* means the difference between the balance owed by *You* at the time of the *Total Loss* and the *Actual Cash Value*, but does not include any amount owed by failure to maintain required insurance, late fees accrued and unpaid charges, or any refunds for other goods or services rendered.

Wisconsin – No refund will be provided upon cancellation if a GAP benefit has been paid or will be paid. A cancellation refund within the first 30 days will also include the amount of the applicable finance charge. This *Waiver* expires upon the earliest of: (1) cancellation by *You*; (2) payment in full of the *Financial Agreement*; (3) expiration of any redemption period after a repossession or surrender of the *Motor Vehicle*. This *Waiver* may also be terminated by the *Lienholder* prior to expiration upon occurrence of other events.

If any provision of this *Waiver* conflicts with the laws of the State where it is issued, then the provision(s) is severable and hereby amended to conform to state law. The remaining provisions of this *Waiver* remain in full force.

*You* may direct all inquiries regarding this *Waiver* to:
**Program Administrator**
**1785 Hancock Street, Suite 100 • San Diego, CA 92110-2051 • Telephone (619) 228-0100 • Fax (619) 228-0129**

## BENEFIT INFORMATION

### — BENEFIT SUMMARY —

This Waiver waives debt if your Motor Vehicle is damaged beyond repair or is stolen and can not be recovered, and the proceeds of your insurance or amounts you received from third persons is not sufficient to satisfy what you owe under your Motor Vehicle financing agreement.

### — IMPORTANT DISCLOSURES —

#### *WAIVER IS OPTIONAL*

YOU ARE NOT REQUIRED TO PURCHASE THIS WAIVER AS A CONDITION OF OBTAINING CREDIT. Whether or not you purchase this Waiver will not affect your application for credit or the terms of any existing credit agreement you have. If you wish to purchase this Waiver on a purely voluntary basis, you may do so by reviewing this Waiver and then signing the Mandatory Disclosures, Acknowledgement, and Acceptance section of this Waiver.

#### *REFUND OF FEE PAID IN LUMP SUM*

You may cancel this Waiver at any time and receive a refund.

#### *REQUIREMENTS, CONDITIONS AND EXCLUSIONS*

There are requirements, conditions, and exclusions that could prevent you from receiving benefits. You should carefully read this Waiver for a full explanation of the terms. INDIANA CONSUMERS: Contact Program Administrator at 800-822-8587. For additional information or complaints, contact: Indiana Department of Financial Institutions at 800-382-4880 or by mail to 30 South Meridian Street, Suite 300, Indianapolis, IN 46204-2759.

---

## GUARANTEED ASSET PROTECTION WAIVER

---

### IMPORTANT

#### KEEP THIS WITH YOUR

#### FINANCIAL AGREEMENT

---

### DIRECT ALL INQUIRIES TO:



**Program Administrator**
**1785 Hancock Street, Suite 100**
**San Diego, CA 92110-2051**
**Telephone: (619) 228-0100**
**Fax: (619) 228-0129**

---

### REQUESTING BENEFITS FOR A TOTAL LOSS

*You* shall provide the following documentation and any other reasonable documentation requested, to the Program Administrator. All copies must be complete and legible.

(1) A copy of the *Primary Insurance* settlement check(s) and settlement valuation and worksheet.

(2) A copy of the police report made for the incident.

(3) A copy of the original *Financial Agreement* and all addenda, including the *Motor Vehicle* valuation documentation identifying model type and options at the time of purchase,

bill of sale, and proof of proceeds recovered from cancellation of refundable items, such as a service contract, credit insurance, or other similar items.

(4) A complete payment history.

(5) A copy of this *Waiver*.

Exhibit 14

553-TX-eps-14 2/12

## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
### SIMPLE FINANCE CHARGE

3693

Dealer Number _____

Contract Number  48903

BUYER  CAROLYN ANN SWEENEY
ADDRESS  14110 HUNTERS PASS
CITY  AUSTIN       STATE  TX    ZIP  78734
PHONE  512/762-5896

SELLER/CREDITOR  FIRST TEXAS HONDA
ADDRESS  3400 STECK AVE
CITY  AUSTIN       STATE  TX    ZIP  78757
PHONE  512/458-2511

CO-BUYER  BRIAN TIMOTHY SWEENEY
ADDRESS  14110 HUNTER PASS
CITY  AUSTIN       STATE  TX    ZIP  78734
PHONE  512/762-5896

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.
**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown on page 2 of this contract. By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a buyer, you agree to keep all the promises in this agreement even if the others do not.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

### VEHICLE IDENTIFICATION

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | |
|------|------|-------|------------------------------|---|
| 2016 | HONDA | CIVIC | 19XFC2F59GE025139 | ☒ NEW ☐ DEMONSTRATOR ☐ FACTORY OFFICIAL/EXECUTIVE ☐ USED |

**USE FOR WHICH PURCHASED**
PERSONAL, FAMILY, OR HOUSEHOLD, UNLESS OTHERWISE INDICATED BELOW
If either of the boxes below is checked, Chapter 353 of the Texas Finance Code applies to this Contract.
☐ BUSINESS OR COMMERCIAL
☐ AGRICULTURAL

Trade-in: Make _____     Model _____
Year _____ VIN _____     License No. _____

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3000.00 |
|---|---|---|---|---|
| 4.99 % | $ 3367.89 | $ 20842.11 | $ 24210.00 | $ 27210.00 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 72 | $ 336.25 | Monthly beginning | 06/03/2016 |
| N/A | N/A | Or as follows  N/A | |
| N/A | N/A | N/A | |

**Late Charge:** If we do not receive your entire payment within 15 days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of 5% of the scheduled payment.
**Prepayment.** If you pay all that you owe early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

### CONSUMER CREDIT COMMISSIONER NOTICE

To contact  WELLS FARGO DEALER SERVICES _____ about this account, call  800/289 8004 _____. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, Texas 78705-4207; (800) 538-1579; www.occc.state.tx.us, and can be contacted relative to any inquiries or complaints.

| | | |
|---|---|---|
| ...if negative, enter "0" and see Line 4A below) | $ | 20715.56 (1) |
| Cash | | |
| – Net Trade In | $ | N/A |
| + Cash | $ | N/A |
| + Mrs. Rebate | $ | N/A |
| + Other (describe) N/A | $ | 3000.00 |
| Total Downpayment | $ | N/A |

3 Unpaid Balance of Cash Price (1 minus 2)  $ N/A

4 Other Charges Including Amounts Paid to Others on Your Behalf  $ 3000.00 (2)

(Seller may keep part of these amounts.):  $ 17715.56 (3)

A Net trade-in payoff to **N/A**

B Cost of Optional Credit Insurance Paid to Insurance Company or Companies.  $ N/A

Life
Disability  $ N/A

C Other Optional Insurance Paid to Insurance Company or Companies  $ N/A

D Official Fees Paid to Government Agencies  $ N/A
  1) to N/A    for N/A
  2) to N/A    for N/A  $ N/A
  3) to N/A    for N/A  $ N/A

E Debt Cancellation Agreement Fee Paid to the Seller  $ N/A

F Dealer's Inventory Tax (if Not Included in Cash Price)  $ 595.00

G Sales Tax (if Not Included in Cash Price)  $ 37.30

H Other Taxes (if Not Included in Cash Price)  $ N/A

I Government License and/or Registration Fees  $ N/A
  LICENSE FEE    ROAD & BRIDGE FEE  $ 69.25

J Government Certificate of Title Fees  $ 49.75

K Government Vehicle Inspection Fees  $ 64.25

L Deputy Service Fee Paid to Dealer  $ N/A

M Documentary Fee (Cargo Documental)  $ 125.00

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.

UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL. PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN EL RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.

N Other Charges (Seller must identify who is paid and describe purpose.)

| to State | for Plate Transfer Fee | $ N/A |
|---|---|---|
| to MASTERTECH VPP | for SERVICE CONTRACT | $ 2186.00 |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf  $ 3126.55 (4)

5 Amount Financed (3 + 4)  $ 20842.11 (5)

---

...tees against damage or loss... owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want. The insurer must be authorized to do business in Texas. You may submit proof of insurance you already have. You agree to give us proof of property insurance. You must name us as the person to be paid under the policy in the event of damage or loss.

If any insurance is checked below, policies or certificates from the insurance companies will describe the terms, conditions, and deductibles.

## Optional Credit
### Life and Credit Disability Insurance

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Your decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

| | | | |
|---|---|---|---|
| ☐ Credit Life, one buyer | $ N/A | Term | N/A |
| ☐ Credit Life, both buyers | $ N/A | Term | N/A |
| ☐ Credit Disability, one buyer | $ N/A | Term | N/A |
| ☐ Credit Disability, both buyers | $ N/A | Term | N/A |

N/A
(Insurance Company)

N/A
(Home Office Address)

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the term of the insurance is 121 months or longer, the premium is not fixed or approved by the Texas Insurance Commissioner.

You want the insurance indicated above.

X  N/A
Buyer's signature          Date

X  N/A
Co-Buyer's signature          Date

### Optional Insurance Coverages and Debt Cancellation Agreement

The granting of credit will not be dependent on the purchase of either the insurance coverages or the debt cancellation agreement described below. It will not be provided unless you sign and agree to pay the extra cost. The credit approval process will not be affected by whether or not you buy these insurance coverages or the debt cancellation agreement.

| Coverage | Term in Months | | Premium or Fee |
|---|---|---|---|
| GAP | N/A | ☐ $ | N/A |
| N/A | N/A | ☐ $ | N/A |
| N/A | N/A | ☐ $ | N/A |
| Debt Cancellation Agreement** | 72 | X $ | 880.00 |

**AMERICAN FINANCIAL & AUTOMOTIVE SER.**
(Insurance Company)

PO BOX 7719 THE WOODLAND TX 77387
(Home Office Address)

"If the vehicle is determined to be a total loss, GAP insurance will pay us the difference between the proceeds of your basic collision policy and the amount you owe on the vehicle, minus your deductible. You can cancel that insurance without charge for 10 days from the date of this contract.

**WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. You can cancel the debt cancellation agreement without charge for a period of 30 days from the date of this contract, or for the period stated in the debt cancellation agreement, whichever period ends later.

If a box next to a premium for an insurance coverage indicated above is marked, that premium is not fixed or approved by the Texas Insurance Commissioner. A debt cancellation agreement is not insurance and is regulated by the Office of the Consumer Credit Commissioner.

For the premiums or fees indicated above, you want the related optional coverages and debt cancellation agreement.

X _____  04/19/2018
Buyer's signature          Date

X _____  04/19/2018
Co-Buyer's signature          Date

**LIABILITY INSURANCE: THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS**

[top left — partially obscured]
...early earnings method as defined by the Texas Finance Code.
...daily earnings method, the Finance Charge will be figured by ...applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

b. **HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
1. earned but unpaid finance charge; and
2. to anything else you owe under this agreement.

c. **HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge. If that happens, your last payment will be more than your final scheduled payment, or at our option, you will have to pay more payments of the same amount as your scheduled payment with a smaller last payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **INTEREST AFTER MATURITY.** If you do not pay all you owe when the final payment becomes due, or you do not pay all you owe if we demand payment in full under this contract, you will pay an interest charge on the amount that is still unpaid. That interest charge will be the higher rate of 18% per year or the maximum rate allowed by law, if that rate is higher. The interest charge for this amount will begin the day after the final payment becomes due.

e. **TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

f. **SPECIAL PROVISIONS FOR BALLOON PAYMENT CONTRACTS.** A balloon payment is a scheduled payment more than twice the amount of the average of your scheduled payments, other than the downpayment, that are due before the balloon payment. You can pay all you owe when the balloon payment is due and keep your vehicle. If you buy the vehicle primarily for personal, family, or household use, you can enter into a new written agreement to refinance the balloon payment when due without a refinancing fee. If you refinance the balloon payment, your periodic payments will not be larger or more often than the payments in this contract. The annual percentage rate in the new agreement will not be more than the Annual Percentage Rate in this contract. This provision does not apply if your Payment Schedule has been adjusted to your seasonal or irregular income.

## 2. YOUR OTHER PROMISES TO US

a. **USE AND TRANSFER OF THE VEHICLE.** You will not sell or transfer the vehicle without our written permission. If you do sell or transfer the vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). You will promptly tell us in writing if you change your address or the address where you keep the vehicle. We agree you may remove the vehicle from the U.S. for 72 hours or less, if the vehicle will continue to be covered by the insurance this contract requires. Otherwise, you agree not to remove the vehicle from the U.S. without our written permission.

b. **CARE OF THE VEHICLE.** You agree to keep the vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the vehicle. You will keep the vehicle in good repair. You will not allow the vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party any cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If we do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

c. **SECURITY INTEREST.** To secure all that you owe on this contract and all your promises in it, you give us a security interest in:
1. The vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
2. All insurance proceeds and other proceeds received for the vehicle;
3. Any insurance policy, service contract or other contract financed by us and any proceeds of those contracts; and
4. Any refunds of charges included in this contract for insurance, or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the vehicle.

...AGREEMENT TO KEEP VEHICLE INSURED. You agree to have ...damage insurance covering loss or damage to the vehicle for the term of this contract. This insurance must cover our interest in the vehicle.

e. **OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our files.

f. **PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the vehicle, unless we agree otherwise in writing. However, if the vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

g. **RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** If we get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

h. **APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

b. **DEFAULT. You will be in default if:**
1. You do not pay any amount when it is due;
2. You give false, incomplete, or misleading information on a credit application;
3. You file bankruptcy, bankruptcy is filed against you, or the vehicle becomes involved in a bankruptcy.
4. You allow a judgment to be entered against you or the collateral; or
5. You break any of your promises in this agreement.
If you default, we can exercise our rights under this contract and our other rights under the law.

c. **OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

d. **REPOSSESSION.** If you default, we may repossess the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If any personal items are in the vehicle, we can store them for you and give you written notice at your last known address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the vehicle.

e. **YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

f. **DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. We will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

g. **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.

[right margin, partially visible]
31807 - 851 -
...9 thru 06/30/2019
XXXXXX7510

CONTRACTS. This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.** **INTEGRATION AND SEVERABILITY CLAUSE**
This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

**5.** **LEGAL LIMITATIONS ON OUR RIGHTS**
If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**6.** SELLER'S DISCLAIMER OF WARRANTIES
Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**7.** Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**8.** **APPLICABLE LAW**
Federal and Texas law apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer X _Carolyn Swan_          Co-Buyer X _Tim Swany_

See the rest of this contract for other important agreements.
**CONSUMER WARNING: Notice to the buyer—Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.**

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT: YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.**

Buyer Signs X _Carolyn Swan_  Date 04/19/2016  Co-Buyer Signs X _Tim Swany_  Date 04/19/2016

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Date _____  Address _____
Seller signs **FIRST TEXAS HONDA**  Date 04/19/2016  By X _____  Title _____
THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

| Seller assigns its interest in this contract to  **WELLS FARGO DEALER SERVICES** | (Assignee) under the terms of Seller's agreement(s) with Assignee. |
|---|---|
| ☐ Assigned with recourse | ☒ Assigned without recourse | ☐ Assigned with limited recourse |

Seller **FIRST TEXAS HONDA**     By _____     Title _____

# GAP WAIVER - Texas 150% MSRP/NADA Retail



**MasterTech**
Debt Protection Program

**MTGAP-0103 Rev 8/15**

## SECTION 1 - PROOF OF REGISTRATION

Retail Installment Contract Date:
04-19-2016

CONTRACT NUMBER: 6208862

| Dealer Name | Dealer Code | Phone |
|---|---|---|
| First Texas Honda | 72900 | 512-458-2511 |

| Address | City | State | ZIP |
|---|---|---|---|
| 3400 Steck Ave | Austin | TX | 78757 |

| Customer Name | Co-Customer Name | Phone |
|---|---|---|
| CAROLYN SWEENEY | BRIAN SWEENEY | 512-762-5896 |

| Address | City | State | ZIP |
|---|---|---|---|
| 14110 HUNTERS PASS | AUSTIN | TX | 78734 |

| Vehicle ID No. (17 Digits) | Vehicle Sale Date |
|---|---|
| 19XFC2F59GE025139 | 04-19-2016 |

| Year | Make | Model | Odometer Mileage |
|---|---|---|---|
| 2016 | HONDA | CIVIC | 18 |

| [X] Retail Installment Contract | Annual Percentage Rate 4.99 | Monthly Payment 336.25 |
|---|---|---|

| Class (Admin Only) 0 | [✓] New Vehicle (MSRP) | [ ] Used Vehicle (NADA) |
|---|---|---|

| GAP Waiver Term | Amount Financed | MSRP / NADA Retail Value |
|---|---|---|
| 72 | 20842.11 | 20275.00 |

**Maximum Term: 84 Months   Maximum Amount Financed: $125,000   Maximum Limit of Liability: $50,000   Finance Benefit Limit: 150%**

| THE SINGLE PAYMENT PRICE FOR YOUR GAP WAIVER IS $ 595.00 | Financial Institution Name WELLS FARGO DEALER SERVICES | Phone 800-289-8004 |
|---|---|---|
| | Financial Institution Address PO BOX 997517 | City / State / ZIP SACRAMENTO TX 95899 |

YOU MAY PURCHASE THIS GAP WAIVER ONLY AT THE TIME THE RETAIL INSTALLMENT CONTRACT IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP WAIVER IS STRICTLY VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE COLLATERAL.

- THE **PAYABLE LOSS** MAY DECREASE OVER THE TERM OF **YOUR RETAIL INSTALLMENT CONTRACT** AND MAY NOT EXTEND FOR THE FULL TERM OF **YOUR RETAIL INSTALLMENT CONTRACT.**
- YOU MAY WISH TO CONSULT AN ALTERNATIVE SOURCE TO DETERMINE WHETHER SIMILAR PROTECTION MAY BE OBTAINED AND AT WHAT COST.
- IF **YOU** PURCHASE THIS GAP WAIVER FROM THIS **DEALER, YOU** UNDERSTAND THAT THE **DEALER** MAY RETAIN ALL OR A PORTION OF THE CHARGE PAID BY YOU.

PLEASE REVIEW THIS GAP WAIVER IN ITS ENTIRETY INCLUDING ALL DEFINITIONS FOUND IN SECTION 7 TO DETERMINE IF YOUR LEGAL RIGHTS ARE AFFECTED. YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE ENTIRE GAP WAIVER AND ITS EXCLUSIONS, CONDITIONS, AND MAXIMUM COVERAGE LIMITATIONS WHICH MAY REDUCE OR PREVENT YOU FROM RECEIVING ALL OR PART OF THE BENEFITS DUE UNDER THIS GAP WAIVER. YOU FURTHER ACKNOWLEDGE NO OTHER VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU THAT DIFFER FROM THE PROVISIONS OF THIS GAP WAIVER.

