JASON M. FRANK (190957)
ANDREW D. STOLPER (205462)
SCOTT H. SIMS (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone:  (949) 201-2400
Facsimile:  (949) 201-2405

FRANKLIN D. AZAR (*pro hoc vice*)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:  (303) 757-3300
Facsimile:  (303) 759-5203

CHARLES E. SCHAFFER (*pro hoc vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663

*Attorneys for Plaintiffs, the Proposed Class and Subclass*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARMANDO HERRERA, EDUARDO SALCEDO, DENA LUCERO, FREDERICK BROWN, VANITY ARRINGTON, KASHIF Z. AWAN, GRETTA CARTER, JAMES ATKINS, ILKA ROBINSON-EATON, JANET CORPES, TERRI JONES, HEIDI HUMPHREYS, RIA MARTEINS, BRIAN T. SWEENEY, NAKECIA M.  DEAN, and VON GRIFFIN each individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

WELLS FARGO BANK, N.A. D/B/A WELLS FARGO DEALER SERVICES, INC., WELLS FARGO & COMPANY and MARGUERITE DREW, an individual,

Defendants.

Case No.:  8:18-cv-00332-JVS-MRW

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF NATIONWIDE CLASS ACTION SETTLEMENT**

[*Declarations of Jason M. Frank, Franklin D. Azar, Charles E. Schaffer, L. Scott Baggett and Jennifer M. Keough and [Proposed] Preliminary Approval Order filed concurrently herewith*]

**Date:**          **June 14, 2021**
**Time:**          **1:30 p.m.**
**Courtroom:**      **10C**

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2021 at 1:30 p.m. in Courtroom 10C of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701-4516, or on a different date set by the Court, Plaintiffs will and hereby do move for an order:

1.    Granting preliminary approval of the Class Action Settlement Agreement between Plaintiffs and Defendants (the "Settlement"), a copy of which is attached as **Exhibit 1**.

2.    Appointing and approving JND Legal Administration as the Settlement Administrator.

3.    Approving the form and manner of notice to the Settlement Class as set forth in the Settlement.

4.    Approving Jason M. Frank, Andrew D. Stolper and Scott H. Sims of Frank Sims & Stolper, LLP, Franklin D. Azar of Franklin D. Azar & Associates PC and Charles E. Schaffer of Levin Sedran & Berman APC as Class Counsel for the Settlement Class.

5.    Setting a Final Approval Hearing for the Settlement.

This Motion is based on the grounds that (a) the Settlement is a fair, adequate and reasonable compromise of the claims at issue in this lawsuit, (b) the proposed Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23 and (c) the Notice Plan provides for the best notice practicable under the circumstances and satisfies Due Process and the requirements of Federal Rule of Civil Procedure 23.

This Motion is based on this Notice of Motion and Unopposed Motion; the attached Memorandum of Points and Authorities; the Declarations of Jason M. Frank, Franklin D. Azar, Charles E. Schaffer, L. Scott Baggett and Jennifer E. Keough; the [Proposed] Preliminary Approval Order filed concurrently herewith; the pleadings on file herein; and such other and further materials to be offered at the hearing.

1    Dated:  June 1, 2021                    FRANK SIMS & STOLPER LLP

2                                            By:   /s/ Jason Frank
3                                                JASON M. FRANK, ESQ.
                                                 ANDREW STOLPER, ESQ
4                                                SCOTT H. SIMS, ESQ.
                                                 *Attorneys for Plaintiffs*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................. 7

II.    STATEMENT OF FACTS ..................................................................... 7

       A.    Summary of the Allegations and Defenses. .................................. 7

       B.    State Refund Laws ......................................................................... 9

       C.    Procedural History ......................................................................... 9

             1.    Discovery. .............................................................................. 9

             2.    Important Pleading and Motion Practice. ......................... 11

             3.    History of the Settlement Discussions. ............................. 12

       D.    The Settlement. ............................................................................ 13

             1.    Definition of the Settlement Classes. ............................... 13

             2.    Consideration for the Settlement. ...................................... 14

             3.    Release. ................................................................................ 17

             4.    Settlement Administrator. ................................................. 18

             5.    Notice Plan. ......................................................................... 18

             6.    Claims Period and Process. ............................................... 19

             7.    Opt-Out / Objection Process. ............................................ 20

III.   LEGAL STANDARD ......................................................................... 20

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL ........ 21

       A.    The Fairness Factors Support Settlement Approval ..................... 21

             1.    Adequacy of Representation by Class Representatives
                   and Class Counsel. ............................................................. 22

             2.    Negotiated at Arm's Length .............................................. 22

             3.    Adequacy of the Relief Provided for the Class ................. 23

|  |  | a) | Costs, Risks and Delay of Trial and Appeal............................23 |
|  |  | b) | Effectiveness of Proposed Method of Relief Distribution. ..................................................26 |
|  |  | c) | Terms of the Proposed Award of Attorneys' Fees. .................27 |
|  |  | a. | Agreement Identification Requirement ....................................29 |
|  | 4. | | Equitable Treatment of Class Members....................................29 |
| B. | | | Preliminary Certification of the Proposed Settlement Class.........................30 |
|  | 1. | | The Proposed Settlement Class Meets the Rule 23(a) Requirements....................................................30 |
|  |  | a) | Numerosity...................................................30 |
|  |  | b) | Commonality. ..............................................31 |
|  |  | c) | Typicality. ....................................................32 |
|  |  | d) | Adequacy. .....................................................32 |
|  | 2. | | The Proposed Settlement Class Satisfies Rule 23(b)(3). ....................33 |
|  |  | a) | Common Factual and Legal Issues Predominate Over Individual Questions..........................................33 |
|  |  | b) | A Class Action is a Superior......................................34 |
| C. | | | The Proposed Settlement Class Meets the Notice Requirements under Rule 23(c)(2)(B).............................................35 |
| V. | | | PROPOSED TIMELINES FOR NOTICE, OBJECTIONS AND FINAL APPROVAL ..............................................36 |
| VI. | | | CONCLUSION................................................................36 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

<u>Allapattah Servs., Inc. v. Exxon Corp.,</u>
333 F.3d 1248 (11th Cir.2003) ........................................................34

<u>Ellsworth v. U.S. Bank, N.A.,</u>
2014 WL 2734953 (N.D. Cal. June 13, 2014)....................................33

<u>Feller v. Transamerica Life Insurance Co.,</u>
2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)....................................34

<u>In re Medical Capital Securities Litigation,</u>
2011 WL 5067028 (C.D. Cal. July 26, 2011)....................................33

<u>Transportation Factoring, Inc. v. Pac-Paper, Inc.,</u>
885 F.2d 875, 1989 WL 107823 (9th Cir. 1989)................................31

<u>Vedachalam v. Tata Consultancy Services, Ltd.,</u>
2012 WL 1110004 (N.D. Cal. 2012) .................................................34

**Other State Cases**

<u>Oxford Finance Companies v. Velez,</u>
807 S.W. 2d 460 (Tex. App. 1991).....................................................31

**Other Authorities**

41 Fed. Reg. 20022, 20023 (1979) ..........................................................31

## I.     INTRODUCTION

After three-plus years of hard-fought litigation, Plaintiffs are pleased to announce the Parties have reached a proposed nationwide class action settlement (the "Settlement") with Defendants Wells Fargo Bank, N.A. and Wells Fargo & Company (collectively "Wells Fargo").  A copy of the Settlement is attached as **Exhibit 1**.  Capitalized terms in this Motion shall have the same meaning as those defined in the Settlement.

The Settlement provides an excellent outcome for the Settlement Class and Wells Fargo's customers.  Plaintiffs and their expert estimate that the Settlement will provide nearly **$500 million** in benefits as described in detail below, including over **$417 million** in refunds during the next four years.  (See Declaration of Plaintiffs' expert, L. Scott Baggett, filed concurrently herewith.)  The Settlement is the product of well-informed arm's length negotiations between the Parties, who participated in four mediation sessions throughout the litigation, including an initial session before the Honorable Louis Meisinger (Ret.) and the three later sessions before the Honorable Andrew J. Guilford (Ret.), who presided over this case before retiring from the federal bench.  The Settlement benefits far outweigh the risks, costs and delay of continued litigation which might otherwise overwhelm any potential additional benefits the Class could hope to obtain.

For the reasons set forth herein, Plaintiffs request the Court: (1) certify the proposed Class and Statutory Subclass for settlement purposes only; (2) grant preliminary approval of the Settlement so that Notice of the Settlement may be provided to the Class and Statutory Subclass, (3) approve the form and manner of Notice to the Class and Statutory Subclass; (4) appoint Plaintiffs' counsel as Class Counsel; (5) appoint JND Legal Administration ("JND") to serve as the Settlement Administrator; and (6) set the relevant deadlines for a Final Approval Hearing.

## II.    STATEMENT OF FACTS

### A.     Summary of the Allegations and Defenses.

This case concerns Wells Fargo's practice of not refunding unearned GAP fees after a customer pays off their Finance Agreement before the original maturity date (an "Early

Payoff").  Wells Fargo contends it is not responsible for issuing these refunds because it does not receive the GAP fees, and customers are required to seek the refunds from the original auto dealerships that sold them their vehicles (the "Dealers"), or the administrative companies listed in the GAP Agreements (the "GAP Administrators").  Plaintiffs contend that Wells Fargo has a contractual and legal obligation to issue the refunds as the assignee of the GAP Agreements.  Plaintiffs further contend that Wells Fargo is the entity that receives the GAP fees, because they are directly paid by customers to Wells Fargo as part of their car payments under the Finance Agreement.

A GAP Agreement is an addendum to a Finance Agreement.  It provides that if a customer suffers a total loss of their vehicle and their auto insurance payout does not cover the full amount owed under the Finance Agreement, then the creditor will waive the difference.  (First Am. Compl. (Dkt. 102), ¶¶ 3-6, 54-55, Exs. 1-16.)  Plaintiffs and the Class initially entered into Finance Agreements and GAP Agreements with their Dealers.  (Id.)  The Dealers then immediately sold and assigned these agreements to Wells Fargo.  (Id, ¶¶ 8, 54, 57.)  Plaintiffs contend Wells Fargo, thereafter, took over all rights and obligations under the agreements as the assignee, including the obligation to issue any GAP Refunds.  (Id.)

Plaintiffs allege that if a Finance Agreement is paid off early, or if the GAP coverage is otherwise cancelled before the original maturity date, then a customer is entitled to a prorated refund of the cost of GAP for the remaining unused term of the contract (an "Early Payoff GAP Refund").  (Dkt. 102, ¶¶ 7, 58.)  This unused amount is commonly referred to in the auto finance industry as "unearned" GAP fees.  (Id.)  Plaintiffs contend these fees are "unearned" because once the Finance Agreement is terminated, there is no longer any possible need for GAP protection, and the customer is no longer receiving anything of value by continuing to pay for GAP coverage.  (Id.)

Plaintiffs and the Class paid off their Finance Agreements prior to the original maturity dates (an "Early Payoff").  (Dkt. 102, ¶¶ 29, 60.)  When Wells Fargo informed Plaintiffs and the Class about how much they owed for this Early Payoff,  Wells Fargo

included the unearned GAP fees in the total payoff amount.  (<u>Id.</u>, ¶¶ 11, 61.)  In other words, Plaintiffs contend Wells Fargo charged Plaintiffs for GAP protection through the original end date of the Finance Agreement, even though the contracts were paid off early.  (<u>Id.</u>)

As noted above, Wells Fargo denies it has a contractual obligation to refund the unearned GAP fees.  Instead, Wells Fargo contends that customers are required to seek the Early Payoff GAP Refund from their Dealer or the GAP Administrator.  Wells Fargo further contends that unless the GAP Agreement is subject to a State Refund Law (discussed below), customers are required to strictly comply with written notice requirements in the GAP Agreement as a "condition precedent" for the refund.

**B.    State Refund Laws**.

There are at least 13 States[1] that have laws requiring the assignee of the Finance Agreement -- also known as the "indirect auto lender" -- to take certain actions to ensure that a customer received a GAP Refund after an Early Payoff (the "State Refund Laws").  Wells Fargo contends these State Refund Laws only require indirect auto lenders to "ensure" that the refunds are provided, and that Wells Fargo can still rely on a Dealer or GAP Administrator to timely issue the refund.  Plaintiffs contend these laws require Wells Fargo to directly issue the GAP Refund after the Early Payoff.  For purposes of the Settlement, the Parties have agreed that **Exhibit E** to the Settlement contains a list of the 13 States with State Refund Laws that applied to the Class and the time periods those laws were in effect during the Class Period.  (Settlement, Definitions, ¶ 54, Ex. E.)

**C.    Procedural History.**

**1.    Discovery.**

The initial complaint in this action was filed on February 27, 2018.  (Dkt. 1.) Plaintiffs and their counsel, thereafter, engaged in substantial discovery including:

---

[1] Alabama, Colorado, Iowa, Indiana, Maryland, Massachusetts, Nebraska, New Jersey, Nevada, Oregon, Texas, Vermont, and Wisconsin.

9

- Reviewing and analyzing over a million of pages of documents and electronic records produced by Wells Fargo throughout the litigation, including document productions on the following dates: December 3, 2018, March 28, 2019, April 16, 2018, May 7, 2019, June 10, 2019, June 27, 2019, August 6, 2019, September 10, 2019, October 21, 2019, October 25, 2019, November 4, 2019, December 18, 2019, January 24, 2020, February 17, 2020, June 23, 2020, June 26, 2020, July 15, 2020, July 17, 2020, July 23, 2020, August 25, 2020, September 29, 2020, December 1, 2020, and December 10, 2020;

- Reviewing and analyzing data for over 1.8 million Wells Fargo customers with GAP Agreements who paid off their Finance Agreements early during the time period August 31, 2012 through September 15, 2018;

- Subpoenaing and reviewing thousands of pages of documents from third-party Dealers and GAP Administrators;

- Subpoenaing and reviewing hundreds of pages of documents produced by Wells Fargo to government agencies, including litigating a motion for a protective order filed in Pennsylvania by Wells Fargo concerning those documents;

- Taking eight (8) depositions of various witnesses across the country, including Wells Fargo management, GAP Administrators and Dealers;

- Defending a Class Representative deposition (James Atkins);

- Contacting and interviewing hundreds of Wells Fargo customers as part of a Court approved sampling project;

- Responding to 143 special interrogatories (not including subparts) and 306 requests for admissions;

- Serving and compelling responses from Wells Fargo to 227 special interrogatories and 862 requests for admissions; and

- Working with Congressional Representatives and Attorney Generals throughout the United States investigating Wells Fargo about it practices concerning GAP. (Declaration of Jason M. Frank ("Frank Decl."), ¶ 12.)

As the docket reflects, the Parties also engaged in substantial motion practice before Magistrate Judge Michael R. Wilner concerning discovery issues and contacts with putative class members.  (See, e.g., Dkt. 57-63, 86-87, 109-110, 115-116, 128-130, 132-134, 137-138, 142, 147-149, 151-152, 156-157, 159, 171, 177-178.)

### 2.  **Important Pleading and Motion Practice.**

Plaintiffs filed their initial complaint on February 27, 2018.  (Dkt. 1.)  Wells Fargo filed an answer to the initial complaint on June 13, 2018.  (Dkt. 42.)

After substantial discovery, Plaintiffs filed a request to adopt a bellwether class procedure on November 26, 2019. (Dkt. 74.) Wells Fargo filed an opposition to the request on January 17, 2020. (Dkt. 89.)  Plaintiffs filed a reply in support of the request on January 29, 2020.  (Dkt. 91.)

On February 6, 2020, the case was re-assigned to this Court after the retirement of Judge Guilford.  (Dkt. 92.)   The Court heard Plaintiffs' request for a bellwether class procedure on February 24, 2020, after which the Court ordered Plaintiffs to file their First Amended Complaint ("FAC") with the proposed bellwether classes.  (Dkt. 97).

Plaintiffs filed their operative FAC on April 1, 2020.  (Dkt. 102.)  On June 26, 2020, Wells Fargo filed a motion to dismiss (Dkt. 125), a motion to strike the nationwide class allegations (Dkt. 126) and a motion to compel arbitration for five (5) of the sixteen (16) named plaintiffs (Dkt. 127).  Plaintiffs filed oppositions to these three motions on July 20, 2020.  (Dkt. 145, 146.)  Wells Fargo filed reply briefs on August 3, 2020.  (Dkt. 153, 154, 155).  Per Court order, on August 19, 2020, Plaintiffs filed a separate 30-page opposition to the motion to dismiss and a 30-page opposition to the motion to strike.  (Dkt. 162, 163.)  Wells Fargo filed reply briefs to these oppositions on August 24, 2020.  (Dkt. 175, 176.)

After the Court issued its tentative ruling on Wells Fargo's motion to compel arbitration, Plaintiffs filed a request for oral argument on August 18, 2020.  (Dkt. 165.)  Wells Fargo filed its response on August 21, 2020.  (Dkt. 168.) On September 8, 2020, the Court granted Wells Fargo's motion to compel arbitration without oral argument.  (Dkt. 180.)  On September 17, 2020, Plaintiffs filed a motion for reconsideration or, in the

alternative, certification of an interlocutory appeal. (Dkt. 183.) Wells Fargo filed its opposition to the motion on September 28, 2020. (Dkt. 186.) Plaintiffs filed a reply in support of the motion on October 5, 2020. (Dkt. 187.) The Court denied the motion on October 8, 2020. (Dkt. 191.)

On September 1, 2020, the Court granted in part and denied in part Wells Fargo's motion to dismiss, with leave to amend, and denied Wells Fargo's motion to strike the nationwide class allegations. (Dkt. 179.) The Court granted Plaintiffs thirty (30) days leave to file a Second Amended Complaint. (Dkt. 179, p. 21.) The Parties stipulated to extend this deadline while Plaintiffs conducted additional discovery to support the amended complaint (Dkt. 181), which the Court granted (Dkt. 182). The Parties later stipulated to further extend the deadline to facilitate the Parties' mediation efforts (Dkt. 189), which the Court granted (Dkt. 191). On December 14, 2020, the Parties filed a Joint Notice of Tentative Class Action Settlement and requested the Court vacate the remaining deadlines. (Dkt. 193.)

### 3.    History of the Settlement Discussions.

On November 27, 2018, counsel for the Parties and a client representative from Wells Fargo met in Orange County, California for a pre-mediation settlement conference. After the conference, the Parties agreed it made sense to try to settle Plaintiffs' claims and exchanged relevant documents and information to facilitate those settlement discussions. (Frank Decl., ¶ 18.)

On January 23, 2019, the Parties attended a full-day mediation session before Judge Meisinger at Signature Resolution. (Frank Decl., ¶ 19.) Unfortunately, the Parties were unable to reach a settlement of the case and proceeded to engage in substantial discovery and motion practice. (Id.)

After Plaintiffs filed their operative FAC, the Parties agreed to a second mediation session before Judge Guilford. (Frank Decl., ¶ 20.) The second mediation occurred on June 17, 2020. (Id.) After a full-day session, the Parties were, once again, unable to reach a resolution of this lawsuit. (Id.)

On December 11, 2020, after the Court's ruling on Wells Fargo's motion to dismiss and Plaintiffs' discovery in support of their anticipated Second Amended Complaint, the Parties agreed to a third mediation session before Judge Guilford. (Frank Decl., ¶ 21.) The third mediation was successful resulting in a Term Sheet for a Tentative Nationwide Class Action Settlement. (Id.) The Parties thereafter negotiated various details of the Settlement. (Id.)

On May 6, 2021, after reaching an agreement on all material terms for the Settlement Class, the Parties attended a fourth mediation session before Judge Guilford. (Frank Decl., ¶ 22.) During that session, Judge Guilford heard evidence and arguments regarding an appropriate award of attorney's fees, costs and service awards. (Id.) Judge Guilford indicated that, in advance of the Final Approval Hearing, he intends to offer a declaration supporting the Settlement and recommending that an appropriate fee award is $23.1 million, and an appropriate Service Award is $7,500 for each Class Representative, with the express understanding that this Court has the sole authority to make those determinations. (Id.) Plaintiffs accepted Judge Guilford's recommendations and Wells Fargo agreed not to oppose them. (Id.) Accordingly, Wells Fargo has agreed it will not oppose an application for fees in the amount of $23.1 million and Service Awards for each of the fifteen (15) Class Representatives in the amount of $7,500.[2] (Id.)

### D. The Settlement.

#### 1. Definition of the Settlement Classes.

The Settlement Class (also referred to as the "Class") includes all persons in the United States (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements were terminated as the result of an Early Payoff which occurred during the Class Period, and (c) who did not receive a GAP Refund. (Settlement, Definitions, ¶ 8.) It also includes the members of the Statutory

---

[2] There were originally sixteen (16) named Plaintiffs in the FAC. However, the Court found that the claims of one of the named Plaintiffs (Eduardo Salcedo) were barred by the applicable statutes of limitations. (Dkt. 179, pp. 11, 14-15.) Mr. Salcedo does not fall under the definition of the Settlement Class and his claims will be dismissed, with prejudice, upon Final Approval of the Settlement (if granted by the Court).

Subclass.  (Id.)  The beginning date of the Class Period is based on the State of Origination of the Class Member's Finance Agreement and runs through date of Preliminary Approval of this Settlement.  (Id., Ex. B.)  The Class Period is based on each State's applicable statute of limitations for breach of contract claims.  (Frank Decl., ¶ 24.)  Wells Fargo's records indicate there are potentially over 2.69 million members of the Class.  (Id., ¶ 36.)

The "Statutory Subclass" includes all persons (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo; (b) whose Finance Agreements were subject to State Refund Laws; (c) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Statutory Subclass Period; and (d) who did not receive a GAP Refund from Wells Fargo, or for whom Wells Fargo did not receive written confirmation from a Dealer or GAP Administrator that the GAP Refund was paid.  (Settlement, Definitions, ¶ 55.)  As noted above, for purposes of this Settlement only, the Parties have agreed that **Exhibit E** to the Settlement sets forth a list of the States with State Refund Laws that apply to the Class and the time periods those laws were in effect during the Class Period.  (Id., ¶ 54, Ex. E.)  Wells Fargo's records indicate there are at least 105,274 Statutory Subclass members.  (Frank Decl., ¶ 36.)

Class Members who are not members of the Statutory Subclass are referred to as the "Non-Statutory Subclass Members."

### 2.    Consideration for the Settlement.

The Settlement provides for the following benefits in exchange for the Release:

- **Future GAP Refunds & Business Practice Change.**  No later than **January 1, 2022**, Wells Fargo will implement processes to automatically provide Early Payoff GAP Refunds to customers in all 50 States.  (Settlement, § III.A.)  Customers will not be required to take any action other than completing an Early Payoff to receive an Early Payoff GAP Refund.  (Id.)  This obligation will continue until **January 1, 2026**.  (Id.)  Based on a review of Wells Fargo's records, Plaintiffs' expert estimates that Wells Fargo will pay out approximately **$417,029,964.00** in refunds during this four-year period.  (Declaration of L. Scott Baggett ("Baggett Decl."), ¶¶ 22-23.)  This is money that Wells Fargo was not paying

out prior to the filing of Plaintiffs' lawsuit as substantiated by Wells Fargo's records. (Id., ¶ 23.)

- **Past GAP Refunds to the Statutory Subclass:**  Each member of the Statutory Subclass has received or will receive a settlement payment equal to their full Early Payoff GAP Refund (without any deduction for cancellation fees), plus compensation for the loss of use of these funds based on the one-year constant U.S. maturity treasury rate, compounded annually from the date of the Early Payoff. (Settlement, § III.D.)  Wells Fargo did not begin making these payments until **February 22, 2019**, approximately one year after the filing of this Action.  (Id.)  As part of the Settlement, Wells Fargo represents and warrants that it has paid **$33,357,919.81** collectively to the Statutory Subclass Members between **February 22, 2019** and **March 31, 2021**. (Id.)  The average individual payment was approximately **$316.87**. (Frank Decl., ¶ 27(b).)  To the extent any members of the Statutory Subclass have not yet received their Early Payoff GAP Refund, Wells Fargo represents and warrants that it will directly pay those members their Early Payoff GAP Refund plus compensation for the loss of use of these funds pursuant to the terms of the Settlement. (Settlement, § III.D.)  These amounts will be paid or have been paid separate and apart from the Supplemental Settlement Fund (described below) and will not in any way reduce that fund. (Id.)

- **Additional Compensation Payments to the Statutory Subclass.**  In addition to the payments described above, each member of the Statutory Subclass will receive an "Additional Compensation" payment of up to $5.00.  (Settlement, § III.C.2.)   The Additional Compensation payments will come out of the Supplemental Settlement Fund (described below) and will be directly mailed to the members of the Statutory Subclass without any need for submitting a Claim.  (Id.)

- **Past GAP Refunds to Non-Statutory Subclass Members.**  Each Non-Statutory Subclass Member who submits an executed Claim Form verifying that they did not receive a GAP Refund from a Dealer or GAP Administrator will be eligible to receive a settlement payment up to the full amount of their Early Payoff GAP Refund, without any

deduction for cancellation fees (an "Approved Claim"). (Settlement, § III.C.1.) Depending on the number of Approved Claims, the amount of the individual settlement payments may be reduced on a pro rata basis pursuant to the Operation of the Net Settlement Fund (discussed below).

