JASON M. FRANK (190957)
ANDREW D. STOLPER (205462)
SCOTT H. SIMS (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone:  (949) 201-2400
Facsimile:   (949) 201-2405

FRANKLIN D. AZAR (*pro hoc vice*)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:  (303) 757-3300
Facsimile:   (303) 759-5203

CHARLES E. SCHAFFER (*pro hoc vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (215) 592-1500
Facsimile:   (215) 592-4663

*Attorneys for Plaintiffs, the Proposed Class and Subclass*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARMANDO HERRERA, EDUARDO SALCEDO, DENA LUCERO, FREDERICK BROWN, VANITY ARRINGTON, KASHIF Z. AWAN, GRETTA CARTER, JAMES ATKINS, ILKA ROBINSON-EATON, JANET CORPES, TERRI JONES, HEIDI HUMPHREYS, RIA MARTEINS, BRIAN T. SWEENEY, NAKECIA M.  DEAN, and VON GRIFFIN each individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

WELLS FARGO BANK, N.A. D/B/A WELLS FARGO DEALER SERVICES, INC., and WELLS FARGO & COMPANY,

Defendants.

Case No.:  8:18-cv-00332-JVS-MRW

**DECLARATION OF JASON M. FRANK IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF NATIONWIDE CLASS ACTION SETTLEMENT**

**Date:          June 14, 2021**
**Time:          1:30 p.m.**
**Courtroom:   10C**

## DECLARATION OF JASON M. FRANK

I, Jason M. Frank, declare as follows:

1.     I am an attorney at law duly licensed to practice before this Court, all the courts of the State of California, and other courts. I am a partner at Frank Sims & Stolper LLP and represent the above-referenced Plaintiffs in this action against Defendants Wells Fargo Bank, N.A. and Wells Fargo & Company (collectively "Wells Fargo"). I submit this declaration in support of Plaintiffs' <u>Unopposed</u> Motion For Preliminary Approval ("Motion"). I have personal knowledge of the facts set forth below, unless stated on information and belief, and if called as a witness, I would testify competently thereto.

2.     Unless otherwise defined, capitalized terms in this Declaration shall have the same meaning as those used in the Settlement Agreement attached to the Motion as **Exhibit 1.**

## QUALIFICATIONS AS CLASS COUNSEL

3.     In May 2016, I, along with my partners Scott Sims and Andrew Stolper, formed the law firm, Frank Sims & Stolper LLP ("FSS"). FSS is a litigation firm that specializes in handling complex commercial litigation, consumer and employment class actions and white-collar criminal defense matters.

4.     I was previously an equity partner at Paul Hasting Janofsky & Walker, LLP ("Paul Hastings") based in Los Angeles, California. At Paul Hastings, I was one of the leaders of the firm's global class action practice group. I received my J.D. degree from the University of Michigan in 1997 and my B.A. from the University of Michigan in 1994. I have been a member of the editorial board for Lexis/Nexis legal publications since 1999. I have also served as a member of the Board of Governors for the Association of Business Trial Lawyers ("ABTL"), Los Angeles Chapter.

5.     My partner, Andrew D. Stolper, was formerly an Assistant United States Attorney ("AUSA") for the Central District of California and an associate at Irell & Manella LLP. He was formerly in charge of white-collar prosecutions in Orange County and a member of the Enron Taskforce. For his service, Mr. Stolper was awarded the

Attorney General Award for Exceptional Service, the highest honor bestowed by the Department of Justice to its prosecutors. He graduated Order of the Coif from the University of Southern California Law School in 1999 and received his B.A. degree from The George Washington University in 1996.

6. My other partner, Scott H. Sims, was formerly a non-equity partner at a litigation firm in Newport Beach, California and an associate at Paul Hastings. Mr. Sims obtained his J.D. degree from Harvard Law School in 2004, and his B.A., summa cum laude, from Southern Methodist University in 2001. Mr. Sims has been repeatedly named a Southern California Rising Star by Super Lawyers Magazine.

7. In my practice, I specialize in representing both plaintiffs and defendants in complex litigation and consumer class actions. In my class action defense practice, I represent fortune 500 companies, such as AT&T, and major private corporations, such as L.A. Fitness. In my plaintiff practice, I have obtained verdicts and settlements totaling over $500,000,000.00 in the last ten years.

8. A representative sample of our firm's recent class action matters include the following:

a. **The Mercedes-Benz SUV Class Action**. Our firm served as lead counsel representing a nationwide class of consumers against Mercedes-Benz for failing to disclose a design defect in its seat heaters (in certain SUV models) that could cause the seat heaters to overheat, smoke and burn a hole through the seat while the driver was operating the vehicle. This Court approved a class action settlement in that matter with a total value of over $85 million.

b. **Wall v. Hewlett-Packard.** Our firm served as the lead lawyers representing a class of California employees against Hewlett-Packard ("HP") for failing to pay sales commissions on a timely basis in accordance with California law, including alleged violations of California Labor Code §§ 201, 202 and 203. We litigated the case with Franklin D. Azar & Associates, APC our co-counsel in the present matter. The Court granted class certification over the opposition of HP. After nearly a decade of

3

litigation, the case settled a few weeks before trial.  The settlement included a $25 million settlement fund, $75 million in technological investments to ensure the timely processing of sales commissions and a multi-million-dollar PAGA penalty to the State of California.

        c. **Ybarra v. Supplemental Income Trust Fund.**  Our firm served as lead counsel in a nationwide ERISA class action involving one of the largest multi-employer 401(k) plans in the United States.  We litigated the case with Franklin D. Azar & Associates, APC, our co-counsel in the present matter.  This was the first "excessive fee" case brought against a multi-employer 401(k) plan.   This Court approved a nationwide class action settlement in that matter for the full policy limits of $8.75 million, along with corrective measures to prevent excessive fees in the future.

        d. **Birbrower v. Quorn Foods.**  Our firm served as lead counsel representing a nationwide class of consumers against Quorn Foods, Inc., a manufacturer of vegetarian and vegan food products.   The case involved claims that Quorn misleadingly advertised the main ingredient in its products (mycoprotein) as being "like a mushroom, truffle or morel" when the ingredient was actually fermented mold.  The case was filed after a child with severe mold allergies died after consuming the product.  The case settled with Quorn agreeing to provide 4 years-worth of full refunds to consumers and to prominently disclose on its packaging that Quorn products contain mold.

        e. **Rubin-Knudsen v. Arthur J. Gallagher & Co.**  Our firm served as lead counsel in a California class action against Gallagher for misclassifying its Client Service Managers as exempt from federal and state overtime laws.  The case settled for $8 million, along with a PAGA penalty to the State of California.

        f. **The Anthony Pellicano Wiretapping Litigation.**  Our firm served as lead counsel representing AT&T in a putative class action and 18 individual lawsuits in state and federal court concerning the wiretapping scheme perpetrated by convicted private investigator Anthony Pellicano.  On behalf of AT&T, we defeated 12 of the

individual lawsuits via dispositive motions and secured favorable settlements in the proposed class action and remaining individual lawsuits.

9.     A representative sample of my cases prior to forming FSS include the following:

a.     **The Eden Memorial Park Cemetery Class Action**.  I was one of the lead lawyers representing over 25,000 families in a certified class action against Service Corporation International ("SCI") – the largest owner and operator of cemeteries in the United States.  Mr. Sims also represented the class in this matter.  The case involved a Jewish cemetery in Los Angeles where employees were ordered to break burial vaults in neighboring graves in order to make new graves fit.  The certified claims were based on the theory that SCI had a duty to disclose this practice to families prior to purchase, and its failure to do so constituted fraud and a violation of the Consumer Legal Remedies Act (the "CLRA") and California Business & Professions Code section 17200 et. seq. (the "UCL").  The case was featured on 60 Minutes and CNN.  The case settled in the fourth week of a class action jury trial for $80.5 million.

b.     **The LA Fitness Class Actions.**  I served as lead counsel representing LA Fitness in a number of class actions across the country, including a nationwide class action in Pennsylvania.  The cases involved various challenges to LA Fitness' membership terms and billing and cancellation practices, including claims for fraud and violation of consumer protection statutes.  Based on a favorable ruling we obtained on behalf of LA Fitness, the class action was named one of the 10 most significant cases of 2012. (www.classactioncounermeasures.com_the-ten-most-significant-cases-of-2012.)

c.     **The GE Healthcare EBT Scanner Litigation**.  I served as lead counsel representing GE Healthcare in a number of consumer actions across the country relating to claims that GE Healthcare fraudulently failed to disclose its plans to stop supporting electron beam medical scanners.  I obtained judgments in GE Healthcare's favor in all of the cases, including a defense verdict after a three-month jury trial in Santa Barbara, California.

10.     The partners at FSS have extensive experience in handling class actions and complex litigation.  FSS, along with our co-counsel Franklin D. Azar & Associates, APC ("FDA") and Levin Sedran & Berman ("LSB"), have been and are committed to vigorously prosecuting the claims in this action on behalf of the proposed Class and have the financial resources and personnel to do so.

## THE LAWSUIT

11.     This lawsuit was filed on February 27, 2018.  (Dkt. 1.)  The case concerns Wells Fargo's practice of not refunding unearned GAP fees after a customer pays off their Finance Agreement before the original maturity date (an "Early Payoff").  Wells Fargo contends it is not responsible for issuing these refunds, and customers are required to seek the refunds from the original auto dealerships that sold them their vehicles (the "Dealers") or the third-party administrators identified in their GAP Agreements (the "GAP Administrators").  Plaintiffs contend that Wells Fargo has a contractual obligation to issue the refunds as the assignee of the GAP Agreements.  Plaintiffs also contend that at least thirteen (13) States have statutes requiring Wells Fargo to automatically issue the refunds after an Early Payoff (the "State Refund Laws").

