UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |

Title      Armando Herrera v. Wells Fargo Bank, N.A.

Present: The Honorable     **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] <u>Order Regarding Motion for Preliminary Approval of Class Settlement</u>**

Plaintiffs Armando Herrera et al., (collectively—"Plaintiffs") filed a motion for preliminary approval of class action settlement. Mot., ECF No. 200. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") does not oppose.

For the following reasons, the Court **GRANTS** preliminary approval of the proposed settlement, directs dissemination of notice to the Class pursuant to the proposed notice plan, and appoints Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator for the dissemination of notice.

## I. BACKGROUND

### A. Allegations

The general background of this dispute is well-known to the parties and to the Court. Plaintiffs allege that Wells Fargo knowingly collects unearned fees for Guaranteed Automobile Protection ("GAP") Waivers ("GAP Agreements") and refuses to refund them despite being obligated to do so. First Amended Complaint ("FAC"), ECF No. 102, ¶ 1. A GAP Agreement is an addendum to a financing agreement to purchase a car, which provides that if a customer suffers a total loss in an accident during the course of the financing agreement, the customer will be paid the difference between the insurance payout based upon the vehicle's value and the remaining balance on the loan in exchange for a GAP fee. See FAC ¶¶ 4-6. The Plaintiffs agreed to purchase GAP Waivers when purchasing their cars at different car dealership. Id. ¶¶ 8, 28, 29. The dealerships then sold and assigned the Plaintiffs' finance agreements, including the GAP Agreements, to Wells

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

Fargo. Id. ¶¶ 8, 22, 28. Following assignment, Plaintiffs made all payments on their finance agreements to Wells Fargo. FAC ¶ 111.

Plaintiffs allege that on the purchase of the finance agreements, Wells Fargo took over all rights and obligations under the agreement as the assignee. Id. ¶¶ 54, 57. When Plaintiffs paid off their finance agreements early, Wells Fargo informed them how much they still owed on the finance agreement and included in that amount certain fees for GAP agreements for protection through the original
maturity date, even though by paying off the contract early the GAP Waiver protection would necessarily also be ending early. Id. ¶¶ 11, 29, 60, 61. Wells Fargo allegedly actively concealed its obligation to issue a refund on the GAP Waiver fees for the portion of the GAP Waiver's initial coverage that was cut short by early payoff, and denied any obligation to return the unearned GAP fees. Id. ¶¶ 13-14. According to the terms of the contract, the GAP Agreement is optional, can be canceled by the customer at any time, and permits customers to request a partial refund of the amount paid for GAP in the event of early cancellation. Id. ¶¶ 4, 22, 28.

The FAC outlines six claims against Wells Fargo: 1) breach of contract; 2) violation of the Truth in Lending Act, 3) money had and received; 4) violation of the California Unfair Competition Law; 5) violation of the California Consumer Legal Remedies Act; and 6) a claim for declaratory relief. Id. at ¶¶ 52-105.

The FAC also contains six class allegations, including a nationwide class; state subclasses for the states of California, Colorado, Delaware, Illinois, Kentucky, Maryland, New Jersey, Ohio, Pennsylvania, Texas, and Wisconsin; a statutory refund subclass; a California unfair business practices subclass; alternative nationwide subclasses limited to specific GAP Waiver forms; and alternative state subclasses limited to specific GAP Waiver forms. Id. at ¶¶ 36(a)-(f). Finally, Plaintiffs also allege bellwether subclasses of the nationwide class. Id. at ¶ 36(g).

B.   *Summary of the Settlement*

1.   *The Settlement Class*

The Settlement Class is defined as:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-332JVS(MRWx)                    Date    June 8, 2021

Title    Armando Herrera v. Wells Fargo Bank, N.A.

> all persons in the United States (a) who entered into Finance
> Agreements with GAP Agreements that were assigned to Wells
> Fargo, (b) whose Finance Agreements were terminated as the
> result of an Early Payoff which occurred during the Class Period,
> and (c) who did not receive a GAP Refund.