X _Caroline Sweeney_ 4-11-16
**Customer Signature** / **Date**

0227

X _____
**Dealer Signature**

ID # 4-19-11
**Date**

X _____
**Co-Customer Signature**

**Date**

GAP ADMINISTRATOR: AMERICAN FINANCIAL WARRANTY CORPORATION

PO BOX 7719, The Woodlands, TX 77387

Toll Free 1-800-964-4811

MTGAP-0103        LZX 99380        **PAGE 1d - CUSTOMER COPY**        REV 8/15



- Texas 150% MSRP/NADA Retail



## ...ON 2: REPORT YOUR CONSTRUCTIVE TOTAL LOSS TO THE GAP ADMINISTRATOR

American Financial Warranty Corporation PO BOX 7719, The Woodlands, TX 77387 Toll Free 1-800-964-4811

**PAYABLE LOSS PROCEDURES:** In the event of a **Constructive Total Loss**, it is requested that **You** notify the **GAP Administrator** as soon as possible, but no later than ninety (90) days after receiving settlement from the **Primary Carrier** or from the date the **Financial Institution** notifies **You** of any deficiency balance owed, whichever is later. **You** must provide the following documentation to the **GAP Administrator** within ninety (90) days of receiving settlement from the **Primary Carrier** and/or when **Your Collateral** was deemed a **Constructive Total Loss** pursuant to the statutes of **Your** state, or if no **Primary Carrier** coverage is in effect on the **Date of Loss**, within ninety (90) days of the **Date of Loss** or from the date the **Financial Institution** notifies **You** of any deficiency balance owed, whichever is later. Please submit **1)** a copy of the **Retail Installment Contract** and a copy of the signed GAP Waiver; **2)** a copy of the **Retail Installment Contract** history and payoff as of the **Date of Loss**; **3)** a legible copy of the police report or fire report, which must include confirmation of the **Collateral** shown on this GAP Waiver. If a police report is not available, and the cause of loss to **Collateral** is NOT due to theft or fire, a signed and notarized brief description of the loss (including confirmation of the **Collateral**) will be acceptable; **4)** a copy of the settlement check, Collateral Valuation Report and Total Loss Breakdown, and Declarations Page issued by **Primary Carrier**; **5)** a copy of any refunds for cancelable products, such as credit life, credit accident and health, vehicle service agreements/contracts/warranties, and prepaid maintenance charges, and; **6)** a copy of the Buyers Order, if provided to **You**. The **GAP Administrator** will not be able to obtain this information for **You**. **You** will not be required to provide any documentation that is not listed in the GAP Waiver to substantiate the loss or determine the amount of debt to be canceled. No **Payable Loss** will be covered if not reported along with all documentation within these stated time periods. A **Payable Loss** will cause this GAP Waiver to terminate and be fully earned and not subject to any cancellation refund. If **You** do not provide the requested documents to the **GAP Administrator** within ninety (90) days of reporting to the **GAP Administrator** the **Payable Loss**, **Your** request for a **Payable Loss** will be closed. Notwithstanding the collection of required documents on reasonable advance notice the **Dealer** or **GAP Administrator** of this GAP Waiver may inspect **Your Collateral** at no cost to **You**. American Security Insurance Company (ASIC) is obligated to reimburse your **Financial Institution**, according to the provisions of the insurance policy issued to the **Dealer**, for the **Dealer's** obligation to waive **Your** debt pursuant to the provisions of this GAP Waiver. In the event the **Dealer** does not waive **Your** debt within sixty (60) days after **You** have submitted all documentation required under the terms of this GAP Waiver to the **GAP Administrator**, **You** are entitled to apply directly to ASIC, P.O. Box 20949, St. Petersburg, FL 33742 for satisfaction. To do so, please call 1-866-306-6694.

## SECTION 3: GAP WAIVER PROVISIONS

1. This GAP Waiver amends the **Retail Installment Contract** and is between **You** and the **Dealer**. This GAP Waiver will remain a part of the **Retail Installment Contract** if the **Retail Installment Contract** is assigned, sold, or transferred to a **Financial Institution** by the **Dealer**. In case there is conflicting information listed in SECTION 1 of this GAP Waiver and the **Retail Installment Contract**, the information listed on the **Retail Installment Contract** will supersede the information listed in SECTION 1 of this GAP Waiver.

2. Although not required to do so, **You** elect to purchase this GAP Waiver for an additional charge which is located in SECTION 1. **You understand this GAP Waiver is not an insurance product. GAP does not take the place of insurance on the Collateral, nor does this GAP Waiver fulfill any requirements of any financial responsibility laws.** **You** agree to maintain automobile physical damage and collision coverage through **Your Primary Carrier** for the full term of this GAP Waiver as required by the terms of the **Retail Installment Contract**.

3. In the event of a **Constructive Total Loss** to the **Collateral**, the **Dealer** agrees to cancel certain amounts that are owed by **You** under the **Retail Installment Contract** in accordance with the **Payable Loss** provision. In addition to the provisions of a **Payable Loss**, **You** will remain responsible for payment of any items stated under SECTION 8 and SECTION 6.

4. **You** are responsible for making at least the minimum payment owed under the terms of the **Retail Installment Contract** for each payment due date scheduled after the **Date of Loss** until the request for **Payable Loss** has been fully processed.

5. Should **You** not have collectible automobile physical damage insurance on the **Date of Loss**, it is **Your** responsibility to advise the **GAP Administrator** in writing within ninety (90) days of the **Date of Loss**.

6. **You** should also take reasonable measures to ensure that the maximum amount of the **ACV** of the **Collateral** is paid by **Your Primary Carrier**. If **Your Primary Carrier** does not pay the correct **ACV** of the **Collateral**, the **GAP Administrator** will send **You** documentation describing the correct **ACV**.

## SECTION 4: CANCELLATIONS

YOUR RIGHT TO CANCEL: You have the unconditional right to cancel and terminate this optional GAP Waiver for a refund/credit of the unearned portion of the charge at any time. If canceled within sixty (60) days of this GAP Waiver purchase, You will receive a full refund/credit of this GAP Waiver charge, provided no Constructive Total Loss has occurred. After sixty (60) days, You will receive a refund/credit of this GAP Waiver charge calculated by the pro rata method or by the refund method as may be required by state or federal law. The Dealer will refund/credit all charges to the Financial Institution, unless Your Retail Installment Contract has been paid in full; in that case, the unearned GAP Waiver charge will be refunded directly to You. To cancel this GAP Waiver and request a refund/credit, You must contact the Dealer in writing at their address shown in SECTION 1, unless otherwise required by state law. You may also submit the Cancellation Request Form provided on Page 5 of this GAP Waiver to the Dealer. If You do not receive the refund/credit owed to You by the Dealer within sixty (60) days of notice of cancellation/termination, You may choose to contact the GAP Administrator shown above to request assistance. By providing assistance to You, the GAP Administrator does not assume any responsibility or liability for the Dealer's obligations under this GAP Waiver.

## SECTION 5: TERMINATION OF GAP WAIVER

This GAP Waiver will automatically terminate on the earliest date that any of the following events occurs: **1)** the original date **Your Retail Installment Contract** is scheduled to terminate; **2)** In the event of a **Constructive Total Loss** or theft of the covered **Collateral** after the debt has been waived; **3)** expiration of any redemption period following the repossession or surrender of the covered **Collateral**; **4)** upon payment in full of the **Retail Installment Contract**; **5)** the date the **Retail Installment Contract** is prepaid or the **Retail Installment Contract** is **Refinanced**; or **6)** in the event the request for a **Constructive Total Loss** is not covered as stated in SECTION 8. In the event this GAP Waiver terminates pursuant to items 1 and 2, no refund shall be available, and all amounts paid by **You** for this GAP Waiver shall be retained in full by the **Dealer**. If this GAP Waiver terminates pursuant to items 3, 4, 5, or 6, **You** will receive a pro rata refund based on the earliest date of: **1)** prepayment in full or refinance; **2)** acceleration or demand for payment in full, or **3)** total denial of a request.



Re / 04 / D / Fi / A / 34 / C / C. / A / 14 / Ve / 19 / Yea / 201 / Clas / 0 / GAP W / 72 / Ma / THE / FOR / $ / YOU M / SIGNAT / VOLUNT / PARTIC / • THE RET / • YOU / • IF YO BY Y / PLEASE F / AFFECTE / COVERAG / FURTHER / X / Custom / GAP AD / MTGAP

1. **Actual Cash Value (ACV)**: means the retail value of the **Collateral** on the **Date of Loss** as listed in the National Automobile Dealers Association (NADA) Used Car Guide. If the retail value of the **Collateral** is not listed in the NADA Used Car Guide, then an equivalent national or regional guide for the **Territory** in which the **Collateral** is principally garaged will be used. For **Collateral** which has no retail value available or is located in **Territories** where NADA or an equivalent national or regional guide is not customarily used, **ACV** will be determined using the best information available to the **GAP Administrator**, or which **GAP Administrator** reasonably believes accurately reflects the retail value of the **Collateral** and is customarily used as the basis for establishing **ACV** for **Collateral** in the **Territory** of the **Collateral** location.

2. **Alternative Fuel Conversion**: means a package of fuel, ignition, emission control, and engine components that are modified, removed, or added during the process of modifying the covered **Collateral** to operate on an alternative fuel.

3. **Collateral**: means any private passenger automobile, van, or light truck, as described in the **Retail Installment Contract** and listed as "Vehicle" in **SECTION 1**, and which is not utilized for **Commercial Purposes**. This definition is subject to **SECTION 8**.

4. **Commercial Purposes**: **Collateral** is excluded from coverage when used for purposes including, but not limited to police or emergency service, snow removal, carriage of goods or passengers for hire, compensation, or profit, or, road repair or hauling activities for a fee; also if any **Collateral** has a Gross Vehicle Weight Rating (GVWR) over 14,500 pounds.

5. **Constructive Total Loss**: means a direct and accidental loss of or damage to the **Collateral**, which meets one of these criteria: **1)** the total cost to repair the **Collateral** is greater than the **ACV** of the **Collateral** immediately prior to the **Date of Loss**; or **2)** the **Collateral** is stolen and is not recovered within thirty (30) days from the date a police report was filed; or **3)** the Customer's **Primary Carrier** declares the **Collateral** a Constructive Total Loss. In the case there is no primary insurance coverage, the **Collateral** must be available for the **GAP Administrator's** inspection or appraisal, at no cost to **You**, to determine if the covered **Collateral** is a **Constructive Total Loss** (except in the event of an unrecovered theft.) If the covered **Collateral** is not available for inspection or appraisal, the **Dealer** will not waive an obligation under a **Payable Loss** (except in the event of an unrecovered theft.)