- **Supplemental Settlement Fund.** Wells Fargo will establish a Supplemental Settlement Fund totaling **$45 million** to pay for: (1) Approved Claims for GAP Refunds to Non-Statutory Subclass Members; (2) the $5.00 Additional Compensation payments to the Statutory Subclass; (3) the Fee and Expenses Awards approved by the Court; and (4) any Service Awards approved by the Court. (Settlement, § III.B.) This fund is non-reversionary. (Id.)

- **Operation of the Net Supplemental Settlement Fund.** The Net Supplemental Settlement Fund is the amount of money that remains in the Supplemental Settlement Fund after the deduction of any Fee and Expense Awards and Service Awards approved by the Court. (Settlement, § III.C.5.) If the amount of the Net Supplemental Settlement Fund is not sufficient to fully cover the cost of (i) the Approved Claims to Non-Statutory Subclass Members and (ii) the $5.00 Additional Compensation payments to the Statutory Subclass, then those amounts will be reduced on a prorated basis to account for the difference. (Id.) Each Class Member's individual payment from the Net Supplemental Settlement Fund will be reduced by the same percentage. (Id.) For example, if the collective total of these items is 10% greater than the Net Supplemental Settlement Fund, then each Class Member's individual payment from the Supplemental Settlement Fund will be reduced by 10%. (Frank Decl., ¶ 27(f).) NOTE: Per the terms of the Settlement, the Parties agreed that this provision will not reduce the refund payments owed to the Statutory Subclass Members (described above), and will only potentially reduce their Additional Compensation payments, due to the fact those members have stronger claims based on the State Refund Laws. (Id.)

- **Notice and Administrative Costs.** Wells Fargo will separately pay for all Notice and Administrative Costs, including sending a copy of the Notice of Settlement, by

first-class mail, to over 2.69 million Wells Fargo customers.  (Settlement, § III.E.; Frank Decl., ¶ 27(g).)  Plaintiffs' counsel estimates the total notice and administrative costs will be approximately **$3 million**.  (Id.)  These costs will be in addition to the amounts deposited in the Supplemental Settlement Fund and will not in any way reduce that fund.  (Settlement, § III.E.)

- **Attorney Fees and Costs for Class Counsel.**  Wells Fargo agrees that it will not oppose an application for fees up to the amount of **$23.1 million** and reimbursement of Class Counsel's costs up to **$500,000.00**.  (Settlement, § VI.A.)  Class Counsel has spent over 17,403 hours working on this case, with a lodestar of approximately $10,756,655.75.  (Frank Decl., ¶ 52.)  To date, Class Counsel has incurred at least $258,455.27 in expenses.  (Id., ¶ 54.)

- **Service Awards.**  Wells Fargo agrees that it will not oppose an application for Service Awards of **$7,500** for each of the Class Representatives.  (Settlement, § VI.E.)

### 3.	Release.

Plaintiffs and every member of the Class and Statutory Subclass who does not timely request exclusion from the Settlement will release Wells Fargo and the Class Releasees from "any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to an Early Payoff GAP Refund for an Early Payoff that occurred during the Class Period (the 'Class Released Claims')."  (Settlement, § II.A.)

The Class Releasees include Wells Fargo and each of their "former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, and employees and attorneys." (Settlement, § II.A.)  Notwithstanding the foregoing, the Class Releasees do <u>not</u> include any Dealers or GAP Administrators, including without limitation, those identified in the Class Members' GAP Waiver Agreements or the Finance Agreements.  (<u>Id.</u>)  In other words, the Settlement Class and Subclass will preserve any potential claims against those entities.  (<u>Id.</u>)

### 4.    Settlement Administrator.

The Parties have selected JND to serve as the Settlement Administrator subject to this Court's approval. (Settlement, Definitions, ¶ 3.)   JND's experience and qualifications are set forth in the Declaration of Jennifer Keough (CEO of JND) filed herewith.

### 5.    Notice Plan.

No later than 45 days after Preliminary Approval of the Settlement, Wells Fargo will provide a list of the names and contact information for every potential Class Member, as well as the known members of the Statutory Subclass.  (Settlement, §§ III.C.1.b., 2.b.)  The Settlement Administrator will conduct a National Change of Address ("NCOA") search to obtain updated addresses prior to the dissemination of the Notice.  (<u>Id.</u>, § V.A.)

Each potential Class Member will receive a customized Notice of Settlement that will indicate the vehicle covered by the Settlement and the estimated amount of money they may be eligible to receive under the Settlement. (Settlement, Exs. C, D.)  The Notice will further apprise Class Members of the pendency of the Action, the terms of the proposed Settlement, and their right to appear, object to, or exclude themselves from the Settlement.  (<u>Id.</u>)  Copies of the Notice to the Class and the Notice to Statutory Subclass are attached to the Settlement Agreement as Exhibits C & D.  (<u>Id.</u>)

No later than 60 days after the Preliminary Approval of the Settlement, or August 14, 2021, whichever is later, the Settlement Administrator will send a copy of the Notice, via first class mail and email (where available from Wells Fargo's records) to each potential Class Member.  (Frank Decl., ¶ 33.)  On the first day the Notices are mailed, the Settlement

Administrator will also make an informational Settlement Website available to the public, which will include a copy of the Settlement Agreement, the Notices, the FAC, this Motion and its supporting declarations and other important documents.  (Id.)

### 6.   Claims Period and Process.

As noted above, the Non-Statutory Subclass Members will be required to submit a Claim Form verifying that they did not previously receive a GAP Refund from a Dealer or GAP Administrator.  (Settlement, § III.C.1.)  These Class Members will have 60 days to submit a Claim Form after the mailing of the Notice of Settlement (the "Claims Period").  (Id., § III.C.1.e.)

Each Non-Statutory Subclass Member will receive a customized Claim Form that will indicate the vehicle covered by the Settlement.  (Settlement, Ex. A.)  The Class Member will then be required to check four boxes verifying that: (a) they are the owner of the vehicle identified in the Claim Form which had GAP coverage and was paid off early; (b) they did not cancel their GAP coverage prior to paying off the Finance Agreement associated with the vehicle; (c) they did not receive any benefits under their GAP Agreement after a total loss of the vehicle; and (d) they did not receive a refund of any portion of the amount paid for GAP, including from a Dealer or GAP Administrator.  (Id.)  The Class Member will then be required to sign and date the Claim Form verifying that the above information is accurate under penalty of perjury.  (Id.)  Wells Fargo does not maintain records of this information in the ordinary course, which is why the Non-Statutory Subclass Members are being required to verify this information in a Claim Form.  (Frank Decl., ¶ 34.)  A copy of the Claim Form is attached to the Settlement as Exhibit A.

To make the claims process user-friendly, the Non-Statutory Subclass Members may fill out their Claim Form on the Settlement Website and sign it electronically or mail the completed Claim Form to the Settlement Administrator.  (Settlement, § IV.B.; Frank Decl., ¶ 34.)  Class Members may also scan a unique QR code on their Claim Form to complete and submit the Claim Form on their smartphone or tablet.  (Id.)

Statutory Subclass Members will not need to submit a Claim Form because the validity of their claims can be established from Wells Fargo's records.  (Frank Decl., ¶ 34.)

### 7. **Opt-Out / Objection Process.**

Class Members will have 60 days after the mailing of the Notice of Settlement to Request Exclusion or "opt-out" from the Settlement Class (the "Response Deadline"). (Settlement, § VII.D.; Frank Decl., ¶ 35.)  All Requests for Exclusion must be made in writing and signed by the Class Member.  (<u>Id.</u>)  To be valid, the Request for Exclusion must be mailed to the Settlement Administrator and post-marked no later than the Response Deadline.  (<u>Id.</u>)

Class Members who do not Request Exclusion from the Settlement Class may submit a written objection to the Settlement signed by the Class Member (an "Objection"). (Settlement § VII.E.; Frank Decl., ¶ 35.)  The Objections must include the reason(s) for the objections and any supporting authority.  (<u>Id.</u>)  To be valid, the Objections must be mailed to the Settlement Administrator and post-marked no later than the Response Deadline.  (<u>Id.</u>) The Objections must also be filed with the Court and served on counsel for the Parties by the Response Deadline.  (<u>Id.</u>)  Objectors must also file a Notice of Intention to Appear with the Court by the Response Deadline if they wish to speak at the Final Approval Hearing. (<u>Id.</u>)  In addition, if an Objection is being filed by a lawyer on the Class Member's behalf, the lawyer must also file a Notice of Appearance with the Court by the Objection Deadline which includes a declaration attesting that lawyer represents the Class Member and specifying the number of times during the prior five-year period that the lawyer has objected to a class action settlement on his or her own behalf or on behalf of a class member.  (<u>Id.</u>) Detailed instructions for the Opt-Out/Objection process will be included in the Notice. (Settlement, Exs. C, D, §§ 11, 17.)

## III.   **LEGAL STANDARD**

Pursuant to Rule 23(e),[3] class action settlements must be approved by the Court. <u>Jordan v. Michael Page International, Inc.</u>, 2020 WL 3124359, at *4 (C.D. Cal. Feb. 24,

---

[3] All references to "Rules" are to the Federal Rules of Civil Procedure.

2020) (J. Selna). "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." <u>True v. Am. Honda Motor Co.</u>, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010). Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. Manual for Complex Litigation (Fourth) § 13.14 at 173. Public policy strongly favors and encourages settlements of class actions. <u>In re Pac. Enterprises Sec. Litig.</u>, 47 F.3d 373, 378 (9th Cir. 1995).

To obtain preliminary approval, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class." <u>Jordan</u>, 2020 WL 3124359, at *4. "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the propos[ed] [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." <u>Id.</u>

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.   The Fairness Factors Support Settlement Approval.

The Court may only grant preliminary approval of a settlement by finding it is fair, reasonable and adequate. Fed.R.Civ.P. 23(e)(2); <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003). To make this determination, the Court must consider the following factors: (1) the class representatives and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. <u>Jordan</u>, 2020 WL 3124359, at *5 (citing Fed. R. Civ. P. 23(e)(2).)

Before the revisions to Rule 23(e), the Ninth Circuit had developed its own list of factors to be considered.  See e.g. In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011).  The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns."  Jordan, 2020 WL 3124359, at *5 (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.)  "The goal of [amended Rule 23(e)] is ... to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Id.

### 1. Adequacy of Representation by Class Representatives and Class Counsel.

Under Rule 23(e)(2)(A), the first factor to consider is whether the class representatives and class counsel have adequately represented the class.  Jordan, 2020 WL 3124359, at *5.  This analysis focuses on "the nature and amount of discovery" undertaken in the litigation.  Id.

As noted above, the parties have engaged in substantial discovery, including: (i) reviewing and analyzing over a million of pages of documents and electronic records produced by Wells Fargo; (ii) reviewing and analyzing thousands of pages of documents from third-party Dealers and GAP Administrators; (iii) taking eight (8) full-day depositions of various witnesses across the country, including Wells Fargo management, third-party GAP Administrators and Dealers; (iv) Defending a full-day deposition of one of the Class Representatives; (v) contacting and interviewing hundreds of Wells Fargo customers; (vi) responding to 143 special interrogatories (not including subparts) and 306 requests for admissions; and (vii) serving and compelling responses from Wells Fargo to 227 special interrogatories and 862 requests for admissions.  (Frank Decl., ¶ 12.)  The Parties have also extensively briefed the legal issues for the Court.  (See supra § II.C.2. above.)  The evidence demonstrates that Plaintiffs have adequately represented the Class.

### 2. Negotiated at Arm's Length.

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed

settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Jordan, 2020 WL 3124359, at *5 (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).

In the present case, the Parties attended four mediation sessions throughout the litigation, the first before Judge Meisinger and the latter three before Judge Guilford. (Frank Decl., ¶¶ 18-22.)  Both judges are highly experienced in class action litigation and well-respected mediators.  (Id.)  Judge Guilford was also the former judge who presided over this matter and thus was particularly familiar with the issues in the case.  (Id.)  Each of the Parties are represented by experienced counsel, and the Settlement was reached after careful consideration of the risks and benefits of continued litigation, with the aid of this Court's rulings on Wells Fargo's motion to dismiss, motion to strike and motion to compel arbitration.  (Id., ¶¶ 3-10, 23, 37, 48(e).)  Thus, because the evidence demonstrates the Settlement was the product of arm's length negotiations and not the product of collusion, this factor weighs in favor of preliminary approval.

### 3.   Adequacy of the Relief Provided for the Class.

The third Rule 23(e)(2) factor concerns the adequacy of the relief provided for the class, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed attorneys' fees and (iv) any agreement required to be identified under Rule 23(e)(3). Jordan, 2020 WL 3124359, at *6 (citing Fed. R. Civ. P. 23(e)(2)(C).)

#### a)   Costs, Risks and Delay of Trial and Appeal.

"A central concern when evaluating a proposed class action settlement ... relate[s] to the cost and risk involved in pursuing a litigated outcome." Jordan, 2020 WL 3124359, at *6. "In the context of a settlement ... the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." Id. 'Great weight' is accorded to the recommendation of

counsel, who are most closely acquainted with the facts of the underlying litigation." <u>Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

First*, with respect to the Statutory Subclass, while Plaintiffs believe the State Refund Laws require Wells Fargo to directly issue the refunds, Plaintiffs recognize the interpretation of these laws will, in most instances, present an issue of first impression and there is no guarantee Plaintiffs' view will prevail.  (Frank Decl., ¶ 48(a).)

Second, with respect to the Non-Statutory Subclass, Plaintiffs believe they have a strong case but recognize there are serious challenges to these claims, including: (i) these Class Members are unable to rely on State Refund Laws as a basis for their refunds, (ii) they are subject to Wells Fargo's defense that they did not strictly comply with the GAP Agreements' written notice requirements; and (iii) they are subject to Wells Fargo's argument that Wells Fargo did not assume the contractual obligation to issue the refund as part of the assignment of the Finance Agreement.  (Frank Decl., ¶ 48(a).)

Third, based on the Court's ruling on Wells Fargo's motion to compel arbitration, a significant percentage of the Class would be required to arbitrate their claims on an individual basis, which would not be cost effective for these Class Members given the relatively small individual refund amounts at issue.  (Frank Decl., ¶ 48(b).)

Fourth, while courts routinely certify breach of contract claims on a nationwide basis – especially where, as here, the Class Members were subject to a uniform practice by a bank – there is a material risk that Wells Fargo's arguments against class certification could prevail or present a risk of decertification in the future. (Frank Decl., ¶ 48(c).)

Fifth, while the Parties have been vigorously litigating this case for the last three-plus years, this case is still at the pleading stage.  Absent a Settlement, there would likely be another round of briefing on a motion to dismiss, plus class certification briefing, summary judgment briefing and a trial in the future.  (Frank Decl., ¶ 48(d).)  Consequently, this litigation would likely take at least two years before a final resolution was reached in this matter, not including the time for appeal.  (<u>Id.</u>)

Sixth, this has been and will continue to be expensive litigation against a well-represented opponent. (Frank Decl., ¶ 48(e).) Wells Fargo is represented by two highly regarded national law firms in McGuire Woods, LLP and Troutman Pepper Hamilton Sanders, LLP. (Id.) To date, Class Counsel have already incurred over $10,756,655 in legal fees and $258,455 in expenses. (Id., ¶¶ 52, 54.) Given that this case is still at the pleading stage, the costs of proceeding in this litigation will continue to rise at a substantial rate. (Id., ¶ 48(e).)

In light of these risks, the proposed Settlement provides an outstanding result for the Class. (Frank Decl., ¶¶ 43, 49.) Each member of the Statutory Subclass will receive 100% of their Early Payoff GAP Refund (if they have not received it already), plus compensation for the loss of use of their funds based on the one-year constant U.S. maturity treasury rate, compounded annually from the date of the Early Payoff, plus an additional payment of up to $5.00. (Id., ¶ 44.) This Settlement is essentially a complete win for the Statutory Subclass, and the risks and costs of continued litigation are far outweighed by the benefits of the Settlement. (Id.)

The Non-Statutory Subclass Members are eligible to receive up to the full amount of their Early Payoff GAP Refund, without any deduction for cancellation fees.[4] (Settlement, ¶ 47; Frank Decl., ¶ 45.) This would be the maximum amount of damages these Class Members could realistically obtain or be awarded at trial, exclusive of prejudgment interest. (Id.) In addition, on a go forward basis, Wells Fargo will automatically and directly refund customers after an Early Payoff in all 50 States for at least a four-year period, including the States that do not have State Refund Laws. (Id., ¶ 46.) If this practice had been in place prior to the filing of this Action, it would have resulted in Wells Fargo paying out approximately $104,257,491 in refunds per year during the four-year period prior to the filing of this lawsuit (Jan. 1, 2013 through Dec. 31, 2017). (Baggett Decl., ¶ 17.) Based on Wells Fargo's records, Plaintiffs' expert has determined

---

[4] Notably, the amount of the cancellation fees typically range from $25 to $50, which is sometimes more than the Early Payoff GAP Refund, so avoiding these fees is a significant benefit. (Frank Decl., ¶ 45, n. 2.)

**UNOPPOSED** MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

that Wells Fargo will pay out at least **$417,029,964** in future GAP Refunds during the four-year period provided by the Settlement.  (Id., ¶¶ 22-23.)

Obtaining this business practice change was one of the primary goals of this lawsuit. (Frank Decl., ¶ 46; FAC (Dkt. 102), ¶ 17(c).)  While the change is not permanent under the terms of the Settlement, Class Counsel anticipates that the four-year period will demonstrate to Wells Fargo that it should adopt this change on a permanent basis. (Id.)

Simply put, the benefits of this Settlement far outweigh the risks, costs and delay of further litigation.  (Frank Decl. ¶¶ 48-49.)  The Release provided in the Settlement is narrowly tailored and allows Class Members to preserve any claims they may have against Dealers or GAP Administrators for unpaid refunds.  (Settlement, § II.A.)  Moreover, there can be little doubt that resolving the Class Members' claims through a single class action is superior to a multitudinous series of individual lawsuits.  Indeed, the terms of the Settlement demonstrate the advantages of a collective bargaining and resolution process. Accordingly, these factors strongly favor preliminary approval.

### b)    Effectiveness of Proposed Method of Relief Distribution.

The Court is also instructed to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Jordan, 2020 WL 3124359, at *7.

With respect to the Non-Statutory Subclass, each member will be mailed an individually customized Notice and Claim Form so they can submit a Claim verifying they have not previously received a GAP Refund from their Dealer or GAP Administrator and are entitled to a settlement payment.  (Frank Decl., ¶¶ 33-34.)  As described above, Plaintiffs negotiated for a user-friendly Claims process that allows Class Members to complete and submit their Claim Forms on the Settlement Website or by scanning the QR Code on their smartphone or tablet, in addition to the traditional option of mailing their Claim Form to the Settlement Administrator.  (See supra § II.D.6.)  The Claim Form simply

requires the Class Member to check four-boxes and sign the form, so that the Settlement Administrator can verify that the individual is a Class Member entitled to compensation under the Settlement, and to deter unjustified Claims.  Id.

With respect to the Statutory Subclass Members, Wells Fargo was able to verify the validity of their claims from its own records, so they will not have to submit a Claim Form. (Frank Decl., ¶ 34.)  Wells Fargo has mailed or will mail the settlement payments directly to the Statutory Subclass, with the exception of the $5.00 Additional Compensation payments which will be paid from the Supplemental Settlement Fund and mailed by the Settlement Administrator.  (Id.)  These subclass members will receive Notice, so they will be able to contact the Settlement Administrator if they did not previously receive the settlement payments from Wells Fargo required under this Settlement.  (Id., ¶ 33, Ex. D.)

As established above, this claims process is not unduly demanding and provides an effective method of distributing relief to the Settlement Class and Statutory Subclass.

c)  <strong>Terms of the Proposed Award of Attorneys' Fees</strong>.

The Court is also instructed to consider the terms of any proposed award of attorneys' fees.  Fed. R. Civ. P. 23(e)(2)(C).  Here, Class counsel is seeking an award of $23.1 million.  This is less than 5% of the total Settlement value (nearly $500 million), and results in a lodestar multiplier of approximately 2.15.  (Frank Decl., ¶¶ 28, 55.)

When a Settlement creates a common fund for the benefit of the Class, the Court has discretion to evaluate the reasonableness of a fee award under the percentage-of-the-benefit method (the "percentage method") or the lodestar method.  In re Bluetooth, 654 F.3d at 942.  When the benefits of the Settlement can be easily quantified, courts typically calculate 25% of the benefits as the 'benchmark' for a reasonable fee award.  Id.

Courts may also employ the lodestar method.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).  Under the lodestar method, the Court multiplies the number of hours worked by a reasonable hourly rate, which may then be adjusted by a positive or negative multiplier depending on various factors, including the complexity of the litigation, the risk of non-payment in common fund cases and the benefits achieved.  Id. at 1050-51.

"The Ninth Circuit has noted that multipliers range from 1.0 – 4.0 and a 'bare majority' fall within the range of 1.5 - 3.0." <u>In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation</u>, 2013 WL 12327929, at *29 (C.D. Cal. July 24, 2013, 2018) (J. Selna).  "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 298 (N.D. Cal. 1995).

When determining the total value of a Settlement under the percentage method, the Court may include the value of a concrete business practice change if it can be accurately ascertained.  <u>In re Yahoo! Inc. Customer Data Security Breach Litigation</u>, 2020 WL 4212811, at *38 (N.D. Cal. 2020) (citing <u>Staton</u>, 327 F.3d at 974).  Likewise, the Court may include the cost of providing notice to the class and the administration costs as part of the overall benefit.  <u>Id.</u> (citing <u>In re Anthem, Inc. Data Breach Litigation</u>, 2018 WL 3960068, at *8-9 (N.D. Cal. Aug. 17, 2018).)

Here, the value of Wells Fargo's Business Practice Change can be accurately ascertained based on the years of consistent data produced by Wells Fargo for a six-year period both preceding and following the filing of this lawsuit (August 31, 2012 to September 15, 2018) for over 1.8 million loan files.  (Baggett Decl., ¶¶ 14-23.)  That data shows that if the Settlement's Business Practice Change had been in effect during those earlier years, Wells Fargo would have paid out over **$616 million** in Early Payoff GAP Refunds that Wells Fargo was not otherwise paying.  (<u>Id.</u>, ¶ 21.)  Because the amounts were consistent over time, and did not materially fluctuate from year to year, Plaintiffs' expert (Dr. Baggett) can reliably estimate what Wells Fargo will pay out in the future as a result of the Settlement's Business Practice Change.  (<u>Id.</u>, ¶¶ 22-23.)  Specifically, Dr. Baggett estimates that Wells Fargo will pay out at least **$417 million** in refunds during the four-year period provided by the Settlement. (<u>Id.</u>)  As Dr. Baggett notes, "[t]hese are 'hard dollars' that Wells Fargo will be paying out as a result of the Settlement" and "[t]his is money that Wells Fargo was not paying out prior to the filing of Plaintiffs' lawsuit as substantiated by Wells Fargo's records."  (<u>Id.</u>, ¶ 23.)

In addition, Wells Fargo has already paid out approximately $**33.36 million** in refunds to the Statutory Subclass and will pay out an additional **$45 million** in the Supplemental Settlement Fund for a total of **$78.36 million** in refunds to the Class. (Frank Decl., ¶ 27(b), 28.)  Further, Wells Fargo will separately pay the notice and administration costs, which are estimated to be approximately **$3 million**. (Id., ¶ 27(g).)  This brings the total value of the Settlement to nearly **$500 million** ($417 million + 78.36 million + 3 million = $498.36 million). (Id., ¶ 28.)  In comparison, an award of $23.1 million is less than 5% of the total Settlement value, which is far less than the standard 25% benchmark. (Id., ¶ 55.)

Under the lodestar method, a $23.1 million fee award would result in a lodestar multiplier that is less than 2.15 ($23,100,000 / $10,756,655 = 2.148). (Frank Decl., ¶ 55.) Given the complexity of the litigation, the risks incurred by Class Counsel and the outstanding outcome in this case, this multiplier is well within the reasonable range approved in similar cases.  See In re Wells Fargo Collateral Protection Insurance Litigation, 2019 WL 6219875, at *5-6 (C.D. Cal. Nov. 4, 2019) (approving $34 million in attorney fees, which represented approximately 8.0% of the total settlement value and a 2.3 lodestar multiplier); Van Vranken, 901 F. Supp. at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.")

### a.  Agreement Identification Requirement.

There are not any agreements other than the Settlement. (Frank Decl., ¶ 23.)

### 4.    Equitable Treatment of Class Members.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equally relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Jordan, 2020 WL 3124359, at *7.

Here, the Settlement appropriately makes a distinction between Statutory Subclass Members and the Non-Statutory Subclass Members.  The Statutory Subclass Members have stronger claims because they can rely on State Refund Laws that require indirect auto lenders, like Wells Fargo to, at a minimum, "ensure" that a GAP Refund is paid after an Early Payoff.  (Frank Decl., ¶ 27(f).)  This is why the members of the Statutory Subclass are receiving refunds separate and apart from the Supplemental Settlement Fund.  (Id.; see also supra § II.D.2. ("Operation of Net Supplemental Settlement Fund").)  Otherwise, the Settlement benefits and Release are the same for all members.

## B.    Preliminary Certification of the Proposed Settlement Class.

The second prerequisite for directing notice of the settlement to the class is a determination that the class is likely to meet the requirements for certification for settlement purposes.  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) be satisfied.  Jordan, 2020 WL 3124359, at *7.

### 1.    The Proposed Settlement Class Meets the Rule 23(a) Requirements.

"Rule 23(a) imposes four prerequisites for class actions: (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the named plaintiff's claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy)."  Jordan, 2020 WL 3124359, at *7.