12.     This case has been hotly contested by the Parties over the last three-plus years of litigation.  We engaged in substantial discovery including, but not limited to:

a.     Reviewing and analyzing over a million of pages of documents and electronic records produced by Wells Fargo throughout the litigation, including document productions on the following dates: December 3, 2018, March 28, 2019, April 16, 2018, May 7, 2019, June 10, 2019, June 27, 2019, August 6, 2019, September 10, 2019, October 21, 2019, October 25, 2019, November 4, 2019, December 18, 2019, January 24, 2020, February 17, 2020, June 23, 2020, June 26, 2020, July 15, 2020, July 17, 2020, July 23, 2020, August 25, 2020, September 29, 2020, December 1, 2020, and December 10, 2020;

b.     Reviewing and analyzing data for over 1.8 million Wells Fargo customers with GAP Agreements who paid off their finance agreements early during the time period August 31, 2012 through September 15, 2018;

6

c.     Subpoenaing and reviewing thousands of pages of documents from third-party Dealers and GAP Administrators;

d.     Subpoenaing and reviewing hundreds of pages of documents produced by Wells Fargo to government agencies, including defeating a motion for a protective order filed in Pennsylvania by Wells Fargo concerning those documents;

e.     Taking eight (8) depositions of various witnesses across the country, including Wells Fargo management, GAP Administrators and Dealers;

f.     Defending a Class Representative deposition (James Atkins);

g.     Contacting and interviewing hundreds of Wells Fargo customers as part of a Court sanctioned sampling project;

h.     Responding to 143 special interrogatories (not including subparts) and 306 requests for admissions;

i.     Serving and compelling responses from Wells Fargo to 227 special interrogatories and 862 requests for admissions;

j.     Working with Congressional Representatives and Attorney Generals throughout the United States investigating Wells Fargo about its practices concerning GAP; and

k.     Reviewing and analyzing thousands of GAP form contracts to demonstrate uniformity amongst the agreements and the ability to manage differences in a class action setting.

13.     As the docket reflects, the Parties also engaged in substantial motion practice before Magistrate Judge Michael R. Wilner concerning discovery issues and contacts with putative class members.  (See, e.g. Dkt. 57-63, 86-87, 109-110, 115-116, 128-130, 132-134, 137-138, 142, 147-149, 151-152, 156-157, 159, 171, 177-178.)

14.     The Parties also engaged in important motion practice before this Court, including Wells Fargo's motion to dismiss, Wells Fargo's motion to strike the nationwide class allegations, Wells Fargo's motion to compel arbitration and Plaintiffs' request for a "Bellwether Class" procedure.  The legal issues in this case have been extensively briefed

7

by the Parties.  The Court's rulings on Wells Fargo's motions and Plaintiffs' request for a "Bellwether Class" procedure provided the Parties with guidance regarding the strengths and weaknesses of their claims and defenses.

15.     On September 1, 2020, the Court granted in part and denied in part Wells Fargo's motion to dismiss the operative First Amended Complaint ("FAC"), with leave to amend to file a Second Amended Complaint and denied Wells Fargo's motion to strike the nationwide class allegations.  (Dkt. 179.)  After those rulings, Plaintiffs conducted additional discovery to address issues raised in the Court's rulings.  Most notably, Plaintiffs took the depositions of the GAP Administrators who drafted the GAP Agreements for two of the named plaintiffs whose claims were dismissed with leave to amend (Gretta Carter and James Atkins).  Plaintiffs' counsel believes those depositions provided facts supporting their disproportionate forfeiture theories (one of the bases upon which the Court granted leave to amend) and provided grounds for the Court to revisit its previous rulings when it considered Plaintiffs' Second Amended Complaint.

16.     For example, in its motion to dismiss ruling, the Court found that some of the GAP Agreements (including Gretta Carter's) required a written request for a refund as a condition precedent for the refund.  (Dkt. 179, p. 8.)  The Court recognized Plaintiffs' argument that the checks or wire transfers that Plaintiffs sent to Wells Fargo as part of the Early Payoff could potentially constitute sufficient notice to satisfy this condition precedent.  (Id.)  However, the Court expressed the view that "even if the payoffs could constitute written refund requests . . . [n]one of [the contracts] state the written refund requests can be made to the assignee, Wells Fargo."  (Id. at 8-9.)  The GAP Administrator who drafted Gretta Carter's GAP Agreement admitted that his company's contract forms were intended to expressly provide that the written request could be made to the assignee (Wells Fargo) and that notice of the early payoff would trigger the refund obligation.  A copy of the relevant excerpts of the deposition testimony is attached as **Exhibit 1** and set forth below.

FRANK DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Q.     And so again I'm looking at the cancellation provisions, and the first sentence says "You may cancel and terminate this optional GAP Waiver Addendum at any point during the original time of the Finance Agreement upon written notice to the Dealer/Assignee and provided You have not entered a Waiver request." Did I read that correctly?

A.     Yes.

Q.     And so the written notice can be provided to the assignee, correct?

A.     It can be. (Ex. 1 at 208:20 - 209:11.)
. . .
Q.     And in the situation where the contract was assigned to Wells Fargo, the written notice can be provided to Wells Fargo, correct?

A.     Yeah. If Wells Fargo is the assignee, correct. (Ex. 1 at 226:17 – 227:20)
. . .
Q.     And if they provide notice that they're paying off the contract early to the assignee, then they're entitled to a refund, correct?

A.     They are entitled to a refund. (Ex. 1 at 211:18-23.)
. . .
Q.     So, am I correct that the customer does not need to say "I want a refund" in order to get a refund?

A.     The contract doesn't specify that the customer needs to say anything further to get a refund.

Q.     All they have to do is give notice that they're cancelling the contract, correct?

A.     The contract specifies that if a customer gives written notice it will trigger a cancellation and a refund.

Q.     And so if they give written notice that they're paying off the contract early, that's sufficient to get a refund, correct?
A.     That's what the contract specifies. (Ex. 1 at 223:4- 224:2.)

        17.    During this deposition, the GAP Administrator further acknowledged that past customers would not be permitted to obtain a refund today from his company, thereby supporting Plaintiffs' disproportionate forfeiture theory. (Ex. 1 at 276:15 - 277:5;

277:22 - 278:21.)  This example illustrates why Class Counsel believes that all of Plaintiffs' breach of contract claims, on behalf of themselves and the Class, would ultimately survive a motion to dismiss.  Shortly after these depositions were taken, the Parties agreed to attend a third mediation session as discussed below.

## HISTORY OF THE SETTLEMENT NEGOTIATIONS

18.     On or about November 27, 2018, counsel for the Parties and a client representative for Wells Fargo met in Orange County, California for a pre-mediation settlement conference.  After the conference, the Parties agreed it made sense to try to resolve Plaintiffs' claims and exchanged relevant documents and information to facilitate those settlement discussions.

19.     On January 23, 2019, the Parties attended a full-day mediation session before the Honorable Louis Meisinger (Ret.) at Signature Resolution.  The Parties were unable to reach a settlement of the case.

20.     On June 17, 2020, after Plaintiffs filed their First Amended Complaint, the Parties attended a second mediation session before the Honorable Andrew J. Guilford (Ret.).  Judge Guilford previously presided over this matter before his retirement from the federal bench in February 2020, so he was particularly familiar with the issues in the case.  Unfortunately, after a full-day session, the Parties were, once again, unable to reach a resolution of this lawsuit.

21.     On December 11, 2020, the Parties attended a third mediation session before Judge Guilford.  The third mediation was successful and resulted in the Parties executing a Term Sheet for a Tentative Nationwide Class Action Settlement.  The Parties thereafter negotiated various details of the Settlement.

22.     On May 6, 2021, after reaching an agreement on all material terms for the Settlement Class and Statutory Subclass, the Parties attended a fourth mediation session before Judge Guilford.  During that session, Judge Guilford heard evidence and arguments regarding an appropriate award of attorney's fees, costs and service awards. Judge Guilford indicated that, in advance of the Final Approval Hearing, he intends to

offer a declaration supporting the Settlement and recommending that an appropriate fee award in this matter is $23,100,000.00 and that an appropriate Service Award is $7,500 for each Class Representative, with the express understanding that this Court has the sole authority to make those determinations.   Plaintiffs accepted Judge Guilford's recommendations and Wells Fargo agreed not to opposed them.   Accordingly, Wells Fargo has agreed it will not oppose an application for fees in the amount of $23.1 million and Service Awards for each of the fifteen (15) Class Representatives in the amount of $7,500.00 each.

## THE SETTLEMENT

23.   A true and correct copy of the Settlement Agreement between the Parties (the "Settlement" or the "Settlement Agreement") is attached to Plaintiffs' Unopposed Motion for Preliminary Approval.   As noted above, the Settlement was reached after extensive and well-informed arms-length negotiations between the Parties, who are represented by highly experienced counsel, and with the substantial assistance of Judge Guilford.   There are not any other agreements besides the Settlement.

24.   **Settlement Class Definition.**   The Settlement Class (also referred to as the "Class") includes all persons in the United States (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo, (b) whose Finance Agreements were terminated as the result of an Early Payoff which occurred during the Class Period, and (c) who did not receive a GAP Refund.   The Class also includes the members of the Statutory Subclass (defined below).   The Class Period is different depending on the State where the individual Class Member entered into their Finance Agreement and is based on the State's applicable statute of limitations for breach of contract claims.   A list of the Class Periods by State is attached as **Exhibit B** to the Settlement.

25.   **Statutory Subclass Definition.**   The Statutory Subclass includes all persons (a) who entered into Finance Agreements with GAP Agreements that were assigned to Wells Fargo; (b) whose Finance Agreements were subject to State Refund Laws; (c)

whose Finance Agreements terminated as the result of an Early Payoff that occurred during the Statutory Subclass Period; and (d) who did not receive a GAP Refund from Wells Fargo, or for whom Wells Fargo did not receive written confirmation from a Dealer or GAP Administrator that the GAP Refund was paid.

26.    **State Refund Laws.**  The term "State Refund Laws" refers to the laws in at least 13 States that require indirect auto lenders to take certain steps to ensure that a GAP Refund is paid after an Early Payoff.  For purposes of the Settlement only, the Parties have agreed that there were 13 States that had State Refund Laws that applied to the Class and which were in effect during the Class Period.  A list of the States and time periods is attached as **Exhibit E** to the Settlement.