Settlement Agreement, ECF No. 200, Ex. 1, Definitions ¶ 8. The Class Period varies
depending on the state of origination of a Class Member's Finance Agreement and runs
from the date listed in the chart in Exhibit B of the Settlement Agreement until the date of
preliminary approval of the Settlement Agreement. Id., Definitions ¶ 11, Ex. B. The dates
listed in Exhibit B reflect the statute of limitations for breach of contract claims. Frank
Decl., ECF No. 200-1, ¶ 24. The Settlement Class also includes the members of the
Statutory Subclass. Id. The Statutory Subclass is defined as:

> those persons (a) who entered into Finance Agreements with GAP
> Agreements that were assigned to Wells Fargo, (b) whose Finance
> Agreements were subject to State Refund Laws, (c) whose
> Finance Agreements terminated as the result of an Early Payoff
> that occurred during the Statutory Subclass Period, and (d) who
> did not receive a GAP Refund from Wells Fargo, or for whom
> Wells Fargo did not receive written confirmation from a Dealer or
> GAP Administrator that the GAP Refund was paid.

Id., Definitions ¶ 55. The Statutory Subclass Period also varies depending on the state of
origination of a Class Member's Finance Agreement and runs from the date listed in the
chart in Exhibit E of the Settlement Agreement until the date of preliminary approval of
the Settlement Agreement. Id., Definitions ¶ 57, Ex. E. The dates listed in Exhibit E
reflect when there were effective State Refund Laws, which are defined as state laws that
"require indirect auto lenders to take certain actions to ensure that a customer receives a
GAP Refund after an Early Payoff." Id., Definitions ¶ 56. Those Class Members who are
not members of the Statutory Subclass are called "Non-Statutory Subclass Members."
Mot. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

*2.     Settlement Amount and Injunctive Relief*

Under the terms of the Settlement, Wells Fargo will take several actions to compensate the Class Members. First, Wells Fargo will implement processes by January 1, 2022, that will automatically provide Early Payoff GAP Refunds to customers in all 50 states so long as they complete Early Payoff. Settlement Agreement § III.A. This obligation will continue until January 1, 2026. Id.

Second, Wells Fargo warrants that it will directly pay Early Payoff GAP Refunds together with compensation for the loss of the use of these funds since the date of Early Payoff to Statutory Subclass Members who have not received such payment at this point. Id. § III.D. The compensation for lost use will be "based on the one-year constant U.S. maturity treasury rate from the date of the Early Payoff, compounded annually." Id.

Third, Wells Fargo agrees to set up a Supplemental Settlement Fund containing $45,000,000 that will pay out "(1) Approved Claims for GAP Refunds to Non-Statutory Subclass Members; (2) the $5.00 Additional Compensation payments to the Statutory Subclass; (3) the Fee and Expenses Awards approved by the Court; and (4) any Service Awards approved by the Court." Mot. at 16; Settlement Agreement § III.B.

Non-Statutory Subclass Members qualify for the Approved Claims for GAP Refunds if they submit an executed claim form verifying that they did not receive a GAP Refund from a dealer or GAP Administrator. Settlement Agreement § III.C.1. Non-Statutory Subclass Members will be able to submit an executed claim form by completing the form sent to them or by completing the form on the Settlement Website, which will be accessible by scanning a QR code. Settlement Agreement § IV.B. Such Non-Statutory Subclass Members will be eligible to receive up to the full amount of their Early Payoff GAP Refund, without any deduction for cancellation fees. Id. Each member of the Statutory Subclass will be eligible for the $5.00 Additional Compensation payments. Id. § III.C.2.

After the deduction of the Fee and Expenses Awards and the Service Awards, if the Supplemental Settlement Fund is not sufficient to cover in full the $5.00 Additional Compensation payments and the Approved Claims for GAP Refunds, then each payment will be reduced by an equal percentage necessary to allow the Supplemental Settlement Fund to cover all payments. Id. § III.C.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

    *3.*    *Attorneys' Fees and Costs*

Wells Fargo has agreed not to oppose an application for fees up to $23.1 million and reimbursements of costs up to $500,000. Id. § VI.A.