6. **Date of Loss**: means the date on which the **Collateral** is reported stolen or incurs physical damage that is severe enough to constitute a **Constructive Total Loss**.

7. **Dealer**: the entity originating the **Retail Installment Contract** and who may assign, sell, or transfer the **Retail Installment Contract** to a **Financial Institution**.

8. **Deferred Payment**: means any monthly payment as described in the **Retail Installment Contract** that: **1)** has been postponed, skipped, or waived by the **Financial Institution** and **2)** has not been paid as of the **Date of Loss**.

9. **Delinquent Payment**: means any payment as described in the **Retail Installment Contract**, which remains unpaid for a period of more than thirty (30) days after the due date stated in the **Retail Installment Contract**. The **Delinquent Payment** will be determined as of and limited to amounts past due on the **Date of Loss**.

10. **Finance Benefit Limit**: means the maximum percentage eligible for coverage of the Amount Financed in relation to MSRP/NADA as referred to in **SECTION 1**.

11. **Financial Institution**: means the entity to which **Your Retail Installment Contract** and this GAP Waiver may be sold, assigned, or transferred by the **Dealer**.

12. **GAP Administrator**: means American Financial Warranty Corporation, PO BOX 7719, The Woodlands, TX 77387, which is an entity, other than a **Primary Carrier** or **Dealer** that performs administrative or operational functions.

13. **MSRP**: means Manufacturer's Suggested Retail Price

14. **Net Payoff**: means the amount of the **Financial Institution's** interest as of the **Date of Loss**, as represented by portion of **Your** unpaid balance according to the original payment schedule of the **Retail Installment Contract** that is secured by **Collateral**, subject to **SECTION 8** and **SECTION 6**. The amount does not include any unearned finance charges, **Delinquent Payments**, **Deferred Payments**, late charges, uncollected service finance charges, refundable prepaid taxes and fees, the recoverable portion of finance service charges, or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to, credit life, credit accident and health, and vehicle service agreements/contracts/warranties) that are owed by **You** on the **Date of Loss**, and amounts that are added to the **Retail Installment Contract** balance after the inception date of the **Retail Installment Contract**.

15. **New Vehicle**: means any **Collateral** that has not been previously titled for sale.

16. **Payable Loss**: means the difference between the **Net Payoff** and the **Primary Carrier** settlement. The **Payable Loss** will not exceed the Maximum Limit of Liability as listed in **SECTION 1**. The **Payable Loss** does not include any vehicle manufacturer rebates the **Primary Carrier** may apply in its valuation of the **Collateral**. **Payable Loss** includes the amount of the physical damage deductible on the **Primary Carrier** policy up to $1,000. If settlement by the **Primary Carrier** or the **ACV** is greater than or equal to the outstanding balance, no **Payable Loss** will be covered under this GAP Waiver. In the event there is no **Primary Carrier** coverage in effect on the **Date of Loss**, or if the **Primary Carrier** is declared insolvent, or if the **Financial Institution** does not receive the proceeds from the **Primary Carrier's** policy, this GAP Waiver will only cover the difference between the **Net Payoff** and the **ACV** of the **Collateral** on the **Date of Loss**. If there is no **Primary Carrier**, the **Collateral** must be inspected by the **GAP Administrator**, at no cost to **You** and only upon reasonable advance notice to **You**, to determine if the **Collateral** is a **Constructive Total Loss** (except in the event of an unrecovered theft.)

17. **Primary Carrier**: means the insurance company that: **1)** is used by **You** prior to the **Date of Loss** to provide physical damage insurance on the **Collateral** for Comprehensive and Collision; or **2)** provides liability coverage to any person who has caused the **Collateral** to incur a **Constructive Total Loss** and for which that person is legally liable. For the purposes of this GAP Waiver, insurance that is forced placed, after the **Date of Loss**, is not considered a **Primary Carrier**.

18. **Refinance**: means early payoff of the **Retail Installment Contract** is not considered a **Refinance**. In the event the **Retail Installment Contract** is modified, not **Refinanced**, the **Net Payoff** will be determined based on the terms and conditions in the original **Retail Installment Contract**.

19. **Retail Installment Contract**: means **Your** contract, which represents the financing agreement for the purchase of the **Collateral**, which sets forth the terms, conditions, inception date, and expiration date of the **Retail Installment Contract**.

20. **Self-Financed**: means a **Retail Installment Contract** that is funded and retained by the **Dealer** or an affiliate of the **Dealer**.

21. **Settlement Date**: means the date the **Primary Carrier** issues payment for the Customer's **Collateral** for the Constructive Total Loss.

22. **Territory**: means this coverage applies only to a **Payable Loss** sustained while the covered **Collateral** is within the United States of America (USA), its territories or possessions, Canada, or being transported between any parts thereof.

23. **Used Vehicle**: means any **Collateral** that has been previously titled for sale.

24. **You/Your**: means the Customer as designated in SECTION 1.

GAP ADMINISTRATOR: AMERICAN FINANCIAL WARRANTY CORPORATION     PO BOX 7719, The Woodlands, TX 77387     Toll Free 1-800-964-4811

LZX 99380     PAGE 3     REV. 8/15

GAP Waiver does not provide coverage for a **Constructive Total Loss**:

A. occurring prior to the effective date of this GAP Waiver or after the original **Retail Installment Contract** expires.
B. occurring prior to the **Retail Installment Contract** inception date.
C. due to confiscation of the **Collateral** by a government body or public official.
D. caused by theft or fire, unless **You** or the **Financial Institution** files a police and/or fire report.
E. caused by theft or damage to the **Collateral** that does not constitute a **Constructive Total Loss**.
F. resulting from the **Collateral** being operated, used, or maintained in any race, speed contest, or other contest.
G. to the **Collateral** held as security under any wholesale, floor plan, field warehouse, or any type of financing made to a dealership or its employees.
H. to the **Collateral** used for **Commercial Purposes**.
I. occurring after the **Collateral** has been repossessed by the **Financial Institution** or placed in the **Financial Institution's** possession or in possession of the **Financial Institution's** employees or agents.
J. for any amounts deducted from the **Primary Carrier** settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage, and other condition adjustments.
K. to the following vehicles which are excluded from coverage; Daewoo, Bentley, Lamborghini, Lotus, Ferrari, Rolls Royce, Yugo, Aston Martin, recreational vehicles (RV's), boats, trailers, all terrain vehicles (ATVs), snowmobiles, principally off road use vehicles, unregistered vehicles, and motorcycles.
L. attributable to other than the standard or optional equipment available from the manufacturer of the **Collateral**, including, but not limited to: special carpeting, furniture, bars, audio, video, or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap, trailers, special commercial usage optional equipment, accessories, and body components. Any aftermarket **Alternative Fuel Conversion** system installed outside of the Original Equipment Manufacturer (OEM) will not qualify in the calculation of the **Payable Loss**. Factory approved conversion packages and dealer installed options included in used car value guidebooks are not excluded.
M. to the **Collateral** with a salvage or rebuilt title at the time of sale or for which title has been changed or reissued as salvage or rebuilt prior to the **Date of Loss**.
N. from a **Retail Installment Contract**: 1) based on unequal periodic payments or payments made less frequently than monthly for the full period of the **Retail Installment Contract** (except for Ford Flex Buy); 2) where the first scheduled payment is not made within ninety (90) days of the **Retail Installment Contract** date; 3) that is Self-Financed by the **Dealer** or a subsidiary of the **Dealer**; or 4) where the Amount Financed exceeds $125,000.
O. due to any criminal act or act of gross negligence by **You** alone or in collusion with others, or parties acting under **Your** discretion that directly or indirectly results in the **Constructive Total Loss** of the **Collateral**.
P. if **You** are cited for driving under the influence (DUI), driving while intoxicated (DWI), or submit to a breathalyzer test with a blood alcohol concentration (BAC) that is over the legal state limit for driving.

If a **Payable Loss** is denied due to items B, G, K, M, or N in SECTION 8, or if a **Payable Loss** is denied under item A in SECTION 8 due to a **Constructive Total Loss** occurring prior to the effective date of this GAP Waiver, or under item H in SECTION 8 due to the **Collateral** exceeding a Gross Vehicle Weight Rating (GVWR) over 14,500 pounds, **You** will receive a full refund of the charge for this GAP Waiver.

## SECTION 9: FRAUD AND MISREPRESENTATION

This GAP Waiver is issued in reliance upon the truth of all representations made by **You**. The **Dealer** will not waive an obligation as to any **Retail Installment Contract** where **You**: 1) intentionally concealed or misrepresented any material fact; 2) engaged in conversion, embezzlement, concealment, or other fraudulent conduct; or 3) made a materially false statement relating to submitting a benefit request. If **You** have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after a **Payable Loss**, all charges for this GAP Waiver will be returned. All refunds are the responsibility of the **Dealer**.

## SECTION 10: PRIVACY POLICY

The **GAP Administrator** uses non-public personal information that **You** provide when **You** enter into this GAP Waiver. The **GAP Administrator** protects the confidentiality of such information to the extent required by the Gramm Leach Bliley Act and other privacy laws and regulations applicable. The **GAP Administrator** may disclose this information when issuing and servicing **Your** contract. Such disclosures may be made to: conduct internal benefit request administration; provide **Your** information to adjusters, inspectors, investigators, and attorneys to investigate or settle a benefit request; improve products and services; conduct internal market research and quality assurance.

The **GAP Administrator** has implemented procedures to safeguard information collected in this GAP Waiver. Digital images of this GAP Waiver will be stored on secure servers. Digital images will be substituted for the **GAP Administrator's** physical copy of this GAP Waiver. The **GAP Administrator** intends to store all digital images for a period of up to seven (7) years after the expiration of this GAP Waiver.