#### a)    Numerosity.

Under Rule 23(a)(1), a class must be so numerous that joinder of all members is impracticable.'"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Based on Wells Fargo's records, there are over **2.69 million** potential members of the Class and

**105,274 members** of the Statutory Subclass.[5]  (Frank Decl. ¶ 36.)  This is large enough to satisfy numerosity.  <u>Vinh Nguyen v. Radient Pharmaceuticals Corp.</u>, 287 F.R.D. 563, 569 (C.D. Cal. 2012) ("[A] proposed class of at least forty members presumptively satisfies the numerosity requirement.").)

### b)   Commonality.

Rule 23(a)(2)'s commonality requirement is satisfied if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  However, to satisfy this rule, all questions of fact and law need not be common.  <u>Hanlon</u>, 150 F.3d at 1019.  For the purposes of Rule 23(a)(2), "even a single common question" satisfies the requirement.  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 359 (2011).

In the present case, Plaintiffs are challenging a single policy that affects all Class Members, i.e., Wells Fargo's policy not to refund unearned GAP fees after an Early Payoff. The foundational common question underlying these claims is whether Wells Fargo took over the obligation to issue the Early Payoff GAP Refund as the assignee of the GAP Agreements.  Plaintiffs contend this question can be answered based on well-established assignment law and the Federal Holder Rule (16 C.F.R. § 433.2(a)) which provide that the assignee of a finance agreement "steps into the shoes" of the assignor and takes over the contractual obligations.  <u>See, e.g.</u>, <u>Transportation Factoring, Inc. v. Pac-Paper, Inc.</u>, 885 F.2d 875, 1989 WL 107823 (9th Cir. 1989) ("It is hornbook law in every jurisdiction that an assignment merely places the assignee [] in the assignor's [] shoes"); <u>Oxford Finance Companies v. Velez</u>, 807 S.W. 2d 460, 463 (Tex. App. 1991) ("The clear and unambiguous language of the [Holder] Rule 'notifies all potential holders that, if they accept an assignment of the contract, they will be 'stepping into the seller's shoes.'") (citing 41 Fed. Reg. 20022, 20023 (1979).)  The claims of the Statutory Subclass Members can also be

---

[5] At this time, the Parties can only estimate the number of <u>potential</u> Class Members, because Wells Fargo does not know which customers may have received a refund from a Dealer or GAP Administrator (which is one of qualifications for the Class definition).  (Frank Decl., ¶ 36 n. 1.)  Nevertheless, given that Wells Fargo can verify that there at least 105,274 members of the Statutory Subclass Members, the Parties can safely attest that the Settlement Class satisfies the numerosity requirement.  (<u>Id.</u>)

resolved based on the interpretation of the State Refund Laws.  Thus, because the Class claims are based on the same conduct and share common legal issues, the commonality requirement is satisfied.

### c)      Typicality.

Rule 23(a)(3)'s typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Hanlon, 150 F.3d at 1020.  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Id.  The test for typicality is (1) whether other members have a similar injury, (2) whether the action is based on conduct that is not unique to the named plaintiffs, and (3) whether the same course of conduct has injured other class members.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Here, the Class Representatives suffered the same injury, i.e., they did not receive an Early Payoff GAP Refund from Wells Fargo after their Early Payoff as a result of Wells Fargo's uniform practice of not paying such refunds.  (FAC (Dkt. 102), ¶¶ 28-29.)  The Class Representatives include individuals whose Finance Agreements were subject to State Refund Laws (and thus would be members of the Statutory Subclass), and those that were not (and thus would be Non-Statutory Subclass Members).  (Id., ¶ 36.)  As such, the typicality requirement is satisfied.

### d)      Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is fair and adequate when (1) the representative plaintiffs and counsel have no conflicts of interest with other class members and (2) the representative plaintiffs and counsel will prosecute the action vigorously on behalf of the class.  Staton, 327 F.3d at 957.

Here, the Class Representatives and Class Counsel do not have any known conflicts of interests with the Class, and the Class Representative's claims are based on the same conduct that affected the rest of the Class.  (Frank Decl. ¶ 38.)  Plaintiffs are represented

by experienced Class Counsel who have vigorously litigated this case on behalf of the Class.  (Id., ¶ 37.)  Thus, the adequacy requirement is satisfied.  Jordan, 2020 WL 3124359, at *9.

## 2. The Proposed Settlement Class Satisfies Rule 23(b)(3).

Plaintiffs contend that the proposed Class is maintainable under Rule 23(b)(3).  This requires Plaintiffs to show that (1) common factual and legal issue predominate over individual questions and (2) a class action is a superior method to resolve class claims.  Jones, 2020 WL 3124359, at *9 (citing Fed. R. Civ. P. 23(b)(3)).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  In re Hyundai, 926 F.3d 539, 556–57 (9th Cir. 2019).  "In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial."  Id.  In contrast, "such manageability issues are not a concern in certifying a settlement class where, by definition, there will be no trial."  Id.  Thus, "[b]ecause the Settlement Class is certified solely for purposes of settlement, the Court need not address any issues of manageability for litigation purposes."  Schmitt v. Younique, LLC, 2020 WL 1812354, at *2 (C.D. Cal. Apr. 9, 2020) (J. Selna).

### a) Common Factual and Legal Issues Predominate Over Individual Questions.

Rule 23(b)(3)'s predominance requirement is satisfied when common questions present a significant portion of the case and can be resolved for all members in a single adjudication.  Hanlon, 150 F.3d at 1022.  In the present case, the primary issues in dispute are whether Wells Fargo, as the assignee of the GAP Agreement, assumed the GAP Agreement's contractual obligation to issue a refund of unearned GAP fees after an Early Payoff and whether Wells Fargo's policy to direct customers to obtain the refund from the Dealer constitutes a breach of the GAP Agreement.  The GAP Agreements are standard form contracts that provide for a GAP Refund when the Finance Agreement is cancelled or terminated prior to the maturity date.  (Dkt. 102, ¶ 44.)

"Courts routinely certify class actions involving breaches of form contracts."  In re

<u>Medical Capital Securities Litigation</u>, 2011 WL 5067028 at *3 (C.D. Cal. July 26, 2011). This is especially the case when "they involve form contracts and standardized policies and practices applied on a routine basis to all customers by a bank." <u>Ellsworth v. U.S. Bank, N.A.</u>, 2014 WL 2734953 at *22-23 (N.D. Cal. June 13, 2014) (citing <u>Gutierrez v. Wells Fargo Bank</u>, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11, 2008).)  Further, because "courts have recognized that the law relating to the elements of a claim for breach of contract do not vary greatly from state to state," courts will routinely certify breach of contract claims on a nationwide or multi-state basis. <u>See</u>, <u>e.g.</u>, <u>Feller v. Transamerica Life Insurance Co.</u>, 2017 WL 6496803, at *6 (C.D. Cal. Dec. 11, 2017).  Even where there are multiple versions of form contracts, courts will certify breach of contract claims on a multi-state basis where, as here, customers were subject to the same policy by the defendant. <u>See e.g.</u>, <u>Allapattah Servs., Inc. v. Exxon Corp.</u>, 333 F.3d 1248, 1261 (11th Cir.2003); <u>Vedachalam v. Tata Consultancy Serv's, Ltd.</u>, 2012 WL 1110004, at *13-15 (N.D. Cal. 2012) (certifying nationwide class even though there were variations in contract forms, because defendant had the same policy for all customers).

Here, liability issues can be resolved for all Class Members using the same evidence of Wells Fargo's policies and procedures.  (Dkt 102, ¶ 44.)  Similarly, the claims of the Statutory Subclass Members can be resolved by interpreting the substantially similar State Refund Laws for the 13 applicable States. (<u>Id.</u>, ¶ 103.)  Thus, common issues predominate over individual questions, especially given that the Class is being certified for settlement purposes only, and manageability issues are not a concern. <u>Schmitt</u>, 2020 WL 1812354, at *2.

### b) A Class Action is a Superior.

In determining whether a class action is superior, courts are instructed to consider: (1) the class members' interest in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely

difficulties in managing a class action. <u>Jordan</u>, 2020 WL 3124359, at *9.

Here, there is no evidence that class members have any interest in individually controlling their cases. (Frank Decl., ¶ 39.)  Plaintiffs are not aware of any related pending litigation against Wells Fargo. (<u>Id.</u>)  Resolving these claims through a class action avoids the inefficiency of repetitious litigation and the potential risk of inconsistent rulings. <u>Jordan</u>, 2020 WL 3124359, at *9.  In addition, given the relatively small refund amounts, litigating these claims on an individual basis is not realistic, especially when it would require hundreds of thousands of actions.  <u>See</u> <u>Wren v. RGIS Inventory Specialists</u>, 256 F.R.D. 180, 210 (N.D. Cal. 2009) (find class action superior when "[t]he alternative – hundreds or even thousands of individual actions – is not realistic").  Accordingly, a class action is superior to other forms of resolving this suit.

## C.     The Proposed Settlement Class Meets the Notice Requirements under Rule 23(c)(2)(B).

Under Rule 23(c)(2)(B), the Court must direct that the best notice practical under the circumstances be provided to the class, including individual notice to all members that can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  Notice may be made by one of the following: U.S. mail, electronic means, or another type of appropriate means. <u>Id.</u>  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.  <u>Id.</u>

The proposed Notice of Settlement contains all of the information required by Rule 23(c)(3). (Settlement, Exs. C, D.)  Class members will be identified from Wells Fargo's records and will be mailed Notice of the Settlement through the U.S. mail and by electronic email (where such emails addresses are available in Wells Fargo's records). (Frank Decl., ¶ 33.)  The Class will have 60 days to opt out or object to the Settlement. (<u>Id.</u>, ¶ 34.)  Based

on the foregoing, Rule 23(c)(2)(B)'s notice requirements are satisfied.

## V.   PROPOSED TIMELINES FOR NOTICE, OBJECTIONS AND FINAL APPROVAL

Pursuant to the Settlement, Plaintiffs propose the following dates and deadlines:

| Event | Date |
|---|---|
| Preliminary Approval Hearing and Preliminary Approval Order | **On or Before June 14, 2021.** |
| Mailing of Class Notice / Start of Claims Period | **No Later than 60 Days After Preliminary Approval or August 14, 2021, whichever is later.** |
| Deadline to File Motion for Attorneys' Fees, Costs and Service Awards | **No Later than 15 days Prior to the Deadline for Opt-Outs/Objections** |
| Deadline for Claims, Opt-Outs and Objections | **60 Days After Mailing of Class Notice** |
| Deadline for Plaintiffs to Move for Final Approval | **21 Days Prior to Final Approval Hearing** |
| Final Approval Hearing | **November 15, 2021 at 1:30 p.m.** |

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs request the Court (1) grant preliminary approval of the Settlement, (2) certify the proposed Class and Statutory Subclass for settlement purposes only, (3) appoint JND to serve as the Settlement Administrator, (4) appoint Plaintiffs' counsel as Class Counsel; (5) direct that notice be published to the Class pursuant to the agreed Notice Plan, and (6) set the deadlines requested above.

Dated: June 1, 2021                      FRANK SIMS & STOLPER LLP

                                         By:   */s/ Jason Frank*
                                              JASON M. FRANK, ESQ.
                                              ANDREW STOLPER, ESQ
                                              SCOTT H. SIMS, ESQ.
                                              *Attorneys for Plaintiffs*

# Exhibit 1

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARMANDO HERRERA, *et al.* | CASE NO. 8:18-cv-00332-JVS-MRW |
| Plaintiffs, | |
| v. | **SETTLEMENT AGREEMENT** |
| WELLS FARGO BANK, N.A., *et al.* | |
| Defendants. | *Honorable James V. Selna* |

Case 8:18-cv-00332-JVS-MRW   Document 200   Filed 06/07/21   Page 39 of 155   Page ID #:3214

# TABLE OF CONTENTS

**Page**

DEFINITIONS ........................................................................................................... iv

SETTLEMENT AGREEMENT ................................................................................ 1

I.  PRELIMINARY APPROVAL ORDER, NOTICE  ORDER AND SETTLEMENT HEARING ....................................................................... 3

    A.  Reasonable Best Efforts to Effectuate This Settlement ....................... 3

    B.  Certification of Class and Appointment of Class Counsel ................... 4

    C.  Motion for Preliminary Approval ........................................................ 4

    D.  Proposed Form of Notice .................................................................... 5

    E.  Motion for Final Approval and Entry of Final Judgment .................... 5

    F.  Stay Order ........................................................................................... 8

II.  RELEASES ................................................................................................... 8

    A.  Plaintiffs and Class Release of Wells Fargo ....................................... 8

        1.  No Future Actions Following Release ....................................... 9

        2.  Covenant Not to Sue ................................................................. 9

        3.  Waiver of California Civil Code § 1542 and Similar Laws ...... 10

        4.  Dismissal ................................................................................. 11

III.  SETTLEMENT CONSIDERATION ............................................................ 11

    A.  Business Practice Change ................................................................. 12

    B.  Settlement Fund ................................................................................ 12

    C.  Distribution of Settlement Fund ....................................................... 12

        1.  Approved Claims for GAP Refunds to Non-Statutory Subclass Members ................................................................ 13

        2.  Additional Compensation to the Statutory Subclass ............... 14

        3.  Fee and Expense Awards ......................................................... 15

        4.  Service Awards ........................................................................ 15

        5.  Operation of Net Settlement Fund ........................................... 15

    D.  Refunds to the Statutory Subclass .................................................... 15

    E.  Administrative Costs ......................................................................... 16

    F.  Bankruptcy ....................................................................................... 16

i

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A., CASE NO. 8:18-CV-00332-AG-MRW*

116000927v2

G.     Agreement To Be Bound ..................................................... 16

H.     Disbursement of Unused Portions of the Settlement Fund ................. 16

I.     Uncashed Settlement Checks ............................................... 17

IV.    NOTICE AND ADMINISTRATION OF SETTLEMENT ......................... 17

A.     Administration Costs ...................................................... 17

B.     Claim Form ............................................................... 17

C.     Notice .................................................................... 17

D.     Time to Appeal ........................................................... 18

E.     No Liability for Distribution of the Settlement Fund ...................... 18

V.     DUTIES OF THE SETTLEMENT ADMINISTRATOR ........................... 18

VI.    SERVICE AWARDS, ATTORNEYS' FEES, AND REIMBURSEMENT OF EXPENSES ............................................ 22

A.     Fee and Expense Application ............................................... 22

B.     Payment of Fee and Expense Award ....................................... 22

C.     Award of Attorneys' Fees and Expenses Shall Not Impact the Effectiveness of this Agreement ........................................ 22

D.     No Liability for Attorneys' Fees and Expenses of Class Counsel ...... 23

E.     Plaintiffs' Service Award Application ..................................... 23

VII.   CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION ..................... 23

A.     Effective Date ............................................................. 23

B.     Depositing Money into the Settlement Fund and Occurrence of Effective Date ............................................................ 24

C.     Failure of Effective Date to Occur ........................................ 25

D.     Requests for Exclusion/Opt-Outs ......................................... 25

E.     Objections ................................................................ 26

F.     Termination ............................................................... 27

G.     Other Orders ............................................................. 28

VIII.  NO ADMISSION OF LIABILITY ................................................ 28

A.     Final and Complete Resolution ........................................... 28

B.     Federal Rule of Evidence 408 ............................................ 28

ii

C.   Use of Agreement as Evidence ..........................................................29

IX.   REPRESENTATIONS AND WARRANTIES ..............................................29

X.   MISCELLANEOUS PROVISIONS ............................................................32

A.   Voluntary Settlement ........................................................................32

B.   Subsequent Events Impacting Administration ................................32

C.   Claims in Connection with Administration .....................................32

D.   Binding Effect ..................................................................................32

E.   Authorization to Enter Settlement Agreement ................................32

F.   Notices ..............................................................................................33

G.   Confidentiality of Settlement Negotiations ....................................33

H.   No Party Deemed to Be the Drafter ................................................34

I.   Choice of Law ...................................................................................34

J.   Amendment; Waiver .........................................................................34

K.   Execution in Counterparts ...............................................................34

L.   Integrated Agreement .......................................................................34

M.   Attorneys' Fees and Costs ...............................................................35

N.   Return or Destruction of Confidential Materials ............................35

O.   Intended Beneficiaries ......................................................................35

P.   Regular Course of Business .............................................................35

Q.   Tax Consequences ............................................................................36

R.   Bankruptcy Proceedings ..................................................................36

S.   No Conflict Intended; Headings ......................................................36

T.   Class Member Obligations ...............................................................36

U.   Press Release ....................................................................................37

V.   Mediator's Declaration ....................................................................37

W.   Further disputes ...............................................................................37

**DEFINITIONS**

As used in the Agreement, the following terms have the meanings specified below:

1.     "Action" means *Herrera v. Wells Fargo*, Case No. 8:18-cv-003320-AG-MRW filed in the United States District Court for the Central District of California.

2.     "Additional Compensation" means the payment that the Statutory Subclass Members will receive from the Settlement Fund in addition to an Early Payoff GAP Refund as set forth in Paragraph III.D. of the Agreement.

3.     "Administrator" or "Settlement Administrator" means JND Legal Administration.

4.     "Agreement" means this settlement agreement entered into by the Parties.

5.     "Approved Claims" means an Eligible Class Member submitted a completed Claim Form for an Early Payoff GAP Refund.

6.     "Claim Form" means the form that Non-Statutory Subclass Members will need to complete to submit a claim for an Early Payoff GAP Refund which will be provided to the Non-Statutory Subclass Members in substantially the same form and with substantially the same content as **Exhibit A**.

7.     "Claim Form Deadline" means the date when the Non-Statutory Subclass Members must submit a completed Claim Form to the Settlement Administrator in accordance with the requirements set forth in Paragraph III.C.1.e. of the Agreement and which shall be sixty (60) days from the mailing of the Notice of Settlement.

8.     "Class" or "Class Member(s)" means all persons in the United States (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Class Period, and (c) who did not receive a GAP Refund.  The Class also includes the Statutory Subclass Members defined below.

iv

9.     "Class Counsel" shall refer to Andrew Stolper, Jason Frank and Scott Sims of Frank Sims & Stolper LLP, Franklin D. Azar of Franklin D. Azar & Associates P.C., and Charles E. Shaffer of Levin Sedran & Berman.

10.     "Class Notice" has the meaning set forth in Paragraph I.D. of the Agreement.

11.     "Class Period" means the beginning date specified in **Exhibit B** to this Agreement through the date of the Preliminary Approval of the Settlement.  The beginning date of the Class Period is based on the State of Origination of the Class Member's Finance Agreement.

12.     "Class Released Claims" has the meaning set forth in Paragraph II.A. of the Agreement.

13.     "Class Releasors" has the meaning set forth in Paragraph II.A. of the Agreement.

14.     "Class Releasees" has the meaning set forth in Paragraph II.A. of the Agreement.

15.     "Class Representatives" means Plaintiffs Armando Herrera, Dena Lucero, Frederick Brown, Vanity Arrington, Kashif Z. Awan, Gretta Carter, James Atkins, Ilka Robinson-Eaton, Janet Corpes, Terri Jones, Heidi Humphreys, Ria Marteins, Brian T. Sweeney, Nakecia M. Dean and Von Griffin.

16.     "Counsel for Wells Fargo" shall refer to William C. Mayberry and Joshua D. Davey of Troutman Pepper Hamilton Sanders LLP and David C. Powell and Alicia A. Baiardo of McGuireWoods LLP.

17.     "Court" shall refer to the United States District Court for the Central District of California.

18.     "Day" or "Days" has the meaning ascribed to it in Federal Rule of Civil Procedure 6, and all time periods specified in this Agreement shall be computed in a manner consistent with that rule.  All references to days shall be interpreted to mean calendar days, unless otherwise noted.

19. "Dealer" means an automobile dealership that assigned a Finance Agreement to Wells Fargo.

20. "Defendants" means Wells Fargo Bank, N.A. and Wells Fargo & Co.

21. "Early Payoff" means the payment in full of the Finance Agreement prior to its original scheduled maturity date.

22. "Early Payoff GAP Refund" means a GAP Refund which may be owed following cancellation or termination of a GAP Agreement due to an Early Payoff.

23. "Effective Date" means the first date by which all of the events and conditions specified in Section VII.A. of the Agreement have occurred and have been met.

24. "Eligible Class Member" means a Non-Statutory Subclass Member who returned a completed Claim Form.

25. "Exclusion/Objection Deadline" means the deadline for requesting exclusion from the Class or objecting to the Settlement, which shall be sixty (60) days from the date of the mailing of the Notice of Settlement.

26. "Execution Date" means the latest date associated with a signature on the fully executed Agreement as set forth on the Agreement's signature pages.

27. "Fee and Expense Application" means the application Class Counsel submits to the Court for an award of attorneys' fees and reimbursement of reasonable expenses incurred in connection with prosecuting the Action not to exceed the amount set forth in Paragraph VI.A. of the Agreement.

28. "Fee and Expense Award" means any amounts that are awarded by the Court in response to Class Counsel's Fee and Expense Application.

29. "Final" means, with respect to any order of the Court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal

has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.  Any appeal or other proceeding pertaining solely to any order issued with respect to an application for attorneys' fees and expenses consistent with this Agreement shall not in any way delay or preclude the Judgment from becoming Final.

30.     "Final Approval" has the meaning set forth in Paragraph I.E. of the Agreement.

31.     "Final Approval Order" has the meaning set forth in Paragraph I.E. of the Agreement.

32.     "Finance Agreement" means the retail installment sales contract or similar agreement entered into between a Class Member and Dealer for the purchase of a vehicle.

33.     "GAP" means Guaranteed Asset Protection and/or Guaranteed Auto Protection.

34.     "GAP Administrator" means the administrator identified in a GAP Agreement.

35.     "GAP Agreement" means the contractual agreement by which a Class Member purchased GAP from a Dealer.

36.     "GAP Refund" means the refund of all or part of the amount paid for GAP.

37.     "Judgment" means the order of judgment and dismissal of the Action with prejudice.

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW

116000927v2

38.     "Net Settlement Fund" means the amount that would remain in the Settlement Fund after deducting any Fee and Expense Award and Service Awards approved by the Court.

39.     "Non-Statutory Subclass" means all Class Members who are not members of the Statutory Subclass.

40.     "Notice of Settlement" means the written notice of the Settlement that will be provided to the Class in substantially the same form and with substantially the same content as **Exhibit C** and the similar written notice that will be provided to the Statutory Subclass in substantially the same form and with substantially the same content as **Exhibit D.**

41.     "Notice Plan" has the meaning set forth in Paragraph I.D. of the Agreement concerning the proposed form of notice to the Class.

42.     "Opt-Out" means a person who falls within the definition of the Class who has timely and validly elected to be excluded from the Class pursuant to the procedures set forth in Paragraph VII.D. of the Agreement.  It does not include any person whose request for exclusion is challenged by Defendants and the challenge is not overruled by the Court or withdrawn by Defendants, any person whose communication is not treated as a request for exclusion, and/or any person whose request for exclusion is not valid or is otherwise void.

43.     "Opt-Out List" is the list of Class Members who submit valid and timely Requests for Exclusion from the Class as set forth in Paragraph VII.D. of the Agreement.

44.     "Plaintiffs" means the following named Plaintiffs in the operative First Amended Complaint in this Action: Armando Herrera, Dena Lucero, Frederick Brown, Vanity Arrington, Kashif Z. Awan, Gretta Carter, James Atkins, Ilka Robinson-Eaton, Janet Corpes, Terri Jones, Heidi Humphreys, Ria Marteins, Brian T. Sweeney, Nakecia M. Dean and Von Griffin.

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW

45.     "Preliminary Approval" has the meaning set forth in Paragraph I.C. of the Agreement.

46.     "Preliminary Approval Order" has the meaning set forth in Paragraph I.C. of the Agreement.

47.     "Pro Rata Method."  The Settlement Administrator will determine the "used" percentage of GAP, and calculate the Early Payoff GAP Refund utilizing the "Pro Rata Method" which means the following: (a) dividing the number of days that the GAP product was in use (payoff date minus contract start date) by the total number of days in the original term of the Finance Agreement (scheduled expiration date minus contract start date); (b) subtracting that figure from 1 to yield the "unused" percentage, and (c) multiplying unused percentage of GAP by the amount the customer paid for GAP.  No cancellation fee shall be applied and/or included in the calculation.

48.     "Remaining Amounts" means any monies that remain in the Settlement Fund after the Settlement Administrator pays (a) Approved Claims for Refunds to Non-Statutory Subclass Members; (b) Additional Compensation to Statutory Subclass Members; (c) the Fee and Expense Awards approved by the Court and (d) the Service Awards approved by the Court.

49.     "Service Awards" means the amount awarded by the Court to Plaintiffs for their service as Class Representatives as described in Paragraph VI.E. of the Agreement.

50.     "Service Award Applications" has the meaning set forth in Paragraph VI.E. of the Agreement.

51.     "Settlement" means the settlement of the claims released by the Agreement.

52.     "Settlement Fund" means the $45 million that will be deposited by Well Fargo into an account administered by the Settlement Administrator to cover the amounts to be paid for (a) Approved Claims for Refunds to Non-Statutory Subclass

Members; (b) Additional Compensation to Statutory Subclass Members; (c) the Fee and Expense Awards approved by the Court and (d) the Service Awards approved by the Court.

53. "State of Origination" shall mean the State whose law governs the Finance Agreement, as determined by the data maintained by Wells Fargo.