27.    **Settlement Benefits.**  The Settlement provides for the following benefits in exchange for the Release:

a.    **Future GAP Refunds & Business Practice Change**.  No later than **January 1, 2022**, Wells Fargo will implement processes to directly provide to customers, on a go-forward basis, Early Payoff GAP Refunds within a reasonable time after receipt of an Early Payoff so long as (1) the customer purchased GAP from a Dealer at the time they entered into their Finance Agreement; (2) the customer's Finance Agreement was assigned to Wells Fargo; (3) Wells Fargo received the Early Payoff from the customer; (4) the customer's GAP Agreement provides for an Early Payoff GAP Refund in the event of an Early Payoff; and (5) the customer has not previously received a GAP Refund. (Settlement, § III.A.)  Customers who meet these criteria will not be required to take any action other than completing an Early Payoff to receive an Early Payoff GAP Refund. (Id.)  This obligation will continue until **January 1, 2026**.  (Id.)  Based on a review of Wells Fargo's records, Plaintiffs' expert estimates that Wells Fargo will pay out approximately **$417,029,964.00** in refunds during this four-year period. (Declaration of L. Scott Baggett ("Baggett Decl."), ¶¶ 22-23.)  This is money that Wells Fargo was not paying out prior to the filing of Plaintiffs' lawsuit as substantiated by Wells Fargo's records.  (Id., ¶ 23.)

b.      **Past GAP Refunds to Statutory Subclass Members**.  Each member of the Statutory Subclass has received or will receive a settlement payment equal to their full Early Payoff GAP Refund (without any deduction for cancellation fees), plus compensation for the loss of use of these funds based on the one-year constant U.S. maturity treasury rate, compounded annually from the date of the Early Payoff. (Settlement, § III.D.)  Wells Fargo did not begin making these payments until **February 22, 2019**, approximately one year after the filing of this Action.  (Id.)  As part of the Settlement, Wells Fargo represents and warrants that it has paid **$33,357,919.81** collectively to the Statutory Subclass Members between **February 22, 2019** and **March 31, 2021** to approximately **105,274** individuals.  (Id.)  This works out to an average individual refund amount of approximately **$316.87**.  To the extent any members of the Statutory Subclass have not yet received their Early Payoff GAP Refund, Wells Fargo represents and warrants that it will directly pay those members their Early Payoff GAP Refund plus compensation for the loss of use of these funds pursuant to the terms of the Settlement. (Settlement, § III.D.)  These amounts will be paid or have been paid separate and apart from the Supplemental Settlement Fund (described below) and will not in any way reduce that fund.  (Id.)

c.      **Additional Compensation Payments to the Statutory Subclass.**  In addition to the payments described above, each member of the Statutory Subclass will receive an "Additional Compensation" payment of up to $5.00.  (Settlement, § III.C.2.) The Additional Compensation payments will come out of the Supplemental Settlement Fund (described below) and will be directly mailed to the members of the Statutory Subclass without any need for submitting a Claim.

d.      **Past GAP Refunds to Non-Statutory Subclass Members**.  Class Members whose Finance Agreements were not governed by the State Refund Laws (the "Non-Statutory Subclass Members") who submit a Claim Form verifying that they did not previously receive a GAP Refund from a Dealer or GAP Administrator will be eligible to a receive a settlement payment up to the full amount of their Early Payoff GAP

Refund without any deduction for cancellation fees (an "Approved Claim"). (Settlement, § III.C.1.) Depending on the number of Approved Claims, the amount of the individual settlement payments may be reduced on a pro rata basis pursuant to the Operation of the Net Settlement Fund (discussed below).

e.   **Supplemental Settlement Fund.**  Wells Fargo will establish a Supplemental Settlement Fund totaling **$45 million** to pay for: (1) Approved Claims for GAP Refunds to Non-Statutory Subclass Members; (2) the $5.00 Additional Compensation payments to the Statutory Subclass; (3) the Fee and Expenses Awards approved by the Court; and (4) any Service Awards approved by the Court. (Settlement, § III.B.) This fund is non-reversionary. (Id.)

f.   **Operation of the Net Supplemental Settlement Fund.**  The Net Supplemental Settlement Fund is the amount of money that remains in the Supplemental Settlement Fund after the deduction of any Fee and Expense Awards and Service Awards approved by the Court. (Settlement, § III.C.5.) If the amount of the Net Supplemental Settlement Fund is not sufficient to fully cover the cost of (i) the Approved Claims to Non-Statutory Subclass Members and (ii) the $5.00 Additional Compensation payments to the Statutory Subclass, then those amounts will be reduced on a prorated basis to account for the difference. (Id.) Each Class Member's individual payment from the Net Supplemental Settlement Fund will be reduced by the same percentage. (Id.) For example, if the collective total of these items is 10% greater than the Net Supplemental Settlement Fund, then each Class Member's individual payment from the Supplemental Settlement Fund will be reduced by 10%. NOTE: Per the terms of the Settlement, the Parties agreed that this provision will not reduce the refund payments owed to the Statutory Subclass Members (described above), and will only potentially reduce their Additional Compensation payments, due to the fact those members have stronger claims based on the State Refund Laws.

g.   **Notice and Administrative Costs.**  Wells Fargo will separately pay for all Notice and Administrative Costs, including sending a copy of the Notice of

Settlement, by first-class mail, to over 2.69 million Wells Fargo customers.  (Settlement, § III.E..)  Based on my experience in other class action settlements, I estimate that the total notice and administrative costs will be approximately **$3 million**.  These costs will be in addition to the amounts deposited in the Supplemental Settlement Fund and will not in any way reduce that fund.  (Settlement, § III.E.)

28.    In total, the Settlement provides for over **$500 million** in benefits to Wells Fargo's customers, including (a) over **$417 million** in future Early GAP Refunds; (b) over **$33.36 million** in Early Payoff GAP Refunds to the Statutory Subclass; (c) **$45 million** in the Supplemental Settlement Fund; and (d) approximately **$3 million** in notice and administrative costs (**$417 million + 78.36 million + 3 million = $498.36 million**).

29.    **Release.**  In exchange for the above consideration, each member of the Class and Statutory Subclass who does not Request Exclusion from the Settlement will release Wells Fargo and the Class Releasees from any and all past and present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to an Early Payoff GAP Refund for an Early Payoff that occurred during the Class Period (the "Class Released Claims").  (Settlement, **§** II.A.)

30.    **The Class Releasees.**  The Class Releasees include Wells Fargo and each of their former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, and employees and attorneys.

Notwithstanding the foregoing, the Class Releasees do not include any Dealers or GAP Administrators, including without limitation, those identified in the Class Members' GAP Waiver Agreements or the Finance Agreements. (Settlement, § II.A.)

31.     **Fee, Expense & Service Awards.**  As part of the Settlement, Wells Fargo has agreed that it will not oppose an application for attorney fees up to **$23,100,000.00**, expenses up to **$500,000.00** and Service Awards to each of the 15 Class Representatives in the amount of **$7,500.00** each.  (Settlement, § VI.A., E.)

32.     **Settlement Administrator.**    The Parties have selected JND Legal Administration ("JND") to serve as the Settlement Administrator.  JND's experience and qualifications are set forth in the Declaration of Jennifer E. Keough, CEO of JND, filed concurrently herewith.

33.     **Notice Plan.** No later than 60 days after the Preliminary Approval of the Settlement, or **August 14, 2021**, whichever is later, the Settlement Administrator will send a copy of the Notice, via first class mail and email (where available from Wells Fargo's records) to each potential Class Member.  On the first day that the Notice is mailed, the Settlement Administrator will also make an informational Settlement Website available to the public, which will include a copy of the Settlement Agreement, the Notices, the FAC, the Motion for Preliminary Approval and supporting declarations and other important documents.  Copies of the Notice to the Class and the Notice to the Statutory Subclass are attached to the Settlement Agreement as **Exhibits C & D.**

34.     **Claims Process.** The Non-Statutory Subclass Members will be required to submit a Claim Form verifying that they did not previously receive a GAP Refund from a Dealer or GAP Administrator.  Wells Fargo did not maintain records of this information in the ordinary course of business.  These Class Members will have 60 days to submit a Claim Form after the mailing of the Notice of Settlement (the "Claims Period").  To make the claims process user-friendly, the Non-Statutory Subclass Members may fill out their Claim Form on the Settlement Website and sign it electronically or mail the completed Claim Form to the Settlement Administrator.  Class Members may also scan a unique

16

QR code on their Claim Form to complete and submit the Claim Form on their smartphone or tablet.  A copy of the Claim Form is attached to the Settlement as **Exhibit A**.  Members of the Statutory Subclass will not need to submit a Claim Form because the validity of their claims can be established from Wells Fargo's records.  Their Additional Compensation payments will be mailed by the Settlement Administrator from the Supplemental Settlement Fund.  Their refund payments will be made or have been made directly by Wells Fargo.

35.   **Opt-Out / Objection Process.**   Per the terms of the Settlement and agreement of the Parties, Class Members will have 60 days after the mailing of the Notice of Settlement to Request Exclusion from the Settlement Class ("Opt-Out") or to object to the Settlement (the "Response Deadline").  All "Opt-Outs" must be made in writing and signed by the Class Member.  Likewise, all Objections must be made in writing and signed by the Class Member.  The Objections also must include the reason(s) for the objections and any supporting authority.  To be valid, the Opt-Outs/Objections must be mailed to the Settlement Administrator and post-marked no later than the Response Deadline.  The Objections must also be filed with the Court and served on counsel for the Parties by the Response Deadline.  Objectors must also file a Notice of Intention to Appear with the Court by the Response Deadline if they wish to speak at the Final Approval Hearing.  In addition, if an objection is being filed by a lawyer on the Class Member's behalf, the lawyer must also file a Notice of Appearance with the Court by the Objection Deadline which includes a declaration attesting that lawyer represents the Class Member and specifying the number of times during the prior five-year period that the lawyer has objected to a class action settlement on his or her own behalf or on behalf of a class member.  Detailed instructions for the Opt-Out/Objection process will be included in the Notice.

## FACTS SUPPORTING CERTIFICATION OF SETTLEMENT CLASS

36.     According to Wells Fargo's records, Wells Fargo estimates that there are approximately 2,690,550 potential members of the Class and at least 105,274 members of the Statutory Subclass.[1]

37.     As established herein and in the accompanying declaration of Franklin D. Azar and Charles E. Schaffer, Class Counsel have extensive experience in handling consumer class actions and complex business litigation.  Our firms have been vigorously prosecuting this lawsuit on behalf of the proposed Class and have the financial resources and personnel to do so.

38.     I am not aware of any conflicts of interests between Class Counsel and the Class Members, nor am I aware of any conflicts of interests between the named Plaintiffs and the Class Members.