    *4.*    *Administrative Expenses and Service Awards*

Wells Fargo has agreed to separately pay for all Notice and Administrative Costs, including sending a notice of the Settlement by first-class mail. Id. § III.E. Wells Fargo will also not oppose an application for Service Awards of up to $7,500 for each class representative. Id. § VI.E.

    *5.*    *Release*

On final approval of the Settlement Agreement, "Plaintiffs and every member of the Class and Statutory Subclass who does not timely request exclusion from the Settlement will release Wells Fargo and the Class Releasees from 'any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses,
rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had,
now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to an Early Payoff GAP Refund for an Early Payoff that occurred during the Class Period (the "Class Released Claims").'" Mot. at 17 (quoting Settlement Agreement § II.A). The Class Release applies to Wells Fargo and each of their "former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, and employees and attorneys." Settlement Agreement § II.A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-332JVS(MRWx)                    Date   June 8, 2021

Title   Armando Herrera v. Wells Fargo Bank, N.A.

        *6.      Notice*

        The Parties have selected JND Legal Administration ("JND") to be the Settlement Administrator. Settlement Agreement, Definitions, ¶ 3. Within 45 days of Preliminary Approval, Wells Fargo will provide a list of names and contact information for each Class Member and will indicate who are known members of the Statutory Subclass. Settlement Agreement §§ III.C.1, III.C.2. No later than 60 days after preliminary approval, JND will send a copy of the Notice to each Class Member by first-class mail and email, where Wells Fargo has a record of an email address at which to reach the Class Members. Frank Decl. ¶ 33. The Notice will be personalized to each Class Member and will inform Class Members of the pendency of the action, the terms of the Settlement Agreement, the right to appear, object, or exclude themselves. Settlement Agreement at Exs. C & D. The Notice will also state the vehicle covered and the estimated amount of money for which the Class Member would be eligible. Id. On the first day that Notices are sent to the public, JND will also make public an informational Settlement Website that includes the Notice, Settlement Agreement, FAC, and other relevant and important documents. Frank Decl. ¶ 33.

        *7.      Opt-Out and Objection Process*

        Class Members will be able to opt-out of the Settlement Agreement by submitting a signed, written request to JND postdated by the Response Deadline. Settlement Agreement § VII.D. Any Class Member who wishes to object to the Settlement Agreement will similarly have to submit a written statement to JND by the Response Deadline and will also have to submit the same statement to the Court. Id. § VII.E. The Notice provides information about where to send the opt-out requests and objections. Id. at Exs. C & D.

        *8.      Revocation of Agreement*

        The Parties retain the right to terminate the Settlement Agreement if "(1) the Court rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that results in a substantial modification to a material term of the proposed Settlement; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order, that results in a substantial modification to a material term of the proposed Settlement." Id. § VII.F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |

| | |
|---|---|
| Title | Armando Herrera v. Wells Fargo Bank, N.A. |

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) states that "[t]he claims … of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . or compromised only with the court's approval." "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the propos[ed] [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Id. 23(e)(1)(B)(i)(ii).

## III. DISCUSSION

### A.   Class Certification

A motion for class certification involves a two-part analysis. First, the plaintiffs must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The plaintiffs may not rest on mere allegations, but must provide facts to satisfy these requirements. Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) (citing Gillibeau v. Richmond, 417 F.2d 426, 432 (9th Cir. 1969)).