## SECTION 11: CONSUMER COMPLAINTS

**You** may file a complaint with the Commissioner by contacting the Texas Office of Consumer Credit Commissioner at 2601 N. Lamar Blvd, Austin, TX 78705, Phone: (800) 538-1579, website: occc.texas.gov

Name:
Address:
City/State/ZIP:
Phone:
Dealer Contact Name:
Effective Cancellation Date/Requested Date:

**MASTERTECH**
*Debt Protection Program*

# Cancellation Request Form

**Customer Information:**

| Customer Name: | | |
|---|---|---|
| Customer Address: | Customer Phone: | |
| Contract Number: | City/State/ZIP: | |
| Vehicle Make: | Last 6 of VIN: | Current Odometer (if applicable): |
| | Vehicle Model: | Vehicle Year: |

**Financial Institution Information**

| Name: | |
|---|---|
| Address: | City/State/ZIP: |

**GAP CANCELLATIONS: YOU HAVE THE UNCONDITIONAL RIGHT TO CANCEL GAP FOR A FULL REFUND/CREDIT WITHIN SIXTY (60) DAYS AFTER IT IS PURCHASED PROVIDED YOUR COLLATERAL HAS NOT SUFFERED A TOTAL LOSS, AND YOU COMPLETED AND RETURNED THIS FORM OR OTHER WRITTEN NOTICE OF CANCELLATION TO THE DEALER AS DESCRIBED IN SECTION 1, OR TO THE ADMINISTRATOR AT THE ADDRESS BELOW, POSTMARKED NO LATER THAN SIXTY (60) DAYS AFTER THE GAP WAS PURCHASED. AFTER SIXTY (60) DAYS, YOU WILL RECEIVE A REFUND/CREDIT OF THIS GAP WAIVER CHARGE CALCULATED BY THE PRO RATA METHOD OR BY THE REFUND METHOD AS MAY BE REQUIRED BY STATE OR FEDERAL LAW. IF YOU DO NOT RECEIVE THE REFUND/CREDIT WITHIN SIXTY (60) DAYS OF NOTICE OF CANCELLATION/TERMINATION, CONTACT THE GAP ADMINISTRATOR.**

Please cancel this GAP Waiver on the above identified **Collateral** effective on the Cancellation Date listed above. I understand that once canceled, coverage may neither be repurchased nor reinstated.

X _____
Dealer Representative Signature        Date

X _____
Customer Signature        Date

X _____
Co-Customer Signature        Date

**GAP ADMINISTRATOR: AMERICAN FINANCIAL WARRANTY CORPORATION**
PO BOX 7719, The Woodlands, TX 77387
Toll Free 1-800-9

LZX 99380
**PAGE 5**

MTGAP-0103
Rev

Exhibit 15

MOTOR VEHICLE CONSUMER SIMPLE INTEREST INSTALLMENT SALE
AND SECURITY AGREEMENT

**1. CREDIT SALE AGREEMENT**

| | BODY STYLE / TRUCK LOAD CAPACITY | MODEL | SERIAL NUMBER OR IDENTIFICATION NUMBER |
|---|---|---|---|
| USED  2007 ∞ INFINITI | 4DR SUV AWD | QX56 | 5N3AA08C97N804740 |

Late Charge and Other Charges. I agree to pay the Late Charge shown in Section 3 below. If Seller charges me interest after the final scheduled maturity date, I will not pay any late charge on the final scheduled payment amount. I also agree to pay a charge of $15.00, as permitted under §422.202(1)(d), Wis. Stats., for each check presented for payment under this Agreement which is returned unsatisfied.

**2. ITEMIZATION OF AMOUNT FINANCED**

| | | | |
|---|---|---|---|
| (A) Cash Price | | (a) $ | 28698.00 |
| (including $ N/A to N/A for N/A , $ N/A | | | |
| to N/A for N/A ) | | | |
| (B) Trade-in Year N/A Make N/A Model N/A | | | |
| Allowance $ N/A – Lien/Lease Payoff $ N/A | | | |
| Net Trade-in Value of | | (b) $ | 0.00 |
| (C) Total Cash Received $ N/A (Includes factory or manufacturer rebate of $ N/A ) | | (c) $ | N/A |
| (D) Total Downpayment: Cash $ N/A + Total Net Trade In Value $ 0.00 | | | |
| (If negative, enter "0" and see line (f)(4) below) = Total Downpayment of | | (d) $ | N/A |
| (E) Unpaid balance of the cash price (a - d) | | (e) $ | 28698.00 |
| (F) Amounts paid to others on my behalf (Seller may keep a portion of these amounts): | | | |
| (1) To public officials for: | | | |
| Sales Tax | $ | 1774.93 | |
| Filing Fees (Notation and Release of Lien) | $ | 29.50 | |
| Title Application, Transfer & Registration | $ | 144.50 | |
| (2) To property insurance company for coverages checked below (actual cash value) | $ | N/A | |
| $ N/A Deductible Comprehensive | | | |
| $ N/A Deductible Collision | | | |
| Fire, Theft and Combined Additional Coverage | | | |
| (3) To liability insurance company | $ | N/A | |
| (4) To N/A for prior credit or lease balance | $ | N/A | |
| (5) To THIS for SERVICE CONTRACT | $ | 2997.00 | |
| (6) To TOYOTA for GAP | $ | 795.00 | |
| (Subtotal for computing credit insurance premium e + f(1) through (6) $ 34438.93 ) | | | |
| (7) To credit life insurance company | $ | N/A | |
| (8) To credit accident and sickness insurance company | $ | N/A | |
| Total Amount Paid to Others | (f) $ | 5740.93 | |
| (G) Amount Financed (e + f) | (g) $ | 34438.93 | |
| (H) Finance Charge | (h) $ | 9787.79 | |
| (I) Total of Payments (g + h) | (i) $ | 44226.72 | |
| (J) Total Sale Price (d + i) | (j) $ | 44226.72 | |

**3. TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 0.00 | ("e" means an estimate) |
|---|---|---|---|---|---|
| 8.49 % | $ 9787.79 | $ 34438.93 | $ 44226.72 | $ 44226.72 | |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 614.26 | MONTHLY BEGINNING: 12/25/2012 UNTIL PAID IN FULL. |
| N/A | $ N/A | N/A |

Security. I am giving a security interest in the goods being purchased.
Late Charge. If a payment is not paid on or before the 10th day after its due date, I will be charged $10.00 or 5% of the unpaid amount, whichever is

Prepayment. If I pay off early, I will not have to pay a penalty.
I should see my contract documents for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

## 4. SECURITY AGREEMENT

I grant to Seller a security interest in the goods described in Section 1 above, and all accessions to and proceeds of such goods ("Collateral"). The Collateral secures performance of all my obligations in this Agreement and all extensions, modifications and renewals of them ("Obligations").

## 5. COVENANTS

(a) **Ownership, Purpose and Use.** Acting alone, I may grant a security interest in the Collateral. The Obligations under this Agreement are incurred and the Collateral is acquired primarily for personal, family or household purposes. I agree that the Collateral will not be used as a residential dwelling.

(b) **Title.** Vehicle will be ☐ titled in Wisconsin ☒ titled in _____ ☐ not titled.

(c) **Location.** The Collateral will be kept at the address below Section 7, or if not, at _____

_____
(NO AND STREET)          (CITY OR TOWN)          (STATE)

Such location shall not be changed without providing at least 30 days prior written notice of the change to Seller, but I intend that the Collateral, wherever located, is covered by this Agreement.

(d) **Marital Information.** For Wisconsin resident only: I am ☐ married ☒ unmarried ☐ legally separated. If I am married and my spouse is not signing below and my spouse resides at ☐ the address shown below the name of my spouse is __N/A__

Section 7 or at __N/A__

(e) **Marital Purpose.** If I am a married Wisconsin resident, the obligation evidenced by this Agreement is being incurred in the interest of my marriage or family.

X __N/A__
CUSTOMER

(f) **Name and Address.** My legal name is as set forth below Section 7. The address of my principal residence is as set forth below Section 7. I will not change my legal name or address without providing at least 30 days prior written notice of the change to Seller.

(g) **Additional Covenants.** I shall observe and comply with the Additional Provisions on the reverse side of this Agreement and shall not permit an event of default to occur.

## 6. INSURANCE AND DEBT CANCELLATION COVERAGE

(a) **CREDIT LIFE AND CREDIT ACCIDENT AND SICKNESS INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS I SIGN BELOW AND AGREE TO PAY THE ADDITIONAL COST.** My decision to buy or not buy such insurance will not be a factor in the credit approval process. I want the insurance at the cost(s) shown below for the term of the Agreement (or __N/A__ months, whichever is less) subject to terms and conditions of separate policy or certificate of insurance.

(c) **I MAY OBTAIN PROPERTY AND LIABILITY INSURANCE FROM ANYONE I WANT THAT IS REASONABLY ACCEPTABLE TO SELLER.** If I get the insurance from Seller, I will pay $ __N/A__ for an estimated term of __N/A__ months.

Credit Life Insurance $ __N/A__      Credit Accident & Sickness Insurance $ __N/A__

I want credit life insurance.      I want credit accident and sickness insurance.

X __N/A__                           X __N/A__
INSURED                              INSURED

X __N/A__                           X __N/A__
JOINT INSURED                        JOINT INSURED

(d) **WARNING:** Unless an amount appears on line (1)(3) of Section 2, insurance coverage hereunder is not public liability insurance and does not protect the driver of the vehicle from liability for damages resulting from negligent use of the vehicle.

(b) **DEBT CANCELLATION COVERAGE, SPECIFICALLY CALLED GUARANTEED AUTOMOBILE PROTECTION ("GAP"), IS NOT REQUIRED TO OBTAIN CREDIT AND GAP WILL NOT BE PROVIDED UNLESS I ELECT SUCH COVERAGE AND SIGN AND AGREE TO PAY THE ADDITIONAL COST.** I elect GAP and agree to pay the cost shown below for the original term of this Agreement (or __72__ months, whichever is less), subject to terms and conditions of the separate GAP election or description of coverage. GAP coverage cost is $ __795.00__

**I acknowledge receipt of the description of GAP coverage separately provided to me.**

I want GAP coverage.