54. "State Refund Laws" means those State laws that require indirect auto lenders to take certain actions to ensure that a customer receives a GAP Refund after an Early Payoff. For purposes of this Settlement only, the Parties agree that **Exhibit E** sets forth a list of the States with State Refund Laws that apply to the Class and the time periods those laws were in effect during the Class Period. This list will be used solely for the purpose of defining the members in the Statutory Subclass as part of this Settlement.

55. "Statutory Subclass" means those persons (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements were subject to State Refund Laws, (c) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Statutory Subclass Period, and (d) who did not receive a GAP Refund from Wells Fargo, or for whom Wells Fargo did not receive written confirmation from a Dealer or GAP Administrator that the GAP Refund was paid.

56. "Statutory Subclass Compensation" has the meaning set forth in Paragraph III.C.2. of the Agreement.

57. "Statutory Subclass Period" means the State-specific beginning date specified in **Exhibit E** to this Agreement through the date of the Preliminary Approval of the Settlement.

58. "Term Sheet" means the Term Sheet agreed to by the Parties on or about December 11, 2020.

59. "TILA" shall mean the Truth in Lending Act.

60.     "Wells Fargo" means Wells Fargo Bank, N.A. and Wells Fargo & Co., including without limitation its operating divisions Wells Fargo Dealer Services and Wells Fargo Auto.

61.     As used in the Agreement, the plural of any defined terms includes the singular thereof and vice versa, except where the context requires otherwise.

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered as of the Effective Date between Plaintiffs, both individually and on behalf of the Class, and Wells Fargo (each as defined below).  This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the claims described herein, upon the following terms and conditions.

WHEREAS, Plaintiffs are prosecuting the above captioned Action on their own behalf and on behalf of the proposed Class against Wells Fargo;

WHEREAS, Plaintiffs' First Amended Complaint alleged, among other things, that Wells Fargo failed to make Early Payoff GAP Refunds to Plaintiffs and the Class as required by their GAP Agreements;

WHEREAS, the First Amended Complaint asserted claims for breach of contract, violation of TILA, money had and received, violations of California's Consumer Legal Remedies Act and Unfair Competition Law, and declaratory relief (ECF No. 102);

WHEREAS, Wells Fargo moved to dismiss the First Amended Complaint (ECF No. 125), and the Court granted Wells Fargo's motion in part and denied it in part, with leave to amend (ECF No. 179);

WHEREAS, the Court determined that Plaintiff Eduardo Salcedo's claims were barred by the statute of limitations (ECF No. 179);

WHEREAS, Wells Fargo moved to strike the nationwide class allegations (ECF No. 126), which the Court denied (ECF No. 179);

WHEREAS, Wells Fargo also moved to compel arbitration as to the claims of certain named plaintiffs, which the Court granted (ECF No. 180);

WHEREAS, Wells Fargo denies each and all of the claims and allegations of wrongdoing made by Plaintiffs; denies that Defendants have violated any law or other duty; denies that Defendants have engaged in any wrongdoing or any other act or

omission that would give rise to liability or cause Plaintiffs' injuries, damages, or entitlement to any relief; denies that Defendants collected amounts paid for GAP; denies that Defendants breached the terms of any GAP Agreements or otherwise failed to provide Early Payoff GAP Refunds which were owed; would have asserted affirmative defenses to Plaintiffs' claims; and would contest certification of a non-settlement Rule 23(b)(3) damages class and/or a Rule 23(b)(1) or Rule 23(b)(2) declaratory and injunctive relief class if Plaintiffs sought to certify such classes; and state that Defendants are entering into this Agreement to avoid the further uncertainties, expense, inconvenience, delay, and distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to Plaintiffs and the Class and avoid the risks inherent in complex litigation;

WHEREAS, the Parties have engaged in substantial discovery concerning Plaintiffs' claims;

WHEREAS, Plaintiffs and Wells Fargo stipulate that the fact of this Agreement, any of the terms in this Agreement, any documents filed in support of this Agreement, or any statement made in the negotiation thereof shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law, (ii) any liability or wrongdoing by Wells Fargo, (iii) liability on any claims or allegations, or (iv) the propriety of certifying a litigation class in any proceeding, and shall not be used by any Person for any purpose whatsoever in the Action (defined below) or any other legal proceeding, including but not limited to arbitrations, mediations, or subsequent litigations other than a proceeding to enforce the terms of this Agreement;

WHEREAS, Plaintiffs and Wells Fargo participated in three mediations in this case; the first on January 23, 2019 with the Hon. Louis Meisinger (Ret.), the second on June 17, 2020 with the Hon. Andrew Guilford (Ret.), and the third on December 11, 2020, also with Judge Guildford;

WHEREAS, Plaintiffs and Wells Fargo have agreed to the terms of this arm's-length Agreement, which embodies all of the terms and conditions of the Settlement between the Settling Parties, subject to the approval of the Court as provided below, and which is intended to supersede any and all prior agreements between the Settling Parties, including but not limited to the Term Sheet entered into by the Parties on December 11, 2020; and

WHEREAS, Plaintiffs and Class Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in Plaintiffs' First Amended Complaint, the legal and factual defenses thereto and the applicable law, that it is in the best interests of Plaintiffs and the Class to enter into this Agreement to avoid the uncertainties of litigation and to assure that the benefits set forth below are obtained for Plaintiffs and the Class, and, further, that Class Counsel consider the Settlement set forth in this Agreement to be fair, reasonable, and adequate and in the best interests of Plaintiffs and the Class.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Parties, by and through their attorneys of record, that, subject to the approval of the Court, the Action and the Class Released Claims shall be finally and fully settled, compromised, and dismissed on the merits and with prejudice upon and subject to the terms and conditions of this Agreement, as follows:

## I.  PRELIMINARY APPROVAL ORDER, NOTICE ORDER AND SETTLEMENT HEARING

**A.  Reasonable Best Efforts to Effectuate This Settlement.** The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement.

**B.     Certification of Class and Appointment of Class Counsel.** For settlement purposes only, the Settling Parties agree to certification of the Class and Statutory Subclass pursuant to Fed. R. Civ. P. Rules 23(a) and 23(b)(3) and to the appointment of Andrew Stolper, Jason Frank and Scott Sims of Frank Sims & Stolper LLP, Franklin D. Azar of Franklin D. Azar & Associates P.C., and Charles E. Shaffer of Levin Sedran & Berman as Class Counsel for the Class and Statutory Subclass under Fed. R. Civ. P. 23(g). The Parties do not agree to, and Plaintiffs do not pursue, class certification pursuant to Fed. R. Civ. P. 23(b)(2).    The Settling Parties' stipulation to the certification of the Class and Statutory Subclass is for purposes of the Settlement set forth in this Agreement only.    Wells Fargo's agreement to certification of the Rule 23(b)(3) Class and Statutory Subclass is solely for the purpose of this Agreement and does not, and shall not, constitute, in this or any other proceeding, an admission by Wells Fargo of any kind or any determination that certification of a class for trial or other litigation purposes in the Action or any other separate action is, or would be, appropriate.    If the Settlement is not granted Final Approval or this Agreement is otherwise terminated or rendered null and void, the certification of the Class and Statutory Subclass shall be automatically vacated and shall not constitute evidence of or any determination that the requirements for certification of a class for trial or other litigation purposes in this Action or any other action are satisfied; in such circumstances, Wells Fargo reserves all rights to challenge certification of any class or subclass for trial or other litigation purposes in the Action or in any other action on all available grounds as if no class had been certified in this Action for purposes of the Settlement.

**C.     Motion for Preliminary Approval.** As soon as practicable following the Execution Date, Class Counsel shall file a Motion for Preliminary Approval of this Agreement (including all Exhibits) to the Court and shall apply for entry of an order ("Preliminary Approval Order") that would, for settlement purposes only:

1.     Preliminarily approve this Settlement ("Preliminary Approval");

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW

2.      Certify a conditional settlement class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and

3.      Appoint Class Counsel.

**D.      Proposed Form of Notice.** As part of the Motion for Preliminary Approval, Class Counsel shall submit to the Court for approval a proposed form of, method for, and schedule for dissemination of notice to the Class to be approved by Wells Fargo (the "Notice Plan"). The Notice Plan shall, at a minimum, include direct notice by mail and email (to the extent email addresses are available), and by publication notice. In addition, a settlement website will be established by the Settlement Administrator, with a URL acceptable to the Parties subject to Wells Fargo's final right of approval. The Notice Plan shall ask the Court to find that the proposed form of and method for dissemination of notice to the Class constitutes valid, due, and sufficient notice to the Class; constitutes the best notice practicable under the circumstances; and complies fully with the requirements of Fed. R. Civ. P. 23 and constitutional due process. The proposed form of notice to the class pursuant to the Notice Plan ("Class Notice") is attached hereto as **Exhibits C & D**. The Preliminary Approval Order, Class Notice, and Notice Plan must be agreed to by Wells Fargo before submission to the Court. Wells Fargo, through the Administrator, shall be responsible for providing all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**E.      Motion for Final Approval and Entry of Final Judgment**. Not less than fourteen (14) Days prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel shall submit a motion for final approval ("Final Approval") of the Settlement by the Court. Class Counsel shall seek entry of the final approval order ("Final Approval Order") and Judgment, which shall be approved as to form and content by Wells Fargo prior to submission by Class Counsel, containing at least the following:

1.      Finding that the Court has personal jurisdiction over Plaintiffs and

5

1   all Class Members and that the Court has subject matter
2   jurisdiction to approve this Settlement and Agreement;

3   2.   Certifying the Class and Statutory Subclass, pursuant to Fed. R.
4   Civ. P. 23(a) and (b)(3), solely for purposes of this Settlement;

5   3.   Fully and finally approving this Agreement and its terms as being
6   fair, reasonable, and adequate within the meaning of Fed. R. Civ.
7   P. 23, and directing its consummation pursuant to its terms and
8   conditions;

9   4.   Declaring this Agreement and the Final Approval Order and
10   Judgment to be binding on and to have res judicata and preclusive
11   effect in all pending and future lawsuits or other proceedings
12   encompassed by the Class Released Claims maintained by or on
13   behalf of the Class Releasors.

14   5.   Finding that the notice given to the Class Members pursuant to the
15   Notice Plan and Class Notice (i) constituted the best notice
16   practicable under the circumstances; (ii) constituted notice that
17   was reasonably calculated under the circumstances to apprise
18   Class Members of the pendency of the Action, of their right to
19   object to or exclude themselves from the proposed Settlement as
20   applicable, of their right to appear at the final approval hearing,
21   and of their right to seek relief; (iii) constituted reasonable, due,
22   adequate, and sufficient notice to all Persons entitled to receive
23   notice; and (iv) complies in all respects with the requirements of
24   Fed. R. Civ. P. 23, due process, and any other applicable law;

25   6.   Finding that Class Counsel and Plaintiffs adequately represented
26   the Class Members for purposes of entering into and
27   implementing this Agreement and Settlement;

28   7.   Ruling on the separate Fee and Expense Application and Service

6

1          Award Application;

2      8.   Directing that the Action and claims for damages be dismissed

3          with prejudice and, except as otherwise explicitly provided for in

4          the Agreement, without costs;

5      9.   Discharging and releasing the Class Releasees from all Class

6          Released Claims;

7      10.  Permanently barring and enjoining the institution and prosecution,

8          by Class Releasors and/or any other Person, of any and all of the

9          Class Released Claims;

10     11.  Approving the Opt-Out List and determining that the Opt-Out List

11         is a complete list of all Persons who have timely and validly

12         requested exclusion from the Class, and accordingly, who shall

13         neither share in nor be bound by the Final Approval Order and

14         Judgment;

15     12.  Determining that the Agreement and the Settlement provided for

16         therein and any proceedings taken pursuant to it are not and should

17         not in any event be offered or received as evidence of a

18         presumption, concession, acknowledgment, or an admission of

19         liability or of any wrongdoing by Wells Fargo or the Class

20         Releasees or of the suitability of these or similar claims to class

21         treatment for litigation, trial, or any other purpose except

22         settlement; provided, however, that reference may be made to this

23         Agreement and the Settlement provided for herein in such

24         proceedings as may be necessary to effectuate the Agreement;

25     13.  Reserving continuing and exclusive jurisdiction over the

26         Settlement, including all future proceedings concerning the

27         administration, consummation, and enforcement of this

28         Agreement;

7

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW

116000927v2

14. Authorizing the Settling Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement as shall be consistent in all material respects with the Final Approval Order and Judgment and not limit the rights of the Settling Parties or Class Members; and

15. Containing such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

Class Counsel, by separate motions(s), also will request that the Court approve the Fee and Expense Application and Service Application.

**F.     Stay Order.** Upon the date that the Court enters the Preliminary Approval Order, Plaintiffs and all Class Members shall be barred and enjoined from commencing, instituting, or continuing to prosecute any action or any proceeding of any kind (including, but not limited, to an action for actual damages, statutory damages, and/or exemplary or punitive damages) in any court of law, arbitration tribunal, administrative forum, or other forum of any kind worldwide, based on the Class Released Claims.

## II.     RELEASES

Upon the Effective Date, and pursuant to the Court's entry of the Final Approval Order and Judgment, the Settling Parties provide the following releases:

**A.     Plaintiffs and Class Release of Wells Fargo.** Plaintiffs and each and every Class Member, individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors") releases and fully discharges Wells Fargo Bank, N.A. and Wells Fargo & Co., and each of their former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), Affiliates, officers, directors, and employees and attorneys ("Class Releasees") from any and all past and/or present

claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to an Early Payoff GAP Refund for an Early Payoff that occurred during the Class Period (the "Class Released Claims").  Notwithstanding the foregoing, the Class Releasees do not include any Dealers or GAP Administrators, including without limitation, those identified in the Class Members' GAP Waiver Agreements or the Finance Agreements.

1.     **No Future Actions Following Release.** The Class Releasors shall not after the Effective Date seek (directly or indirectly) to commence, institute, maintain, or prosecute any suit, action, or complaint of any kind (including, but not limited to, claims for actual damages, statutory damages, restitution, and exemplary or punitive damages) against Class Releasees (including pursuant to the Action), based on the Class Released Claims, in any forum worldwide, whether on his or her own behalf or as part of any putative, purported, or certified class or as part of an action by any other plaintiff on his or her behalf.

2.     **Covenant Not to Sue.** Class Releasors hereby covenant not to sue the Class Releasees with respect to any Class Released Claims, including any claims that Class Releasors, or any of them, does not know or suspect to exist in his or her favor at the time of the release that if known by him or her, might have affected his or her settlement with and release of the Class Releasees, or might have affected his

or her decision not to object to or opt out of this Settlement. Class Releasors shall be permanently barred and enjoined from instituting, commencing, or prosecuting any claims against the Class Releasees of any kind (including, but not limited to, for actual damages, statutory damages, restitution, and exemplary or punitive damages) based on the Class Released Claims. The Class Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained preventing any action from being initiated or maintained, in any case sought to be prosecuted on behalf of any Class Releasors (including, but not limited to, for actual damages, statutory damages, and exemplary or punitive damages) based on the Class Released Claims.

       3.    **Waiver of California Civil Code § 1542 and Similar Laws.** In addition, the Class Releasors expressly acknowledge that they are familiar with and, upon Final Approval of this Settlement, waive and release with respect to the Class Released Claims any and all provisions, rights, and benefits conferred (a) by Section 1542 of the Civil Code of the State of California, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b) by any law of any and all equivalent, similar, or comparable federal or state rules, regulations, laws, or principles of law of any other jurisdiction that may be applicable herein; and/or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in the Agreement. The Class Releasors expressly agree that by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Class Released Claims, including any claims that Class Releasors, or any of them,

does not know or suspect to exist in his or her favor at the time of the release that if known by him or her, might have affected his or her settlement with and release of the Class Releasees, or might have affected his or her decision not to object to or opt out of this Settlement. The Class Releasors acknowledge that they may hereafter discover claims or facts other than or different from those which they know, believe, or suspect to be true with respect to the subject matter of the Class Released Claims, but the Class Releasors expressly waive and fully, finally, and forever settle and release any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, all from the beginning of the world until the Effective Date, under the laws of any jurisdiction, which Class Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising out of the Class Released Claims. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is contractual and not a mere recital.

4. **Dismissal.** Subject to Court approval, all Class Releasors shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

### III. SETTLEMENT CONSIDERATION

In full, complete, and final settlement of any and all claims in the Action, and as consideration for the Releases provided by this Agreement, Wells Fargo agrees as

---

11

SETTLEMENT AGREEMENT

*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW

116000927v2

follows:

**A.** **Business Practice Change.** No later than **January 1, 2022**, Wells Fargo will implement processes to directly provide, on a go-forward basis, Early Payoff GAP Refunds within a reasonable time after receipt of an Early Payoff to customers (1) who purchased GAP from a Dealer at the time they entered into their Finance Agreements; (2) the customer chooses to finance the cost and such cost is included in a Finance Agreement assigned to Wells Fargo; (3) where Wells Fargo received an Early Payoff of the Finance Agreements; (4) whose GAP Agreements provide for an Early Payoff GAP Refund in the event of an Early Payoff; and (5) who have not previously received a GAP Refund. Customers who meet these criteria will not be required to take any action other than completing an Early Payoff to receive an Early Payoff GAP Refund. This obligation will continue until **January 1, 2026**. Wells Fargo may calculate the amount of Early Payoff GAP Refunds using the method set forth in the customer's GAP Agreement or using another method more favorable to the customer. Nothing in this Agreement precludes Wells Fargo from recouping the amount of an Early Payoff GAP Refund from the customer's Dealer or GAP Administrator. The parties agree that Wells Fargo is not agreeing to, nor will there be any, injunctive relief pursuant to this Settlement and the Settlement will not be approved under Federal Rule of Civil Procedure 23(b)(2). This business practice change is a material term of Settlement to be enforced pursuant to this Agreement. Wells Fargo is not agreeing to and will not be subject to any monitoring.

**B.** **Settlement Fund.** Wells Fargo agrees to deposit $45 million into a non-reversionary Settlement Fund to be used to pay for the following obligations under this Agreement: (1) Approved Claims for GAP Refunds to Non-Statutory Subclass Members; (2) Additional Compensation to Statutory Subclass Members; (3) the Fee and Expense Awards approved by the Court; and (4) the Service Awards approved by the Court.

**C.** **Distribution of Settlement Fund.** The amounts in the Settlement Fund

1   shall be distributed in the manner set forth below.

2           1.      **Approved Claims for GAP Refunds to Non-Statutory Subclass**

3   **Members.** Early Payoff GAP Refunds shall be paid to Non-Statutory Subclass

4   Members in accordance with the claims process described below.

5                   a.      Wells Fargo shall identify the Non-Statutory Subclass

6                           Members by relying on data and information reasonably

7                           available to Wells Fargo.

8                   b.      Wells Fargo shall provide contact information for the Non-

9                           Statutory Subclass Members as soon as practicable after the

10                          Execution Date but no later than forty-five (45) days after

11                          Preliminary Approval.

12                  c.      The Settlement Administrator will use reasonable efforts to

13                          update and confirm the accuracy of the Non-Statutory

14                          Subclass Members' contact information through the USPS

15                          change of address system.

16                  d.      Following    Preliminary    Approval,    the    Settlement

17                          Administrator shall send the Notice of Settlement and

18                          Claim Forms to the Non-Statutory Subclass Members in

19                          accordance with the Notice Plan.

20                  e.      The Non-Statutory Subclass Members shall have until sixty

21                          (60) days from the mailing of the Notice of Settlement to

22                          complete and submit the Claim Form to the Settlement

23                          Administrator (the "Claim Form Deadline").

24                  f.      Non-Statutory Subclass Members who return a completed

25                          Claim Form and who have not previously received a GAP

26                          Refund ("Eligible Class Members") will receive an Early

27                          Payoff GAP Refund to be paid from the Settlement Fund.

28                          Where a Class Member has a co-borrower, the Settlement

13

Administrator shall issue the check in the names of both co-borrowers and shall mail the check to the primary borrower's address.

    g.    The amount of the Early Payoff GAP Refunds will be calculated using the Pro Rata Method, regardless of the method specified by the customer's GAP Agreement. The Settlement Administrator shall be responsible for calculating the Early Payoff GAP Refunds based on the data provided by Wells Fargo. The amount of the Early Payoff GAP Refund may be reduced on a pro rata basis pursuant to Paragraph III.C.5. below.

    2.    **Additional Compensation to the Statutory Subclass.** In addition to the Early Payoff GAP Refunds provided in Paragraph III.C below, each Statutory Subclass Member will receive up to $5.00 to be paid from the Settlement Fund (the "Additional Compensation") in accordance with the process set forth below.

    a.    Wells Fargo shall identify the Statutory Subclass Members by relying on data and information reasonably available to Wells Fargo.

    b.    Wells Fargo shall provide contact information for the Statutory Subclass to the Settlement Administrator as soon as practicable after the Execution Date but no later than forty-five (45) days after Preliminary Approval.

    c.    The Settlement Administrator will use reasonable efforts to update and confirm the accuracy of the Statutory Subclass Members' contact information through the USPS change of address system

    d.    Following Preliminary Approval, the Settlement

14

1    Administrator shall send the Notice of Settlement to the
2    Statutory Subclass Members.

3    e.    Because Wells Fargo has already identified the Statutory
4    Subclass Members who did not previously receive a GAP
5    Refund, the Statutory Subclass Members will not be
6    required to submit a Claim Form for the Additional
7    Compensation.

8    f.    The Additional Compensation payments shall be made
9    from the Settlement Fund.  The amount of the Additional
10   Compensation payments may be reduced on a pro rata basis
11   pursuant to Paragraph III.C.6. below.

12   3.    **Fee and Expense Awards**.  The Fee and Expense awards
13   approved by the Court shall be paid from the Settlement Fund.

14   4.    **Service Awards.**  The Service Awards approved by the Court
15   shall be paid from the Settlement Fund.

16   5.    **Operation of Net Settlement Fund.**  The Net Settlement Fund is
17   the amount of money that remains in the Settlement Fund after the deduction of any
18   Fee and Expense Awards and Service Awards approved by the Court.  If the amount
19   of the Net Settlement Fund is not sufficient to fully cover the cost of (i) the Approved
20   Claims for GAP Refunds to Non-Statutory Subclass Members; and (ii) the Additional
21   Compensation to Statutory Subclass Members, then the individual amounts of (i) the
22   Approved Claims for GAP Refunds to Non-Statutory Subclass Members, and (ii) the
23   Additional Compensation to Statutory Subclass Members will be reduced on a
24   prorated basis. Each Class Member's individual payment from the Settlement Fund
25   will be reduced by the same percentage.

26   **D.    Refunds to the Statutory Subclass**.  Wells Fargo has paid or will pay
27   each Statutory Subclass Member the amount of their Early Payoff GAP Refunds plus
28   compensation for the loss of use of funds on their GAP Refund amount based on the

one-year constant U.S. maturity treasury rate from the date of the Early Payoff, compounded annually.   Wells Fargo represents and warrants that it has paid $33,357,919.81 collectively to the members of the Statutory Subclass between February 22, 2019 and March 31, 2021.   In the event Wells Fargo identifies any members of the Statutory Subclass who have not yet received their Early Payoff GAP Refund, then Wells Fargo represents and warrants that it will pay that member the Early Payoff GAP Refund plus compensation for the loss of use of funds on their GAP Refund amount based on the one-year constant U.S. maturity treasury rate from the date of the Early Payoff, compounded annually.  These Payments were and/or will be made by Wells Fargo in addition to, and separate and apart from, the $45 million deposited in the Settlement Fund and will not reduce the Settlement Fund.

**E.    Administrative Costs.** Wells Fargo will separately pay for all necessary costs to administer the terms of this Settlement, including but not limited to the costs of the Notice Plan and the Settlement Administrator. The Administrative Costs will be paid by Wells Fargo in addition to, and separate and apart from, the Settlement Fund and will not reduce the Settlement Fund.

**F.    Bankruptcy**.  In the event a member of the Class is in a bankruptcy proceeding, then Wells Fargo may pay any compensation under this Settlement Agreement to the bankruptcy trustee or otherwise as required under any applicable bankruptcy law, rules, and/or court orders.

**G.    Agreement To Be Bound.** All members of the Class shall be subject to and bound by the provisions of this Settlement Agreement, the Class Released Claims, and the Judgment with respect to all Class Released Claims regardless of whether such Class Members obtain payment pursuant to the Settlement.

**H.    Disbursement of Unused Portions of the Settlement Fund**.   The Settlement Fund is non-reversionary.  In the event there are any amounts remaining in the Settlement Fund after the disbursement of all Settlement Checks to the Class and any Fee and Expense and Service Awards approved by the Court, then the Parties

will meet and confer on a proposal for how the remaining amounts shall be distributed subject to the approval of the Court. If the Parties are unable to agree on a proposal, then both sides will submit their proposals to the Court and the Court will determine the appropriate proposal.

**I.      Uncashed Settlement Checks.**  If a Settlement Check is not cashed within 180 days after it is mailed by the Settlement Administrator, then the Settlement Administrator will place a stop-order on the check. The Settlement Administrator will then take reasonable efforts to contact the Class Member and issue a new Settlement Check. If the Settlement Administrator is unable to reach the Class Member within thirty (30) days, then the Settlement Administrator will remit the unclaimed Settlement Check amount to the appropriate State agency based on the escheat laws and regulations applicable for the State of the Class Member's last known address.