39.     I am not aware of any evidence that individual Class Members have any interest in individually controlling their cases.  I have checked the federal dockets and am not aware of any related litigation pending against Wells Fargo by any Class Member concerning the issues in this Action.

40.     Based on my experience, it would not be economically feasible for individual Class Members to pursue their claims on an individual basis.  The individual Early Payoff GAP refunds owed to each Class Member will be on average approximately $300, and the cost of contested litigation over such claims would greatly exceed the individual amounts at issue.

41.     The Class Representatives have actively participated in and monitored this Action.  As noted above, each of the Class Representatives had to respond to voluminous written discovery and Class Representative James Atkins was deposed for a full day.  The

---

[1] At this time, the Parties can only estimate the number of <u>potential</u> Class Members, because Wells Fargo does not know which customers may have received a refund from a Dealer or GAP Administrator (which is one of qualifications for the Class definition). Nevertheless, given that Wells Fargo can verify that there at least 105,274 members of the Statutory Subclass Members, the Parties can safely attest that the Settlement Class satisfies the numerosity requirement.

Class Representatives have also received regular reports from Class Counsel concerning the status of the case, reviewed key pleadings and assisted counsel in the litigation of the Action on behalf of the proposed Class.

42.    Copies of the Declarations from the Class Representatives in support of the Settlement and certification of the Settlement Class are attached as **Exhibit 2**.

## FACTS SUPPORTING FINAL APPROVAL OF SETTLEMENT

43.    Based on my experience, it is my opinion that the Settlement provides an outstanding result for the Class and Wells Fargo's customers.

44.    Under the terms of the Settlement, the Statutory Subclass Members have received or will be receiving directly from Wells Fargo the maximum amount of damages they could realistically obtain if they prevailed on the claims asserted in this Action, plus compensation for the loss of use of their funds and an additional payment of up to $5.00. This is essentially a complete win for the Statutory Subclass Members.

45.    The Non-Statutory Subclass Members are eligible to receive up to the full amount of their Early Payoff GAP Refund, without any deduction for cancellation fees.[2] This would be the maximum amount of damages these Class Members could realistically obtain or be awarded at trial, exclusive of prejudgment interest. This is an excellent outcome for these Class Members, especially considering (a) they were unable to rely on State Refund Laws as a basis for their refunds, (b) they were subject to Wells Fargo's defense that they did not strictly comply with the GAP Agreements' written notice requirements; and (c) they were subject to Wells Fargo's argument that Wells Fargo did not assume the contractual obligation to issue the refund.

46.    In addition, Wells Fargo's agreement as part of this Settlement to provide automatic refunds in all 50 States for at least the next four years is an important achievement that will likely set a new standard for the GAP industry.  As a result of this Settlement, Plaintiffs' expert, Dr. L. Scott Bagget, estimates that Wells Fargo will be

---

[2] Notably, the amount of the cancellation fees typically range from $25 to $50, which is sometimes more than the Early Payoff GAP Refund, so avoiding such fees is a significant benefit.

paying out at least **$417,029,964** in future GAP Refunds during the four-year period provided by the Settlement that would not have been otherwise paid by Wells Fargo. Wells Fargo will be essentially waiving its argument that it does not have the contractual obligation to issue the refund or that customers must provide a written request as a prerequisite for a refund, at least for a four-year period. Obtaining this business practice change was one of the primary goals of this lawsuit. While the change is not permanent under the terms of the Settlement, Class Counsel hopes and believes that the four-year period will demonstrate to Wells Fargo that it should adopt this change on a permanent basis.

47.    Class Counsel are well informed about the strengths and weaknesses of this Action, and the risks and benefits of further litigation. As noted above, the Parties have engaged in extensive discovery over the last three-plus years of litigation. The Parties also have the benefit of the Court's ruling on key legal issues in connection with Wells Fargo's motion to dismiss and motion to compel arbitration.

48.    Class Counsel believe the benefits of this Settlement far outweigh the risks of further litigation for at least the following reasons:

a.    First, while Class Counsel believe Plaintiffs have strong claims, we recognize there are significant risks the Court or trier of fact could conclude that (a) Wells Fargo did not take over the obligation to issue the Early Payoff GAP Refund after the assignment of the GAP Agreement and/or (b) customers did not strictly comply with the GAP Agreement's written notice requirements. Further, while Class Counsel believe the State Refund Laws should be interpreted to require Wells Fargo to automatically and directly issue Early Payoff GAP Refunds after an Early Payoff, Class Counsel recognize the interpretation of these laws will, in most instances, present an issue of first impression and there are no guarantees that Plaintiffs' view will prevail.

b.    Second, those Class Members whose Finance Agreements are subject to arbitration provisions with class action waivers will not have any economically feasible means to pursue their claims, because the cost of an individual arbitration and

retaining counsel will greatly exceed the amount of their individual refunds (which will typically amount to a few hundred dollars).

c.      Third, Class Counsel are mindful of challenges in certifying a nationwide class action.  While courts will often certify breach of contract claims on a nationwide basis where, as here, Class Members were subject to a uniform practice by a bank, there is a material risk that Wells Fargo's arguments against class certification could prevail or present a risk of decertification in the future.

d.      Fourth, while this case has been heavily litigated for over three years, the case is still at the pleading stage.  Absent a Settlement, there would likely be another round of motion dismiss briefing, plus class certification briefing, summary judgment briefing and a trial in the future.  Consequently, this litigation would likely take at least two years before a final resolution was reached in this matter, not including the time for appeal.

e.      Fifth, this has been and will continue to be expensive litigation against a well-represented opponent.  Wells Fargo is represented by two highly regarded national law firms in McGuire Woods, LLP and Troutman Pepper Hamilton Sanders, LLP.  To date, Class Counsel has already incurred over $10,756,655 in legal fees and $258,455 in expenses as discussed further below.  Given that this case is still at the pleading stage, the costs of proceeding in this litigation are far outweighed by the benefits of this Settlement.

49.   Based on an assessment of these factors, I and the rest of Class Counsel believe the proposed Settlement is in the best interests of the Class and strongly recommend approval.

**FRANK DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## CLASS COUNSELS' FEES AND COSTS

50.     My firm (FSS) maintains contemporaneous time records and bills in a tenth of an hour.  As of May 15, 2021, my firm (FSS) has spent over 4,575 hours working on this matter for a total lodestar value of $4,368,639.50.  Our current hourly rates are as follows: Jason Frank ($950), Andrew Stolper ($950), Scott Sims ($900) and Maritza Nowowiejski ($400).  Our rates have been approved by Courts as "fair and reasonable" and "commensurate with the prevailing market rates in Southern California" for "lawyers of reasonably comparable skill, experience and reputation."[3]  A summary of our time is attached as **Exhibit 3**.

51.     As set forth in the Declarations of my co-counsel, Franklin D. Azar and Charles E. Schaffer, the Azar Firm spent over 10,998 hours on this case for a total lodestar of approximately $5,020,290 and the LSB Firm spent over 1829.80 hours on this case for a total lodestar of approximately $1,367,726.25.

52.     Collectively, Class Counsel has spent over 17,403 hours on this case for a total lodestar of approximately $10,756,655.  In computing the lodestar, Class Counsel did not include timekeepers who spent less than 100 hours on the matter.  Class Counsel's lodestar in this case amounts to a blended rate of approximately $618 per hour (10,756,555/17,403 = $618.09.)  This is within the reasonable range of blended rates in "complex, high stakes litigation" in Northern and Southern California.  See, e.g., Perez v. Rash Curtis & Assocs., 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (collecting cases and finding that a blended rate of $634.48 is within a reasonable range for rates charged in California for "complex, high-stakes, litigation.").

53.     FSS has incurred approximately **$80,909.49** in expenses to date.  A summary of our firm's expenses is attached as **Exhibit 4**.

---

[3] In March 2018, this Court found that our firm's previous partner rates – which at the time were "between $900 and $850 per hour" – were "reasonable and commensurate with prevailing market rates in Southern California."  Callaway v. Mercedes Benz-USA, LLC., Case No. 8:14-cv-02011-JVS-DFM, Dkt. 233-1, pp. 14-15.  We have subsequently raised our rates by $50 since those rates were approved three-years ago to reflect current market rates for lawyers of similar experience, skill and expertise in Southern California.

54. Collectively, Class Counsel has incurred at least **$258,455.27** in expenses to date on this matter.

55. Class Counsel intends to submit an application for an award of attorneys' fees in the amount of $23,100,000.00. This request will be made pursuant to the terms of the Settlement and based on the recommendations of Judge Guilford discussed above. This is less than 5% of the total benefits provided by the Settlement ($23.1 million is approximately 4.6% of $498 million). This award would result in a lodestar multiplier of approximately 2.15 ($23.1 million / 10,756,655.75 = 2.1475). Below is a chart summarizing Class Counsel's fees, costs and the relevant information for a percentage of the benefit and lodestar analysis.

| Firm | Hours | Lodestar | Expenses |
|------|-------|----------|----------|
| Azar | 10,998.00 | $5,020,290.00 | $191,944.83 |
| FSS | 4,575.20 | $4,368,639.50 | $53,909.49 |
| LSB | 1,829.80 | $1,367,726.25 | $12,600.95 |
| **TOTAL** | **17,403.00** | **10,756,655.75** | **$258,455.27** |

| | | | |
|------|-------|----------|----------|
| **Blended Rate** | $618.09 | | |
| **Total Value of Settlement** | $498,360,000.00 | | |
| **Fee Request** | $23,100,000.00 | | |
| **Percentage of Benefit** | 4.64% | | |
| **Lodestar Mutliplier** | 2.148 | | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing this true and correct. Executed this 1st day of June 2021 in Irvine, California.