Second, the plaintiffs must meet the requirements for at least one of the three subsections of Rule 23(b). Under Rule 23(b)(1), a class may be maintained if there is either a risk of prejudice from separate actions establishing incompatible standards of conduct or judgments in individual lawsuits would adversely affect the rights of other members of the class. Under Rule 23(b)(2), a plaintiff may maintain a class where the defendant has acted in a manner applicable to the entire class, making injunctive or declaratory relief appropriate.  Finally, under Rule 23(b)(3), a class may be maintained if "questions of law or fact common to class members predominate over any questions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

affecting only individual members," and if "a class action is <u>superior</u> to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

The plaintiffs bear the burden of demonstrating that Rule 23 is satisfied. <u>See</u> <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001), <u>amended by</u> 273 F.3d 1266 (2001). The district court must rigorously analyze whether the plaintiffs have met the prerequisites of Rule 23. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) (quoting <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982)). Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." <u>Armstrong v. Davis</u>, 275 F.3d 849, 872 n.28 (9th Cir. 2001), <u>abrogated on other grounds by Johnson v. California</u>, 543 U.S. 499, 504–05 (2005). The district court need only form a "reasonable judgment" on each certification requirement "[b]ecause the early resolution of the class certification question requires some degree of speculation." <u>Gable v. Land Rover N. Am., Inc.</u>, No. SACV 07-0376 AG (RNBx), 2011 U.S. Dist. LEXIS 90774, at *8 (C.D. Cal. July 25, 2011) (internal quotation marks omitted); <u>see also</u> <u>Blackie v. Barrack</u>, 524 F.2d 891, 901 n.17 (9th Cir. 1975). This may require the court to "'probe behind the pleadings before coming to rest on the certification question,'" and the court "'<u>must</u> consider the merits' if they overlap with Rule 23(a)'s requirements." <u>Wang v. Chinese Daily News</u>, 709 F.3d 829, 834 (9th Cir. 2013) (quoting <u>Dukes</u>,564 U.S. at 351; <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 983 (9th Cir. 2011)).

  *1.*     *Rule 23(a) Prerequisites*

    *a.*     *Numerosity*

Rule 23(a)(1) requires that a class be sufficiently numerous such that it would be impracticable to join all members individually. In determining whether a proposed class is sufficiently numerous to sustain a class action, the court must examine the specific facts because the numerosity requirement "imposes no absolute limitations." <u>Gen. Tel. Co. of the Nw. v. EEOC</u>, 446 U.S. 318, 330 (1980). "[A] reasonable estimate of the number of purported class members satisfies the numerosity requirement." <u>In re Badger Mountain Irrigation Dist. Sec. Litig.</u>, 143 F.R.D. 693, 696 (W.D. Wash. 1992). Although the Parties are unable to estimate the exact number of Class Members because they do not know how many Class Members have received a GAP Refund from a GAP Administrator

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |

or a dealer, the Parties know that there are at least 105,274 Statutory Subclass Members. Mot. at 30 n.5. This is more than sufficient to meet the numerosity requirements as joining hundreds of thousands of Class Members is impracticable.

### b. Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). A common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Dukes, 564 U.S. at 350. As the Ninth Circuit explained in Wang, 709 F.3d at 834, there must be at least "a single common question" to satisfy the commonality requirement of Rule 23(a)(2)."

Here, common questions of law and fact exist. At the heart of this suit is Wells Fargo's policy of not refunding unearned GAP fees after an Early Payoff. Mot. at 31. Moreover, all claims rely on the legal question of whether "Wells Fargo took over the obligation to issue the Early Payoff GAP Refund as the assignee of the GAP Agreements." Id. As there is both a common question of law and a common question of fact, the commonality requirement is satisfied.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To meet the typicality requirement, the plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011). "Under the rule's permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Plaintiffs can satisfy their burden through pleadings, affidavits, or other evidence. See Lewis v. First Am. Title Ins. Co., 265 F.R.D. 536, 556 (D. Idaho 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

The typicality requirement is also easily satisfied. The Class Representatives all suffered the same injury as the rest of the Class Members: "they did not receive an Early Payoff GAP Refund from Wells Fargo after their Early Payoff as a result of Wells Fargo's uniform practice of not paying such refunds." Mot. at 32 (citing FAC ¶¶ 28-29). Some of the Class Representatives also had Finance Agreements that were subject to state fund laws, meaning that they are also typical of the Statutory Subclass. Id. (citing FAC ¶ 36). The typicality requirement is thus satisfied.