X _____      X __N/A__
CUSTOMER                                CUSTOMER

## 7. PERSONS BOUND

"I", "my", "me" and "mine" includes each customer who signs this Agreement and our obligations are joint and several, except that _____

__N/A__ signs below solely to grant a security interest in the Collateral. This Agreement benefits
(NAME)

Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns. **This Agreement includes the Additional Provisions on the reverse side of this Agreement.** I have received a completed copy of this Agreement.

*The Annual Percentage Rate may be negotiable with Seller. Seller may assign this Agreement and retain its right to receive a part of the Finance Charge.*

| NOTICE TO CUSTOMER | (a) | DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. |
| | (b) | DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. |
| | (c) | YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. |
| | (d) | YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF FINANCE CHARGE. |

Dated __11/10/2012__

__ANDREW MOTOR SALES INC__ (SEAL)      X _____ (SEAL)
SELLER                                    CUSTOMER

By: _____      * __NAKECIA N DEAN__
AUTHORIZED SIGNATURE

Seller's Address: __1620 W SILVER SPRING DR__      X __N/A__ (SEAL)
                                                    CUSTOMER

__MILWAUKEE WI 53209__                    * __N/A__
This Agreement may be assigned to ("Assignee"):      Customer's Address: __9560 N 60TH ST__
                                                      SEE SECTIONS 5(c), (d) and (f)

__WELLS FARGO DEALER SERVICES INC__
__PO BOX 997517 SACRAMENTO CA 95899-7517__      __BROWN DEER WI 53223-1200 CO:MILWAUKEE__
                                                  *Type or print name signed above.

ADDITIONAL PROVISIONS

(a) Maintenance of Collateral. I shall: maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests prior in right to those of Seller; defend it against all claims and legal proceedings by persons other than Seller; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise transfer or dispose of it or permit it to become a fixture or accession to other goods except as specifically authorized in this Agreement or in writing by the Seller; and not permit it to be used in violation of any applicable law, regulation or policy of insurance, the violation of which could result in loss of or damage to any Collateral or impairment of the insurance on it. Loss of or damage to the Collateral shall not release me from any of the Obligations.

(b) Insurance. If the Collateral is of a value of $800 or more, and the amount financed (exclusive of insurance charges) is $800 or more, I shall keep all Collateral and Seller's interest in it, insured for all risks of physical damage to or loss of the Collateral throughout the term of this Agreement and any renewals, extensions or modifications of it under policies with such provisions, for such amounts, not more than the value of the Collateral or the aggregate outstanding balance of the Obligations, whichever is less) and by such insurers as shall be reasonably satisfactory to Seller from time to time. I shall furnish satisfactory evidence of such insurance to Seller. Subject to Seller's satisfaction, I am free to select the insurance agent or insurer through which such insurance is obtained by me. I assign (and direct any insurer to pay) to Seller the proceeds of all such insurance and any premium refund and authorize Seller to endorse in my name any instrument for such proceeds or refunds and, at the option of Seller, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to me. Seller is authorized, in my name or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Seller and any insurance on the Collateral, or cancel the same after the occurrence of an event of default and giving any prior notice required by the Wisconsin Consumer Act. If I fail to keep any required insurance on the Collateral, Seller may purchase such insurance for me, such insurance may be acquired by Seller solely to protect the interest of Seller (and will not cover any equity in the Collateral), and my obligation to repay Seller shall be in accordance with Section 3(e).

(c) Inspection of Collateral. Seller is authorized to examine the Collateral wherever located at any reasonable time or times; and I shall assist in making any such inspection.

(d) Maintenance of Security Interests. To the extent not prohibited by law, I shall pay all expenses and, upon request, deliver any document and take any action reasonably deemed advisable by Seller to preserve the Collateral or to establish, evidence, determine and maintain priority of, perfect, continue perfected, terminate and/or enforce Seller's interest in it or rights under this Agreement. I authorize Seller to file Uniform Commercial Code financing statements describing the Collateral and amendments to such financing statements and ratify any such financing statement or amendment filed prior to the date of this Agreement.

(e) Authority of Seller to Perform for Me. Seller may perform or cause to be performed any of my duties or obligations set forth in this Agreement with respect to preserving or insuring the Collateral, including without limitation signing my name or paying any amount so required, if I fail to perform any of such duties after the written notice to me and a reasonable opportunity for me to perform, if any, required by law. The costs of Seller's performance shall be one of the Obligations secured by this Agreement, shall be payable by me upon demand and shall bear Finance Charge from the date of expenditure by Seller to the date of payment by me at the Annual Percentage Rate disclosed in Section 3 on the front of this Agreement.

(f) Ability to Pay. I shall not take any action or permit any event to occur which materially impairs my ability to pay any of the Obligations when due. Such events may include, without limitation, the fact that I, my spouse or any surety of the Obligations dies, changes marital status or domicile or becomes insolvent or the subject of bankruptcy or other insolvency proceedings.

(g) Default. Upon the occurrence of any one or more of the following Events of Default:
   (1) Payments. (i) If the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the due dates or the failure to pay the first or last payment within 40 days after its due date; (ii) If the interval between scheduled payments is more than 2 months, to have all or any part of one scheduled payment which has remained unpaid for more than 60 days after its due date; or (iii) the failure to pay the only scheduled payment within 40 days after its due date;
   (2) Nonperformance. I fail to observe or perform any of my other covenants or duties contained in this Agreement if the failure materially impairs the condition, value or protection of or Seller's right in any Collateral, or materially impairs my ability to pay any of the Obligations when due; or
   (3) False Statement. I made a material false statement in my credit application to Seller that preceded this Agreement;

Seller shall have all of the rights and remedies for default provided by applicable law and this Agreement. With respect to such rights and remedies:
   (4) Acceleration. Each Obligation as to which an Event of Default has occurred shall, at the option of Seller and without further notice or demand, become immediately payable unless notice to me and an opportunity to cure is required by §425.105, Wis. Stats., and, in that event, such Obligation shall become payable if such default is not cured as provided in that statute, within 15 calendar days after mailing of such notice to me.
   (5) Repossession. Unless the Collateral is removed from Wisconsin under §421.201(5), Wis. Stats., abandoned under §425.207(2), Wis. Stats., or Seller has perfected its right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., I have a right to a court hearing on the issue of default before any repossession of any Collateral, but by surrendering the Collateral. I waive such right, Seller shall have the right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., provided Seller has given me, by mail, a notice containing all of the information required under §425.206(1)(g)(a), Wis. Stats., and I have not made a statement to Seller either that I am not in default under this Agreement or that I object to Seller's right to take possession of the Collateral and I made a demand by notifying Seller in writing within 15 days after Seller gives such notice to me that Seller proceed in court. Seller shall also have the right to take possession of the Collateral if it is removed from Wisconsin under §421.201(5), Wis. Stats., or abandoned under §425.207(2), Wis. Stats. Seller may take possession of the Collateral under these circumstances only if it does not commit a breach of the peace or enter a dwelling used by me as a residence except at my voluntary request. Seller may also take possession of the Collateral if I have surrendered the Collateral to Seller or Seller has obtained judgment in a proceeding for recovery of the Collateral.
   (6) Assembling Collateral. After Seller has the right to possession of Collateral, Seller may require me to assemble the Collateral and to make it available to Seller at a place designated by Seller which is reasonably convenient to both parties.
   (7) Notice of Disposition. Notice, when required by law, mailed to me at least 10 calendar days (counting the day of mailing) before the date of a proposed disposition of the Collateral is reasonable notice.
   (8) Expenses and Application of Proceeds. Seller may recover from me and the proceeds of disposition any expenses incurred in taking possession, holding, preparing for disposition and disposing of the Collateral, including reasonable attorneys' fees and court costs, to the extent not prohibited by the Wisconsin Consumer Act, if applicable. Seller is under no obligation to clean up or otherwise prepare the Collateral for sale. After deduction of allowed expenses, Seller shall apply the proceeds of disposition to the Obligations in such order and amounts as it elects, subject to the Wisconsin Consumer Act, if applicable; and
   (9) Waiver. Seller may waive any default without waiving any other, subsequent or prior default by me.

(h) Partial Prepayments. Partial prepayments shall be applied by Seller or its assignee to the payment of unpaid principal owed on this Agreement at the time of the partial prepayment and all remaining scheduled payments due under this Agreement shall continue to be paid when due, unless I instruct Seller or its assignee otherwise.

(i) Interpretation. The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin, except the recovery of Collateral shall be governed by the law of the state in which the Collateral is located at the time of recovery to the extent authorized by §421.201(5), Wis. Stats. All terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code and the Wisconsin Consumer Act. All references in this Agreement to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Unless otherwise required by the Wisconsin Consumer Act, invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions.

(j) Miscellaneous. Without affecting my liability under this Agreement, Seller may, without notice, grant renewals or extensions, accept partial payments, release or impair any security interest or lien in collateral security for the Obligations or agree not to sue any party liable on this Agreement. Presentment, protest, demand and notice of dishonor are waived. I acknowledge that Seller has not made any representations or warranties with respect to, and that Seller does not assume any responsibility to me for, the collectability or enforceability of this Agreement or the financial condition of any of us. Each of us has independently determined the collectability and enforceability of this Agreement. This Agreement is intended by Seller and me as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns.

Nakecia Dean
2007 infiniti Qx56

Nakecia Dean
2007 Infiniti QX56

DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR
WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY
THE DEBTOR HEREUNDER.

(ii) TELEPHONE MONITORING AND CALLING. I agree Seller or its assignee may monitor and record telephone calls regarding my account to assure
the quality of service provided by Seller or its assignee. In order for Seller or its assignee to service my account or to collect any amounts I may owe,
and subject to applicable law, I agree that Seller or its assignee may from time to time make calls and send text messages to me using
automated/artificial voice messages or through the use of an automatic dialing device at any telephone number I provide to Seller or its assignee in
connection with my account, including a mobile telephone number that could result in charges to me.