**IV.    NOTICE AND ADMINISTRATION OF SETTLEMENT**

A.      **Administration Costs.**  Wells Fargo will pay the costs of notice and administration which shall be in addition to, and separate and apart from, the amount deposited in the Settlement Fund.

B.      **Claim Form.**  The Claim Form shall be substantially in conformance with the format and content set forth in **Exhibit A** to this Agreement, subject to reasonable modifications required by the Court. The Claim Form will allow Non-Statutory Subclass Members to submit and complete the Claim Form online and by electronic signature and will include a link to the Settlement Website and/or a QR Code or any other appropriate available technology to allow Non-Statutory Subclass Members to submit claims electronically. The Non-Statutory Subclass Members will also be able to complete, sign and mail a copy of the completed Claim Form to the Settlement Administrator, or upload it at the Settlement Website.

C.      **Notice.**  The Notice shall be substantially in conformance with the format and content set forth in **Exhibits C & D** to this Agreement, subject to

reasonable modifications required by the Court.

D. **Time to Appeal.** The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether or not the Fee and Expense Application has been submitted to the Court or resolved.

E. **No Liability for Distribution of the Settlement Fund.** The Settling Parties shall not have any liability with respect to the distribution of payments; the determination, administration, or calculation of claims; or any losses incurred in connection with any such matters. In addition to the Releases set forth herein, the Class Releasors hereby fully, finally, and forever release, relinquish, and discharge the Class Releasees, and their counsel from any and all such liability. No Person shall have any claim against the Settlement Administrator based on the distributions made substantially in accordance with this Agreement.

## V. DUTIES OF THE SETTLEMENT ADMINISTRATOR

The Settlement Administrator will administrate the Parties' Settlement.

A. The Settlement Administrator shall be responsible for the following tasks:

1. Conducting a National Change of Address ("NCOA") search to obtain up-to-date address information on Class Members prior to disseminating the Notice of Settlement;

2. Printing and disseminating the Notice of Settlement by first-class mail and email (where available) to each and every Class Member;

3. Printing and disseminating the applicable Claim Form by first-class mail and email (where available) to each and every Non-Statutory Subclass Member;

4. Furnishing promptly to Counsel for the Parties copies of any Requests for Exclusion, Opt-Out Forms, objections, or other written or electronic communications from each Class Member that the Settlement Administrator receives;

5. Determining the amount of the Approved Claims for GAP

Refunds and the Additional Compensation payments owed to the Class in accordance with this Settlement Agreement;

6.     Keeping track of each Request for Exclusion and Opt-Out Form, including maintaining the original mailing envelope in which the Request for Exclusion or Opt-Out Form was mailed and reporting to Counsel for both sides the total numbers and identities of those who have requested exclusion or returned completed Opt-Out Forms;

7.     Providing to Counsel for the Parties copies of the completed Opt-Out Forms;

8.     Issuing and mailing each Approved Claim for GAP Refunds and the Additional Compensation payments in a Settlement check;

9.     Skip-tracing or otherwise attempting to ascertain current address information for each Settlement check as returned as undeliverable;

10.    Placing a stop-pay order on all Settlement checks not cashed within 180 days of issue;

11.    Performing all tax reporting duties required by federal, state, and/or local law related to any Approved Claims for GAP Refunds, Additional Compensation, Fee and Expense Awards, and Service Awards pursuant to this Settlement Agreement;

12.    Responding to inquires of Class Members regarding the terms of Settlement and procedures for filing objections and Requests for Exclusion;

13.    Referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Administrator's duties specified herein and contemporaneously giving Counsel for Wells Fargo notice of all such inquiries;

14.    Responding to inquiries of Class Counsel regarding Class Members who have contacted Class Counsel regarding the terms of the Settlement and contemporaneously giving Counsel for Wells Fargo notice of all such inquiries;

15.    Apprising Class Counsel and Counsel for Wells Fargo of the

19

activities of the Settlement Administrator via a weekly report, including status reports regarding the Class Notice, Requests for Exclusion, and completed Opt-Out Forms received, and promptly providing copies to Class Counsel and Counsel for Wells Fargo of all electronic or written communications between the Settlement Administrator and any Class Member;

16.     Responding to requests for further information from Class Members via a toll-free number, including providing a copy of this Settlement Agreement, the First Amended Complaint, or any other materials available on the Website, to any Class Member who requests such documents;

17.     Creating and maintaining the Settlement Website, and removing the Settlement Website from the Internet promptly if the Settlement is terminated or if the Court denies final approval of the Settlement, and, in any event, within 90 days after the Effective Date;

18.     Obtaining approval from the Parties for the name of the Settlement Website before publishing

19.     Maintaining adequate records of its activities, including the dates of the mailing of Class Notice(s), Second Mailing, Requests for Exclusion, and Opt-Out Forms, returned mail and other communications, and attempted written or electronic communications with Class Members;

20.     Confirming in writing the substance of its activities and its completion of the administration of the Settlement;

21.     Responding timely to communications from Class Counsel or Counsel for Wells Fargo;

22.     Reporting timely each Approved Claim for a GAP Refund, and Additional Compensation payment on an IRS Form W-2 and IRS form 1099 to each applicable Class Member;

23.     Reporting timely on an IRS Form 1099 the Fee and Expense Awards and Service Awards to the Class Counsel and Class Representatives,

respectively;

24.    Providing assistance with the CAFA notices required by the Settlement Agreement which shall be provided to the appropriate Federal and State Officials within ten (10) days after the filing of the Preliminary Approval Motion pursuant to 28 U.S.C. § 1715;

25.    Emailing Class Members who did not cash their Settlement Checks after 180 days and whose Settlement Checks equal or exceed $5.00, so that a new Settlement Check can be issued; and

26.    Performing such other tasks as the Parties mutually agree or that are specified in this Agreement.

B.    The Settlement Administrator shall keep all information it obtains relating to the identification and contact information of Class Members strictly confidential pursuant to the Protective Order previously entered in this case and use it only for the sole purposes described herein and shall return all such information to Counsel for Wells Fargo upon completion of the Settlement administration tasks. Furthermore, upon completion of its duties, the Settlement Administrator shall return to Class Counsel and Counsel for Wells Fargo all documents related to the Action, including all documents it received in connection with this case from the Parties, Class Members, Class Representatives, or any other individuals (including, but not limited to, objections, Requests for Exclusion, and Opt-Out Forms).

C.    Class Counsel and Counsel for Wells Fargo will provide the Settlement Administrator with a copy of this Settlement Agreement which identifies and lists duties to be performed by the Settlement Administrator, as described above.

D.    The Settlement Administrator shall provide Class Counsel a copy of its engagement agreement with Wells Fargo as well as invoices relating to the administration of the Parties' Settlement.

E.    All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be resolved jointly by Class Counsel and Counsel for Wells

21

1  Fargo consulting in good faith.  If the Parties are unable to reach agreement, either

2  may raise the disagreement with the Court.

3  **VI.    SERVICE AWARDS, ATTORNEYS' FEES, AND REIMBURSEMENT**

4  **OF EXPENSES**

5         A.    **Fee and Expense Application.** Class Counsel may submit an

6  application or applications (the "Fee and Expense Application") to the Court for

7  payment of: (a) an award of attorneys' fees; plus (b) reimbursement of reasonable

8  expenses incurred in connection with prosecuting this Action.  Class Counsel agree

9  that the Fee and Expense Application will not seek an amount in excess of

10  $23,100,000.00 for attorneys' fees and will not seek an amount in excess of $500,000

11  for expenses.  Wells Fargo agrees not to object to Class Counsel's Fee and Expense

12  Application if submitted in compliance this Agreement.

13         B.    **Payment of Fee and Expense Award.**  Any amounts that are awarded

14  by the Court pursuant to the paragraph above (the "Fee and Expense Award") shall

15  be paid by the Settlement Administrator from the Settlement Fund within thirty (30)

16  days of the Effective Date.  The Fee and Expense Award shall be paid to Frank Sims

17  & Stolper LLP, which may further pay such funds to Class Counsel, subject to the

18  terms herein.

19         C.    **Award of Attorneys' Fees and Expenses Shall Not Impact the**

20  **Effectiveness of this Agreement.** The procedure for and the allowance or

21  disallowance by the Court of the Fee and Expense Application are not part of the

22  Settlement set forth in this Agreement and are to be considered by the Court separately

23  from the Court's consideration of the fairness, reasonableness, and adequacy of the

24  Settlement set forth in this Agreement.  Any order or proceeding relating to the Fee

25  and Expense Application, or any appeal from any Fee and Expense Award or any

26  other order relating thereto or reversal or modification thereof, shall not operate to

27  terminate or cancel this Agreement.  No order of the Court or modification or reversal

28  on appeal of any order of the Court concerning any Fee and Expense Award shall

constitute grounds for cancellation or termination of this Agreement.

D. **No Liability for Attorneys' Fees and Expenses of Class Counsel.** Neither the Class Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to any payment(s) to Class Counsel pursuant to this Agreement and/or to any other Person who may assert some claim thereto or any Fee and Expense Award that the Court may make in the Action, other than as set forth in this Agreement. Similarly, neither the Class Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

E. **Plaintiffs' Service Award Application.** Class Counsel and Plaintiffs may submit application(s) to the Court for a Service Award ("Service Award Applications"). Class Counsel and Plaintiffs agree that the Service Award Applications shall not exceed $7,500 for each Class Representative. Wells Fargo agrees to not to oppose Service Award Applications of up to $7,500 to each of the Class Representatives for their time, effort, and expense in prosecuting this litigation and achieving this Settlement.  Any Service Awards which are awarded by the Court shall be paid from the Settlement Fund.  Any Service Awards shall be paid by the Settlement Administrator from the Settlement Fund within thirty (30) Days of the Effective Date.

## VII.  CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

A. **Effective Date.** The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

1. Wells Fargo no longer has any right to terminate this Agreement, nor is there a possibility of termination of this Agreement as set forth herein or, if Wells Fargo does not have such right, Wells Fargo has given written notice to Plaintiffs' Counsel that it will not exercise such right;

2.     The Court has finally approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Fed. R. Civ. P. 23, and has entered the Final Approval Order and Judgment;

3.     The Class Released Claims and the Action are dismissed with prejudice pursuant to the Final Approval Order and Judgment; and

4.     The expiration of appeal periods and/or resolution of all appeals:

    a.     If no appeal is taken from the Final Approval Order or Judgment, the date after the time to appeal therefrom has expired; or

    b.     If any appeal is taken from the Final Approval Order or Judgment, the date after all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom has expired, in a manner resulting in an affirmance without material modification of the relevant order or judgment.

B.     **Depositing Money into the Settlement Fund and Occurrence of Effective Date.**  Within thirty (30) days after Final Approval of the Settlement, Wells Fargo will transfer the sum of $45 million to the Settlement Administrator to be held in an account maintained by the Settlement Administrator as the Settlement Fund. Upon the occurrence of Effective Date, and all of the events referenced in Paragraph VII.A. above, the Settlement Administrator shall issue the appropriate Settlement Checks to the Class and pay the Fee and Expense and Service Awards approved by the Court from the Settlement Fund.  The Fee and Expense and Service Awards payments shall be issued within thirty (30) days after the Effective Date.  The payments to the Class shall be issued within thirty (30) days after the Effective Date, or as soon thereafter as reasonably practicable.

C.      **Failure of Effective Date to Occur.** If all of the conditions specified in this Section are not met, then this Settlement Agreement shall be cancelled and terminated and any funds deposited with the Settlement Administrator shall be returned to Wells Fargo, subject to and in accordance with the provisions set forth herein unless the Settling Parties mutually agree in writing to proceed with this Settlement Agreement. The effectiveness of the Settlement is expressly conditioned on the Settlement Agreement being approved by the Court and any appellate court reviewing the Settlement without it being rejected or required to be materially modified by any Court ruling or any order resulting from an appeal or other review. If the Settlement is not finally approved by the Court and any appellate court reviewing it without material modification, the Agreement shall terminate and cease to have any effect.

D.      **Requests for Exclusion/Opt-Outs.** Any Class Member who wishes to opt out of the Class must do so on or before the Exclusion/Objection Deadline specified in the Class Notice in the manner laid out in the Class Notice.

1.      In order to become an Opt-Out, a Class Member must mail a request for exclusion with the Settlement Administrator with a post-mark date no later than the Exclusion/Objection Deadline. The request for exclusion must include all information specified in the Class Notice. Opt-Outs may opt out of the Class only on an individual basis; so-called "mass" or "class" opt-outs shall not be allowed and shall be of no force or effect.

2.      No later than five (5) Days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide Class Counsel and Counsel for Wells Fargo a complete and final list of Opt-Outs. With the Motion for Final Approval of the Settlement, Class Counsel will file with the Court a complete list of Opt-Outs, including the name, city, and state of the person requesting exclusion (the "Opt-Out List").

a.      With respect to any Opt-Outs, Wells Fargo reserves all legal

1                       rights and defenses, including, but not limited to, any

2                       defenses relating to whether the person qualifies as a Class

3                       Member and/or has standing to bring any claim.

4           b.     Wells Fargo may challenge the validity of any Opt-Out by

5                       filing a motion with the Court within five (5) Days after the

6                       Settlement Administrator provides Counsel for Wells Fargo

7                       a complete and final list of Opt-Outs. The Court shall have

8                       jurisdiction to resolve any disputes regarding the validity of

9                       Opt-Outs. Any decision by Wells Fargo not to dispute an

10                      Opt-Out shall not be a waiver, determination, or preclusive

11                      finding against the Class Releasees in any proceeding.

12     E.     **Objections.** Class Members who wish to object to any aspect of the

13 Settlement including any Fee and Expense Application must file with the Court a

14 written statement containing their objections prior to the Exclusion/Objection

15 Deadline and abide by the requirements laid out in the Class Notice.  The written

16 objections must also be mailed to the Settlement Administrator with a post-mark date

17 no later than the Exclusion/Objection Deadline.  The written statement must include

18 all information specified in the notices including but not limited to a description of all

19 objections to the Settlement, the reasons for said objections, and any legal authority

20 supporting the objections.  Class Members who "Opt Out" of the Settlement shall not

21 have the right to object to the Settlement and shall not have standing to do so.  Because

22 any appeal by an objecting Class Member to the Settlement, Fee and Expense Award

23 or Plaintiffs' Service Awards may delay the payment under the Settlement, each

24 objecting Class Member must elect within thirty (30) days of the Final Approval

25 Order to (a) not appeal; (b) appeal only the objecting Class Member's portion of the

26 Fee and Expense Award or Representative Plaintiffs' Service Awards which would

27 be severed from the rest of the case and would not delay the final judgment for all

28 other Class Members; or, (c) if the objecting Class Member purports to appeal on

behalf of the entire Class (for which he or she has not been appointed to represent and would likely be in conflict with), or does not definitively or timely choose option (a) or (b) above, each such objecting Class Member that appeals agrees to put up a cash bond to be set by the this Court sufficient to reimburse Wells Fargo and Class Counsel's appellate fees, Wells Fargo and Class Counsel's expenses, and the lost interest for one year to the Class caused by the likely delay. Any award or payment of attorneys' fees made to the counsel of an objector to the Settlement shall be made only by Court order and upon a showing of a substantial benefit conferred to the Class. Any award of attorneys' fees by the Court will be conditioned on the objector and his or her attorney stating under penalty of perjury that no payments shall be made to the objector based on the objector's participation in the matter other than as ordered by the Court.

F.     **Termination.** Plaintiffs, through Class Counsel, and Wells Fargo shall have the right, but not the obligation, to terminate this Agreement if:  (1) the Court rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that results in a substantial modification to a material term of the proposed Settlement; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order, that results in a substantial modification to a material term of the proposed Settlement. However, the Settling Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any appellate court. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section, by a signed writing served on the other Parties no later than 10 days after receiving notice of the event prompting the termination.   If, but only if, this Agreement is terminated pursuant to this Section then:

1.     The Parties will be returned to their positions *status quo ante* and this Agreement shall be null and void and shall have no force or effect and all of its

provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Plaintiffs, Wells Fargo or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

2.      Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, shall be admissible or entered into evidence for any purpose whatsoever; and

G.      **Other Orders.** No Settling Party shall have any obligation whatsoever to proceed under any terms other than those substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Settling Party. Without limiting the foregoing, Wells Fargo shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Action and the Class Released Claims.

## VIII. NO ADMISSION OF LIABILITY

A.      **Final and Complete Resolution.** The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action, and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Action.

B.      **Federal Rule of Evidence 408.** The Settling Parties agree that this Settlement Agreement, its terms, and the negotiations surrounding this Settlement Agreement shall be governed by Federal Rule of Evidence 408 and any state-law equivalents and shall not be admissible or offered or received into evidence in any

suit, action, or other proceeding, except upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare, or enforce the rights of the Settling Parties with respect to any provision of this Agreement.

C. **Use of Agreement as Evidence.** Whether or not this Agreement becomes final or is terminated pursuant to its terms, the Settling Parties expressly agree that neither this Agreement nor the Settlement, any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claims released by the Agreement, any allegation made in the Action, or any violation of any statute or law or of any wrongdoing or liability of Wells Fargo, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other proceeding; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of the Class Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement; provided, however, that the Class Releasees may file this Agreement (including the Exhibits), the Final Approval Order, and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## IX.   REPRESENTATIONS AND WARRANTIES

A.    This Agreement and the Settlement shall be subject to the ordinary and customary judicial approval procedures under Fed. R. Civ. P. 23.  Until and unless

this Agreement is dissolved or becomes null and void by its own terms, or unless otherwise ordered by the Court, or if Final Approval is not achieved, Plaintiffs and Wells Fargo represent and warrant that they shall take all appropriate steps in the Action necessary to preserve the jurisdiction of the Court, use their best efforts to cause the Court to grant Preliminary and Final Approval of this Agreement as promptly as possible, and take or join in such other steps as may be necessary to implement this Agreement and to effectuate the Settlement. This includes the obligation to (a) oppose non-meritorious objections and to defend the Agreement and the Settlement before the Court and on appeal, if any; (b) seek approval of this Agreement and of the Settlement by the Court; (c) move for the entry of the orders required to effectuate Preliminary and Final Approval; and (d) join in the entry of such other orders as are necessary to effectuate this Agreement.

B.     Any Fee and Expense Award that Plaintiffs and Class Counsel may seek upon application to the Court pursuant to this Agreement shall include all attorneys' fees and litigation costs that Plaintiffs, Class Counsel, and any of the current and former owners, predecessors, successors, partners, shareholders, agents (alleged or actual), representatives, employees, and Affiliates of Class Counsel, seek or may have any right or claim to in connection with the Action and the Class Released Claims.

C.     Plaintiffs represent and warrant that other than Class Counsel, as that term is defined herein, there is no other Person having any interest in any award of attorneys' fees, expenses, or litigation costs in connection with the Action, Agreement, or Settlement.

D.     Plaintiffs and Wells Fargo represent and warrant that he, she, it, or they have full authorization and capacity to enter into this Agreement and to carry out the obligations provided for herein. Each Person executing this Agreement on behalf of a Settling Party, entity, or other Person(s) covenants, warrants, and represents that he, she, or it has been fully authorized to do so by that Settling Party, entity, or other Person(s). Plaintiffs and Wells Fargo represent and warrant that he, she, it, or they

intend to be bound fully by the terms of this Agreement.

E.     Plaintiffs and Wells Fargo represent and warrant that they have not, nor will they, unless expressly authorized to do so by the terms of this Agreement, (a) attempt to void this Agreement in any way; (b) Opt-Out of the Settlement under this Agreement; (c) solicit or encourage in any fashion a member of the Class to Opt-Out; or (d) solicit or encourage in any fashion any effort by any Person to object to the Settlement under this Agreement.

F.     If any Person breaches the terms of any of the representations and warranties in this section, the Court shall retain jurisdiction over this matter to entertain actions by a Settling Party against such Person for breach and/or any Settling Party's request for a remedy for such breach.

G.     Class Counsel represent and warrant that they (1) will not seek out or solicit, and (2) have no present intention to pursue individual or class claims against Wells Fargo or any of the Class Releasees with respect to matters within the scope of the Class Released Claims unless this Settlement is not granted Preliminary or Final Approval by the Court.  The Settling Parties understand and agree that nothing in this paragraph imposes or shall be construed to prohibit or restrict Class Counsel from representing persons who seek representation for such claims subsequent to the date of this Agreement.

H.     Plaintiffs and Class Counsel represent and warrant that they will comply with the Protective Order that applies to this Action and will not use or seek to use the fact or content of the Settlement in this Action in connection with any other claim, action, or litigation against any Class Releasee (excepting only actions to enforce or construe this Agreement).

I.     Class Counsel represent and warrant to Wells Fargo that they have the authority to execute this Agreement on behalf of Plaintiffs, and themselves, and thereby to bind Plaintiffs, to all terms and conditions of this Agreement, and, subject to Court approval, to bind all Class Members to the terms and conditions of this

Agreement.

## X.    MISCELLANEOUS PROVISIONS

A.    **Voluntary Settlement.** The Settling Parties agree that the terms of the Settlement as described herein were negotiated in good faith by the Settling Parties with the assistance of an independent mediator, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

B.    **Subsequent Events Impacting Administration.** In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Settling Parties, and failing agreement, as shall be ordered by the Court.

C.    **Claims in Connection with Administration.** No Person shall have any claim against the Plaintiffs, Wells Fargo, Counsel for Wells Fargo, Class Counsel, the Settlement Administrator, or the Class Releasees or their agents based on administration of the Settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

D.    **Binding Effect.** This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs shall be binding upon all Class Members.

E.    **Authorization to Enter Settlement Agreement.** The undersigned representatives of Wells Fargo represent that they are fully authorized to enter into and to execute this Agreement and any modifications or amendments to the Agreement on behalf of Wells Fargo. Class Counsel, on behalf of Plaintiffs and the Class, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Class that

1  they deem appropriate.

2       F.    **Notices.** All notices and responses to notices under this Agreement shall

3  be in writing. Each such notice or response shall be given either by email unless

4  otherwise specified herein or in the notice to the Class; and, if directed to any Class

5  Member, shall be addressed to Plaintiffs' Counsel at their email addresses set forth

6  below, and if directed to Wells Fargo, shall be addressed to Counsel for Wells Fargo

7  at the email addresses set forth below or such other email addresses as Class Counsel

8  or Wells Fargo may designate, from time to time, by giving notice to all Settling

9  Parties hereto in the manner described in this paragraph.

10      If directed to Plaintiffs or any Class Member, email address notice to:

11          Jason Frank, jfrank@lawfss.com

12          Andrew Stolper, astolper@lawfss.com

13          Scott Sims, ssims@lawfss.com

14          Maritza Nowowiejski, mnowowiejski@lawfss.com

15          Franklin Azar, azarf@fdazar.com

16          Charlie Schaffer, cschaffer@lfsblaw.com

17      If directed to Wells Fargo, email address notice to:

18          William C. Mayberry, bill.mayberry@troutmansanders.com

19          Joshua D. Davey, joshua.davey@troutmansanders.com

20          David C. Powell, dpowell@mcguirewoods.com

21          Alicia A. Baiardo, abaiardo@mcguirewoods.com

22       G.    **Confidentiality of Settlement Negotiations.** The Settling Parties and

23  their counsel shall keep strictly confidential and not disclose to any third party any

24  non-public information regarding the Settling Parties' negotiation of this Settlement

25  and/or Agreement, unless ordered by the Court to do so. For the sake of clarity,

26  information contained within this Agreement shall be considered public, as well as

27  any information requested by the Court in the approval process and other such

28  information necessary to implement this Settlement, provided such information is

filed (and is not under seal) and/or is not considered to be confidential materials under the Settling Parties' Protective Order in this case.

H.      **No Party Deemed to Be the Drafter.** None of the Settling Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, rule of interpretation, or construction that would or might cause any provision to be construed against the drafter hereof.

I.      **Choice of Law.** This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Settling Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

J.      **Amendment; Waiver.** This Agreement shall not be modified in any respect except by a writing executed by Wells Fargo and Plaintiffs or Class Counsel, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.  Nothing in the Settlement Agreement (including the fact of Settlement) constitutes or shall be construed as a waiver by Wells Fargo of whatever rights they may have under any arbitration agreement, including with respect to any claim, lawsuit, or judicial proceeding initiated by a member of the Class who has opted-out of the Settlement.

K.      **Execution in Counterparts.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Settling Parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

L.      **Integrated Agreement.** This Agreement constitutes the entire

34

agreement between the Settling Parties with respect to the Settlement. This Agreement supersedes all prior negotiations and agreements, including but not limited to the Memorandum of Understanding/Term Sheet, and may not be modified or amended except by a writing signed by the Settling Parties and their respective counsel. The Settling Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be other than or different from the facts now known to each Settling Party or believed by such party to be true. Each Settling Party therefore expressly assumes the risk of the facts or law turning out to be different and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

M.    **Attorneys' Fees and Costs.** Except as otherwise expressly provided in this Agreement, each party shall bear its own costs and attorneys' fees.

N.    **Return or Destruction of Confidential Materials.** The Settling Parties agree to continue to comply with the Protective Order entered in this Action at the conclusion of the case. All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

O.    **Intended Beneficiaries.** No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not one of the Plaintiffs, a Class Member, Wells Fargo, one of the Class Releasees, Class Counsel, or Counsel for Wells Fargo, except that this Agreement will be binding upon and inure to the benefit of the successors and assigns of the Settling Parties.  No Plaintiff, Class Member, or Class Counsel may assign or otherwise convey any right to enforce any provision of this Agreement.