*/s/ Jason M. Frank*
JASON M. FRANK

# Exhibit 1

```
 1                    UNITED STATES DISTRICT COURT
 2                    CENTRAL DISTRICT OF CALIFORNIA
 3
                                          )
 4        ARMANDO HERRERA, EDUARDO         )
          SALCEDO, DENA LUCERO,            )
 5        FREDERICK BROWN, VANITY          )
          ARRINGTON, KASHIF Z. AWAN,       )
 6        GRETTA CARTER, JAMES ATKINS,     )
          ILKA ROBINSON-EATON, JANET       )
 7        CORPES, TERRI JONES, HEIDI       )
          HUMPHREYS, RIA MARTEINS,         )
 8        BRIAN T. SWEENEY, NAKECIA M.     )
          DEAN, AND VON GRIFFIN EACH       )
 9        INDIVIDUALLY AND ON BEHALF OF    )
          ALL OTHERS SIMILARLY SITUATED,   )
10                                          )
                       PLAINTIFFS,          )
11                                          )
              VS.                           )  CASE NO.
12                                          )  8:18-CV-00332-AG
          WELLS FARGO BANK, N.A. D/B/A      )  (MRWX)
13        WELLS FARGO DEALER SERVICES,      )
          INC., WELLS FARGO & COMPANY       )
14        AND MARGUERITE DREW, AN           )
          INDIVIDUAL,                       )
15                                          )
                       DEFENDANTS.          )
16        _____)
17
18                    REMOTE PROCEEDINGS OF
19             VIDEOTAPED DEPOSITION OF DOUG GUZIEC
20        PMK FOR INNOVATIVE AFTERMARKET SYSTEMS, L.P.
21                THURSDAY, SEPTEMBER 24, 2020
22
23        JOB NO. PCR 4266158
24        REPORTED BY:  REAGAN EVANS, RPR, RMR, CRR, CCRR,
25                      CLR, CRC, CA CSR NO. 8176
```

Page 1

```
 1              MR. DAVEY:  Josh Davey here on behalf of

 2     Wells Fargo as well.

 3              MS. YI:  Jenny Yi on behalf of Wells Fargo.

 4              MR. PEDELTY:  Josh Pedelty, in-house

 5     counsel with Innovative Aftermarket Systems.      10:07:12

 6              THE VIDEOGRAPHER:  Will the court reporter

 7     please swear in the witness remotely.

 8              MR. AZAR:  I forgot to enter my appearance.

 9              Frank Azar for Plaintiffs.

10              MR. HANLIN:  Brian Hanlin for Plaintiffs.   10:07:25

11              MR. MURPHY:  Michael Murphy for Plaintiffs.

12              THE REPORTER:  Do all counsel agree that I

13     may swear the witness in remotely?

14              ALL COUNSEL:  Yes:

15                                                        10:07:39

16                      DOUG GUZIEC,

17      having been first duly sworn by the reporter, was

18          examined and testified as follows:

19

20              THE WITNESS:  I do.                       10:07:57

21              THE REPORTER:  Thank you.

22                      EXAMINATION

23     BY MR. FRANK:

24          Q   Good morning, Mr. Guziec.

25              Can you please state and spell your full   10:08:02
```

Page 12

1    name for the record.

2         A    My name is Doug Guziec.   It's D-o-u-g, and

3    last name is G-u-z-i-e-c.

4         Q    And who is your current employer?

5         A    IAS.                                          10:08:14

6         Q    And what does IAS stand for?

7         A    Innovative Aftermarket Systems.

8         Q    And what is your position at IAS?

9         A    I'm the chief operating officer.

10        Q    And what are your responsibilities as the    10:08:32

11   chief operating officer?

12        A    So I'm responsible for many of the

13   back-office operations of the organization.   Yeah.

14             (Mr. Stolper enters the

15             proceedings.)                                 10:08:52

16   BY MR. FRANK:

17        Q    And does IAS sell GAP waiver products or

18   offer GAP waiver products?

19             Let me strike the question.

20             Does IAS administer a GAP waiver program?    10:09:01

21        A    Yes.

22        Q    Have you ever had your deposition taken

23   before?

24        A    I have.

25        Q    How many times?                              10:09:15

                                                      Page 13

```
 1              (Whereupon Guziec Exhibit 146 was

 2              marked for identification and

 3              attached hereto.)

 4    BY MR. FRANK:

 5        Q    And do you see Exhibit 146 on your screen?    10:11:41

 6        A    Yeah.  I can't tell where it's labeled 146,

 7    but I see a document.

 8        Q    Yes.

 9              The documents won't actually say the

10    exhibit numbers because we're doing this via Zoom.    10:11:56

11              But you can see the document itself?

12        A    I can.

13        Q    Okay.

14              The title of this document is is (as read

15    and/or reflected:)                                    10:12:04

16              Second Amended Notice of

17              Deposition of Innovative

18              Aftermarket Systems, Inc., to

19              Testify at Depositions and Produce

20              Documents Pursuant to Previously            10:12:12

21              Served Subpoena.

22              Have you seen this document before?

23        A    I don't know if I have or not.

24        Q    All right.

25              Have you seen a document that listed the    10:12:25
```

                                                        Page 16

1    topics that we were going to be going over today?

2         A    Yes, I have.

3         Q    Let me scroll down here.  This document

4    lists the topics of deposition.  Feel free to take a

5    moment to read them.                                10:12:48

6              But the question I'm going to ask you is:

7    Are you qualified to testify on the company's behalf

8    regarding the topics in this deposition notice?

9         A    Yes.

10        Q    What have you done -- we'll take that down   10:13:08

11   now.

12             What have you done to prepare for today's

13   deposition?

14             And, by the way, in answering this

15   question, just let me advise you that any          10:13:17

16   communications that you had with your lawyers are

17   privileged so you don't have to share those, but any

18   other conversations you have had with nonlawyers are

19   not privileged.

20             So in answering these questions, please   10:13:30

21   keep that in mind.

22        A    Yeah.  So I reviewed a number of documents.

23        Q    What documents did you review?

24        A    Copies -- some, not all -- of the GAP

25   contract that we produced, the policies and          10:13:51

                                              Page 17

1        Q    Have you had any conversations with anyone

2    at Wells Fargo about this lawsuit?

3        A    No.

4        Q    Have you had any conversations with anyone

5    at Wells Fargo about this deposition?                10:19:46

6        A    No.

7        Q    So can you tell us, what is the business of

8    IAS?

9        A    IAS markets, sells -- helps to sell and

10   administers warranty products primarily for          10:20:07

11   automobiles.

12       Q    And that would include GAP waiver products

13   as well; correct?

14       A    Yes.

15       Q    And, by the way, in connection with my       10:20:20

16   questions regarding your conversations with Wells

17   Fargo, have you had any conversation with Wells

18   Fargo's attorneys?

19       A    No.

20       Q    And do you know if anyone from the company   10:20:31

21   or your lawyers have had conversations with Wells

22   Fargo's attorneys?

23       A    I don't know.

24       Q    Okay.

25            Let's go over your background.  Can you      10:20:49

                                                 Page 22

```
 1    just briefly describe your educational background.

 2         A    So I went to undergraduate SMU, Southern

 3    Methodist University, and got my MBA from the

 4    University of Pennsylvania 1996.

 5              (C. Wilkerson enters the              10:21:09

 6              proceedings.)

 7    BY MR. FRANK:

 8         Q    And what was your undergraduate degree?

 9         A    Mechanical engineer.

10         Q    And what years did you attend business   10:21:23

11    school?

12         A    From 2001 to 2003.

13         Q    And I'm sorry.  What university again?

14         A    It was University of Pennsylvania.

15         Q    And you got your MBA there in 2003?      10:21:40

16         A    Right.

17         Q    When did you start working at IAS?

18         A    February 2017.

19         Q    And what was your first position at IAS?

20         A    Chief operating officer.              10:22:04

21         Q    And that's -- is that the same -- I'm

22    sorry.  That is not the same position.

23              How long were you in that position for?

24         A    I have been in that position this whole

25    time.                                            10:22:15
```

Page 23

```
1        Q    Okay.

2             So chief operating officer, COO is the

3    position that you're in currently; correct?

4        A    Correct.

5        Q    And, again, you gave us a general          10:22:23

6    description of your job responsibilities.  What are

7    your responsibilities as it relates to the GAP

8    waiver product?

9        A    The same.  Just to support the operations,

10   the back office operations and administration of our   10:22:43

11   warranties.

12       Q    And can you describe what those back office

13   operations are.

14       A    Well, yeah.  We ingest new warranties as

15   they're remitted to us putting them into our          10:23:05

16   systems.

17            We adjudicate claims.  We perform basic

18   customer service tasks like updating your mailing

19   address or those kinds of things, performing

20   cancellations.                                        10:23:23

21            We distribute reports on product sales to

22   our various dealerships and agencies that assist in

23   the marketing of our products.  We calculate

24   commissions amounts due to some of those same

25   parties.                                              10:23:48
```

Page 24

```
 1    a repossession or payoff of the loan.

 2        Q   All right.

 3            What documentation do you require in the

 4    situation where there's an early payoff of the loan?

 5        A   I can't recall all of the document              15:24:11

 6    requirements for each of the cancellation scenarios.

 7            MR. FRANK:  All right.

 8            Let me take a break.  I think you gave me

 9    some documents.  Let's take a break and we'll come

10    back in about ten minutes.                              15:24:23

11            THE VIDEOGRAPHER:  Going off the record.

12            The time is 3:24 p.m.

13            (Recess was taken at 3:24 p.m.

14            until 3:38 p.m.)

15            THE VIDEOGRAPHER:  Going back on the            15:38:09

16    record.

17            The time is 3:38 p.m.

18    BY MR. FRANK:

19        Q   So I'm going back.

20            We've been looking at a contract from           15:38:15

21    Group A in Exhibit 152.  And so again I'm looking at

22    the cancellation provisions, and the first sentence

23    says (as read and/or reflected:)

24                You may cancel and terminate

25            this optional GAP Waiver Addendum               15:38:46
```

Page 208

1           at any point during the original

2           term of the Finance Agreement upon

3           written notice to Dealer/Assignee

4           and provided you have not entered a

5           Waiver request.                          15:38:55

6           Did I read that correctly?

7        A   Yes.

8        Q   And so the written notice can be provided

9    to the assignee; correct?

10           MS. BAIRADO:  Objection.             15:39:13

11           THE WITNESS:   It can be.

12    BY MR. FRANK:

13        Q   I'm sorry.  I missed -- I didn't hear your

14    answer.

15        A   It can be.                            15:39:21

16        Q   Okay.

17           And your contract doesn't specify any

18    particular language that has to be included in the

19    written notice; correct?

20           MS. BAIRADO:  Objection.             15:39:50

21           THE WITNESS:   No.   But I believe we have a

22    cancellation form that has certain fields in it like

23    a signature.