### d.    *Fair and Adequate Representation*

Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is grounded in constitutional due process concerns: 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting Hanlon, 150 F.3d at 1020). Representation is adequate if (1) the named plaintiffs and their counsel are able to prosecute the action vigorously and (2) the named plaintiffs do not have conflicting interests with the unnamed class members; and (3) the attorney representing the class is qualified and competent. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

### 2.    *Rule 23(b)*(3)

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975). A class may be certified under this subdivision where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. Proc. 23(b)(3).

### a.    *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation omitted). The Court must rest its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-332JVS(MRWx)                    Date  June 8, 2021

Title  Armando Herrera v. Wells Fargo Bank, N.A.

examination on the legal or factual questions of the individual class members. Hanlon, 150 F.3d at 1022. "To determine whether common issues predominate, this Court must first examine the substantive issues raised by Plaintiffs and second inquire into the proof relevant to each issue." Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 251 (C.D. Cal. 2006) (citation omitted); see Dukes, 564 U.S. at 351 n.6 (using a securities fraud class action as an example of how the predominance inquiry involves examining the substantive issues raised and the common proof relevant to those issues). "There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." In re Vitamins Antitrust Litigation, 209 F.R.D. 251, 262 (D.D.C. 2002) (internal quotation omitted).

Predominance is present here. The same evidence can be used to resolve liability issues for all Class Members because the Class Members' claims stems from Wells Fargo's consistent policy of not refunding unearned GAP fees after an Early Payoff. FAC ¶ 44. Furthermore, the State Refund Laws of the 13 relevant states are substantially similar, meaning that common questions of law will predominate for the Statutory Subclass. See FAC ¶ 103. At a more general level, courts routinely grant certification for class actions involving form contracts, particularly where the defendant is a bank with a similar practice for all customers. See Ellsworth v. U.S. Bank, N.A., 2014 WL 2734953 at *20 (N.D. Cal. June 13, 2014) (citing Gutierrez v. Wells Fargo Bank, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11, 2008)); In re Medical Capital Securities Litigation, 2011 WL 5067028 at *3 (C.D. Cal. July 26, 2011). It is therefore clear that in this case common issues predominate.

### b. *Superiority*

Finally, the Court considers whether a class action would be superior to individual suits. Amchem, 521 U.S. at 615. "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234–35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis that includes "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s non exclusive factors are: (A) the interest of members of the class in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

A class action settlement is clearly a superior means of resolving this lawsuit. There are no other pending lawsuits involving this issue that are known to this Court. See Frank Decl. ¶ 39. Furthermore, management of the class action is simple because the Court is certifying the class for purposes of settlement. Finally, the Court notes that the Class consists of hundreds of thousands — maybe millions — of Class Members. It is therefore clearly superior to resolve these claims in a single class action instead of flooding the courts with claims brought by each Class Member. See Wren v. RGIS Inventory Specialists, 256 F.R.D. 180, 210 (N.D. Cal. 2009) (finding a class action to be superior when "[t]he alternative – hundreds or even thousands of individual actions – is not realistic").

As each of the above factors weigh in favor of certification, the Court **GRANTS** certification of the Settlement Class.

B.   *Preliminary Approval of the Proposed Class Settlement*

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate. To make this determination, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. See, e.g., In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

> 1.   *Adequacy of Representation by Class Representatives and Class Counsel*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

There certainly has been adequate representation by the class representatives and class counsel. This case has been extensively litigated, with the complaint having been filed three years ago. See Complaint, ECF No. 1. Class Counsel have analyzed more than a million pages of documents produced by Wells Fargo; subpoenaed and reviewed thousands of pages of documents from third-party dealers, GAP Administrators, and Wells Fargo's government submissions; taken eight depositions, including of Wells Fargo managers; responded and served numerous interrogatories and requests for admission; and engaged in extensive motions practice. Mot. at 9-10. Class Representative James Atkins has also sat for a deposition. Id. at 10. This factor therefore weighs in favor of approval.