ASSIGNMENT

I assign all rights and interests in this Agreement, Obligations and Collateral to Assignee.

1. Warranties. Seller warrants:

(a) The Agreement is genuine and legally enforceable according to its terms and no debtor was minor or incompetent when it was executed.

(b) All statements contained in the Agreement and the related purchase agreement are true and complete. Assignee has the unrestricted continuing
representation, and complete warranty with respect to the Collateral. Seller has no knowledge of any facts that impair the value of the
Collateral, the debtor's credit worthiness. The Collateral, the down payment and trade-in were actually received by Seller. Seller has not made any
oral or made any amendment, addition or Seller has an agreement with debtor to separately warranty.

(c) This Agreement and transactions out of which it arose comply with applicable laws and regulations. Seller has performed its obligations.

(d) At the time of sale Seller had title ownership to sell the Collateral to debtor free of any security interest or other encumbrance, and the Collateral has been
delivered to and accepted by debtor in whole. 10 days of the Agreement date, and the security interest created by this Agreement is a valid first
lien encumbrance on the Collateral.

(e) Within 10 days of delivery of the Collateral to debtor(s), Seller perfected or will perfect a first security interest in the Collateral (and Seller authorized Assignee
to file or record any continuations, amendments or assignments of or to any such filings or perfection documents).

(f) Seller has full authority to assign this Agreement to Assignee. Seller will, in relation to the provisions of section 1(e) above take steps Assignee requires to
perfect the security interest created by this Agreement and to designate Assignee as secured party of record, and Assignee's interest in the Agreement is not
subordinate to any security interest or other encumbrances.

2. Authority of Assignee. Assignee may without notice and without impairing Assignee's right against Seller, by the Admit of Seller or otherwise, take all actions
and legal proceedings deemed advisable by Assignee with respect to the Agreement, the Obligations or the Collateral, including without limitation, modifying,
extending or compromising any terms, discharging or releasing any person liable or releasing any security.

3. Non-Liability of Assignee. Assignee has no duty to perform any security interest in the Collateral, to enforce any rights of Seller or to preserve rights under the
Agreement or the Obligations against third parties.

4. Remedies of Assignee. If:

(a) Seller has executed this assignment under A below and if (i) any warranty of Seller is false or breached, or (ii) any claim is made that Assignee has not
acquired the Agreement in good faith as defined in §422.407 Wis. Stats.; or

(b) Seller has executed this assignment under B below and if (i) any warranty of Seller is false or breached, or (ii) Assignee receives notice of a completed claim
or defense of defense against Seller or Assignee; or

(c) Seller has executed this assignment under C below and if (i) debtor fails to make a payment when due, or to perform or rectify breach of any other covenant
in the Agreement or Obligations, or (ii) any warranty of Seller is false or breached, or (iii) Assignee receives notice of a complaint, claim or defense against
Seller or Assignee;

then Seller shall, upon request of Assignee, pay the Assignee the full amount unpaid (less Assignee's unearned charges), plus expenses incurred by Assignee
in endeavoring to collect or enforce the Agreement and this assignment (subject to provisions of any separate written agreement between Assignee and Seller
respecting the purchase of the Agreement); and Seller indemnifies and agrees to defend and hold Assignee harmless from any loss, liability, penalty, claim,
damage or expense (including reasonable attorney's fees) claimed or incurred by reason thereof or claimed or incurred under section 9(k). Upon such payment
Assignee will, at the request of Seller, reassign the Agreement to Seller without recourse or warranties whatever.

A. (Without recourse except as provided in 4(a) above)                     B. (Without recourse except as provided in 4(b) above)

ANDREW TOYOTA

_____ (SEAL)         _____ (SEAL)

By _____                By _____
            AUTHORIZED SIGNATURE                                    AUTHORIZED SIGNATURE

                                                        C. (With full recourse as provided in 4(c) above)

                                                        _____ (SEAL)

Dated _____                 By _____
                                                                    AUTHORIZED SIGNATURE



**TOYOTA**
**FINANCIAL SERVICES** SM

| | |
|---|---|
| Debt Cancellation Agreement # | 491FUL |
| Plan Code | 002 |
| Agreement Effective Date | 11/10/2012 |
| Agreement Purchase Price | 785.00 |

# GUARANTEED AUTO PROTECTION PROGRAM
## Debt Cancellation Agreement/Addendum - Wisconsin

(PLEASE PRINT OR TYPE)

### Dealer Information

| Name | | | Dealer Code |
|---|---|---|---|
| ANDREW MOTOR SALES INC | | | 48033 |
| Address | | | |
| 1620 W SILVER SPRING DR | | | |
| City | State | Zip | Telephone |
| MILWAUKEE | WI | 53209 | (414)228-1450 |

### Customer Information

| Customer Name | | | |
|---|---|---|---|
| NAKECIA N DEAN | | | |
| Co-Buyer/Co-Lessee Name | | | |
| | | | |
| Address | | | |
| 9560 N GOIN ST | | | |
| City | State | Zip | Telephone |
| BROWN DEER | WI | 53223-1200 | (414)355-8283 |

### Vehicle Information

| Make | Model | Model Year | Mileage |
|---|---|---|---|
| INFINITI | QX56 | 2007 | 44998 |
| Vehicle Identification Number | | | |
| 5N3AA08C97N804748 | | | |

### Financial Institution Information

| Name | | | |
|---|---|---|---|
| WELLS FARGO DEALER SERVICES INC | | | |
| Address | | | |
| P.O. BOX 168048 | | | |
| City | State | Zip | Telephone |
| IRVING | TX | 75016 | |
| Retail (R) or Lease (L) | Retail/Lease Contract Term (months) | | Retail/Lease Contract Start Date |
| (R) | 72 | | 11/10/2012 |

**The purchase of this Debt Cancellation Agreement/Addendum is strictly voluntary.** You agree to purchase the protection ("GAP Protection") described in this Agreement for the additional charge set forth above as the "Agreement Purchase Price." GAP Protection is not required in order for You to obtain credit, or to obtain any particular or more favorable credit terms.

**Benefit Provided**
In return for the payment of the Agreement Purchase Price, and subject to the terms, limitations, exclusions and conditions of this Agreement, We agree to waive the difference between the Vehicle's Cash Value and Net Payoff in the event of a Total Loss within the United States or Canada, as such terms are defined on the back of this Agreement. GAP Protection is not a substitute for collision or property damage insurance.

The term of this Agreement must equal the original term of Your retail or lease contract. This Agreement is not transferable unless the original retail or lease contract transfers. Please retain Your copy of this Agreement. Program details are outlined on the back of this Agreement.

By Your signature below, You acknowledge that You have read and understand both sides of this Agreement, and that You have received a completed copy of this Agreement.

| | |
|---|---|
| Signature of Customer | Date  11/10/2012 |
| Signature of Co-Buyer/Co-Lessee | Date |
| Signature of Dealer | Date  11/10/2012 |

051348

3527WI (03/05)

# Guaranteed Auto Protection Program
## Debt Cancellation Agreement/Addendum - Wisconsin

**SECTION 1 - DEFINED TERMS**

**SECTION 2 - ASSIGNMENT**

**SECTION 3 - EXCLUSIONS**

**SECTION 4 - LIMITS OF LIABILITY**

**SECTION 5 - NOTIFICATION OF TOTAL LOSS**

**SECTION 6 - CANCELLATION**

Exhibit 16

May. 14. 2019 2:46PM Griffin Chevrolet No. 8006 P. 1

Case 8:18-cv-00332-JVS-MRW Document 102-2 Filed 04/01/20 Page 49 of 52 Page ID #:482

INSTALLMENT SALE CONTRACT

Buyer Name and Address
VON MARIEL GAIFFIR
4392 N OAK ST
MILWAUKEE WI 53216 MILWAUKEE

Co-Buyer Name and Address
N/A

Creditor-Seller (Name and Address)
EDDIE VON SCHLOSSKY, INC.
RR W11167 HAIN ST.
MENOMONEE FALLS, WI 53051

| Year/Make/New | New | Year/Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2012 | BUICK LACROSSE | 1G4GD5E32CF130106 | personal |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 14.99 % | $11161.20 | $21588.08 | $32923.28 | $35025.28 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 458.74 | Monthly beginning 10/22/2015 |

ITEMIZATION OF AMOUNT FINANCED

1. Cash Price $21287.08

NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

## NOTICE TO CUSTOMER
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

# Guaranteed Auto Protection

Debt Waiver Agreement/Addendum to the Financing Agreement

 **ZURICH**

Addendum # RG56034051

| Buyer | | | Dealer | | |
|---|---|---|---|---|---|
| Name | | | Name | | |
| VON | GRIFFIN | | ERNIE VON SCHLEDORN BUICK INC. (HQ) | | |
| Address | | | Address | | |
| 4333 N 62ND STREET | | | N88 W14167 MAIN ST. | | |
| City | State | Zip Code | City | State | Zip Code |
| MILWAUKEE | WI | 53216 | MENOMONEE FALLS | WI | 53051 |
| Phone Number | | | Phone Number | | |
| (414) 534-6880 | | | (262) 255-6000 | | |

| Vehicle Information | | | | | |
|---|---|---|---|---|---|
| Year | Make | Model | | Vehicle Identification Number | Vehicle Mileage |
| 2012 | BUICK | LACROSSE PREMIUM | | 1G4GD5E3ØCF178105 | 32,167 |

| Finance Information | | | |
|---|---|---|---|
| Amount Financed or Gross Capitalized Cost | Term of Financing Agreement | Financing Agreement A.P.R. (Not Applicable for Lease) | Buyer Charge for GAP Coverage |
| $21,568.07 | 72 Months | 14.99% | $895.00 |

| Assignee Financial Institution | | | | |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Wells Fargo Dealer Servic | | | | |

## ACKNOWLEDGEMENT

**You understand that:**

*   THE PURCHASE OF THIS COVERAGE IS OPTIONAL AND HAS NO BEARING ON THE EXTENSION OF CREDIT, THE TERMS OF CREDIT, NOR THE TERMS OF THE SALE OR LEASE OF THE VEHICLE.
*   This Guaranteed Auto Protection (GAP) Contract (Addendum) amends your finance agreement. This addendum is between the You (You, Your or Buyer) and the Dealer/Creditor (We, Us or Our), or upon assignment, with the Assignee Financial Institution.
*   GAP is not a substitute for collision or property damage insurance. This addendum does not provide general liability coverage, nor does it fulfill the requirements of financial responsibility laws and your obligation to insure the vehicle as provided by state law.
*   GAP benefits may decrease over the term of your finance agreement. You are liable for any difference between the amount cancelled and the unpaid balance of your finance agreement.
*   You may want to consult an insurance agent to determine whether similar coverage may be obtained and at what cost.
*   You may cancel this addendum at any point during the original term of your finance agreement. A cancellation requested within 30 days of purchase is eligible for a full refund of the buyer charge if you have not incurred a total loss that resulted in any portion of your net payoff balance being waived. A cancellation request received after 30 days of purchase will be handled according to the Cancellation of Coverage section within this addendum.