P.    **Regular Course of Business.** The Settling Parties agree that nothing in

this Agreement shall be construed to prohibit communications between Class Releasees, on the one hand, and Class Members, on the other hand, in the regular course of business.

Q.     **Tax Consequences.** No representations or advice regarding the tax consequences of this Agreement have been made by any Settling Party. The Settling Parties further understand and agree that each Settling Party, each Class Member, each of Class Counsel, and Plaintiffs shall be responsible for his, her, its, or their own taxes, if any, resulting from this Agreement and any payments made pursuant to this Agreement.

R.     **Bankruptcy Proceedings.**

1.     The Settling Parties agree that any Class Member who is in active bankruptcy proceedings or previously was a party to bankruptcy proceedings during the period of time covered in the definition of the Class may only participate in the Settlement subject to applicable bankruptcy law and procedures. Wells Fargo is under no obligation to notify any bankruptcy court that has, had, or may have jurisdiction over such Class Member's bankruptcy proceedings or any trustee or examiner appointed in such Class Member's bankruptcy proceedings of this Agreement or the benefits conferred by the Agreement and the Settlement.

2.     The Settling Parties agree that any disputes concerning the rights of the bankruptcy estate to the proceeds of any payment under the Settlement or Service Award shall be adjudicated by the applicable Bankruptcy Court.   The Settlement Administrator shall follow any direction of the Bankruptcy Court with respect to the proceeds of any payment or Service Award.

S.     **No Conflict Intended; Headings**.   Any inconsistency between this Agreement and the exhibits attached hereto shall be resolved in favor of this Agreement.   The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

T.     **Class Member Obligations.**   Under no circumstances shall the

36

Settlement or Agreement or any release herein be deemed to alter, amend, or change the terms and conditions of any account or loan to which any Class Member is or was a party, or to provide a defense to any such loan, nor shall the Agreement or any release herein be deemed to have any effect in any bankruptcy case, in any foreclosure proceeding, or in any other action involving a Class Member hereto, nor shall the Settlement or the Agreement create or be construed as evidence of any violation of law or contract.  In the event this Agreement is so construed as to a particular Class Member, it can be declared by Wells Fargo to be null and void as to that Class Member only (and in such latter event, the Class Released Claims as to that Class Member shall also be void).

U.  **Press Release.**  Plaintiffs and Class Counsel shall not issue, or otherwise cause to be issued, any press release or advertisement, concerning the Action and/or the facts and circumstances that were the subject of, or disclosed in discovery in, the Action, excepting only such documents created and disbursed as part of the Class Notice. Plaintiffs and Class Counsel shall not seek media interviews concerning: (i) the Action; (ii) the facts and circumstances that were the subject of, or disclosed in discovery in the Action; and/or (iii) the Settlement of the Action, excepting only that such statements may be made to individual Class Members in one-on-one communications or as part of the Class Notice.  Under no circumstance shall Plaintiffs or Class Counsel disclose to any third party (1) any confidentially designated discovery obtained from Wells Fargo in the Action and/or (2) any non-public information regarding the Settling Parties' negotiation of this Settlement and/or this Agreement, except as may be otherwise permitted in this Agreement.  Specifically, this paragraph does not alter the scope of any confidentiality provisions or provisions regarding the use of non-public information set forth in this Agreement.

V.  **Mediator's Declaration.** The Settling Parties agree that the Mediator may file a declaration in support of any approval motions.

W.  **Further disputes:** If any disputes arise out of the finalization of the

1   settlement documentation, said disputes are to be resolved by the Honorable Andrew

2   Guilford (Ret.) first by way of expedited telephonic mediation and, if mediation is

3   unsuccessful, then by way of final, binding, non-appealable determination.

4

5                    [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW

116000927v2

1    IN WITNESS WHEREOF, the Settling Parties hereto, through their fully

2  authorized representatives, have entered into this Agreement as of the date first below

3  written, and have executed this Settlement Agreement on the date indicated below

4  each respective signature.

5

6  PLAINTIFF ARMANDO HERRERA
   By:

7

8  _____
   Armando Herrera

9

10  Date: _____, 2021

11

12  PLAINTIFF DENA LUCERO
   By:

13

14  _____
   Dena Lucero

15

16  Date:_____, 2021

17

18  PLAINTIFF FEDERICK BROWN
   By:

19

20  _____
   Frederick Brown

21

22  Date:_____, 2021

23

24  PLAINTIFF VANITY ARRINGTON
   By:

25

26  _____
   Vanity Arrington

27

28  Date:_____, 2021

DocuSign Envelope ID: F54BBF14-4A15-4015-B044-1C282DB9A896

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have entered into this Agreement as of the date first below written, and have executed this Settlement Agreement on the date indicated below each respective signature.

PLAINTIFF ARMANDO HERRERA
By:

_____
Armando Herrera

Date:_____, 2021

PLAINTIFF DENA LUCERO
By:

_____
Dena Lucero

Date:_____, 2021
May 14th

PLAINTIFF FEDERICK BROWN
By:

_____
Frederick Brown

Date:_____, 2021
May 14th

PLAINTIFF VANITY ARRINGTON
By:

_____
Vanity Arrington

Date:_____, 2021
May 14th

39

DocuSign Envelope ID: F54BBF14-4A15-4015-B044-1C282DB9A896

1  PLAINTIFF KASHIF AWAN
2  By:

3  _____
4  Kashif Awan

5  Date:_____, 2021

6

7  PLAINTIFF GRETA CARTER
8  By:  *Gretta Carter*
   DocuSigned by:
9  _____
   643A2DF73E44438...
10  Greta Carter

11  Date:___May 14th_____, 2021

12

13  PLAINTIFF JAMES ATKINS
14  By:  *JAMES ATKINS*
   DocuSigned by:
15  _____
   3C79F074B90C4C1...
16  James Atkins

17  Date:___May 14th_____, 2021

18

19  PLAINTIFF ILKA ROBINSON-EATON
20  By:  DocuSigned by:
21  _____
   9BE765F9E71C4B7...
22  Ilka Robinson-Eaton

23  Date:___May 14th_____, 2021

24

25

26

27

28

40

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW
116000927v1

DocuSign Envelope ID: F54BBF14-4A15-4015-B044-1C282DB9A896

1   PLAINTIFF JANET CORPES
2   By:

3   _____
    Janet Corpes
4
5   Date: _____May 14th_____, 2021
6
7   PLAINTIFF TERRI JONES
8   By:

9   _____
10  Terri Jones
11  Date: _____May 14th_____, 2021
12
13  PLAINTIFF HEIDE HUMPHREYS
14  By:

15  _____
16  Heidi Humphreys
17  Date: _____, 2021
18
19  PLAINTIFF RIA MARTIENS
20  By:

21  _____
22  Ria Martiens
23  Date: _____May 14th_____, 2021
24
25
26
27
28

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW
116000927v1

DocuSign Envelope ID: F54BBF14-4A15-4015-B044-1C282DB9A896

1   PLAINTIFF BRIAN SWEENEY
2   By:

3   _____
4   Brian Sweeney

5   Date:_____, 2021

6

7   PLAINTIFF NAKECIA DEAN
8   By: _____
    DocuSigned by:
9   6D0FA163FD764D8...

10  Nakecia Dean

11  Date:_May 14th_____, 2021

12

13  PLAINTIFF VON GRIFFIN
14  By: _____
    DocuSigned by:
15  110D14886E7F453...

16  Von Griffin

17  Date:_May 14th_____, 2021

18

19

20  **DEFENDANTS WELLS FARGO BANK, NATIONAL ASSOCIATION AND**
21  **WELLS FARGO & CO.**

22  By:

23  _____
24

25  Title:_____
26  Date:_____, 2021

27

28
    _____
                            42
                   SETTLEMENT AGREEMENT
        *ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.*, CASE NO. 8:18-CV-00332-AG-MRW
    116000927v1

DocuSign Envelope ID: F54BBF14-4A15-4015-B044-1C282DB9A896

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Agreed as to form and content:

_____

Jason M. Frank (190957)
Andrew Stolper (205642)
Scott H. Sims (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Ste. 855
Irvine, CA 92612
Telephone: (949) 201-2400
Facsimile: (949) 201-2405

*Frank Azar*
_____

Franklin D. Azar (*pro hac vice*)
FRANKLIN D. AZAR &
ASSOCIATES P.C.
14426 East Evans Ave.
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 759-5203

_____

Charles Shaffer (*pro hac vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

*Counsel for Plaintiffs and the Proposed
Class*

_____

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW

116000927v1

DocuSign Envelope ID: F54BBF14-4A15-4015-B044-1C282DB9A896

David C. Powell (SBN 129781)
dpowell@mcguirewoods.com
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: (415) 844-9944
Facsimile: (415) 844-9922

_____

William C. Mayberry (*pro hac vice*)
TROUTMAN PEPPER LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 998-4050
Facsimile: (704) 998-4051

*Attorneys for Defendants Wells Fargo*
*& Company and Wells Fargo Bank*
*N.A. d/b/a Wells Fargo Dealer Services*

44

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW

116000927v1

1  PLAINTIFF KASHIF AWAN
   By:
2
   *Kashif Awan*
3  Kashif Awan (May 14, 2021 17:58 CDT)
4  Kashif Awan

5  Date: May 14, 2021

6

7  PLAINTIFF GRETA CARTER
   By:
8

9
   _____
10 Greta Carter

11 Date:_____, 2021

12

13 PLAINTIFF JAMES ATKINS
   By:
14

15
   _____
16 James Atkins

17 Date:_____, 2021

18

19 PLAINTIFF ILKA ROBINSON-EATON
   By:
20

21
   _____
22 Ilka Robinson-Eaton

23 Date:_____, 2021

24

25

26

27

28
                                    40
                        SETTLEMENT AGREEMENT
   *ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW
   116000927v1

# Herrera Settlement Agreement (For Client Signature)

Final Audit Report                                                    2021-05-14

| | |
|---|---|
| Created: | 2021-05-14 |
| By: | Thomas Shrack (tshrack@lfsblaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA5BvoIYTvNfU1WsLD4Qy88DGB_xqJQ1hN |

## "Herrera Settlement Agreement (For Client Signature)" History

📄 Document created by Thomas Shrack (tshrack@lfsblaw.com)
   2021-05-14 - 9:14:39 PM GMT- IP address: 173.168.246.34

📧 Document emailed to Kashif Awan (abmg.usa@gmail.com) for signature
   2021-05-14 - 9:15:53 PM GMT

📄 Email viewed by Kashif Awan (abmg.usa@gmail.com)
   2021-05-14 - 9:15:55 PM GMT- IP address: 66.249.87.232

✒️ Document e-signed by Kashif Awan (abmg.usa@gmail.com)
   Signature Date: 2021-05-14 - 10:58:40 PM GMT - Time Source: server- IP address: 67.184.36.184

✅ Agreement completed.
   2021-05-14 - 10:58:40 PM GMT

**Adobe Sign**

1  PLAINTIFF JANET CORPES
2  By:

3
4  _____
   Janet Corpes

5  Date:_____, 2021

6
7  PLAINTIFF TERRI JONES
8  By:

9
   _____
10 Terri Jones

11 Date:_____, 2021

12
13 PLAINTIFF HEIDI HUMPHREYS
14 By:
   *Heidi Humphreys*
15 Heidi Humphreys (May 14, 2021 18:27 EDT)
   _____
16 Heidi Humphreys

17 Date: May 14, 2021

18
19 PLAINTIFF RIA MARTIENS
20 By:

21
   _____
22 Ria Martiens

23 Date:_____, 2021

24
25
26
27
28
                                41

# Herrera Settlement Agreement (For Client Signature)

Final Audit Report                                                                                    2021-05-14

| | |
|---|---|
| Created: | 2021-05-14 |
| By: | Thomas Shrack (tshrack@lfsblaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtjAoZQMYjbgduOQdJCZMdHddFAgzHSiJ |

## "Herrera Settlement Agreement (For Client Signature)" History

Document created by Thomas Shrack (tshrack@lfsblaw.com)
2021-05-14 - 9:17:03 PM GMT- IP address: 173.168.246.34

Document emailed to Heidi Humphreys (humphreys3696@comcast.net) for signature
2021-05-14 - 9:18:03 PM GMT

Email viewed by Heidi Humphreys (humphreys3696@comcast.net)
2021-05-14 - 10:24:36 PM GMT- IP address: 73.64.214.71

Document e-signed by Heidi Humphreys (humphreys3696@comcast.net)
Signature Date: 2021-05-14 - 10:27:19 PM GMT - Time Source: server- IP address: 73.64.214.71

Agreement completed.
2021-05-14 - 10:27:19 PM GMT

**Adobe Sign**

1 | PLAINTIFF BRIAN SWEENEY

2 | By:

3 | Tim Sweeney (May 14, 2021 19:16 CDT)

4 | Brian Sweeney

5 | Date: May 14, 2021

6

7 | PLAINTIFF NAKECIA DEAN

8 | By:

9

10 | Nakecia Dean

11 | Date:_____, 2021

12

13 | PLAINTIFF VON GRIFFIN

14 | By:

15

16 | Von Griffin

17 | Date:_____, 2021

18

19

20 | **DEFENDANTS WELLS FARGO BANK, NATIONAL ASSOCIATION AND**

21 | **WELLS FARGO & CO.**

22 | By:

23

24

25 | Title: _____

26 | Date:_____, 2021

27

28

42

# Herrera Settlement Agreement (For Client Signature)

Final Audit Report                                                    2021-05-15

| | |
|---|---|
| Created: | 2021-05-14 |
| By: | Thomas Shrack (tshrack@lfsblaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAADs6L9VVxJsgKXU8btRiP-sIT0hgQeAQM |

## "Herrera Settlement Agreement (For Client Signature)" History

🔒 Document created by Thomas Shrack (tshrack@lfsblaw.com)
2021-05-14 - 9:19:04 PM GMT- IP address: 173.168.246.34

📧 Document emailed to Tim Sweeney (tsweeney@utexas.edu) for signature
2021-05-14 - 9:19:46 PM GMT

🔒 Email viewed by Tim Sweeney (tsweeney@utexas.edu)
2021-05-14 - 9:34:50 PM GMT- IP address: 74.125.214.7

✍️ Document e-signed by Tim Sweeney (tsweeney@utexas.edu)
Signature Date: 2021-05-15 - 0:16:43 AM GMT - Time Source: server- IP address: 70.112.129.125

✅ Agreement completed.
2021-05-15 - 0:16:43 AM GMT

**Adobe Sign**

1    PLAINTIFF BRIAN SWEENEY
     By:
2

3    _____

4    Brian Sweeney

5    Date:_____, 2021

6

7    PLAINTIFF NAKECIA DEAN
     By:
8

9    _____

10   Nakecia Dean

11   Date:_____, 2021

12

13   PLAINTIFF VON GRIFFIN
     By:
14

15   _____

16   Von Griffin

17   Date:_____, 2021

18

19

20   **DEFENDANTS WELLS FARGO BANK, NATIONAL ASSOCIATION AND**
21   **WELLS FARGO & CO.**

22   By: ┌─ DocuSigned by:

23        *Mike Weinbach*

24        └─ 463297056E7D46B...
     _____

25   Title:   CEO, Consumer Lending
         _____
26   Date: 6/3/2021 | 1:57:54 PM PDT
         _____, 2021

27
                              43
28   ─────────────────────────────────────────
     SETTLEMENT AGREEMENT
     *ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW

     144996826_6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Agreed as to form and content:

_____

Jason M. Frank (190957)
Andrew Stolper (205642)
Scott H. Sims (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Ste. 855
Irvine, CA 92612
Telephone: (949) 201-2400
Facsimile: (949) 201-2405

_____

Franklin D. Azar (*pro hac vice*)
FRANKLIN D. AZAR &
ASSOCIATES P.C.
14426 East Evans Ave.
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 759-5203

_____

Charles Shaffer (*pro hac vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

*Counsel for Plaintiffs and the Proposed Class*

_____

44

SETTLEMENT AGREEMENT
*ARMANDO HERRERA VS. WELLS FARGO BANK, N.A.,* CASE NO. 8:18-CV-00332-AG-MRW

144996826_6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David C. Powell (SBN 129781)
dpowell@mcguirewoods.com
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: (415) 844-9944
Facsimile: (415) 844-9922

_____

William C. Mayberry (*pro hac vice*)
TROUTMAN PEPPER LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 998-4050
Facsimile: (704) 998-4051

*Attorneys for Defendants Wells Fargo*
*& Company and Wells Fargo Bank*
*N.A. d/b/a Wells Fargo Dealer Services*

**DocuSign**

## Certificate Of Completion

Envelope Id: 92826342AC604E9887EFF027301C8B31
Subject: Please DocuSign: Active_144996826_7_Herrera Settlement Agreement.DOCX
Source Envelope:
Document Pages: 57
Certificate Pages: 3
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 1
Initials: 0

Status: Completed

Envelope Originator:
Tina Mitchell
420 Montgomery St.
San Francisco, CA  94104
Tina.M.Mitchell@wellsfargo.com
IP Address: 159.45.129.21

## Record Tracking

Status: Original
    6/3/2021 1:05:45 PM

Holder: Tina Mitchell
    Tina.M.Mitchell@wellsfargo.com

Location: DocuSign

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Mike Weinbach<br>mike.weinbach@wellsfargo.com<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>Mike Weinbach<br>463297056E7D46B...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 159.45.71.16 | Sent: 6/3/2021 1:14:19 PM<br>Viewed: 6/3/2021 1:56:45 PM<br>Signed: 6/3/2021 1:57:54 PM |

    **Electronic Record and Signature Disclosure:**
      Accepted: 6/3/2021 1:56:45 PM
      ID: 8e67a1b4-af35-434d-bc70-068ff596e8c6

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/3/2021 1:14:19 PM |
| Certified Delivered | Security Checked | 6/3/2021 1:56:45 PM |
| Signing Complete | Security Checked | 6/3/2021 1:57:54 PM |
| Completed | Security Checked | 6/3/2021 1:57:54 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

# Electronic Record and Signature Disclosure

**Last updated:** April 26, 2021

You are entitled by law to receive certain information "in writing." However, we may instead provide this information to you electronically with your prior consent. We also need your consent to use electronic signatures. In this consent (the "Consent"), "we," "us," "our," and "Wells Fargo" refer to Wells Fargo Bank, N.A. and any affiliate or subsidiary of Wells Fargo Bank, N.A. "You" and "your" refer to the person agreeing to this Consent.

1. **Scope.** In our sole discretion, we may provide to you, or you may sign, submit, or agree to at our request, certain documents, records, disclosures, notices, communications, agreements, fee schedules, statements, and other information in electronic form through the DocuSign system ("Electronic Records"). We may also use electronic signatures and obtain them from you through the DocuSign system ("Electronic Signatures"). You may receive emails related to the Electronic Records and Electronic Signatures. This Consent applies to any Electronic Records or Electronic Signatures in connection with the signing event on the DocuSign system associated with this Consent (the "Signing Event").

2. **Paper Copies.** We will not send you paper copies of any Electronic Records unless we, in our sole discretion, deem it appropriate to do so. If you desire a paper copy of an Electronic Record, you may: (a) download or print the Electronic Record after the Signing Event; or (b) contact the appropriate customer service unit and request a paper copy, for which we may charge you a fee unless prohibited by law. Any such fee will be disclosed at the time of request.

3. **Your Email Address.** To update your email address before completing the Signing Event: (a) if you arrived at the Signing Event through Wells Fargo Online® or a similar online system, follow the appropriate procedure for that system to update your email address; or (b) if you arrived at the Signing Event through a link in an email you received, please contact the Wells Fargo representative associated with that email.

4. **Withdrawal.** This Consent only applies to the Signing Event, and you will not be able to withdraw this Consent after you have completed the Signing Event. If you do not wish to agree to this Consent, you may decline to continue with the Signing Event.

5. **Software and Hardware Requirements.** To use Electronic Records and Electronic Signatures, you must meet the current minimum DocuSign system requirements, which can be found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements. In addition, you must have:
   - A web browser listed on the Wells Fargo Supported Browsers and Operating Systems page (https://www.wellsfargo.com/help/online-banking/browser-supported);
   - An Internet connection;
   - An active email account;
   - A currently supported version of a program that accurately displays PDF files;
   - A computer or other device and an operating system capable of supporting all of the above;
   - A printer, if you wish to print out paper copies of Electronic Records; and

- o  Electronic storage, if you wish to retain Electronic Records in electronic form.

Please indicate you have read, understand, and agree to this Consent by selecting the checkbox next to "I agree to use electronic records and signatures" before clicking "CONTINUE" within the Signing Event.

# Exhibit A

| CLAIM FORM |
|---|

***Herrera, et al. v. Wells Fargo Bank, N.A., et al.***
United States District Court, Central District of California
Case No. 8:18-cv-00332-JVS-MRW

**IMPORTANT:**   **YOU MUST SUBMIT THIS COMPLETED CLAIM FORM TO THE CLAIM ADMINISTRATOR EITHER ON THE SETTLEMENT WEBSITE OR BY RETURNING THE BELOW CLAIM FORM WHICH MUST BE POSTMARKED ON OR BEFORE DATE**

**[INSERT INDIVIDUAL RECIPIENT/ADDRESSEE            [INSERT QR CODE] MAILING AND VEHICLE INFORMATION]**

## SECTION I:  INSTRUCTIONS

You have received this Claim Form because you have been identified as a potential member of a Settlement Class in the lawsuit identified above.

**Please carefully review the following instructions before proceeding**.  You must provide all of the information requested by this Claim Form, including the signature at the bottom, either by returning this Claim Form via mail or by submitting a Claim Form on the Settlement Website at: <<INSERT>>.  You may also scan the QR Code above to complete and submit the Claim Form on your smartphone or tablet.

You must submit this Claim Form by [DEADLINE].  If you send the Claim Form by mail, it must be postmarked on or before [DEADLINE].

Failure to follow these directions could cause your Claim to be rejected.

## SECTION II: ELIGIBILITY

According to account records maintained by Wells Fargo, you financed the purchase of the vehicle identified above (the "Vehicle") along with Guaranteed Asset Protection or Guaranteed Auto Protection ("GAP").  Your finance agreement was subsequently assigned to Wells Fargo.  Wells Fargo's records indicate that you paid off your Finance Agreement early.

When Finance Agreements with GAP are paid off early, the customer may be entitled to a partial refund of the amount paid for GAP (an "Early Payoff GAP Refund"), provided that (1) they have not previously cancelled their GAP product and received a refund, and (2) they have not previously received benefits under their GAP product in the event of a total loss of their Vehicle.[1]  Sometimes the refunds are paid by the auto dealer who originally sold you the Vehicle (the "Dealer"), or by a GAP Administrator identified in the GAP agreement.  Wells Fargo's records do not indicate whether you previously received an Early Payoff GAP Refund.

---

[1] This Claim Form incorporates capitalized terms defined as part of the Settlement Agreement, which can be found at <<INSERT WEBSITE>>.

You are eligible to submit this form **only if** the following apply to you:

1. You are the purchaser of the Vehicle identified above which had GAP protection and was paid off early;

2. You did not cancel your GAP product prior to the payoff of your Vehicle;

3. You have not received any benefits under your GAP product following a total loss to your Vehicle; and

4. You have not previously received a GAP Refund for this Vehicle, including from a Dealer or GAP Administrator.

## SECTION III:  CHECK ALL OF THE BOXES BELOW THAT APPLY TO YOU

| | |
|---|---|
| ☐ | **I owned the Vehicle described above which had GAP protection and was paid off early** |
| ☐ | **I did not cancel my GAP product prior to paying off the Finance Agreement associated with this Vehicle.** |
| ☐ | **I did not receive any benefits under my GAP product after a total loss of my Vehicle.** |
| ☐ | **I never received a refund of any portion of the amount I paid for GAP, including from a Dealer or GAP Administrator.** |
| ☐ | **My email address is:  _____  [OPTIONAL]** |

## SECTION IV:  DECLARATION

I declare and affirm, under penalty of perjury under the laws of the United States, that the information in this Claim Form is true and correct to the best of my knowledge, information and belief and that I am eligible to make this claim.  I understand that this Claim Form is subject to audit, verification and/or review by Wells Fargo or the Court.