24    BY MR. FRANK:

25        Q   Is the customer required to use the      15:40:02

                                        Page 209

```
 1    might have requirements there that I'm not aware of.

 2    BY MR. FRANK:

 3        Q   All right.

 4            But is there any requirements in the

 5    contract?                                          15:41:32

 6        A   This contract doesn't specify.

 7        Q   Okay.

 8            And -- okay.

 9            And this contract does state that the

10    contract will expire if you pay off the contract   15:42:11

11    early; correct?

12        A   It does.

13        Q   And if the customer provides written notice

14    to the assignee that the contract is being paid off

15    early, then they're entitled to a refund; correct? 15:42:26

16        A   Yeah.  The customer can cancel and

17    terminate at any point.

18        Q   And if they provide notice that they're

19    paying off the contract early to the assignee, then

20    they're entitled to a refund; correct?            15:42:49

21        A   They are entitled to a refund.

22        Q   So what I just said is correct; true?

23        A   Correct.

24        Q   Let's go to the Group B contracts, which

25    have been identified in Exhibit 153.              15:43:12
```

                                                Page 211

```
 1              THE WITNESS:  That's what the contract

 2    provides for.

 3    BY MR. FRANK:

 4        Q    So am I correct that the customer does not

 5    need to say "I want a refund" in order to get a      15:58:25

 6    refund?

 7              MS. BAIRADO:  Objection.

 8              THE WITNESS:  The contract doesn't specify

 9    that the customer needs to say anything further to

10    get a refund.                                          15:58:41

11    BY MR. FRANK:

12        Q    Okay.

13              All they have to do is give notice that

14    they're cancelling the contract; correct?

15              MS. BAIRADO:  Objection.                     15:58:49

16              THE WITNESS:  The contract specifies that

17    if a customer gives written notice it will trigger a

18    cancellation and a refund.

19    BY MR. FRANK:

20        Q    And so if they give written notice that      15:59:00

21    they're paying off the contract early, that's

22    sufficient to get a refund; correct?

23              MS. BAIRADO:  Objection.

24              MR. MARLIN:  Objection.  Asked and

25    answered.                                              15:59:09
```

                                                  Page 223

1          THE WITNESS:   That's what the contract

2    specifies.

3    BY MR. FRANK:

4         Q    And it's assumed that if they're cancelling

5    or paying off the contract early that the customer          15:59:17

6    wants the refund of the unearned portion of the GAP

7    charge; correct?

8              MS. BAIRADO:  Objection.

9              THE WITNESS:  I can't speculate on what a

10   customer would want.                                        15:59:33

11   BY MR. FRANK:

12        Q    I'm asking about from the -- your

13   perspective.  Helping perspective.

14        A    IAS's perspective is that a customer

15   electing to cancel in all likelihood probably wants         15:59:52

16   a refund.

17        Q    For example, if you went to a store and

18   bought a $3 item with a $5 bill, you would expect a

19   refund of $2; correct?

20             MS. BAIRADO:  Objection.                          16:00:05

21             THE WITNESS:  I don't understand the

22   question.

23             Do I want accurate change during a

24   purchase?

25   ///

                                                    Page  224

```
 1    change; true?

 2         A    Me, Doug Guziec, as a consumer, yes.

 3         Q    Yes.

 4              MR. FRANK:  Did you get his answer?

 5              THE WITNESS:  I said, "Me, Doug Guziec as a    16:01:55

 6    consumer, yes."

 7    BY MR. FRANK:

 8         Q    And it's reasonable for a consumer to

 9    expect that they're going to get a refund if they

10    have overpaid for an item, correct, without asking    16:02:06

11    for it?

12              MS. BAIRADO:  Objection.

13              THE WITNESS:  I think it's reasonable for a

14    consumer to expect change on a purchase.

15    BY MR. FRANK:                                          16:02:31

16         Q    All right.

17              So going to -- back to Exhibit B -- I'm

18    sorry, Exhibit 153, which is the Group B

19    contracts -- I apologize if I asked you these

20    questions earlier, but let me just do it again.       16:03:02

21              This contract permits the customer to

22    provide written notice to the assignee; correct?

23         A    The contract indicates (as read and/or

24    reflected:)

25              You may cancel and terminate              16:03:19
```

Page 226

```
1              this optional GAP Waiver Addendum
2              at any point during the original
3              time of the Financial Agreement
4              upon written notice to the
5              Dealer/Assignee and provided you            16:03:28
6              have not entered a waiver request.
7         Q    So it provides that the customer can
8    provide the written notice to the assignee; correct?
9         A    Correct.
10        Q    And in the situation where the contract was  16:03:41
11   assigned to Wells Fargo, the written notice can be
12   provided to Wells Fargo; correct?
13        A    Yeah.  If Wells Fargo is assignee, correct.
14             MR. MARLIN:  Objection.
15   BY MR. FRANK:                                         16:03:58
16        Q    And there is nothing -- no magic words are
17   required to be in the written notice in order to get
18   a refund; correct?
19        A    The contract doesn't specify what needs to
20   be included in the notice.                           16:04:10
21        Q    Okay.
22             So as long as the customer has provided
23   written notice that they're cancelling or that the
24   contract has been paid off early, that's sufficient
25   to trigger the refund obligation; correct?           16:04:21
```

Page 227

```
 1    not sure if we've established a practice around this

 2    scenario of 91 days and beyond.  I can't answer

 3    that.

 4         Q   If Wells Fargo represented to the court

 5    that your company will provide a refund no matter      17:25:13

 6    how long ago the contract was paid off, would that

 7    be an accurate representation?

 8             MS. BAIRADO:  Objection.

 9             MR. MARLIN:  Objection.  Calls for

10    speculation.                                           17:25:29

11             THE WITNESS:  Would you repeat the

12    question?

13    BY MR. FRANK:

14         Q   Yes.

15             If Wells Fargo represents to the court that   17:25:36

16    customers can still get a refund of the unearned

17    portion of the GAP waiver no matter how long ago

18    they paid off their contract, would that be an

19    accurate representation?

20             MS. BAIRADO:  Objection.                      17:25:53

21             THE WITNESS:  Yeah.  I don't believe so.

22    BY MR. FRANK:

23         Q   If Wells Fargo told customers that they

24    could still get a refund of the unearned portion of

25    the GAP fee if they provide notice to the dealer no    17:26:16
```

                                                    Page 276

1    matter how long ago they paid off their contract,

2    would that be an accurate representation?

3            MS. BAIRADO:  Objection.

4            THE WITNESS:  Yeah.  I don't think that

5    would be accurate.                              17:26:37

6    BY MR. FRANK:

7        Q   And the reason it's not accurate is that

8    the customer would not receive a refund in that

9    situation; correct?

10           MS. BAIRADO:  Objection.                17:26:53

11           MR. MARLIN:  Objection.  Calls for

12   speculation.

13           THE WITNESS:  Yeah.  Let me make sure I'm

14   understanding what you're suggesting.

15           So ten years ago somebody pays off their  17:27:02

16   loan?

17   BY MR. FRANK:

18       Q   Let's use Ms. Carter.

19           Ms. Carter paid off her loan in -- I don't

20   actually have the exact payoff date, but she paid it  17:27:11

21   off, let's say, four years ago.

22           Ms. Carter is not able to, today, get a

23   refund of the unearned portion of the gap fee;

24   correct?

25           MS. BAIRADO:  Objection.                17:27:31

                                        Page 277

1          THE WITNESS:   If the contract has expired,

2    certainly not due to time.   I think we said it was

3    36 months.

4    BY MR. FRANK:

5        Q   We said -- right.                              17:27:42

6            So if -- so her original contract was

7    36 months; correct?   We saw that earlier.

8        A   Correct.

9        Q   And so if that 36 months has passed and she

10   hasn't asked for a refund or provided whatever        17:27:58

11   written notice you contend is required, then she

12   can't get a refund today; correct?

13       A   Correct.

14           MS. BAIRADO:   Objection.

15   BY MR. FRANK:                                          17:28:10

16       Q   Sorry.   I didn't get the answer.

17       A   Yeah.   If the contract has -- the 36 months

18   has come and gone and even furthermore some

19   additional amount of time has passed and a customer

20   wants to do a cancellation at that stage, it's too    17:28:25

21   late.

22           MS. BAIRADO:   Objection.

23   BY MR. FRANK:

24       Q   That includes situations where they have

25   paid off the finance agreement early; correct?        17:28:34

                                                 Page 278

Exhibit 2

JASON M. FRANK (190957)
ANDREW D. STOLPER (205462)
SCOTT H. SIMS (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone:   (949) 201-2400
Facsimile:   (949) 201-2405

FRANKLIN D. AZAR (*pro hoc vice*)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:   (303) 757-3300
Facsimile:   (303) 759-5203

CHARLES E. SCHAFFER (*pro hoc vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:   (215) 592-1500
Facsimile:   (215) 592-4663

*Attorneys for Plaintiffs, the Proposed Class and Subclass*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO HERRERA, EDUARDO SALCEDO, DENA LUCERO, FREDERICK BROWN, VANITY ARRINGTON, KASHIF Z. AWAN, GRETTA CARTER, JAMES ATKINS, ILKA ROBINSON-EATON, JANET CORPES, TERRI JONES, HEIDI HUMPHREYS, RIA MARTEINS, BRIAN T. SWEENEY, NAKECIA M.  DEAN, and VON GRIFFIN each individually and on behalf of all others similarly situated, | Case No.:  8:18-cv-00332-JVS-MRW |
| | **COMPENDIUM OF DECLARATIONS FROM CLASS REPRESENATIVES IN SUPPORT OF SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS** |
| Plaintiffs, | |
| vs. | |
| WELLS FARGO BANK, N.A. D/B/A WELLS FARGO DEALER SERVICES, INC., WELLS FARGO & COMPANY and MARGUERITE DREW, an individual, | |
| Defendants. | |

## CLASS REPRESENTATIVE DECLARATIONS

| Class Representative | Tab No. |
| --- | --- |
| Armando Herrera | 1 |
| Dena Lucero | 2 |
| Frederick Brown | 3 |
| Vanity Arrington | 4 |
| Kashif Awan | 5 |
| Greta Carter | 6 |
| James Atkins | 7 |
| Ilka Robinson-Eaton | 8 |
| Janet Corpes | 9 |
| Terri Jones | 10 |
| Heidi Humphreys | 11 |
| Ria Martiens | 12 |
| Brian Sweeney | 13 |
| Nakecia Dean | 14 |
| Von Griffin | 15 |

# Tab 1

**DECLARATION**

I, _Armando Herman_, declare as follows:

1.     I am over 18 years old. I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

2.     Capitalized terms shall have the same meaning as those used in the Settlement.

3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo. I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class. I have and will continue to uphold my duties as a Class Representative.