> 2.   *Negotiated at Arm's Length*

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; accord Pederson v. Airport Terminal Servs., 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

The Court finds that the Settlement has been negotiated at arm's length. Notably, the Settlement Agreement is the result of three mediation sessions before Judge Andrew Guilford. Frank Decl. ¶¶ 19-22. During the third mediation session before Judge Guilford, the Parties even presented arguments and evidence regarding an appropriate award of attorney's fees, costs, and service awards. Id. ¶ 22. The Court is easily satisfied that the conduct of the negotiations was appropriate to protect the Class's interests.

### 3. *Adequacy of Relief Provided for the Class*

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

The Court first notes that the Settlement Agreement appears to give substantial relief to the Settlement Class, at least to the Statutory Subclass Members. In evaluating the Settlement Agreement, the Court keeps in mind the claims assertd by the Class. In essence, Plaintiffs claim that Wells Fargo failed to refund Class Members the value of the GAP Waivers between the early date at which Class Members paid off their Financing Agreements and when they were scheduled to finish making payments on their Finance Agreement under the original payment plan, even though Plaintiffs would not be covered by the GAP waivers for that period of time. FAC ¶¶ 11, 29, 60, 61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

    The Statutory Subclass Members will receive a substantial, if not complete, recovery. Statutory Subclass Members who have not yet received an Early Payoff GAP Refund will be paid the Early Payoff GAP Refund to which they are entitled under Plaintiffs' theory of the case. Settlement Agreement § III.D. They will also receive compensation for the loss of use of their funds based on the one-year constant U.S. maturity treasury rate, compounded annually from the date of the Early Payoff. Id. They will also receive up to $5 in addition. Id. § III.C.2. Between February 22, 2019, and March 31, 2021, Wells Fargo paid out $33,357,919.81 to members of the Statutory Subclass. Id.

    The Non-statutory Subclass Members will not receive as substantial a recovery. $45 million will be allocated towards the Supplemental Settlement Fund. Settlement Agreement § III.C. That $45 million will also cover fees and expenses—which the Settlement Agreement states may amount to $23.6 million—and service awards that may amount to $120,000 (or $7,500 for sixteen Class Representatives).[1] Id. §§ III.C, VI.A, VI.E. This will leave slightly more than $20 million for payment to Non-statutory Subclass Members to cover their Early Payoff GAP Refunds and the $5 additional payments to Statutory Subclass Members. The Parties estimate that there are 2.69 million potential Class Members and 105,274 potential Statutory Subclass Members. Frank Decl. ¶ 36. As the number of Non-statutory Subclass Members far exceeds the number of Statutory Subclass Members, the vast majority of the remaining approximately $20 million would likely go to the Non-statutory Subclass Members.[2]

    By contrast, when Wells Fargo was paying Early Payoff GAP Refunds to the

---

    [1]The Court will require a statement of the time spent by each Class Representative when the Plaintiffs move for final approval of class settlement. Among other reasons, such information will enable the Court to assess whether any service award to the Class Representatives is disproportionate.

    [2] The Non-statutory Subclass Members would be entitled to far more than the Statutory Subclass Members out of the Supplemental Settlement Fund. Class Counsel note that Wells Fargo's practice of paying Early Payoff GAP Refunds between 2019 and 2021 resulted in average payments of $316.87. Frank Decl. ¶ 27.c. Assuming that this figure is approximately representative of the amount that Non-statutory Subclass Members would be entitled to under the Settlement Agreement, then the collective claims of Non-statutory Subclass Members would far outstrip the $5 additional payments. The $5 additional payments would only total approximately $500,000 assuming that the estimate of 105,274 Non-statutory Subclass Members is accurate. Id. ¶ 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

Statutory Subclass between 2019 and 2021, each Statutory Subclass Member received on average $316.87. Frank Decl. ¶ 27.c. As the Statutory Subclass will be eligible for an additional $5 payment, each Statutory Subclass Member will receive a payout of $321.87. This is far more than is likely to be distributed to the 2.59 Non-statutory Subclass Members from the approximately $20 million remaining from the Supplemental Settlement Fund. If all Non-statutory Subclass Members submitted a valid claim, they would each receive a little under $10. Even if a substantial percentage of the Non-statutory Subclass Members fail to submit a valid claim, the total amount of recovery will likely not approach $321.87. Nevertheless, the Court believes that this difference in payment is reflective of the relative strength of the claims of the Statutory Subclass Members and the Non-statutory Subclass Members. See infra Section III.B.4.