This addendum must be purchased on the financing agreement origination date. This coverage will not be provided unless you accept and sign this addendum and agree to pay the buyer charge for GAP coverage. This addendum is not transferable to any other vehicle or finance agreement.

☒ **Acceptance of coverage: I want to purchase this GAP coverage. My signature below means that I understand and agree to the coverage, terms and buyer charge and have verified that the information above is accurate.**

| Buyer's Signature | | Date 09/07/2015 | Dealer's Representative Signature | | Date 09/07/2015 |
|---|---|---|---|---|---|

## COVERAGE

Coverage applies to the terms of the finance agreement on the finance agreement origination date. In the event of total loss of the vehicle occurring within the covered territory, Dealer/Assignee Financial Institution agrees to cancel the difference between the net payoff balance on the **date of loss** and 1) the **primary carrier** settlement including the amount of your primary physical damage deductible on the **primary carrier's** policy up to $1,000 (if permitted by state law) or 2) if there is no **primary carrier**, the **actual cash value**. The maximum cancelled under this addendum is $50,000.

## ELIGIBILITY LIMITATIONS

This addendum shall be void and the full buyer charge refunded if:

A.  The **finance agreement** to which this addendum attaches is ineligible.
    A finance agreement is ineligible if: 1) **your** name does not appear on the **finance agreement**; 2) the **finance agreement** has: a) other than uniform monthly repayment terms for the full period of the agreement with the exception of incidental differences in the first and last payments; b) a first installment payment due more than 90 days after the **finance agreement** origination date; c) a term longer than 84 months; d) GAP coverage is already included in the **finance agreement**; or e) the Amount Financed or Gross Capitalized Cost is greater than $100,000.

B.  The **vehicle** is ineligible.
    A vehicle is ineligible if the **vehicle**: 1) is not licensed for highway use; 2) is used to carry goods or passengers for compensation; 3) is used to transport or tow for hire; 4) is used as an emergency or police vehicle; 5) has a branded title, which includes salvage titles; 6) has less than four wheels; 7) is a conversion van unless converted by the manufacturer or a company approved by the manufacturer; 8) is a motor home; or 9) has a GVWR greater than 12,500 pounds if financed by Ford Motor Credit.

C.  You have concealed or misrepresented any material fact(s), or in the case of fraud.

**ADMINISTRATOR:** Universal Underwriters Service Corporation has been appointed as the administrator of this GAP Program and is authorized to assist you. You may contact the Customer Service Department at: PO Box 7922, Shawnee Mission, KS 66207, or toll free at (888) 835-5063 with questions or to receive help in filing a GAP claim.

V41590DM (04/12)

LZX 90854

## DEFINITIONS

**Actual Cash Value:** The value of the vehicle on the date of loss as determined by the primary carrier. If no primary carrier exists, actual cash value shall mean the average retail value of the vehicle as of the date of loss using the region specific edition of the National Automotive Dealer's Association (NADA) Guide or equivalent, and based upon information available on the options and condition of the vehicle.

**Buyer, You, Your, I:** The natural person(s) named in the finance agreement receiving a loan/financial contract/lease from the financial institution. The purchaser of this addendum.

**Date of Loss:** The date the vehicle sustains a total loss. If such date is indeterminable, the date of loss shall be the date established by the primary carrier or the date the occurrence was reported to the police, whichever is earlier.

**Finance Agreement:** The retail sales installment contract, loan or lease evidencing the sale or lease of the vehicle described on the front page of this addendum.

**Net Payoff Balance:** The amount owed by you to pay off the outstanding balance under the provision of the finance agreement as of the date of total loss less the following: 1) any amount added to the outstanding balance after the finance agreement origination date; 2) loan, lease or finance charges, rental or other charges that accrue after the date of loss; 3) lease prepayment provisions including any early termination charges; 4) delinquent payments or taxes, late charges or finance charges associated with the delinquent payments or taxes; 5) payment extensions, deferred payments and associated charges; and 6) refundable charges, including, but not limited to service contracts, insurance policies or other refundable items included in your finance agreement.

**Primary Carrier:** The insurance company that: 1) is used by you to provide physical damage insurance on the vehicle; or 2) provides liability coverage to any person who has caused the vehicle to incur a total loss.

**Total Loss:** A direct and accidental loss of or damage to the vehicle during the term of this addendum and: 1) the total cost to repair the vehicle including related charges is greater than or equal to the actual cash value; or 2) the vehicle has been reported as stolen to your automobile physical damage insurance company and the police and has not been recovered for a minimum of 30 days after the date of loss; or 3) the primary carrier has settled on a total loss basis.

**Vehicle:** The vehicle which is identified on the front page of this document and which is not an ineligible vehicle as defined in the Eligibility Limitations section of this addendum.

## TERM OF COVERAGE

This addendum begins on the finance agreement origination date and shall not extend beyond the finance agreement original expiration date.

This addendum ends at the earliest of the following: 1) when this addendum is cancelled by you; 2) when the finance agreement is paid in full; 3) on expiration of any redemption period following the repossession or surrender of the vehicle; 4) when a total loss has occurred, after the GAP amount has been waived or it has been determine that no GAP amount exists.

## LIMITATIONS AND EXCLUSIONS

The maximum amount cancelled under this addendum shall be as stated above under Coverage but in any event: 1) shall never exceed 150% of the Manufacturer's Suggested Retail Price (or 150% of the NADA guide for used vehicles) of your vehicle less the actual cash value; or 2) $50,000, whichever is less.

Coverage does not apply and no part of the net payoff balance will be cancelled due to loss or damage: a) resulting from direct or indirect dishonest, fraudulent, criminal or illegal acts by you or any party acting on your behalf; b) caused by an act where you or any party acting on your behalf, intentionally damages the vehicle causing a total loss; c) due to legal confiscation of the vehicle by public official; d) in the event of repossession; e) resulting from being operated, used, or maintained in any race, speed contest, or other contest; or f) deducted from the primary carrier's settlement due to wear and tear or prior damage.

## CLAIM REQUIREMENTS

In the event of a total loss, you must file a claim within ninety (90) days of the date of loss, or not later than ninety (90) days from the date of receipt of the primary carrier's settlement check.

A. Claim information must submitted to the Administrator and includes, but is not limited to the following information:

1) GAP addendum; 2) finance agreement; 3) Payment history from the Financial Institution; 4) Primary carrier's settlement breakdown; 5) Proof of primary insurance payment if applicable; 6) Police/Fire Report if loss is due to theft/vandalism or fire or all loss types if there is no primary insurance; 7) Any reasonable additional documentation.

You may contact the Claims Department with questions or to receive help in filing a GAP claim by any of the following methods:
Toll Free - (888) 801-3079; Fax - (913) 489-3711; E-mail - zdu.gapclaims@zurichna.com or Mail - PO Box 7986, Shawnee Mission KS 66207-0986.

B. You must promptly, diligently and in good faith pursue the settlement by the primary carrier, and cooperate with the Administrator.

C. The Assignee Financial Institution shall be listed as loss payee on all claim checks to reduce or extinguish the unpaid debt, any excess benefit will be paid to you by the Assignee Financial Institution.

If total loss occurs and the finance agreement or vehicle are found to be ineligible due to exclusions stated in the Eligibility Limitations section, this addendum is void and the full buyer charge will be refunded. The refund will be made to the Assignee Financial Institution unless you can provide proof the finance agreement has been paid in full.

## CANCELLATION OF COVERAGE

This addendum may be cancelled at any time while your finance agreement is in effect if you have not incurred a total loss that resulted in any portion of your net payoff balance being waived under this addendum. To cancel this addendum, a written request must be sent to the Dealer or Assignee Financial Institution as shown on the first page of this addendum. A cancellation requested within 30 days of purchase is eligible for a full refund including the amount of the applicable finance charge. A cancellation request received after 30 days of purchase will be refunded according to the pro-rata method.

When this addendum ends because your finance agreement is paid off early or is terminated for any reason, the Assignee Financial Institution shall cause the appropriate prorated refund or credit to be made. The refund will be paid or credited promptly to whom it is entitled. Any refund of the purchase price of this addendum included in your finance agreement may be applied by the Assignee Financial Institution as a reduction in the overall amount owed by you rather than applying the refund strictly to the buyer charge for this addendum unless your finance agreement has been paid in full. The minimum refund shall be $1.00.

In the event any part of your debt has been cancelled under this addendum, the amount charged for this GAP coverage is fully earned and no refund or credit is due. Upon cancellation of this addendum, no benefits will be due to you.

## ASSIGNMENT

This addendum will follow the finance agreement if Dealer sells, assigns or transfers the finance agreement.

## TERRITORY

Coverage applies only to loss occurring in the Continental United States of America or Canada.

V41590DM (04/12)  Page 2 of 2