Dated: ___ ___ / ___ ___ / ___ ___ ___ ___

_____
Claimant Signature

Print Name _____

115997735v1

# Exhibit B

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ARMANDO HERRERA, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., *et al.* <br><br> Defendants. | CASE NO. 8:18-cv-00332-AG-MRW <br><br> **SETTLEMENT AGREEMENT EXHIBIT B** <br><br> *Honorable James V. Selna* |

115996981v2

The chart below identifies the applicable time period for determining whether an individual is a member of the Class.  "Class" or "Class Member(s)" means all persons in the United States (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Class Period, and (c) who did not receive a GAP Refund.

| **State of Origination** | **Finance Agreement Terminated** |
|---|---|
| Alabama | On or after February 27, 2012 |
| Alaska | On or after February 27, 2015 |
| Arizona | On or after February 27, 2012 |
| Arkansas | On or after February 27, 2013 |
| California | On or after February 27, 2014 |
| Colorado | On or after February 27, 2015 |
| Connecticut | On or after February 27, 2012 |
| Delaware | On or after February 27, 2015 |
| Florida | On or after February 27, 2013 |
| Georgia | On or after February 27, 2012 |
| Hawaii | On or after February 27, 2012 |
| Idaho | On or after February 27, 2013 |
| Illinois | On or after February 27, 2008 |
| Indiana | On or after February 27, 2008 |
| Iowa | On or after February 27, 2008 |
| Kansas | On or after February 27, 2013 |
| Kentucky | On or after February 27, 2003 |
| Louisiana | On or after February 27, 2008 |

115996981v2

| | |
|---|---|
| Maine | On or after February 27, 2012 |
| Maryland | On or after February 27, 2015 |
| Massachusetts | On or after February 27, 2012 |
| Michigan | On or after February 27, 2012 |
| Minnesota | On or after February 27, 2012 |
| Mississippi | On or after February 27, 2015 |
| Missouri | On or after February 27, 2008 |
| Montana | On or after February 27, 2010 |
| Nebraska | On or after February 27, 2013 |
| Nevada | On or after February 27, 2012 |
| New Hampshire | On or after February 27, 2015 |
| New Jersey | On or after February 27, 2012 |
| New Mexico | On or after February 27, 2012 |
| New York | On or after February 27, 2012 |
| North Carolina | On or after February 27, 2015 |
| North Dakota | On or after February 27, 2012 |
| Ohio | On or after February 27, 2010 |
| Oklahoma | On or after February 27, 2013 |
| Oregon | On or after February 27, 2012 |
| Pennsylvania | On or after February 27, 2014 |
| Rhode Island | On or after February 27, 2008 |
| South Carolina | On or after February 27, 2015 |
| South Dakota | On or after February 27, 2012 |
| Tennessee | On or after February 27, 2012 |
| Texas | On or after February 27, 2014 |
| Utah | On or after February 27, 2012 |
| Vermont | On or after February 27, 2012 |

115996981v2

| Virginia | On or after February 27, 2013 |
|----------|-------------------------------|
| Washington | On or after February 27, 2012 |
| West Virginia | On or after February 27, 2008 |
| Wisconsin | On or after February 27, 2012 |
| Wyoming | On or after February 27, 2008 |

115996981v2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit C

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9
10
11
12
13
14

ARMANDO HERRERA, *et al.*

Plaintiffs,

v.

WELLS FARGO BANK, N.A., *et al.*

Defendants.

CASE NO. 8:18-cv-00332-AG-MRW

**SETTLEMENT AGREEMENT EXHIBIT C – NOTICE TO CLASS __**

*Honorable James V. Selna*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

116000825v2

*Herrera et al. v. Wells Fargo Bank, N.A. et al.*

Case No. 8:18-cv-00332-JVS-MRW

<u>**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**</u>

This Notice of Proposed Settlement of Class Action ("Notice") was authorized by the United States District Court for the Central District of California.[1] It is not a solicitation from a lawyer.

**IF YOU ARE RECEIVING THIS NOTICE BY MAIL OR EMAIL, YOU HAVE BEEN IDENTIFIED AS A POTENTIAL CLASS MEMBER IN A CLASS ACTION SETTLEMENT**

**YOUR SETTLEMENT ADMINISTRATION CLAIM NUMBER IS XXXXX**

- A proposed Settlement has been reached in a class action lawsuit that may affect your rights.

- The Settlement resolves a class action lawsuit against Wells Fargo. The lawsuit alleges that Wells Fargo failed to provide customers with a partial refund of the fees paid for Guaranteed Asset Protection or Guaranteed Auto Protection ("GAP") after customers paid off their Finance Agreements early. Wells Fargo denies any wrongdoing because, among other reasons, it claims that to the extent a refund is due and has not been made, Wells Fargo is not the party responsible for making the refund.

- You are a Class Member if (1) you entered into a Finance Agreement with a GAP Agreement that was assigned to Wells Fargo; (2) your Finance Agreement terminated as the result of an Early Payoff that occurred during the Class Period; and (3) you did not receive a GAP refund.[2]

- **Wells Fargo's records indicate you may be a Class Member and you may be entitled to up to $_____ under the terms of the Settlement for the following vehicle _____.**

- The Court has not decided whether to finally approve the Settlement.

**YOUR LEGAL RIGHTS WILL BE AFFECTED WHETHER YOU ACT OR DO NOT ACT. PLEASE READ THIS ENTIRE NOTICE CAREFULLY.**

---

[1] Capitalized terms in this Notice have the same meaning as they are defined in the Settlement Agreement. The Settlement Agreement is posted on the Settlement Website, <<**insert website**>>.

[2] The Class also includes the Statutory Subclass Members defined in Section 5 below.

2

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FOR MONEY BY _____, 2021** | You may submit a claim for monetary compensation from the Settlement Fund by completing and returning the enclosed Claim Form by _____, 2021.  (See Section 7) |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY _____, 2021** | You may file a written request to exclude yourself or "opt out" from the Settlement by _____, 2021.  If you do so, you will not receive any money from the Settlement Fund and you will not release your claims in this lawsuit.  (See Section 11)<br><br>If the Settlement is granted final approval by the Court and you did not timely "opt out" of the Settlement, then you will release the claims described in Section 19 below. |
| **OBJECT TO THE SETTLEMENT BY _____, 2021** | If you believe the Settlement is unfair or inadequate, you may file a written objection to the Settlement by _____, **2021**, so long as you do not file a request to exclude yourself from the Settlement.  (See Section 17) |

**THESE OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE FURTHER DETAILED IN THIS NOTICE.**

**CONTINUED ON NEXT PAGE**

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

---

## Notice Contents

---

**Basic Information**

1.      Why am I receiving this notice?

2.      What is this lawsuit about?

3.      Why is this a class action?

4.      What are the reasons for the Settlement?

**The Settlement**

5.      Who is included in the Settlement Class?

6.      What benefits does the Settlement provide?

7.      Do I need to do anything to receive a payment?

8.      Why did I receive multiple notices?

9.      What can I do if I believe my payment was not calculated properly?

10.     How will this Settlement affect my rights?

**Excluding yourself from the Settlement**

11.     How do I exclude myself from the Settlement?

12.     If I do not request exclusion, can I sue Wells Fargo for the same claims later?

13.     If I exclude myself, may I still receive compensation from the Settlement Fund?

**The Lawyers Representing You**

14.     Do I have a lawyer in this case?

15.     How will the lawyers be paid for their services?

16.     Will Class Representatives receive service awards?

**Objecting to the Settlement**

17.     How do I inform the Court if I object to the Settlement?

18.     What is the difference between objecting to the Settlement and requesting exclusion?

---

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<website>>**

116000825v2

**Release of Claims**

19.     What claims are being released as part of the Settlement?

**Final Approval Hearing**

20.     When and where will the Court decide whether to grant final approval of the

        Settlement?

21.     Do I have to attend the hearing?

**Getting More Information**

22.     How do I get more information?

116000825v2

# BASIC INFORMATION

**1. WHY AM I RECEIVING THIS NOTICE?**

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about your options before the Court decides whether to grant final approval of the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights. Judge James V. Selna of the United States District Court for the Central District of California is overseeing this case and has exclusive jurisdiction over the Settlement. This litigation is known as *Hererra, et al. v. Wells Fargo Bank, N.A.,* Case No., 8:18-cv-00332-JVS-MRW.

**2. WHAT IS THIS LAWSUIT ABOUT?**

GAP is sold by auto dealers to customers who enter into a retail installment sales contact (referred to in this Notice as a "Finance Agreement") to finance their vehicle purchase. GAP provides additional protection beyond that provided by typical automobile insurance policies. For example, in the event of a total loss to the vehicle due to an accident or theft, GAP can help pay part of the amount owed under the Finance Agreement that is not covered by the auto insurance policy.

In the event that the Finance Agreement is paid off early, the customer may be entitled to a partial refund of the amount paid for GAP for the unused term of the Finance Agreement. This refund is referred to in this Notice as a "GAP Refund" or "Early Payoff GAP Refund."

Your Finance Agreement was sold by your Dealer and assigned to Wells Fargo. Plaintiffs allege that, after the assignment, Wells Fargo took over the contractual obligation to issue the GAP refund. Plaintiffs further contend that certain States have laws, in effect at various times, that require the assignee of the Finance Agreement (like Wells Fargo) to issue the GAP refund after an early payoff ("State Refund Statutes").

Wells Fargo denies any wrongdoing in this lawsuit. Wells Fargo contends that the obligation to issue the GAP refund belongs to the Dealer or GAP Administrator identified in the GAP Agreements, not Wells Fargo. Wells Fargo further contends that, depending on the language in the GAP Agreements, customers may be required to provide written notice of the early payoff or a written request for a refund as a prerequisite for the refund. Wells Fargo further contends that unless the GAP Agreement is subject to a State Refund Law, customers are required to request a refund in writing from the party specified in their GAP Agreement as a condition precedent to receiving a refund.

The First Amended Complaint in this lawsuit, which provides greater details about Plaintiffs' claims, can be viewed on the Settlement Website at **<<insert website>>.**

### 3. WHY IS THIS A CLASS ACTION?

A class action lawsuit allows a large number of people with a common complaint to sue collectively while being represented by members of the group called the "Class Representatives."  In this case, the Class Representatives have brought this lawsuit on behalf of themselves and others with similar claims. Together, all the individuals with similar claims (with the exception of those who request exclusion or "opt out" from the Class) are referred to as "Class Members."

### 4. WHAT ARE THE REASONS FOR THE SETTLEMENT?

The Court has not ruled in favor of either the Plaintiffs or Wells Fargo.  Instead, both sides agreed to a Settlement that they believe is a fair, reasonable and adequate compromise of their respective positions.  The parties reached this Settlement after litigating this case for over three years, conducting substantial discovery, and with the assistance on an experienced neutral mediator and former U.S. District Court judge.

By agreeing to the Settlement, the parties avoid the costs, delay, and uncertainty of further litigation, and Class Members receive the benefits described in this Notice. As in any litigation, Plaintiffs and the Class would face an uncertain outcome if they did not agree to the Settlement, and the case could continue for a long period of time. Continuation of the case could result in a judgment greater or less than the Settlement. Plaintiffs and Class Counsel believe this Settlement provides a fair and reasonable resolution of the claims asserted in this lawsuit for the benefit of the Class.

Wells Fargo denies any wrongdoing and the Settlement shall in no event be construed or deemed to be evidence or an admission or concession on the part of Wells Fargo with respect to any claim or of any fault, liability, wrongdoing, or damage.

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

## THE SETTLEMENT

**5.   WHO IS INCLUDED IN THE SETTLEMENT CLASS?**

There are two classes who are part of this Settlement: the Class and the Statutory Subclass.

The "Class" means all persons in the United States (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Class Period, and (c) who did not receive a GAP Refund.  The Class Period is different depending on the State where you entered your Finance Agreement.  You can find a list of the Class Periods on the Settlement Website at <<**insert website**>>.  The Class also includes the Statutory Subclass Members.

The "Statutory Subclass" means those persons (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements were subject to State Refund Laws; (c) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Statutory Subclass Period, and (d) who did not receive a GAP Refund from Wells Fargo, or for whom Wells Fargo did not receive written confirmation from a Dealer or GAP Administrator that the GAP Refund was paid.

For purposes of this Settlement only, the Parties have agreed to a list of the States with State Refund Laws that apply to the Class and the time periods those laws were in effect during the Class Period. You can find this list on the Settlement Website at <<**insert website**>>.

You are a Class Member if you fit within either definition.  Class Members who are not also members of the Statutory Subclass are referred to as "Non-Statutory Subclass Members."

If you received a copy of this Notice, you have been identified as a potential Class Member for the vehicle identified on the front of this Notice, but <u>not</u> a member of Statutory Subclass.

If you did not receive a copy of this Notice, but believe that you are a Class Member or Statutory Subclass Member, you can contact the Claims Administrator at the number below or visit the Settlement Website at <<**insert website**>> for further information.

## 6. WHAT BENEFITS DOES THE SETTLEMENT PROVIDE?

Under the Settlement, Wells Fargo has agreed to provide the following benefits as consideration for the resolution and release of the Class Members' claims:

- **Business Practice Change.** No later than **January 1, 2022**, Wells Fargo will implement processes to directly provide to customers, on a go-forward basis, Early Payoff GAP Refunds within a reasonable time after receipt of an Early Payoff so long as (1) the customer purchased GAP from a Dealer at the time they entered into their Finance Agreement; (2) the customer chose to finance the cost of the GAP and such cost is included in a Finance Agreement assigned to Wells Fargo; (3) Wells Fargo received the Early Payoff from the customer; (4) the customer's GAP Agreement provides for an Early Payoff GAP Refund in the event of an Early Payoff; and (5) the customer has not previously received a GAP Refund. Customers who meet these criteria will not be required to take any action other than completing an Early Payoff to receive an Early Payoff GAP Refund. This obligation will continue until **January 1, 2026**. Plaintiffs' expert's estimate of the impact of this business practice change is included in Plaintiffs' motion for preliminary approval of the settlement, which can be found at <<**insert website**>>.

- **Past GAP Refunds to Statutory Subclass Members.** Members of the Statutory Subclass have received or will receive a payment directly from Wells Fargo equal to the amount of their Early Payoff GAP Refund (without any deduction for cancellation fees) plus compensation for the loss of use of these funds based on the one-year constant U.S. maturity treasury rate, compounded annually from the date of the Early Payoff. Wells Fargo represents and warrants that it has paid $33,357,919.81 collectively to the members of the Statutory Subclass between December 20, 2018 and March 31, 2021. In the event that Wells Fargo identifies any additional members of the Statutory Subclass who have not yet received these payments, then Well Fargo represents and warrants that it will do so pursuant to the terms of the Settlement. These amounts have been or will be paid directly by Wells Fargo and are in addition to and separate and apart from the Settlement Fund described below. In addition, each Statutory Subclass Member will also receive a payment of up to $5.00 ("Additional Compensation") to be paid out from the Settlement Fund described below.

- **Past GAP Refunds to Non-Statutory Subclass Members.** Class Members whose Finance Agreements were not governed by the State Refund Laws (the "Non-Statutory Subclass Members") who submit a claim verifying that they did not previously receive a GAP refund, will be eligible to a receive a settlement payment up to the full amount of the Early Payoff GAP Refund without any deduction for cancellation fees (an "Approved Claim"). The settlement payments to the Non-

Statutory Subclass Members may be reduced on a prorated basis depending on the amounts remaining in the Settlement Fund as discussed below.

- **Settlement Fund.**  Wells Fargo will establish a Settlement Fund ("Settlement Fund") totaling $45,000,000.00 to pay: (1) the Approved Claims for GAP Refunds to the Non-Statutory Subclass Members; (2) the $5.00 Additional Compensation payments to the Statutory Subclass Members; (3) the Fee and Expense Awards to Class Counsel approved by the Court; and (4) any Service Awards to the Class Representatives approved by the Court.  If the collective total of these items exceeds $45,000,000.00, then the settlement payments to the Non-Statutory Subclass Members and the $5.00 Additional Compensation payments to the Statutory Subclass Members will be reduced on a prorated basis to account for the difference.  Each Class Member's payment from the Settlement Fund will be reduced by the same percentage.

- **Notice and Administration Costs.**  Wells Fargo will separately pay for the cost of providing Notice to the Class and the administrative expenses incurred by the Claims Administrator.  These costs will be paid directly by Wells Fargo and will not reduce the Settlement Fund.

**NOTE**: Early Payoff GAP Refunds will be calculated using the pro rata method.  No cancellation fee shall be applied. The Claims Administrator will be responsible for calculating the Early Payoff GAP Refunds based on the information provided by Wells Fargo.

### 7.  DO I NEED TO DO ANYTHING TO RECEIVE A PAYMENT?

**Yes.  If you received a copy of this Notice, then it has been determined that You are <u>not</u> a member of the Statutory Subclass for the Vehicle identified on the front of this Notice and You will need submit a Claim Form for a settlement payment.**

If you are a member of the Class but are <u>not</u> a member of the Statutory Subclass, then you <u>must</u> complete and sign the enclosed Claim Form, and submit it to the Claims Administrator by _____, **2021**.  The Claim Form may be submitted on the Settlement Website at <<**insert website**>>, or by mailing it to the Claims Administrator at the following address: _____.  You may also scan the QR Code on the Claim Form to complete and submit the Claim Form on your smartphone or tablet.  If you mail the Claim Form, it must be postmarked no later than _____, **2021** in order to be valid.

Your settlement payment will be mailed to you by the Claims Administrator so long as You are a member of the Class, timely submit a completed and executed Claim

Form and the Court grants final approval of the Settlement and the Settlement is not successfully challenged on appeal.  On the other hand, failure to sign and return the Claim Form by the above deadline will prevent you from receiving any cash compensation from the Settlement Fund and will bar any claims you may have unless you timely opt out of the Settlement.

If you are a member of the Statutory Subclass, You do not need to do anything to receive the monetary benefits owed under this Settlement. Wells Fargo has already provided you with a check for the Early Payoff GAP Refund, or Wells Fargo will mail you a check.  You will also receive a check from the Claims Administrator for the Additional Compensation owed under the Settlement if the Court grants final approval of the Settlement and the Settlement is not successfully challenged on appeal.

| 8. | WHY DID I RECEIVE MULTIPLE NOTICES? |
|---|---|

If You received more than one Notice and the front of the Notice identifies different vehicles, then it has been determined that You owned multiple vehicles that are covered by this Settlement.  If so, You may need to complete a separate Claim Form for each vehicle.  Please follow the instructions in each Notice and Claim Form for each vehicle.

| 9. | WHAT CAN I DO IF I BELIEVE MY SETTLEMENT PAYMENT WAS NOT CALCULATED PROPERLY? |
|---|---|

If you believe that your payment was improperly calculated, you can contact the Claims Administrator by phone or email and provide your relevant information.  If the Settlement Administrator or Wells Fargo determines that your payment was improperly calculated, your payment will be updated and a new check will be issued.

| 10. | HOW WILL THIS SETTLEMENT AFFECT MY RIGHTS? |
|---|---|

If this Settlement is granted final approval by the Court and you do not "opt-out" or request exclusion from the Settlement, then you will release certain claims against Wells Fargo as described in Section 19 below.

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

## 11.   HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

If you do not want to be a part of the Settlement, then you must take steps to request exclusion from the Settlement.

To request exclusion or "opt out" from the Settlement, you must mail a written Request for Exclusion to the Claims Administrator at the following address: _____. The Request for Exclusion must be post-marked on or before _____, 2021.

Your Request for Exclusion must include the following information:

      1.     Your name, address, and telephone number;

      2.     Your settlement administration claim number provided on the front of this Notice;

      3.     A statement that "I do not want to be a member of the Class in *Herrera, et al. v. Wells Fargo Bank, N.A.,* Case No., 8:18-cv-00332-JVS-MRW pending in the United States District Court for the Central District of California. I understand that it will be my responsibility to pursue any claims I may have, if I so desire, on my own and at my expense"; and

      4.     Your signature and date.

Your Request for Exclusion must be specific to yourself. Attempts to exclude multiple individuals as part of single Request for Exclusion are not allowed and shall be of no force or effect.

## 12.   IF I DO NOT REQUEST EXCLUSION, CAN I SUE DEFENDANTS FOR THE SAME CLAIMS LATER?

No. Unless you request exclusion from the Settlement, you will give up the right to sue Wells Fargo for the claims that this Settlement resolves as described in Section 19 below.

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

| **13.** | **IF I EXCLUDE MYSELF, MAY I STILL RECEIVE COMPENSATION FROM THE SETTLEMENT FUND?** |

If you exclude yourself from the Settlement, you will <u>not</u> be eligible to submit a Claim or receive any payment from the Settlement Fund.

### THE LAWYERS REPRESENTING YOU

| **14.** | **DO I HAVE A LAWYER IN THIS CASE?** |

Yes. The Court has appointed the following law firms to represent you and the other Class Members as "Class Counsel."  You can contact Class Counsel at the addresses or telephone numbers listed below. They are:

Jason M. Frank
Andrew D. Stolper
Scott H. Sims
**FRANK SIMS & STOLPER LLP**
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone: (949) 201-2400
Facsimile: (949) 201-2405

Franklin D. Azar
**FRANKLIN D. AZAR &
ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 759-5203

Charles E. Shaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

<span style="color:red">**You will not be charged for contacting these lawyers. If you want to be represented by a different lawyer, you may hire one at your own expense.**</span>

### 15.   HOW WILL THE LAWYERS BE PAID FOR THEIR SERVICES?

Class counsel will apply to the Court for an award of attorneys' fees and costs to compensate them for their legal services and expenses incurred in this matter. The application for an award of attorneys' fees and costs will be posted to the Settlement Website at <<**insert website**>>.  Pursuant to the terms of the Settlement, Class Counsel intends to request an award of $23,100,000 in legal fees and reimbursement of their expenses in an amount not to exceed $300,000.

Any fee and expense awards approved by the Court will be paid out from the Settlement Fund.

### 16.   WILL CLASS REPRESENTATIVES RECEIVE SERVICE AWARDS?

Class Counsel will file an application for Service Awards to be paid to each of the Class Representatives in recognition of the time and effort they provided in this lawsuit on behalf of the Class. The application for Service Awards will be posted to the Settlement Website at <<**insert website**>>.  Pursuant to the terms of the Settlement, Class Counsel intends to request a Service Award of $7,500 for each of the Class Representatives.

Any Service Awards approved by the Court will be paid out from the Settlement Fund.

### OBJECTING TO THE SETTLEMENT

### 17.   HOW DO I INFORM THE COURT IF I OBJECT TO THE SETTLEMENT?

If you are a member of the Class, and do not Request Exclusion or "opt out" from the Settlement, you can object to any part of the Settlement. You can give reasons why you think the Court should not approve the entire Settlement or parts of it.

To object, you must timely file a written objection with the Court and mail the same to the Claims Administrator at the following address: _____.  The objection must be filed on or before _____, **2021**, and mailed to the Claims Administrator with a post-mark date on or before _____, **2021**.

Your objection must state all of the following:

1.      Your name, address, and telephone number;

---

14

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

2.     Your settlement administration claim number provided on the front of this Notice;

3.     A statement saying that you object to the Settlement in *Hererra, et al. v. Wells Fargo Bank, N.A.,* Case No., 8:18-cv-00332-JVS-MRW and describing the nature of your objection;

4.     A statement describing whether your objection applies only to yourself, to a specific subset of the Class, or to the entire Class;

5.     The specific grounds for your objection;

6.     Any legal authority that supports your objection; and

6.     Your signature.

If a lawyer is asserting an objection on your behalf, the lawyer must also:

1.     File a notice of appearance with the Court on or before **[the Objection Deadline], 2021** ;

2.     File a sworn declaration attesting that he or she represents you; and

3.     File a sworn declaration that specifies the number of times during the prior five-year period that he or she has objected to a class action settlement on his or her own behalf or on behalf of a class member.

If You wish to appear at the Final Approval Hearing, You (or your attorney) must file a Notice of Intention to Appear with the Court indicating that You (or your attorney) would like to speak at the hearing.  The Notice of Intention to Appear must be filed with the Court on or before **[the Objection Deadline], 2021**.  If You (or your attorney) do not file a timely Notice of Intention to Appear, You (or your attorney) will be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

You (or your attorney) must file your written objection and any additional documents required above with Courtroom 10C of the United States District Court for the Central District of California, the Honorable James V. Selna presiding, located at 411 West Fourth Street, Santa Ana, California 92701-4517.

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

## 18. WHAT IS THE DIFFERENCE BETWEEN OBJECTING TO THE SETTLEMENT AND REQUESTING EXCLUSION?

Objecting is notifying the Court that you think something about the Settlement is unfair, unreasonable, or inadequate. You can only object to the Settlement if you are a Class Member.  Requesting exclusion from the Settlement is notifying the Court that you do not want to remain a Class Member.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## RELEASE OF CLAIMS

## 19. WHAT CLAIMS ARE BEING RELEASED AS PART OF THE SETTLEMENT?

Upon Final Approval of the Settlement by the Court, each Class Member who does not request exclusion, individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors") releases and fully discharges Wells Fargo Bank, N.A. and Wells Fargo & Co., and each of their former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), Affiliates, officers, directors, and employees and attorneys ("Class Releasees") from any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to an Early Payoff GAP Refund for an Early Payoff that occurred during the Class Period (the "Class Released Claims").  Notwithstanding the foregoing, the Class Releasees do not include any Dealers or GAP Administrators, including without limitation, those identified in the Class Members' GAP Waiver Agreements or the Finance Agreements.

## THE FINAL APPROVAL HEARING

**20.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO GRANT FINAL APPROVAL TO THE SETTLEMENT?**

The Court has scheduled a Final Approval Hearing for _____, 2021 at 1:30 PM in Courtroom 10C of the United States District Court, Central District of California, Southern Division, located at the Santa Ana Courthouse - 411 West Fourth Street, Santa Ana, CA 92701. The hearing date and time is subject to change. Updates to the date and time will be posted to the Settlement Website at <<**insert website**>.

At the Final Approval Hearing, the Court will consider granting final approval of the Settlement based on whether it is fair, reasonable, and adequate. The Court will also consider requests by Class Counsel for attorneys' fees and expenses related to the litigation and the Class Representative Service Awards. If there are timely and complete objections, the Court will consider those objections at the hearing as well.

At or after the hearing, a decision will be made whether to grant final approval of the Settlement. It is not known how long it will take for the Court to decide. Class Members should visit the Settlement Website at <<**insert website**>> to stay updated about the current status of the case.

**21.   DO I HAVE TO ATTEND THE HEARING?**

No. Attending the hearing is not required, but you are welcome to attend at your own expense.

If you send an objection, you do not have to come to Court to talk about it. As long as your objection is timely and complies with the requirements set forth in this Notice and the Settlement Agreement, the Court will consider it. You may also pay your own lawyer to attend.