5.     I retained highly qualified lawyers to pursue this lawsuit. I have worked cooperatively with my lawyers throughout the litigation. My lawyers have regularly asked for my help and let me know about case developments. I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo. I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts. My interests are the same as the other Class members.

7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class. I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 16th day of May, 2021.

Sign: _____

Print Name: _Armando Herman_

4

# Tab 2

## **DECLARATION**

I, <u>     Dena Lucero     </u>, declare as follows:

     1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

     2.     Capitalized terms shall have the same meaning as those used in the Settlement.

     3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

     4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

     5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

     6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

     7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this <u>14th</u> day of May, 2021.

               Sign:    <u>*Dena Lucero*</u>

               Print Name:    <u>Dena Lucero</u>

**Tab 3**

## **DECLARATION**

I, _Fred Brown_____, declare as follows:

    1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

    2.     Capitalized terms shall have the same meaning as those used in the Settlement.

    3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

    4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

    5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

    6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

    7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 14th day of May, 2021.

Sign: _____

Print Name: _Fred Brown_____

Tab 4

## **DECLARATION**

Vanity Arrington
I, _____, declare as follows:

     1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

     2.     Capitalized terms shall have the same meaning as those used in the Settlement.

     3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

     4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

     5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

     6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

     7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 14th day of May, 2021.

Sign: _____

Print Name: Vanity Arrington

# Tab 5

## **DECLARATION**

I, KASHIF AWAN, declare as follows:

1.      I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

2.      Capitalized terms shall have the same meaning as those used in the Settlement.

3.      I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

4.      I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

5.      I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

6.      I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

7.      I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this ___ day of May, 2021.

Sign: *Kashif Awan*
     Kashif Awan (May 14, 2021 17:57 CDT)
     KASHIF AWAN          May 14, 2021

Print Name:   Kashif Awan

# K. Awan - WF Prelim Approval Shell Declaration for Clients

**Final Audit Report**                                    2021-05-14

| | |
|---|---|
| Created: | 2021-05-14 |
| By: | Thomas Shrack (tshrack@lfsblaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1ONCBDDQkRD6WjpBihU2heQmzRjv0FLF |

## "K. Awan - WF Prelim Approval Shell Declaration for Clients" History

📄 Document created by Thomas Shrack (tshrack@lfsblaw.com)
2021-05-14 - 9:30:57 PM GMT- IP address: 173.168.246.34

✉ Document emailed to Kashif Awan (abmg.usa@gmail.com) for signature
2021-05-14 - 9:32:16 PM GMT

📄 Email viewed by Kashif Awan (abmg.usa@gmail.com)
2021-05-14 - 10:54:26 PM GMT- IP address: 67.184.36.184

✍ Document e-signed by Kashif Awan (abmg.usa@gmail.com)
Signature Date: 2021-05-14 - 10:57:01 PM GMT - Time Source: server- IP address: 67.184.36.184

✅ Agreement completed.
2021-05-14 - 10:57:01 PM GMT

Adobe Sign

# Tab 6

DocuSign Envelope ID: 5E684886-0B53-4D79-98F4-78CA63EB3040

## **DECLARATION**

I, _____Gretta Carter_____, declare as follows:

1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

2.     Capitalized terms shall have the same meaning as those used in the Settlement.

3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this __17__ day of May, 2021.

Sign: _____*Gretta Carter*_____

Print Name: _____Gretta Carter_____

15

# Tab 7

## **DECLARATION**

I, <u>   JAMES ATKINS        </u>, declare as follows:

      1.      I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

      2.      Capitalized terms shall have the same meaning as those used in the Settlement.

      3.      I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

      4.      I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

      5.      I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

      6.      I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

      7.      I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this <u>  14  </u> day of May, 2021.

Sign: <u>  JAMES ATKINS          </u>

Print Name: <u>   JAMES ATKINS      </u>

# Tab 8

# **DECLARATION**

I, _IIka Robinson-Eaton_____, declare as follows:

      1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

      2.     Capitalized terms shall have the same meaning as those used in the Settlement.

      3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

      4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

      5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

      6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

      7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this __14__ day of May, 2021.

Sign: _____

Print Name: _____IIka Robinson-Eaton_____

# Tab 9

# **DECLARATION**

I, _Janet Corpes_____, declare as follows:

1.      I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

2.      Capitalized terms shall have the same meaning as those used in the Settlement.

3.      I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

4.      I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

5.      I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

6.      I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

7.      I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this _May 14 2021_ day of May, 2021.

Sign: _____

Print Name: _Janet Corpes_____

# Tab 10

DocuSign Envelope ID: 568FB0F5-57E5-45A1-974A-49A1193031A3

## **DECLARATION**

I, <u>      Terri Jones      </u>, declare as follows:

     1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

     2.     Capitalized terms shall have the same meaning as those used in the Settlement.

     3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

     4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

     5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

     6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

     7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this <u>  14  </u> day of May, 2021.

Sign: _____

Print Name:    Terri Jones

# Tab 11

## **DECLARATION**

I, HEIDI HUMPHREYS, declare as follows:

1.      I am over 18 years old.  I have personal knowledge of the matters set forth herein
and if called to testify would and could competently testify thereto.

2.      Capitalized terms shall have the same meaning as those used in the Settlement.

3.      I previously entered into a Finance Agreement and GAP Agreement that was
assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP
Refund after I paid off my Finance Agreement early.

4.      I understand that as a Class Representative, I must take all necessary actions to
protect the interest of the Class. I further understand I have a duty to act in the best interests of
the Class.  I have and will continue to uphold my duties as a Class Representative.

5.      I retained highly qualified lawyers to pursue this lawsuit.  I have worked
cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for
my help and let me know about case developments.  I have made myself available to answer any
questions they have and to provide them with any information they need, including to respond to
written discovery questions from Wells Fargo.  I have been and am committed to pursuing this
case on my behalf and on behalf of the other Class members.

6.      I am not aware of any conflicts of interest between me and the other Class
members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as
the other Class members.

7.      I believe the proposed Settlement of this case is fair, adequate and reasonable and
in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.  Executed on this ___ day of May, 2021.

Sign: *Heidi Humphreys*
Heidi Humphreys (May 14, 2021 19:26 EDT)

HEIDI HUMPHREYS          May 14, 2021

Print Name:   Heidi Humphreys

# H. Humphreys - WF Prelim Approval Shell Declaration for Clients

Final Audit Report                                                         2021-05-14

| | |
|---|---|
| Created: | 2021-05-14 |
| By: | Thomas Shrack (tshrack@lfsblaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAE--w88hsulUcC0Nf1x2D74JghlzVJdaq |

## "H. Humphreys - WF Prelim Approval Shell Declaration for Clients" History

📄 Document created by Thomas Shrack (tshrack@lfsblaw.com)
2021-05-14 - 9:34:53 PM GMT- IP address: 173.168.246.34

✉ Document emailed to Heidi Humphreys (humphreys3696@comcast.net) for signature
2021-05-14 - 9:35:50 PM GMT

📄 Email viewed by Heidi Humphreys (humphreys3696@comcast.net)
2021-05-14 - 10:25:28 PM GMT- IP address: 73.64.214.71

✒ Document e-signed by Heidi Humphreys (humphreys3696@comcast.net)
Signature Date: 2021-05-14 - 10:26:19 PM GMT - Time Source: server- IP address: 73.64.214.71

✅ Agreement completed.
2021-05-14 - 10:26:19 PM GMT

 Adobe Sign

# Tab 12

## **DECLARATION**

I,     Ria Marteins     , declare as follows:

    1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

    2.     Capitalized terms shall have the same meaning as those used in the Settlement.

    3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

    4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

    5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

    6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

    7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this ___May 14___ day of May, 2021.

Sign:     Ria Marteins

Print Name:     Ria Marteins

# Tab 13

## **DECLARATION**

I, BRIAN SWEENEY, declare as follows:

1.     I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

2.     Capitalized terms shall have the same meaning as those used in the Settlement.

3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

5.     I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this ___ day of May, 2021.

Sign: _____
Tim Sweeney (May 14, 2021 19:14 CDT)

BRIAN SWEENEY   May 14, 2021

Print Name:   Brian Sweeney_____

# B. Sweeney - WF Prelim Approval Shell Declaration for Clients

Final Audit Report                                    2021-05-15

| | |
|---|---|
| Created: | 2021-05-14 |
| By: | Thomas Shrack (tshrack@lfsblaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAIkcwRNKnDbJ2puiO1Z5BYwaZ8oPhPCrO |

## "B. Sweeney - WF Prelim Approval Shell Declaration for Clients" History

📄 Document created by Thomas Shrack (tshrack@lfsblaw.com)
2021-05-14 - 9:37:41 PM GMT- IP address: 173.168.246.34

📧 Document emailed to Tim Sweeney (tsweeney@utexas.edu) for signature
2021-05-14 - 9:38:28 PM GMT

📄 Email viewed by Tim Sweeney (tsweeney@utexas.edu)
2021-05-15 - 0:13:48 AM GMT- IP address: 74.125.214.17

✍️ Document e-signed by Tim Sweeney (tsweeney@utexas.edu)
Signature Date: 2021-05-15 - 0:14:11 AM GMT - Time Source: server- IP address: 70.112.129.125

✅ Agreement completed.
2021-05-15 - 0:14:11 AM GMT

Adobe Sign

# Tab 14

## **DECLARATION**

I, _NeKecia Dean_____, declare as follows:

1.      I am over 18 years old.  I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

2.      Capitalized terms shall have the same meaning as those used in the Settlement.

3.      I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo.  I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

4.      I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class.  I have and will continue to uphold my duties as a Class Representative.

5.      I retained highly qualified lawyers to pursue this lawsuit.  I have worked cooperatively with my lawyers throughout the litigation.  My lawyers have regularly asked for my help and let me know about case developments.  I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo.  I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

6.      I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts.  My interests are the same as the other Class members.

7.      I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class.  I understand the Settlement is subject to court approval.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this __14__ day of May, 2021.