Finally, Wells Fargo's future policy changes will ensure that there are not more customers who do not receive Early Payoff GAP Refunds to which they are entitled under Plaintiffs' theory of the case. Wells Fargo will also implement a policy providing such payments to customers "(1) who purchased GAP from a Dealer at the time they entered into their Finance Agreements; (2) [] chooses to finance the cost and such cost is included in a Finance Agreement assigned to Wells Fargo; (3) where Wells Fargo received an Early Payoff of the Finance Agreements; (4) whose GAP Agreements provide for an Early Payoff GAP Refund in the event of an Early Payoff; and (5) who have not previously received a GAP Refund." Id. § III.A. Eligibility will be automatic on completing an Early Payoff. Id. This policy will last for four years between January 1, 2022, and January 1, 2026, which Class Counsel estimate will result in over $400 million in GAP Refunds. Mot. at 25.

The Court now turns to considering the factors listed in Rule 23(e)(2)(C).

a.    *Costs, Risks, and Delay of Trial and Appeal*

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. Here, the costs, risks, and delay of trial and appeal favor preliminary approval. "Proceeding in this litigation in the absence of settlement poses various risks such as . . . having summary judgment granted against Plaintiffs[] or losing at trial. Such considerations have been found to weigh heavily in favor of settlement." Graves v. United Industries Corporation, 2020 WL 953210, at *7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

(C.D. Cal. Feb. 24, 2020) (citing See Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009); Curtis-Bauer v. Morgan Stanley & Co., Inc., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)). This case is still in the pleadings stage, and so litigation would drag on through class certification, summary judgment, trial, and appeal if Plaintiffs are successful in the absence of the Settlement Agreement. See Mot. at 24. This process could take years. Class Counsel list a number of other risks that would come with trial and appeal including overcoming Wells Fargo's various contract defenses to the claims brought by the Non-statutory Subclass, arbitration clauses binding many Class Members, and the fact that in the three years that Class Counsel have litigated so far, they have already incurred about $11 million in fees and costs. Id. This subfactor therefore favors preliminary approval of the Class Settlement because in its absence there will be inevitable costs, high risks, and delay.

>             b.      *Effectiveness of Proposed Method of Relief Distribution*

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

The claims process is straightforward. Statutory Subclass Members will not have to submit a claim. Non-statutory Subclass Members can make a claim by submitting a valid and timely Claim Form, which will be sent by first-class mail and email to each Non-Statutory Subclass Member. See Frank Decl. ¶ 34. Non-statutory Subclass Members will also have the option of submitting a Claim Form via the Settlement Website. Id. This is a reasonable means of distributing relief. See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

                    c.      *Terms of Proposed Award of Attorneys' Fees*

        Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class." Briseno v. ConAgra Foods, Inc., 2021 WL 2197968, at *6 (9th Cir. 2021) (internal quotation marks omitted) (citing In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 947 (9th Cir. 2011)). The Court must consider whether these factors exist in post-class certification settlements. Id. at *8.