116000825v2

1

## Getting More Information

2

| 22. | **HOW DO I GET MORE INFORMATION?** |

3

4

5

This Notice is a summary of the proposed Settlement. More details regarding the terms of the Settlement can be found in the Settlement Agreement posted on the Settlement Website at <<**insert website**>>.

6

7

You may also contact the Settlement Administrator by calling the toll-free number, 1-800-XXX-XXXX, or by writing to Wells Fargo GAP Settlement, P.O. Box _____ [city], [state], [zip code].

8

9

You may also contact Class Counsel using the contact information provided above in Section 15. You will not be charged for contacting Class Counsel.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

116000825v2

# Exhibit D

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **CENTRAL DISTRICT OF CALIFORNIA**

9

10 ARMANDO HERRERA, *et al.*

Plaintiffs,

11 v.

12 WELLS FARGO BANK, N.A., *et al.*

13 Defendants.

14

CASE NO. 8:18-cv-00332-AG-MRW

**SETTLEMENT AGREEMENT EXHIBIT D – NOTICE TO STATUTORY REFUND SUBCLASS MEMBERS __**

*Honorable James V. Selna*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

*Herrera et al. v. Wells Fargo Bank, N.A. et al.*

Case No. 8:18-cv-00332-JVS-MRW

**<u>NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION</u>**

This Notice of Proposed Settlement of Class Action ("Notice") was authorized by the United States District Court for the Central District of California.[1] It is not a solicitation from a lawyer.

**<span style="color:red">IF YOU ARE RECEIVING THIS NOTICE BY MAIL OR EMAIL, YOU HAVE BEEN IDENTIFIED AS A STATUTORY REFUND SUBCLASS MEMBER IN A CLASS ACTION SETTLEMENT</span>**

**<span style="color:red">YOUR SETTLEMENT ADMINISTRATION CLAIM NUMBER IS XXXXX</span>**

- A proposed Settlement has been reached in a class action lawsuit that may affect your rights.

- The Settlement resolves a class action lawsuit against Wells Fargo.  The lawsuit alleges that Wells Fargo failed to provide customers with a partial refund of the fees paid for Guaranteed Asset Protection or Guaranteed Auto Protection ("GAP") after customers paid off their Finance Agreements early.  Wells Fargo denies any wrongdoing because, among other reasons, it claims that to the extent a refund is due and has not been made, Wells Fargo is not the party responsible for making the refund.

- You are a Class Member if (1) you entered into a Finance Agreement with a GAP Agreement that was assigned to Wells Fargo; (2) your Finance Agreement terminated as the result of an Early Payoff that occurred during the Class Period; and (3) you did not receive a GAP refund.[2]

- **Wells Fargo's records indicate you are a member of the Statutory Subclass for the following vehicle _____ and you may be entitled to up to $_____ under the terms of the Settlement.**

- The Court has not decided whether to finally approve the Settlement.

---

[1]  Capitalized terms in this Notice have the same meaning as they are defined in the Settlement Agreement.  The Settlement Agreement is posted on the Settlement Website, <<**insert website**>>.

[2]  The Class also includes the Statutory Subclass Members defined in Section 5 below.

**YOUR LEGAL RIGHTS WILL BE AFFECTED WHETHER YOU ACT OR DO NOT ACT. PLEASE READ THIS ENTIRE NOTICE CAREFULLY.**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You have been identified as a member of the Statutory Subclass for the vehicle identified on the front of this Notice. You do not need to do anything to receive the benefits of this Settlement for that vehicle. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY _____, 2021** | You may file a written request to exclude yourself or "opt out" from the Settlement by _____, 2021. If you do so, you will not receive any money from the Settlement Fund and you will not release your claims in this lawsuit. (See Section 11)<br><br>If the Settlement is granted final approval by the Court and you did not timely "opt out" of the Settlement, then you will release the claims described in Section 19 below. |
| **OBJECT TO THE SETTLEMENT BY _____, 2021** | If you believe the Settlement is unfair or inadequate, you may file a written objection to the Settlement by _____, 2021, so long as you do not file a request to exclude yourself from the Settlement. (See Section 17) |

**THESE OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE FURTHER DETAILED IN THIS NOTICE.**

**CONTINUED ON NEXT PAGE**

115997601v2

---

### Notice Contents

---

**Basic Information**

1.      Why am I receiving this notice?

2.      What is this lawsuit about?

3.      Why is this a class action?

4.      What are the reasons for the Settlement?

**The Settlement**

5.      Who is included in the Settlement Class?

6.      What benefits does the Settlement provide?

7.      Do I need to do anything to receive a payment?

8.      Why did I receive multiple notices?

9.      What can I do if I believe my payment was not calculated properly?

10.     How will this Settlement affect my rights?

**Excluding yourself from the Settlement**

11.     How do I exclude myself from the Settlement?

12.     If I do not request exclusion, can I sue Wells Fargo for the same claims later?

13.     If I exclude myself, may I still receive compensation from the Settlement Fund?

**The Lawyers Representing You**

14.     Do I have a lawyer in this case?

15.     How will the lawyers be paid for their services?

16.     Will Class Representatives receive service awards?

**Objecting to the Settlement**

17.     How do I inform the Court if I object to the Settlement?

18.     What is the difference between objecting to the Settlement and requesting exclusion?

---

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<website>>**

115997601v2

**Release of Claims**

19.     What claims are being released as part of the Settlement?

**Final Approval Hearing**

20.     When and where will the Court decide whether to grant final approval of the Settlement?

21.     Do I have to attend the hearing?

**Getting More Information**

22.     How do I get more information?

115997601v2

## BASIC INFORMATION

**1.  WHY AM I RECEIVING THIS NOTICE?**

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about your options before the Court decides whether to grant final approval of the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights. Judge James V. Selna of the United States District Court for the Central District of California is overseeing this case and has exclusive jurisdiction over the Settlement. This litigation is known as *Hererra, et al. v. Wells Fargo Bank, N.A.,* Case No., 8:18-cv-00332-JVS-MRW.

**2.  WHAT IS THIS LAWSUIT ABOUT?**

GAP is sold by auto dealers to customers who enter into a retail installment sales contact (referred to in this Notice as a "Finance Agreement") to finance their vehicle purchase.  GAP provides additional protection beyond that provided by typical automobile insurance policies.  For example, in the event of a total loss to the vehicle due to an accident or theft, GAP can help pay part of the amount owed under the Finance Agreement that is not covered by the auto insurance policy.

In the event that the Finance Agreement is paid off early, the customer may be entitled to a partial refund of the amount paid for GAP for the unused term of the Finance Agreement.  This refund is referred to in this Notice as a "GAP Refund" or "Early Payoff GAP Refund."

Your Finance Agreement was sold by your Dealer and assigned to Wells Fargo. Plaintiffs allege that, after the assignment, Wells Fargo took over the contractual obligation to issue the GAP refund.  Plaintiffs further contend that certain States have laws, in effect at various times, that require the assignee of the Finance Agreement (like Wells Fargo) to issue the GAP refund after an early payoff ("State Refund Statutes").

Wells Fargo denies any wrongdoing in this lawsuit.  Wells Fargo contends that the obligation to issue the GAP refund belongs to the Dealer or GAP Administrator identified in the GAP Agreements, not Wells Fargo.  Wells Fargo further contends that, depending on the language in the GAP Agreements, customers may be required to provide written notice of the early payoff or a written request for a refund as a prerequisite for the refund.  Wells Fargo further contends that unless the GAP Agreement is subject to a State Refund Law, customers are required to request a refund in writing from the party specified in their GAP Agreement as a condition precedent to receiving a refund.

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

115997601v2

The First Amended Complaint in this lawsuit, which provides greater details about Plaintiffs' claims, can be viewed on the Settlement Website at **<<insert website>>.**

### 3.   WHY IS THIS A CLASS ACTION?

A class action lawsuit allows a large number of people with a common complaint to sue collectively while being represented by members of the group called the "Class Representatives."  In this case, the Class Representatives have brought this lawsuit on behalf of themselves and others with similar claims. Together, all the individuals with similar claims (with the exception of those who request exclusion or "opt out" from the Class) are referred to as "Class Members."

### 4.   WHAT ARE THE REASONS FOR THE SETTLEMENT?

The Court has not ruled in favor of either the Plaintiffs or Wells Fargo.  Instead, both sides agreed to a Settlement that they believe is a fair, reasonable and adequate compromise of their respective positions.  The parties reached this Settlement after litigating this case for over three years, conducting substantial discovery, and with the assistance on an experienced neutral mediator and former U.S. District Court judge.

By agreeing to the Settlement, the parties avoid the costs, delay, and uncertainty of further litigation, and Class Members receive the benefits described in this Notice. As in any litigation, Plaintiffs and the Class would face an uncertain outcome if they did not agree to the Settlement, and the case could continue for a long period of time. Continuation of the case could result in a judgment greater or less than the Settlement. Plaintiffs and Class Counsel believe this Settlement provides a fair and reasonable resolution of the claims asserted in this lawsuit for the benefit of the Class.

Wells Fargo denies any wrongdoing and the Settlement shall in no event be construed or deemed to be evidence or an admission or concession on the part of Wells Fargo with respect to any claim or of any fault, liability, wrongdoing, or damage.

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

115997601v2

# THE SETTLEMENT

## 5.  WHO IS INCLUDED IN THE SETTLEMENT CLASS?

There are two classes who are part of this Settlement: the Class and the Statutory Subclass.

The "Class" means all persons in the United States (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Class Period, and (c) who did not receive a GAP Refund.  The Class Period is different depending on the State where you entered your Finance Agreement.  You can find a list of the Class Periods on the Settlement Website at <<**insert website**>>. The Class also includes the Statutory Subclass Members.

The "Statutory Subclass" means those persons (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements were subject to State Refund Laws; (c) whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Statutory Subclass Period, and (d) who did not receive a GAP Refund from Wells Fargo, or for whom Wells Fargo did not receive written confirmation from a Dealer or GAP Administrator that the GAP Refund was paid.

For purposes of this Settlement only, the Parties have agreed to a list of the States with State Refund Laws that apply to the Class and the time periods those laws were in effect during the Class Period. You can find this list on the Settlement Website at <<**insert website**>>.

You are a Class Member if you fit within either definition.  Class Members who are not also members of the Statutory Subclass are referred to as "Non-Statutory Subclass Members."

If you received a copy of this Notice, you have been identified as a member of the Statutory Subclass.

If you did not receive a copy of this Notice, but believe that you are a Class Member or Statutory Subclass Member, you can contact the Claims Administrator at the number below or visit the Settlement Website at <<**insert website**>> for further information.

## 6. WHAT BENEFITS DOES THE SETTLEMENT PROVIDE?

Under the Settlement, Wells Fargo has agreed to provide the following benefits as consideration for the resolution and release of the Class Members' claims:

- **Business Practice Change.** No later than **January 1, 2022**, Wells Fargo will implement processes to directly provide to customers, on a go-forward basis, Early Payoff GAP Refunds within a reasonable time after receipt of an Early Payoff so long as (1) the customer purchased GAP from a Dealer at the time they entered into their Finance Agreement; (2) the customer chose to finance the cost of GAP and such cost is included in a Finance Agreement assigned to Wells Fargo; (3) Wells Fargo received the Early Payoff from the customer; (4) the customer's GAP Agreement provides for an Early Payoff GAP Refund in the event of an Early Payoff; and (5) the customer has not previously received a GAP Refund. Customers who meet these criteria will not be required to take any action other than completing an Early Payoff to receive an Early Payoff GAP Refund. This obligation will continue until **January 1, 2026**. Plaintiffs' expert's estimate of the impact of this business practice change is included in Plaintiffs' motion for preliminary approval of the settlement, which can be found at <<**insert website**>>.

- **Past GAP Refunds to Statutory Subclass Members.** Members of the Statutory Subclass have received or will receive a payment directly from Wells Fargo equal to the amount of their Early Payoff GAP Refund (without any deduction for cancellation fees) plus compensation for the loss of use of these funds based on the one-year constant U.S. maturity treasury rate, compounded annually from the date of the Early Payoff. Wells Fargo represents and warrants that it has paid $33,357,919.81 collectively to the members of the Statutory Subclass between December 20, 2018 and March 31, 2021. In the event that Wells Fargo identifies any additional members of the Statutory Subclass who have not yet received these payments, then Well Fargo represents and warrants that it will do so pursuant to the terms of the Settlement. These amounts have been or will be paid directly by Wells Fargo and are in addition to and separate and apart from the Settlement Fund described below. In addition, each Statutory Subclass Member will also receive a payment of up to $5.00 ("Additional Compensation") to be paid out from the Settlement Fund described below.

- **Past GAP Refunds to Non-Statutory Subclass Members.** Class Members whose Finance Agreements were not governed by the State Refund Laws (the "Non-Statutory Subclass Members") who submit a claim verifying that they did not previously receive a GAP refund, will be eligible to a receive a settlement payment up to the full amount of the Early Payoff GAP Refund without any deduction for cancellation fees (an "Approved Claim"). The settlement payments to the Non-

Statutory Subclass Members may be reduced on a prorated basis depending on the amounts remaining in the Settlement Fund as discussed below.

- **Settlement Fund.**  Wells Fargo will establish a settlement fund ("Settlement Fund") totaling $45,000,000.00 to pay: (1) the Approved Claims for GAP Refunds to the Non-Statutory Subclass Members; (2) the $5.00 Additional Compensation payments to the Statutory Subclass Members; (3) the Fee and Expense Awards to Class Counsel approved by the Court; and (4) any Service Awards to the Class Representatives approved by the Court.  If the collective total of these items exceeds $45,000,000.00, then the settlement payments to the Non-Statutory Subclass Members and the $5.00 Additional Compensation payments to the Statutory Subclass Members will be reduced on a prorated basis to account for the difference.  Each Class Member's share of the Settlement Fund will be reduced by the same percentage.

- **Notice and Administration Costs.**  Wells Fargo will separately pay for the cost of providing Notice to the Class and the administrative expenses incurred by the Claims Administrator.  These costs will be paid directly by Wells Fargo and will be in addition to and separate and apart from the Settlement Fund.

**NOTE**: Early Payoff GAP Refunds will be calculated using the pro rata method.  No cancellation fee shall be applied. The Claims Administrator will be responsible for calculating the Early Payoff GAP Refunds based on the information provided by Wells Fargo.

## 7.  DO I NEED TO DO ANYTHING TO RECEIVE A PAYMENT?

**No.  If you received a copy of this Notice, then it has been determined that You are a member of the Statutory Subclass for the Vehicle identified on the front of this Notice.**

If you are a member of the Statutory Subclass, You <u>do</u> <u>not</u> need to do anything to receive the monetary benefits owed under this Settlement. Wells Fargo has already provided you with a check for the Early Payoff GAP Refund, or Wells Fargo will mail you a check.  You will also receive a check from the Claims Administrator for the Additional Compensation owed under the Settlement if the Court grants final approval of the Settlement and the Settlement is not successfully challenged on appeal.

## 8.  WHY DID I RECEIVE MULTIPLE NOTICES?

If You received more than one Notice and the front of the Notice identifies different vehicles, then it has been determined that You owned multiple vehicles that are covered by this Settlement.  If so, You may need to complete a separate Claim Form for that other vehicle.  Please follow the instructions in the Notice and Claim Form for that other vehicle.

**9.   WHAT CAN I DO IF I BELIEVE MY SETTLEMENT PAYMENT WAS NOT CALCULATED PROPERLY?**

If you believe that your payment was improperly calculated, you can contact the Claims Administrator by phone or email and provide your relevant information.  If the Settlement Administrator or Wells Fargo determines that your payment was improperly calculated, your payment will be updated and a new check will be issued.

**10.   HOW WILL THIS SETTLEMENT AFFECT MY RIGHTS?**

If this Settlement is granted final approval by the Court and you do not "opt-out" or request exclusion from the Settlement, then you will release certain claims against Wells Fargo as described in Section 19 below.

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

**11.   HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?**

If you do not want to be a part of the Settlement, then you must take steps to request exclusion from the Settlement.

To request exclusion or "opt out" from the Settlement, you must mail a written Request for Exclusion to the Claims Administrator at the following address: _____.  The Request for Exclusion must be post-marked on or before _____, **2021**.

Your Request for Exclusion must include the following information:

   1.   Your name, address, and telephone number;

   2.   Your settlement administration claim number provided on the front of this Notice;

3. A statement that "I do not want to be a member of the Class in *Herrera, et al. v. Wells Fargo Bank, N.A.,* Case No., 8:18-cv-00332-JVS-MRW pending in the United States District Court for the Central District of California. I understand that it will be my responsibility to pursue any claims I may have, if I so desire, on my own and at my expense"; and

4. Your signature and date.

Your Request for Exclusion must be specific to yourself. Attempts to exclude multiple individuals as part of single Request for Exclusion are not allowed and shall be of no force or effect.

**12. IF I DO NOT REQUEST EXCLUSION, CAN I SUE DEFENDANTS FOR THE SAME CLAIMS LATER?**

No. Unless you request exclusion from the Settlement, you will give up the right to sue Wells Fargo for the claims that this Settlement resolves as described in Section 19 below.

**13. IF I EXCLUDE MYSELF, MAY I STILL RECEIVE COMPENSATION FROM THE SETTLEMENT FUND?**

If you exclude yourself from the Settlement, you will <u>not</u> be eligible to submit a Claim or receive any payment from the Settlement Fund.

### THE LAWYERS REPRESENTING YOU

**14. DO I HAVE A LAWYER IN THIS CASE?**

Yes. The Court has appointed the following law firms to represent you and the other Class Members as "Class Counsel."  You can contact Class Counsel at the addresses or telephone numbers listed below. They are:

Jason M. Frank
Andrew D. Stolper
Scott H. Sims
**FRANK SIMS & STOLPER LLP**
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612

---

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

Telephone: (949) 201-2400
Facsimile: (949) 201-2405

Franklin D. Azar
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 759-5203

Charles E. Shaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

**You will not be charged for contacting these lawyers. If you want to be represented by a different lawyer, you may hire one at your own expense.**

## 15.   HOW WILL THE LAWYERS BE PAID FOR THEIR SERVICES?

Class counsel will apply to the Court for an award of attorneys' fees and costs to compensate them for their legal services and expenses incurred in this matter. The application for an award of attorneys' fees and costs will be posted to the Settlement Website at <<**insert website**>>.  Pursuant to the terms of the Settlement, Class Counsel intends to request an award of $23,100,000.00 in legal fees and reimbursement of approximately $_____ in expenses.

Any fee and expense awards approved by the Court will be paid out from the Settlement Fund.

## 16.   WILL CLASS REPRESENTATIVES RECEIVE SERVICE AWARDS?

Class Counsel will file an application for Service Awards to be paid to each of the Class Representatives in recognition of the time and effort they provided in this lawsuit on behalf of the Class. The application for Service Awards will be posted to

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**
115997601v2

the Settlement Website at <<**insert website**>>.   Pursuant to the terms of the Settlement, Class Counsel intends to request a Service Award of $7,500 for each of the Class Representatives.

Any Service Awards approved by the Court will be paid out from the Settlement Fund.

**OBJECTING TO THE SETTLEMENT**

**17.   HOW DO I INFORM THE COURT IF I OBJECT TO THE SETTLEMENT?**

If you are a member of the Class, and do not Request Exclusion or "opt out" from the Settlement, you can object to any part of the Settlement. You can give reasons why you think the Court should not approve the entire Settlement or parts of it.

To object, you must timely file a written objection with the Court and mail the same to the Claims Administrator at the following address: _____.   The objection must be filed on or before _____, **2021**, and mailed to the Claims Administrator with a post-mark date on or before _____, **2021**.

Your objection must state all of the following:

1.     Your name, address, and telephone number;

2.     Your settlement administration claim number provided on the front of this Notice;

3.     A statement saying that you object to the Settlement in *Hererra, et al. v. Wells Fargo Bank, N.A.,* Case No., 8:18-cv-00332-JVS-MRW and describing the nature of your objection;

4.     A statement describing whether your objection applies only to yourself, to a specific subset of the Class, or to the entire Class;

5.     The specific grounds for your objection;

6.     Any legal authority that supports your objection; and

6.     Your signature.

If a lawyer is asserting an objection on your behalf, the lawyer must also:

1.     File a notice of appearance with the Court on or before **[the Objection Deadline], 2021** ;

2.     File a sworn declaration attesting that he or she represents you; and

---

14

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

115997601v2

3.   File a sworn declaration that specifies the number of times during the prior five-year period that he or she has objected to a class action settlement on his or her own behalf or on behalf of a class member.

If You wish to appear at the Final Approval Hearing, You (or your attorney) must file a Notice of Intention to Appear with the Court indicating that You (or your attorney) would like to speak at the hearing. The Notice of Intention to Appear must be filed with the Court on or before **[the Objection Deadline], 2021**. If You (or your attorney) do not file a timely Notice of Intention to Appear, You (or your attorney) will be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

You (or your attorney) must file your written objection and any additional documents required above with Courtroom 10C of the United States District Court for the Central District of California, the Honorable James V. Selna presiding, located at 411 West Fourth Street, Santa Ana, California 92701-4517.

| 18. | WHAT IS THE DIFFERENCE BETWEEN OBJECTING TO THE SETTLEMENT AND REQUESTING EXCLUSION? |

Objecting is notifying the Court that you think something about the Settlement is unfair, unreasonable, or inadequate. You can only object to the Settlement if you are a Class Member. Requesting exclusion from the Settlement is notifying the Court that you do not want to remain a Class Member. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

### RELEASE OF CLAIMS

| 19. | WHAT CLAIMS ARE BEING RELEASED AS PART OF THE SETTLEMENT? |

Upon Final Approval of the Settlement by the Court, each Class Member who does not request exclusion from the Settlement, individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors") releases and fully discharges Wells Fargo Bank, N.A. and Wells Fargo & Co., and each of their former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), Affiliates, officers, directors, and employees and attorneys ("Class Releasees") from any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those

which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to an Early Payoff GAP Refund for an Early Payoff that occurred during the Class Period (the "Class Released Claims").  Notwithstanding the foregoing, the Class Releasees do not include any Dealers or GAP Administrators, including without limitation, those identified in the Class Members' GAP Waiver Agreements or the Finance Agreements.

## THE FINAL APPROVAL HEARING

### 20.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO GRANT FINAL APPROVAL TO THE SETTLEMENT?

The Court has scheduled a Final Approval Hearing for _____, 2021 at 1:30 PM in Courtroom 10C of the United States District Court, Central District of California, Southern Division, located at the Santa Ana Courthouse - 411 West Fourth Street, Santa Ana, CA 92701. The hearing date and time is subject to change. Updates to the date and time will be posted to the Settlement Website at <<**insert website**>.

At the Final Approval Hearing, the Court will consider granting final approval of the Settlement based on whether it is fair, reasonable, and adequate. The Court will also consider requests by Class Counsel for attorneys' fees and expenses related to the litigation and the Class Representative Service Awards. If there are timely and complete objections, the Court will consider those objections at the hearing as well.

At or after the hearing, a decision will be made whether to grant final approval of the Settlement. It is not known how long it will take for the Court to decide. Class Members should visit the Settlement Website at <<**insert website**>> to stay updated about the current status of the case.

### 21.   DO I HAVE TO ATTEND THE HEARING?

No. Attending the hearing is not required, but you are welcome to attend at your own expense.

115997601v2

If you send an objection, you do not have to come to Court to talk about it. As long as your objection is timely and complies with the requirements set forth in this Notice and the Settlement Agreement, the Court will consider it. You may also pay your own lawyer to attend.

## Getting More Information

| 22. | HOW DO I GET MORE INFORMATION? |
|-----|-------------------------------|

This Notice is a summary of the proposed Settlement. More details regarding the terms of the Settlement can be found in the Settlement Agreement posted on the Settlement Website at <<**insert website**>>.

You may also contact the Settlement Administrator by calling the toll-free number, 1-800-XXX-XXXX, or by writing to Wells Fargo GAP Settlement, P.O. Box _____ [city], [state], [zip code].

You may also contact Class Counsel using the contact information provided above in Section 15. You will not be charged for contacting Class Counsel.

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

115997601v2

# Exhibit E

1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**
10

| ARMANDO HERRERA, *et al.* | CASE NO. 8:18-cv-00332-AG-MRW |
|---|---|
| Plaintiffs, | **SETTLEMENT AGREEMENT EXHIBIT E** |
| v. | |
| WELLS FARGO BANK, N.A., *et al.* | *Honorable James V. Selna* |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

115996885v2

## STATUTORY SUBCLASS PERIOD

The chart below identifies the applicable time period for determining the Statutory Subclass Period.  "Statutory Subclass Period" means the State-specific beginning date specified in this Exhibit E to the Agreement through the date of the Preliminary Approval of the Settlement.

| **State of Origination** | **Finance Agreement Terminated** |
|---|---|
| Alabama | On or after February 27, 2012 |
| Colorado | On or after February 27, 2015 |
| Iowa | On or after February 27, 2008 |
| Indiana | On or after February 27, 2008 |
| Maryland | On or after February 27, 2015 |
| Massachusetts | On or after February 27, 2012 |
| Nebraska | On or after February 27, 2013 |
| New Jersey | On or after October 17, 2019 |
| Nevada | On or after January 1, 2016 |
| Oregon | On or after January 1, 2016 |
| Texas | On or after July 1, 2017 |
| Vermont | On or after February 27, 2012 |
| Wisconsin | On or after February 27, 2012 |

115996885v2