Sign: _____

Print Name: _NeKecia Dean_____

# Tab 15

DocuSign Envelope ID: 76354564-4D9A-493B-B479-5E703F22C021

## **DECLARATION**

I, ___Von Griffin_____, declare as follows:

      1.     I am over 18 years old. I have personal knowledge of the matters set forth herein and if called to testify would and could competently testify thereto.

      2.     Capitalized terms shall have the same meaning as those used in the Settlement.

      3.     I previously entered into a Finance Agreement and GAP Agreement that was assigned to Wells Fargo. I brought this lawsuit because I did not receive an Early Payoff GAP Refund after I paid off my Finance Agreement early.

      4.     I understand that as a Class Representative, I must take all necessary actions to protect the interest of the Class. I further understand I have a duty to act in the best interests of the Class. I have and will continue to uphold my duties as a Class Representative.

      5.     I retained highly qualified lawyers to pursue this lawsuit. I have worked cooperatively with my lawyers throughout the litigation. My lawyers have regularly asked for my help and let me know about case developments. I have made myself available to answer any questions they have and to provide them with any information they need, including to respond to written discovery questions from Wells Fargo. I have been and am committed to pursuing this case on my behalf and on behalf of the other Class members.

      6.     I am not aware of any conflicts of interest between me and the other Class members, nor am I aware of my lawyers having any such conflicts. My interests are the same as the other Class members.

      7.     I believe the proposed Settlement of this case is fair, adequate and reasonable and in the best interests of the Class. I understand the Settlement is subject to court approval.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this __05-14-2021__ day of May, 2021.

                Sign: _____

                Print Name: ___Von Griffin_____

35

Exhibit 3

# HERRERA, ET AL. V. WELLS FARGO BANK

## Frank Sims & Stolper LLP Time Summary

| Timekeeper Summary | | |
|---|---|---|
| **Timekeeper** | **Hours** | **Fee Billed** |
| Andrew Stolper [Partner] | 1,292.42 h | $1,227,789.50 |
| Jason Frank [Partner] | 2,229.90 h | $2,231,265.00 |
| Scott Sims [Partner] | 870.95 h | $783,585.00 |
| Maritza Nowowiejski [Paralegal] | 83.40 h | $33,360.00 |
| | | |
| **Total** | 4,476.67 h | $4,275,999.50 |

Exhibit 4

## HERRERA, ET AL.  V. WELLS FARGO BANK

## Frank Sims & Stolper LLP Expenses

| | | |
|---|---|---|
| Feb 27, 2018 | USDC - Filing Fee | $400.00 |
| Mar 02, 2018 | USDC - F. Azar Pro Hac Vice Application Fee | $325.00 |
| Mar 08, 2018 | USDC - B. Hanlin Pro Hac Vice Application Fee. | $325.00 |
| Mar 31, 2018 | Nationwide Legal, LLC - Invoice No. 279087 - Control Nos. 2790286, 2790287 | $257.90 |
| May 05, 2018 | LawToolBox.com, Inc. - Invoice No. SI 15107 - 701050-1 | $69.00 |
| Aug 23, 2018 | American Airlines - Washington DC to Charlotte NC - Andrew Stolper. | $354.20 |
| Aug 28, 2018 | VTS Crown Cab Company, Charlotte, NC. - Andrew Stolper. | $31.80 |
| Aug 28, 2018 | Kimpton Tyron Park - Charlotte NC - Andrew Stolper | $173.06 |
| Aug 29, 2018 | Kimpton Tyron Park Hotel, Charlotte, NC - Andrew Stolper. | $4.29 |
| Aug 29, 2018 | Kimpton Tyron Park Hotel - Charlotte, NC - Andrew Stolper | $533.47 |
| Nov 27, 2018 | Corner Bakery Invoice No. 755474 - Pre-Mediation Conference | $131.00 |
| Dec 18, 2018 | Signature Resolution - Mediation - Invoice No. 2554 - FSS Ck. No. 1934. | $7,950.00 |
| Feb 25, 2019 | New Jersey Business Records Service - Receipt ID 90561633266 - Agent for Service of Process Query Re Sansone Nissan (Subpoena) | $6.25 |
| Mar 08, 2019 | Nationwide Legal - Invoice No. 8713 - Order Nos. OC2338, OC2339 & OC2389 (Subpoenas to Bakhtiari Auto, Toyota Motor Ins. Services & Nissan Sansone) | $462.00 |
| Apr 08, 2019 | United Airlines - Confirmation No. G7105C - Flights to/from Orange County-New Jersey-Washington D.C. Re Sansone Deposition and Meetings with staff for Rep Perlstein, Porter and Waters. | $1,925.60 |
| May 03, 2019 | L. Scott Baggett, Ph.D. - Invoice No. 05032019-1 - FSS Ck. No. 1987 | $6,300.00 |
| Jun 05, 2019 | United Airlines - Confirmation No. 043H95 - Flights to/from New Jersey Re Sansone Deposition. | $2,696.60 |
| Jul 18, 2019 | Southwest Airlines. | $536.98 |
| Jul 22, 2019 | American Airlines. | $691.01 |

| | | |
|---|---|---:|
| Jul 23, 2019 | LAX Airport Urth Cafe. | $21.81 |
| Jul 23, 2019 | SWA Inflight WIFI. | $8.00 |
| Jul 23, 2019 | Uber. | $7.61 |
| Jul 23, 2019 | Uber. | $25.20 |
| Jul 24, 2019 | Four Seasons Hotel, St. Louis, MO. | $560.88 |
| Jul 24, 2019 | Surgarfire Smokehouse, St. Louis, MO. | $21.78 |
| Jul 24, 2019 | Uber. | $3.00 |
| Jul 24, 2019 | Uber. | $5.72 |
| Jul 24, 2019 | Uber. | $26.19 |
| Jul 24, 2019 | CMT Anaheim - Yellow Cab. | $25.00 |
| Oct 02, 2019 | USDC - Pro Hac Filing Fee Re Michael D. Murphy | $400.00 |
| Oct 31, 2019 | Southwest Airlines - ADS Flight to Oakland - Caruso Deposition. | $311.98 |
| Oct 31, 2019 | Amex Fine Hotels and Resorts. | $1,162.12 |
| Oct 31, 2019 | Southwest Airlines - Andrew Stolper (Oakland). | $311.98 |
| Oct 31, 2019 | Loews Regency San Francisco - JMF & ADS - Caruso Deposition. | $1,162.12 |
| Nov 01, 2019 | Southwest Airlines - JMF Flight to Oakland - Caruso Deposition. | $275.98 |
| Nov 01, 2019 | Southwest Airlines - JMF Return Flight from Oakland - Caruso Deposition. | $239.97 |
| Nov 05, 2019 | Lyft. | $34.73 |
| Nov 06, 2019 | Loews San Francisco Hotel. | $144.73 |
| Nov 06, 2019 | Peets Coffee Oakland Airport. | $21.66 |
| Nov 06, 2019 | SWA Inflight Wifi. | $8.00 |
| Nov 06, 2019 | Uber. | $126.08 |
| Nov 10, 2019 | Delta Airlines - Andrew Stolper (Raleigh, NC) | $792.30 |
| Nov 10, 2019 | Delta Airlines - Jason Frank (Raleigh, NC). | $792.30 |
| Nov 10, 2019 | Orbitz - Hyatt Place, Raleigh, NC. | $810.84 |
| Nov 11, 2019 | Delta Airlines - Jason Frank (Raleigh, NC). | $632.30 |

| Nov 11, 2019 | Delta Airlines - Andrew Stolper (Raleigh, NC). | $632.30 |
| Nov 12, 2019 | Crawford & Son Restaurant, Raleigh, NC. | $179.38 |
| Nov 12, 2019 | Uber. | $48.13 |
| Nov 13, 2019 | Uber. | $59.17 |
| Nov 30, 2019 | Nationwide Legal, LLC - Invoice No. 13746 -Order Nos. OC16038; OC16158 - FSS Ck. No. 2096. | $77.05 |
| Feb 27, 2020 | Sharon Seffens, Court Reporter - Transcript Re Bellwether Case Management Conference - FSS Ck# 2122. | $245.00 |
| May 21, 2020 | Norell Consulting, Inc. - Investigation. FSS Ck. No. 0131. | $2,000.00 |
| Jun 08, 2020 | The Ranch at Laguna Beach - Mediation deposit. | $1,987.99 |
| Jun 23, 2020 | Judicate West - Invoice o. 507283. | $2,625.00 |
| Jul 16, 2020 | Exceptional Reporting Services, Inc. - Invoice No. 51625 - 7/8/20 Transcript. | $297.66 |
| Jul 16, 2020 | PACER - 7-8-20 Hearing Transcript. | $4.20 |
| Jul 17, 2020 | Judicate West - Invoice No. 507283 - Credit Card Trans. ID: 1614048322. | $2,625.00 |
| Jul 22, 2020 | State of Texas - Secretary of State - Batch No. 98479160. | $2.05 |
| Jul 31, 2020 | Nationwide Legal, LLC - Invoice No. 19922 - Order Nos. OC31327, OC31330 & OC31332 (Service of GAP Administrator Subpoenas) - FSS Ck. No. 130. | $442.75 |
| Aug 22, 2020 | Exceptional Reporting Services, Inc. - Invoice No. 51746 - 8/19/20 Hearing Transcript. | $37.20 |
| Sep 10, 2020 | Veritext - Invoice No. 4537413 - Deposition of Jennifer L. Holcomb. | $4,535.17 |
| Oct 22, 2020 | Veritext - Invoice No. 4606265 - Deposition of Doug Guziec (Innovative Aftermarket Systems, Inc.) | $1,776.00 |
| Oct 27, 2020 | Veritext - Invoice No. 4616967 - Deposition Video of Jennifer Holcomb (Norman & Co.). | $1,480.00 |
| Dec 30, 2020 | Judicate West - Invoice No. 519785 - Mediation 12/11/20 (ACH Payment 1/19/21). | $2,250.00 |
| May 11, 2021 | Judicate West - Invoice No. 531341 - Mediator Services. | $1,500.00 |

**TOTAL:**                                                                                           **$53,909.49**