        Class Counsel will have to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation before the Court can approve a specific amount in attorneys' fees. But the Settlement Agreement's provision for up to $23.1 million in fees and costs does not strike the Court as excessive or undermining the adequacy of relief to the Class. Class Counsel estimate the overall value of the Settlement Agreement approaches $500 million. See Mot. at 28-30 (adding together value of the Supplemental Settlement Fund ($45 million), refunds already paid to the Statutory Subclass ($33.36 million), administrative costs ($3 million), and value of Wells Fargo's change in business practice ($417 million)); Baggett Decl. ¶¶ 14-23 (estimating value of Wells Fargo's business practice change as approximately $417 million). The Court notes that this calculation does not include the value of any future payments of Early Payoff GAP Refunds to the Statutory Subclass. Moreover, even if the Court were to exclude the value of Wells Fargo's future business practice—which will only benefit customers who complete an Early Payoff in the future, not the Class Members, who have all already completed an Early Payoff— the Settlement Agreement's value would exceed $80 million, far outpacing the total amount allocated to fees and costs.

        While the Settlement Agreement does have a "clear sailing agreement," see Settlement Agreement § VI.A, there is neither a "kicker" clause nor does the Court conclude that Class Counsel would receive a disproportionate distribution if the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

were to grant their motion for fees. Since the key <u>Bluetooth</u> factor is whether Class Counsel would receive "excessive fees," the Court does not believe that the factors weigh in favor of a conclusion that the Settlement is unreasonable. <u>See</u> <u>Briseno</u>, 2021 WL 2197968, at *9 (describing a clear sailing agreement and a kicker as protective of "excessive fees"). This subfactor therefore weighs in favor of preliminary approval.

### d.   Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement. <u>See</u> Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Class Counsel state that there is no agreement made outside of the Settlement Agreement. Frank Decl. ¶ 23.

Based on the foregoing analysis, it is clear that the adequacy of relief for the Class weighs in favor of preliminary approval of the Settlement Agreement.

### 4.   Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

The only relevant distinction between Class Members is between Statutory Subclass Members and Non-statutory Subclass Members. Statutory Subclass Members will receive substantially more relief than the Non-statutory Subclass Members. Statutory Subclass Members will automatically receive the full value of their Early Payoff GAP Refunds. By contrast, Non-statutory Subclass Members will receive approximately $20 million in total despite comprising a substantially larger portion of the overall Class. <u>See supra</u> Section III.B.3. The Court agrees with Class Counsel that this distinction is logical because Statutory Subclass Members are able to rely on the State Refund Laws that require that an indirect auto lender like Wells Fargo ensure that a GAP Refund is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

paid after an Early Payoff.[3] <u>See</u> Mot. at 29-30. Without the ability to rely on state laws that explicitly bind Wells Fargo to pay Early Payoff GAP Refunds, the Non-statutory Subclass Members do not have as strong of a case against Wells Fargo.

As each of the above factors weighs in favor of approval, the Court **GRANTS** preliminary approval of the class action settlement.

C.     *The Proposed Settlement Meets the Notice Requirements Under Fed. R. Civ. P. 23(c)(2)(B).*

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means. <u>Id.</u> "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." <u>Id.</u>

The proposed judgment meets this notice requirements. Following a review of the submitted Notice, the Court concludes that it will include the substantive information that Rule 23(c)(3) requires. <u>See</u> *supra* Section I.B.6. The Parties also intend to contact Class Members by both first-class mail and email, which the Court believes is reasonably calculated to ensure that notice will be sent to all Class Members. The Court therefore believes that this requirement for preliminary approval is satisfied.

---

[3] Although the Court can find a listing of some of the 13 state laws at FAC ¶ 103, the Court cannot find a list of all of the relevant State Refund Laws. The Court requests that the Parties include a such a list for the Court's review in its motion for final approval of class settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-332JVS(MRWx) | Date | June 8, 2021 |
|---|---|---|---|

| Title | Armando Herrera v. Wells Fargo Bank, N.A. |
|---|---|

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the certification of the Settlement Class, **GRANTS** preliminary approval of the Settlement Agreement, **APPOINTS** JND as Class Administrator, and **ORDERS** dissemination of notice to the Class. The Court finds that oral argument would not be helpful in this matter.  Fed. R. Civ. P. 78; L.R. 7-15. Hearing set for June 14, 2021, is ordered **VACATED**.

**IT IS SO ORDERED.**

|   | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |